QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Stephen Swedlow (*Admitted Pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile: (312) 705-7401

  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendants Rivos, Inc. and Wen
Shih-Chieh a/k/a Ricky Wen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 5:22-CV-2637-EJD |
|         Plaintiff, | **DEFENDANTS RIVOS INC. AND WEN SHIH-CHIEH'S OPPOSITION TO APPLE'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE** |
|       vs. | |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN and BHASI KAITHAMANA, | |
|         Defendants. | Date:      June 16, 2022<br>Time:     9:00 a.m. |
| | Trial Date:  None Set |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

    A.   Apple Obtains Its "Forensic Evidence" Yet Delays Filing Suit For Months ............2

    B.   Defendants Have And Will Continue To Cooperate With Apple .............................4

    C.   Apple Belatedly Identifies Its Alleged Trade Secrets ................................................5

    D.   Defendants Will Voluntarily Provide Responsive Information In Good Faith .........5

III.   THE COURT SHOULD DENY APPLE'S REQUESTED TRO AGAINST WEN ...........7

    A.   Legal Standard .................................................................................................7

    B.   No Exigent Circumstances Exist Warranting the Extraordinary Relief
        Sought ...............................................................................................................7

    C.   Apple Is Unlikely To Succeed On the Merits Of Its Trade Secrets Claim .............10

        1.   Apple Fails To Identify Trade Secrets With Sufficient Particularity ..........11

        2.   Apple's Own Policy of Intermingling Work and Personal
            Information Is the Problem ......................................................................13

        3.   Apple Fails to Establish Misappropriation .................................................13

    D.   Apple Will Not Prevail On Its Breach Of Contract Claims ...................................15

    E.   The Balance Of Equities Tilts Strongly In Wen's Favor .........................................15

    F.   Apple's Requested TRO Is Not In The Public Interest ...........................................17

IV.   APPLE HAS NO BASIS TO SEEK EXPEDITED DISCOVERY ....................................18

    A.   Apple Has Not Established "Good Cause" for Expedited Discovery .....................18

    B.   Rivos And Wen Will Respond To A Number Of Apple's Requests .......................22

V.   CONCLUSION ....................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## Cases

*Action Learning Sys., Inc. v. Crowe,*
No. CV 14-5112-GW(SHx), 2014 WL 12564011 (C.D. Cal. Aug. 11, 2014)............................ 16

*Alatus Aerosystems v. Velazquez,*
No. CV191869PSGJDEX, 2019 WL 7166987 (C.D. Cal. Oct. 2, 2019).................................... 8

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011)............................................................................................. 9

*Am. LegalNet, Inc. v. Davis,*
673 F. Supp. 2d 1063 (C.D. Cal. 2009).................................................................. 18, 19, 20

*Am. Trucking Ass'ns Inc. v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009)............................................................................................. 7

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,*
28 Cal. App. 5th 923 (2018)...................................................................................... 16, 17

*Apple Inc. v. Samsung Elecs. Co.,*
No. 11-CV-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011).................................... 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................... 21

*Attia v. Google LLC,*
983 F.3d 420 (9th Cir. 2020)............................................................................................ 12

*BakeMark, LLC v. Navarro,*
No. LACV2102499JAKAGPX, 2021 WL 2497934 (C.D. Cal. Apr. 24, 2021)........................ 9

*Be In, Inc. v. Google Inc.,*
No. 12–CV–03373–LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ........................... 13, 14

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.,*
No. 18-CV-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) .............................. 13

*Call Delivery Sys., LLC v. Morgan,*
No. 20CV04637CBMPDX, 2020 WL 8410435 (C.D. Cal. June 26, 2020) ........................... 21

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.,*
No. 19-4162 SBA, 2021 WL 1186335 (N.D. Cal. Mar. 1, 2021) ...................................... 10

*Comet Techs. USA Inc. v. Beuerman,*
No. 1:18-cv-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ................... 10, 11, 13

*Comp. Econ., Inc. v. Gartner Grp., Inc.,*
50 F.Supp.2d 980 (S.D. Cal. May 25, 1999) ..................................................................... 12

*Connecticut v. Massachusetts,*
282 U.S. 660 (1931) ...................................................................................................... 15

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
   444 F. Supp. 3d 1198 (E.D. Cal. 2020) .................................................................. 10, 14

*Cuviello v. City of Oakland*,
   No. C-06-5517 MHP (EMC), 2009 WL 734676 (N.D. Cal. Mar. 19, 2009) ............................ 16

*eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*,
   No. 21-CV-4061-YGR, 2021 WL 3052918 (N.D. Cal. July 20, 2021) .............................. 22, 23

*EpicentRx, Inc. v. Carter*,
   No. 20-CV-1058-LAB(LL), 2020 WL 12074498 (S.D. Cal. July 17, 2020) ............................ 7

*Extreme Reach, Inc. v. PriorityWorkforce, Inc.*,
   No. CV 17-6796 SJO(EX), 2017 WL 10544621 (C.D. Cal. Oct. 18, 2017) ...................... 18, 22

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
   No. 2:13-cv-00784-MCE-DAD, 2013 WL 2151553 (E.D. Cal. May 16, 2013) ...................... 14

*FLIR Sys., Inc. v. Parrish*,
   174 Cal. App. 4th 1270 (2009) .................................................................................. 13

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Loc.*,
   *No. 70 of Alameda Cnty.*, 415 U.S. 423 (1974) ............................................................. 7

*GSI Tech., Inc. v. United Memories, Inc.*,
   No.: C 13-1081 PSG, 2013 WL 12172990 (N.D. Cal. Aug. 21, 2013) ............................... 17

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016) ...................................................................... 14

*Jobscience, Inc. v. CVPartners, Inc.*,
   No. C 13–04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ............................... 19

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .................................................................................... 7

*Lamont v. Conner*,
   No. 5:18-CV-04327-EJD, 2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) ........................... 11

*Loop AI Labs Inc. v. Gatti*,
   195 F. Supp. 3d 1107 (N.D. Cal. 2016) ...................................................................... 11

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   No. 819CV00220JVSJDEX, 2019 WL 8108729 (C.D. Cal. Sept. 3, 2019) ......................... 12

*Meritage Homeowners' Assoc. v. Bank of NY Mellon*,
   No. 16-cv-00300, 2017 WL 937729 (D. Or. Mar. 8, 2017) ......................................... 8, 9

*Miloedu, Inc. v. James*,
   No. 21-CV-09261-JST, 2021 WL 6072821 (N.D. Cal. Dec. 23, 2021) ...................... 14, 20, 22

*Mission Power Engineering Co. v. Continental Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ............................................................................... 8

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015) ........................................................................................ 15

*Perez v. Silva*,
    No. 15-cv-01771-EMC, 2015 WL 6957464 (N.D. Cal. Nov. 11, 2015) ........................... 16, 17

*Posdata Co. v. Kim*,
    No. C-07-02504RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007) ............................. 10, 13

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Rsch.*,
    No. 16CV2762-LAB(BLM), 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) ................ 19, 20, 21

*Pyro Spectaculars N., Inc. v. Souza*,
    861 F. Supp. 2d 1079 (E.D. Cal. 2012) .......................................................................... 13

*Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*,
    No. C 20-04808 WHA, 2021 WL 965349 (N.D. Cal. Mar. 13, 2021) ................................. 12

*R.F. by Frankel v. Delano Union Sch. Dist.*,
    224 F. Supp. 3d 979 (E.D. Cal. 2016) ............................................................................. 7

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
    No. 3:17-CV-192-AJB-NLS, 2017 WL 4557214 (S.D. Cal. Oct. 12, 2017) ...................... 21, 22

