QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Stephen Swedlow (*Admitted Pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile: (312) 705-7401

  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendants Rivos Inc. and Wen Shih-Chieh a/k/a Ricky Wen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN and BHASI KAITHAMANA, <br><br> Defendants. | Case No. 5:22-CV-2637-EJD <br><br> **DECLARATION OF PUNEET KUMAR IN SUPPORT OF DEFENDANTS RIVOS INC. AND WEN SHIH-CHIEH'S OPPOSITION TO APPLE'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE** <br><br> Hearing Date: June 16, 2022 <br> Time:            9:00 a.m. <br><br> Trial Date:      None Set |

# DECLARATION OF PUNEET KUMAR

I, Puneet Kumar, declare:

1. I am a co-founder and the CEO of Defendant Rivos Inc. ("Rivos"). I make this declaration in support of Rivos and Defendant Wen Shih-Chieh's ("Wen") Opposition to Plaintiff Apple Inc.'s ("Apple") *Ex Parte* Motion for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause. The facts stated in this declaration are true and correct based on my personal knowledge, and if called and sworn in as a witness, I could and would testify competently to those facts.

**A.  Rivos Policies & Procedures Are Designed to Prevent Confidential, Proprietary, or Trade Secret Information from Entering Rivos**

2. I co-founded Rivos with the goal of creating new and novel technical solutions for today's computing industry. I have no intent to build a company that relies on any third parties' confidential information. Specifically, Rivos has no interest in relying on Apple information as Rivos builds its business. Rivos has therefore taken significant steps to prevent Apple confidential, proprietary, or trade secret information from entering Rivos.

3. In my role as CEO, I am knowledgeable about Rivos' policies regarding the hiring and onboarding of employees, which are intended to further Rivos' policy prohibiting the use of third party confidential, proprietary, or trade secret information at Rivos. Rivos diligently enforces its policies to ensure that no third party confidential, proprietary, or trade secret information is used in connection with Rivos' work.

4. After a future employee accepts a position at Rivos, Rivos discusses departure procedures that the candidate should follow when leaving his or her former employer, including Apple. These discussions take place before the future employee has provided notice to the former employer. I have personally participated in many such conversations.

5. Rivos advises its future employees that they may have very little time to collect their personal belongings from their former employer after providing notice. Thus, prior to providing notice, Rivos recommends that the future employee ensure all personal information (such as 401k account information) is transferred to a location in which he or she will be able to

access it after leaving his or her former employer.  Similarly, Rivos recommends that the future employee remove all personal content from his or her work-issued computer or phone.  This includes personal files, photos, and browser history.  This recommendation is based on the future employee's right to privacy in his or her personal materials; Rivos' suggestion that future employees remove their personal materials from their work-issued devices is not intended to encourage those employees to violate any obligations owed to their former employer or to bring with them any confidential, proprietary, or trade secret information from their prior employer.

6.   Rivos also recommends that the future employee check to make sure no work documents have synced to his or her personal iCloud or Google Drive accounts.  If there is any work content in the former employee's personal drives, Rivos instructs the former employee to remove it prior to providing notice to his or her former employer.  This is particularly important for Apple employees, as it is my understanding from having reviewed various publicly-available articles that Apple strongly encourages its employees to sync their work computers to their personal iCloud accounts.  As a result, I understand that Apple employees' work and personal information is often intermingled.

7.   Rivos encourages its future employees to put all work-issued devices (such as laptops, tablets, and phones) in their offices at their former employer prior to providing notice to their manager.  This ensures that all work materials are returned, even if the future employees are walked out of their former employers' premises quickly after providing notice.

8.   If a future employee is asked whether he or she is joining Rivos, Rivos recommends that the individual say "yes."  Otherwise, Rivos recommends that the future employee not discuss his or her new position, as this could be misinterpreted as encouraging his or her former colleagues to join Rivos.  To avoid any misunderstanding, future employees are encouraged not to discuss their new role at Rivos.

9.   Additionally, Rivos instructs its future employees to avoid saying anything negative about their former employer.  Instead, Rivos encourages its future employees to thank their former employer for their support and to make the transition of responsibilities to their former colleagues as smooth and seamless as possible.

10.     Rivos requires all incoming employees to sign an agreement stating that they will not bring third party confidential information to Rivos.  To my knowledge, every former Apple employees working at Rivos has signed such an agreement.

11.     Rivos seeks to hire the best and the brightest engineers.  It selects those engineers based on their qualifications and skillsets, not on their prior employer.  Rivos has no intention of using any Apple confidential, proprietary, or trade secret information and takes affirmative actions to ensure that this does not occur.

12.     Many of the former Apple employees who now work at Rivos are in different roles and work on different projects than they did at Apple.  Even employees with similar Apple and Rivos titles are working on very different technologies at Rivos compared to the technologies they worked on at Apple.  Apple's chips are designed for low power consumption and are intended to be used in consumer devices.  In contrast, Rivos' chips are designed for higher power consumption and are intended to be used in enterprise-grade technologies, such as servers.  Rivos and Apple use different instruction set architectures and very different software for their respective products: Apple uses ARM-based systems and a largely proprietary software stack, while Rivos uses RISC-V and open source software.

### B.     Summary of Internal Investigation to Date

13.     The first time Rivos learned that Apple was accusing it of trade secret misappropriation was on April 29, 2022 when I received a letter from Apple's counsel attaching Apple's complaint  After receiving Apple's complaint, Rivos promptly hired outside counsel to conduct an investigation into whether any Apple confidential, proprietary, or trade secret information had been transferred to or used at Rivos.

14.     To date, outside counsel has conducted 42 individual interviews of Rivos employees who previously worked at Apple, including all current Rivos employees who received letters from Apple regarding this case.  To date, counsel has conducted more than 18 hours of interviews to determine if any current Rivos employees who previously worked at Apple retained any devices or documents that could potentially contain Apple confidential, proprietary, or trade secret information.

15. Outside counsel is in the process of collecting documents and other information from a subset of employees for further analysis and review.

16. Outside counsel is also conducting searches within Rivos' internal document storage system to determine if any files within the Rivos system match the filenames identified in the May 20, 2022 Declaration of Daniel Roffman (filed at Dkt. No. 25). To date, these searches have not revealed any documents that match the files described in the Roffman declaration.

17. Rivos' internal investigation is ongoing. Rivos is continuing to invest considerable time and resources to conduct a thorough investigation and to ensure that no Apple confidential, proprietary, or trade secret information is being accused or used at Rivos.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 3rd day of June, 2022 at Mountain View, CA.

By: *Puneet Kumar*
Puneet Kumar