1   BRYAN WILSON (CA SBN 138842)
    BWilson@mofo.com
2   KENNETH A. KUWAYTI (CA SBN 145384)
    KKuwayti@mofo.com
3   MORRISON & FOERSTER LLP
    755 Page Mill Road
4   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
5   Facsimile:  650.494.0792

6   ARTURO J. GONZALEZ (CA SBN 121490)
    AGonzalez@mofo.com
7   DIEK O. VAN NORT (CA SBN 273823)
    DVanNort@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California 94105-2482
    Telephone: 415.268.7000
10  Facsimile:  415.268.7522

11  MARY PRENDERGAST (CA SBN 272737)
    MPrendergast@mofo.com
12  MORRISON & FOERSTER LLP
    2100 L Street, NW, Suite 900
13  Washington, District of Columbia 20037
    Telephone: 202.887.1500
14  Facsimile:  202.887.0763

15  Attorneys for Plaintiff
    APPLE INC.
16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                         SAN JOSE DIVISION

20   APPLE INC., a California corporation,          Case No.    5:22-CV-2637-EJD

21                   Plaintiff,                     **APPLE'S REPLY BRIEF IN
                                                    SUPPORT OF *EX PARTE* MOTION
22          v.                                      FOR TEMPORARY RESTRAINING
                                                    ORDER, EXPEDITED DISCOVERY,
23   RIVOS, INC., a Delaware corporation; WEN       AND ORDER TO SHOW CAUSE**
     SHIH-CHIEH a/k/a RICKY WEN, and BHASI
24   KAITHAMANA,                                    Date:  June 16, 2022
                                                    Time:  9:00 a.m.
25                   Defendants.                    Courtroom:  4, 5th Floor
                                                    Judge:  Hon. Edward J. Davila
26
                                                    Action Filed:  April 29, 2022
27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

   A.   Defendants Have Not Been Cooperative Before or After the Motion .................. 2

      1.   Defendants Mischaracterize the Parties' Discussions ............................... 2

      2.   Defendants Still Have Not Provided Details About Their
           Investigation .............................................................................. 4

   B.   Apple's DTSA and Breach of Contract Claims Are Likely to Succeed ............... 5

      1.   Apple Is Likely To Succeed On Its DTSA Claim ...................................... 5

         a.   Apple Has Identified Specific, Protectable Trade Secrets ............. 5

         b.   Wen Misappropriated Trade Secrets ............................................ 6

      2.   Apple Is Likely To Succeed on Its Breach of Contract Claim .................... 7

   C.   Apple Has Shown It Is Likely to Suffer Irreparable Harm ................................. 8

   D.   The Balance of Hardships Strongly Favors Apple .............................................. 10

   E.   The Public Interest Favors Apple ....................................................................... 11

   F.   Apple Requires Expedited Discovery ................................................................. 12

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alatus Aerosys. v. Velazquez*,
5
 2019 WL 7166987 (C.D. Cal. Oct. 2, 2019) ....................................................................10

6

*Albert's Organics, Inc. v. Holzman*,
7
 2020 WL 4368205 (N.D. Cal. July 30, 2020) ................................................................13

8

*Am. LegalNet, Inc. v. Davis*,
 673 F. Supp. 2d 1063 (C.D. Cal. 2009) ...........................................................................15

9

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
10
 28 Cal. App. 5th 923 (2018) .....................................................................................11, 12

11

*Apple Inc. v. Samsung Elecs. Co.*,
 2011 WL 1938154 (N.D. Cal. May 18, 2011) ..................................................................12

12

*Arc of Cal. v. Douglas*,
13
 757 F.3d 975 (9th Cir. 2014) ..........................................................................................10

14

*Autodesk, Inc. v. Zwcad Software Co.*,
15
 2015 WL 2265479 (N.D. Cal. May 13, 2015) ...................................................................6

16

*BakeMark, LLC v. Navarro*,
 2021 WL 2497934 (C.D. Cal. Apr. 24, 2021) ...................................................................9

17

*Be In, Inc. v. Google*,
18
 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) .....................................................................7

19

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
20
 2021 WL 1186335 (N.D. Cal. Mar. 1, 2021) ....................................................................8

21

*Chevron Mining Inc. v. Skanska USA Civil West Rocky Mountain Dist.*,
 2019 WL 11556996 (N.D. Cal. Sep. 3, 2019) .................................................................15

22

*Comet Techs. v. Beuerman*,
23
 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ...........................................................6, 7, 9

24

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
25
 444 F. Supp. 3d 1198 (E.D. Cal. 2020) .............................................................................7

26

*eHealthinsurance Servs. Inc. v. Healthpilot Techs., Inc.*,
 2021 WL 3052918 (N.D. Cal. July 20, 2021) ............................................................11, 15

27

*Extreme Reach, Inc. v. PriorityWorkforce, Inc.*,
28
 2017 WL 10544621 (C.D. Cal. Oct. 18, 2017) ...............................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
2013 WL 2151553 (E.D. Cal. May 16, 2013)...............................................................7

*Flir Sys., Inc. v. Parrish*,
174 Cal. App. 4th 1270 (2009) ................................................................................7

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072 (N.D. Cal. 2016) .................................................................7

*Intelliclear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020)...................................................................................7

*MedImpact Healthcare Sys., Inc. v. IQVIA Holdings, Inc.*,
2019 WL 6310554 (S.D. Cal. Nov. 25, 2019) ....................................................14, 15

*Meritage Homeowners Ass'n v. Bank of NY Mellon*,
2017 WL 937729 (D. Or. Mar. 8, 2017) ...............................................................10

*Miloedu v. James*,
2021 WL 6072821 (N.D. Cal. Dec. 23, 2021) ..............................................9, 14, 15

