QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Stephen Swedlow (*Admitted Pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:   (312) 705-7400
Facsimile: (312) 705-7401

  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for Defendants Rivos Inc. and Wen Shih-Chieh a/k/a Ricky Wen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN and BHASI KAITHAMANA, <br><br> Defendants. | Case No. 5:22-CV-2637-EJD <br><br> **DEFENDANTS RIVOS INC. AND WEN SHIH-CHIEH'S SUR-REPLY IN IN OPPOSITION TO APPLE'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE** <br><br> Date:    June 16, 2022 <br> Time:    9:00 a.m. <br><br> Trial Date:    None Set <br><br> **REDACTED FOR PUBLIC FILING** |

Defendants Rivos Inc. ("Rivos") and Wen Shih-Chieh ("Wen") submit this sur-reply to address new evidence and issues raised in Plaintiff Apple Inc.'s ("Apple") reply brief. This is not a comprehensive response to Apple's reply. Rather, Defendants submit this brief response to correct misstatements and address new evidence in Apple's reply in advance of the Court's consideration of Apple's motion. Because Defendants only received Apple's list of purported misappropriated documents for the first time when Apple filed its *ex parte* application, Defendants' forensic examiner did not have enough time to complete his inspection of both Wen's devices and Rivos' systems. Defendants thus provide an update on the forensic examiner's findings to date, which were unavailable at the time Defendants filed their opposition.

## I. Apple Distorts The Record And Ignores That Defendants Have Offered The Relief Apple Seeks

Apple's reply misrepresents the extent to which Defendants have attempted to cooperate in this case. On June 9, counsel for Defendants spoke with counsel for Apple. (Swedlow Decl. ¶2.) This was the first phone call between the parties, and it was scheduled at Defendants' request (Apple initially rejected the notion there was any reason even to speak by phone). (*Id.*) It was Defendants' intention to be cooperative and provide Apple with the information it needed to take its *ex parte* motion off calendar, including providing Apple with Wen's hard drive, conducting searches of Rivos' systems, and providing written responses to some of Apple's discovery requests (despite the fact there is no basis for a claim against Rivos) to provide comfort to Apple that Rivos and Wen have not misappropriated any Apple trade secrets. (*Id.*) Defendants' goal in requesting a call to discuss open issues with respect to these topics was to avoid the need for any hearing before this Court. (*Id.*) During the call, Defendants' counsel made clear: (1) Wen would share his hard drive and, to facilitate this, requested that Apple provide a written forensic inspection protocol (just as Apple had been negotiating with Kaithamana); (2) Wen would agree to voluntarily stipulate to the restrictions described in Apple's proposed temporary restraining order; and (3) Rivos would search its systems for any Apple documents to further assure Apple there is no claim against Rivos. (*Id.* ¶ 3.) It was clear, however, Apple was not interested in resolving the issues. (*Id.* ¶ 4.)

The next day, June 10, counsel for Defendants sent Apple a proposed stipulated order that would resolve the TRO and order to show cause portions of Apple's *ex parte* motion as to Wen. (Swedlow Decl. Ex. B.)  The stipulated order is substantively equivalent to that which Apple entered with Defendant Bhasi Kaithamana ("Kaithamana") on May 17, 2022 (*see* Dkt. No. 19).  Apple took several days to respond, then demanded that: (i) Wen and Apple split the costs of *Apple's* investigation of Wen's devices; (ii) Wen turn over his device *before* Apple provides its proposed forensic inspection protocol; (iii) Wen provide the actual hard drive, rather than an image, as Apple had proposed just days before; and (iv) the order to show cause remain on calendar, despite the fact that the stipulation would moot the need for any injunctive relief.  (Swedlow Decl. ¶ 7.)  Although Defendants would prefer not to burden the Court with a dispute that should be resolved between the parties, they will not agree to these terms.  (*Id.*)

