```
 1                       UNITED STATES DISTRICT COURT
 2                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
                               SAN JOSE DIVISION
 3

 4        APPLE INC., A CALIFORNIA
          CORPORATION,
 5                                             CASE NO.  CV-22-02637-EJD
                         PLAINTIFF,
 6                                             SAN JOSE, CALIFORNIA
              VS.
 7                                             JUNE 16, 2022
          RIVOS, INC., A DELAWARE
 8        CORPORATION; WEN SHIH-CHIEH          PAGES 1 - 61
          A/K/A RICKY WEN, AND BHASI
 9        KAITHAMANA,

10                 DEFENDANTS.

11

12                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE EDWARD J. DAVILA
13                    UNITED STATES DISTRICT JUDGE

14        A-P-P-E-A-R-A-N-C-E-S

15        FOR THE PLAINTIFF:    MORRISON & FOERSTER LLP
                                BY:  KENNETH A. KUWAYTI
16                                   MARY PREDERGAST
                                     DIEK O. VAN NORT
17                              755 PAGE MILL ROAD
                                PALO ALTO, CALIFORNIA 94304
18

19        FOR THE DEFENDANTS:   QUINN EMANUEL URQUHART & SULLIVAN
                                BY:  STEPHEN A. SWEDLOW
20                                   VICTORIA B. PARKER
                                     DAVID EISEMAN, VI
21                              191 N. WACKER DRIVE, SUITE 2700
                                CHICAGO, ILLINOIS 60606
22
                        (APPEARANCES CONTINUED ON THE NEXT PAGE.)
23

24        OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                     CERTIFICATE NUMBER 8074

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
          TRANSCRIPT PRODUCED WITH COMPUTER.
```

```
1       A P P E A R A N C E S: (CONT'D)

2       ALSO PRESENT:                COLETTE MAYER
                                     TUCKER TERHUFEN
3                                    BRYAN WILSON

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      SAN JOSE, CALIFORNIA                    JUNE 16, 2022

 2                     P R O C E E D I N G S

 3         (COURT CONVENED AT 9:20 A.M.)

 4             THE COURT:  THE FIRST MATTER IS 22-2637, APPLE

 5      VERSUS RIVOS.

 6         LET ME CAPTURE THE APPEARANCE OF THE PARTIES, PLEASE.

 7         WHO APPEARS FOR THE PLAINTIFFS?

 8             MR. KUWAYTI:  GOOD MORNING, YOUR HONOR.

 9         THIS IS KEN KUWAYTI FROM MORRISON & FOERSTER APPEARING ON

10      BEHALF OF THE PLAINTIFF APPLE.

11         AND WITH ME AT COUNSEL TABLE ARE MY COLLEAGUES

12      DIEK VAN NORT, BRYAN WILSON --

13         (LOUD SOUND.)

14             THE COURT:  WE'LL FIX THAT.  PARDON ME.

15         I'M SORRY.  GO AHEAD, SIR.

16             MR. KUWAYTI:  SURE.  IT'S DIEK VAN NORT,

17      BRYAN WILSON, AND MARY PREDERGAST ALL FROM

18      MORRISON & FORRESTER.

19         AND THEN WE HAVE TWO CLIENT REPRESENTATIVES IN THE

20      COURTROOM, COLETTE MAYER AND TUCKER TERHUFEN.

21         AND WE HAVE TWO OF OUR SUMMER ASSOCIATES IN THE BACK.

22             THE COURT:  OH, TERRIFIC.  THEY SHOULD BE UP AT

23      COUNSEL TABLE, SHOULDN'T THEY, JUST TO GET THE FULL RICH

24      EXPERIENCE?

25             RIGHT.  TERRIFIC.  WELCOME EVERYBODY.
```

| | | |
|---|---|---|
| 09:21AM | 1 | WHO APPEARS FOR THE DEFENDANT? |
| 09:21AM | 2 | MR. SWEDLOW:  GOOD MORNING, YOUR HONOR. |
| 09:21AM | 3 | STEPHEN SWEDLOW FROM QUINN EMANUEL FOR DEFENDANT. |
| 09:21AM | 4 | ALONG WITH ME, DAVID EISEMAN, VICKY PARKER AND THE CLIENT |
| 09:21AM | 5 | REPRESENTATIVE, BRYAN WILSON. |
| 09:21AM | 6 | THE COURT:  GOOD MORNING EVERYONE. |
| 09:21AM | 7 | THANK YOU FOR BRINGING THIS INTERESTING CASE TO OUR |
| 09:21AM | 8 | ATTENTION THIS MORNING. |
| 09:21AM | 9 | LET ME FIRST GET AN UPDATE, IF I MAY, FROM THE PARTIES. |
| 09:21AM | 10 | WHAT IS THE CURRENT STATUS OF THINGS? |
| 09:21AM | 11 | IF YOU WANT TO COME TO THE LECTERN, YOU'RE WELCOME TO DO |
| 09:21AM | 12 | SO.  THANK YOU. |
| 09:21AM | 13 | MR. KUWAYTI:  I'M GLAD YOU ASKED, YOUR HONOR, |
| 09:21AM | 14 | BECAUSE A LOT HAS HAPPENED IN THE LAST 24 HOURS. |
| 09:21AM | 15 | THE COURT:  OH, GOOD. |
| 09:21AM | 16 | MR. KUWAYTI:  SOME OF WHICH YOU KNOW AND SOME OF |
| 09:21AM | 17 | WHICH YOU DON'T. |
| 09:21AM | 18 | THE PART THAT YOU KNOW, THE PLAINTIFFS -- THE DEFENDANTS |
| 09:22AM | 19 | FILED A SURREPLY BRIEF. |
| 09:22AM | 20 | THE COURT:  YES. |
| 09:22AM | 21 | MR. KUWAYTI:  BUT I'M HAPPY TO REPORT THAT ON THE |
| 09:22AM | 22 | TRO FRONT, JUST THIS MORNING, TEN MINUTES AGO THE PARTIES |
| 09:22AM | 23 | AGREED TO A STIPULATED ORDER ON THE TRO. |
| 09:22AM | 24 | THE COURT:  GREAT. |
| 09:22AM | 25 | MR. KUWAYTI:  IT IS IN THE FORM OF THE SAME ORDER |

09:22AM 1    THAT MR. KAITHAMANA AGREED TO.  SO WE HAVE -- WE'RE PREPARED TO

09:22AM 2    SUBMIT THAT TO THE COURT THIS MORNING.  MAYBE WE'LL EVEN DO IT

09:22AM 3    DURING THE HEARING AND HAVE SOMEBODY SUBMIT IT TO THE COURT.

09:22AM 4          THE COURT:  SURE.  GREAT.  WELL, THANK YOU FOR YOUR

09:22AM 5    EFFORTS.  I APPRECIATE THAT.  THANK YOU FOR THAT.  I WAS GOING

09:22AM 6    TO ASK ABOUT THAT.  YOU'RE WAY AHEAD OF ME.

09:22AM 7       SO WHAT'S NEXT THEN?

09:22AM 8          MR. KUWAYTI:  SO THE OTHER THING THAT HAPPENED IS

09:22AM 9    SHORTLY AFTER 5:00 P.M. WE RECEIVED RESPONSES, WRITTEN

09:22AM 10   RESPONSES TO SOME OF THE EXPEDITED DISCOVERY REQUESTS TO THE

09:22AM 11   SET OF INTERROGATORIES AND DOCUMENT REQUESTS THAT WERE SERVED

09:23AM 12   ON MR. WEN AND RIVOS.

09:23AM 13      I EXPECT THAT THE DEFENDANTS ARE GOING TO ARGUE THAT THAT

09:23AM 14   MOOTS THE EXPEDITED DISCOVERY PORTION OF THE MOTION, BUT IT

09:23AM 15   DOESN'T FOR THREE REASONS.  AND I THINK THAT'S WHAT WE'RE GOING

09:23AM 16   TO ARGUE TO YOU PRIMARILY HERE TODAY.

09:23AM 17      AND THE FIRST REASON IS THAT IT'S ONLY SOME OF THE

09:23AM 18   DISCOVERY THAT WE SOUGHT.  WE ARE ALSO SEEKING DEPOSITIONS OF

09:23AM 19   MR. WEN AND A 30(B)(6) DEPOSITION OF RIVOS.  THOSE DEPOSITIONS

09:23AM 20   ARE CRITICAL TO UNDERSTANDING WHAT ACTUALLY HAPPENED WITH THESE

09:23AM 21   DOCUMENTS AND WHAT WAS RETAINED.

09:23AM 22      AND WHAT I'LL SHOW YOU IS THAT THE REQUESTS, THE RESPONSES

09:23AM 23   ARE VERY CAREFULLY WORDED AND IN OUR OPINION EVASIVE IN TERMS

09:23AM 24   OF WHAT ACTUALLY HAPPENED WITH THESE DOCUMENTS, AND SO THE

09:23AM 25   DEPOSITIONS ARE VERY IMPORTANT.

09:23AM 1    THE SECOND THING IS THAT THE POSITION THAT RIVOS HAS TAKEN

09:24AM 2    IN THOSE RESPONSES IS THAT THE DEVICES OF ALL OF THE DIFFERENT

09:24AM 3    EMPLOYEES ARE NOT IN THEIR POSSESSION, CUSTODY, OR CONTROL.  SO

09:24AM 4    THEY ARE NOT TELLING US ANYTHING ABOUT WHAT WAS RETAINED ON

09:24AM 5    THOSE DEVICES OR HOW THOSE EMPLOYEES USED THE DOCUMENTS.

09:24AM 6    AND WE'RE PUT IN AN IMPOSSIBLE POSITION HERE BECAUSE WE

09:24AM 7    HAVE BEEN TOLD IN NO UNCERTAIN TERMS YOU CANNOT CONTACT THOSE

09:24AM 8    EMPLOYEES.

09:24AM 9    I'D LIKE TO WALK THE COURT THROUGH -- WE'VE SUBMITTED

09:24AM 10   UNREBUTTED EVIDENCE HERE THAT THERE ARE OTHER APPLE EMPLOYEES

09:24AM 11   THAT HAVE RETAINED CONFIDENTIAL INFORMATION ON THEIR DEVICES.

09:24AM 12   THERE ARE SEVEN OTHERS THAT HAVE NOT BEEN ADDRESSED AT ALL IN

09:24AM 13   THE PAPERS.

09:24AM 14   SO THE POSITION THAT WE'RE BEING PUT IN IS WE KNOW THAT

09:24AM 15   THERE'S CONFIDENTIAL INFORMATION IN THEIR POSSESSION THAT

09:24AM 16   BELONGS TO US.  YOU CAN'T TALK TO THEM AND GET IT BACK, BUT

09:24AM 17   WE'RE NOT GOING TO TELL YOU ANYTHING ABOUT THOSE DOCUMENTS,

09:24AM 18   WHETHER THEY'VE BEEN SEGREGATED, WE'RE NOT GOING TO RETURN THEM

09:25AM 19   TO YOU, WHAT IS CONTAINED ON THEM, AND SO WE, WE NEED SOME

09:25AM 20   RELIEF FROM THE COURT.

09:25AM 21   AND IF IT'S NOT GOING TO COME FROM RIVOS, THEN WE ARE

09:25AM 22   ASKING YOUR HONOR TO GIVE US THE PERMISSION TO SUBPOENA OR GET

09:25AM 23   THESE DOCUMENTS FROM THE EMPLOYEES DIRECTLY.

09:25AM 24   AND THEN THE THIRD ISSUE THAT IS UNRESOLVED HERE, I THINK,

09:25AM 25   IS THAT IN RESPONDING TO ALL OF THESE REQUESTS, THEY'VE SAID

09:25AM 1    THAT THEY ARE PREMATURE BECAUSE WE HAVEN'T HAD THE RULE 26(F)

09:25AM 2    CONFERENCE AND ALSO BECAUSE THE INVESTIGATION IS ONGOING, AND

09:25AM 3    WE WANT AN ORDER FROM THE COURT THAT THE EXPEDITED DISCOVERY IS

09:25AM 4    APPROPRIATE AND THAT THESE HAVE TO BE SUPPLEMENTED BECAUSE

09:25AM 5    THEY'VE DONE REALLY ONLY AN INVESTIGATION OF A FRACTION OF THE

09:25AM 6    DOCUMENTS AT THIS POINT.  AND IF THEY'RE STILL INVESTIGATING,

09:25AM 7    THAT'S FINE, BUT WE DO NEED THESE UPDATED.  AND, IN FACT, THEY

09:25AM 8    DON'T EVEN REFLECT ALL OF THE INFORMATION THAT WE KNOW THEY

09:26AM 9    HAVE TO DATE.

09:26AM 10       THESE RESPONSES ARE LESS INFORMATIVE THAN THE BRIEFING

09:26AM 11   THAT WE HAVE.  SO I THINK THE IDEA WAS TO PUT IN SOME RESPONSES

09:26AM 12   HERE SO THAT THEY COULD SAY TO THE COURT WE'VE RESPONDED

09:26AM 13   WITHOUT ACTUALLY GIVING US ANYTHING.  AND RIVOS HASN'T

09:26AM 14   COMMITTED TO PRODUCING ANYTHING.

09:26AM 15       SO I'D LIKE TO WALK THE COURT THROUGH THAT, AND I'D LIKE

09:26AM 16   TO START BY GIVING SOME CONTEXT THAT I THINK IS IMPORTANT TO

09:26AM 17   UNDERSTANDING THE DISPUTE.

09:26AM 18       WE HAVE PREPARED A SMALL BINDER OF SOME OF THE KEY

09:26AM 19   EXHIBITS THAT WE'RE GOING TO BE DISCUSSING IN THE ARGUMENT.

09:26AM 20   THE BINDER CONSISTS OF JUST THE EXHIBITS, SOME OF THE EXHIBITS

09:26AM 21   THAT WERE SUBMITTED TO THE COURT, AND THERE ARE THREE TABS IN

09:26AM 22   HERE, 11, 12, AND 13, THAT RELATE TO THEIR DISCOVERY RESPONSES

09:26AM 23   THAT WE RECEIVED LAST NIGHT.

09:26AM 24       CAN WE PASS THAT UP TO THE COURT?

09:26AM 25           THE COURT:  YES.  IS ANY OF THIS CONFIDENTIAL?  IS

09:27AM  1          ANY OF THIS --

09:27AM  2                  MR. KUWAYTI:  SOME OF THIS IS CONFIDENTIAL,

09:27AM  3    YOUR HONOR.

09:27AM  4                  THE COURT:  OKAY.

09:27AM  5                  MR. KUWAYTI:  SO WE HAVE THE SEALED VERSIONS, AND

09:27AM  6    THERE'S YELLOW HIGHLIGHTING SHOWING WHAT HAS BEEN REDACTED.

09:27AM  7                  THE COURT:  OKAY.  THANK YOU.

09:27AM  8          AND IF YOU'RE GOING TO DISCUSS THIS, THEN MY SENSE IS THAT

09:27AM  9    YOU'RE NOT GOING TO DISCUSS OR REVEAL ANY SEALED MATERIAL?

09:27AM  10                 MR. KUWAYTI:  THAT'S CORRECT, YOUR HONOR, INCLUDING

09:27AM  11   THE NAMES OF THE EMPLOYEES WHO ARE IDENTIFIED IN HERE THAT ARE

09:27AM  12   NOT NAMED DEFENDANTS.

09:27AM  13                 THE COURT:  RIGHT.  OKAY.  SO LET ME SEE THAT.

09:27AM  14   SURE, I'LL BE HAPPY TO RECEIVE IT.

09:27AM  15          LET ME ALSO, JUST IN THE SPIRIT OF FULL DISCLOSURE, MY

09:27AM  16   THOUGHT COMING OUT HERE TODAY WAS LET'S SEE IF THE TRO IS GOING

09:27AM  17   TO BE RESOLVED AND CAN BE; AND, SECONDARILY, YOU KNOW THE

09:27AM  18   PRACTICE IN THE SAN JOSE COURTHOUSE IS THAT DISCOVERY ISSUES

09:27AM  19   ARE REFERRED TO OUR MAGISTRATE JUDGE.

09:27AM  20          AND I'M CURIOUS WHETHER OR NOT -- I'M HAPPY TO HEAR FROM

09:27AM  21   YOU, AND I'M NOT GOING TO DISRUPT YOUR PRESENTATION THIS

09:27AM  22   MORNING, BUT I'M CURIOUS TO KNOW WHAT WE CAN'T RESOLVE THIS

09:28AM  23   MORNING, SHOULD IT BE REFERRED TO THE MAGISTRATE JUDGE FOR

09:28AM  24   FURTHER HEARING?

09:28AM  25          I HAVE SOME THOUGHTS ABOUT IT, BUT I WOULD LIKE TO HEAR

09:28AM 1    FROM WHAT YOU HAVE TO SAY, AND MAYBE WE CAN BUILD A STRUCTURE

09:28AM 2    THAT IF WE CAN'T RESOLVE EVERYTHING THIS MORNING, MIGHT ASSIST

09:28AM 3    THE MAGISTRATE JUDGE IN FURTHER PROCEEDINGS.

09:28AM 4            MR. KUWAYTI:  AND WE'RE OBVIOUSLY VERY INTERESTED IN

09:28AM 5    WHATEVER THOUGHTS THAT YOU HAVE ON THAT AND WHAT PROCEDURE THE

09:28AM 6    COURT FEELS IS APPROPRIATE.

09:28AM 7        I THINK FROM OUR PERSPECTIVE, THE PRIMARY NEED THAT WE

09:28AM 8    HAVE HERE IS FOR SPEED, PARTICULARLY BECAUSE THERE ARE

09:28AM 9    DOCUMENTS THAT WE HAVE SHOWN ARE IN THE POSSESSION OF

09:28AM 10   EMPLOYEES, AND THEY HAVEN'T REBUTTED THAT, AND WE HAVE NO WAY

09:28AM 11   OF GETTING TO THEM.

09:28AM 12       SO WE JUST DON'T WANT TO BE IN A POSITION WHERE WE ARE

09:28AM 13   DELAYED IF AT ALL POSSIBLE.

09:28AM 14       AND I ALSO THINK THAT PERHAPS THE DECISION ON EXPEDITED

09:28AM 15   DISCOVERY AS IT HAPPENED NOW, IT SEEMS LIKE IT MIGHT BE ONE FOR

09:28AM 16   YOUR HONOR, BUT YOU MIGHT HAVE A DIFFERENT VIEW OF THAT.

09:29AM 17           THE COURT:  RIGHT.  WELL, LET ME -- TO THAT POINT,

09:29AM 18   WHAT IS THE URGENCY OF THIS NOW?  MAYBE THAT WAS WHAT YOU WERE

09:29AM 19   GOING TO START WITH IN YOUR PRESENTATION.

09:29AM 20       BECAUSE THE DOCUMENT -- YOUR PLEADINGS WERE FILED, WAS

09:29AM 21   THIS ABOUT EIGHT MONTHS?  EXCUSE ME.  THIS WAS ABOUT EIGHT

09:29AM 22   MONTHS OLD, THIS QUESTION?  SOMETHING LIKE THAT.

09:29AM 23           MR. KUWAYTI:  THE PLEADINGS WERE FILED ON

09:29AM 24   APRIL 29TH.  WE TRIED -- WE DID NOT SEEK A TRO OR EXPEDITED

09:29AM 25   DISCOVERY AT THAT TIME BECAUSE WE HAD HOPED TO WORK THIS OUT

09:29AM  1    WITH THE DEFENDANTS AND THE INDIVIDUAL EMPLOYEES, AND WE SENT

09:29AM  2    LETTERS TO THOSE INDIVIDUAL EMPLOYEES.

09:29AM  3         AND WE HAD HOPED THAT WE COULD GET THE DOCUMENTS BACK THAT

09:29AM  4    WAY AND AVOID THE NEED TO BE IN FRONT OF THE COURT.

