QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Stephen Swedlow (*Admitted Pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:    (312) 705-7400
Facsimile: (312) 705-7401

  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendants Rivos Inc., Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 5:22-CV-2637-EJD |
| Plaintiff, | **DEFENDANT RIVOS INC.'S MOTION TO DISMISS** |
| vs. | Date:    March 2, 2023 |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN and BHASI KAITHAMANA, | Time:    9:00 a.m.<br>Courtroom: 4 |
| Defendants. | Judge:    The Hon. Edward J. Davila |
| | Trial Date:  None Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 2, 2023 at 9:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled Court, the Honorable Edward J. Davila presiding, located at the San Jose Courthouse, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Defendant Rivos Inc. ("Rivos") will and hereby does move this Court for an order dismissing Plaintiff Apple Inc.'s ("Apple") Second Amended Complaint (Dkt. No. 93) pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is made on the grounds that the Second Amended Complaint fails to state a claim for which relief may be granted.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the other pleadings and filings on record in this action, as well as other written or oral argument that Rivos may present to the Court.

DATED:  September 27, 2022             Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____*/s/ Stephen Swedlow*_____
    STEPHEN SWEDLOW
    DAVID EISEMAN
    VICTORIA B. PARKER

    Attorneys for Defendants Rivos Inc., Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION............................................................................................................1

II.     RELEVANT ALLEGATIONS IN APPLE'S SAC ....................................................2

III.    LEGAL STANDARD .................................................................................................5

IV.     ARGUMENT...............................................................................................................5

      A.    Apple's SAC Does Not State Specific Facts Sufficient To Sustain A Claim
            Of Misappropriation Against Rivos .........................................................................6

           1.    Apple Fails To Demonstrate Ownership Of Any Trade Secret...................6

           2.    Apple Fails To Plausibly Allege Direct Misappropriation By Rivos...........9

           3.    Apple Fails To Plausibly Allege Indirect Misappropriation .....................11

           4.    Apple Fails To Allege Any Damages.........................................................13

      B.    Generalized Allegations that Unidentified Apple Employees Have Moved
            to Rivos Are Insufficient to Support a Misappropriation Claim............................13

      C.    Apple Cannot Conduct Discovery Before Alleging A Viable Claim....................15

V.      CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133  (N.D. Cal. 2019) ............................................................. 8

*Arthur J. Gallagher & Co. v. Tarantino*,
  498 F. Supp. 3d 1155 (N.D. Cal. 2020) .......................................................... 9, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 5, 15

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) ............................................................................ 7

*California Police Activities League v. California Police Youth Charities, Inc.*,
  No. C 08-1991 PJH, 2009 WL 537091 (N.D.Cal. Mar. 3, 2009) ........................... 11

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys.*, Inc.,
  No. 19-4162 SBA, 2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) ....................... 15

*CleanFish, LLC v. Sims*,
  No. 19-CV-03663-HSG, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ................... 6

*Comp. Econ., Inc. v. Gartner Grp., Inc.*,
  50 F.Supp.2d 980 (S.D. Cal. May 25, 1999) ...................................................... 9

*Cooper Interconnect, Inc. v. Glenair, Inc*,
  No. CV1408018RGKJCX, 2015 WL 13722129 (C.D. Cal. Feb. 3, 2015) ................ 13

*Cotiviti, Inc. v. Deagle*,
  501 F. Supp. 3d 243 (S.D.N.Y. 2020) ............................................................. 16

*Delacruz v. State Bar of California*,
  No. 16-CV-06858-BLF, 2017 WL 3129207 (N.D. Cal. July 24, 2017) .................. 15

*Edwards v. Arthur Andersen LLP*,
  44 Cal.4th 937 (2008) .................................................................................... 14

*Farhang v. Indian Inst. of Tech., Kharagpur*,
  No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ................... 10

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ......................................................................... 5

*Globespan, Inc. v. O'Neill*,
  151 F. Supp. 2d 1229 (C.D. Cal. 2001) ........................................................... 10

*Golden v. California Emergency Physicians Med. Grp.*,
  896 F.3d 1018 (9th Cir. 2018) ........................................................................ 14

*Jobscience, Inc. v. CVPartners, Inc.*,
  No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) .................... 9

*Kaplan v. California Pub. Employees' Ret. Sys.*,
  No. C 98-1246 CRB. 1998 WL 575095 (N.D. Cal. Sept. 3, 1998),
  *aff'd*, 221 F.3d 1348 (9th Cir. 2000) .............................................................. 16

*KapStone Container Corp. v. Boyd*,
  No. 1:17-CV-01902-TWT, 2017 WL 4948074 (N.D. Ga. June 27, 2017) ............... 15

*Lamont v. Conner*,
No. 5:18-CV-04327-EJD, 2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) ................................. 8

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .................................................................................. 8

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
No. SACV19220JVSJDEX, 2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) ........................... 10

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) ........................................................................... 6, 10, 11

*Palantir Techs., Inc. v. Abramowitz*,
No. 19-CV-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ................................... 6

