**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
(415) 875-6314

WRITER'S EMAIL ADDRESS
davideiseman@quinnemanuel.com

November 15, 2022

The Honorable Nathanael M. Cousins
United States Magistrate Judge
Northern District of California
San Jose Courthouse
Courtroom 7 - 4th Floor
280 South 1st Street
San Jose, CA  95113

Re:    *Apple Inc. v. Rivos Inc. et al.,* Case No. 5:22-CV-2637-EJD-NC

Dear Judge Cousins:

Pursuant to Your Honor's Civil Standing Order, Defendants Rivos Inc. ("Rivos"), Ricky Wen, Jim Hardage, Kai Wang, Laurent Pinot, Prabhu Rajamani, and Weidong Ye (collectively, "Defendants") and Plaintiff Apple Inc. ("Apple") respectfully submit this joint letter brief regarding a discovery dispute relating to Apple's September 14, 2022 trade secret identification. Defendants contend they are entitled to a protective order excusing them from responding to discovery related to Apple's trade secret misappropriation claim unless and until Apple identifies its claimed trade secrets with the requisite specificity. Apple disagrees and cross-moves for an order compelling further responses to its Interrogatories 1-4 and Request for Production Nos. 1, 2, and 5 served on Messrs. Hardage, Pinot, Rajamani, Wang, and Ye (collectively, "Individual Defendants"), and Request for Production Nos. 8 and 9 to Defendant Wang, all of which concern Apple's trade secret misappropriation claim. Below-signed counsel attest that the parties met and conferred regarding the issues presented in this brief, but are at an impasse.

quinn emanuel urquhart & sullivan, llp
ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES |
MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE |
SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

**Defendants' Position:**

**Introduction.** "A true trade secret plaintiff ought to be able to identify, up front, and with specificity, the particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014). Apple has failed to identify its trade secrets with any specificity, and yet demands that Defendants provide discovery relating to its trade secret misappropriation claim. Defendants accordingly request that the Court enter a protective order precluding Apple from taking such discovery unless and until Apple identifies its claimed trade secrets with the required specificity.

**Background.** Rivos is a startup developing a System on a Chip ("SoC"). Each of the Individual Defendants is a former Apple employee now employed by Rivos. Generally, Apple has alleged that, before leaving Apple, the Individual Defendants transferred files, backed up their Apple-issued devices, and/or removed information from their Apple-issued devices. *See* Dkt. 79.

Apple's first Trade Secret Disclosure ("TSD") was served on June 1, 2022, and consisted of a list of (i) high level categories of information, and (ii) *every* file contained within Defendant Ricky Wen's downloads folder (including personal banking statements), without regard to whether the information belongs to Apple, let alone is an Apple trade secret. On July 14, 2022, Apple filed a First Amended Complaint, adding five Individual Defendants. Two months later, Apple served an Updated TSD that purportedly (i) corrects the obvious errors in its original TSD, and (ii) addresses the newly added Individual Defendants. But rather than correcting any deficiencies, Apple's Updated TSD doubles down on them. In addition to setting forth the same four generalized categories of information and adding over 25 more Apple "code names," Apple attaches 1,071 pages of filenames. The substance of the TSD otherwise remains unchanged.

**Apple Has Failed to Identify its Trade Secrets with the Required Specificity.** Apple's Updated TSD is deficient for at least the following reasons. *First*, Apple fails to identify *any* purported trade secrets that Rivos—or any Individual Defendant—is alleged to have misappropriated. Apple's Updated TSD primarily consists of hundreds of pages of file names, with Apple taking the position that *every single file is a trade secret*. Apple's position is untenable because the Updated TSD does not disclose what information within those files is an Apple trade secret. *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016) ("[I]dentifying documents alone would not be an adequate substitute for detailed identification of the trade secrets therein, since review of the documents may not inform Defendants as to what precisely Plaintiff is asserting is a trade secret."). This is all the more true here, where, despite Rivos' requests, Apple has not produced the purported trade secret documents. *See id.* Apple's case law does not hold otherwise. In fact, in *Monster Energy Co. v. Vital Pharm., Inc.*, 2022 U.S. Dist. LEXIS 95893, at *73 (C.D. Cal. Apr. 19, 2022), the plaintiff submitted a 75-paragraph disclosure describing each of its 75 claimed trade secrets—a far cry from Apple's four paragraph Updated TSD that purportedly identifies tens of thousands of trade secrets.

