# IIIORRISON FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA  94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

November 15, 2022

Writer's Direct Contact
+1 (650) 813-5603
BWilson@mofo.com

By ECF

Honorable Nathanael Cousins
United States District Court
San Jose Courthouse, Courtroom 5 – 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:     *Apple Inc. v. Rivos Inc., et al.*
        No. 5:22-cv-2637-EJD

Dear Judge Cousins:

Apple brings this motion asking the Court to compel Rivos to produce documents responsive to
Requests for Production 1, 2, 4, 5, 10, 11, 15, 17, and 18 and responses to Interrogatories 1-4, 7,
and 11. The parties have met and conferred by phone multiple times on these issues, including
most recently on October 25, 2022.  The parties now request the Court's assistance.

Honorable Nathanael Cousins
November 15, 2022

**Apple's Position**

Much of what Apple seeks to compel is information Rivos promised to produce over five months ago.  Rivos told the Court on June 3 that Apple's motion for expedited discovery—which included many of the specific requests at issue here—was "largely moot" because it intended to "(i) provide written responses as to whether Rivos has any Apple confidential documents and information related to SoCs or SoC components on its system and whether and how that information has been accessed or viewed by Rivos employees" and "(ii) conduct searches of its own systems for Apple confidential documents and information related to SoCs or SoC components."  (Dkt. 40 at 22-23; *see* Dkt. 27-18 (ROGs 1-4); Dkt. 27-19 (RFPs 1-4).)  The requests are not "vague and overbroad," but target the Apple confidential information that was taken.  Yet Rivos has produced nothing.

Rivos never objected to this first set of requests on the basis that Apple had not sufficiently identified its trade secrets, so any such objection is waived, and the requests fall outside of Rivos' requested protective order.  It also did not seek a protective order on these requests four months ago and cannot do so now.  It even told the Court: "*We're not asking this Court to stay discovery while we file a motion to dismiss, which we will file; we're not asking this Court to require an adequate trade secret identification*, which the Court may or may not choose to apply to this case." (Dkt. 68-1 at 39:21-24 (emphasis added).)  Apple asks the Court to compel Rivos to respond to these initial requests as it promised.  Apple also moves on additional requests served on July 7.

**Apple's Confidential Information and How It Was Used (ROGs 1-4, 6; RFPs 1, 2, 4, 5, 10, 18):**  ROG 1 asks Rivos to describe its "knowledge of the downloading, transfer or retention of any Apple confidential documents and information" relating to SoCs by any former Apple employees.  (Dkt. 27-18, ROG 1.)  ROG 4 asks Rivos to identify "all Persons who accessed or viewed any Apple confidential documents or information" downloaded or transferred from Apple, "while such Persons were employed by Rivos."  Rivos responds only that it has no knowledge of such information "*on Rivos-issued devices or Rivos systems*."  (Ex. A at 5-6, 7-8.)  The requests are not limited to Rivos' systems.  Rivos told the Court its counsel interviewed all  former Apple employees to determine if they "retained any devices or documents that could potentially contain Apple confidential, proprietary, or trade secret documents," were "collecting documents and other information from a subset of employees," and was conducting "a thorough investigation."  (Dkt. 40-1 ¶¶ 14-15, 17.)  If Rivos knows the employees took, accessed, or viewed Apple documents, it must say so.  The Court has not decided this issue as Rivos claims.  The Court ruled on Rivos' obligation to search devices it found were not in Rivos' custody or control (Dkt. 73), but under Rule 33 "a party answering interrogatories must furnish all information 'available to th[at] party." *GG Closed Circuit Events, LLC v. Cal. Ctr. For the Arts*, at * 11(S.D. Cal. Jun. 10, 2021) (ordering plaintiff to answer interrogatories regarding defendant's employees and acts). Since the Court's order Apple has added five individual defendants, who are all represented by Rivos' counsel. (Dkt. 79.)  ROG 3 asks for "the current or last known location" of Apple documents that were taken. (Dkt. 27-18, ROG 3.)  Rivos refuses to answer ROG 3 at all.  (Ex.A at 7.)   It must respond.