*Sierra Forest Legacy v. Rey*,
    577 F.3d 1015 (9th Cir. 2009) ........................................................................................ 7

*Soc. Apps, LLC v. Zynga, Inc.*,
    No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ....................... 11, 19

*SRI Int'l v. Acoustic Imaging Techs. Corp.*,
    No. C–92–5015–VRW, 1993 WL 356896 (N.D. Cal. Sept. 3, 1993) ................................ 18

*StrikePoint Trading, LLC v. Sabolyk*,
    No. SACV 07-1073 DOC (MLGx), 2009 WL 10659684 (C.D. Cal. Aug. 18, 2009) ............. 17

*Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................................................ 7

*Switch Comms. Grp. v. Ballard*,
    No. 2:11–cv–00285–KJD–GWF, 2012 WL 2342929 (D. Nev. June 19, 2012) ..................... 19

*Tribeca Companies, LLC v. First American Title Ins. Co.*,
    239 Cal.App.4th 1088 (2015) ........................................................................................ 15

*UCAR Tech. (USA) Inc. v. Yan Li*,
    No. 5:17-CV-01704-EJD, 2017 WL 8294248 (N.D. Cal. Apr. 19, 2017) ........................... 9

*Via Techs., Inc. v. Asus Computer Int'l*,
    No. 14-CV-03586-BLF, 2016 WL 1056139 (N.D. Cal. Mar. 17, 2016) ............................. 11

*Wang v. Kahn*,
    No. 20-cv-08033, 2020 WL 6891834 (N.D. Cal. Nov. 24, 2020) ..................................... 8

*Way.com, Inc. v. Singh*,
  No. 3:18-CV-04819-WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) ......................... 8, 13

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA, 2017 WL 2123560 (N.D. Cal. May 15, 2017) .................................... 10

*Wedge Water LLC v. Ocean Spray Cranberries, Inc.*,
  No. 21-CV-0809-GPC(BLM), 2021 WL 2138519 (S.D. Cal. May 26, 2021) ........................ 20

*WeRide Corp. v. Kun Huang*,
  379 F. Supp. 3d 834 (N.D. Cal. 2019) ............................................................................ 20, 22

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................................ 7, 10

*Wisk Aero LLC v. Archer Aviation Inc.*,
  No. 3:21-CV-02450-WHO, 2021 WL 4073760 (N.D. Cal. Aug. 24, 2021) ............................ 14

**Statutory Authorities**

18 U.S.C. § 1839(5) ................................................................................................................... 13

Bus. & Prof. Code § 16600 ........................................................................................................ 16

**Rules and Regulations**

Fed. R. Civ. P. 65(b)(1)(A) .......................................................................................................... 7

**Additional Authorities**

*Apple Cares About Privacy, Unless You Work at Apple*, The Verge, Aug. 30, 2021
  *https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.* ............................... 13

1  **I.   <u>INTRODUCTION</u>**

2      Plaintiff Apple Inc. ("Apple") seeks extraordinary relief, but has failed to establish any of

3  the required elements for it.  To start, Apple has not established any exigent circumstances or

4  irreparable harm necessary to obtain a temporary restraining order against Defendant Ricky Wen

5  ("Wen") or expedited discovery from Wen or Defendant Rivos Inc. ("Rivos").  Not only has Apple

6  been in possession of the "facts" it has alleged to support its motion for nearly a year, but Wen no

7  longer has possession of, or access to, the device or account purportedly containing Apple's "trade

8  secrets."   These devices and accounts have been forensically preserved and are at no risk of

9  dissemination, use, or deletion.  Apple's speculation that Wen might disclose some undefined

10  information—even though Apple fails to cite even one piece of evidence that Wen has done so in

11  the ten months since he left Apple—fails to meet the burden of establishing actual, irreparable harm.

12  This should be both the beginning and the end of the Court's inquiry.

13      Moreover, Apple has not identified its alleged trade secrets with sufficient particularity, and

14  provides no evidence of any misappropriation, actual or threatened.  To the contrary, the evidence

15  shows that, at most, Wen inadvertently and passively retained some Apple information that he

16  properly possessed while he was employed at Apple, but never used or disclosed any of it in the ten

17  months since leaving.  Apple is unlikely to succeed on the merits of its claims.

18      Rather than present any exigent circumstances that could justify a temporary restraining

19  order, Apple's motion instead burdens the Court with a discovery dispute that is not yet ripe.  Prior

20  to filing its motion, Apple *never* shared with Defendants the discovery requests to which it now

21  demands a response on an expedited basis.  Apple fails to show the requisite good cause for

22  expedited discovery ***before Defendants have had the opportunity to respond to Apple's complaint***,

23  including because the requests are not limited or connected to the requested temporary restraining

24  order and the discovery is too broad and burdensome, seeking information through Rivos from

25  unnamed former Apple employees.  Notwithstanding the fact that this discovery was propounded

26  before Defendants have been given the chance to move to dismiss Apple's meritless claims, and

27  consistent with Defendants' good faith efforts to apprise Apple of their own investigation since the

28  start of this litigation, Defendants will respond to as many of Apple's requests as is practicable in

1  advance of the June 16 hearing.  These responses should further demonstrate that there has been no

2  trade secret misappropriation and Apple's motion should be denied both on the merits and as moot.

3  Rivos, for its part, hopes the Court will provide it an opportunity to exit this lawsuit quickly based

4  in part on the cooperative voluntary investigation it is conducting now.

5      Apple's lawsuit and this motion appear to be directed at inhibiting Apple employees from

6  leaving Apple and joining Rivos.  Apple's litigious attempt to chill employee mobility through

7  unsupported claims of misappropriation and threats of broad injunctions based solely on innuendo

8  and speculation should be rejected.  This Court should deny Apple's motion in its entirety.

9  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

10      **A.    Apple Obtains Its "Forensic Evidence" Yet Delays Filing Suit For Months**

11      Wen joined Apple in April 2008.  For the next thirteen years, he diligently worked as a

12  Central Processing Unit ("CPU") Design Engineer.  (Wen Decl. ¶ 3.)  Ready for a change in career,

13  and excited by the opportunity presented by Rivos, Wen left Apple in August 2021.  (*Id.* ¶ 4.)  Apple

14  imaged his computer in September 2021.  (Roffman Decl. ¶ 14.)  Yet Apple waited another eight

15  months to file this case, *or even to inform Defendants that they purportedly had Apple's trade*

16  *secrets*, and another three weeks after filing to seek a TRO and expedited discovery—unexplained

17  delays that cannot be squared with Apple's claims in its Motion that its valuable trade secrets are at

18  imminent risk of use or disclosure.

19      Apple's complaint contains no evidence that Wen used or accessed any Apple information

20  since leaving Apple.  Instead, Apple merely points to the fact that Wen may have downloaded certain

21  files as he was preparing to leave Apple as evidence of misappropriation.  However, Apple's practice

22  of encouraging Apple employees to connect their work-issued devices to their personal iCloud

23  accounts inevitably results in personal information and work-related information being

24  intermingled—precisely what Mr. Roffman identified as occurring here—when the devices and the

25  personal accounts sync.  (Roffman ¶ 16 (Wen's work device contained "200 gigabytes of photos

26  and movies that [] are personal in nature").)  Accordingly, it should be no surprise to Apple that its

27  employees will take steps to retain their personal materials when their employment ends.  Wen has

28  attested that, while he did wish to preserve personal materials that were on his Apple device by

saving them on a hard drive, he did not intentionally remove any Apple information, nor has he accessed or used any Apple information that may exist on his hard drive while working at Rivos. (Wen Decl. ¶¶ 8-9.) Indeed, he was not even aware he might have such information until he received Apple's letter on April 29. (*Id.*, ¶ 6.) Further, while Apple attempts to create a motive for misappropriation by suggesting that Wen is performing "precisely" the same work at Rivos as he did at Apple (Mot. at 9), this is false. At Apple, Wen worked as a CPU design engineer developing low power, consumer-targeted systems. (Wen Decl. ¶ 4.) At Rivos, he works on implementing a root of trust for higher-powered systems designed for enterprise or server use. (*Id.*)

Although Wen is the only current Rivos employee named as a defendant in the complaint, Apple's complaint[1] contains generalized non-specific allegations that "other Apple employees who have left for Rivos have downloaded and retained Apple's proprietary documents after accepting offers from Rivos." (Complaint ¶ 58.) Apple has had the opportunity to forensically examine each of those former employees' Apple-issued devices. Apparently finding no plausible evidence of misappropriation, Apple instead points to the installation of "encrypted communications apps" (*id.* ¶ 59), browser history (*id.* ¶ 60), use of external drives (*id.* ¶ 61), and deletion of unidentified material (*id.* ¶ 64) to falsely imply some wrongdoing or misappropriation.