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995)........................................................................10

*Penson & Co., LLC v. Cloudstyle Store*,
2020 WL 11885744 (N.D. Cal. Aug. 27, 2020).....................................................12

*Profil Institut Fur Stoffwechselforschung GmbH v.*
*Profil Institute for Clinical Research*,
2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) .......................................................14

*Pyro Spectaculars N., Inc. v. Souza*,
861 F. Supp. 2d 1079 (E.D. Cal. 2012)............................................................11, 14

*SocialApps, LLC v. Zynga, Inc.*,
2012 WL 2203063 (N.D. Cal. Jun. 14, 2012) .......................................................13

*Switch Commc'n. Grp. v. Ballard*,
2012 WL 2342929 (D. Nev. Jun. 19, 2012) ..........................................................13

*Tesla, Inc. v. Khatilov*,
2021 WL 624174 (N.D. Cal. Jan. 22, 2021) ...........................................................9

*UCAR Tech. (USA) Inc. v. Yan Li*,
2017 WL 8294248 (N.D. Cal. Apr. 19, 2017) .........................................................9

*Wang v. Kahn*,
2020 WL 6891834 (N.D. Cal. Nov. 24, 2020).......................................................10

*Way.com, Inc. v. Singh*,
    2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) ............................................................................10

*WeRide Corp. v. Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ...................................................................6, 8, 10, 11

*Wisk Aero LLC v. Archer Aviation, Inc.*,
    2021 WL 4073760 at (N.D. Cal. Aug. 24, 2021).......................................................................7

**Statutes and Other Authorities**

18 U.S.C. § 1839(6) .............................................................................................................................6

Fed. R. Civ. P. 65(d)(2)(C) ...............................................................................................................10

Cal. Civ. Proc. Code § 2019.210...................................................................................................6, 13

1    **I.    INTRODUCTION**

2         Five weeks after Apple filed suit, Defendants Rivos and Wen still have not returned any

3    of the Apple documents taken by Wen or Rivos' other employees and have not shared any

4    meaningful details of their investigation.  Rivos inserted itself into the middle of Apple's efforts

5    to get its documents back from its former employees, blocking Apple from contacting them.  But

6    Rivos's Opposition says nothing about them.  It does not address the documents they retained. It

7    does not say the documents were not used.  It does not even claim the documents are segregated.

8         Rivos and Wen (hereafter "Defendants") claim they are being cooperative and there was

9    no need to file this motion.  They fail to acknowledge that Apple repeatedly requested that the

10   parties agree on a forensic protocol, proposed twice that the parties agree to targeted expedited

11   discovery, and twice offered to provide search terms to aid Defendants' review.  Defendants

12   never agreed to any of this, or even to return any of Apple's documents.  It took filing this motion

13   to get Defendants to state, for the first time in their Opposition, that they are willing to return at

14   least some of Apple's information and to provide some discovery—though they do not say what.[1]

15        Even in their Opposition Defendants remain cagey.  They do not share the results of their

16   investigation or submit a declaration from their forensic vendor.  Instead, they provide high level,

17   unsupported declarations from Wen and Rivos's CEO, which deliberately obscure the key issues.

18   For example, although they surely knew Wen has Apple documents, Defendants would not even

19   acknowledge it, carefully stating only that he "may" have retained documents.  Their counsel has

20   finally reluctantly admitted that Wen did.  Rivos's CEO provides only a terse, third-hand

21   "summary" of a purported investigation that ignores the over 40 other former Apple employees,

22   except to state counsel is "collecting documents and other information from a subset" for further

23   review.  This suggests Defendants know they took Apple documents, but he provides no details.

24        Defendants also mischaracterize the law and the facts, which strongly support granting the

25   narrow relief Apple seeks.  Wen should be ordered to return the Apple documents he took and to

26

27   _____
     [1] The afternoon this brief was due, Defendants made a last minute proposal directed at the
     TRO/OSC portion of the motion only.  Because of the timing, Apple has not been able to consider
28   it, but will inform the Court if the parties reach an agreement that impacts any part of the motion.

1    refrain from using Apple confidential information.  Defendants submit no evidence that this

2    would cause hardship.  And Apple needs targeted expedited discovery so it can test Defendants'

3    conclusory assertions and determine the extent to which its documents are being used.

4    **II.    ARGUMENT**

5         **A.    Defendants Have Not Been Cooperative Before or After the Motion**

6              **1.    Defendants Mischaracterize the Parties' Discussions**

7         In a case like this, a cooperative defendant will promptly agree on a process to identify

8    and return confidential information taken by the plaintiff's former employees.  An example is

9    Kaithamana, who departed Rivos prior to Apple filing this lawsuit and is represented by separate

10   counsel.  Apple and Kaithamana stipulated that he would return any Apple confidential

11   information in his possession, agree to a forensic investigation, and be enjoined from "accessing,

12   using, or disclosing" Apple confidential information.  (Dkt. 19 at 2-3.)  Defendants, in contrast,

13   never even stated they were willing to return anything until this motion was filed.

14        Defendants claim Apple refused to provide "basic forensic information so that they could

15   investigate Apple's claims."  (Dkt. 40 ("Opp.") at 4.)  This is not true.  Apple first provided

16   detailed information *in the Complaint* showing how Wen downloaded and transferred Apple

17   information to specific devices and the cloud on specific dates.  (*See* Dkt. 1 ¶¶ 52-57.)  It

18   provided similar detail regarding Kaithamana.  (*Id.* ¶¶ 42-45.)  Apple also described actions taken

19   by other Apple employees who connected external drives, transferred information, or wiped their

20   devices before leaving.  (*Id.* ¶¶ 58-64.)  The Complaint did not identify these employees to avoid

21   naming them in the public record.  But Apple provided Rivos with copies of the letters it sent to

22   each of them.  (Dkt. 22-6 ("Wilson Dec.") ¶ 10, Ex. K.)  These letters included details of specific

23   actions each employee took that cause Apple to believe they retained documents or deleted

24   information.  *See* Declaration of Kenneth Kuwayti ("Kuwayti Dec.") Ex. A (example employee

25   letter).  Defendants had the "basic forensic information" they needed over five weeks ago.