Apple also mischaracterizes Apple's request to directly contact Rivos' employees.  (Reply at 1, 3, 15.)  California law makes clear that Apple cannot contact employees of an opposing party.  *See e.g.* California Rule of Professional Conduct 4.2(b) ("In the case of a represented corporation, partnership, association, or other private or governmental organization, this rule prohibits communications with . . . A current employee, member, agent, or other constituent of the organization, if the subject of the communication is any act or omission of such person* in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability.")  Yet Apple's counsel appeared (during the sole conference between the parties' counsel) to not know the rule that when you sue a company, you no longer have the right to contact its current employees.  (Swedlow Ex. A.)  Simply, Apple chose to sue Rivos without any pre-litigation effort to resolve the issue, or even informing Rivos or the individual Rivos employees of Apple's allegations.  If Apple was actually interested in the return of any inadvertently retained Apple documents from former employees, it could have contacted the Rivos employees *before* suing Rivos with no basis for a claim.  It did not.

Finally, Apple blames Defendants for delaying Apple's investigation.  (Reply at 3, 5.)  The reality is that Defendants promised to provide Apple with an update on their investigation by May 31—precisely to avoid the need for Apple to file *any* motion.  Apple disregarded Defendants'

commitment to investigate Apple's claims and filed the instant *ex parte* motion. Moreover, it was not until Apple filed its *ex parte* motion that it even informed Defendants which files it believed Wen took so that Defendants could search for the files. While Apple complains that Defendants have not provided information about documents potentially retained by other Rivos employees, Apple *still* has provided *no* information regarding which Apple files, if any, it believes those employees currently possess (despite counsel's repeated specific requests for this information). (Swedlow Decl. ¶ 8.) Apple's suggestion (Reply at 2) that the letters sent to each of the 41 other Rivos employees somehow contained information sufficient to assist Defendants' investigation is objectively false—most of the letters contained nothing more than a reminder of continued confidentiality obligations to Apple.[1] Apple also has provided *no* information regarding which files it believes Rivos must search for with respect to Kaithamana. And while Apple claims that Wen should have provided his hard drive to Apple "weeks ago" (Reply at 4), Apple neglects to mention that Defendants have repeatedly asked Apple to provide a proposed forensic inspection protocol (the same thing Apple has been negotiating for five weeks with counsel for Kaithamana), and Apple only provided an initial proposal on June 14. Apple's delay and gamesmanship cannot justify the extraordinary relief it seeks.

## II. Defendants Conducted A Timely Forensic Inspection And Uncovered No Access To Apple Confidential, Proprietary, Or Trade Secret Documents

Defendants have now conducted multiple forensic examinations. *First*, Defendants' forensic examiner imaged Wen's hard drive, which was identified in the Roffman Declaration filed in support of Apple's *ex parte* motion, Wen's iCloud account and Google Drive, and Wen's Rivos laptop. (Kunkel Decl. ¶ 7.) Defendants' forensic examiner searched for the documents identified

---

[1] Specifically, of the 41 other Rivos employees who received letters, 25 contained no allegations whatsoever, 11 included allegations limited strictly to deleting data, and five contained allegations regarding accessing, sending, or retaining allegedly confidential but unidentified Apple documents. (Swedlow Decl. ¶ 8.) Counsel will bring all of these letters to the hearing for the Court's review. Regardless, given Apple's focus in its Reply (at 2) on the letter sent to one former employee, Defendants' forensic examiner conducted a review of that device. (Kunkel Decl. ¶ 15.) The last accessed date pre-dated that employee's work at Rivos, and there was no evidence of any access of any file on the device during that employee's work at Rivos. (*Id.*)

in Appendix B to the Roffman Declaration,[2] as well as terms in the file name that would indicate a document contained potential Apple confidential, proprietary, or trade secret information. (*Id.*) As to the hard drive identified in the Roffman Declaration, of the 3.3 million artifacts identified on Wen's hard drive, almost none of them had been accessed since August 2021, when Wen resigned from Apple. (*Id.* ¶ 12.) The only access information shows a very few documents with a "last access" date of April 30, 2022, the day after Apple filed its complaint. (*Id.*) This "access" relates to Mr. Wen looking on the drive after receiving the complaint to try to figure out what Apple was accusing him of doing. Further, the metadata indicates that an automatic process (likely the MacOS spotlight service) "accessed" the files, rather than Wen opening or otherwise reviewing the files. (*Id.*) This finding is consistent with Wen's statement in his June 3 declaration that, after he received the April 29 letter from Apple, he briefly accessed his external hard drives to see what the Apple attorneys were talking about. (*Id.*; June 3, 2022 Wen Decl. ¶ 6.)