09:29AM  5              THE COURT:  SURE.

09:29AM  6              MR. KUWAYTI:  AND WHAT ENDED UP HAPPENING IS THAT WE

09:29AM  7    COULDN'T GET THE DOCUMENTS BACK.  WE HAD ONE EMPLOYEE WHO WAS

09:30AM  8    PREPARED TO GIVE US THE DOCUMENTS BACK RIGHT AWAY, AS AN

09:30AM  9    EXAMPLE.  I HAVE THAT IN ONE OF THESE TABS, I HAVE AN EXAMPLE

09:30AM  10   OF THAT.

09:30AM  11        SHOULD I --

09:30AM  12             THE COURT:  WELL, I DON'T WANT TO DISRUPT YOUR

09:30AM  13   PRESENTATION, BUT I'M JUST CURIOUS, WHAT'S THE URGENCY NOW

09:30AM  14   GIVEN THE TIMING OF THINGS?

09:30AM  15             MR. KUWAYTI:  THE URGENCY NOW IS THAT THERE ARE

09:30AM  16   THESE DOCUMENTS THAT WE KNOW ARE IN THE POSSESSION OF THESE

09:30AM  17   EMPLOYEES THAT HAVE NOT BEEN -- THAT ARE NOT BEING RETURNED,

09:30AM  18   AND WE'RE NOT GIVING -- WE'RE NOT BEING GIVEN ANY INFORMATION

09:30AM  19   ABOUT THEM AT ALL, AND THESE ARE SOME OF THE COMPANY'S MOST

09:30AM  20   HIGHLY SENSITIVE DOCUMENTS, AND WE HAVE NO OTHER AVENUE TO GET

09:30AM  21   THEM BECAUSE WE'VE BEEN TOLD THAT WE CAN'T CONTACT THE

09:30AM  22   EMPLOYEES.

09:30AM  23             THE COURT:  SO THE CONCERN OF YOUR CLIENT IS THAT

09:30AM  24   THERE'S A BELIEF THAT THERE'S SOME IP, PROTECTED IP, TRADE

09:30AM  25   SECRETS, WHATEVER IT IS, INFORMATION THAT THEY INAPPROPRIATELY

09:30AM 1    RETAINED AND THEY SHOULDN'T HAVE, AND YOUR CONCERN, YOUR

09:30AM 2    CLIENT'S CONCERN IS THAT IT MAY BE USED IN THE COURSE OF

09:31AM 3    BUSINESS OF THE DEFENDANT?

09:31AM 4         MR. KUWAYTI:  SO WE HAVE -- I MEAN, I WOULD SAY THAT

09:31AM 5    WE HAVE THREE CONCERNS.  ONE IS THAT ARE THESE DOCUMENTS BEING

09:31AM 6    USED NOW IN THE COURSE OF BUSINESS OF THE DEFENDANTS?  ARE

09:31AM 7    THEY -- MIGHT THEY BE DISCLOSED OR USED BY THESE INDIVIDUALS?

09:31AM 8    AND MIGHT THE EVIDENCE BE DESTROYED BECAUSE THERE HAS BEEN NO

09:31AM 9    INFORMATION FORTHCOMING AS TO WHETHER THESE DOCUMENTS HAVE EVEN

09:31AM 10   BEEN SEGREGATED?

09:31AM 11        AND WE POINTED THAT OUT IN OUR PAPERS AND IN OUR REPLY,

09:31AM 12   AND THEY HAVE NOT DENIED THAT IN THE SURREPLY OR THEY HAVEN'T

09:31AM 13   COME IN AND SAID, YOU KNOW, YOU'RE WRONG, WE SEGREGATED THESE

09:31AM 14   DOCUMENTS, OTHER THAN FOR MR. WEN.

09:31AM 15        SO AN EXAMPLE -- ONE EXAMPLE IS THAT THERE'S AN EMPLOYEE

09:31AM 16   THAT THEY NOW ADMIT, WE WERE CORRECT, HE RETAINED OVER ONE

09:31AM 17   TERABYTE OF DATA THAT HE BACKED UP OUT OF HIS MACBOOK PRO, AND

09:32AM 18   THAT -- THEY HAVE SAID, WELL, HE DIDN'T ACCESS THEM.

09:32AM 19        WE HAVE SOME TROUBLE WITH THE WAY THAT WE HAVE PRESENTED

09:32AM 20   THAT EVIDENCE, BUT THERE'S NO OFFER TO RETURN THAT.  THERE'S NO

09:32AM 21   STATEMENT SAYING THAT'S BEEN SEGREGATED FROM HIM, AND SO THAT'S

09:32AM 22   A HUGE AMOUNT OF INCREDIBLY SENSITIVE INFORMATION.  AND THE

09:32AM 23   INFORMATION THAT WE'RE TALKING ABOUT IN THIS CASE IS THE

09:32AM 24   COMPANY'S MOST SENSITIVE CONFIDENTIAL INFORMATION.

09:32AM 25        THIS IS REALLY THE SYSTEM ON CHIP TECHNOLOGY THAT LIES AT

09:32AM 1   THE CORE OF APPLE'S MAIN HARDWARE PRODUCTS:  THE IPHONE, THE

09:32AM 2   IPAD, THE IMAC, THE WATCH.  THESE ARE CHIPS THAT ARE SEVERAL

09:32AM 3   GENERATIONS AHEAD OF COMPETITORS' CHIPS, AND THESE ARE THE

09:32AM 4   CROWN JEWEL DOCUMENTS, THE SPECIFICATIONS, THE ARCHITECTURE,

09:33AM 5   AND DESIGN OF THESE CHIPS.

09:33AM 6        SO THE IDEA THAT THESE WOULD BE IN THE POSSESSION OF THESE

09:33AM 7   PEOPLE AND WE HAVE NO WAY OF GETTING THEM BACK, THAT'S DRIVING

09:33AM 8   THE URGENCY.

09:33AM 9           THE COURT:  OKAY.  THANK YOU.

09:33AM 10          MR. KUWAYTI:  SO DOES YOUR HONOR HAVE A COPY OF THE

09:33AM 11  BINDER?

09:33AM 12          THE COURT:  I DO HAVE THE BINDER HERE, YES.  THANK

09:33AM 13  YOU.

09:33AM 14          MR. KUWAYTI:  SO IF I COULD DIRECT YOUR ATTENTION TO

09:33AM 15  TAB 2.  TAB 2 IS THE DECLARATION OF OUR FORENSIC VENDOR.

09:33AM 16          THE COURT:  LET ME ASK, DO YOU HAVE AN EXTRA COPY OF

09:33AM 17  THIS FOR MY CLERKS?

09:33AM 18          MR. KUWAYTI:  I DO, YES (HANDING).

09:33AM 19          THE COURT:  THANK YOU.

09:33AM 20          MR. SWEDLOW:  WHICH TAB ARE WE LOOKING AT?

09:33AM 21          MR. KUWAYTI:  2.

09:33AM 22          THE COURT:  I'M AT TAB 2.

09:33AM 23          MR. KUWAYTI:  TAB 2 IS THE DECLARATION OF

09:34AM 24  MR. ROFFMAN THAT WE SUBMITTED IN OUR OPENING PAPERS WITH THIS

09:34AM 25  MOTION.  IT CONTAINS DETAILED INFORMATION ABOUT THE TWO NAMED

09:34AM 1    DEFENDANTS, MR. WEN AND MR. KAITHAMANA.

09:34AM 2        BUT I WANT TO FOCUS ON PARAGRAPHS 25 TO 36 WHERE

09:34AM 3    MR. ROFFMAN WALKS THROUGH THE EVIDENCE THAT OTHER APPLE

09:34AM 4    EMPLOYEES HAD RETAINED CONFIDENTIAL INFORMATION AND/OR DELETED

09:34AM 5    OR WIPED THEIR DEVICES.

09:34AM 6        AND PARAGRAPH 25 RELATES TO THE WIPING OF DEVICES.  AND

09:34AM 7    THERE ARE NINE DIFFERENT EMPLOYEES WHO WIPED THEIR DEVICES AND

09:34AM 8    MANY OF THEM HAD MULTIPLE DEVICES THAT THEY WIPED BEFORE THEY

09:34AM 9    RETURNED TO APPLE, EXPLICITLY CONTRARY TO THE COMPANY'S

09:34AM 10   INSTRUCTIONS.

09:34AM 11       SO WIPING OUT THE EVIDENCE OF WHAT THEY WERE WORKING ON AT

09:35AM 12   APPLE, BUT ALSO ANY EVIDENCE OF COPYING OR TAKING OF

09:35AM 13   INFORMATION.  THAT'S 9 OUT OF THE SLIGHTLY OVER 40 PEOPLE THAT

09:35AM 14   LEFT THAT DID THIS.  THAT'S AN UNUSUALLY HIGH NUMBER OF PEOPLE

09:35AM 15   THAT DID THIS.

09:35AM 16       I WANT TO GIVE YOU AN EXAMPLE OF THE TYPE OF EVIDENCE THAT

09:35AM 17   HAS BEEN PROVIDED HERE.  IF YOU COULD TURN TO PARAGRAPHS 35 TO

09:35AM 18   36.

09:35AM 19       AND I'M NOT GOING TO SAY THE EMPLOYEE'S NAME ON THE

09:35AM 20   RECORD, BUT FOR THIS PARTICULAR EMPLOYEE, MR. ROFFMAN POINTS

09:35AM 21   OUT THAT THERE WERE TWO USB FLASH DRIVES, AND HE GIVES THE

09:35AM 22   SERIAL NUMBERS.  HE GIVES THE EXACT DATE WHEN THEY WERE

09:35AM 23   CONNECTED ON HIS LAST DAY THAT HE WAS USING THE COMPUTER.  HE

09:35AM 24   IDENTIFIES FOLDERS IN PARTICULAR.

09:35AM 25       HE SAYS IN PARAGRAPH 36 THAT THEY WERE MOVED TO A FOLDER

09:35AM 1    CALLED TRIPLE A ON ONE OF THE USB FLASH DRIVES.

09:36AM 2         AND HE IDENTIFIES ONE OF THE PARTICULAR FOLDERS, AND HE

09:36AM 3    SHOWS HOW THAT INFORMATION -- THAT FOLDER HAS CONFIDENTIAL

09:36AM 4    INFORMATION AND IS ON THE DEVICE.

09:36AM 5         SO THAT'S VERY SPECIFIC INFORMATION THAT IS PROVIDED TO

09:36AM 6    THE DEFENDANTS IN THIS CASE.  THEY SUBMITTED A DECLARATION FROM

09:36AM 7    A FORENSIC EXPERT NEARLY THREE WEEKS AFTER RECEIVING THIS

09:36AM 8    DECLARATION.  THEY SAY NOTHING ABOUT IT.  THEY DON'T MENTION

09:36AM 9    THIS EMPLOYEE AT ALL.  THEY DON'T SAY YOU'RE WRONG, THIS DIDN'T

09:36AM 10   HAVE CONFIDENTIAL INFORMATION, OR HE DIDN'T ACCESS THIS

09:36AM 11   CONFIDENTIAL INFORMATION, WE DIDN'T USE IT.  NOTHING LIKE THAT.

09:36AM 12        HE'S COMPLETELY IGNORED.

09:36AM 13        NOW, I DON'T WANT TO GO THROUGH -- I DON'T WANT TO BELABOR

09:36AM 14   THIS, BUT IF YOU LOOK AT THE OTHER PARAGRAPHS THAT PRECEDE

09:36AM 15   THIS, THEY CONTAIN SIMILAR KIND OF INFORMATION, AND IN EACH

09:37AM 16   CASE WHERE WE HAD THE NAME OF THE TYPE OF DEVICE THAT WAS

09:37AM 17   CONNECTED, FOR EXAMPLE, SEAGATE FREEAGENT GOFLEX USB IN ONE OF

09:37AM 18   THE PARAGRAPHS, 28.

09:37AM 19        OR IF WE HAD THE SERIAL NUMBER, WE PROVIDED THAT AS WELL.

09:37AM 20   SO VERY SPECIFIC INFORMATION.  VERY EASY TO TALK TO THE

09:37AM 21   EMPLOYEE AND SAY DID YOU RETAIN THIS TO CAPTURE THE DEVICE?

09:37AM 22   AND ALL OF THESE ARE IGNORED EXCEPT FOR ONE.  IN PARAGRAPH 27,

09:37AM 23   THAT'S THE EMPLOYEE THAT HAD THE TIME MACHINE BACKUP.

09:37AM 24        AND IN THAT CASE THEY SAID, WELL, HE DIDN'T -- WE DON'T

09:37AM 25   THINK HE ACCESSED THAT BACKUP ACCORDING TO THEIR FORENSIC

09:37AM 1    VENDOR.  WE'RE NOT GOING TO SAY WE'RE GOING TO GIVE IT BACK TO

09:37AM 2    YOU OR HE DOESN'T HAVE IT IN HIS POSSESSION, BUT WE DON'T THINK

09:37AM 3    HE ACCESSED THOSE DOCUMENTS.

09:37AM 4         BUT A GLARING OMISSION, THEY DON'T ADDRESS THE OTHER SEVEN

09:38AM 5    PEOPLE.  THEY DON'T ADDRESS ANY OF THE OTHER PEOPLE, THE NINE

09:38AM 6    PEOPLE THAT WIPED THEIR DEVICES WHEN THEY LEFT.

09:38AM 7         SO THE MAJORITY OF THIS DECLARATION STANDS UNREBUTTED.

09:38AM 8    THEY HAD THE OPPORTUNITY TO DO IT.  THEY DIDN'T.

09:38AM 9         NOW, IT'S NOT AS IF THIS IS THE FIRST TIME THAT RIVOS GOT

09:38AM 10   INFORMATION THAT THE EMPLOYEES HAD RETAINED CONFIDENTIAL

09:38AM 11   INFORMATION.  THEY'VE KNOWN THIS FOR SIX WEEKS NOW.

09:38AM 12        WHEN WE FILED OUR COMPLAINT, OUR COMPLAINT WENT INTO WHAT

09:38AM 13   I THINK IS AN UNUSUAL AMOUNT OF DETAIL OF -- DESCRIBING WHEN

09:38AM 14   THE TWO NAMED DEFENDANTS HOOKED UP THEIR DEVICES, THE TIMING,

09:38AM 15   IN MR. WEN'S CASE, OVER A PERIOD OF THREE DAYS DOWNLOADING

09:38AM 16   INFORMATION ONTO AN EXTERNAL DRIVE.

09:38AM 17        AND WE -- SO THEY HAD THAT INFORMATION FROM MR. WEN.  WE

09:38AM 18   NOW HAVE COOPERATION WITH MR. WEN.  UNTIL WE FILED THIS MOTION,

09:39AM 19   THE DEFENDANTS NEVER EVEN SAID WE'RE GOING TO GIVE YOU THAT

09:39AM 20   INFORMATION BACK.  WE HAD TO FILE THIS MOTION TO EVEN GET THAT

09:39AM 21   MUCH OF A CONCESSION FROM THEM.

09:39AM 22        BUT THAT WASN'T THE ONLY INFORMATION THAT THEY HAD.  SO

09:39AM 23   FOR THE OTHER EMPLOYEES, WE DIDN'T NAME THEM IN THE COMPLAINT.

09:39AM 24   WE DIDN'T WANT TO NAME THE EMPLOYEES WHO WERE NOT DEFENDANTS,

09:39AM 25   BUT WE SENT THEM ALL LETTERS, 42 LETTERS.  WE COPIED RIVOS ON

09:39AM  1    ALL OF THOSE LETTERS.  AND THOSE WERE INDIVIDUALIZED LETTERS TO

09:39AM  2    THE EMPLOYEES, NOT JUST -- SOME OF THEM ADMITTEDLY WERE

09:39AM  3    STANDARD LETTERS WHERE WE DIDN'T HAVE THIS KIND OF FORENSIC

09:39AM  4    INFORMATION.  BUT FOR THE ONES WHO WIPED -- FOR THE ONES WHERE

09:39AM  5    WE HAD EVIDENCE THAT THEY TOOK THINGS, WE IDENTIFIED THE DEVICE

09:39AM  6    THAT WE BELIEVE WAS CONNECTED OR WHY WE BELIEVED THAT THEY HAD

09:39AM  7    WIPED THEIR DEVICES.

09:39AM  8         AN EXAMPLE OF ONE OF THOSE LETTERS IS AT TAB 4.  THE

09:39AM  9    LETTER AT TAB 4 IS THE LETTER THAT WENT TO MR. WEN.  SO THIS IS

09:40AM 10    ONE OF THE MOST DETAILED LETTERS.

09:40AM 11         BUT IF YOU LOOK AT THE BULLET POINTS ON PAGE 2, HERE'S THE

09:40AM 12    TYPE OF INFORMATION THAT WE GAVE THEM WITH REGARDS TO MR. WEN,

09:40AM 13    KIND OF LAYING OUT EXACTLY WHAT WE KNEW SO THAT THEY COULD MAKE

09:40AM 14    A SEARCH OF MR. WEN'S DRIVE AND DETERMINE DID HE STILL HAVE

09:40AM 15    THIS INFORMATION.

09:40AM 16         WE HAVE STILL NOT BEEN TOLD EVEN TODAY WHAT FILES MR. WEN

09:40AM 17    RETAINED.  THEY'VE ADMITTED NOW THAT HE RETAINED SOME FILES.

09:40AM 18    THEY'VE AVOIDED IN THEIR DISCOVERY RESPONSES, IN THEIR MOTION

09:40AM 19    WHEN WE DIDN'T FORMALLY REQUEST IT, GIVING US A FILE LISTING

09:40AM 20    REPORT OR TELLING US WHAT HE HAD.

09:40AM 21         I DON'T THINK THEY WANT THE COURT TO HAVE THAT INFORMATION

09:40AM 22    BECAUSE THEY KNOW IT'S A LOT OF DOCUMENTS.  IT'S HUNDREDS OF

09:40AM 23    DOCUMENTS, IF NOT THOUSANDS OF DOCUMENTS, INCLUDING, LIKE I

09:41AM 24    SAID, SOME OF THE CROWN JEWELS OF THE COMPANY.

09:41AM 25         AT TAB 5 WE HAVE AN EXAMPLE OF ANOTHER LETTER.  THIS IS A

09:41AM 1   LETTER THAT WENT TO THE INDIVIDUAL THAT RETAINED THE BACKUP,

09:41AM 2   AND SO WE HAVE A BULLET POINT ON PAGE 1.  IT SAYS, HERE'S WHAT

09:41AM 3   WE THINK YOU DID ON THE MORNING OF YOUR EMPLOYMENT.  SO THERE

09:41AM 4   ARE SIMILAR LETTERS THAT WENT OUT TO THE OTHER INDIVIDUALS, IN

09:41AM 5   EACH CASE INDIVIDUALIZED CIRCUMSTANCES.

09:41AM 6       SO HERE'S EXHIBIT F.  THIS IS THE EMPLOYEE WHO OFFERED TO

09:41AM 7   RETURN THINGS TO US.

09:41AM 8           THE COURT:  THIS IS EXHIBIT 6?

09:41AM 9           MR. KUWAYTI:  TAB 6, SORRY.  TAB 6.

09:41AM 10      THERE'S THE BULLET POINT SAYING, OKAY, YOU DID THIS

09:41AM 11  DELETION, YOUR PERSONAL ICLOUD DRIVE HAD FILES, APPLE FILES ON

09:41AM 12  IT AT THE TIME OF YOUR TERMINATION.

09:41AM 13      AND BY THE WAY, WE HAVE BEEN RIGHT ON EVERYTHING SO FAR.