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................................... 12

*Quintara Biosciences Inc. v. Ruifeng Biztech Inc.*,
No. C 20-04808 WHA, 2021 WL 965349 (N.D. Cal. Mar. 13, 2021) ..................................... 7

*R.R. Donnelley & Sons Co. v. Marino*,
505 F. Supp. 3d 194 (W.D.N.Y. 2020) ...................................................................... 12, 13, 15

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
Nos. C 08-4548 MHP 2010 WL 145098 (N.D. Cal. Jan. 8, 2010) ......................................... 5

*S. California Inst. of Law v. TCS Educ. Sys.*,
No. CV 10-8026 PSG (AJWx), 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ....................... 12

*Soc. Apps, LLC v. Zynga, Inc.*,
No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) .............................. 7

*Space Data Corp. v. X*,
No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ............................ 6, 7, 9

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
No. 19-CV-0583-BAS-DEB, 2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ........................... 12

*Teradata Corp. v. SAP SE*,
No. 18-CV-03670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ................................. 9

*Tri Cnty. Tel. Association, Inc. v. Campbell*,
No. 17-CV-089-F, 2018 WL 10399165 (D. Wyo. Apr. 17, 2018) ......................................... 16

*UCAR Tech. (USA) Inc. v. Yan Li*,
No. 5:17-cv-01704-EJD, 2017 WL 6405620 (N.D. Cal. Dec. 15, 2017), *on
reconsideration*, No. 5:17-CV-01704-EJD,
2018 WL 2555429 (N.D. Cal. June 4, 2018) .................................................................... 14, 15

*Valenzuela v. City of Calexico*,
No. 14-CV-481-BAS-PCL, 2015 WL 2184304 (S.D. Cal. May 11, 2015) ............................ 16

*Vendavo, Inc. v. Price f(x) AG*,
No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) .................................... 8

*Via Techs., Inc. v. Asus Computer Int'l*,
No. 14-CV-03586-BLF, 2016 WL 1056139 (N.D. Cal. Mar. 17, 2016) .................................. 7

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002) ............................................................................................. 15

## Statutes

18 U.S.C. § 1836 ..................................................................................................................... 1

18 U.S.C. § 1836(b)..................................................................................................... 6

18 U.S.C. § 1836(b)(3)(A)(i)-(ii)................................................................................ 14

18 U.S.C. § 1839 ........................................................................................................ 9

S. REP. NO. 114- 220 (2016)...................................................................................... 14

# I.     **INTRODUCTION**

Every person who lives and works in California has the right to pursue the employment of his or her choice, and even to compete in the marketplace against his or her former employer. Apple apparently wishes this was not the law and seeks to enlist this Court in preventing its ex-employees from working for a potential competitor,[1] irrespective of whether any misconduct actually occurred.

To achieve its anticompetitive goals, Apple brings a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.) ("DTSA"), against Rivos. But Apple fails to allege any of the requisite elements of the claim. Like the first two iterations, Apple's Second Amended Complaint ("SAC") has not identified its alleged trade secrets with sufficient particularity and provides no allegations of any misappropriation by Rivos, much less any harm caused by such misappropriation. Indeed, Apple's SAC is bereft of ***any*** allegations that Rivos improperly acquired, used, or disclosed any of Apple's trade secrets. Instead, Apple alleges several of its former employees retained unspecified Apple trade secrets after their employment with Apple ended and that those employees later went to work for Rivos. Apple, however, fails to allege that any former employee used or disclosed Apple's trade secrets, much less that Rivos did so. Instead, Apple's claim of misappropriation by Rivos is supported by pure legal conclusions made on information and belief.

In an effort to buttress its feeble allegations against Rivos, Apple has also sued seven former Apple employees who joined Rivos (the "Individual Defendants") in an attempt to create a specter of misconduct by Rivos. But Apple's allegations do not demonstrate any misconduct; instead, they reflect their former employees' decisions to exercise their right to employment mobility. Stretching mightily, Apple also asks the Court to assume that the Individual Defendants "***were likely to*** make use of [Apple's trade secrets] in the course of their employment at Rivos." SAC ¶ 159 (emphasis added). But this legal theory, known as "inevitable disclosure," has been so thoroughly rejected by the courts that proceeding under the theory exposes Apple to sanctions.

---

[1]   In this lawsuit, Apple alleges that Rivos is a competitor. But currently, the only market where Apple and Rivos compete is the market for employees.

Finally, in a concession that its current allegations are lacking, Apple's SAC expresses Apple's desire to conduct a fishing expedition through Rivos' confidential and commercially sensitive information to attempt to find actual facts to support its misappropriation claim against Rivos. This is improper. Apple's allegation that discovery "will likely" uncover evidence of misappropriation by Rivos is pure speculation, and is insufficient to support its misappropriation claim.

Apple has thus failed to plead a plausible claim for misappropriation of trade secrets against Rivos in the SAC or any of its first two complaints and, therefore, Apple's SAC should be dismissed with prejudice as to Rivos.