*Second*, other than its list of file names, Apple describes only categories of information, like "chip specifications" and "SoC Roadmaps and Status Reports," not the alleged trade secrets themselves. This is insufficient. *E.g.*, *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of [a] category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."); *accord Loop AI Labs*, 195 F. Supp. 3d at 1114-15. Rather than dispute this

deficiency, Apple highlights it by giving its claimed trade secrets the even more non-specific label of "crown jewels," without explaining what they are or who allegedly misappropriated them.

*Third*, the alleged trade secrets, to the extent they can even be discerned at a categorical level, are "incremental variations" in a field that has been steadily developing for decades. Yet Apple does not distinguish its claimed trade secrets from those which came before them and are well-known within the field. *Quintara*, 2021 WL 96534, at *2-3 (N.D. Cal. 2021); *see also Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (a "plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade") (quotation omitted). While some features may be secret, Apple has failed to identify those features with any specificity, and many features have been publicly disclosed in patents and elsewhere, which "extinguishes the information's trade secret status." *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020).

*Fourth*, Apple's Updated TSD is facially overbroad because it includes all "confidential documents describing Apple's SoC designs and SoC component designs" for 55 different Apple projects. In this way, Apple attempts to designate an *unknown and unlimited number* of documents as trade secrets, which is precisely what it may not do. *Jobscience*, 2014 WL 852477, at *4. Providing an example document in each purported category does not resolve the deficiency. *See Space Data*, 2018 WL 10647160, at *2 (disclosure inadequate where it provided an "example of source code for an algorithm . . . but does not limit the trade secret to this particular algorithm.").

*Finally*, except for a list of code names for Apple projects and the names of five documents, Apple's Updated TSD is not confidential, as evidenced by the fact that Apple's original TSD (which is substantially the same in form as the Updated TSD) was filed on the public docket. *Quintara*, 2021 WL 965349, at *2 (emphasizing the insufficiency of plaintiff's disclosure where "plaintiff itself filed its trade secret disclosure . . . *on the public docket* with minimal redactions").

**Apple is Not Entitled to Discovery Related to its Trade Secret Misappropriation Claim Until it Identifies its Claimed Trade Secrets with the Required Specificity.** Apple must disclose its trade secrets, with specificity, *before* it can pursue discovery into its trade secret misappropriation claim. *E.g.*, *Quintara*, 2021 WL 965349, at *1; *Loop AI Labs*, 195 F. Supp. at 1111; *Jobscience*, 2014 WL 1724763, at *4; *Soc. Apps,* 2012 WL 2203063, at *2.[1] The reasons for this requirement are numerous and compelling. *See Comp. Econ., Inc. v. Gartner Grp., Inc.*, 50 F.Supp.2d 980, 986 (S.D. Cal. May 25, 1999) (reasons include: discouraging the filing of meritless complaints, preventing "fishing expeditions," helping the court to determine the appropriate scope of discovery, and enabling defendants to form "complete and well-reasoned defenses[.]"); *accord Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333, 1343 (2009).