In addition to the above disputes, Rivos must update its responses.  It responded on June 15, before its "thorough investigation." Mr. Kumar testified in his recent deposition that Rivos' investigation

1

Honorable Nathanael Cousins
November 15, 2022

has located at least four files with Apple confidential information on its systems, but could not identify them.  (Ex. B at 137:16-138:3.)  ROG 2 asks how Apple confidential documents and information relating to SoCs were provided to, accessed by, or used by Rivos.  (Dkt. 27-18, ROG 2.)  Rivos' June 15 response states its "investigation is ongoing."  (Ex. A at 7.)  It must be updated.

ROG 6 asks for details about Apple information relating to SoCs residing on Rivos systems, including information that was automatically synched to Rivos' devices.  (Ex. C at 6.)  Rivos admitted this occurred through iCloud for at least Mr. Wen (Dkt. 46-4 at 4:18-20; *see* also Dkt. 46-6 ¶ 10; Dkt. 22-4 ¶¶ 22-23).  Yet it refused to respond to ROG 6, stating it would only search "[o]nce Apple makes its court-ordered production of forensic information[.]"  (Ex. C at 6-7.)  The Court did not stay Rivos' discovery obligations and Rivos did not need this information to begin its search.  In any event, Apple provided the forensic information Rivos claims it wanted on September 14, over seven weeks ago.[1]  Vendors search for file names electronically.  This takes days, not months.  Just as importantly, Rivos cannot limit its search to just what Apple identified— particularly since many former employees wiped their devices.  (*See* Dkt. 22-4 ¶¶ 25-26.)

The RFPs are similar.  RFP 1 seeks Apple confidential documents and information that its former employees downloaded or transferred, or provided to Rivos.  RFP 4 seeks documents "sufficient to show" their current location and origin.  (Dkt. 27-19 (RFPs 1 and 4).)  Rivos responded on June 15 that "no such documents exist on Rivos' systems or Rivos-issued devices" and that its "investigation is ongoing."  (Ex. D at 8.)  Its CEO admitted Rivos has now found such documents.  And Rivos told the Court that "for every employee where Apple identified a drive, that's already been imaged," (6/16/22 Tr. at 39); *see also* Dkt. 40 at 4 ("Rivos has undertaken to image many other computing devices"); 7/7/22 Tr. at 11 ("some" employees willing to turn over personal devices).  Rivos must produce any Apple documents it has found on the devices or its systems.

RFP 2 seeks documents that refer to or show the transfer or use of the confidential documents or information Apple's former employees retained.  (Dkt. 27-19 at RFP 2.)  This is critical evidence.  But Rivos agreed only to produce its "policies prohibiting the use of third party confidential information."  This is not what the RFP seeks.  Nor has Rivos even produced the policies.

RFP 5 (devices in Rivos' possession or control used to store Apple's confidential documents), 10 (documents sufficient to identify all Apple confidential information ever stored on a Rivos device), and 18 (communications between Rivos employees regarding Apple's SoCs) all raise the same issues.  Rivos agreed to produce these after Apple produced forensic information, which it has done.  (Ex. E at 6, 9, 13-14).  Rivos must respond, and not just as to documents Apple identified.

---

[1] Apple offered on July 28 to produce full forensic images of the Apple-issued devices returned by *all* the former employees — the gold standard for "forensic information."  But Rivos rejected this and never identified what it actually wanted until after extensive email correspondence and a telephonic meet and confer, when it finally asked for file listing reports.  Apple has provided these for all the documents it is aware of.  The delay alleged by Rivos was one of its own making.

Honorable Nathanael Cousins
November 15, 2022

**Communications with Apple Employees Prior to Joining Rivos (ROG 11; RFPs 11, 15, 17):**
These requests seek communications between Rivos and former Apple employees before they
joined Rivos (ROG 11, RFPs 11, 15), and documents relating to Rivos' targeting of Apple
employees (RFP 17).  (Ex. C at 11; Ex. E at 9, 11-12.)  Rivos knows Apple narrowed these to
communications relating to Apple information or the employees' departure from Apple, and
agreed to exclude public information or private information, such as work visas.  But Rivos refuses
to produce anything beyond communications including Apple's confidential information or
"employee offboarding."  That is not sufficient.  Rivos should produce all communications it had
with Apple's former employees concerning their departure from Apple.  These are relevant to
show, for example, whether Rivos approached Apple's employees, how Rivos described itself as
a company and the job the employee would be doing, and what else was said about Apple.  Rivos
also placed these communications directly at issue through Mr. Kumar's declaration, which states
Rivos discusses the departure procedures candidates should follow, provides recommendations for
returning work devices and removing personal information, and even advises employees what to
say when they leave.  (*See* Dkt. 40-1 ¶¶ 4-9.)  Rivos cannot block discovery of these issues now.