Apple's claims against Rivos are unsupported allegations such as "Apple has reason to believe" and other similar "information and belief" allegations. (*See id.* ¶¶ 4, 34, 37, 79-80.) Counsel for Rivos has now repeatedly requested that Apple identify any other basis on which to believe Rivos is a proper defendant in this case—beyond Apple's "belief." (Wilson Decl. Exs. J, L, N.) Apple provided only a two word meaningless response to support its claim: "it is." (*Id.*, Ex. K.) It is on this basis (and others) Rivos will move to dismiss this complaint—Apple cannot file a lawsuit then try to learn through (expedited) discovery if it might have a claim. This is particularly problematic in trade secrets cases against potential competitors because it can have a tremendous chilling effect on competition (both for employee mobility and for underlying technology innovation).

---

[1]  Defendant Bhasi Kaithamana ended his employment with Rivos for reasons unrelated to this litigation and has retained separate counsel.

### B.   Defendants Have And Will Continue To Cooperate With Apple

While Apple claims that it "sought to cooperatively resolve this dispute" (Mot. at 9), its actions prove the opposite.  On the very same day it filed this lawsuit, Apple sent letters to Wen and 42 other former Apple employees on Friday, April 29, 2022, raising for the ***first time*** its speculative accusations of misappropriation.  (Wilson Decl. ¶¶ 5, 8, 10.)  While launching a lawsuit is not a best practice for opening a cooperative dialogue, and Rivos had no obligation to do so, Rivos responded in three business days on May 4, 2022.  (*Id.*, Ex. I.)  Rivos assured Apple that it "respects the intellectual property rights of others and takes its obligations to not use, access, or disclose proprietary information or trade secrets of others seriously."  (*Id.*)  Two days later, counsel for Defendants additionally committed to providing "adequate assurances" that no misappropriation of Apple's trade secrets had occurred.  (*Id.*, Ex. J.)  Counsel for Defendants then requested that Apple provide basic forensic information so that Rivos could investigate Apple's claims (*id.*), but Apple refused, instead pointing counsel only to the non-specific allegations in its complaint.  (*Id.*, Ex. K.)

Counsel for Defendants also immediately began a thorough review of Rivos' systems, and interviewed every single former Apple employee now at Rivos.  (Kumar Decl. ¶ 13.)  These interviews were designed to identify any Apple proprietary or trade secret information that had been retained by the employees and/or potentially transferred to Rivos.  (*Id.*)  This investigation was accomplished on a very expedited basis, and at significant expense to Rivos.  Counsel for Rivos also hired a forensic consultant to search for Apple files on both Wen's devices and Rivos' systems (despite Apple's ongoing refusal to identify specific files for Rivos to search).  (Kumar Decl. ¶ 16.)  The forensic examiner has created a copy of each of Wen's devices and accounts that purportedly contain Apple's "trade secrets," and Wen does not have access to those devices.  (Wen Decl. ¶¶ 6-7.)  Additionally, Rivos has undertaken to image many other computing devices to search for any Apple information.  This process is ongoing.

Counsel for Defendants informed Apple on May 11, 2022 that the investigation was in progress and that updates would be forthcoming.  (*Id.*, Ex. L.)  Counsel again requested that Apple provide forensic information to aid in this investigation.  (*Id.*)  Apple again refused to provide this information.  (*Id.*, Ex. M.)  It was not until the filing of Apple's motion that Apple provided the

1   requested forensic file information to counsel for Defendants (*see* Roffman Appendix B), revealing

2   that Apple had this information all along, but refused to share it.  The correspondence between the

3   parties reveals that Apple's goal here was to file a TRO whether warranted or not and seek discovery

4   from Rivos to "fish" for a claim because Apple does not have a claim of trade secret

5   misappropriation against Rivos that can survive a motion to dismiss.  In reality, the entire TRO is a

6   subterfuge to get early, one-sided discovery from Rivos—something not permitted under the Federal

7   Rules.

8           Rivos and Wen, for their part, have endeavored to investigate as comprehensively as possible

9   with the limited information provided to them.  But Apple is indifferent, dead set on seeking

10  emergency relief, rather than actually determining whether any trade secrets have been

11  misappropriated.

12          **C.      Apple Belatedly Identifies Its Alleged Trade Secrets**

13          On June 1, 2022, twelve days *after* filing its TRO motion and just two days before

14  Defendants' opposition to Apple's motion was due, Apple served its Trade Secret Identification

15  Statement ("TSI") on Defendants' counsel.[2]  Apple's TSI does not attach a single document it claims

16  as a trade secret.  Instead, Apple purports to identify as Apple's trade secrets: (i) documents vaguely

17  describing System on a Chip ("SoC") designs for a large number of different projects, identified by

18  code name only; (ii) each of the files listed in the 23-page appendix to the Roffman Declaration,

19  without any attempt to identify what information within those files is confidential, let alone a trade

20  secret; and (iii) four additional broad categories of information, with a single document identified

21  as an example of such information.  Apple's two-page TSI does not attempt to distinguish Apple's

22  claimed trade secrets from what is otherwise known to people in the field.  It fails to put Defendants

23  on notice as to what Apple claims as its trade secrets.

24          **D.      Defendants Will Voluntarily Provide Responsive Information In Good Faith**

25          The filing of Apple's *ex parte* motion was the first time that Apple shared with Defendants

26  the discovery requests it seeks the Court to order they answer on an expedited basis.  Apple's

27

28  [2]  Apple designated the entirety of the TSI "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" making it impossible for Defendants' counsel to discuss the disclosure with their clients.

discovery requests broadly seek discovery into undefined "Apple confidential documents and information related to SoCs or SoC components" provided to Rivos or "retained, downloaded, or transferred by any former Apple employees who were hired by Rivos." (Wilson Decl. Ex. S, RFP No. 1.)   As discussed above, Apple has made no effort to help counsel search for relevant "information related to SoCs or SoC components."  Moreover, this request would require Rivos to search not only its own systems, but also collect and search all personal devices for all of 42 former Apple employees to whom Apple has sent threatening letters.  Similarly, Apple seeks to force Rivos to respond to an interrogatory regarding "the current or last known location of any Apple confidential documents and information relating to SoCs or SoC components that were downloaded, transferred, or retained by any former Apple employees who are currently working for, or have worked for, Rivos." (*Id.*, Ex. R, ROG No. 3.)  This interrogatory is likewise impossible to answer without collecting and inspecting the personal devices of each of the 42 former Apple employees now employed by Rivos, none of whom are defendants to this action.