26        Apple also repeatedly proposed that the parties mutually agree on a protocol for an

27   independent forensic vendor, and offered to provide forensic information as part of that process.

28   Defendants would not agree, insisting they had to complete their own investigation before even

considering the idea.  (*See* Wilson Dec. Exs. H at 2, J, K at 2, L at 2, M, N.)

Defendants' claim that "Apple has made no effort to help counsel search for relevant 'information…'" also is not true.  (Opp. at 6.)  Apple *twice* offered to provide search terms to assist Defendants in their investigation—before and after filing its motion—but Defendants never took Apple up on this either.  (*See id.* Ex. M at 2; Kuwayti Dec. Ex. B at 2.)

Defendants also complain that "Apple *never* shared" the expedited discovery requests with them.  (Opp. at 1 (emphasis in original.)  But Apple proposed *twice* that the parties agree to expedited discovery—before and after filing the motion.  (*See* Wilson Dec. Ex. M at 2; Kuwayti Dec. Ex. B at 2.)  Apple described the proposed discovery as essentially what it seeks now: "That discovery will be focused on the retention, use, and disclosure of the confidential information that was taken from Apple, and Rivos' knowledge of it, and would consist of the forensic reports generated from your investigation and no more than five interrogatories, five document requests, and a 30(b)(6) deposition, which we can serve immediately."  (Wilson Dec. Ex. M at 2.)  Defendants never addressed the expedited discovery proposal or asked to see proposed requests.

Rivos has blocked Apple from getting its documents back from its former employees directly.  Its in-house counsel responded to the letters on their behalf, promising outside counsel would respond "more fully in due course."  (Dkt. 23-1 ("Br.") at 10 (citing Wilson Dec. Ex. I).)  This prevented Apple from contacting them further.  But Rivos's counsel has never responded to the employee letters, and despite Apple's requests, would not say if it represents them.  (*See* Wilson Dec. Exs. K, M.)  Counsel has told Apple it may not contact them.  (Kuwayti Dec. ¶ 8.)

One employee responded immediately, confirming he had retained Apple information and wanted to resolve the issue "in a constructive manner."  (*Id.* Ex. G.)  But when Apple wrote back he directed Apple "to Rivos' corporate lawyers." (*Id.*)  Defendants have never responded further on his behalf.  Defendants have not returned his documents, and their opposition says nothing about any attempt to segregate the documents he retained or whether they have been used.

Defendants provide no information about the documents retained by any other employees either.  Despite telling Apple they anticipated "being able to respond to the requests Apple made regarding each employee by May 31" (*see id.* Ex. L), they have provided nothing at all.

Defendants' Opposition stated for the first time that Wen intends to provide his computer device to Apple.  (Opp. at 23.)  Wen should have provided it weeks ago and should be ordered to return Apple's information.  Apple followed up on June 7 to request the device, but has yet to receive it.  (Kuwayti Dec. ¶ 5 and Ex. C.)  Defendants are trying to preclude Apple from putting the evidence of the documents Wen retained before the Court on this motion.

### 2. Defendants Still Have Not Provided Details About Their Investigation

Defendants chose not to submit a declaration from their forensic vendor.  Instead they rely on declarations from Wen and Rivos's CEO, Puneet Kumar, who describes the investigation from a 10,000 foot level.  Neither declaration has any evidentiary support whatsoever.

Defendants have finally confirmed Wen retained Apple confidential information.  In the Opposition Wen admitted only that he "may have" transferred some Apple files to an external drive, despite saying he looked at his drives after receiving Apple's letter.  (Dkt. 40-2 ("Wen Dec.") ¶ 6.)  Their forensic vendor of course knew the answer, but Defendants too stated only that Wen "may have" retained Apple documents.  (*See* Opp. at 2, 7, 10.)  During a June 9 call, Apple asked Defendants' counsel if Wen's drive contains any of the documents in Roffman Appendix B.  After initially claiming he did not know, counsel admitted that it did.  (Kuwayti Dec. ¶ 7.)  He refused to provide a file listing report, which would list the documents on the drive.  (*Id.*)

Kumar's declaration spends just seven sentences describing the investigation.  (Dkt. 40-1 ("Kumar Dec.") ¶¶ 14-17.)  He does not purport to have personal knowledge of it, and merely describes what outside counsel is doing, or has said the forensic vendor is doing.  (*See id.*)  The one concrete detail he gives is that counsel conducted "more than 18 hours of interviews" of the 42 employees—about 25 minutes per employee.  (*Id.* ¶ 14.)  Those interviews apparently revealed relevant information, since Kumar states "[o]utside counsel is in the process of collecting documents and other information from a subset of employees for further analysis and review."  (*Id.* ¶ 15.)  But Kumar provides no details of whose documents are being reviewed or why.

The only search Kumar describes that Rivos has made of its systems is for the filenames identified in Roffman Declaration Appendix B.  (*Id.* ¶ 16.)  This is only a subset of the Apple documents that Roffman was able to determine Wen took.  (Dkt. 22-4 ("Roffman Dec.") ¶ 20.)  It

1   also does not contain any of the files taken by others.  It is a fraction of the documents taken.