As to Wen's iCloud account, the only Apple documents that have been identified to date are ███████████████████████████████████████,[3] whom Wen managed, totaling 16-pages of entirely non-technical information. (Kunkel Decl. ¶ 10.) Because Wen modified these documents in 2020 (at the request of his manager during his employment at Apple) using iCloud note, they were saved to his iCloud account; Defendants' forensic examiner has confirmed they were loaded into the iCloud account in 2020. (*Id.*) These same documents were also found on Wen's Rivos-issued laptop as a result of an automatic syncing process that occurs when a user logs into his or her iCloud account from a new device. (*Id.*) More specifically, when Wen accessed his iCloud account for the first time after receiving his Rivos-issued laptop, the iCloud account and the device automatically synced, which resulted in copies of the files in the iCloud account being automatically stored in the new laptop and vice-versa. (*Id.*)

---

[2] As set forth in Defendants' opposition, Apple refused to identify the documents or information that it accused Defendants of misappropriating. (Opp. at 5, 11-12.) Thus, Defendants did not have this information until Apple filed the instant motion and provided its "Trade Secret Disclosure" just two days before Defendants' opposition was due.

[3] None of these employees have been hired by Rivos.

As to Wen's Google drive, Defendants' forensic examiner found ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*Id.* ¶ 9.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, they have no connection whatsoever to Apple. Rather, they reflect rent payments for an investment property that Wen owns with his wife. The fact that these documents are ***entirely unrelated to Apple*** is apparent from their face, and contradicts Apple's expert's assertion that listing of files in Appendix B "appear to be Apple files," as well as Apple's Trade Secret Identification, which incorporates every one of these documents. (Rothman Dec., ¶ 20.) Instead, it appears that Apple has merely listed ***all*** of the files in Wen's Desktop and Downloads folders, regardless of whether the documents are actually Apple documents, let alone whether the documents contain trade secrets or are otherwise confidential. This is consistent with Apple's conduct thus far in this case—to impermissibly attempt to "discover" a claim against Rivos when it has none.

Finally, Defendants' forensic examiner searched Rivos' systems for the documents identified in Appendix B to the Roffman Declaration, as well as terms in the file name that would indicate a document came from Apple or contained Apple confidential, proprietary, or trade secret information. (*Id.* ¶¶ 7, 8.) None of the files identified in Appendix B to the Roffman Declaration were identified on Rivos' systems. (*Id.* ¶ 13.) Nor have any documents with file names that may indicate they originated from Apple been found on Rivos' systems. (*Id.*)

Given the lack of evidence of trade secret misappropriation found against either Rivos or Wen, Apple's request for a TRO or expedited discovery is unnecessary and unjustified.

**III.   Conclusion**

Apple's *ex parte* motion should be denied. Wen has already agreed to the same "relief" Apple obtained from Kaithamana. There is no basis for a claim against Rivos, and Rivos should have the opportunity to move to dismiss Apple's trade secret misappropriation claim prior to Apple getting a fishing expedition through unwarranted discovery to look for a claim. That is not the way the court system is intended to work and is particularly inappropriate in trade secrets cases where Apple has done nothing more than identify categories of information it would like to find within Rivos as theoretical Apple trade secrets.

| | |
|---|---|
| DATED: June 15, 2022 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By  */s/ Stephen Swedlow*<br>　　STEPHEN SWEDLOW<br>　　DAVID EISEMAN<br>　　VICTORIA B. PARKER<br><br>Attorneys for Defendants Rivos, Inc. and Wen Shih-Chieh a/k/a Ricky Wen |