09:41AM 14  EVERYTHING THAT THEY HAVE REVEALED OR EVERYTHING THAT WE'VE

09:41AM 15  FOUND OUT, WE'VE SAID THAT THEY HAD APPLE CONFIDENTIAL

09:42AM 16  INFORMATION, AND WE WERE RIGHT.

09:42AM 17      MR. WEN HAD THE INFORMATION THAT WE BELIEVED THAT HE HAD

09:42AM 18  AT LEAST.  HE MAY HAVE HAD MORE.  WE DON'T KNOW THE FULL

09:42AM 19  EXTENT.

09:42AM 20      THE PERSON THAT HAD THE BACKUP, WE WERE RIGHT ABOUT THAT;

09:42AM 21      WE WERE RIGHT ABOUT MR. KAITHAMANA HAVING TAKEN

09:42AM 22  INFORMATION;

09:42AM 23      AND WE WERE ALSO RIGHT ABOUT THIS INDIVIDUAL, NOT THAT

09:42AM 24  WE'VE HAD ANY HELP FROM THE DEFENDANTS ON THAT.  HE WROTE BACK

09:42AM 25  TO US THE SAME DAY, RIGHT AFTER RECEIVING OUR EMAIL, THIS IS AT

09:42AM  1      TAB 7, AND HE SAYS, IF YOU LOOK AT THE EMAIL, THE LAST PAGE OF

09:42AM  2      THE EMAIL IS A FRIDAY, APRIL 29TH, 7:15 P.M. EMAIL, RIGHT UP ON

09:42AM  3      TOP OF THAT HE DOES SAY THAT HE -- HE DOES SAY THAT HE KEPT THE

09:42AM  4      DOCUMENTS AND DESKTOP FOLDERS ON HIS ICLOUD, AND HE GOES ON TO

09:43AM  5      EXPLAIN WHY.

09:43AM  6          HE DOESN'T THINK THEY'RE SIGNIFICANT.  THOSE ARE TWO BIG

09:43AM  7      FOLDERS.  WE KNOW HE RETAINED INFORMATION.

09:43AM  8          AND WE WROTE BACK TO HIM TO TRY TO GET THAT INFORMATION.

09:43AM  9      AND ON THE SECOND OR FIRST PAGE OF THIS EXHIBIT RIGHT AFTER THE

09:43AM 10      COVER HE SAYS, "PLEASE DIRECT FURTHER COMMUNICATIONS ON THIS

09:43AM 11      MATTER TO RIVOS'S CORPORATE LAWYERS."

09:43AM 12          AND WHAT HAPPENED -- AND THIS IS FINE AND THIS IS WHY WE

09:43AM 13      COPIED RIVOS.  I THINK COUNSEL SAID THAT WE DIDN'T UNDERSTAND

09:43AM 14      THE ETHICAL RULE, WHICH IS NONSENSE.  WE COPIED RIVOS FOR A

09:43AM 15      REASON ON THESE DOCUMENTS, SO THAT THEY COULD HAVE A CHOICE, IF

09:43AM 16      THEY WANTED TO LET US RETAIN -- GET THESE DOCUMENTS, THEY

09:43AM 17      WOULD.  AND IF THEY FELT LIKE THEY NEEDED TO BE THE ONES TO DO

09:43AM 18      IT, THEY COULD DO THAT.

09:44AM 19          WHAT HAPPENED IS WE GOT AN EMAIL FROM THE IN-HOUSE COUNSEL

09:44AM 20      AT RIVOS WHO WROTE TO US AND SAID I'M RESPONDING ON BEHALF OF

09:44AM 21      ALL OF THE INDIVIDUALS.  YOU KNOW, OUTSIDE COUNSEL WILL BE IN

09:44AM 22      TOUCH WITH YOU SHORTLY AND WILL GIVE YOU A MORE DETAILED

09:44AM 23      RESPONSE TO THESE EMPLOYEE LETTERS.  THAT NEVER HAPPENED.  THAT

09:44AM 24      HAS NEVER HAPPENED IN THIS CASE.

09:44AM 25          SO HERE WAS AN INDIVIDUAL WHO WAS PREPARED TO GIVE US THE

09:44AM 1    DOCUMENTS BACK.  WE KNOW HE HAS APPLE CONFIDENTIAL INFORMATION

09:44AM 2    BECAUSE HE'S SAID IT, AND WE POINTED IT OUT IN OUR PAPERS IN

09:44AM 3    OUR OPENING BRIEF.

09:44AM 4         NO WORD FROM THEM ON, YEAH, WE'RE GOING TO GIVE YOU THE

09:44AM 5    DOCUMENTS BACK LIKE HE SAID HE WAS WILLING TO DO.  NO, WE'VE

09:44AM 6    SEGREGATED THE DOCUMENTS FROM HIM, DON'T WORRY.  NOTHING ABOUT

09:44AM 7    SEARCHING FOR HIS FILES.

09:44AM 8         SO WE'RE LEFT CAUGHT IN THIS MIDDLE POSITION THAT RIVOS

09:44AM 9    HAS PUT US IN WHERE WE CAN'T FIND OUT ANYTHING MORE FROM

09:44AM 10   SOMEBODY WHO IS READY TO JUST TURN OVER THE DOCUMENTS.  THEY'VE

09:45AM 11   INTERFERED AND STOPPED THAT FROM HAPPENING.

09:45AM 12        SO WE'RE ALL -- EVERYBODY IN THIS COURTROOM IS ON BOTH

09:45AM 13   SIDES OF THESE CASES ALL OF THE TIME.  AND WHEN I'M ON THE

09:45AM 14   DEFENSE SIDE OF THIS CASE AND I'M REPRESENTING A COMPANY AND

09:45AM 15   SOMEBODY SAYS YOU HAVE EMPLOYEES WHO TOOK DOCUMENTS FROM THEIR

09:45AM 16   FORMER EMPLOYER, AND HERE WE HAD MULTIPLE EMPLOYEES, THEY KNEW

09:45AM 17   THERE WERE TEN, INCLUDING THE TWO NAMED DEFENDANTS, AND NINE

09:45AM 18   PEOPLE WHO HAD WIPED THEIR DEVICES, YOU COOPERATE.  YOU FIND A

09:45AM 19   WAY TO GET THE DOCUMENTS BACK.  YOU DON'T WANT TO HAVE ANYTHING

09:45AM 20   TO DO WITH THOSE DOCUMENTS IF YOU'RE A COOPERATIVE COMPANY, AND

09:45AM 21   YOU WORK OUT A WAY TO GET THE DOCUMENTS BACK.  AND YOU --

09:45AM 22   HOPEFULLY YOU AGREE TO A FORENSIC PROTOCOL, BUT YOU SURE DON'T

09:45AM 23   SAY NOTHING ABOUT THEM AND REFUSE TO RETURN THEM.

09:45AM 24        AND THAT'S WHAT HAS HAPPENED HERE, AND I THINK IT'S

09:45AM 25   EXTRAORDINARY.  THAT'S PUT US IN THE BOX WHERE WE FELT LIKE WE

09:46AM 1    HAD NO CHOICE BUT TO BRING A TRO AND SEEK EXPEDITED DISCOVERY.

09:46AM 2         NOW, THEY -- WHEN THEY WANT TO, WHEN IT'S TO THEIR

09:46AM 3    BENEFIT, YOU KNOW, THEY CAN GET TO THESE DOCUMENTS AND THEY'RE

09:46AM 4    WILLING TO SAY THAT THEY HAVE SEARCHED THESE DOCUMENTS.

09:46AM 5         FOR EXAMPLE, THEIR FORENSIC VENDOR RESPONDS WITH RESPECT

09:46AM 6    TO THE PERSON WHO HAD THE TIME MACHINE BACKUP, AND HE SAYS,

09:46AM 7    HEY, LOOK, DON'T HAVE TO WORRY ABOUT THIS ONE, YOU KNOW, HE

09:46AM 8    DIDN'T ACCESS THE BACKUP.

09:46AM 9         SO THAT SHOWS THAT THEY CAN GET THESE DOCUMENTS IF THEY

09:46AM 10   WANT TO GET THEM.

09:46AM 11        BUT THEY -- THE PATTERN HERE HAS BEEN TO ONLY REVEAL

09:46AM 12   THINGS THAT THEY FEEL BENEFIT THEM AND TO REVEAL THE MINIMUM.

09:46AM 13        THE -- IF YOU LOOK AT TAB 10 -- I'M SORRY, TAB 10, YES.

09:47AM 14   IT'S A DECLARATION OF THEIR CEO THAT THEY SUBMITTED.  AND AT

09:47AM 15   PARAGRAPH 15 OF HIS DECLARATION HE SAYS, "OUTSIDE COUNSEL IS IN

09:47AM 16   THE PROCESS OF COLLECTING DOCUMENTS AND OTHER INFORMATION FROM

09:47AM 17   A SUBSET OF EMPLOYEES FOR FURTHER ANALYSIS AND REVIEW."

09:47AM 18        SO IT SURE SOUNDS LIKE THEY'RE OUT THERE GATHERING

09:47AM 19   DOCUMENTS FROM THESE -- SOME OF THESE EMPLOYEES, BUT WE HAVE NO

09:47AM 20   IDEA.  YOU KNOW, THIS IS LITERALLY THE MOST THAT WE HAVE BEEN

09:47AM 21   TOLD ABOUT WHAT THEY'RE DOING WITH RESPECT TO THE OTHER

09:47AM 22   EMPLOYEES.  WE DON'T KNOW WHO THEY ARE, WHETHER THEY'RE

09:47AM 23   SEARCHING THEIR DEVICES, WHAT ARE THE DOCUMENTS.  BUT, AGAIN,

09:47AM 24   THIS IS SOMETHING THAT IF THEY WANTED TO DO IT, THEY COULD.

09:47AM 25        I WANT TO QUICKLY ADDRESS THE SURREPLY, AND THEN I'LL GET

09:47AM  1    TO THE DISCOVERY RESPONSES, I PROMISE YOU.

09:48AM  2         SO WE RECEIVED THAT SURREPLY YESTERDAY A LITTLE BIT BEFORE

09:48AM  3    NOON.  WE HAVEN'T HAD A CHANCE OBVIOUSLY TO PUT IN PAPERS

09:48AM  4    RESPONDING TO IT.  THERE'S --

09:48AM  5              THE COURT:  YOU FILED SOMETHING IN RESPONSE TO IT.

09:48AM  6              MR. KUWAYTI:  TO THE SURREPLY?

09:48AM  7              THE COURT:  YES.  DIDN'T YOU?  DID YOU FILE

09:48AM  8    SOMETHING?

09:48AM  9              MR. KUWAYTI:  NO, WE DID NOT.

09:48AM 10         OH, WELL, WE FILED AN OPPOSITION BECAUSE IT WAS LATE.

09:48AM 11              THE COURT:  RIGHT.

09:48AM 12              MR. KUWAYTI:  SO YOU'RE RIGHT, WE DIDN'T ADDRESS THE

09:48AM 13    MERITS OF IT.

09:48AM 14              THE COURT:  AND THE COURT HAS NOT GRANTED THEIR

09:48AM 15    REQUEST TO FILE IT.

09:48AM 16              MR. KUWAYTI:  YES.  THANK YOU.

09:48AM 17         SO WE DO BELIEVE THAT'S IMPROPER.  IT'S LATE.  WE DON'T

09:48AM 18    THINK THERE WAS ANYTHING THAT WE PUT IN THAT JUSTIFIED THAT.

09:48AM 19         FOR EXAMPLE, WE PUT IN THE TRADE SECRETS STATEMENT THAT

09:48AM 20    THEY HAD REFERENCED IN THEIR BRIEF BUT NOT ATTACHED; WE'VE PUT

09:48AM 21    IN SOME CORRESPONDENCE BETWEEN THE PARTIES TO COMPLETE THE

09:48AM 22    RECORD.

09:48AM 23         BUT WE DISAGREE WITH A LOT OF WHAT IS IN THERE, YOU'RE NOT

09:48AM 24    GOING TO BE SURPRISED.  IN PARTICULAR, WE DISAGREE WITH THE

09:49AM 25    DECLARATION OF COUNSEL THAT IS PUT IN AND THE CHARACTERIZATION

09:49AM   1    OF THE MEET AND CONFER THAT TOOK PLACE, WHICH I THINK IS

09:49AM   2    COMPLETELY INACCURATE.

09:49AM   3         BUT I'M NOT GOING TO ADDRESS THAT BECAUSE I DON'T THINK

09:49AM   4    THAT'S PRODUCTIVE, BUT I DO THINK A FEW OF THE THINGS IN THE

09:49AM   5    FORENSIC VENDOR'S DECLARATION ARE IMPORTANT.

09:49AM   6         AND THIS -- THE THINGS THAT ARE THE MOST IMPORTANT ARE

09:49AM   7    THIS:  THEY HAVE SAID IN THEIR PAPERS THAT THEY HAVE SEARCHED

09:49AM   8    THROUGH RIVOS'S SYSTEMS FOR TERMS THAT WOULD INDICATE THAT

09:49AM   9    APPLE DOCUMENTS WERE RETAINED ON THOSE SYSTEMS.  THAT'S WHAT

09:49AM   10   THEY SAY IN THEIR BRIEF ON PAGE 5.

09:49AM   11        AND YOU GO TO THE DECLARATION.  THEY CITE TO PARAGRAPH 7

09:49AM   12   TO 8 OF HIS DECLARATION AND PARAGRAPH 13, AND YOU GO TO THE

09:49AM   13   DECLARATION, AND HE DOES NOT SAY THAT.

09:49AM   14        ALL HE DID, IF YOU GO TO PARAGRAPH -- TO HIS DECLARATION,

09:49AM   15   WHICH IS TAB 14, ALL HE SAYS, PARAGRAPH 7 SAYS HERE'S WHAT I

09:50AM   16   SEARCHED IN THE FIRST -- UP THROUGH LETTER K ARE MR. WEN'S

09:50AM   17   DEVICES, AND THEN THE LAST IS TWO OF THE NETWORK SHARES AT

09:50AM   18   RIVOS.  THERE'S NO EXPLANATION FOR US OF WHAT THOSE IS -- OF

09:50AM   19   WHAT THOSE ARE.

09:50AM   20        BUT IN PARAGRAPH 8 HERE'S WHAT HE SAYS, "THE SEARCHES OF

09:50AM   21   THE ABOVE OUTLINED SOURCES RELIED UPON ALL OF THE INDIVIDUAL

09:50AM   22   FILES AND FOLDER PATHS SPECIFIED IN MR. ROFFMAN'S DECLARATION

09:50AM   23   AND WITHIN ITS APPENDIX B."  APPENDIX B IS THE LIST OF FILES.

09:50AM   24        SO WHAT HE'S SAYING IS THAT I SEARCHED THROUGH THE FILES

09:50AM   25   AND THE FILE PATH THAT HE IDENTIFIED IN APPENDIX B.  NOTHING IN

09:50AM   1   THERE ABOUT I PUT IN TERMS TO DETERMINE WHETHER APPLE'S

09:50AM   2   DOCUMENTS WERE FOUND IN GENERAL.  WE OFFERED TWICE TO GIVE THEM

09:50AM   3   SEARCH TERMS TO ASSIST IN THAT SEARCH, AND THEY NEVER TOOK US

09:50AM   4   UP ON THAT EITHER TIME.

09:51AM   5        BUT THERE'S BEEN A REPRESENTATION MADE TO THE COURT WHICH

09:51AM   6   CERTAINLY IS NOT SUPPORTED BY THIS DECLARATION THAT THEY'VE PUT

09:51AM   7   IN.  AND THAT'S PART OF THE ISSUE HERE WHEN IT COMES TO THE

09:51AM   8   RESPONSES IS THAT APPENDIX B IS A LIST OF FILES IN TWO FOLDERS

09:51AM   9   ON MR. WEN'S DEVICE, HIS DOWNLOADS FOLDER AND HIS DESKTOP

09:51AM  10   FOLDER THAT WE KNEW WERE TAKEN.

09:51AM  11        IT IS NOT -- IT DOES NOT PURPORT TO BE A LIST OF WHAT

09:51AM  12   EVERYBODY ELSE TOOK.  IT DOESN'T PURPORT TO BE A LIST OF

09:51AM  13   EVERYTHING THAT MR. WEN TOOK.  I MEAN, THAT'S WHAT WE ARE AWARE

09:51AM  14   OF IN THOSE TWO FOLDERS.  IT'S NOT.  IT'S A FRACTION OF WHAT

09:51AM  15   HAS BEEN TAKEN OVERALL.

09:51AM  16        AND SO THE SEARCH THAT HAS BEEN DONE HERE HAS BEEN JUST

09:51AM  17   APPARENTLY FOR THOSE FILES, WHICH IS WHAT MR. KUMAR SAYS IN HIS

09:51AM  18   DECLARATION AS WELL.  SO WE'VE BEEN SEARCHING FOR THE FILES

09:52AM  19   THAT ARE LISTED IN APPENDIX B.

09:52AM  20        WE DON'T THINK THIS -- OUR FORENSIC VENDOR TELLS US

09:52AM  21   THERE'S A LOT OF PROBLEMS WITH THIS DECLARATION IN TERMS OF

09:52AM  22   SAYING THAT MR. WEN DIDN'T ACCESS THE DOCUMENTS, SO I'M NOT

09:52AM  23   GOING TO GO INTO THE DETAILS OF THAT.

09:52AM  24        BUT ONE OF THE THINGS THAT IS STRIKING IS IN PARAGRAPH 12.

09:52AM  25   PARAGRAPH 12 SAYS THAT AT LINES 19 TO 22 HE SAYS, "I DIDN'T

09:52AM 1     OBSERVE ANY ACTIVITY ON THIS HARD DRIVE FROM AUGUST 6TH, 2021

09:52AM 2     UNTIL APRIL 30TH, 2022, WHEN 22,908 ITEMS, ALMOST EXCLUSIVELY

09:52AM 3     FOLDERS, HAD THEIR LAST ACCESS TIME STAMPS UPDATED IN RAPID

09:52AM 4     SUCCESSION."

09:52AM 5         SO WHAT HAPPENED HERE IS THAT THE DAY AFTER THE LAWSUIT

09:53AM 6     WAS FILED, MR. WEN OPENED HIS -- CONNECTED THE HARD DRIVE TO

09:53AM 7     SOME KIND OF COMPETING DEVICE, AND ALL OF THE LAST ACCESS DATES

09:53AM 8     WERE AUTOMATICALLY UPDATED.  SO THAT INFORMATION, THAT METADATA

09:53AM 9     IS GONE.

09:53AM 10         AND ALL THAT MR. KUNKEL SAYS IN HIS DECLARATION IS I

09:53AM 11     DIDN'T OBSERVE ANY ACTIVITY, WHICH IS NOT REALLY A FORENSIC

09:53AM 12     TERM ON THIS.

09:53AM 13         THERE ARE A LOT OF DIFFERENT THINGS THAT HE COULD HAVE

09:53AM 14     SAID OR INDICIA OF THINGS BEING TRANSFERRED OR OPENED OR

09:53AM 15     ACCESSED, AND THIS DECLARATION IS SILENT ON THAT.

09:53AM 16         SO WE DON'T ACCEPT, YOU KNOW, BASED ON THIS DECLARATION,

09:53AM 17     THAT THIS IS EVIDENCE THAT MR. WEN DIDN'T ACCESS THAT.

09:53AM 18         THE COURT:  ARE YOU GOING TO GET THIS NOW PURSUANT

09:53AM 19     TO THE STIPULATION?

09:53AM 20         MR. KUWAYTI:  WE ARE GOING TO GET THAT, YOUR HONOR,

09:53AM 21     AND YOU'RE RIGHT.  SO THAT SHOULD BE OBVIATED BY THE FACT THAT

09:53AM 22     WE'RE NOW GOING TO GET THAT AND BE ABLE TO DETERMINE FOR

09:53AM 23     OURSELVES.