## II.   RELEVANT ALLEGATIONS IN APPLE'S SAC[2]

Rivos is a startup that is developing a System on a Chip ("SOC") using open-source architecture. SAC ¶ 26. Although other SOCs exist in the marketplace that rely on proprietary system architecture, Rivos aims to be one of the first companies to successfully build and commercialize an SOC for data centers using the open-source RISC-V architecture. Since its founding in May 2021, Rivos has attracted engineers from around Silicon Valley and the world to work on its innovative technology. Starting in June 2021, Apple engineers resigned from their jobs at Apple to take positions at Rivos. Id. ¶ 41.

Individual Defendants Wen, Kaithamana, and Pinot resigned from Apple in August 2021. Id. ¶¶ 46, 57, 87. The other Individual Defendants (Hardage, Rajamani, Wang, and Ye) followed in 2021 and 2022. Id. ¶¶ 69, 83, 99, 108. Apple's SAC describes a series of actions these individuals allegedly took which Apple claims suggest trade secret misappropriation. More specifically, Apple alleges that Mr. Wen transferred 390 gigabytes of data files from his Apple-laptop to a personal device. Id. ¶ 61. Although Apple acknowledges that his laptop included approximately 200 gigabytes of photos and movies that were "presume[d] personal in nature" and among these transfers, Apple suggests that Apple confidential documents were also swept up in these transfers and thus retained by Mr. Wen. Id. Mr. Hardage allegedly removed Apple confidential files from

---

[2] Rivos accepts the allegations in Apple's SAC as true, solely for purposes of this motion.

his Apple-issued computer, and transferred "[p]art of [that] data" to external hard drives.  *Id.* ¶ 74. Mr. Rajamani's and Mr. Wang's personal iCloud accounts "retained" or "still contained" Apple files at the times of their terminations, although Apple does not allege they deliberately placed data there before leaving.  *Id.* ¶¶ 103, 112.  Mr. Pinot, who enabled regular automatic backups to a "Time Machine" (*i.e.*, an AirPort Time Capsule, which is an Apple product that combines a Wi-Fi router with a drive for storing backups) stored in his home long before interviewing at Rivos, allegedly "allowed" those backups to continue until shortly before leaving Apple.  *Id.* ¶ 95.  And Mr. Ye allegedly saved work files in his personal iCloud account at some unspecified point, and downloaded Apple files to his Apple-issued computer shortly before leaving Apple, although Apple does not allege that the downloaded files are the ones in his personal iCloud account or that such downloads are atypical.  *Id.* ¶ 86.  Mr. Kaithamana—who, for reasons unrelated to this litigation, is no longer is employed by Rivos and is separately represented (*see* Dkt. 19)—allegedly transferred files to a USB stick.  SAC ¶¶ 52-53.  Notably, none of these allegations involve any employee making use or disclosure of any trade secret.  More importantly, none of these involve ***Rivos*** taking or using anything.

Apple alleges that Mr. Wen's iCloud automatically synced with his Rivos-issued computer, "which resulted in some Apple files being stored on [his] Rivos-issued computer." *Id.* ¶¶ 7, 133. But Apple does not allege that this was done deliberately by Mr. Wen, much less that Rivos knew this sync had occurred, or even that this information included Apple trade secrets.  *Id.*  Nor does Apple allege that these files were accessible to any other Rivos employee (which they are not), or that Rivos has made any use of them (which it has not).  *Id.*  Indeed, Apple also does not fully explain how or why iCloud—a system created by Apple and that Apple encourages its employees to use for work—automatically syncs with new devices.  Nor does Apple allege that this automatic syncing by Mr. Wen's iCloud account constitutes misappropriation ***by Rivos***.

Apple also alleges that employees took steps to remove personal information from their Apple-issued devices before returning those devices to Apple, which Apple characterizes as "attempt[ing] to hide" their activity.  *Id.* ¶¶ 54, 104.  Messrs. Wen, Rajamani, and Kaithamana allegedly deleted browsing history.  *Id.* ¶¶ 54, 63, 104.  Deleting such information from Apple

1  devices before leaving is apparently a violation of Apple policy.  *Id.* ¶ 115.  It is not a taking of

2  Apple trade secrets.

3        Apple adds vague allegations related to other unnamed individuals purportedly now working

4  at Rivos.  *See Id.* ¶¶ 114-122.  "Many" employees allegedly ***either*** copied files to personal devices

5  ***or*** wiped their devices  (Apple does not specify which).  *Id.* ¶ 115.  "Several" allegedly connected

6  external storage devices to their computers at a time when they could have accessed Apple

7  information, but Apple does not allege these connections actually resulted in taking any Apple

8  information.  *Id.* ¶ 116.  Others "stopped syncing their iCloud Drives" after leaving Apple, which

9  Apple claims may result in a local backup being retained, and at least one such backup allegedly

10  contains Apple trade secrets (although Apple does not allege this was done knowingly or

11  deliberately).  *Id.* ¶ 117.  "A number" of unnamed individuals installed encrypted apps to

12  communicate with Rivos, and one invited others to do so, rather than use Apple's iMessage

13  platform.  *Id.* ¶ 118.