Otherwise, Apple could improperly base its trade secret claim on whatever documents and technology Defendants disclose in discovery. *See Switch Commc'ns Grp. v. Ballard*, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012). Rivos is particularly vulnerable to such a strategy here,

---

[1] Courts analyze the DTSA and CUTSA consistently, and "appl[y] California's trade secret case law to causes of action brought under the federal DTSA." *Founder Starcoin, Inc. v. Launch Labs, Inc.*, 2018 WL 3343790, at *4 (S.D. Cal. July 9, 2018). This includes the requirement that trade secret plaintiffs identify their trade secrets with specificity. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 n. 1 (N.D. Cal. 2019); *Quintara*, 2021 WL 965349, at *1.

where Apple has failed to make *any* factual allegations that Rivos ever wrongfully acquired, used, or disclosed any of Apple's claimed trade secrets, and has conceded that its claim against Rivos is based on a "belief" that discovery "will likely show" misappropriation by Rivos. Dkt. 1 ¶ 80; Dkt. 79 ¶ 158. *Jobscience, Inc.*, 2014 WL 852477, at *5 ("[I]t is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets"). In an attempt to avoid this basic requirement, Apple mischaracterizes Dr. Kumar's deposition testimony below, claiming that Dr. Kumar stated that Rivos had located at least four files containing Apple information.[2] But even if Dr. Kumar had stated that Rivos found Apple files on its systems, Apple would still have to sufficiently identify its trade secrets before obtaining discovery related to its trade secret claim. *See id.* Indeed, it is axiomatic that ***all*** trade secret plaintiffs allege that defendants have their trade secrets—such allegations simply do not allow plaintiffs to circumvent the requirement that their trade secrets be identified with specificity *before* discovery begins. *See id.*

**Conclusion.** Good cause warrants the issuance of a protective order with respect to the discovery relating to Apple's trade secret misappropriation unless and until Apple identifies its trade secrets with specificity. *See* Fed. R. Civ. P. 26. Allowing otherwise would permit Apple to gain from the "tactical advantages" courts warn against by "provid[ing] little more than a list of high-level, generic categories in which its alleged secrets are said to reside [and later] alter[ing] its list of trade secret claims as the case proceeds." *Perlan*, 178 Cal. App. 4th at 1344.

**Apple's Position:**
Rivos' motion is exactly what Rivos previously told the Court it would not do. Apple sought a TRO and expedited discovery at the outset of this case, presenting detailed forensic evidence that multiple former Apple engineers had downloaded or retained thousands of Apple confidential documents. Dkts. 22, 22-4. In opposition, Rivos argued discovery should proceed in the normal course and represented, "*We're not asking this Court to stay discovery* while we file a motion to dismiss, which we will file; *we're not asking this Court to require an adequate trade secret identification, which the Court may or may not choose to apply to this case*." Jul. 16, 2022 Hrg Tr. at 39:21-24 (emphasis added). In addition, after acknowledging Defendant Wen "may have" access or possession of documents, Rivos assured the Court that "*whatever evidence exists now, Apple is going to get it, Apple's lawyers are going to get it.*" *Id.* at 43:4-18 (emphasis added). Months later, Rivos and the Individual Defendants have provided nothing. Rivos has backtracked on its promises and has obstructed Apple's every effort to recapture its documents and learn what was taken. Troublingly, in his court-ordered renewed deposition, Rivos' CEO testified that Rivos employees are permitted to use their personal devices for work (Ex. A at 183:1-10), and were also previously permitted to use their personal iCloud accounts to access Rivos' systems (*id.* at 142:5-143:3). He could not say whether this had resulted in Apple documents being intermingled with Rivos' information. (*Id.* at 145:11-146:5, 147:18-148:6, 169:19-22, 174:8-17, 180:1-21.) Nor could he answer questions about what the five more recently named individual defendants had taken or whether those materials have been sequestered. (*Id.* at 182:11-15; 186:25-187:13.) He did testify, however, that, while not personally aware himself, "I do believe the investigation has" located at least 4 files containing Apple information (which he could not describe) on Rivos' systems. (*Id.* at 137:8-138:3.) These revelations warrant more fulsome responses to Apple's

---

[2] To the contrary, Dr. Kumar testified that Rivos' counsel had identified four files for further investigation and that he was not aware of Apple information on Rivos' systems. Tr. at 154:2-5.

discovery, not a protective order that would allow Rivos to continue hiding critical information.