Rivos claims the requests violate public policy favoring employee mobility, and suggests Apple
might harass its current or former employees who had contact with Rivos.  This is pure speculation.
Apple has agreed these communications can be designated AEO to ensure this cannot happen.
Rivos cannot refuse discovery by making vague and unsupported claims about public policy.

**Rivos' Position**

At the outset of this case, Apple propounded vague and overbroad discovery seeking Apple's
"confidential information."  As Rivos has consistently represented, Rivos is willing to search for
Apple confidential information on its systems and devices, but it must *first know what to look for*.
The Court understood this gating issue and ordered Apple to produce the forensic evidence
supporting its claims on July 7, 2022.  Apple waited over two months to do so.[2]  Then, on
September 14, 2022 it produced a list of 1,071 pages of file names.  As Apple is well aware, Rivos
is in the process of searching its systems and devices for this information and will respond with
updated discovery responses (including regarding the four documents Dr. Kumar identified during
his deposition[3]) when it has done so.  Apple's motion is a retaliatory litigation tactic in response
to Rivos seeking a further particularized trade secret identification and has no basis in fact or law.

---

[2]  Apple notes that it offered to produce the *entire* forensic images of the former Apple employees'
Apple laptops.  However, as Rivos explained during meet and confer discussions, such a
production would do nothing to assist Rivos in identifying the specific Apple confidential
information it should be searching for on its systems.  Apple's attempt to blame Rivos for ***Apple's***
delay in producing ***Apple's*** forensic information is baseless.

[3] Apple badly misrepresents Dr. Kumar's deposition testimony.  Dr. Kumar did not state, as Apple
claims above, that Rivos had located at least four files with Apple confidential information on its
systems.  Rather, Dr. Kumar stated that Rivos' counsel had identified four files for further
investigation and that he was not aware of Apple information on Rivos' systems.  Tr. at 154:2-5.

Honorable Nathanael Cousins
November 15, 2022

**Requests Concerning Apple Confidential Information at Rivos (ROGs 1-4, 6; RFPs 1, 2, 4, 5, 10, 18):**  Rivos has provided responses to ROGs 1, 2, 4, 6, and RFPs 1, 2, 4-5, 10 and 18.  For example, although Rivos objected to ROG 1 as premature because Apple had yet to define its "confidential information," Rivos disclosed that, after an internal investigation, it had "no knowledge of any downloading, transfer, or retention of any Apple confidential information relating to SoCs or SoC components on any Rivos-issued devices or Rivos systems[.]" *Id.* at 6. Rivos provided similar responses to ROG 2 (requesting information about "whether and how" Apple information has been transferred to or used by Rivos), and ROG 4 (requesting an identification of "all Persons who accessed or viewed any Apple confidential documents").  In each case, Rivos disclosed that, after conducting an internal investigation, it "has no knowledge" of Apple confidential information on Rivos-issued devices or systems.  *See, e.g.*, Response to RFP 1 ("Following a reasonable and good faith investigation, no such documents exist on Rivos' systems or Rivos-issued devices.").[4]

Apple now complains that Rivos must search ***beyond*** its Rivos-issued devices or systems.  But the Court has already considered, and rejected, that very argument.  In connection with its motion for expedited discovery with respect to these very same requests, Apple requested that Rivos search all devices and accounts identified in the Roffman declaration, which included the personal devices of Rivos employees.  The Court denied such requests as "overly broad and intrusive."  Dkt. 73. The Court further found that "Apple has not established that Rivos has possession, custody, or control over all these devices and accounts, or that they are reasonably likely to house relevant information."  Nothing has changed.  *Id.*  Rivos has searched, and will continue to search, the systems and devices within its possession, custody, or control for any Apple confidential information, but it remains black letter law that one only has possession, custody, or control of materials that it has a "legal right" to obtain.  *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