Apple has failed: (1) to identify any factual basis upon which to assert a claim against Rivos; (2) to identify its trade secrets with sufficient particularity, or (3) to justify the requested expedited and overbroad discovery requests to both Wen and Rivos.  Nevertheless, Defendants are willing to provide Apple with much of the discovery it seeks.  Defendants intend to respond to much of the expedited discovery prior to the June 16, 2022 hearing on Apple's motion.  Defendants expect that their ongoing investigation and commitment to provide Apple with prompt discovery responses will satisfy Apple's present demands and obviate the need for further action by this Court on Apple's motion.  Further, based on the information Rivos currently has from its investigation and the lack of evidence in Apple's complaint, Rivos expects to file a motion to dismiss and is hopeful that the Court will consider Defendant's good faith efforts to resolve this matter.

III.   **THE COURT SHOULD DENY APPLE'S REQUESTED TRO AGAINST WEN**

   A.   **Legal Standard**

   A TRO may be "granted only if there is a true emergency[.]" *R.F. by Frankel v. Delano Union Sch. Dist.*, 224 F. Supp. 3d 979, 987 (E.D. Cal. 2016) (citing *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974)). The interests of a party seeking a TRO must be "in urgent need of protection." *EpicentRx, Inc. v. Carter*, No. 20-CV-1058-LAB (LL), 2020 WL 12074498, at *1 (S.D. Cal. July 17, 2020) (citation omitted). That is, a TRO may be granted only on a clear evidentiary showing of an immediate and non-speculative irreparable injury. *Id.*; Fed. R. Civ. P. 65(b)(1)(A).

   The standards for issuing a TRO and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Instead, it is only appropriate "upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.  This requires that the plaintiff establish he or she "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20; *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009); *see also Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009); *Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

   B.   **No Exigent Circumstances Exist Warranting the Extraordinary Relief Sought**

   Apple has presented no evidence that it faces ***any*** risk of irreparable harm, much less that the risk will materialize absent a temporary restraining order before a properly noticed motion can be heard.  This alone is grounds to deny the Motion.

   Apple's Motion revolves around its allegations that: (1) before he left his employment at Apple, Wen copied alleged Apple trade secrets from his Apple iMac to an external hard drive; and (2) during his employment at Apple, Wen stored Apple confidential information in his iCloud drive, and Apple's forensic examiner did not find evidence that certain pieces of this information were deleted.  (Roffman Decl. ¶¶ 17-24.)  As to the hard drive, Wen was unaware he may have any Apple

information on this hard drive until Apple filed the lawsuit, he has never used or disclosed any of this information, and Wen **no longer has access to it**; it has been forensically preserved by Wen's discovery vendor.  (Wen Decl. ¶¶ 5-7.)  As to the iCloud drive, Apple's policies provided for its employees to use their personal iCloud drive to store Apple information, and Wen attempted to delete all Apple information in his iCloud drive on his last day of employment.  (*Id.* ¶ 7, Roffman Decl. ¶ 23.)  Similar to the hard drive, Wen was unaware that the iCloud may still contain Apple information until Apple filed this lawsuit, he has never used or disclosed any of this information, and he no longer has access to it.  (Wen Decl. ¶ 8.)  Apple fails to establish its purported sources of imminent and irreparable harm.

     **First**, Wen resigned from Apple on August 2, 2021.  (Wen Decl. ¶ 4; Complaint ¶ 53.)  His last day of work at Apple was August 6, 2021  (Complaint ¶ 57.)  All of Apple's allegations of misconduct by Wen are based on a forensic examination of an image of Wen's computer that Apple admits it made in *September 2021*.  (Roffman ¶ 14.)  Yet Apple waited another eight months to file this case, and another three weeks to seek *ex parte* relief.  Apple's delay justifies denying emergency relief.  *See Alatus Aerosystems v. Velazquez*, No. CV191869PSGJDEX, 2019 WL 7166987, at *2 (C.D. Cal. Oct. 2, 2019) (denying plaintiff's motion for a TRO in trade secret suit when "at least a month [passed] between Plaintiff's discovery of Defendant's conduct and [plaintiff's TRO request]"); *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *11 (N.D. Cal. Dec. 20, 2018) (same when less than three months passed); *Wang v. Kahn*, No. 20-cv-08033, 2020 WL 6891834, at *2 (N.D. Cal. Nov. 24, 2020) ("Moreover, Petitioner's claim of irreparable harm is further undermined by Petitioner's delay in filing the petition and TRO"); *Mission Power Engineering Co. v. Continental Cas. Co*., 883 F. Supp. 488, 492 (C.D. Cal. 1995) (the party who is seeking *ex parte* relief must show that he or she did not create the urgency that requires *ex parte* relief).  Indeed, Apple's motion does not contain **any** specific allegation of, much less evidentiary support for, any misconduct by Wen since his employment at Apple ended in August 2021.  Apple cannot credibly assert that its "concerns" over Wen's disclosure of its trade secrets are suddenly so critical that a TRO is warranted.  This also is sufficient grounds to deny the motion.  *Meritage Homeowners' Assoc. v. Bank of NY Mellon*, No. 16-cv-00300, 2017 WL 937729, at *2 (D. Or. Mar.

8, 2017) ("[O]n the record before the Court, there is no emergency justifying issuance of a TRO. As such, plaintiff's motion is denied.")

**Second,** Apple manufactures a variety of harms it might suffer if "a competitor" were to use its trade secrets. (Mot. at 18-20.) But the only "evidence" Apple presents of the harm it might theoretically suffer is a conclusory declaration that does not provide supporting facts demonstrating any actual risk of disclosure or use. *See* Murray Decl. ¶¶ 16-24; *see also BakeMark, LLC v. Navarro*, No. LACV2102499JAKAGPX, 2021 WL 2497934, at *10 (C.D. Cal. Apr. 24, 2021) ("The contention that Defendants may or plan to use Plaintiff's trade secrets . . . is not sufficient"). Not only has Apple presented no evidence that Wen has ever used or disclosed any of its trade secret or confidential information outside of his employment at Apple, but Apple cites no evidence supporting its premise that Wen will use these files in the future, nor could it given that Wen ***does not have access to the files***. (Wen Decl. ¶¶5-7.) Accordingly, Apple cannot establish even a possibility, much less a likelihood, that its "fears" (Mot. at 17) that Wen will disclose its trade secrets to a competitor will materialize absent emergency relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[P]laintiffs must establish that irreparable harm is likely, not just possible," for an injunction); *UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-CV-01704-EJD, 2017 WL 8294248, at *3 (N.D. Cal. Apr. 19, 2017) (denying request for preliminary injunction after the defendants declared they no longer possessed the plaintiff's information).

**Third**, Apple attempts to compensate for the complete lack of evidence that Wen will use or disclose any Apple trade secrets by mischaracterizing Wen as some kind of "bad actor." For example, Apple suggests Wen lied during his exit interview when he stated that he had returned or deleted all Apple information. (Mot. at 6-7.) But these statements are entirely consistent with Wen's honest explanation: as his employment with Apple was coming to an end, he wanted to keep the personal documents from his Apple iMac and thus took steps to transfer that personal information to an external hard drive, and he tried to delete all Apple information from his iCloud drive. (Wen Decl. ¶¶ 5, 8.) Indeed, Wen's explanation is ***consistent with*** the findings of Apple's own expert, who confirmed that Wen had hundreds of GBs of personal items on his iMac, that Wen appeared to have transferred a significant quantity of irrelevant files to the hard drive (demonstrating he

1    accidentally over included files), and that Wen appeared to have transferred and that "Wen took

2    steps to remove many Apple files from his iCloud Drive[.]"  (Roffman Dec., ¶¶ 16, 19, 23.)  Apple's

3    own allegations actually support that Wen did not realize he may have inadvertently retained Apple

4    information.  His representations that he had not done so were not lies intended to deceive Apple.