2   And even this limited search is not complete.  (Kumar Dec. ¶ 17.)  Kumar never says Rivos is

3   searching its systems for any other Apple documents, including documents from Kaithamana, the

4   employee who admitted he had Apple documents (Wilson Dec. Ex. G) or any of the other former

5   Apple employees who Apple has shown took Apple files.  (*See* Roffman Dec. ¶¶ 25-36.)  He does

6   not state that Rivos does not possess, or has not used, any other Apple documents or information.

7   He does not claim any documents have been segregated.  His silence speaks volumes.

8           **B.      Apple's DTSA and Breach of Contract Claims Are Likely to Succeed**

9           Apple prevails if it shows either "a likelihood of success" or "serious questions going to

10  the merits" and a hardship balance that tips sharply towards it.  (Br. at 12.)  Apple satisfies both.

11                 **1.      Apple Is Likely To Succeed On Its DTSA Claim**

12                        **a.   Apple Has Identified Specific, Protectable Trade Secrets**

13          Apple identified specific trade secret documents that Wen took.  These include the chip

14  specification for an unreleased Apple product, results of engineering simulations, development

15  roadmaps, and register transfer level design files.  (*See* Br. at 14 (citing Roffman Dec. ¶¶ 14-24;

16  Dkt. 22-3 ("Murray Dec.") ¶¶ 8-15.)  These are not "categories" of information (Opp. at 11), but

17  specific documents identified by file name.  (Murray Dec. ¶¶ 8, 12-14.)  Apple also showed Wen

18  retained numerous other trade secret files.  (*See id.* ¶¶ 13-14; Roffman Dec. Ex. B.)  Defendants'

19  brief did not deny Wen took these documents.  They now admit he did.  (Kuwayti Decl. ¶ 7.)

20          There can be no question these documents are trade secret.  They include Apple's "crown

21  jewels."  Apple described in detail how these documents derive value from not being known to

22  competitors.  (*See, e.g.,* Murray Dec. ¶¶ 4-6, 16-19.)  Apple takes extensive measures to keep

23  them secret.  (*See id.* ¶¶ 5-7; Dkt. 24 ("Cerny Dec.") ¶¶ 2, 4, 5, 7-9 and Exs. B, D.)  Defendants

24  do not rebut this, and argue only that because "Apple encourages its employees to connect their

25  Apple-issued laptops to their personal iCloud accounts" the trade secrets were not adequately

26  protected.  (Opp. at 13.)  Defendants do not show this has led to any trade secrets being disclosed.

27  Their support for this argument is an article that confirms Apple requires its employees to remove

28  Apple information from their personal iCloud accounts when they leave.  (*See id.* at 13 n.3.)

Defendants' reliance on California Code of Civil Procedure 2019.210 is a red herring.  (*Id.* at 11.)  If the Court elects to apply the statute here, it pertains to identifying trade secrets "before commencing discovery."  Apple was not required to submit a separate trade secret identification with its TRO motion.  It has already identified "protectable trade secret[s]" that were taken.  (*See* Opp. at 11); *see Autodesk, Inc. v. Zwcad Software Co.*, 2015 WL 2265479, at * 5 (N.D. Cal. May 13, 2015) (to state a claim, plaintiff must state it "owned a trade secret").  And as discussed in section F below, Apple has adequately identified its trade secrets for purposes of this motion.

### b.  Wen Misappropriated Trade Secrets

Apple has shown Wen (1) signed an IPA promising not to retain confidential information, (2) copied thousands of files to an external drive in his last days before leaving for a competitor, (3) deleted his recent messaging history and numerous files to cover his recent activity, and (4) just days later, falsely confirmed that he had no external devices containing Apple information, while reaffirming his obligation to return confidential information.  Wen therefore acquired Apple's trade secrets through improper means.  *See* 18 U.S.C. § 1839(6) ("improper means" includes "theft," "misrepresentation," or "breach of a duty to maintain secrecy").

Wen does not deny any of this, and his counsel has now confirmed some of it.  That is enough to show Apple is likely to succeed on misappropriation.  As this Court has noted, courts recognize this type of behavior "can be evidence of trade secret misappropriation supporting injunctive relief."  *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 848 (N.D. Cal. 2019) (citing cases).  In *WeRide*, like Wen here, the defendant signed a confidentiality agreement, copied confidential information to his personal device, and then denied accessing the files.  *Id.*  Again like Wen, he then deleted files and some of his work history.  (*Id.*; *see* Roffman Dec. ¶ 14.)  The Court found the plaintiff had shown a likelihood of success.  *WeRide*, 379 F. Supp. 3d at 848.

The court in *Comet Techs. v. Beuerman* also issued a TRO on remarkably similar facts.  2018 WL 1990226, at *4 (N.D. Cal. Mar. 15, 2018).  There, as here, the defendant downloaded thousands of files the day before leaving for a competitor, then reaffirmed his confidentiality commitments in his exit interview and falsely stated he had not retained any information.  In granting the TRO, Judge Koh found "Defendant knew or had reason to know" that his downloads

1   and retention of files were "theft or, at minimum, a breach of Defendant's contractual duty to

2   maintain secrecy." *Id.*  And if he was at all unclear, "the exit interview would have dispelled any

3   doubts[.]" *Id.*; *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016)

4   (finding likelihood of success on misappropriation where defendant "e-mailed and downloaded"

5   confidential information to her personal devices before leaving for a competitor).

6          Defendants rely primarily on cases where, unlike here, the plaintiff was seeking a TRO

7   against the company that hired the former employee, not the employee.  In *Wisk Aero LLC v.*

8   *Archer Aviation, Inc.*, plaintiff showed the individual defendant downloaded files, but not

9   misappropriation by the company.  2021 WL 4073760 at **23-24 (N.D. Cal. Aug. 24, 2021);

10  *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1212 (E.D. Cal. 2020) (TRO

11  against new employer); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.,* 2013 WL 2151553 (E.D.