09:54AM 24         BUT PART OF THE POINT IS COMING IN HERE AND SAYING THAT HE

09:54AM 25     DIDN'T DO ANYTHING, I DON'T THINK THAT'S BEEN SHOWN.

09:54AM 1      I THINK THE OTHER THING THAT IS IMPORTANT IS THAT IN

09:54AM 2    PARAGRAPH 10 IT SAYS THAT WHEN HE -- HIS ICLOUD WAS

09:54AM 3    AUTOMATICALLY SYNCED TO HIS RIVOS LAPTOP IN 2021.  THERE ARE

09:54AM 4    OTHER EMPLOYEES WHO WE'VE SHOWN IN THE ROFFMAN DECLARATION HAD

09:54AM 5    APPLE INFORMATION IN THEIR ICLOUDS WHEN THEY LEFT.

09:54AM 6      SO THIS SUGGESTS THAT THERE IS AT LEAST A LIKELIHOOD THAT

09:54AM 7    FOR THOSE INDIVIDUALS, THEIR INFORMATION WENT ONTO THEIR RIVOS

09:54AM 8    WORK LAPTOP WHEN THEY WERE SYNCED.

09:54AM 9      SO IF I COULD JUST ADDRESS THE DISCOVERY RESPONSES,

09:54AM 10   BECAUSE I THINK THAT TAKES US TO THE HEART OF THE ISSUE.

09:54AM 11   TAB 12 IS THE REQUEST FOR PRODUCTION.  AND IF YOU LOOK AT THE

09:55AM 12   FIRST REQUEST FOR PRODUCTION, NUMBER 1.  SO -- SORRY, NOT

09:55AM 13   NUMBER 1.  NUMBER 2, EXCUSE ME, YOUR HONOR.

09:55AM 14      IF YOU LOOK FOR REQUEST FOR PRODUCTION NUMBER 2, REQUEST

09:55AM 15   FOR PRODUCTION NUMBER 2 ASKS FOR ALL DOCUMENTS AND

09:55AM 16   COMMUNICATIONS REFERRING TO DOWNLOADING, ACCESSING, OR USING

09:55AM 17   ANY OF THE APPLE CONFIDENTIAL DOCUMENTS THAT WERE TRANSFERRED

09:55AM 18   BY THE FORMER EMPLOYEES.

09:55AM 19      AND HERE'S WHAT WE'RE TOLD IN RESPONSE ON PAGE 7.  RIVOS

09:55AM 20   WILL PRODUCE RIVOS'S POLICIES PROHIBITING THE USE OF THIRD

09:55AM 21   PARTY CONFIDENTIAL INFORMATION IN CONNECTION WITH WORK AT

09:55AM 22   RIVOS.

09:55AM 23      SO COMPLETELY NONRESPONSIVE.  IT'S HARD TO ARGUE THAT

09:56AM 24   THESE DON'T GO TO THE VERY HEART OF THE CASE.  AND THEY'RE

09:56AM 25   TELLING US, YEAH, WE'LL GIVE YOU THE POLICY SAYING THAT PEOPLE

09:56AM  1    AREN'T SUPPOSED TO DO THAT.  AND THEY WANT TO COME IN HERE AND

09:56AM  2    SAY TO YOU, WELL, THIS HAS NOW BEEN MOOTED.

09:56AM  3         BUT PART OF THE OBJECTION HERE IS ALSO ON PAGE 6, THAT

09:56AM  4    THEY OBJECT TO THE EXTENT THAT THE REQUEST SEEKS INFORMATION

09:56AM  5    NOT IN RIVOS'S POSSESSION, CUSTODY, OR CONTROL AT LINES 22 TO

09:56AM  6    23, AND SAME OBJECTION IN EVERY ONE THAT IT'S PREMATURE, THERE

09:56AM  7    HASN'T BEEN A RULE 26(F) CONFERENCE, AND THEIR INVESTIGATION IS

09:56AM  8    ONGOING.

09:56AM  9         AND THEN IF YOU LOOK AT REQUEST FOR PRODUCTION NUMBER 4

09:56AM  10   THIS ONE GOES TO, ARE WE GOING TO GET THE DOCUMENTS THAT

09:56AM  11   EMPLOYEES RETAINED OR NOT?

09:56AM  12        SO DOCUMENTS SUFFICIENT TO SHOW LOCATION OR ORIGIN OF OUR

09:56AM  13   INFORMATION THAT WERE PROVIDED TO RIVOS OR THAT WERE RETAINED

09:57AM  14   OR DOWNLOADED BY FORMER APPLE EMPLOYEES.  THESE ARE ALL VERY

09:57AM  15   FOCUSSED ON OUR DOCUMENTS ONLY.

09:57AM  16        AND THE RESPONSE IS, YOU KNOW, BASED ON WHAT THEY KNOW SO

09:57AM  17   FAR, THIS IS NOT ON THE RIVOS SYSTEM OR THE RIVOS DEVICES.

09:57AM  18   AGAIN, THAT SEARCH IS A VERY LIMITED SEARCH FOR WHAT WAS ON

09:57AM  19   APPENDIX B.

09:57AM  20        BUT THEY WON'T TELL US WHETHER THE EMPLOYEES RETAINED THE

09:57AM  21   DOCUMENTS.  THEIR OBJECTION IS THAT IT'S NOT WITHIN THEIR

09:57AM  22   CUSTODY OR CONTROL, SO WE HAVE NO WAY OF KNOWING WHETHER THESE

09:57AM  23   DOCUMENTS ARE THERE.

09:57AM  24        AND THEN JUST QUICKLY ON THE INTERROGATORIES,

09:57AM  25   INTERROGATORY 2, THAT'S TAB 13 -- I'M SORRY, IT'S NOT TAB 13.

09:58AM 1     TAB 11 IS THE INTERROGATORIES.  EXCUSE ME, YOUR HONOR.

09:58AM 2         INTERROGATORY 2 IS THE PARALLEL INTERROGATORY TO THAT ONE

09:58AM 3     DOCUMENT REQUEST.  AND WE SAY, "DESCRIBE WHETHER OR HOW APPLE

09:58AM 4     CONFIDENTIAL DOCUMENTS AND INFORMATION THAT WERE RETAINED BY

09:58AM 5     THE FORMER EMPLOYEES HAVE BEEN ACCESSED OR USED BY RIVOS OR

09:58AM 6     RETAINED."

09:58AM 7         AND THE ANSWER TO THAT INTERROGATORY, WHICH BEGINS AT

09:58AM 8     PAGE 6, IS THAT -- CARRYING OVER TO PAGE 7, "RIVOS HAS NO

09:58AM 9     KNOWLEDGE OF ANY DOWNLOADING, TRANSFER OR RETENTION OF ANY

09:58AM 10    APPLE CONFIDENTIAL DOCUMENTS AND INFORMATION," CONSPICUOUSLY

09:58AM 11    NOT SAYING ANYTHING ABOUT USE OF THOSE DOCUMENTS.  JUST TALKING

09:58AM 12    ABOUT DOWNLOADING OR RETENTION ON THEIR SYSTEMS.

09:58AM 13        THAT'S PART OF THE REASON WHY WE NEED THESE DEPOSITIONS,

09:58AM 14    IS TO GET BEHIND LANGUAGE LIKE THAT WHERE SOMEBODY IS NOT

09:59AM 15    TELLING YOU WHETHER YOUR INFORMATION HAS BEEN USED OR NOT.  AND

09:59AM 16    THEY'RE NOT GOING TO GIVE US THE DOCUMENTS, AND THEY'RE NOT

09:59AM 17    GOING TO RESPOND TO AN INTERROGATORY ON THAT POINT.

09:59AM 18        SO INTERROGATORY 3, JUST TO CLOSE THIS OUT, WE ASKED FOR

09:59AM 19    THE CURRENT OR LAST KNOWN LOCATION OF APPLE DOCUMENTS THAT

09:59AM 20    THESE EMPLOYEES TOOK, AND WE GET AN OBJECTION THAT IT SEEKS

09:59AM 21    INFORMATION NOT WITHIN THEIR POSSESSION, CUSTODY OR CONTROL

09:59AM 22    ALONG WITH THE OTHER THINGS, AND WE GET NO RESPONSE.

09:59AM 23        SO THEY'RE NOT GOING TO TELL US FOR THESE OTHER EMPLOYEES

09:59AM 24    IN DISCOVERY.

09:59AM 25        SO WHAT DO WE WANT FROM THE COURT?  WHAT WE ARE ASKING

09:59AM   1    FROM THE COURT, AND WE HAVE A MODIFIED PROPOSED ORDER IF

09:59AM   2    YOUR HONOR WANTS IT, WHAT WE'RE ASKING FROM THE COURT IS WE

09:59AM   3    WANT TO HAVE THE DEPOSITIONS THAT WE'VE REQUESTING, WE'RE

10:00AM   4    ASKING FOR THEM WITHIN 14 DAYS, OF MR. WEN AND THE 30(B)(6).

10:00AM   5         WE WANT TO HAVE THE ABILITY TO GET THE DOCUMENTS FROM THE

10:00AM   6    EMPLOYEES.  WE WANT THE COURT'S PERMISSION THAT WE CAN NOW

10:00AM   7    SUBPOENA THESE EMPLOYEES OR SEND A -- WELL, WE WANT TO SUBPOENA

10:00AM   8    THE DOCUMENTS FROM THE EMPLOYEES SINCE THEY WON'T GIVE THEM TO

10:00AM   9    US AND THEY'RE TAKING THE POSITION THAT THEY DON'T HAVE THEM,

10:00AM  10    WHICH THEY CAN DO, BUT THEN THEY CAN'T SAY TO US, YOU CAN'T GET

10:00AM  11    IT FROM THEM DIRECTLY, EITHER.

10:00AM  12         THE COURT:  SO YOUR SUBPOENAS WOULD GO DIRECTLY TO

10:00AM  13    EACH OF THE INDIVIDUAL EMPLOYEES AND ASK EACH OF THOSE

10:00AM  14    INDIVIDUAL EMPLOYEES TO PROVIDE THE INFORMATION?

10:00AM  15         MR. KUWAYTI:  YES, WE WOULD TRY TO GET THAT

10:00AM  16    INFORMATION DIRECTLY.

10:00AM  17         AND WE ARE HAPPY TO TAKE ON THE BURDEN OF DOING THAT.

10:00AM  18    WE'VE SAID THAT FROM THE BEGINNING.  THAT WAS OUR HOPE, SO WE

10:00AM  19    CAN -- IT DOESN'T HAVE TO BE SOMETHING THAT RIVOS IS CONCERNED

10:00AM  20    ABOUT.  WE WILL, WE WILL DO THAT DIRECTLY OURSELVES.

10:01AM  21         THE COURT:  TELL ME THE LOGISTICS OF THAT.  HOW

10:01AM  22    WOULD THAT WORK?

10:01AM  23         MR. KUWAYTI:  WE WOULD SERVE SUBPOENAS ON THE

10:01AM  24    EMPLOYEES FOR -- IF THE POSITION IS THAT WE CAN'T GET THEM FROM

10:01AM  25    THE COMPANY, THEN HOW DO WE GET THEM FROM THE EMPLOYEES?

10:01AM  1   THEY'RE EFFECTIVELY IN THE POSITION OF A PARTY THAT IS BEYOND

10:01AM  2   THEIR CONTROL IN THE SAME WAY THAT IF YOU'RE TAKING THE

10:01AM  3   POSITION THAT YOUR LAW FIRM ISN'T YOUR AGENT, YOU HAVE TO GET

10:01AM  4   THE DOCUMENTS FROM THEM DIRECTLY, YOU SUBPOENA THE LAW FIRM

10:01AM  5   DIRECTLY, WE WOULD DO THAT WITH THE COURT.

10:01AM  6          THE COURT:  SURE.  I UNDERSTAND THAT CONCEPT.

10:01AM  7       BUT I'M JUST CURIOUS, WHAT DO YOU INTEND TO DO BY DIRECTLY

10:01AM  8   GOING TO THE EMPLOYEE?  ARE YOU GOING TO TELL THEM, WE WANT YOU

10:01AM  9   TO SCRAPE ALL OF YOUR DEVICES, WHATEVER IT IS, GIVE US THAT?

10:01AM  10      I'M JUST CURIOUS ABOUT HOW THAT GETS POLICED AND HOW THAT

10:01AM  11  ACTUALLY WORKS.

10:01AM  12         MR. KUWAYTI:  SO WE'RE HAPPY TO DO IT WITH A PROCESS

10:01AM  13  THAT IS AGREED TO WITH THE COURT TO MAKE SURE THAT IT IS

10:02AM  14  PROPER.

10:02AM  15      I THINK FOR US IT'S OBVIOUSLY EASIEST AND PROBABLY MOST

10:02AM  16  COMPLETE FOR US TO GET IT IF THEY WANT TO SEND THE DEVICE TO A

10:02AM  17  NEUTRAL FORENSIC VENDOR, AND HAVE IT INSPECTED, THE DEVICES

10:02AM  18  THAT WERE USED TO STORE, TRANSMIT INFORMATION.

10:02AM  19      BUT IF THAT'S NOT SOMETHING THAT THEY'RE WILLING TO DO OR

10:02AM  20  THE COURT IS NOT WILLING TO ORDER TO DO, THEN WE WOULD ASK THAT

10:02AM  21  THAT SEARCH BE DONE BY THEM.

10:02AM  22         THE COURT:  BY THE INDIVIDUAL.

10:02AM  23      AND THEN THAT WAS MY NEXT QUESTION.  HOW DO YOU POLICE

10:02AM  24  THAT?  HOW DO YOU SATISFY THAT THE PERSON HAS DONE -- THEY WILL

10:02AM  25  SEND YOU -- IN AN HOUR THEY SEND AN EMAIL, OKAY, DONE, DIDN'T

10:02AM  1    FIND ANYTHING, THANKS FOR THE OPPORTUNITY TO SEARCH.

10:02AM  2         I'M JUST THROWING A HYPOTHETICAL OUT.

10:02AM  3         THIS RELATES TO SOME OF MY EARLIER QUESTIONS THIS MORNING

10:02AM  4    ABOUT WHAT TYPE OF PROTOCOL, PROCEDURE SHOULD BE IN PLACE?

10:02AM  5    SHOULD THE COURT -- AND I'LL HEAR, OF COURSE, FROM THE DEFENSE

10:02AM  6    IN A MOMENT.

10:02AM  7         SHOULD WE ESTABLISH -- SHOULD I GIVE YOU AT THE OUTSET,

10:03AM  8    MAYBE AT THE END OF THIS, GIVE YOU A LIMITED TIME TO MEET AND

10:03AM  9    CONFER ABOUT A PROTOCOL THAT PERHAPS SECURES -- I DON'T WANT TO

10:03AM  10   USE THE WORD "SEIZE," THAT'S A LITTLE TOO HARSH, BUT SOMEHOW

10:03AM  11   SECURES THE DRIVES IN QUESTION, A SPECIAL MASTER CAN BE

10:03AM  12   CREATED, AND SHE CAN LOOK AT THINGS AND IDENTIFY WHAT THEY ARE,

10:03AM  13   AND THEN AT SOME POINT WE ALL COME BACK TO REVIEW THE WORK

10:03AM  14   PRODUCT, WHAT HAS HAPPENED.

10:03AM  15        YOU'RE SMARTER THAN I AM ON THESE THINGS.  YOU HAVE MORE

10:03AM  16   EXPERIENCE, BUT THAT MIGHT BE A PROTOCOL THAT WE ENGAGE.

10:03AM  17        AGAIN, I'M JUST SUGGESTING SOME THOUGHTS.

10:03AM  18        I THINK THAT YOU PROBABLY WOULD BE INSECURE TO HAVE THE

10:03AM  19   INDIVIDUAL EMPLOYEES SELF-REGULATE, SELF-POLICE THAT.  THAT'S

10:03AM  20   JUST AN OBSERVATION.

10:03AM  21            MR. KUWAYTI:  I THINK YOU'RE ABSOLUTELY RIGHT,

10:03AM  22   YOUR HONOR, TO THE EXTENT THAT WE CAN HAVE SOME KIND OF A

10:03AM  23   PROTOCOL THAT HAS THE COURT INVOLVED IN IT BE IT A SPECIAL

10:04AM  24   MASTER OR THE MAGISTRATE.  AS LONG AS IT'S A PROCESS THAT IS

10:04AM  25   MOVING QUICKLY.

10:04AM 1          AND WE'RE HAPPY TO SIT DOWN AND TRY TO WORK SOMETHING OUT

10:04AM 2     WITH OPPOSING COUNSEL FOR THAT.

10:04AM 3          THE COURT:  MY THOUGHT IS -- PARDON ME FOR

10:04AM 4     INTERRUPTING YOU.  MY THOUGHT IS THAT THE DEVICES, YOU WANT TO

10:04AM 5     KNOW -- YOU WANT THE INFORMATION, FIRST OF ALL.  AND IF

10:04AM 6     THAT'S -- IF THERE'S A STAGING OF THIS -- AND I'M SORRY, I'M

10:04AM 7     JUST THROWING ALL OF THIS OUT.  IF THERE'S A STAGING, IS IT

10:04AM 8     IMPORTANT TO GET THAT INFORMATION FIRST AND THEN DIGEST THAT

10:04AM 9     AND THEN MOVE TO DEPOS?  DOES ALL OF THIS HAVE TO BE CONCURRENT

10:04AM 10    OR IS THERE SOME STAGING THAT CAN BE DONE?  I'M THROWING IT

10:04AM 11    OUT.  I DON'T KNOW THE ANSWER TO THAT.  YOU DO AS FAR AS YOUR

10:04AM 12    CASE IS CONCERNED.

10:04AM 13         MR. KUWAYTI:  I THINK THAT -- I GUESS WHETHER THOSE

10:04AM 14    DEPOSITIONS SHOULD WAIT -- I THINK THERE SHOULD BE SOME

10:04AM 15    DEPOSITIONS THAT, THAT WAIT SO THAT WE HAVE AN OPPORTUNITY TO

10:04AM 16    DO THAT.

10:04AM 17         I THINK WE FEEL THE NEED FOR A DEPOSITION PRIOR TO THAT

10:05AM 18    BECAUSE WE JUST DON'T HAVE ANY INSIGHT RIGHT NOW INTO WHAT HAS

10:05AM 19    BEEN DONE.

10:05AM 20         THE COURT:  RIGHT.  THE INFORMATION, THE RESPONSES

10:05AM 21    YOU HAVE, PARDON ME FOR INTERRUPTING YOU, BUT THE RESPONSES

10:05AM 22    THAT YOU HAVE RECEIVED DO NOT GIVE YOU GREAT CONFIDENCE OR

10:05AM 23    SECURITY RIGHT NOW?