14        Apple alleges that it "has reason to believe that Rivos instructed" some unidentified

15  employees to download encrypted messaging apps, but articulates no facts in support of this

16  purported belief, much less explains how such conduct constitutes trade secret misappropriation.

17  *Id.* ¶ 4.  Notably, although Apple alleges that Rivos "knew or should have known" that former Apple

18  employees retained Apple information and may use it at Rivos (*id.* ¶ 123), Apple does ***not*** allege

19  that Rivos has actually acquired or used any Apple information.  Nor does Apple allege Rivos

20  instructed any employee to download files from Apple, or that Rivos instructed employees to use

21  any Apple information during the course of their employment at Rivos.

22        Revealing its true anti-competitive intent, Apple also complains that it sent Rivos a letter

23  regarding Rivos "targeting" Apple engineers for hire, but Rivos "continue[s] to hire away Apple

24  engineers."  *Id.* ¶ 125.

25        Apple also makes allegations regarding Rivos' actions in connection with this litigation,

26  which cannot form the basis of any claims since they are both innocuous and protected by the

27  litigation privilege.  Apple takes issue with the fact that, since the lawsuit was filed, Rivos has

28  communicated with Apple through counsel, and has instructed Apple not to contact Rivos'

employees directly.  *Id.* ¶¶ 126-27.  Apple also alleges that Rivos has conducted an internal investigation, but has not fully informed Apple of all details relating to this investigation.  *Id.* ¶¶ 131, 135.  These allegations say nothing about the alleged misappropriation of trade secrets.

In the face of Apple's unsupported allegations that some misappropriation has occurred, Rivos has repeatedly requested that Apple articulate a basis for why Rivos is a proper defendant in this lawsuit.[3]  *See* Dkt. 27-10, Dkt. 27-14.  In response, Apple has only provided a meaningless, two word response as to why Rivos is properly named: "it is."  Dkt. 27-11.

## III.   <u>LEGAL STANDARD</u>

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Although factual allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation omitted).

## IV.   <u>ARGUMENT</u>

Apple's claim that Rivos has misappropriated trade secrets is unsupported by any factual allegations of wrongdoing in Apple's SAC.  Instead, it is based entirely on Apple's unsupported "belief" that Apple's former employees ***may*** use Apple trade secrets during the course of their employment at Rivos.  But, not only has Apple failed to adequately allege any misconduct by the Individual Defendants—let alone the other anonymous employees who Apple references in its SAC—at its core, Apple's SAC impermissibly pleads—at best—an "inevitable disclosure" theory

---

[3]  While not necessary to decide this motion, the Court may consider this prior correspondence.  *See Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, Nos. C 08-4548 MHP 2010 WL 145098, at *4 (N.D. Cal. Jan. 8, 2010) ("A court deciding a Rule 12(b)(6) motion can take judicial notice of matters of public record. . . [s]uch public records include admissions made by a party in the record of a related proceeding such as a preliminary injunction proceeding.").

of trade secret misappropriation.  Because the law is clear that Apple cannot file a lawsuit and then conduct discovery *before* alleging a viable claim against Rivos, its trade secret misappropriation claim fails as a matter of law and should be dismissed with prejudice.

> **A.** **Apple's SAC Does Not State Specific Facts Sufficient To Sustain A Claim Of Misappropriation Against Rivos**

Under the DTSA, the owner of a trade secret may bring a civil action for misappropriation of a trade secret.  18 U.S.C.A. § 1836(b).  To state a claim for trade secret misappropriation, "a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020).

Here, Apple fails to adequately allege any of the three requisite elements of its claim against Rivos.  Instead, Apple's allegations rely on sparse, conclusory statements that are insufficient to show misappropriation by Rivos—*i.e.*, that Rivos acquired, disclosed, or used Apple's trade secrets.

> **1.** Apple Fails To Demonstrate Ownership Of Any Trade Secret

"To prove that Plaintiff is the owner of a trade secret, it 'need not spell out the details of the trade secret,' but must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and *to permit the defendant to ascertain at least the boundaries within which the secret lies*.'" *CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (citation omitted, emphasis added).  "On a motion to dismiss, the burden is on the plaintiff to identify protectable trade secrets and '[show] that they exist.'" *Id.* (citation omitted).  Moreover, the plaintiff must sufficiently describe its trade secrets *in the complaint*, not in other filings such as a trade secret identification. *Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2020 WL 9553151, at *18 (N.D. Cal. July 13, 2020) (identifying trade secrets in other filings outside the complaint "does not change the Court's analysis" on a motion to dismiss); *see also Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same).