**Defendants Cannot Block Discovery Into The Confidential Apple Documents They Took.** Apple seeks discovery of the confidential documents its former employees took and what they did with them. ROGS 1-4 ask each Individual Defendant to identify the confidential documents they took and their current location; how they retained or downloaded them; and how they were accessed, used, or deleted. (*See* Ex. B (Hardage Obj. to ROGS) at 5-7.) RFP Nos. 1, 2, and 5 to each Individual Defendant and RFP Nos. 8-9 to Defendant Kai Wang seek forensic images of devices used to take Apple's confidential documents, and the information taken. (Ex. C (Hardage Obj. to RFPS) at 5-6, 8-9; Ex. D (Wang Obj. to RFPs at 10-11).) Each refused to answer, claiming Apple had not sufficiently identified its trade secrets. (*See, e.g.,* Ex. B at 5-7; Ex. C at 5-6, 8-9, Ex. D at 10-11.) And Rivos refuses to make any witnesses available for deposition.

The Individual Defendants indisputably have no right to keep Apple's confidential documents. And they do not require a trade secret identification to identify and return them—especially since months ago Apple identified when Defendants connected outside devices to their Apple devices and the type of device used, often even providing the serial numbers. (*See* Dkt. 22-4 ¶¶ 15-36.)

Defendants cannot use Section 2019.210 to block discovery into Apple's own documents. Courts are split on whether 2019.210 applies in federal court and to DTSA claims (as Rivos has acknowledged). *See, e.g.*, *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 2021 WL 6102432, at *6-8 (C.D. Cal. Aug. 27, 2021) (declining to apply 2019.210 and collecting cases). If used as a case management tool, a trade secret disclosure should not be used to prevent discovery into the Apple documents Defendants took. None of the 2019.210 policy concerns apply to such a situation: this is not a "fishing expedition," Apple has a good faith basis for its claim, and the discovery bounds are clearly delineated. Policy concerns weigh heavily the other way: Defendants took extensive confidential information and covered their tracks. (Dkt. 22-4 ¶¶ 14, 25-26.) They cannot now refuse to provide discovery unless Apple first identifies everything they took. Indeed, the Court already has ordered Rivos to search for and sequester documents following Apple's production of forensic information, without conditioning it on a trade secret disclosure. (*See* Dkt. 73 at 3.) They must respond to the requests, and appear for deposition.

**Apple has properly articulated its trade secrets**. Moreover, Apple's Trade Secret Disclosure ("TSD")[3] defines its trade secrets with reasonable particularity. Apple claims the documents its former employees took are trade secrets, and has identified those documents as best it can given their deletion of evidence. Apple's TSD sufficiently identifies what is at issue and enables Defendants to mount a defense; no more is required at this stage. *See, e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 1911195, at *6 (N.D. Cal. Apr. 20, 2020). Apple describes what it seeks to recover, including chip specifications for current and unreleased products, engineering simulation results, development roadmaps, and register transfer level design files for its SoCs. (*See* TSD; Dkt. 22-4 ¶¶ 14-24; Dkt. 22-3 ¶¶ 8-15.) These are not simply "categories" of information but include specific documents identified by file name. (TSD, Appx. A-I.)