While Apple's motion purports to take issue with the timing of Rivos' responses, Rivos' search has been hampered by Apple's unwarranted and unexplained delay in providing Rivos with information about the Apple confidential information it believes was taken.  Rivos raised this issue when Apple first propounded its requests for this information.  Eventually, the Court was forced to weigh in and ordered that Apple must produce "forensic information related to former Apple employees now working at Rivos," stating that "***[o]nce Apple produces this information***, Rivos must search for and sequester information within its possession, custody, and control."  Dkt. 73 at 3 (emphasis added).  Assuming Apple complied with its pre-litigation diligence obligations, Apple necessarily had this information available to it when it filed its complaint.  Yet Apple waited over two months to provide ***any*** information responsive to the Court's order.[5]  Since Apple's recent

---

[4]  Having no knowledge of such documents on its systems or devices, Rivos' agreement to produce policies prohibiting the use of third party confidential information in response to RFP 2 is sufficient.  Rivos has begun production of those policies.

[5]  The information Apple provided encompasses just the individual defendants and two additional Rivos employees (not all former Apple employees now working at Rivos, as ordered).

Honorable Nathanael Cousins
November 15, 2022

production of this information, Rivos has undertaken to further investigate based on information within its possession, custody, or control.  That investigation remains ongoing due to the enormous scope of information that Apple is claiming as "confidential information."  Once that investigation is complete, Rivos will update its discovery responses as appropriate.   !

**Communications with Employees Prior to Joining Rivos (ROG 11; RFPs 11, 15, and 17):**
Apple submitted a series of ROGs and RFPs requesting "any Communications . . . with any former Apple employee" before the employee started working at Rivos (ROG 11 and RFPs 11 and 15). Apple also requested "[a]ll documents relating to [Rivos'] attempt to hire Apple employees to work for Rivos[.]" (RFP 17).  Notably, these requests are *not* limited to communications regarding Apple confidential or trade secret information, but rather *any* communications with *any* current or former Apple employee regarding potential employment, employee onboarding, or even personal issues such as work visa requirements.  Rivos objected on the grounds of relevance, and on the grounds that these requests are harassment "in violation of California's public policy favoring employee mobility."  Following meet and confer efforts, Rivos agreed to produce communications related to employee offboarding (including the departure procedures Apple argues Dr. Kumar "placed . . . directly at issue" in his June 3, 2022 Declaration) or Apple confidential information. Apple agreed to exclude publicly disclosed Apple information or those that raise "legitimate privacy concerns", but continued to insist on production of *all* recruitment communications.

California has a strong public policy promoting employee mobility, which does not permit the inference that trade secret theft is an inevitable result of hiring a competitor's employees.  *See* Cal. Bus. & Prof. Code § 16600; *see also Versa Prod., Inc. v. Stitch Indus., Inc.*, 2014 WL 12569458, at \*7 (C.D. Cal. July 2, 2014) (finding public interest in "promoting employee mobility" and "in favor of open competition" outweighed interest in protecting trade secrets and enforcing contracts). Apple has not alleged that any of the former Apple employees now at Rivos breached their employment agreements with Apple by wrongfully soliciting other Apple employees, nor has Apple asserted any claims against Rivos for wrongfully soliciting employees.  Whether Rivos recruited former Apple employees has no relevance to whether Rivos sought to obtain Apple confidential information.  And, even if Apple confidential information was disclosed during the recruitment process, it will be produced pursuant to the parties' meet and confer discussions. Requiring the production of any further information will have the effect of harassing former Apple employees who have been hired at Rivos, any current Apple employees who may have discussed an opportunity with Rivos but decided to remain at Apple (and who could now face repercussions from Apple as a result of the disclosure of their communications), and discouraging any other current Apple employees from joining Rivos.

Apple's motion to compel should be denied.

5

Honorable Nathanael Cousins
November 15, 2022

Respectfully submitted,

MORRISON & FOERSTER

/s/ *Bryan Wilson*

Bryan Wilson
*Attorneys for Plaintiff Apple Inc.*

QUINN EMMANUEL URQUHART &
SULLIVAN, LLP

/s/ *David Eiseman*

David Eiseman
*Attorneys for Defendants Rivos Inc., et al.*

**ATTESTATION OF CONCURRENCE**

I, Bryan Wilson, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from David Eiseman.

Dated:  November 15, 2022

/s/ *Bryan Wilson*
Bryan Wilson