5         Because Apple has offered *no evidence* to suggest that Wen has ever used or disclosed any

6    Apple information outside of his employment at Apple, this case is thus readily distinguishable from

7    the cases on which Apple relies where imminent harm was found.  *See e.g. Waymo LLC v. Uber*

8    *Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *1 (N.D. Cal. May 15, 2017) (employee

9    searched plaintiff's system for certain files, "purloined" 14,000 files to his laptop, then moved files

10   from his laptop to an external drive); *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 19-

11   4162 SBA, 2021 WL 1186335, at *10 (N.D. Cal. Mar. 1, 2021), vacated in part, No. 2021-1839,

12   2022 WL 1530491 (Fed. Cir. May 16, 2022) (defendant shared plaintiff's trade secret files with co-

13   workers and a third party software developer who used the files); *Posdata Co. v. Kim, No. C-07-*

14   *02504RMW*, 2007 WL 1848661, at *8 (N.D. Cal. June 27, 2007) (plaintiff presented evidence

15   indicating that plaintiffs had actually used plaintiff's trade secrets.); *Cutera, Inc. v. Lutronic*

16   *Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1208-1209 (E.D. Cal. 2020) (same).

17        Apple's failure to show any risk of irreparable harm is sufficient to deny its Motion.

18   **C.    <u>Apple Is Unlikely To Succeed On the Merits Of Its Trade Secrets Claim</u>**

19        Apple's Motion fails for the additional reason that it has not and cannot establish a likelihood

20   of prevailing on the merits.  *See Winter,* 555 U.S. at 20.  Apple has not met its burden to show it is

21   likely to succeed as to all elements: (1) that it owned a protectable trade secret; (2) that Wen

22   acquired, disclosed, or used the alleged trade secret through improper means; and (3) Wen's actions

23   damages Apple.  *Comet Techs. USA Inc. v. Beuerman*, No. 1:18-cv-01441-LHK, 2018 WL 1990226,

24   at *3 (N.D. Cal. Mar. 15, 2018).

25

26

27

28

1

#### 1.    Apple Fails To Identify Trade Secrets With Sufficient Particularity

The law is clear that Apple must provide a particularized identification of the allegedly misappropriated trade secrets.  *Lamont v. Conner*, No. 5:18-CV-04327-EJD, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where "Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient particularity").  Yet, in another display of gamesmanship, Apple did not submit an identification with its moving papers.  Instead, it waited until just two days before this opposition was due to provide such an identification to counsel for Defendants.  Apple's belated disclosure only describes categories of information, like "Chip Specifications" or "SoC Roadmaps and Status Reports," instead of the alleged trade secrets themselves and provides little more specificity than its publicly-filed complaint.  (*See* Complaint, ¶ 78.)  This is insufficient.  *See, e.g.*, *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."); *Via Techs., Inc. v. Asus Computer Int'l*, No. 14-CV-03586-BLF, 2016 WL 1056139, at *3 (N.D. Cal. Mar. 17, 2016) ("[T]he disclosure claims that all of VIA's analog and digital schematics are trade secrets in their entirety […] the disclosure gives Defendants—and the court—practically no guidance on precisely what VIA claims as its trade secrets.").  Nor can Apple point to a stack of files and say its alleged trade secrets can be found somewhere within them.  *Via Techs., Inc.*, 2016 WL 1056139, at *3 (reference to "3300 pages [that] are simply whatever [plaintiff's] employees printed before they left" did not identify a trade secret).

*First,* Apple categorically and generally claims SoC designs and component designs for scores of different projects, identified only by internal Apple code name.  *Soc. Apps, LLC*, 2012 WL 2203063, at *4 ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1114-15 (N.D. Cal. 2016) (the "technique of listing general concepts or categories of information is plainly insufficient").

*Second,* Apple identifies a 23-page list of documents, without any indication of how those documents, or any information contained within those documents, constitute trade secret

information.  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. 819CV00220JVSJDEX, 2019 WL 8108729, at *4 (C.D. Cal. Sept. 3, 2019) ("identifying large numbers of documents without any reference to specific pages" is insufficient).

*Third,* Apple broadly identifies four categories of information, with a single example of a document that falls into each category.  These categories relate to the highly technical field of SoC architecture, development, and design.  Further, the alleged trade secrets, to the extent they can even be discerned at a categorical level, are "incremental variations" in a field that has been steadily developing for decades.  Yet Apple makes no effort to distinguish its trade secrets from that which came before them and is well known within the field.  *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808 WHA, 2021 WL 965349, at *2-3 (N.D. Cal. Mar. 13, 2021) (applying higher standard of particularity to "advances in the state of the art in a highly specialized technical field").  Indeed, while some features of Apple's SoC designs may be secret, Apple has failed to identify those features with any actual particularity, and many features have been publicly disclosed in patents and elsewhere, which "extinguishes the information's trade secret status."  *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020).

The requirement that a plaintiff identify its trade secrets with particularity applies with even more force here, where Apple seeks expedited discovery in an *ex parte* application for a restraining order before Rivos has even had a chance to respond to the complaint.  *See Comp. Econ., Inc. v. Gartner Grp., Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. May 25, 1999) (enumerating four reasons a plaintiff must disclose its trade secrets prior to discovery: discouraging the filing of meritless complaints, preventing "fishing expeditions," helping the court to determine the appropriate scope of discovery, and enabling defendants to form "complete and well-reasoned defenses.").  Having failed to identify with sufficient particularity its claimed trade secrets, or indeed any factual allegations supporting its misappropriation claim against Rivos, Apple should not be entitled to far-reaching discovery into Rivos' systems.

1

2.      Apple's Own Policy of Intermingling Work and Personal Information Is the

2                Problem

3        Apple's "security policies" are the root cause of the issues Apple now complains about and

4   also raise significant questions as to whether it maintained sufficient protections over its claimed

5   trade secrets.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.,* No. 18-CV-00933-MMC,

6   2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018) (trade secret owner must take reasonable efforts

7   to keep information secret).  Here, it is well known that Apple encourages its employees to connect

8   their Apple-issued laptops to their personal iCloud accounts, resulting in the intermingling of work

9   and personal materials.[3]  This intermingling means Apple documents routinely appear in personal

10  iCloud accounts, and employees are forced to try to separate their personal documents from their

11  work documents upon departure from Apple, often an imperfect process that must be conducted in

12  a very short time period.  Courts deny preliminary injunctions where, as here, the plaintiff fails to

13  show trade secrets were adequately protected.  *See, e.g.*, *Way.com, Inc. v. Singh*, No. 3:18-CV-

14  04819-WHO, 2018 WL 6704464, at *11 (N.D. Cal. Dec. 20, 2018).[4]

15                3.      Apple Fails to Establish Misappropriation

16       Misappropriation of trade secrets requires unauthorized disclosure, unauthorized use, or

17  acquisition by improper means.  18 U.S.C. § 1839(5).  As discussed above, Apple has no evidence

18  of any of this, and its misappropriation claims are thus unlikely to succeed on the merits.  Instead,

19  Apple's claim is premised on Wen potentially ***possessing*** Apple's trade secrets after he left Apple.

20  But it is well established that mere possession does not constitute misappropriation, thus "[m]ere

21  possession of trade secrets by a departing employee is not enough for an injunction."  *FLIR Sys.,*

22  *Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009) (citations omitted); *Be In, Inc. v. Google Inc.*,

23

24  [3]   Zoe Schiffer, *Apple Cares About Privacy, Unless You Work at Apple*, The Verge, Aug. 30,
    2021 <https://www.theverge.com/22648265/apple-employee-privacy-icloud-id.>

25
26  [4]   Apple cites a number of cases to support its argument that it took "reasonable measures" to protect
    its trade secrets.  (Mot. at 15.)  However, because those cases do not involve a circumstance where,
    as here, the plaintiff actively encouraged the defendant to link its personal and work information,
27  they are not applicable here.  *See, e.g., Comet Techs.*, 2018 WL 1990226, at *3; *Posdata*, 2007 WL
    1848661, at *4-5; *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1090-91 (E.D. Cal.
28  2012).