12  Cal. May 16, 2013) (same).  Unlike in *Wisk*, Apple seeks a narrow injunction against Wen, and

13  has demonstrated he acquired trade secrets through improper means.[2]  Wen also argues Apple

14  cannot "establish the requisite harm," citing two non-trade secret cases.  (Opp. at 15.)  Under the

15  DTSA a plaintiff need only show the misappropriation "caused or threatened damage."

16  *Intelliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).  Given Wen's

17  actions, and the extreme sensitivity of what he took (Murray Dec. ¶¶ 2-23), Apple easily meets

18  this standard.

19                   **2.     Apple Is Likely To Succeed on Its Breach of Contract Claim**

20         Defendants do not dispute that Wen signed a valid agreement requiring him to return

21  Apple's confidential information when he left.  Apple identified specific confidential documents

22  Wen retained, (Roffman Dec. ¶¶ 15-24, Ex. B; Murray Dec. ¶¶ 8-15), and he does not deny he

23  retained them.  Wen also falsely certified that he had returned these documents.  (Cerny Dec.

24  Ex. C.)  These are not "conclusory statements, without supporting evidence."  (Opp. at 15.)

25  _____

26  [2] *Be In, Inc. v. Google* and *Flir* have very different facts.  In *Be In* the court dismissed the trade secret claim because, unlike here, plaintiff had not alleged breach of the parties' NDA, which it noted *would* have constituted "improper means."  2013 WL 5568706, at *3 & n. 2 (N.D. Cal. Oct.

27  9, 2013).  In *FLIR* the court found the defendant copied information onto an external drive for his job duties months before resigning, and destroyed the information long before suit was filed

28  because it was inaccessible.  *Flir Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1278-79 (2009).

1    Defendants argue Apple cannot show damage "arising from Wen's mere possession of

2    materials that he did not even know he had, and certainly never used." (Opp. at 15.) But

3    Defendants rely only on Wen's unsupported declaration, even though they have a forensic expert.

4    Apple has shown Wen downloaded a massive quantity of Apple's most sensitive information

5    during his final days, deleted numerous files and messaging history, and falsely confirmed he had

6    not retained anything mere hours later. Wen acknowledged breaching his IPA would cause Apple

7    irreparable harm. (Br. at 17; Cerny Dec. Ex. A, § 5.0.) This is more than sufficient to show a

8    likelihood of success and "serious questions" going to the merits. A plaintiff "is not required to

9    prove its case" at the preliminary injunction stage. *WeRide*, 379 F. Supp. 3d at 848-49.

10    **C.    Apple Has Shown It Is Likely to Suffer Irreparable Harm**

11    Apple has shown it is likely to succeed on its misappropriation claim, and "courts within

12    this District have consistently reached the conclusion that a plaintiff will suffer irreparable harm

13    if its proprietary information is misappropriated." *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys.,*

14    *Inc.*, 2021 WL 1186335, at *10 (N.D. Cal. Mar. 1, 2021) (citation omitted). Defendants try to

15    avoid this with Wen's vague, self-serving declaration which, consistent with his past behavior,

16    withheld the key information that he kept Apple's documents, as did the Opposition.

17    Defendants do not dispute any of the details from Apple's forensic expert. Wen does not

18    dispute that the "entire folder" Wen copied (Wen Dec. ¶ 5) contained thousands of non-personal

19    files, including files marked confidential and proprietary. (Roffman Dec. ¶ 20.) He does not

20    argue he had a business justification. He does not dispute he spent days selecting what to retain

21    or delete. (*Id.* ¶¶ 15-24.) He does not address, or explain, the deletion of his message histories

22    and numerous files on his work laptop before returning it (*see id.* ¶ 14). He also does not dispute

23    that he falsely confirmed he had returned all Apple information during his exit interview.

24    Defendants could have submitted a declaration from their forensic vendor but did not.

25    Wen expects Apple and the Court to simply take his word that he did not access any documents

26    when he was not even forthcoming enough to say he retained them. Given the care Wen took to

27    select and copy files and the admonitions he received from Apple mere hours later, Wen's claim

28    that he accidentally transferred 200 GB of Apple files is not plausible.

Here, as in *Comet*, Apple's concerns are "justifiably heightened" by Wen's conduct and false representations during his exit interview, and his work for a direct competitor. *See Comet*, 2018 WL 1990226 at *5. As in *Comet*, these facts, along with the volume and sensitivity of the information Wen took, are sufficient to demonstrate irreparable harm. *Id.*; *see also Tesla, Inc. v. Khatilov*, 2021 WL 624174, at **1-3 (N.D. Cal. Jan. 22, 2021) (finding irreparable harm where defendant downloaded thousands of confidential files in his last days, failed to show business justification, and claimed he "forgot" he had done so). Defendants also do not mention or refute that Wen's IPA with Apple provides that any breach would cause irreparable harm or that courts give weight to such a clause when considering irreparable harm. (Br. at 19 (citing *Miloedu v. James*, 2021 WL 6072821, at *3 (N.D. Cal. Dec. 23, 2021).)

This case is not like *BakeMark, LLC v. Navarro*, 2021 WL 2497934, at *10 (C.D. Cal. Apr. 24, 2021). There, defendants *never* had access to the recipes they were accused of stealing, and had only emailed customer lists to themselves to carry out their job when working from home due to COVID. And in *UCAR Tech. (USA) Inc. v. Yan Li*, 2017 WL 8294248, at *3 (N.D. Cal. Apr. 19, 2017), in stark contrast to here, defendants submitted a detailed declaration from a forensic investigator and each defendant confirming (1) they had deleted the information at issue, (2) they only had it for a few days, and (3) there was no evidence any of it had been transferred in that time. No. 5:17-cv001704-EJD, ECF No. 31 at 5-6, 17-20; ECF No. 31-23 ¶¶ 6-8.