10:05AM 24         MR. KUWAYTI:  THAT WOULD BE A FAIR STATEMENT,

10:05AM 25    YOUR HONOR, YES.

| | | |
|---|---|---|
| 10:05AM | 1 | THE COURT:  OKAY.  OKAY. |
| 10:05AM | 2 | ANYTHING ELSE BEFORE I INVITE YOUR COLLEAGUE OPPOSITE? |
| 10:05AM | 3 | MR. KUWAYTI:  THE LAST POINT THAT WE'RE ASKING IS |
| 10:05AM | 4 | THAT THEY, OF COURSE, HAVE TO SUPPLEMENT THESE RESPONSES WITH |
| 10:05AM | 5 | MORE INFORMATION. |
| 10:05AM | 6 | THE COURT:  OKAY.  THANK YOU. |
| 10:05AM | 7 | MR. KUWAYTI:  THANK YOU. |
| 10:05AM | 8 | THE COURT:  THANK YOU. |
| 10:05AM | 9 | MR. SWEDLOW:  YOUR HONOR, MAY I REMOVE THIS FOR |
| 10:05AM | 10 | ARGUMENT? |
| 10:05AM | 11 | THE COURT:  YES. |
| 10:06AM | 12 | MR. SWEDLOW:  THANK YOU, YOUR HONOR. |
| 10:06AM | 13 | DURING THE PANDEMIC MY EYES GOT JUST BAD ENOUGH THAT I |
| 10:06AM | 14 | HAVE TO WEAR THE GLASSES.  AND SO I'M NOT GOOD YET OF WEARING |
| 10:06AM | 15 | THE GLASSES, AND TAKING THEM OFF, AND PUTTING THEM BACK ON. |
| 10:06AM | 16 | THE COURT:  THAT SOMETIMES COMES WITH AGE AS WELL, |
| 10:06AM | 17 | SO WELCOME TO THE PROCESS. |
| 10:06AM | 18 | MR. SWEDLOW:  I TURNED 51, I THINK THAT'S THE AGE |
| 10:06AM | 19 | WHERE MY EYES WENT BAD. |
| 10:06AM | 20 | THE COURT:  OH, TO BE 51 AGAIN. |
| 10:06AM | 21 | (LAUGHTER.) |
| 10:06AM | 22 | MR. SWEDLOW:  I DON'T WANT TO WASTE THE FEW MINUTES |
| 10:06AM | 23 | I HAVE, BUT I WAS JUST TALKING TO MY COLLEAGUES LAST NIGHT THAT |
| 10:06AM | 24 | WHEN I FIRST STARTED AS A LAWYER, I THOUGHT THE 51-YEAR-OLD |
| 10:06AM | 25 | LAWYER AT MY LAW FIRM WAS SO OLD.  AND NOW I AM 51, AND I DON'T |

10:06AM   1    FEEL OLD AT ALL.

10:06AM   2        WELL, I WANT TO ADDRESS -- IF WE COULD JUST START WITH THE

10:06AM   3    TIMELINE, THE QUESTION THAT YOU HAD.

10:06AM   4        SO WHAT WE'RE TALKING ABOUT HERE ARE 40-PLUS EMPLOYEES,

10:06AM   5    2 DEFENDANTS WHO ALL LEFT APPLE A YEAR AGO, MAYBE UP TO -- DOWN

10:06AM   6    TO 8 MONTHS AGO.  ALL OF THIS FORENSIC INFORMATION HAS BEEN

10:06AM   7    WITHIN -- APPLE HAS HAD IT FOR THE PAST YEAR OR 8 MONTHS.

10:07AM   8        APPLE -- THE PROBLEM WITH APPLE'S PROCESS -- AND APPLE IS

10:07AM   9    CORRECT, I'M INVOLVED IN A LOT OF TRADE SECRETS CASES.  I'M

10:07AM  10    INVOLVED IN COUNSELLING A LOT OF CLIENTS ON HOW TO RECOVER

10:07AM  11    THEIR INFORMATION WHEN EMPLOYEES LEAVE AND HOW TO CONTACT

10:07AM  12    EMPLOYEES TO MAKE SURE THAT THEY DIDN'T INADVERTENTLY COPY

10:07AM  13    SOMETHING.  I'VE DONE THAT FOR HUNDREDS OF EMPLOYEES FOR DOZENS

10:07AM  14    OF COMPANIES.

10:07AM  15        THE COURT:  THAT'S THE COIN OF THE REALM OF THIS

10:07AM  16    AREA, ISN'T IT?

10:07AM  17        MR. SWEDLOW:  I HAVE A PRETRIAL TOMORROW IN A TRADE

10:07AM  18    SECRET CASE IN SAN DIEGO.

10:07AM  19        I HAVEN'T HAD AN EXPERIENCE THAT HAS BEEN AS ADVERSARIAL

10:07AM  20    AND AS UNCOMFORTABLE AS THE INTERACTIONS THAT WE HAVE HAD, AND

10:07AM  21    THAT'S WHY I SUBMITTED THAT DECLARATION, BECAUSE EVERYTHING IS

10:07AM  22    REVERSED HERE.

10:07AM  23        WHAT HAPPENED IS APPLE HAD THE INFORMATION FOR A YEAR.

10:07AM  24    THEN APPLE FILED THE TRADE SECRET CLAIM AGAINST RIVOS WITH NO

10:07AM  25    EVIDENCE AT ALL THAT RIVOS DID ANYTHING.

10:07AM  1    WHAT APPLE HAD WAS THE FORENSIC INFORMATION OF PEOPLE WHO

10:07AM  2    LEFT APPLE AND EITHER INADVERTENTLY OR OTHERWISE MIGHT HAVE HAD

10:08AM  3    APPLE INFORMATION.  THAT'S ALL THAT APPLE KNEW.

10:08AM  4        SO WHAT APPLE DID WAS FILE A LAWSUIT IN FEDERAL COURT AND

10:08AM  5    THEN SEND 42 LETTERS TO EMPLOYEES.  AND YOU GOT TO SEE ONE OR

10:08AM  6    TWO OF THOSE LETTERS.

10:08AM  7        IF I MAY, CAN I GIVE YOU ALL OF THESE LETTERS, BECAUSE I

10:08AM  8    THINK UNDERSTANDING WHAT WAS IN THE LETTERS, AND, THEREFORE,

10:08AM  9    WHAT THESE EMPLOYEES WERE TOLD UP TO THIS POINT IS IMPORTANT TO

10:08AM 10    KNOW.

10:08AM 11            THE COURT:  DO YOU HAVE A COPY FOR YOUR COLLEAGUES?

10:08AM 12            MR. SWEDLOW:  YES.

10:08AM 13            MR. KUWAYTI:  WE CERTAINLY HAVE NO OBJECTION TO

10:08AM 14    THAT, YOUR HONOR.

10:08AM 15            MR. SWEDLOW:  CAN I APPROACH?

10:08AM 16            THE COURT:  YES.  YOU CAN HAND IT TO OUR CLERK HERE.

10:08AM 17            MR. SWEDLOW:  (HANDING.)

10:08AM 18        I DON'T WANT TO JUMP OFF THE TIMELINE.  SO ON APRIL 29TH A

10:08AM 19    FEDERAL LAWSUIT WAS FILED AGAINST RIVOS FOR TRADE SECRET

10:09AM 20    MISAPPROPRIATION AND AGAINST TWO EMPLOYEES.  I HAVE TO ASSUME

10:09AM 21    THAT SINCE APPLE SPENT SO MUCH TIME LOOKING AT FORENSIC

10:09AM 22    INFORMATION THEY HAD, THAT THEY PICKED THEIR TWO BEST CASES,

10:09AM 23    AND I THINK THAT'S IMPORTANT TO NOTE BECAUSE THEY COULD HAVE

10:09AM 24    SUED ANYBODY, COULD HAVE SUED ALL 42.

10:09AM 25        THE LETTERS THAT WERE SENT, FOR 25 OF THOSE LETTERS,

10:09AM  1    FORMER APPLE EMPLOYEES WHO NOW WORK AT RIVOS, THERE WERE NO

10:09AM  2    ALLEGATIONS OF ANYTHING THAT THE EMPLOYEE TOOK ANYTHING,

10:09AM  3    DELETED ANYTHING, OR COPIED ANYTHING.  SO THAT WOULD BE THE

10:09AM  4    FIRST 25 LETTERS THAT YOU HAVE THERE.  NO ALLEGATION OF

10:09AM  5    ANYTHING AT ALL.

10:09AM  6         SO THE EMPLOYEE WAS BASICALLY TOLD, YOU USED TO WORK AT

10:09AM  7    APPLE, YOU HAVE OBLIGATIONS TO APPLE.  THAT'S IT.

10:09AM  8         FOR 12 OF THEM, THERE WERE ALLEGATIONS OR STATEMENTS OF

10:09AM  9    INFORMATION BEING DELETED BEFORE THEY LEFT.  SO THAT'S 37

10:09AM  10   LETTERS THAT DON'T SAY YOU COPIED OR BROUGHT ANYTHING WITH YOU

10:09AM  11   WHEN YOU LEFT.  SO 37 OF THEM DON'T SAY ANYTHING TO ANY

10:09AM  12   EMPLOYEES.

10:09AM  13        WHAT APPLE IS PROPOSING NOW IS THAT THEY FILED A FEDERAL

10:09AM  14   LAWSUIT AGAINST A COMPANY, AND THEN THEY WANT TO CONTACT THE

10:10AM  15   40 EMPLOYEES WHO THEY SENT A LETTER TO AFTER FILING THE FEDERAL

10:10AM  16   LAWSUIT AGAINST THEIR CURRENT EMPLOYER.  AND THAT JUST ISN'T

10:10AM  17   ALLOWED UNDER THE ETHICAL RULES.  YOU CAN'T CONTACT CURRENT

10:10AM  18   EMPLOYEES.

10:10AM  19        THE INTERVENING TIMELINE IS ALSO IMPORTANT.  ON APRIL 29TH

10:10AM  20   THE FEDERAL LAWSUIT IS FILED.

10:10AM  21        ON MAY 4TH, THE IN-HOUSE COUNSEL, BRYAN WILSON, SENT A

10:10AM  22   LETTER SAYING I'M GOING TO PRESERVE EVERYTHING AND DON'T

10:10AM  23   CONTACT OUR EMPLOYEES ANYMORE.  WE'LL GET BACK TO EXHIBIT 7,

10:10AM  24   AND I CAN SHOW YOU A COUPLE OF LINES WHERE THAT EMPLOYEE

10:10AM  25   ACTUALLY SAID I DON'T HAVE ANYTHING THAT MATTERS FROM APPLE, I

10:10AM 1    DON'T HAVE ANY DESIGN DOCUMENTS, I DON'T HAVE ANYTHING.  THAT'S

10:10AM 2    WHAT IS ACTUALLY IN EXHIBIT 7.

10:10AM 3          BUT THEN WE'RE HIRED ON MAY 5TH IN THE EVENING.

10:10AM 4          ON MAY 6TH I SEND A LETTER TO BRYAN WILSON.  AND IN MY

10:10AM 5    LETTER -- THESE ARE ALL EXHIBITS TO THE WILSON DECLARATION.

10:10AM 6    IT'S IN THE RECORD AT 27-10.  THE LETTER THAT I SENT ON MAY 6TH

10:11AM 7    SAYS, QUOTE, "PLEASE PROVIDE ANY AND ALL NON-TRADE SECRET

10:11AM 8    PORTIONS OF THE FORENSIC ANALYSIS REFERENCED IN APPLE'S

10:11AM 9    COMPLAINT FOR MR. WEN AND MR. KAITHAMANA'S COMPUTING DEVICES,

10:11AM 10   AS WELL AS ANY SIMILAR FORENSIC INFORMATION APPLE MAY HAVE

10:11AM 11   COLLECTED AND ARE COMPILED FOR THE OTHER RIVOS EMPLOYEES TO

10:11AM 12   WHOM APPLE HAS SENT LETTERS TO THE LAWSUIT."

10:11AM 13         "PLEASE GIVE US INFORMATION SO THAT WE CAN SEARCH FOR THE

10:11AM 14   42 EMPLOYEES THAT YOU WANT US TO SEARCH FOR."

10:11AM 15         THEN I SAID, "IF APPLE WOULD PREFER TO ENTER INTO A

10:11AM 16   PROTECTIVE ORDER TO PROVIDE THIS INFORMATION, WE WILL PREPARE

10:11AM 17   AND PROPOSE A PROTECTIVE ORDER, OR WE WILL CONSIDER ANY

10:11AM 18   PROPOSAL THAT YOU MAY MAKE IN THAT REGARD.

10:11AM 19         "AFTER WE RECEIVE THIS INFORMATION, WE WILL DILIGENTLY

10:11AM 20   INVESTIGATE WHETHER ANY APPLE TRADE SECRETS EXIST OR MAY HAVE

10:11AM 21   EXISTED ON RIVOS'S COMPUTER SYSTEM.

10:11AM 22         "WE NEED ACCESS TO THIS FORENSIC INFORMATION IDENTIFIED IN

10:11AM 23   APPLE'S COMPLAINT AND LETTERS TO ENABLE US TO FORENSICALLY

10:11AM 24   SEARCH WITHIN RIVOS FOR THE INFORMATION APPLE HAS ALLEGED WAS

10:11AM 25   MISAPPROPRIATED."

10:12AM  1      OUR RESPONSE WAS, "YOU ALREADY KNOW ENOUGH TO START

10:12AM  2   SEARCHING."  THAT'S WHAT WE GOT ON MAY 9TH FROM MR. WILSON.

10:12AM  3      "RIVOS SHOULD ALREADY BE CONFIRMING WHETHER IT HAD

10:12AM  4   SUFFICIENT ONBOARDING PROCESSES IN PLACE TO PREVENT FORMER

10:12AM  5   APPLE EMPLOYEES FROM BRINGING ANY CONFIDENTIAL INFORMATION."

10:12AM  6      OKAY.  THAT'S MAY 9TH.

10:12AM  7      MAY 11TH.  "WE CONFIRMED THAT RIVOS AND MR. WEN ARE

10:12AM  8   COMPLYING WITH THEIR DOCUMENT PRESERVATION" --

10:12AM  9          THE COURT:  I'M GOING TO ASK YOU TO READ SLOWER FOR

10:12AM  10   THE COURT REPORTER'S BENEFIT.

10:12AM  11          MR. SWEDLOW:  I'M SORRY.  A LITTLE TOO MUCH ENERGY

10:12AM  12   TODAY.

10:12AM  13      "WE CONFIRMED THAT RIVOS AND MR. WEN ARE COMPLYING WITH

10:12AM  14   THEIR DOCUMENT PRESERVATION OBLIGATIONS.  WE LIKEWISE CONFIRM

10:12AM  15   THAT MR. WEN HAS NOT USED OR DISCLOSED ANY APPLE PROPRIETARY OR

10:12AM  16   TRADE SECRET INFORMATION IN CONNECTION WITH HIS EMPLOYMENT AT

10:12AM  17   RIVOS.  WE HAVE BEGUN INTERVIEWING THE 43 FORMER APPLE

10:12AM  18   EMPLOYEES CURRENTLY EMPLOYED BY RIVOS TO WHOM APPLE SENT

10:12AM  19   LETTERS.

10:12AM  20      "WE WILL PROVIDE AN UPDATE REGARDING OUR INVESTIGATION ON

10:12AM  21   MAY 20TH.  WE HAVE ALSO CONFIRMED THAT RIVOS HAS SUFFICIENT

10:13AM  22   ONBOARDING PROCESSES," WHICH WAS WHAT WAS REQUESTED IN THE

10:13AM  23   LETTER, "IN PLACE TO PREVENT THE USE OF OTHER COMPANY'S

10:13AM  24   CONFIDENTIAL OR PROPRIETARY INFORMATION FOR ANY PURPOSE IN

10:13AM  25   RIVOS'S BUSINESS."  IN FACT, EVERY EMPLOYEE OF RIVOS -- AND

10:13AM 1    THEN THIS IS AN EXHIBIT -- SIGNS A DECLARATION, AND THEN WE PUT

10:13AM 2    IN THE PARAGRAPH OF THE DECLARATION THAT THAT EMPLOYEE MUST

10:13AM 3    SIGN BEFORE HE OR SHE STARTS.  "I WILL NOT DISCLOSE TO THE

10:13AM 4    COMPANY OR USE FOR ITS BENEFIT ANY CONFIDENTIAL INFORMATION OR

10:13AM 5    MATERIAL IN VIOLATION OF THE RIGHTS OF MY FORMER EMPLOYERS OR

10:13AM 6    ANY THIRD PARTIES.  I AGREE TO NOT IMPROPERLY USE OR DISCLOSE

10:13AM 7    OR BRING ON TO THE PREMISES OF THE COMPANY ANY CONFIDENTIAL OR

10:13AM 8    PROPRIETARY INFORMATION OR MATERIAL OF ANY THIRD PARTY FOR

10:13AM 9    WHICH I HAVE PROVIDE OR CURRENTLY PROVIDE SERVICE."

10:13AM 10       AND NOW IT SAYS, "WE ARE WILLING TO CONSIDER A PROPOSAL

10:13AM 11   FOR A NEUTRAL INVESTIGATION BUT WE MUST COMPLETE OUR OWN

10:13AM 12   INVESTIGATION FIRST."

10:13AM 13       WE SAID WE WERE GOING TO UPDATE APPLE AFTER WE INTERVIEW

10:13AM 14   ALL 43 EMPLOYEES ON MAY 20TH.  AND I DON'T WANT TO BORE THE

10:14AM 15   COURT BY GOING THROUGH ALL OF THE CORRESPONDENCE, BUT RIVOS,

10:14AM 16   THROUGH ME, DILIGENTLY RESPONDED TO EVERY ONE OF APPLE'S

10:14AM 17   REQUESTS AND KEPT ASKING, STARTING ON MAY 6TH, JUST GIVE US A

10:14AM 18   PROTOCOL, GIVE US THE FORENSIC INFORMATION, AND WE'LL GO

10:14AM 19   SEARCHING FOR IT.

10:14AM 20       AND SO WHEN YOU'RE READING FROM THESE DECLARATIONS OF

10:14AM 21   THESE FORENSIC EXAMINERS THAT THEY SAY ISN'T GOOD ENOUGH, LET

10:14AM 22   ME TELL YOU AS AN OFFICER OF THE COURT STANDING HERE WITH

10:14AM 23   27 YEARS OF EXPERIENCE WHAT IS ACTUALLY HAPPENING RIGHT NOW,

10:14AM 24   MR. WEN CAN'T GET INTO HIS ICLOUD BECAUSE WE CUT OFF HIS

10:14AM 25   ACCESS.  THEN HE CAN'T LOOK AT HIS OWN STUFF ANYMORE IN CASE

10:14AM 1    THERE ARE ANY APPLE TRADE SECRETS IN THERE.  HE CAN'T USE ANY

10:14AM 2    OF THE DRIVES THAT WE ARE TURNING OVER TO THE NEUTRAL THIRD

10:14AM 3    PARTY INVESTIGATOR.  SO THERE'S NO RISK THERE.

10:14AM 4        EVERY ACCESS TO WHATEVER APPLE IDENTIFIED HAS BEEN CUT

10:14AM 5    OFF.  FOR EVERY EMPLOYEE WHERE APPLE IDENTIFIED A DRIVE, THAT'S

10:14AM 6    ALREADY BEEN IMAGED.  WE ALREADY DID ALL OF THAT TO PRESERVE

10:14AM 7    EVERYTHING.

10:14AM 8            THE COURT:  AND THEY HAVE THAT?

10:14AM 9            MR. SWEDLOW:  THEY DON'T HAVE THOSE IMAGES, AND

10:15AM 10   HERE'S THE REASON WHY.

10:15AM 11       THE FEDERAL LAWSUIT WAS FILED FOR TRADE SECRET

10:15AM 12   MISAPPROPRIATION AGAINST RIVOS WITHOUT ANY ALLEGATION THAT

10:15AM 13   RIVOS DID ANYTHING.

10:15AM 14       WHAT APPLE WOULD LIKE TO DO NOW AND HAS TRIED TO FLIP ONTO

10:15AM 15   RIVOS AND ITS EMPLOYEES, IS CAN YOU JUST TELL US EVERYTHING

10:15AM 16   THAT YOU MIGHT HAVE BROUGHT WITH YOU?  WE'RE NOT GOING TO TELL

10:15AM 17   YOU WHAT WE KNOW.  JUST LOOK FOR EVERYTHING THAT MIGHT EXIST.

10:15AM 18       AND THEN, RIVOS, YOU LOOK TO SEE IF ANY OF THAT MIGHT

10:15AM 19   EXIST ON YOUR SYSTEM, AND THEN TELL US WHAT OUR CLAIM SHOULD

10:15AM 20   BE.