Here, Apple's SAC fails to identify any alleged trade secret with the specificity required to survive a motion to dismiss.  Indeed, Apple generally alleges that its trade secrets "pertain to Apple's

personal computer and mobile device SoCs, including SoC designs, component designs, customized ISA instructions, source code for Apple products based on its SoCs, and other Apple-developed know-how gained from years of developing advanced SoCs."   SAC ¶ 146.   Such generalized categories are inadequate, especially where, as here, they are "incremental variations" in a field that has been steadily developing for decades.   *See, e.g.*, *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."); *Via Techs., Inc. v. Asus Computer Int'l*, No. 14-CV-03586-BLF, 2016 WL 1056139, at *3 (N.D. Cal. Mar. 17, 2016) ("[T]he disclosure claims that *all* of VIA's analog and digital schematics are trade secrets in their entirety […] the disclosure gives Defendants—and the court—practically no guidance on precisely what VIA claims as its trade secrets."); *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808 WHA, 2021 WL 965349, at *2-3 (N.D. Cal. Mar. 13, 2021); *see also Space Data Corp.*, 2017 WL 5013363 at *2 (a "plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade") (internal quotation omitted).   While some features in these broad categories may be secret, Apple has failed to identify those features with any specificity, and many features have been publicly disclosed in patents and elsewhere, which "extinguishes the information's trade secret status."   *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020).

Apple also alleges that it has "has identified these trade secrets with particularity, down to file names and file paths."  SAC ¶ 146.  But such an identification simply does not exist within the four corners of the SAC.  Instead, elsewhere in the SAC, Apple references the declaration of Daniel Roffman and Appendix B to that declaration (ECF Nos. 22-4 and 22-5), and the declaration of Daniel Murray (ECF No. 22-3), submitted in support of Apple's earlier-filed motion for a temporary restraining order and expedited discovery.  However, listing dozens of pages of file names, without any indication as to what information within those files is an Apple trade secret, is insufficient as a matter of law.  *See e.g., Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016) ("[I]dentifying documents alone would not be an adequate substitute for detailed identification of

the trade secrets therein, since review of the documents may not inform Defendants as to what precisely Plaintiff is asserting is a trade secret."). And, even more fundamentally, these declarations are limited to listing file names of documents purportedly misappropriated by Ricky Wen, Bhasi Kaithamana, and anonymous "other former Apple Employees." ***Neither declaration identifies a single "file name" or "file path" in connection with Apple's misappropriation claim against Rivos.*** (ECF Nos. 22-4 and 22-5.)[4]

Having failed to identify any protectable trade secret, Apple has not, and cannot show that it is an owner of any such trade secret, and its trade secret claim against Rivos must be dismissed. *Lamont v. Conner*, No. 5:18-CV-04327-EJD, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where "Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (dismissing claim where plaintiff "fail[ed] to identify its allegedly misappropriated trade secrets with sufficient particularity to state a claim under the DTSA"); *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (same); *Teradata Corp. v. SAP SE*, No. 18-CV-03670-WHO, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (same); *Space Data Corp.*, 2017 WL 5013363 at *2 (same).[5]

---

[4]  *More than a month after* the filing of its initial complaint, Apple provided Rivos with its purported trade secret disclosure, only to update it months later. *See* Dkt. 42-5. But neither trade secret disclosure is referenced anywhere in the SAC and thus cannot save the fatal defects in Apple's pleading. In any event, even those disclosures are inadequate, describing only four highly generalized categories of information (like "Chip Specifications" or "SoC Roadmaps and Status Reports"), and listing hundreds of pages of file names, without any indication as to what information within those files is an alleged Apple trade secret.

[5]  While Apple is pursuing discovery regarding its trade secret claim, such discovery cannot save Apple's insufficiently plead complaint. *See Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519

2.      Apple Fails To Plausibly Allege Direct Misappropriation By Rivos

Nor has Apple adequately alleged the second element of a misappropriation claim: misappropriation by Rivos.

The DTSA defines "misappropriation" as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or the unauthorized "disclosure or use of a trade secret" acquired by improper means.  18 U.S.C. § 1839; *see also Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020).

Here, Apple's SAC asserts a generalized legal conclusion that "Defendants"—including Rivos—"improperly acquired and retained" Apple information constituting trade secrets.  SAC ¶ 146.  However, *all* of the factual support for this legal conclusion describes actions allegedly taken by Individual Defendants, *not* Rivos.  For example, Apple's SAC alleges that "Defendants misappropriated trade secrets at least by acquiring trade secrets by improper means" (*id.* ¶ 149), but then describes the actions of only the Individual Defendants and other unnamed individuals, including signing "IPAs and exit checklists" (*id.*) and allegedly retaining trade secret information contained in Apple documents.  *Id.* ¶ 150 ("The trade secret information that the TS Individual Defendants and other former employees now at Rivos have retained  . . . includes [ ] chip specifications and designs for Apple's SOCs").  Apple's allegations regarding these individuals are

---

WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery."); *see also Comp. Econ., Inc. v. Gartner Grp., Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. May 25, 1999) (enumerating four reasons a plaintiff must disclose its trade secrets prior to discovery: discouraging the filing of meritless complaints, preventing "fishing expeditions," helping the court to determine the appropriate scope of discovery, and enabling defendants to form "complete and well-reasoned defenses[.]").

legally infirm themselves[6] and, in any event, cannot substitute for specific allegations of misconduct *by Rivos*.