Defendants criticize Apple for identifying the numerous documents the Individual Defendants took as trade secrets. But it is not Apple's fault they took so much. Courts have repeatedly found

---

[3] Apple can make its TSD available to the Court at a hearing or in any other manner preferred.

disclosures listing specific files to identify trade secrets with "reasonable particularity." *See, e.g.*, *eHealthinsurance Servs., Inc. v. Healthpilot Techs. LLC*, 2021 WL 3052918, at *1-2 (N.D. Cal. July 20, 2021) (granting preliminary injunction where defendants had taken documents, and finding plaintiff had adequately described its trade secrets, "including by specifically identifying documents downloaded or saved in internet-based storage"); *Proofpoint, Inc.*, 2020 WL 1911195, at *6 (finding listing of directories of source code was reasonably particular); *Monster Energy Co. v. Vital Pharm., Inc.*, 2022 U.S. Dist. LEXIS 95893, at *73 (C.D. Cal. Apr. 19, 2022) (finding description "tailored to specific documents" was sufficient).

This is not a case where Apple's TSD vaguely asserts its trade secrets may be found in a set of documents. Rather, the documents that were taken themselves are trade secrets. *See* TSD; Dkt. 22-4 ¶¶ 14-24; Dkt. 22-3 ¶¶ 8-15. Apple provides examples for each asserted trade secret because it cannot yet know everything its former employees took. Apple names the SoC projects to which they had access, specifying in detail the types of documents it believes were taken. *See* TSD at 1:3-8 & ¶¶ 1-4. Apple submitted a detailed declaration about how these types of documents—its "crown jewels"—derive value from not being known to competitors, and the measures Apple takes to keep them secret. *See* Dkt. 22-3 ¶¶ 4-7, 16-19. Defendants' reliance on *Loop AI Labs Inc.* is misplaced, as Apple has not simply "identif[ied] documents" as a "substitute for detailed identification of the trade secrets." 195 F. Supp. 3d at 1116. Here, the stolen documents are the trade secrets, and Apple seeks their return. (*Space Data Corp.* is also inapposite; there, the plaintiff acknowledged that the claimed secret was just the "goals sought to be achieved" rather than "*how* to achieve them," 2018 WL 10647160 at *2, while here, the documents identified in Apple's TSD would "give a competitor a blueprint to follow in copying Apple's SoC designs," Dkt. 20-3 ¶ 20.)

Nor can Defendants avoid discovery by claiming the documents they took may include non-trade secret information. *See Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, 2017 US Dist. LEXIS 232297 at * 17 (C.D. Cal. Mar. 13, 2017) (plaintiff "not required to identify which components" of trade secret drawings were themselves secret). "[A] trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). At the disclosure stage, trade secret plaintiffs generally need not explain how their secrets differ from public information, as long as they "permit respondents to investigate whether his alleged trade secrets were within the public domain and prepare a defense." *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333, 1348 (2009); *accord InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020). Defendants' tenures as Apple engineers and familiarity with the files *they* took unquestionably enables them to mount a defense.

"This is not a case . . . where a plaintiff has merely alleged . . . that an ex-employee now working for a competitor had access to a whole panoply of company information and can be inferred to be using trade secrets." *Bitglass, Inc. v. Netskope, Inc.*, 2020 WL 11563099, at *4 (N.D. Cal. Dec. 21, 2020). Like the plaintiff in *Bitglass*, Apple contends Defendants "engaged in a specific act of downloading company files" at the time of termination. *Id.* at *1-2, *4-5 (list of document types such as "product roadmap[s]" and training manuals" sufficient to plead trade secret claim with reasonable particularity). The "battleground of discovery . . . provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear, LLC*, 978 F.3d at 662. Apple will refine its contentions as Defendants produce information about the documents they took. At this stage, its identification is sufficient.

6

Respectfully submitted,

MORRISON & FOERSTER

*/s/      Bryan Wilson*

Bryan Wilson
*Attorneys for Plaintiff Apple Inc.*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/      David Eiseman*

David Eiseman
*Attorneys for Defendants Rivos Inc., Ricky Wen, Jim Hardage, Kai Wang, Laurent Pinot, Prabhu Rajamani, and Weidong Ye*

**ATTESTATION OF CONCURRENCE**

I, David Eiseman, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from Bryan Wilson.

Dated:  November 15, 2022

*/s/ David Eiseman*
David Eiseman