-13-                                    Case No. 5:22-CV-2637-EJD

12–CV–03373–LHK, 2013 WL 5568706, at *3 (N.D. Cal. Oct. 9, 2013) (dismissing trade secret appropriation claim where plaintiff failed to allege that defendant had acquired, used, or disclosed plaintiff's trade secrets by improper means); *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2021 WL 4073760, at *1 (N.D. Cal. Aug. 24, 2021), (denying preliminary injunction where "there are some arguable indications of misappropriation" but "[plaintiff's] evidence is, at best for it, equivocal.").

Apple cites no contrary authority. Indeed, in every single one of the trade secret cases Apple relies on, the plaintiff offered evidence of unauthorized access, use, or disclosure of those trade secrets, or both. *See Miloedu, Inc. v. James*, No. 21-CV-09261-JST, 2021 WL 6072821, at *2 (N.D. Cal. Dec. 23, 2021) (finding likelihood of success on the merits where plaintiff presented evidence that defendant forwarded plaintiff's materials to third parties); *Cutera*, 444 F. Supp. 3d at 1207 (finding likelihood of success on plaintiff's misappropriation claim when the plaintiff presented evidence that defendants' employees had "deployed" plaintiff's trade secrets); *Comet*, 2018 WL 1990226, at *1 *4 (granting TRO where the plaintiff presented evidence that defendant intentionally logged into and downloaded trade secret information related to a project he had never before accessed to a private memory device, and, even after being confronted about downloading that information during his exit interview, falsely stated that he had no company material on any external devices); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1075, 1077 (N.D. Cal. 2016) (finding likelihood of success on the merits where defendant emailed numerous trade secret documents to her personal email account, then attempted to erase those emails from her work email account, unlawfully accessed plaintiff's proprietary files from a personal device, and attempted to divert plaintiff's customers to her new employer); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 WL 2151553, at *10 (E.D. Cal. May 16, 2013) (finding that misappropriation likely occurred where plaintiff "present[ed] ample evidence that [d]efendants used [plaintiff's trade secrets] to solicit customers.").

Apple has no evidence of any actual "improper means" through which Wen allegedly acquired or used Apple's as-yet-unidentified trade secrets. No evidence exists that Wen accessed Apple's computer systems after he left, no evidence exists that the trade secrets were not accessible

Case No. 5:22-CV-2637-EJD
OPPOSITION TO APPLE'S *EX PARTE* MOTION

1   within the scope of Wen's employment at Apple, and no evidence exists that Wen inappropriately

2   obtained or misused any Apple materials.  As a consequence, Apple cannot demonstrate the element

3   of misappropriation, nor can it establish the requisite harm.  *Munns v. Kerry*, 782 F.3d 402, 411 (9th

4   Cir. 2015) ("Because [plaintiff's alleged harm] is based on a fear of speculative future injury, this

5   theory of injury fails.") (citation omitted); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674

6   (1931) (injunctive relief "will not be granted against something *merely feared* as liable to occur at

7   some indefinite time in the future.") (citations omitted) (emphasis added).

8       Apple has not carried its burden to show it is likely to succeed on its trade secret claim.

9       **D.    Apple Will Not Prevail On Its Breach Of Contract Claims**

10      Apple is also unlikely to succeed on its breach of contract claims.  Apple relies on its

11  allegations that Wen misappropriated Apple's trade secrets.  (Mot. at 16.)  Apple argues it will

12  prevail because Wen "certified at the time of his departure that he had returned all such information,

13  which was false in view of the hundreds of Apple confidential files he took with him." (*Id.* at 17.)

14  But Apple's conclusory statements, without supporting evidence, do not carry its burden, especially

15  in the face of the contrary evidence cited above.  *See* Wen Decl. ¶¶ 5-8; Roffman Decl. ¶¶ 16, 19,

16  23.

17      Moreover, even if Apple could theoretically prove some technical breach of the IPA due to

18  Wen's inadvertent retention of files, Apple cannot establish—and does not even attempt to argue—

19  that that it could ever satisfy the necessary element of "damage" arising from Wen's mere possession

20  of materials that he did not even know he had, and certainly never used.  *Tribeca Companies, LLC*

21  *v. First American Title Ins. Co*., 239 Cal.App.4th 1088, 1102 (2015) ("An essential element of

22  [breach of contract] claims is that a defendant's alleged misconduct was the cause in fact of the

23  plaintiff's damage.")  Now that Wen does not even ***possess*** the materials, there is no ongoing or

24  threatened breach that a temporary restraining order could address.

25      **E.    The Balance Of Equities Tilts Strongly In Wen's Favor**

26      Even if Apple had shown any threat of irreparable injury (it did not), it would be greatly

27  outweighed by the hardship to Wen, Rivos, other third parties, and the public interest by granting

28  Apple's requested injunction.

*First*, the proposed order is fatally indefinite, purporting to enjoin not only Wen but also "all persons in active concert or participation with him." (Proposed Order at 1.) Further, Apple demands that Wen "immediately return" "all Apple trade secret and confidential information taken with him upon leaving Apple's employ." (*Id.* at 2.) But Apple has not identified what its purported trade secrets are with any specificity, or what confidential information it contends needs to be returned. Moreover, Apple has designated its Trade Secret Identification "Attorneys' Eyes Only." Thus Wen (and this Court) cannot ascertain what information the requested injunction covers, making it impossible to enforce. An injunction governing trade secrets must be more specific. *See Action Learning Sys., Inc. v. Crowe*, CV 14-5112-GW(SHx), No. 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014) (finding it impossible to "see how a plaintiff can carry its heavy burden [for a preliminary injunction] without specifying what, exactly, it is trying to protect [and therefore,] the Court . . . could [not] possibly issue an order . . . without knowing what exactly the plaintiff owns.").

*Second,* the language of the order sweeps in undefined "confidential information" regardless of whether it reflects Apple trade secrets. Such an order is contrary to California law, which precludes employers "from restraining an employee from engaging in his or her 'profession, trade, or business,' ***even if such an employee uses information that is confidential but not a trade secret***." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 940 (2018) (quoting Bus. & Prof. Code § 16600) (emphasis added).

*Third,* given that Wen has never used and does not even possess the information at issue, the requested injunction is an impermissible "obey the law" injunction. Apple requests that Wen and "all persons in active concert or participation with him" be enjoined from "accessing, using, or disclosing, for any purpose, Apple's trade secret and confidential information[.]" (Proposed Order at 1.) Wen is already obligated not to use Apple's trade secret and confidential information, both by his various agreements with Apple, and by state and federal law. Apple's proposed injunction would add no obligations on top of those Wen already has. Thus the requested relief is just a command to "obey the law" and is both improper and unnecessary. *Cuviello v. City of Oakland*, No. C-06-5517 MHP (EMC), 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009); *see also Perez v.*

1   *Silva*, No. 15-cv-01771-EMC, 2015 WL 6957464, at *7 (N.D. Cal. Nov. 11, 2015) (denying request

2   for an injunction because it would be "tantamount to an obey-the-law injunction.").