Defendants argue the work Wen is doing at Rivos is not the same as what he was doing at Apple, but never explain why, opaquely referring to "implementing a root of trust for higher powered systems." (Opp. at 3.) Apple explained why the documents that Wen took would be "transferrable to a different architecture." (Murray Dec. ¶ 18.) Defendants did not rebut this, and do not show the information Wen retained would not be relevant to Defendants' work.

Defendants next argue that "Apple's delay justifies denying emergency relief." (Opp. at 8.) Apple filed this suit when it did because the harm grew and became more apparent over time, as Rivos continued to target Apple's key SoC engineers right up until this lawsuit was filed in late April 2022 (and beyond), eventually hiring over 40. (*See* Br. at 5; Cerny Dec. ¶ 10; Murray Dec. ¶ 15.) As the Ninth Circuit has held, "tardiness is not particularly probative in the context of

1    ongoing, worsening injuries" where "the magnitude of the potential harm [became] apparent

2    gradually." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990-91 (9th Cir. 2014) (reversing denial of

3    preliminary injunction).  Apple did not unduly delay, and Defendants certainly cannot fault Apple

4    for waiting "three weeks" to bring this motion after filing suit: Apple was trying to negotiate a

5    compromise with Defendants during that time.  (*See* Wilson Dec. Exs. H-M.)  In any event,

6    "delay is but a single factor to consider in evaluating irreparable injury [and] courts are 'loath to

7    withhold relief strictly on that ground.'"  *Arc of Cal.,* 757 F.3d at 990 (citation omitted).

8            Defendants' cases do not hold otherwise.  In *Alatus* and *Mission Power*, the courts denied

9    requests for *ex parte* relief, but allowed the plaintiffs to seek relief through a noticed motion, just

10   as this Court has done.  *See Alatus Aerosys. v. Velazquez*, 2019 WL 7166987, at *3 (C.D. Cal.

11   Oct. 2, 2019); *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492-93 (C.D. Cal.

12   1995).  In the other cases, the court found serious deficiencies with plaintiffs' motions.  It did not

13   deny them based on delay alone.  *See Wang v. Kahn*, 2020 WL 6891834, at * 2 (N.D. Cal. Nov.

14   24, 2020) (expressing "serious doubts about the merits of Petitioner's claims"); *Way.com, Inc. v.

15   Singh*, 2018 WL 6704464, at *11 (N.D. Cal. Dec. 20, 2018) (plaintiff did not show "protectable

16   trade secrets"); *Meritage Homeowners Ass'n v. Bank of NY Mellon*, 2017 WL 937729, at *2 (D.

17   Or. Mar. 8, 2017) (plaintiff did not show "why money damages would be inadequate").

18           **D.      The Balance of Hardships Strongly Favors Apple**

19           In contrast to Apple, Defendants do not submit *any* evidence of how they would be

20   harmed by the requested TRO.  Defendants do not even claim an order to return the documents

21   would harm Wen, nor could they. They challenge the "use" part of the proposed order by

22   attacking its wording.  But the language used is common for trade secret injunctions and mirrors

23   language Defendants' same firm proposed to this Court in *WeRide*, which the Court accepted.

24           Defendants argue "the proposed order is fatally indefinite, purporting to enjoin not only

25   Wen "but also 'all persons in active concert or participation with him.'"  (Opp. at 16.)  But this

26   language comes from Rule 65 and is commonly used.  Fed. R. Civ. P. 65(d)(2)(C); *see, e.g.,*

27   *WeRide*, 379 F. Supp. 3d at 855 (enjoining defendants "and all persons acting under, in concert

28   with, or for any one of them"); *WeRide*, No. 5:18-cv-07233-EJD, Dkt. 65 at 2.  (Dec. 26, 2018).

1    Defendants also argue an injunction requiring Wen not to use "'Apple's trade secret and

2    confidential information'" would be "impossible" to comply with.  (Opp. at 16.)  But at the same

3    time, Defendants argue the injunction should not be ordered because Wen "is already obligated

4    not to use Apple's trade secret and confidential information" by law and by contract, and it

5    "would add no obligations on top of those Wen already has."  (*Id.*)  As these fundamentally

6    inconsistent arguments show, Wen already has to respect this boundary.  Significantly, Wen did

7    not submit any testimony stating he would find it difficult to comply with such an injunction.

8    Defendants argue this is "an impermissible 'obey the law' injunction," citing two non-

9    trade-secrets cases with wildly different facts.  (Opp. at 16-17.)  But in trade secret cases, where

10   there is evidence of misappropriation, courts often use this language, and Defendants' counsel

11   proposed it in *WeRide*.  *See WeRide*, 379 F. Supp. 3d at 855 (enjoining "[a]ny and all use,

12   disclosure, … or marketing of any version of WeRide Confidential Information," "includ[ing]'

13   but not limited to" trade secrets defined in 2019.210 statement "and other proprietary information

14   from all WeRide products and projects"); *eHealthinsurance Servs. Inc. v. Healthpilot Techs., Inc.*,

15   2021 WL 3052918, at *2 (N.D. Cal. July 20, 2021) (enjoining use of "any eHealth confidential,

16   proprietary, and/or trade secret information"); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp.