10:15AM 21       WE'RE NOT ASKING THIS COURT TO STAY DISCOVERY WHILE WE

10:15AM 22   FILE A MOTION TO DISMISS, WHICH WE WILL FILE; WE'RE NOT ASKING

10:15AM 23   THIS COURT TO REQUIRE AN ADEQUATE TRADE SECRET IDENTIFICATION,

10:15AM 24   WHICH THE COURT MAY OR MAY NOT CHOOSE TO APPLY TO THIS CASE.

10:15AM 25       WHAT WE'RE SAYING IS THAT APPLE CAN'T -- SHOULDN'T GET TO

10:15AM  1    FILE A FEDERAL LAWSUIT AND THEN SAY WHY WON'T YOU LET US

10:15AM  2    CONTACT YOUR EMPLOYEES DIRECTLY, AND IF WE CAN'T, WHY DON'T YOU

10:15AM  3    SEARCH THEIR SYSTEMS, BUT WE'RE NOT GOING TO TELL YOU WHAT TO

10:15AM  4    SEARCH FOR EVEN THOUGH YOU'VE BEEN ASKING FOR A MONTH AND A

10:16AM  5    HALF BECAUSE WE MIGHT BE AT RISK.

10:16AM  6         BUT THERE IS NO RISK BECAUSE FOR THE EMPLOYEES WHERE THEY

10:16AM  7    HAVE ACTUALLY FILED A LAWSUIT OR SPECIFICALLY IDENTIFIED

10:16AM  8    SOMETHING, WE'VE ALREADY ELIMINATED THAT POSSIBILITY.

10:16AM  9         WHAT APPLE CLAIMS IS THAT FOR LAURENT PINOT, THAT HE'S THE

10:16AM  10   ONLY -- THAT WE HAVE IDENTIFIED THAT -- NOT ENOUGH INFORMATION

10:16AM  11   ABOUT HIM.

10:16AM  12        WHAT WE IDENTIFIED IN OUR EXPERT DECLARATION ABOUT

10:16AM  13   LAURENT PINOT, IS THAT THE TIME MACHINES THAT APPLE SAYS

10:16AM  14   ALLEGEDLY BACKED UP EVERYTHING, THAT'S A WI-FI ROUTER, IT'S AN

10:16AM  15   APPLE PRODUCT THAT IS IN HIS DAUGHTER'S BEDROOM, THAT NO ONE

10:16AM  16   HAS ACCESSED SINCE HE LEFT APPLE.

10:16AM  17        HIS WIFE IS AN ENGINEER AT -- IN SILICON AT APPLE STILL.

10:16AM  18   SO THIS IS A TIME MACHINE IN THEIR HOME.

10:16AM  19        IF APPLE WANTS -- THAT'S THE ONLY OTHER EMPLOYEE WHO WAS

10:16AM  20   IDENTIFIED IN THEIR BRIEFING.  THE REASON OUR EXPERT LOOKED

10:16AM  21   INTO THAT DEVICE AND EMPLOYEES IS BECAUSE IT'S THE ONLY OTHER

10:17AM  22   ONE IDENTIFIED IN THE BRIEFING.

10:17AM  23        THEY REFERRED TO A COUPLE OF STATEMENTS IN THE

10:17AM  24   DECLARATION, BUT WE HAVE ALREADY BEEN CONDUCTING THE 43

10:17AM  25   INTERVIEWS BEFORE WE GOT THE DECLARATIONS.  THE DECLARATION HAD

10:17AM 1    SOME OF THE INFORMATION THAT WE WANTED.

10:17AM 2        HERE'S ALL WE'RE ASKING FOR THE COURT TO DO:  LET

10:17AM 3    DISCOVERY PROCEED ON THE NORMAL SCHEDULE SO THAT WE'RE NOT

10:17AM 4    THREE MONTHS BEHIND BECAUSE I DIDN'T SEND DISCOVERY REQUESTS

10:17AM 5    ASKING FOR THE FORENSIC INFORMATION THAT APPLE VAGUELY

10:17AM 6    REFERENCES IN THE COMPLAINT SO WE CAN SEARCH FOR IT AND DEFEND

10:17AM 7    OURSELVES.

10:17AM 8        BUT THE WAY THAT APPLE HAS FLIPPED IT IS THEY FILED A

10:17AM 9    COMPLAINT AGAINST RIVOS WITH -- ALL THE EVIDENCE IS EMPLOYEES

10:17AM 10   WHO LEFT APPLE MIGHT HAVE INFORMATION THAT IS ACTUALLY OURS.

10:17AM 11   THEY ALSO MIGHT NOT, BUT THEY MIGHT.

10:17AM 12       FOR 37 OF THEM, WE SENT THEM A LETTER, AND WE DIDN'T

10:17AM 13   IDENTIFY A SINGLE THING.  BUT YOU SHOULD GO LOOK FOR WHAT THOSE

10:17AM 14   37 EMPLOYEES MIGHT HAVE, AND THEN YOU SHOULD ON YOUR SYSTEMS,

10:17AM 15   AND THEN IF YOU GIVE US THAT INFORMATION, MAYBE WE ACTUALLY

10:18AM 16   HAVE A CLAIM OF TRADE SECRET MISAPPROPRIATION AGAINST RIVOS

10:18AM 17   WHICH DOESN'T EXIST TODAY BECAUSE RIVOS DIDN'T DO ANYTHING

10:18AM 18   WRONG.  AND THAT'S A MISUSE OF THE FEDERAL COURT SYSTEM AND OF

10:18AM 19   A TRADE SECRET MISAPPROPRIATION CLAIM.

10:18AM 20       IF THEY WANT TO CONTACT THE FORMER EMPLOYERS BEFORE FILING

10:18AM 21   A FEDERAL LAWSUIT, GO AHEAD.  WE RECEIVE THOSE CALLS AND HANDLE

10:18AM 22   THEM FOR CLIENTS ALL OF THE TIME WHERE SOMEBODY SAYS, HEY, YOU

10:18AM 23   LEFT OUR EMPLOY AND WE HAVE RECORDS THAT YOU BROUGHT SOMETHING

10:18AM 24   YOU SHOULDN'T HAVE.  GIVE IT BACK.  OKAY.  WE'LL GIVE IT BACK.

10:18AM 25       BUT INSTEAD, THEY FILED A LAWSUIT AGAINST RIVOS WITHOUT

10:18AM  1      ANY CLAIMS AGAINST RIVOS.  IF YOU LOOK AT THE COMPLAINT, THE

10:18AM  2      CLAIM AGAINST RIVOS IS A BUNCH OF EMPLOYEES LEFT APPLE AND WENT

10:18AM  3      TO WORK AT RIVOS.  WE DON'T LIKE THAT.  AND WE HAVE FORENSIC

10:18AM  4      INFORMATION THAT IS EIGHT MONTHS TO A YEAR OLD.

10:18AM  5          WE DON'T KNOW WHAT IT SHOWS, BUT IT COULD SHOW THAT THEY

10:18AM  6      BROUGHT STUFF WITH THEM.  WE DON'T KNOW IF THEY USE IT AT

10:18AM  7      RIVOS, BUT THEY COULD HAVE USED IT AT RIVOS.  SO WE'RE GOING TO

10:18AM  8      FILE A TRADE SECRET CLAIM.

10:18AM  9          THEY SHOULD LOSE THAT MOTION TO DISMISS, AND THEY KNOW

10:18AM  10     THAT.  SO WHAT THEY WOULD LIKE IS JUST INVESTIGATE EVERYTHING

10:18AM  11     FOR US, BECAUSE WE WANT TO DO DISCOVERY BEFORE YOU GET TO DO

10:19AM  12     DISCOVERY.

10:19AM  13         AND ALL WE'RE SAYING IS, JUST LET DISCOVERY PROCEED EITHER

10:19AM  14     THROUGH A MAGISTRATE OR WITH YOUR HONOR, WHERE WE GET TO ALSO

10:19AM  15     PROPOUND DISCOVERY ON THE DAY THAT IT'S SUPPOSED TO START, AND

10:19AM  16     WE GET TO ASK, GIVE US THE FORENSIC INFORMATION, NOT THE

10:19AM  17     FILTERED VERSION THAT YOU FILED WITH YOUR TRO, AND DON'T TELL

10:19AM  18     US WHAT WE'RE SUPPOSED TO LOOK FOR IN THE CONTEXT OF A TRO.

10:19AM  19         BUT WE DID LOOK FOR WHAT THEY TOLD US TO LOOK FOR IN THE

10:19AM  20     CONTEXT OF A TRO.  SO THE ROFFMAN, EXHIBIT B, LISTS 700 FILES

10:19AM  21     THAT ALLEGEDLY MR. WEN MISAPPROPRIATED.

10:19AM  22         WE LOOKED FOR ALL OF THOSE FILES IN MR. WEN'S ICLOUD

10:19AM  23     GOOGLE DRIVE, EXTERNAL HARD DRIVES, AND RIVOS'S COMPUTER.

10:19AM  24         WHAT WE FOUND IS A FEW FILES.  MOST OF THE FILES -- BY

10:19AM  25     NUMBER OF FILES, MOST OF THOSE FILES THAT APPLE HAS LISTED IN

10:19AM 1    ITS OWN TRADE SECRET IDENTIFICATION ARE MR. WEN'S PERSONAL

10:19AM 2    BANKING RECORDS OF A RENTAL PROPERTY THAT HE HAS IN TEXAS THAT

10:20AM 3    HE HAD IN HIS ICLOUD OR ON HIS COMPUTER.

10:20AM 4            THE COURT:  PARDON ME.  WASN'T THERE SOME

10:20AM 5    DECLARATION OR STATEMENT THAT SAID HE MAY, FROM YOU, YOUR TEAM,

10:20AM 6    THAT SAID HE MAY HAVE ACCESS, MAY HAVE POSSESSION, MAY HAVE?

10:20AM 7            MR. SWEDLOW:  SO I THINK THOSE ARE BIG DIFFERENCES.

10:20AM 8        SO HE MAY HAVE -- WHAT WE DID WAS WE SAID WE'RE GOING TO

10:20AM 9    GIVE YOU -- WHAT WE ACTUALLY SAID TO THE COURT IS WE WILL GIVE

10:20AM 10   YOU THE DRIVE, AND THEN APPLE SWITCHED TO WANTING AN IMAGE, AND

10:20AM 11   THEN THEY SWITCHED BACK TO THE DRIVE, AND WE'LL GIVE EITHER

10:20AM 12   ONE, THE DRIVE OR THE IMAGE.

10:20AM 13       ON THAT DRIVE MAY BE DOCUMENTS IDENTIFIED BY APPLE ON THAT

10:20AM 14   SHEET.  THERE MAY BE DOCUMENTS.  HE MAY HAVE INADVERTENTLY PUT

10:20AM 15   SOMETHING ON THAT DRIVE.  HE DID NOT ACCESS THEM OR USE THEM OR

10:20AM 16   COPY THEM.  EVERY WORD YOU WOULD SAY.  HE DIDN'T DO ANYTHING

10:20AM 17   WITH THOSE DOCUMENTS, AND WHATEVER EVIDENCE EXISTS NOW, APPLE

10:20AM 18   IS GOING TO GET IT, APPLE'S LAWYERS ARE GOING TO GET IT.

10:20AM 19       WHAT WAS BEING REFERENCED IS AN ANTICIPATION BECAUSE APPLE

10:21AM 20   FILED A FEDERAL LAWSUIT RATHER THAN JUST SENDING A LETTER TO

10:21AM 21   MR. WEN SAYING THAT YOU MIGHT HAVE COPIED STUFF YOU SHOULDN'T

10:21AM 22   HAVE COPIED, MR. WEN, AS AN INDIVIDUAL, AND APPLE BEING THE

10:21AM 23   LARGEST COMPANY IN THE WORLD, HE WAS NERVOUS.  SO HE SAID I

10:21AM 24   DON'T KNOW IF I DID ANYTHING WRONG.  I'M GOING TO CONNECT THIS

10:21AM 25   DRIVE THAT THEY IDENTIFY AND SEE IF I HAVE ANY APPLE STUFF.

10:21AM 1      THAT'S WHAT THEIR FORENSIC EXPERT TOLD THEM IS THAT YOU DID IT

10:21AM 2      WRONG.  YOU SHOULDN'T FILE A FEDERAL LAWSUIT AND SCARE PEOPLE

10:21AM 3      INTO LOOKING TO SEE IF YOU'RE RIGHT.  THAT'S ALL THAT HAPPENED

10:21AM 4      IS THAT HE CONNECTED HIS DRIVE TO A COMPUTER TO SEE IF HE HAD

10:21AM 5      ANY FILES.

10:21AM 6           AND THEN WHEN A LAWYER GOT INVOLVED, ME, I SAID DON'T

10:21AM 7      ACCESS ANYTHING, OR LOOK AT ANYTHING.  WE'LL HIRE AN EXPERT TO

10:21AM 8      DO IT.

10:21AM 9           BUT WHEN YOU FILE A FEDERAL LAWSUIT AND THEN MAIL A LETTER

10:21AM 10     TO AN INDIVIDUAL SAYING YOU'VE BEEN SUED IN FEDERAL COURT FOR

10:21AM 11     TRADE SECRET MISAPPROPRIATION, AN INDIVIDUAL IS GOING TO

10:21AM 12     CONNECT TO SEE IF THEY DID ANYTHING WRONG BECAUSE HE DIDN'T

10:21AM 13     THINK HE DID.

10:21AM 14          IN EXHIBIT 7 IN THE PLAINTIFF'S BINDER, THAT'S EXACTLY

10:22AM 15     WHAT HAPPENED WHEN THEY CONTACTED THIS INDIVIDUAL DIRECTLY.

10:22AM 16     THE INDIVIDUAL SAID I DIDN'T DO ANYTHING WRONG.  I DON'T HAVE

10:22AM 17     ANY SECRET APPLE INFORMATION.  MY JOB REQUIRED ME TO CREATE

10:22AM 18     GIANT FILES FOR TRANSFORMATION, THAT'S WHY IT COULD BE 95 GIGS.

10:22AM 19     THAT'S ALL THE EMPLOYEE WAS SAYING WAS, APPLE, YOU'RE WRONG.

10:22AM 20          IF APPLE WANTED TO CONTACT THESE EMPLOYEES AS THEY DID

10:22AM 21     WITH THE LETTER, AND NOT BE IN A FEDERAL LAWSUIT AGAINST THEIR

10:22AM 22     CURRENT EMPLOYER, THEN THOSE INDIVIDUALS WOULD INTERACT WITH

10:22AM 23     APPLE AS THEY SEE FIT.

10:22AM 24          WHAT APPLE DID, THOUGH, WAS WE DON'T REALLY HAVE A CLAIM

10:22AM 25     AGAINST RIVOS, LET'S FILE THE CLAIM, WE WON'T IDENTIFY THE

10:22AM 1    INFORMATION FOR THEIR COUNSEL BECAUSE WE COULD JUST GET IT IN

10:22AM 2    EXPEDITED DISCOVERY IF WE FILE A TRO.

10:22AM 3        THE DAY THAT WE SAID WE WERE GOING TO UPDATE APPLE,

10:22AM 4    MAY 20TH, WE TOLD THEM A WEEK AND A HALF IN ADVANCE, WAS THE

10:22AM 5    DAY THAT APPLE SENT US A LETTER SAYING WE CAN'T WAIT ANY

10:22AM 6    LONGER, TODAY WE'RE FILING A TRO AND A MOTION FOR EXPEDITED

10:22AM 7    DISCOVERY.

10:22AM 8        SO THERE HASN'T BEEN A POINT -- IT'S INTERESTING APPLE

10:22AM 9    SAID THIS -- WHERE APPLE HAS ACTUALLY BEEN RIGHT.  AND WE HAVE

10:23AM 10   NOT DENIED APPLE ANYTHING.

10:23AM 11       WHAT WE'RE ASKING THIS COURT TO DENY APPLE, IS TO GET

10:23AM 12   AHEAD OF RIVOS AND JUST START ITS DISCOVERY FIRST WHEN IT

10:23AM 13   DOESN'T HAVE A CLAIM AGAINST RIVOS.

10:23AM 14       BUT WHAT WE'RE NOT ASKING THE COURT TO DO IS TO DECIDE

10:23AM 15   TODAY, IS DISCOVERY STAYED FOR A MOTION THAT WE HAVEN'T EVEN

10:23AM 16   FILED YET OR WAS THE TRADE SECRET DISCLOSURE ADEQUATE EVEN

10:23AM 17   THOUGH IT IDENTIFIED MR. WEN'S PERSONAL BANKING RECORDS AS

10:23AM 18   APPLE'S TRADE SECRETS.

10:23AM 19       WE DON'T THINK IT WAS ADEQUATE.  BUT YOU DON'T NEED TO

10:23AM 20   DECIDE THAT TODAY BASED ON ARGUMENTS IN THE COURSE OF

10:23AM 21   45 MINUTES.

10:23AM 22       WE'RE JUST SAYING DENY THE MOTION FOR EXPEDITED DISCOVERY

10:23AM 23   BECAUSE EVERYTHING APPLE HAS IDENTIFIED HAS BEEN IMAGED.  APPLE

10:23AM 24   IS GETTING EVERYTHING THAT IT WANTS FROM MR. WEN.  IT'S GETTING

10:23AM 25   EVERYTHING THAT IT WANTS FROM MR. KAITHAMANA.  AND RIVOS HAS

10:23AM  1    SEARCHED FOR EVERYTHING THAT APPLE HAS IDENTIFIED ON ITS OWN

10:23AM  2    SYSTEMS AND FOUND NOTHING.

10:23AM  3        SO THERE ISN'T AN IMMEDIATE RISK THAT REQUIRES THE RULES

10:23AM  4    TO CHANGE.  WE'RE NOT SAYING PROTECT US FROM THE RULES.  WE'RE

10:23AM  5    SIMPLY SAYING THE RULES CAN APPLY BECAUSE THERE'S NOTHING --

10:24AM  6    THERE WASN'T, FROM THE FIRST DAY WE GOT INVOLVED, ANY RISK THAT

10:24AM  7    APPLE'S CROWN JEWELS ARE IN JEOPARDY AND APPLE KNOWS WHAT IT

10:24AM  8    KNOWS TODAY A YEAR AGO WITH RESPECT TO THESE EMPLOYEES.

10:24AM  9        THE COURT:  SO YOU HEARD ME TALK ABOUT STAGING,

10:24AM  10   DISCOVERY, AND PERHAPS GETTING COPIES OF ALL OF THESE DEVICES

10:24AM  11   AND AT LEAST GETTING THAT WORK DONE UP-FRONT.

10:24AM  12       WHAT IS YOUR POSITION ON THAT?

10:24AM  13       MR. SWEDLOW:  SO WHEN DISCOVERY SHOULD START, THEN

10:24AM  14   WE WOULD GET -- WE DON'T WANT TO BE THREE MONTHS BEHIND BECAUSE

10:24AM  15   IF I KNEW THAT IT WAS GOING TO BE ON AN EXPEDITED BASIS WHERE

10:24AM  16   WE HAVE TO FLY DOWN FOR A HEARING THAT I DON'T KNOW THAT EVEN

10:24AM  17   NEEDED TO TAKE PLACE, INSTEAD OF SENDING A LETTER SAYING CAN

10:24AM  18   YOU PLEASE GIVE US THE FORENSIC INFORMATION THAT YOU IDENTIFY

10:24AM  19   IN YOUR COMPLAINT, WHICH IS WHAT I SAID ON MAY 6TH, I WOULD

10:24AM  20   HAVE SERVED A BUNCH OF DISCOVERY AND THEN I WOULD HAVE ISSUED A

10:24AM  21   DEPOSITION NOTICE FOR THE APPLE INTERNAL FORENSIC INVESTIGATOR,

10:24AM  22   I WOULD HAVE ASKED FOR ALL OF THE INFORMATION THAT WOULD

10:24AM  23   SUPPORT APPLE'S CLAIM THAT RIVOS SHOULD BE LOOKING FOR

10:25AM  24   SOMETHING.