Instead, to survive a motion to dismiss, a DTSA complaint must include factual allegations as to ***Rivos'*** involvement in the alleged misappropriation.  Indeed, courts in this District have dismissed DTSA claims where the complaint fails to differentiate between the conduct of a corporate defendant and its employees.  *See Navigation Holdings, LLC*, 445 F. Supp. 3d at 79 (dismissing a DTSA complaint against corporate defendants where the complaint improperly based its "trade secret misappropriation claims on [an employee's] conduct, without differentiating what each specific [corporate] Defendant is alleged to have done."); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *15 (N.D. Cal. June 1, 2010) (nonspecific allegation "that defendants disclosed plaintiffs' trade secrets without their express or implied consent" insufficient to avoid dismissal).

For example, in *Tarantino*, the complaint included detailed allegations of misappropriation by certain employees named as individual defendants, but included "no specific facts" to support a DTSA claim against their new employer.  498 F. Supp. 3d at 1173.  The Court noted that the

---

[6]  Apple alleges in its SAC that the Individual Defendants have each retained Apple proprietary and trade secret information, "***giving Apple reason to believe*** that it is being used by Rivos to improperly advance Rivos's own SoC design program."  SAC ¶ 45 (emphasis added).  As demonstrated in the Individual Defendants' contemporaneously filed Motion to Dismiss, Apple has not established a claim against them and, therefore, its claim against Rivos necessarily fails.  *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SACV19220JVSJDEX, 2019 WL 6655274, at *10 (C.D. Cal. Sept. 23, 2019) ("[W]ithout plausible allegations that [Plaintiffs' former employee] improperly acquired trade secrets, Plaintiffs cannot allege that [his new employer] improperly acquired or used trade secrets since [the former employee] is the only link between them."); *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235-36 (C.D. Cal. 2001) (dismissing trade secret claim against plaintiff's former employee and his new employer when theory of misappropriation against former employee failed).

individual defendants "could well have taken the trade secrets . . . without [their new employer's] knowledge[.]"  *Id.*  As a result, the Court concluded that the allegations of misappropriation levied against the individual defendants were not sufficient to support a claim against their employer.  *Id.* (dismissing the  trade secret misappropriation claim against the company but not the individual defendants).  Here, as in *Tarantino*, Apple has asserted no allegations to support a claim against Rivos, the new employer, and its allegations against the Individual Defendants are insufficient to support a claim against Rivos.

### 3.    Apple Fails To Plausibly Allege Indirect Misappropriation

To the extent Apple's SAC purports to state a claim of indirect trade secret misappropriation against Rivos, that claim fails as well.  To state a claim for indirect trade secret misappropriation, a plaintiff must allege facts showing:

> (1) the plaintiff is the owner of a valid trade secret; (2) the defendant acquired the trade secret from someone other than the plaintiff and (a) knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it; or (b) knew or had reason to know it was a trade secret and that the disclosure was a mistake; (3) the defendant used or disclosed the trade secret without Plaintiff's authorization; and (4) the plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of the trade secret, or the defendant benefitted from such use or disclosure.

*California Police Activities League v. California Police Youth Charities, Inc.,* No. C 08-1991 PJH, 2009 WL 537091, at *4 (N.D.Cal. Mar. 3, 2009); *Navigation Holdings, LLC*, 445 F. Supp. 3d at 78–79.

Here, Apple alleges that "Rivos knew, or at minimum should have known, that [former Apple] employees improperly retained Apple confidential and trade secret information and ***were likely to*** make use of it in the course of their employment at Rivos."  SAC ¶ 159 (emphasis added).[7]

---

[7]  Apple also alleges that it believes that "further discovery will likely show that Apple's trade secret information has been improperly disclosed to Rivos and used by Rivos and the TS Individual Defendants."  *Id.* ¶ 159.  As demonstrated below, Apple's belief about what ***future*** discovery ***may*** show is insufficient to state a legally cognizable claim against Rivos.

But Apple does not allege that Rivos (or even the Individual Defendants, or the other former Apple employees) did, in fact, use or disclose Apple's trade secrets during the course of their employment at Rivos.

Such theoretical misappropriation claims—particularly when based only on a plaintiff's unsupported assumptions—must be dismissed. *See, e.g., S. California Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011) ("SC Law's allegation that, upon information and belief, TCS 'intend[s] to disclose' SC Law's trade secrets does nothing to save the claim from dismissal"); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (dismissing complaint where "Honeywell does not allege any facts in support of the legal conclusion that plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information."); *Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-CV-0583-BAS-DEB, 2020 WL 6484640, at *5 (S.D. Cal. Nov. 4, 2020) (dismissing trade secret misappropriation claim on the ground that "[c]onclusory allegations raised 'on information and belief,' not accompanied by any specific factual allegations regarding the defendant's involvement in the actions giving rise to the lawsuit, are insufficient to state a claim against the defendant.").