3      *Finally,* given the vagueness of Apple's proposed order, Wen and other enjoined third parties

4   would be unduly restricted in their ability to do business, out of fear of potentially violating a court

5   order that prohibits even "accessing" anything that Apple may later deem to be its alleged trade

6   secret. Courts are hesitant to impose injunctive relief where, as here, "it will harm the interests of

7   the public or uninvolved third parties" such as other former Apple employees. *GSI Tech., Inc. v.*

8   *United Memories, Inc.*, No.: C 13-1081 PSG, 2013 WL 12172990, at *11 (N.D. Cal. Aug. 21, 2013);

9   *StrikePoint Trading, LLC v. Sabolyk*, No. SACV 07-1073 DOC (MLGx), 2009 WL 10659684, at

10   *6-7 (C.D. Cal. Aug. 18, 2009) (rejecting proposed injunction as overbroad given effect on third

11   parties).

12      **F.**  <u>**Apple's Requested TRO Is Not In The Public Interest**</u>

13      Apple's requested TRO would also have a chilling effect on competition in California.

14   Apple's conduct—including informing Defendants for the first time that Apple was accusing them

15   of trade secret misappropriation after the lawsuit was filed and refusing to engage with Defendants'

16   good faith investigation by providing any details regarding the documents it claims were

17   misappropriated so that Defendants could conduct searches—reveals that its true goal is not to

18   prevent Wen from using Apple's files (which he has already committed not to do and does not have

19   the ability to do), but rather to intimidate former Apple employees who might choose to leave their

20   employ at Apple and go to work for another company. Such conduct is in violation of California's

21   "strong public policy of protecting the right of its citizens to pursue any lawful employment and

22   enterprise of their choice." *AMN Healthcare*, 28 Cal. App. 5th at 935 (citation omitted).

23      Apple sent letters to 42 Rivos employees who previously worked for Apple as an

24   intimidation tactic. (See Wilson Dec. ¶ 8, Ex. F.) Apple does not even make any allegation of

25   wrongdoing for most of those 42 individuals, which include two former summer interns who

26   returned to school before joining Rivos, but has threatened them in correspondence in any event.

27   The court should not reward Apple's intimidation efforts by granting an unnecessary TRO against

28   Wen. The public interest is best served by "promoting competition, free from judicial intervention

-17-                      Case No. 5:22-CV-2637-EJD

OPPOSITION TO APPLE'S *EX PARTE* MOTION

1   that is improvident or warranted by only insubstantial grounds." *SRI Int'l v. Acoustic Imaging*

2   *Techs. Corp.*, No. C–92–5015–VRW, 1993 WL 356896, at *4 (N.D. Cal. Sept. 3, 1993).

3   **IV.     APPLE HAS NO BASIS TO SEEK EXPEDITED DISCOVERY**

4           The Court should also reject Apple's request for expedited discovery because: (1) Apple has

5   not, and cannot, establish the requisite good cause for circumventing normal statutory procedures;

6   and (2) Rivos and Wen will respond to many of Apple's information requests prior to the June 16

7   hearing.   Apple could have accomplished the exact same result by discussing these issues with

8   counsel for Defendants rather than filing for a TRO and expedited discovery.

9           **A.     Apple Has Not Established "Good Cause" for Expedited Discovery**

10          "[E]xpedited discovery is not the norm.  Plaintiff must make some *prima facie* showing of

11  the *need*  for the expedited discovery.'" *Extreme Reach, Inc. v. PriorityWorkforce, Inc.*, No. CV

12  17-6796 SJO (EX), 2017 WL 10544621, at *2 (C.D. Cal. Oct. 18, 2017) (citation omitted).  A party

13  can only meet this burden if it can establish "good cause," which Apple has not.  *See id.*  Indeed,

14  relevant factors weigh against expected discovery: "(1) whether a preliminary injunction is pending;

15  (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4)

16  the burden on the defendants to comply with the requests; and (5) how far in advance of the typical

17  discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067

18  (C.D. Cal. 2009) (citation omitted).

19          ***First,*** a motion for preliminary injunction is not pending.   This factor therefore favors

20  Defendants.

21          ***Second,*** Apple's discovery requests are overbroad.   Apple seeks discovery into undefined

22  "Apple confidential documents and information related to SoCs or SoC components" from Rivos

23  and unidentified former Apple employees (against whom it has no evidence of misappropriation or

24  other wrongdoing).   Courts regularly reject similarly expansive discovery requests.  *Apple Inc. v.*

25  *Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 1938154, at *3 (N.D. Cal. May 18, 2011)

26  (denying expedited discovery request for 30(b)(6) deposition and "broad and somewhat vague"

27  request for documents that would require defendant to "undertake a wide-ranging investigation to

28  determine whether any such documents exist").   Indeed, Apple's overly broad requests are

1    particularly problematic given that, as explained above, Apple has failed to identify its trade secrets

2    with any reasonable particularity.   Apple is seeking to win an injunction before identifying its

3    claims, then get "fishing expedition" discovery, then reverse engineer a claim presumably to be

4    adequately pled at some future time.   This is the exact opposite order of how litigation is supposed

5    to proceed and is improper.   *See Soc. Apps*, 2012 WL 2203063, at *2 (without a pre-discovery trade

6    secret identification, a plaintiff may abuse the discovery process and improperly "change its claims

7    to conform to the information defendant reveal[s] [during] discovery"); *Jobscience, Inc. v.*

8    *CVPartners, Inc.*, No. C 13–04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A

9    true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars

10    of the trade secrets without any discovery."); *Switch Comms. Grp. v. Ballard*, No. 2:11–cv–00285–

11    KJD–GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (pre-discovery identification "ensures

12    that [plaintiff] will not mold its cause of action around the discovery it receives").

13         **Third,** Apple seeks expedited discovery for improper purposes.   As an initial matter, Apple's

14    discovery requests are unrelated to its requested TRO and are instead aimed at obtaining discovery

15    that it hopes will discover a claim against Rivos.   Indeed, Apple's proposed TRO *applies only to*

16    *Wen,* yet it seeks expedited discovery *from Rivos (and thereby every Rivos employee)*.   Apple's

17    request is not "tailored for the narrow purpose of allowing Apple to better craft its request for a

18    preliminary injunction."   (Mot. at 24.)   Instead, it appears designed to "fish" for information to

19    support its otherwise deficient claim of misappropriation.   Indeed, the content of Apple's discovery

20    requests go directly to the merits of a trade secret appropriation claim and are improper for that

21    reason.   As Apple concedes, it seeks to "ascertain the full extent of" Wen's and Rivos' alleged

22    misappropriation, including "whether they continue to possess Apple's trade secrets unlawfully,"

23    "the scope of Rivos's possession," and the "scope of Rivos's efforts to encourage misappropriation."

24    (Mot. at 23.)   This is improper.   *Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for*

25    *Clinical Rsch.*, No. 16CV2762-LAB (BLM), 2016 WL 7325466, at *4 (S.D. Cal. Dec. 16, 2016)

26    (finding that plaintiff's expedited discovery requests were improperly directed toward the merits

27    when "[p]laintiff contend[ed] that the requested expedited discovery [was] needed to determine the

28    nature and scope of the alleged ongoing breach"); *see also Am. LegalNet, Inc.*, 673 F. Supp. 2d at

1069 (denying motion for expedited discovery where plaintiff sought discovery that was not "narrowly tailored to obtain information relevant to a preliminary injunction determination and instead goes to the merits of plaintiff's claims in this action.").[5]  This factor also favors Defendants.