17   2d 1079, 1092 (E.D. Cal. 2012) (enjoining "possessing, using, disclosing or transmitting any PSI

18   trade secrets or proprietary information").[3]

19       **E.    The Public Interest Favors Apple**

20   Defendants claim granting a TRO would have a "chilling effect" on competition.  (Opp. at

21   17.)  But TROs against individuals like Wen, who download highly confidential information in

22   their last days of employment, are routine. Courts find injunctions preventing misuse of trade

23   secrets and requiring employees to honor their contractual obligations strike the appropriate

24   balance of protecting intellectual property and allowing free competition.  (Br. at 21.)  No cases

25

26   _____

     [3] Defendants argue an injunction precluding Wen from using Apple's confidential information
27   would be "contrary to California law" (Opp. at 16.)  They badly misconstrue *AMN Healthcare,
     Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 940 (2018).  *AMN* found bringing a
     claim for soliciting and hiring employees based on the misuse of confidential information would
28   violate Business and Professions Code section 16600.  *Id.*  That has nothing to do with this case.

1   support Defendants' position.  They again quote out-of-context language from *AMN Healthcare*

2   discussing enforceability of a non-solicitation provision, not trade secret theft.  (Opp. at 17.)

3       Apple did not file suit lightly.  Many employees leave Apple to work at companies

4   developing competing products, without Apple taking legal action.  But with multiple employees

5   leaving Apple with its confidential information, Apple had to file this suit and motion.  (Br. at 9.)

6       **F.    Apple Requires Expedited Discovery**

7       Apple has established good cause for expedited discovery from Defendants.  (Br. at 21-

8   25.)  Discovery opens just three weeks—at most—from the hearing date for this motion.  Apple

9   narrowly seeks discovery of the Apple confidential and trade secret documents taken by Wen and

10  other former employees, and information regarding how they have been used.  Apple provided

11  forensic evidence showing many of its former employees now working at Rivos retained some of

12  its most sensitive confidential documents.  But Rivos is refusing to provide any information about

13  their retention and use of these documents, which Apple has no other way to obtain.  The five

14  factors considered for granting expedited discovery all favor Apple.

15      *First*, Defendants inexplicably claim that "a motion for preliminary injunction is not

16  pending."  (Opp. at 18.)  Apple seeks an order to show cause and has asked for a preliminary

17  injunction hearing date.  (Dkt. 23-2 at 2.)  This factor clearly favors Apple.  *Penson & Co., LLC*

18  *v. Cloudstyle Store*, 2020 WL 11885744, at *3 (N.D. Cal. Aug. 27, 2020) (application for TRO

19  and order to show cause supports request for expedited discovery).

20      *Second,* Apple's discovery requests are narrowly tailored, focused only on the Apple

21  confidential documents taken by its former employees.  (*See* Br. at 22-23; Wilson Dec. Exs. R-

22  V).  Apple is not seeking "discovery into undefined 'Apple confidential documents and

23  information related to SoCs or SoC components.'"[4]  (Opp. at 18.)  Defendants' cropped quote

24  leaves out that Apple only seeks documents and information "that were provided to Rivos by any

25  former Apple employees" or that they "retained, downloaded, or transferred."  (Wilson Dec.

26

27  _____
    [4] Defendants cite *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *3 (N.D. Cal. May 18,
28  2011), but Apple is not seeking an early 30(b)(6) deposition on the design of Rivos's products,
    nor all documents related to copying of Apple IP in Rivos's products.

Ex. S (RFP No. 1).)  Apple also is not seeking discovery about "unidentified former Apple employees."  (Opp. at 18.)  Apple has identified the former employees it is currently aware of, by copying Rivos on the letters it sent to them.  This is not a "'fishing expedition.'"  (*Id.* at 19).

Defendants next cite to cases applying section 2019.210.  If the Court chooses to use 2019.210 as a case management tool[5], Apple has done more than enough for purposes of this motion.  As Defendants' cases show, courts order a plaintiff to identify its trade secrets before taking discovery of its *opponent's* trade secrets.  *See Switch Commc'n. Grp. v. Ballard*, 2012 WL 2342929, at *4 (D. Nev. Jun. 19, 2012) (plaintiff must identify trade secrets before it "will be allowed to compel discovery of its adversary's trade secrets."); *see also SocialApps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at * 2 (N.D. Cal. Jun. 14, 2012) (warning against "forc[ing] a defendant to reveal its own trade secrets in defense against unfounded or specious claims").  Apple is seeking discovery of retention and use of its own documents, not Rivos's trade secrets.

Though none was required, Apple provided a trade secret identification, at Defendants' request.  Defendants mischaracterize this statement, which identifies specific documents that are themselves trade secrets.  (Kuwayti Dec. Ex. D at 1.)  Apple has shown Wen took these documents (which Wen does not deny).  (Roffman Dec. ¶¶ 17-24.)  Apple cannot identify all the documents Wen or its other former employees took, particularly since many of them deleted files or wiped their devices when they left.  (*Id.* ¶¶ 14, 25-26.)  Apple also identifies specific SoC projects to which the former Apple employees had access, describing in detail the types of documents it believes were taken, including specific files.  (Kuwayti Decl. Ex. D at 1-2; Murray Dec. ¶¶ 8-14.)

Even without all this information Defendants should be able to determine by their own forensic investigation which Apple confidential documents Apple's former employees retained.  They do not require more.  Defendants are the ones who have the information.  Rivos blocked Apple from getting it from the former employees directly.  (Br. at 2.)  Rivos cannot prevent discovery of the documents Apple's former employees took by insisting Apple identify them all

---

[5] Some courts in this District have applied section 2019.210 to "claims arising under California's Uniform Trade Secrets Act," or used it as a case management tool.  *Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020).  To Apple's knowledge, no court in this Circuit has yet found 2019.210 applies in a case alleging a claim under the DTSA only.