10:25AM  25       AND SO IF WE'RE GOING TO STAGE DISCOVERY, WE GET TO START.

10:25AM 1    WE SHOULD BOTH START AT THE SAME SPOT LIKE REGULAR LITIGANTS,

10:25AM 2    AND WE GET TO SAY, CAN YOU GIVE US THE DISCOVERY, AND THEY GET

10:25AM 3    TO SAY, WELL, WE WANT THIS OTHER DISCOVERY.

10:25AM 4        BUT WHAT HAPPENED WAS I SENT A LETTER, AND THEN THEY SAID

10:25AM 5    YOU SHOULD ALREADY BE LOOKING, WE DON'T HAVE TO TELL YOU

10:25AM 6    ANYTHING.  THAT'S DISJOINTED WHERE WE KEEP STRUGGLING TO MEET

10:25AM 7    APPLE'S EVER-MOVING THRESHOLD FOR FEELING COMFORTABLE, BUT WE

10:25AM 8    DON'T GET OUR CHANCE TO ASK FOR DISCOVERY TO PROVE OUR CLIENT

10:25AM 9    DIDN'T DO ANYTHING.

10:25AM 10   SO WE COULD STAGE IT AND MAYBE A MAGISTRATE COULD HANDLE

10:25AM 11   THIS.  I JUST DON'T THINK IT'S FAIR, OR WE DON'T THINK IT'S

10:25AM 12   FAIR, EXCUSE ME, FOR APPLE TO GET TO JUST BECAUSE THEY HAVE

10:25AM 13   UNLIMITED RESOURCES FILE A TRO, A MOTION FOR EXPEDITED

10:25AM 14   DISCOVERY, SERVE DISCOVERY, WE SCRAMBLE TO RESPOND TO GIVE THEM

10:25AM 15   ENOUGH COMFORT TO SLOW DOWN, AND THEY SAY THAT'S NOT ENOUGH, WE

10:25AM 16   NEED DEPOSITIONS, AND WE NEED MORE BECAUSE THEN WE, WE SHOULD

10:25AM 17   BE ON THE SAME FOOTING.  WE SHOULD -- LET'S GO BACK TO MAY 6TH

10:26AM 18   AND GIVE US ALL OF THE FORENSIC INFORMATION REFERENCED IN THE

10:26AM 19   COMPLAINT.  WE WANT THE IDENTITY AND THE DEPOSITION OF THE

10:26AM 20   APPLE PERSON WHO LOOKED AT THE HARD DRIVES, OR WHATEVER IT IS

10:26AM 21   THAT THEY LOOKED AT, WE WANT A COPY OF ALL OF THE FORMER

10:26AM 22   EMPLOYEE'S ICLOUD THAT APPLE HAS ON THEIR SYSTEM SO WE COULD

10:26AM 23   COMPARE IT TO WHAT WE CURRENTLY COULD GET FROM OUR EMPLOYEES.

10:26AM 24       WE DON'T GET ACCESS TO APPLE EMPLOYEES, NOW THAT WE'RE IN

10:26AM 25   A LAWSUIT WITH APPLE, ANY MORE THAN APPLE DOES.  SO WHEN APPLE

10:26AM   1    SAYS WE CAN JUST SUBPOENA THE EMPLOYEES, AND WE'LL JUST HANDLE

10:26AM   2    IT THAT WAY, CAN WE SUBPOENA -- I KNOW WHO WORKS IN THE

10:26AM   3    FORENSICS DEPARTMENT AT APPLE.  CAN I SEND 100 SUBPOENAS TO

10:26AM   4    THEIR HOME AND SAY I NEED ALL OF THE INFORMATION THAT YOU MIGHT

10:26AM   5    HAVE ON MR. KAITHAMANA AND MR. WEN?

10:26AM   6              THE COURT:  WELL, THE ANSWER IS, YES, YOU CAN DO

10:26AM   7    THAT.

10:26AM   8              MR. SWEDLOW:  BUT THEN THERE ARE ETHICAL RULES THAT

10:26AM   9    SAY I CAN'T DO THAT.  I COULD DO THAT AND MAYBE BE IN CONTEMPT.

10:26AM  10              THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

10:26AM  11              MR. SWEDLOW:  SO I CAN'T DO THAT.

10:26AM  12          AND THAT IS WHAT I WAS SAYING, IS APPLE KEPT ASKING ME WHY

10:26AM  13    CAN'T WE JUST CONTACT THEM DIRECTLY?  AND I KEPT EXPLAINING

10:26AM  14    BECAUSE IT'S UNETHICAL.

10:27AM  15              THE COURT:  SO LET ME -- I WANT YOU TO WRAP UP, BUT

10:27AM  16    I ALSO WANT YOUR THOUGHTS AS TO -- YOU HEARD ME TALK ABOUT

10:27AM  17    DISCOVERY, STAGING PERHAPS WITH THE MATTERS THAT ARE AT THIS

10:27AM  18    POINT IN ISSUE WITH THE TWO EMPLOYEES.

10:27AM  19          THERE'S THE OTHER 40, 37, WHATEVER THEY ARE, MIGHT NEED TO

10:27AM  20    BE DISCUSSED FURTHER.

10:27AM  21          WHAT IS YOUR -- OTHER THAN SAYING STOP, NO, IS THERE ANY

10:27AM  22    MIDDLE GROUND?  AND I DON'T WANT YOU TO MEET AND CONFER ON THE

10:27AM  23    RECORD, BUT IS THAT SOMETHING THAT YOU THINK WOULD BENEFIT?

10:27AM  24              MR. SWEDLOW:  I DO THINK.

10:27AM  25          SO HERE'S OUR FRUSTRATION.  SO WE ONLY REPRESENT MR. WEN,

10:27AM  1    NOT MR. KAITHAMANA.

10:27AM  2         FOR -- IT TOOK SIX WEEKS TO NEGOTIATE THE PROTOCOL WITH

10:27AM  3    MR. KAITHAMANA'S COUNSEL.

10:27AM  4         WE RECEIVED THAT PROTOCOL, AND THEN ONE DAY LATER SAID

10:27AM  5    WE'LL ACCEPT THE PROTOCOL AS WRITTEN NEGOTIATED BY SOMEONE

10:27AM  6    ELSE'S LAWYER, WHICH WE WILL.

10:27AM  7         AND THEN WE ARE GOING TO PRODUCE ALL OF THE DRIVES, IMAGES

10:27AM  8    OF ALL OF THE DRIVES, IMAGES OF THE COMPUTERS USED TO ACCESS

10:28AM  9    THOSE DRIVES, BASICALLY EVERYTHING APPLE WANTS.

10:28AM 10         WE'RE NOT GETTING ANYTHING FROM APPLE.  SO WHAT WE WOULD

10:28AM 11    LIKE IS TO ENGAGE IN THIS FORENSIC DISCOVERY RELATING TO

10:28AM 12    MR. WEN IN THE FIRST STAGE WHERE WE'VE ALREADY AGREED TO

10:28AM 13    EVERYTHING, BUT WE WOULD GET TO PROPOUND OUR OWN DISCOVERY ALSO

10:28AM 14    RELATED TO MR. WEN.

10:28AM 15         THERE REALLY ISN'T A CLAIM RELATED TO RIVOS OTHER THAN

10:28AM 16    RIVOS HIRED EMPLOYEES AND WE THINK WHEN THEY LEFT, THEY BROUGHT

10:28AM 17    FILES WITH.  THAT'S NOT GOOD ENOUGH TO BE A TRADE SECRET

10:28AM 18    MISAPPROPRIATION CLAIM UNDER THE DTSA.

10:28AM 19         WE HAVEN'T HAD A CHANCE TO ARGUE THAT TO YOU YET, JUST

10:28AM 20    BECAUSE WE HAVEN'T.  BUT THAT'S THE COMPLAINT.  YOU CAN SEARCH

10:28AM 21    THE COMPLAINT.

10:28AM 22         THE ONLY ALLEGATION IS RIVOS HAS THESE EMPLOYEES, AND WE

10:28AM 23    KNOW WHAT THEY BROUGHT WITH THEM WHEN THEY LEFT.  WE'RE NOT

10:28AM 24    GOING TO TELL YOU, BUT WE KNOW WHAT THEY BROUGHT WITH THEM.

10:28AM 25         SO IF WE STAGE IT FOR WE GET TO PROPOUND DISCOVERY

10:28AM   1    RELATING TO MR. WEN AND HIS FORENSIC INFORMATION, I THINK THAT

10:28AM   2    SHOULD GO FIRST, BECAUSE WHEN THAT REVEALS THAT MR. WEN

10:29AM   3    INADVERTENTLY BROUGHT STUFF WITH HIM.  HE'S THEIR BEST CASE

10:29AM   4    BECAUSE HE'S ONE OF THE TWO DEFENDANTS.  HE INADVERTENTLY MAY

10:29AM   5    HAVE BROUGHT STUFF WITH HIM THAT INCLUDES HIS OWN BANKING

10:29AM   6    RECORDS.

10:29AM   7         SO IT ISN'T AS IF APPLE HAS ACTUALLY IDENTIFIED THE TRADE

10:29AM   8    SECRETS.  THEY IDENTIFIED FOUR DRAFTS OF EMPLOYEE REVIEWS THAT

10:29AM   9    MR. WEN HAD IN HIS ICLOUD OR GOOGLE DRIVE AND HIS OWN BANKING

10:29AM  10    RECORD.  THAT'S WHAT WE WERE ABLE TO FIND.  ALL OF THE OTHER

10:29AM  11    STUFF LISTED THERE, IT EITHER EXISTS OR IT DOESN'T ON THE

10:29AM  12    DRIVE, BUT EVERYBODY CAN LOOK AT ALL OF THE INFORMATION TO SEE

10:29AM  13    WHETHER HE EVER LOOKED AT IT AFTER HE LEFT APPLE.

10:29AM  14         AND WHEN THAT TURNS OUT TO BE NOTHING, THEN WE CAN COME

10:29AM  15    BACK TO THE COURT AND SAY THERE'S NO CLAIM AGAINST MR. WEN,

10:29AM  16    AND, THEREFORE, HOW COULD THERE BE A CLAIM AGAINST RIVOS?  WE

10:29AM  17    CAN STAGE IT LIKE THAT.  WE JUST HAVEN'T HAD A CHANCE TO

10:29AM  18    PROPOUND ANY DISCOVERY OTHER THAN THE MAY 6TH LETTER WHERE WE

10:29AM  19    ASKED FOR IT.  SO THAT WOULD BE MY SUGGESTION FOR STAGING.

10:29AM  20              THE COURT:  OKAY.  GREAT.  THANK YOU VERY MUCH.

10:30AM  21              MR. SWEDLOW:  LET ME GATHER ALL OF THESE PAPERS.

10:30AM  22         SHOULD I LEAVE THEM UP?

10:30AM  23              THE COURT:  YES, YOU CAN JUST LEAVE IT THERE.

10:30AM  24    THAT'S FINE.  THANK YOU.

10:30AM  25              MR. KUWAYTI:  THERE WAS A LOT THERE.  I'LL TRY TO

10:30AM  1    ADDRESS SOME OF IT BRIEFLY AND THEN GET TO WHAT I THINK IS THE

10:30AM  2    MAIN POINT, WHICH IS CAN WE AGREE ON SOME DISCOVERY HERE AND A

10:30AM  3    PROTOCOL WITH THE COURT.

10:30AM  4        THE FIRST THING IS THAT THIS IS NOT ALL PEOPLE THAT LEFT

10:30AM  5    EIGHT MONTHS TO A YEAR AGO.  RIVOS WAS HIRING EMPLOYEES UP

10:30AM  6    THROUGH APRIL AND MAY.  WE PUT THAT IN OUR DECLARATION.  THERE

10:30AM  7    ARE -- THIS IS NOT PEOPLE THAT ARE ALL FROM A YEAR AGO.

10:30AM  8        MR. WEN'S DRIVE, IT'S TRUE, WAS IMAGED EIGHT MONTHS AGO,

10:30AM  9    BUT THERE ARE MULTIPLE EMPLOYEES THAT HAVE BEEN HIRED RIGHT UP

10:30AM  10   UNTIL WE FILED THE LAWSUIT AND EVEN AFTER THAT.

10:30AM  11       AS I HAD SAID, SOME OF THESE LETTERS, 25 OF THESE LETTERS,

10:30AM  12   YOU CAN DO THE MATH, OF 44 LETTERS WERE STANDARD LETTERS THAT

10:30AM  13   WENT OUT; 19 LETTERS WERE IDENTIFYING TO THEM THAT YOU HAVE 10

10:31AM  14   PEOPLE IN YOUR EMPLOY THAT TOOK OUR CONFIDENTIAL INFORMATION;

10:31AM  15   YOU HAVE 9 PEOPLE THAT WIPED THEIR DRIVE BEFORE THEY LEFT.  SO

10:31AM  16   THAT'S 19 PEOPLE.  THAT'S A LOT OF PEOPLE THAT WENT TO THAT

10:31AM  17   COMPANY AND DID WHAT THEY WERE NOT SUPPOSED TO DO DURING THE

10:31AM  18   LAST DAYS OF THEIR EMPLOYMENT.  ALL OF THEM DURING THE LAST

10:31AM  19   DAYS OF THEIR EMPLOYMENT.

10:31AM  20       THE CORRESPONDENCE AND THE REPRESENTATION OF THIS

10:31AM  21   FORTUNATELY IS IN THE RECORD, AND IF ANYBODY HAS ANY QUESTION

10:31AM  22   ABOUT HOW COOPERATIVE THE DEFENDANT'S COUNSEL HAS BEEN AND WHAT

10:31AM  23   THEY WERE OFFERING, THOSE ARE IN THE EXHIBITS.  EXHIBITS H TO N

10:31AM  24   OF MR. WILSON'S DECLARATION SHOWS THE BACK AND FORTH THAT WENT

10:31AM  25   BETWEEN THE PARTIES.

| | | |
|---|---|---|
| 10:31AM | 1 | AND WE OFFERED TO DO A FORENSIC INSPECTION, A JOINT |
| 10:31AM | 2 | INSPECTION.  I HEARD COUNSEL SAY WE KEPT ASKING THEM, WE JUST |
| 10:31AM | 3 | WANT A PROTOCOL.  YOU CAN LOOK AT THOSE LETTERS.  THEY NEVER |
| 10:32AM | 4 | ASKED FOR A PROTOCOL.  THEY SAY WE'RE NOT WILLING TO DO A |
| 10:32AM | 5 | FORENSIC INSPECTION WITH YOU, NOT EVEN GOING TO CONSIDER IT |
| 10:32AM | 6 | UNTIL WE DO OUR OWN INVESTIGATION. |
| 10:32AM | 7 | WE OFFERED TO GIVE THEM SEARCH TERMS TWICE, WE OFFERED TO |
| 10:32AM | 8 | IN THE ALTERNATIVE DO EXPEDITED DISCOVERY TWICE.  THEY NEVER |
| 10:32AM | 9 | ACCEPTED ANY OF THAT. |
| 10:32AM | 10 | AND SO THERE'S A WRITTEN RECORD OF THAT. |
| 10:32AM | 11 | I WANT TO SHOW YOU THE UPDATE THAT HE WAS REFERRING TO AS |
| 10:32AM | 12 | THOUGH THAT WAS SOMETHING THAT WAS HELPFUL TO THE PARTIES. |
| 10:32AM | 13 | IT'S TAB 9 OF THE BINDER. |
| 10:32AM | 14 | HERE'S THE UPDATE THAT WE GOT ON -- AFTER ASKING FOR |
| 10:32AM | 15 | PROTOCOL AND ALL OF THAT, HERE'S OUR UPDATE.  TWO SENTENCES. |
| 10:32AM | 16 | THREE SENTENCES.  OUR INTERVIEWS ARE ONGOING.  WE'VE |
| 10:32AM | 17 | INTERVIEWED A MAJORITY OF THE EMPLOYEES.  TO DATE WE HAVEN'T |
| 10:32AM | 18 | IDENTIFIED ANY EVIDENCE THAT RIVOS IS USING PROPRIETARY OR |
| 10:32AM | 19 | TRADE SECRET INFORMATION. |
| 10:32AM | 20 | IT DOESN'T SAY, NOTABLY, WE HAVE DETERMINED THAT NONE OF |
| 10:33AM | 21 | THESE PEOPLE TOOK ANY OF YOUR INFORMATION.  IT DOESN'T SAY WHO |
| 10:33AM | 22 | THEY'VE INTERVIEWED.  IT DOESN'T GIVE US ANYTHING, AND THAT HAS |
| 10:33AM | 23 | BEEN THE PROBLEM HERE. |
| 10:33AM | 24 | I'M GOING TO TALK ABOUT EXPERIENCE LITIGATING TRADE SECRET |
| 10:33AM | 25 | CASES.  WHEN I'M ON THE OTHER SIDE OF THE CASE -- I HAVE A CASE |

| | | |
|---|---|---|
| 10:33AM | 1 | RIGHT NOW IN SAN MATEO COUNTY.  A COMPLAINT WAS FILED AGAINST |
| 10:33AM | 2 | MY CLIENT; NO LETTER IN ADVANCE SAYING YOU DOWNLOADED THESE |
| 10:33AM | 3 | DOCUMENTS.  WITHIN THREE DAYS I WROTE TO THE OTHER SIDE AND I |
| 10:33AM | 4 | SAID WE'LL LOOK FOR ALL OF THESE DOCUMENTS AND ANYTHING ELSE |
| 10:33AM | 5 | THAT YOU WANT THAT YOU THINK IS CONFIDENTIAL AND ANYTHING THAT |
| 10:33AM | 6 | WE CAN IDENTIFY THAT IS CONFIDENTIAL THAT CAME FROM YOUR |
| 10:33AM | 7 | CLIENT.  AND YOU KNOW WHAT, I HAD THE ABILITY TO DO THAT.  I |
| 10:33AM | 8 | DIDN'T NEED TO HAVE FORENSIC EVIDENCE.  I NEVER HAVE BEEN A |
| 10:33AM | 9 | PART OF A CASE WHERE SOMEBODY HAS INSISTED ON GETTING, THE |
| 10:33AM | 10 | DEFENDANT HAS INSISTED ON GETTING THE FORENSIC EVIDENCE FROM |
| 10:33AM | 11 | THE PLAINTIFF SO THAT THEY COULD DO A SEARCH. |
| 10:33AM | 12 | WE SAID WE WOULD PROVIDE ADDITIONAL FORENSIC INFORMATION |
| 10:34AM | 13 | AS PART OF A MUTUAL INSPECTION IF WE WERE GOING TO DO THAT, AND |
| 10:34AM | 14 | THAT WAS REQUIRED.  WE OFFERED THAT.  THAT'S IN OUR LETTERS. |
| 10:34AM | 15 | THAT'S IN THE CORRESPONDENCE. |
| 10:34AM | 16 | WHAT WE GOT BACK EVERY TIME WAS NOTHING SAYING WE'RE GOING |
| 10:34AM | 17 | TO FIND THIS INFORMATION AND RETURN IT TO YOU.  IT WAS ALWAYS |
| 10:34AM | 18 | GIVE US, GIVE US YOUR FORENSIC INFORMATION.  YOU KNOW, YOU NEED |
| 10:34AM | 19 | TO GIVE US INFORMATION SO THAT WE CAN DO A SEARCH.  NEVER A |
| 10:34AM | 20 | MUTUAL THING. |
| 10:34AM | 21 | A LOT OF THINGS THAT WERE SAID HERE YOU'RE NOT GOING TO |
| 10:34AM | 22 | FIND THEM ANYWHERE IN THE LETTERS, YOU'RE NOT GOING TO FIND |
| 10:34AM | 23 | THEM ANYWHERE IN THE PAPERS. |
| 10:34AM | 24 | COUNSEL SAID TODAY FOR THE VERY FIRST TIME, WE'VE IMAGED |
| 10:34AM | 25 | THESE OTHER DEVICES.  YOU SAW WHAT WE GOT IN THE KUMAR |

10:34AM 1    DECLARATION.  I SHOWED IT TO YOU AT TAB 10.  WE ARE LOOKING AT

10:34AM 2    SOME DOCUMENTS AND INFORMATION OF OTHER EMPLOYEES.