In *R.R. Donnelley & Sons Co. v. Marino*, a company and two of its employees were sued for misappropriation of trade secrets under the DTSA.   505 F. Supp. 3d 194, 206 (W.D.N.Y. 2020). The complaint in *Marino* "contain[ed] a variety of allegations" against the two employees named as individual defendants, but was "devoid of factual allegations as to [the company's] involvement in these activities." *Id.*  The only allegation in the complaint against the company was contained in a single paragraph, which stated, "[u]pon information and belief" the company hired employees from a competitor and induced them to breach their confidentiality obligations to their former employer. *Id.*  The DTSA claim against the company was dismissed because it contained "nothing more than conclusory allegations." *Id.*  Apple's initial complaint made frequent use of the phrase "upon information and belief" with respect to its allegations against Rivos. *See* Dkt. 1.  Although Apple has stricken that verbiage from the SAC, the substance of its allegations remains unchanged: Apple simply assumes Rivos must be guilty, but cannot allege any facts to support that assumption.

1   Here, as in *Marino*, Apple's SAC contains **no** allegations against Rivos, other than conclusory

2   allegations made about the ***potential*** for the Individuals Defendants and some unknown number of

3   anonymous individuals to use or disclose Apple's trade secrets during the course of their

4   employment at Rivos.

5                           4.    Apple Fails To Allege Any Damages

6          Apple fails to plead any damages caused by Rivos.  Instead, Apple vaguely claims that

7   "Defendants' conduct" has caused Apple injury, and that "Defendants' conduct" entitles Apple to

8   an award of exemplary damages. SAC ¶¶ 162-163.  Having failed to allege any specific facts against

9   Rivos, Apple cannot lump Rivos together with the Individual Defendants for purposes of seeking

10  damages.  For this additional, independent reason, Apple's SAC against Rivos should be dismissed.

11  *See e.g.*, *Cooper Interconnect, Inc. v. Glenair, Inc*, No. CV1408018RGKJCX, 2015 WL 13722129,

12  at *4 (C.D. Cal. Feb. 3, 2015) (dismissing trade secret claim against former employee and his new

13  employer when "Plaintiff [did] not provid[e] facts to support an inference of actual harm.").

14       **B.    Generalized Allegations that Unidentified Apple Employees Have Moved to**

15             **Rivos Are Insufficient to Support a Misappropriation Claim**

16         The other allegations in Apple's SAC about Rivos—including that it "targeted and solicited

17  Apple employees who were highly experienced engineers" (SAC ¶ 42), has hired a number of

18  former Apple employees (*e.g. id.* ¶¶ 3, 125; 159), and that it is working on developing a System on

19  a Chip that may eventually compete with Apple (*id.* ¶¶ 3, 40)—cannot make up for the lack of

20  specific factual allegations to support Apple's claim of trade secret misappropriation against Rivos.

21  Instead, those allegations merely expose Apple's anti-competitive intent in filing this lawsuit.

22         Every person who lives and works in California, including the former Apple employees who

23  joined Rivos, has the right to pursue the employment of his or her choice, and may even compete

24  against his or her former employer.[8]  *See Golden v. California Emergency Physicians Med. Grp.*,

25  896 F.3d 1018, 1022 (9th Cir. 2018) (recognizing application of Cal. Bus. & Prof. Code Section

26

27  [8]   Many of the Individual Defendants and other former Apple employees who work at Rivos are

28  California residents, including Messrs. Wen, Ye, Pinot, and Rajamani.

16600 in federal court, and noting the "law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.  It protects the important legal right of persons to engage in businesses and occupations of their choosing.") (quoting *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008)).

In an effort to flout this well-established public policy, Apple alleges that the Individual Defendants and other former Apple employees have retained Apple trade secrets and are "likely to make use of [those trade secrets] in the course of their employment at Rivos." SAC ¶ 159.  In other words, Apple seeks to maintain a claim for misappropriation against Rivos based on Apple's allegation that its former employees will inevitably use Apple's trade secrets in their new roles at Rivos.  The "inevitable disclosure" legal theory ***cannot*** support a claim of misappropriation under the DTSA as a matter of law.

The DTSA precludes remedies that "conflict with an applicable State law prohibiting restraints on the practice of a lawful profession, trade, or business."  18 U.S.C. § 1836(b)(3)(A)(i)-(ii).  These provisions were included to prevent the creation of a federal "inevitable disclosure" doctrine.  *See* S. REP. NO. 114- 220, at 8 & n. 16 (2016).  Courts in this District have struck DTSA misappropriation allegations that rely on the "inevitable disclosure" theory.  For example, in *UCAR Tech. (USA) Inc. v. Yan Li*, the complaint alleged that employees who took jobs at a competitor "cannot separate out [plaintiff's] trade secrets and confidential information in starting a competing company in the exact technology space that they worked in for [plaintiff]."  No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3 (N.D. Cal. Dec. 15, 2017), *on reconsideration*, No. 5:17-CV-01704-EJD, 2018 WL 2555429 (N.D. Cal. June 4, 2018).  The Court held that "[t]o the extent the complaint relies on these types of 'inevitable disclosure' allegations, those allegations are ordered stricken from the complaint.  California courts have resoundingly rejected claims based on the 'inevitable disclosure' theory." *Id.* (*citing Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.")).