**Fourth,** Apple's discovery requests are burdensome, including because Apple seeks production through Rivos of documents that are not within Rivos' possession, custody, or control. (*See* Wilson Decl. Ex. S.)  For example, Request for Production No. 4 asks for "documents sufficient to show the current location of and origin of all Apple confidential documents and information related to SoCs or SoC components that were provided to Rivos by any former Apple [sic], *or that were retained, downloaded, or transferred by any former Apple employees who were hired by Rivos*." *Id.* (emphasis added).  Complying with this would require Rivos to not only examine and inspect its own system for material that Apple has not identified and that Rivos has no reason to believe exists on its system, but also to somehow obtain, examine, and inspect employees' personal devices for materials whose existence Apple alleges solely through pure speculation.  Apple seeks the same type of information in its written discovery requests and requested 30(b)(6) deposition of Rivos.  (*See, e.g.,* Wilson Decl. Ex. R; Ex. V.)  This factor favors Defendants.  *See, e.g.*, *Wedge Water LLC v. Ocean Spray Cranberries, Inc.*, No. 21-CV-0809-GPC(BLM), 2021 WL 2138519, at *4 (S.D. Cal. May 26, 2021) ("Given the breadth of the discovery requests, the work that Defendant must perform to properly respond to the requests, and the requested time frame, the Court finds the discovery requests would impose an undue burden on Defendant."); *see also Profil Institut*, 2016 WL 7325466, at *3 (denying requests for expedited discovery when "the requests potentially include

---

[5]   Apple's authorities are inapplicable.  In *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849-50 (N.D. Cal. 2019), modified in part, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019), the plaintiff presented persuasive evidence that a defendant corporation had actually obtained trade secrets and used them to develop competing technology.  (emphasizing evidence of "implausibly fast development" of autonomous car by defendant and similar product features).  Similarly, in *Miloedu*, 2021 WL 6072821, at *2, the court granted expedited discovery when the plaintiff presented evidence that its former co-founder had actually shared the company's confidential information with others.  In contrast, here, Apple has not pointed to *any evidence* that its trade secrets have been shared, disclosed, or otherwise used by Wen or Rivos to support its request for expedited discovery.

a large number of documents" and "to respond accurately to the requests, Defendant will need to search digital emails and documents maintained by a variety of custodians.").

*Fifth*, Apple seeks an extraordinary and unnecessary acceleration of discovery. Apple contends that the parties' Rule 26(f) conference in this case is set to be conducted on July 7, meaning that "Apple is only seeking to advance the start of discovery by six weeks." (Mot. at 25.) But Apple neglects to mention that Apple agreed to Defendants' request to extend their deadline to respond to Apple's complaint to June 30, 2022. Dkt. 21. At that time, Rivos intends to move to dismiss the complaint, given Apple's failure to identify any facts specific to Rivos' conduct, which has the potential to dramatically change the scope of the case, and thus discovery. *Cf. Call Delivery Sys., LLC v. Morgan*, No. 20CV04637CBMPDX, 2020 WL 8410435, at *2 (C.D. Cal. June 26, 2020) (concluding that "timing does not support granting expedited discovery" when scheduling conference was two months away and "case is in its early stages").

The fact that Rivos and Wen have not yet responded to Apple's complaint also weighs in favor of denying Apple's request. Rivos and Wen should have an opportunity to challenge Apple's claims against them before Apple may pursue the expansive discovery it seeks. *Satmodo, LLC v. Whenever Commc'ns, LLC*, No. 3:17-CV-192-AJB-NLS, 2017 WL 4557214, at *5 (S.D. Cal. Oct. 12, 2017) (declining to grant expedited discovery while a motion to dismiss remained pending because "good cause requires the Plaintiff establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss") (citation and internal quotations omitted); *Profil Institut*, 2016 WL 7325466, at *4 (declining to grant expedited discovery because "[t]he Court's resolution of the pending motion to dismiss will significantly impact the scope and permissibility of any discovery[,]" and the "Defendant's answer, when and if filed, will further define the proper scope of discovery."). Apple may not "unlock the doors of discovery" with a deficient complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Finally*, Apple's unexplained delay in filing this lawsuit, then seeking a TRO and expedited discovery contrast sharply with its representations that "time is of the essence." (Mot. at 24.) Apple admits that it imaged Wen's computer on September 3, 2021 (Roffman Decl. ¶ 14), yet it waited eight months to file this case and another three weeks to seek *ex parte* relief, and readily agreed to

extend Defendants' deadline to respond to Apple's complaint.  *See* Dkt. No. 21.  It presents no evidence to suggest that circumstances today are any different than they were over the past nine months.  Apple may not now impose an accelerated discovery timeline on Defendants when its conduct prior to its surprise filing suggests circumstances are not pressing.  *Satmodo*, 2017 WL 4557214, at *5 ("Had the discovery been so urgent, Plaintiff should have filed this motion [for expedited discovery] at its earliest opportunity, and certainly not eight months down the line.  This fact alone warrants denying the motion.").[6]

## B.   Rivos And Wen Will Respond To A Number Of Apple's Requests

Apple has not met is burden to obtain any expedited discovery.  Unlike the cases cited by Apple, there is no evidence of any use or disclosure by any Defendant of any alleged trade secrets.  *Cf. Miloedu*, 2021 WL 6072821, at *4 (granting expedited discovery when the plaintiff presented evidence that its former co-founder had actually shared its confidential information with others); *WeRide Corp.*, 379 F. Supp. 3d at 849-50, 854-55 (granting expedited discovery when the plaintiff presented evidence that a defendant corporation had actually obtained plaintiff's trade secrets and used them to develop competing technology); *eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*, No. 21-CV-4061-YGR, 2021 WL 3052918, at *2 (N.D. Cal. July 20, 2021) (granting expedited discovery where the plaintiff presented evidence that individual defendants had shared and disclosed plaintiff's trade secrets for the benefit of the defendant corporation).  In any event, Apple's discovery motion is largely moot because Rivos intends to: (i) provide written responses as

---

[6]  Apple's baseless conjecture that "it is possible that relevant evidence will be lost" does not compel a different result. (*See* Mot. at 25.)  Rivos and Wen have already assured Apple that they are complying with their document preservation obligations, and "[i]t is only when there is a substantial, concrete reason to believe that evidence will be destroyed in spite of a litigation hold that extraordinary relief is warranted."  *Extreme Reach, Inc.*, 2017 WL 10544621, at *3.  Apple points to the fact that a number of former employees allegedly wiped their devices before returning them to Apple, but does not even allege that these employees retained or transferred any Apple materials, let alone offer any evidence to this effect.  But this alleged wiping of devices is at best a violation of Apple's policies and, in some instances, was done at the request of Apple or in conformance with Apple policies or common practices.  This is a far cry from the facts in *WeRide*, where plaintiff presented evidence that a defendant, who had two work-issued laptops, copied confidential files from one laptop, then deleted them, and wiped the other laptop.  379 F. Supp. 3d at 848, 854.  Speculation and innuendo are not "good cause," and do not justify the grant of extraordinary relief.

to whether Rivos has any Apple confidential documents and information related to SoCs or SoC components on its system and whether and how that information has been accessed or viewed by Rivos employees (*see* Wilson Decl. Ex. R); and (ii) conduct searches of its own systems for Apple confidential documents and information related to SoCs or SoC components (*see id.* Ex. S).  In addition, Wen intends to (i) provide to Apple's counsel the actual "computer device" (*i.e.*, hard drive) identified in the Roffman Declaration, or, if Apple prefers, a forensically imaged copy by a third party neutral examiner in a manner to be agreed upon by the parties (*see id.* Ex. U); and (ii) provide written responses regarding his retention, use, or disclosure of Apple confidential information (*see id.* Ex. T).  Apple has no basis to request more.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Rivos and Wen respectfully request that the Court deny Apple's motion in its entirety.


DATED:  June 3, 2022                                Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Stephen Swedlow*
STEPHEN SWEDLOW
DAVID EISEMAN
VICTORIA B. PARKER

Attorneys for Defendants Rivos Inc. and Wen Shih-Chieh a/k/a Ricky Wen