1    specifically first.  That would be impossible for Apple—or any plaintiff in this position—to do.

2        *Third*, Apple's expedited discovery is propounded for a proper purpose.  (Br. at 23-25).

3    Defendants argue Apple's requests to Rivos do not relate to its preliminary injunction because it

4    only seeks a TRO against Wen.  But Apple needs this discovery to respond to Rivos's repeated

5    arguments that the Court should not grant injunctive relief because Rivos supposedly is not using

6    Apple's confidential documents (*see, e.g.*, Opp. at 10, 13-15).  Apple also seeks this discovery to

7    properly craft its preliminary injunction motion based on the possession and use of its documents.

8    Whether or not a motion is already pending, courts have found discovery proper for this purpose.

9    *See MedImpact Healthcare Sys., Inc. v. IQVIA Holdings, Inc.*, 2019 WL 6310554, at *4 (S.D.

10   Cal. Nov. 25, 2019) (expedited discovery in absence of injunction motion proper where plaintiffs

11   "seek it to determine whether Defendants are presently engaging in misappropriation of their

12   trade secrets."); *Pyro*, 2012 WL 13220023, at *3 (granting expedited discovery tailored to

13   potential preliminary injunction motion "focused on any confidential and proprietary information

14   allegedly misappropriated and whether PSI stands to suffer irreparable harm").

15       Defendants do not deny that Wen, Kaithamana, and the employee who reached out

16   directly to Apple took confidential documents.  Apple's detailed forensic declaration describes

17   instances where other former employees downloaded documents and connected external devices

18   during their final days of employment, providing in most cases the date, time, and serial number

19   of the devices used.  (*See* Roffman Dec. ¶¶ 27-36.)  Rivos did not rebut this with forensic

20   evidence in reply, or even address any of these employees.  Yet Rivos tacitly admits that a "subset

21   of [Rivos] employees" raised sufficient suspicion to warrant "collecting documents and other

22   information . . . for further analysis and review."  (*See* Kumar Dec. ¶ 15.)

23       Courts consistently grant expedited discovery to determine, for a preliminary injunction,

24   what information has been misappropriated and how it has been used, as Apple seeks here for the

25   specific documents retained.  (Br. at 23-24); *Miloedu, Inc.*, 2021 WL 6072821, at *4.  Defendants'

26   cases do not apply.  *See Profil Institut Fur Stoffwechselforschung GmbH v. Profil Institute for*

27   *Clinical Research*, 2016 WL 7325466, at *3-4 (S.D. Cal. Dec. 16, 2016) (denying discovery into

28   scope of plaintiff's alleged harm and damages, when plaintiff "admit[ted] that it [did] not need the

1  expedited discovery for its preliminary injunction motion"); *Am. LegalNet, Inc. v. Davis*, 673 F.

2  Supp. 2d 1063, 1067-68 (C.D. Cal. 2009) (denying motion because plaintiff sought broad access to

3  all documents on defendants' hard drives and extensive email and business documents).

4         *Fourth*, Apple's requests are not unduly burdensome.  They are targeted, and Defendants

5  already say they will "respond to a number of Apple's requests."[6]  (Opp. 22-23.)  Rivos claims it

6  would be overly burdensome to "obtain, examine, and inspect employees' personal devices for

7  materials."  (*Id*. at 20.)  But if that is true, the burden is of Rivos's own making.  Again, Apple

8  has tried to contact these former employees directly, but Rivos has blocked it.  Rivos continues to

9  refuse to tell Apple whether it represents the other former Apple employees.  (Br. at 2, 10, 18

10  n.2.)  But it has now told Apple it cannot contact them.  (Kuwayti Decl. ¶ 8.)  Rivos cannot have

11  it both ways, preventing Apple from getting its documents back and learning whether and how

12  they have been used.  Moreover, Apple has provided forensic evidence, not just "baseless

13  conjecture," that many of its former employees have already destroyed records of activities

14  surrounding their departure for Rivos.  (Opp. at 22 n.6).  That distinguishes this case from

15  *Extreme Reach, Inc. v. PriorityWorkforce, Inc.*, 2017 WL 10544621 (C.D. Cal. Oct. 18, 2017).

16         *Fifth*, it is not true that "Apple seeks an extraordinary and unnecessary acceleration of

17  discovery."  (Opp. at 21.)  Discovery would be accelerated by just three weeks.  Defendants claim

18  the Court should wait for it to file a motion to dismiss, but, "[a] pending motion to dismiss is not

19  dispositive to a finding of good cause for expedited discovery."  *MedImpact*, 2019 WL 6310554,

20  at *4); *Chevron Mining Inc. v. Skanska USA Civil West Rocky Mountain Dist.*, 2019 WL

21  11556996, at *5 (N.D. Cal. Sep. 3, 2019) (ordering expedited discovery, noting "any motion to

22  dismiss that [defendant] may file does not necessarily stop discovery").  Courts routinely grant

23  expedited discovery before a defendant serves a responsive pleading.  *See eHealthinsurance*,

24  2021 WL 3052918 at *3; *Miloedu*, 2021 WL 6072821 at *4.  Rivos tries to use Apple's courtesy

25  in agreeing to Rivos's requested extension against it.  (Opp. at 21.)  But a motion would not moot

26  Apple's need for expedited discovery, and Rivos could have moved to dismiss earlier if it wished.

27

28  [6] That offer does not moot this motion.  Defendants do not identify which requests they plan to respond to or agree to the depositions, which are key to determining how information was used.

Dated:   June 10, 2022

Respectfully submitted,

MORRISON & FOERSTER LLP


By:    /s/ Bryan Wilson
          Bryan Wilson

          Attorneys for Plaintiff
          APPLE INC.