10:34AM 3         SO THEY'VE BASICALLY SAID NOW, THESE ARE IN THEIR

10:34AM 4    POSSESSION, CUSTODY, AND CONTROL.  THEY ACTUALLY HAVE THESE

10:34AM 5    DEVICES, NOTWITHSTANDING WHAT THEY SAID IN THEIR RESPONSES.

10:35AM 6    THEY NEVER TOLD US THAT THEY'VE IMAGED IT.

10:35AM 7         THE PART ABOUT THIS BEING IN THE BEDROOM OF THE DAUGHTER

10:35AM 8    OF ONE OF THE EMPLOYEES, THERE'S NO -- THAT'S NEVER BEEN SHARED

10:35AM 9    WITH US OR PUT IN THE PAPERS OR ANYTHING.

10:35AM 10        SO THERE'S INFORMATION COMING OUT NOW THAT HASN'T COME OUT

10:35AM 11   BEFORE, AND THAT'S GREAT.  IF THEY'VE ACTUALLY IMAGED THOSE

10:35AM 12   DEVICES, THAT'S GREAT.

10:35AM 13        BUT THE TYPE OF INFORMATION THAT WE GET -- THE EXCHANGE

10:35AM 14   THAT YOU'VE JUST HAD WITH COUNSEL HERE SHOWS IT.  HE'S STILL

10:35AM 15   SAYING THAT MR. WEN MAY HAVE DOCUMENTS IN EXHIBIT B.  THEY'VE

10:35AM 16   ADMITTED IT.  THEIR FORENSIC, THEIR FORENSIC EXPERT ADMITTED IT

10:35AM 17   IN PARAGRAPH 12 OF HIS DECLARATION.

10:35AM 18        BUT HE DOESN'T DESCRIBE THEM.  HE KNOWS WHAT DEVICES ARE

10:35AM 19   THERE.

10:35AM 20        IF THERE'S A SUGGESTION HERE THAT THE MAJORITY OF THESE

10:35AM 21   DOCUMENTS ARE BANKING RECORDS AND WE HAVEN'T IDENTIFIED

10:35AM 22   ANYTHING SECRET.  WE IDENTIFIED SPECIFIC DOCUMENTS BY FILE NAME

10:35AM 23   IN THE DECLARATION OF MR. MURRAY THAT WERE ON THAT DRIVE, THAT

10:36AM 24   WERE ON THAT LIST IN APPENDIX B THAT WE SAID WERE ON THE DRIVE.

10:36AM 25        THEY NEVER REBUTTED THAT EVIDENCE, AND THEY WON'T ADMIT

10:36AM 1      OR ACKNOWLEDGE ANYTHING, AND THAT HAS BEEN THE PROBLEM HERE IN

10:36AM 2      TRYING TO WORK WITH THEM.

10:36AM 3          BUT WORKING WITH THEM UNDER A PROTOCOL WITH THE COURT,

10:36AM 4      ABSOLUTELY WE'RE READY TO DO THAT.

10:36AM 5          THE COURT:  THANK YOU.

10:36AM 6          MR. KUWAYTI:  AND THIS IS THE FIRST TIME -- I'M

10:36AM 7      SORRY, YOUR HONOR.  I DIDN'T MEAN TO INTERRUPT.

10:36AM 8          THE COURT:  NO.  GO AHEAD.  GO AHEAD.

10:36AM 9          MR. KUWAYTI:  OKAY.  THEY WANT TO HAVE SOME

10:36AM 10     DISCOVERY, THAT'S FINE.  WE'VE NEVER SAID THAT THEY CAN'T HAVE

10:36AM 11     ANY DISCOVERY AS PART OF THIS PROCESS.

10:36AM 12         BUT THAT PROTO -- THAT STAGE, YOUR HONOR, CAN'T BE LIMITED

10:36AM 13     TO MR. WEN.  THAT'S WHAT WE ALREADY HAVE AS PART OF THE TRO.

10:36AM 14     THERE ARE ALL OF THESE DOCUMENTS THAT OTHER EMPLOYEES TOOK.  WE

10:36AM 15     HAVE UNREBUTTED EVIDENCE.

10:36AM 16         COUNSEL IS NOT BEING FORTHCOMING EVEN AS TO THE DOCUMENTS

10:36AM 17     IN MR. WEN'S POSITION.

10:36AM 18         WE NEED A STAGING WHERE WE WOULD TALK ABOUT THE -- WHAT I

10:37AM 19     WOULD SUGGEST, THE TEN EMPLOYEES WHO TOOK INFORMATION WHERE WE

10:37AM 20     HAVE INFORMATION THAT WE PUT IN ON THIS MOTION THAT THEY NEVER

10:37AM 21     REBUTTED, LET'S START WITH THOSE TEN, YOU KNOW, THEN WE CAN GO

10:37AM 22     TO THE ONES THAT DELETED DEVICES AS NEEDED.

10:37AM 23         BUT WE CAN'T BE STUCK AT MR. WEN ALONE.

10:37AM 24         THE COURT:  OKAY.  THANK YOU.

10:37AM 25         SO LET ME ASK YOU, THIS IS TO BOTH OF YOU, HOW MUCH TIME

```
10:37AM   1    DO YOU NEED TO MEET AND CONFER?  I'M INCLINED TO GIVE YOU AN
10:37AM   2    OPPORTUNITY, ITS YOUR CASES, I'M INCLINED TO GIVE YOU AN
10:37AM   3    OPPORTUNITY TO MEET AND CONFER AND SEE IF YOU CAN PUT YOUR
10:37AM   4    GREAT MINDS TOGETHER TO COME UP WITH SOME TYPE OF A PROTOCOL.
10:37AM   5         I'VE HEARD A LOT OF, I DON'T WANT TO CALL IT VITRIOL, BUT
10:37AM   6    THIS IS LITIGATION THEY DID, THEY DID, THEY DID, THEY DIDN'T,
10:37AM   7    THAT TYPE OF THING, BUT CUTTING THROUGH ALL OF THAT, TRYING TO
10:37AM   8    GET A PATH TO SOME TYPE OF POSITIVE RESULT HERE.  AND I KNOW, I
10:38AM   9    THINK FROM THE DEFENSE SIDE, THEIR POSITIVE RESULT IS A MOTION
10:38AM  10    TO DISMISS PERHAPS, BUT WE'RE NOT THERE YET.
10:38AM  11         SO HOW MUCH TIME DO YOU NEED TO MEET AND CONFER, COME UP
10:38AM  12    WITH A PROTOCOL THAT YOU THINK WORKS, AND PRESENT TO THE COURT?
10:38AM  13    AND THEN THE COURT WILL LOOK AT IT.  AND IF YOU CAN'T AGREE,
10:38AM  14    WHICH WOULD BE A PITY, THEN THE COURT WILL JUST HAVE TO MAKE
10:38AM  15    ITS OWN DECISION.  OF COURSE, YOU KNOW, THAT'S HOW IT WORKS.
10:38AM  16              MR. SWEDLOW:  SO, YOUR HONOR, I HAVE TO FLY FROM
10:38AM  17    HERE TO SAN DIEGO, SO TOMORROW I HAVE A PRETRIAL CONFERENCE.
10:38AM  18              THE COURT:  RIGHT.  NO.  I UNDERSTAND THAT.
10:38AM  19         ARE YOU IN THE FEDERAL COURT DOWN THERE CARTER KEEP?
10:38AM  20              MR. SWEDLOW:  YES, JUDGE CURIEL.
10:38AM  21              THE COURT:  YES.  HE'S A WONDERFUL GUITAR PLAYER.
10:38AM  22    DID YOU KNOW THAT?
10:38AM  23              MR. SWEDLOW:  I DIDN'T KNOW THAT.
10:38AM  24              THE COURT:  YEAH, HE IS.  HE'S A TERRIFIC GUITAR
10:38AM  25    PLAYER.
```

10:38AM  1          MR. SWEDLOW:  I'M GOING TO ASK HIM ABOUT THAT.

10:38AM  2          THE COURT:  SURE.  ASK HIM ABOUT THE WONDERFUL BAND

10:38AM  3   HE PLAYED WITH HERE.  HE WAS STOLEN AWAY FROM THE SOUTHERN

10:38AM  4   DISTRICT TO THE NORTHERN DISTRICT AND PLAYED WITH THIS

10:38AM  5   NATIONALLY KNOWN BAND CALLED "THE RECUSALS."  YOU CAN ASK HIM

10:39AM  6   ABOUT THAT.

10:39AM  7          (LAUGHTER.)

10:39AM  8          MR. SWEDLOW:  SO WE WOULD NEED A FEW DAYS NEXT WEEK.

10:39AM  9   I DON'T THINK -- I THINK WE'RE PRETTY FAR APART CURRENTLY.

10:39AM  10     THE ENCOURAGING THING IS THAT MR. KAITHAMANA'S COUNSEL

10:39AM  11  NEGOTIATED A PROTOCOL THAT WOULD APPLY TO SOME OF THIS OVER THE

10:39AM  12  COURSE OF FIVE AND A HALF WEEKS, WHATEVER, HE HAD VACATIONS AND

10:39AM  13  IT TOOK SOME TIME.  IN ONE DAY WE JUST AGREED TO THAT.

10:39AM  14     SO I THINK WE CAN AGREE TO A PROTOCOL, BUT WE WON'T AGREE

10:39AM  15  TO THE ONE-SIDED NATURE OF DISCOVERY, AND THAT'S WHAT WE MAY

10:39AM  16  JUST HAVE TO PRESENT TO YOU.

10:39AM  17         THE COURT:  SURE.  AND I HEARD SOMETHING DIFFERENT

10:39AM  18  FROM COUNSEL THIS MORNING.

10:39AM  19         MR. KUWAYTI:  WE'RE NOT TRYING TO DO THIS ONE SIDED,

10:39AM  20  YOUR HONOR.  WE JUST WANT TO MOVE QUICKLY.

10:39AM  21         THE COURT:  RIGHT.

10:39AM  22         MR. KUWAYTI:  AND WHAT WE WOULD PROPOSE IS LET'S GO

10:39AM  23  OUT RIGHT NOW AND SIT DOWN FOR A COUPLE OF HOURS AND TRY TO

10:39AM  24  NEGOTIATE.

10:39AM  25         THE COURT:  I THOUGHT YOU WERE GOING TO SAY

| | | |
|---|---|---|
| 10:39AM | 1 | SOMETHING ELSE.  SO I'M GLAD -- |
| 10:39AM | 2 | MR. KUWAYTI:  OH, NO.  IT HASN'T COME TO THAT, |
| 10:39AM | 3 | YOUR HONOR, YET. |
| 10:39AM | 4 | (LAUGHTER.) |
| 10:39AM | 5 | MR. KUWAYTI:  THAT WOULD BE A LOW POINT AND IN |
| 10:39AM | 6 | PROBABLY BOTH OF OUR CAREERS. |
| 10:40AM | 7 | (LAUGHTER.) |
| 10:40AM | 8 | THE COURT:  YES, IT SURE WOULD. |
| 10:40AM | 9 | MR. SWEDLOW:  I DON'T EVEN UNDERSTAND. |
| 10:40AM | 10 | THE COURT:  YOU DON'T EVEN KNOW WHAT WE ARE TALKING |
| 10:40AM | 11 | ABOUT.  YOU'RE TOO YOUNG TO KNOW WHAT WE'RE TALKING ABOUT. |
| 10:40AM | 12 | MR. KUWAYTI:  STEP OUTSIDE. |
| 10:40AM | 13 | THE COURT:  YOU DIDN'T GO TO PUBLIC SCHOOLS, |
| 10:40AM | 14 | COUNSEL. |
| 10:40AM | 15 | MR. SWEDLOW:  I DID. |
| 10:40AM | 16 | (LAUGHTER.) |
| 10:40AM | 17 | MR. SWEDLOW:  I WENT TO PUBLIC SCHOOLS FROM |
| 10:40AM | 18 | KINDERGARTEN THROUGH LAW SCHOOL.  I NEVER WENT TO A PRIVATE |
| 10:40AM | 19 | SCHOOL IN MY LIFE.  I GOT BEAT UP A LOT, BUT I WAS NEVER ASKED |
| 10:40AM | 20 | TO GO OUTSIDE. |
| 10:40AM | 21 | THE COURT:  THANK YOU.  THANKS FOR THE LEVITY HERE. |
| 10:40AM | 22 | I APPRECIATE IT.  IT'S INTENTIONAL ON MY PART TO KIND OF GET |
| 10:40AM | 23 | THE PARTIES WHERE I THINK YOU BOTH WANT TO GO. |
| 10:40AM | 24 | AND I'M ASKING NOW, WHATEVER TIME YOU THINK YOU NEED TO |
| 10:40AM | 25 | MEET AND CONFER TO SEE IF YOU CAN REACH AGREEMENT ON A DUAL -- |

10:40AM  1    IT SOUNDS LIKE THERE'S GREAT INTEREST IN HAVING A PATH THAT

10:40AM  2    ALLOWS FOR DUAL, RECIPROCAL, WHATEVER YOU WANT TO CALL IT,

10:40AM  3    DISCOVERY.  I'M HAPPY TO HAVE YOU DO THAT AND PRESENT TO ME

10:40AM  4    WHAT YOU THINK, WHAT YOU CAN AGREE ON, WHAT YOU CAN'T AGREE ON,

10:40AM  5    AND THEN THE COURT WILL MAKE A DECISION IF YOU CAN'T.

10:40AM  6        WHAT IS YOUR TIME PERIOD FOR THAT?  I KNOW YOU'RE GOING TO

10:41AM  7    BE IN SAN DIEGO.  SO I WAS GOING TO SAY WHAT DO YOU NEED,

10:41AM  8    14 DAYS?

10:41AM  9            MR. SWEDLOW:  I THINK WE CAN DO IT IN 14 DAYS.

10:41AM 10            THE COURT:  TEN DAYS.

10:41AM 11            MR. KUWAYTI:  WE REALLY WOULD LIKE TO DO IT MUCH

10:41AM 12    SOONER THAN THAT.  I DON'T WANT -- I DON'T THINK WE NEED THAT

10:41AM 13    KIND OF TIME.

10:41AM 14            THE COURT:  TEN DAYS?

10:41AM 15            MR. KUWAYTI:  CAN WE DO IT BY NEXT WEDNESDAY?  THAT

10:41AM 16    WOULD GIVE US THREE DAYS NEXT WEEK.  THERE'S NO REASON WHY WE

10:41AM 17    CAN'T WORK THIS OUT.  WE'RE GOING TO HAVE DISAGREEMENTS, AND

10:41AM 18    WE'RE GOING TO HAVE THOSE DISAGREEMENTS RIGHT AWAY.  WE JUST

10:41AM 19    DON'T WANT IT TO BECOME SOMETHING THAT LINGERS.

10:41AM 20            MR. SWEDLOW:  I DON'T THINK TEN DAYS WOULD BE

10:41AM 21    LINGERING.  I DON'T WANT TO FAIL TO MEET THE COURT'S

10:41AM 22    EXPECTATIONS, EITHER.

10:41AM 23            THE COURT:  WELL, MONDAY IS A FEDERAL HOLIDAY.  THE

10:41AM 24    COURT WILL BE CLOSED.  SO YOU HAVE ALL DAY MONDAY TO WORK.

10:41AM 25            MR. KUWAYTI:  YEAH.  IF WE COULD SUBMIT BY END OF

```
10:41AM   1    THE DAY WEDNESDAY, WE CAN TELL YOU WHERE --

10:41AM   2              THE COURT:  DOES THAT WORK?

10:41AM   3              MR. SWEDLOW:  I DON'T THINK I CAN MEET THAT.

10:41AM   4              THE COURT:  LET'S BE REALISTIC.  I WANT TO BE

10:41AM   5    REALISTIC HERE.

10:41AM   6         CAN YOU DO IT BY THE END OF NEXT WEEK?

10:41AM   7              MR. SWEDLOW:  YES, WE'LL DO IT BY THE END OF NEXT

10:41AM   8    WEEK.

10:41AM   9              MR. KUWAYTI:  WE'LL ACCEPT THAT, YOUR HONOR.  THANK

10:41AM  10    YOU.

10:41AM  11              THE COURT:  CLOSE OF BUSINESS BY THE END OF NEXT

10:42AM  12    WEEK.

10:42AM  13              MR. SWEDLOW:  AND IF WE DON'T REACH AGREEMENT.

10:42AM  14              THE COURT:  JUST LET ME KNOW WHERE YOU'RE AT.

10:42AM  15              MR. SWEDLOW:  CAN YOU LIMIT US ON DISAGREEMENT PAGES

10:42AM  16    SO THAT WE DON'T RUN RAMPANT, IF WE CAN'T AGREE, WITH WHAT

10:42AM  17    WE'RE SUBMITTING.

10:42AM  18         WE FUEL VESSELS.

10:42AM  19              THE COURT:  RIGHT.  RIGHT.  I RECOGNIZE, EVEN THOUGH

10:42AM  20    I WENT TO PUBLIC SCHOOLS, TOO, ONE THING I REMEMBER IS THAT

10:42AM  21    NATURE ABHORS A VACUUM, AND WE DON'T NEED THAT.  WE DON'T.

10:42AM  22              MR. KUWAYTI:  WE DON'T.  FIVE PAGES, YOUR HONOR?

10:42AM  23              THE COURT:  YES, THAT'S FINE.

10:42AM  24              MR. SWEDLOW:  OKAY.

10:42AM  25              THE COURT:  OKAY.  WONDERFUL.
```

10:42AM 1          MR. SWEDLOW:  ALL RIGHTY.

10:42AM 2          THE COURT:  I'LL WAIT FOR -- HERE'S TO PLAIN

10:42AM 3  SPEAKING AND CLEAR UNDERSTANDING.  I WISH YOU -- I THINK YOU

10:42AM 4  CAN GET THERE, I REALLY DO.  THIS WAS A VERY ROBUST

10:42AM 5  CONVERSATION THIS MORNING, AND IT ALLOWED BOTH OF YOU TO AIR

10:42AM 6  OUT AND GIVE ME INFORMATION ABOUT YOUR POSITIONS.

10:42AM 7       I HOPE IT WAS HELPFUL TO BOTH SIDES.  IT WAS HELPFUL TO

10:42AM 8  ME.

10:42AM 9          MR. KUWAYTI:  VERY HELPFUL, YOUR HONOR.  THANK YOU.

10:42AM 10          THE COURT:  THANKS VERY MUCH.

10:42AM 11          MR. SWEDLOW:  THANK YOU.

10:42AM 12          THE COURT:  WE'LL SEE YOU SOON.

10:42AM 13          MR. KUWAYTI:  THANK YOU FOR YOUR TIME.

10:43AM 14          THE COURT:  YOU BET.

10:43AM 15       OKAY.  WE'LL TAKE A BRIEF RECESS TO SET UP FOR OUR NEXT

10:43AM 16  CASES.  THANK YOU.

10:43AM 17          (COURT CONCLUDED AT 10:43 A.M.)

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18         DATED:  JUNE 23, 2022
19

20

21

22

23

24

25