Nor can Apple's allegations that Rivos has hired former Apple engineers support a claim for trade secret misappropriation under the DTSA.  *See, e.g.*, *Carl Zeiss Meditec, Inc. v. Topcon Med.*

-14-

*Sys.*, Inc., No. 19-4162 SBA, 2019 WL 11499334, at *5 (N.D. Cal. Nov. 13, 2019) ("[T]he mere fact that [defendant] hired former [employees of plaintiff] who allegedly have knowledge of [plaintiff's] trade secrets is insufficient to demonstrate misappropriation."); *see also Marino*, 505 F. Supp. 3d at 207 (dismissing trade secret claim against defendant corporation and emphasizing that plaintiffs' allegations that their former employees misappropriated trade secrets and the defendant corporation hired those former employees "is not enough to create liability as to [the defendant corporation]"); *KapStone Container Corp. v. Boyd*, No. 1:17-CV-01902-TWT, 2017 WL 4948074, at *2 (N.D. Ga. June 27, 2017) ("Defendants are entitled to compete with their former employer").

In sum, Apple's generalized allegations that some of its former employees—even if those employees have, as Apple alleges, retained Apple documents—now work for a competing company do not support a claim against Rivos under the DTSA.

### C.    Apple Cannot Conduct Discovery Before Alleging A Viable Claim

In an apparent concession that its current allegations are insufficient, Apple alleges in its SAC that discovery *may* show evidence of misappropriation by Rivos. SAC ¶ 159. But the law is clear that a party's "need for discovery does not obviate the rule requiring a complaint to state plausible factual allegations in support of the asserted claims." *Delacruz v. State Bar of California*, No. 16-CV-06858-BLF, 2017 WL 3129207, at *3 (N.D. Cal. July 24, 2017). "Fed. R. Civ. Proc. 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* citing *Iqbal*, 556 U.S. at 678-79.

Here, the general, conclusory allegations in Apple's SAC are insufficient to permit discovery in the hopes of identifying specific claims. *See Kaplan v. California Pub. Employees' Ret. Sys.*, No. C 98-1246 CRB, 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998), *aff'd*, 221 F.3d 1348 (9th Cir. 2000) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under federal discovery rules."); *see also Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 2184304, at *6 (S.D. Cal. May 11, 2015) ("It is clear to the Court that Plaintiff is engaging in a fishing expedition borne from broad, conclusory allegations, unsubstantiated by facts. A litigant may not file suit in order to use discovery as the sole means of finding out whether [he has] a case.")

1    (citation and internal quotation omitted).   Submitting a generic complaint with conclusory

2    allegations against a defendant—as Apple has done here with its DTSA claim against Rivos—

3    cannot be used to justify a fishing expedition through a competitor's business information in the

4    hopes that discovery will uncover the facts required to state a claim.  *See Cotiviti, Inc. v. Deagle*,

5    501 F. Supp. 3d 243, 260 (S.D.N.Y. 2020) ("The Court will not permit the plaintiff to start with a

6    generic complaint [as to the solicitation claims], then use an invasive discovery process to find and

7    articulate specific claims."); *see also Tri Cnty. Tel. Association, Inc. v. Campbell*, No. 17-CV-089-

8    F, 2018 WL 10399165, at *4 (D. Wyo. Apr. 17, 2018) ("In short, a plaintiff must first bring a cause

9    of action with a factual basis.  A plaintiff is not permitted to assert a cause of action lacking the

10   requisite factual basis and then proceed to engage in discovery to find such factual basis.").  Apple's

11   belief that further discovery may show Rivos has misappropriated trade secrets is not a sufficient

12   basis to permit Apple's claim against Rivos to go forward.

13   **V.**      **CONCLUSION**

14           For the foregoing reasons, Rivos respectfully requests that the Court dismiss Apple's Second

15   Amended Complaint against Rivos with prejudice.

16

17   DATED:  September 27, 2022              Respectfully submitted,

18                                          QUINN EMANUEL URQUHART & SULLIVAN,
                                            LLP
19

20

21                                   By    */s/ Stephen Swedlow*
                                           STEPHEN SWEDLOW
22                                         DAVID EISEMAN
                                           VICTORIA B. PARKER
23

24                                         Attorneys for Defendants Rivos Inc., Wen Shih-
                                           Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
25                                         Ye, Laurent Pinot, Prabhu Rajamani and Kai
                                           Wang
26

27

28