MORRISON FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

November 15, 2022

Writer's Direct Contact
+1 (650) 813-5603
BWilson@mofo.com

By ECF

Honorable Nathanael Cousins
United States District Court
San Jose Courthouse, Courtroom 5 – 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *Apple Inc. v. Rivos Inc., et al*.
      No. 5:22-cv-2637-EJD

Dear Judge Cousins:

Apple brings this motion to compel Wen Shih-Chieh to produce documents responsive to Requests for Production 3, 4, and 7 and complete responses to Interrogatories 1 and 8. The parties have met and conferred multiple times, including most recently on October 25, 2022. The parties have narrowed the issues but request the Court's assistance on the remainder.

Honorable Nathanael Cousins
November 15, 2022

**<u>Apple's Position</u>**

As with its motion against Rivos, much of what Apple seeks to compel from Mr. Wen is information he promised the Court he would provide five months ago. In support of its motion for a TRO against Mr. Wen and for expedited discovery, Apple submitted forensic evidence showing that Mr. Wen retained an extensive amount of confidential Apple information when he left to join Rivos (*see* Dkt. 22-4 ¶¶ 14-24, 23-1). This included evidence that he loaded at least 392 GB of data to a separate hard drive just before leaving Apple, that he kept Apple confidential files in his personal iCloud Drive and Google Drive that he could access after leaving Apple, and that he deleted large amounts of data from his Apple-issued iMac. (Dkt. 22-4 ¶¶ 14-17, 22-24.) Apple's forensic expert attached a 23-page list of files that Mr. Wen copied to his hard drive as an appendix to his declaration. (*See id.* ¶¶ 30-31; Dkt. 22-5.)

Mr. Wen told the Court on June 3 that there was no need to compel expedited discovery against him because he would "provide written responses regarding his retention, use, or disclosure of Apple confidential information." (Dkt. 40 at 23.) Mr. Wen made this representation with respect to several of the specific requests at issue here. (*See id.*; Dkt. 27-20 (ROGs 1-4); Dkt. 27-21 (RFPs 1-4).) Over four months later, he still has not provided the promised information.

In addition, to avoid having a TRO entered against him, Mr. Wen agreed to the terms of a stipulated order immediately before the June 16 hearing on Apple's motions. Pursuant to that stipulated order, which was entered by the Court on June 21, Mr. Wen agreed and was ordered to "immediately return to Apple, through Apple's undersigned counsel, any Apple confidential information of which he is aware or becomes aware as being in his possession" including that stored on his devices. (Dkt. 55 ¶ 1.) On June 30, the Court entered a further stipulated order for a forensics protocol, which provided that, "[p]romptly following execution of this stipulation by the parties and FTI [the neutral forensic vendor], Mr. Wen shall arrange for FTI to be able to collect for forensic imaging and analysis" a list of identified devices and any other devices that "have ever been used to store or transmit Apple confidential information." (Dkt. 67 ¶ 2.) None of the documents have been returned to Apple. And, while Rivos' counsel apparently took possession of Mr. Wen's devices, Rivos disclosed on October 19 that it had never turned these devices over to FTI as Mr. Wen had been ordered to do. Rivos finally sent FTI the devices that same day. Because of that delay, and because Mr. Wen shamelessly stalled for three months, delaying weeks at a time in responding to Apple's attempts to negotiate search terms, FTI is only now just beginning the process of searching the devices.

Like Rivos, Mr. Wen never objected to any of the original discovery requests on the basis that Apple had not identified its trade secrets with particularity, so he waived any such objection. He also never moved for a protective order as to these requests and cannot do so four months later after promising to respond. In fact, Mr. Wen's counsel told the Court that: "*We're not asking this Court to stay discovery* while we file a motion to dismiss, which we will file; *we're not asking this Court to require an adequate trade secret identification*, which the Court may or may not choose to apply to this case." (Dkt. 68-1 at 39:21-24 (emphasis added).)

Honorable Nathanael Cousins
November 15, 2022

Apple asks the Court to compel Mr. Wen to respond to the initial set of requests as he promised months ago, and to additional requests served on July 7, which Mr. Wen has similarly avoided.

**Apple's Confidential Information and How It Was Used (ROG 1; RFP 3):** These two requests go to the core of the case. ROG 1 asks Mr. Wen to describe "all Apple confidential documents and information" (except certain personnel documents), that he "retained for any period of time after" his termination by Apple. (Dkt. 27-20, ROG 1.) Mr. Wen responded on June 15, just before stipulating to the forensics protocol, stating only that he would provide the computing device, iCloud account, and Google Drive identified by Apple's forensics expert. (Ex. A at 5.) Apple never agreed to permit Mr. Wen to avoid the interrogatory by doing so. And, as noted above, Mr. Wen has delayed for months on negotiating search terms for these devices and drives, blocking the investigation from progressing. He also stated in his response that his "investigation is ongoing." He must update his response with what he has learned in the past four months or whether his investigation is complete.

While Mr. Wen has repeatedly told Apple he has nothing to update in response to this interrogatory, that is not true. Defendants' forensic expert submitted a declaration on June 15, stating he had searched Mr. Wen's devices for the 23-page list of files submitted by Apple's forensic expert, Dan Roffman, identifying documents he believed Mr. Wen had copied. (Dkt. 46-6 ¶¶ 7-12; *see* Dkt. 22-5.) Defendants' expert only identified a small number of files found on Mr. Wen's devices that did not contain Apple information. But he acknowledged Wen's hard drive "contains multiple files identified in Appendix B to the Roffman declaration." (*Id.* ¶ 12.) Wen has *never* identified which of the other files listed in Appendix B he took, though he has had this information for months and easily could have done so. Mr. Wen should be ordered to identify any Apple confidential documents he retained, whether or not they are listed on Appendix B. Rule 33(d) does not apply. The burden is not the same for Apple and Wen. Only Wen knows what files he took and the locations where he stored them.

RFP 3 asks for documents and communications that Mr. Wen had with Rivos regarding Apple confidential documents information. (Ex. B at 7.) Mr. Wen responded by offering to produce only "Rivos' policies prohibiting the use of third party confidential information in connection with work at Rivos." (*Id.*) This is not what the request asks for. And neither Mr. Wen nor Rivos has even produced the policies four months later.

Mr. Wen also claims Apple's motion is premature because it did not provide him with the "forensic information" he was seeking until September 14. But this is not true. After turning down Apple's July 28 offer to provide the forensic images of Mr. Wen's Apple devices, and extensive delay, Defendants finally identified the forensic information they wanted as file listing reports. As discussed above, Apple provided the file listing report for Mr. Wen as an appendix to Mr. Roffman's report on May 20—*over five months ago*. (Dkt. 22-5.) Defendants' expert had already searched Mr. Wen's devices for the files on that list by June 15, the date of Mr. Wen's interrogatory response. He should have included this information then, and cannot claim that the interrogatory or this motion were "premature."

**Communications with Rivos (ROG 8; RFPs 4, 7):** ROG 8 asks Mr. Wen to describe any encrypted communications he had with Rivos prior to starting his employment. (Ex. C at 8.) RFP 7 similarly requests encrypted communications with Rivos. (Ex. D at 7-8.) During meet and confer, Apple narrowed these requests to communications regarding Apple confidential information and Mr. Wen's departure from Apple. Mr. Wen agrees only to include communications referencing Apple confidential information or "employee offboarding." He should produce all other communications with Rivos concerning Apple and his recruitment, which are relevant to multiple issues, such as whether Rivos first approached Mr. Wen, how Rivos described itself and Mr. Wen's future position, and what they each said about Apple. Moreover, Mr. Kumar, described many such communications in his declaration, putting them squarely at issue. (*See* Dkt. 40-1 ¶¶ 4-9 (Rivos discusses "departure procedures that the candidate should follow when leaving his or her former employer, including Apple," returning work devices and removing personal information, ensuring "no work documents have synced to [their] personal iCloud" accounts, and what to say when leaving Apple).) Rivos cannot now block Mr. Wen's communications with Rivos concerning his departure from Apple.

Mr. Wen claims that Apple's requests violate his privacy interests and public policy on employee mobility, but fails to explain how that is a proper basis for withholding discovery (even if his purely speculative allegations of any privacy or policy violation were true). The cases he cites are inapposite, relating only to an *ex parte* request for data to which the defendant had no opportunity to respond, *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078–79 (N.D. Cal. 2016), or not relating to discovery requests at all, *Versa Prod., Inc. v. Stitch Indus., Inc.*, No. CV 14-3855 FMO (CWX), 2014 WL 12569458, at *7 (C.D. Cal. July 2, 2014).

Like ROG 8, RFP 4 asks Mr. Wen to produce documents and communications regarding Rivos up to the date of his termination from Apple on August 6, 2021. (Ex. B at 7.) Apple agreed during meet and confer to exclude any documents that raise privacy concerns for Mr. Wen. But he still refuses to produce documents. He should be ordered to do so.

**Wen's Position**

Rather than defend its overbroad and improper discovery requests, Apple engages in unwarranted mudslinging. Apple's repeated suggestions that Mr. Wen has reneged on any promise to the Court or in any way delayed discovery is meritless. Instead, and despite telling the Court that expedited discovery was necessary, it is ***Apple*** that delayed months in providing Defendants with the forensic information required to conduct the very analyses Apple complains about here—notwithstanding the Court's order that Apple do so. Mr. Wen has satisfied his discovery obligations, and the Court should deny Apple's motion.

**Request Concerning Apple Information That Has Been Disclosed to Apple In the Form of A Forensic Image (ROG 1):** ROG 1 asks Mr. Wen to "[d]escribe all Apple confidential documents and information . . . retained for any period of time" after leaving Apple. Mr. Wen agreed to provide all personal devices and cloud storage accounts that may contain such information to FTI following the entry of an inspection protocol. Mr. Wen has done so, and

Honorable Nathanael Cousins
November 15, 2022

FTI's analysis is proceeding.[1]

While that should be the end of the inquiry, Apple now contends that the production of the promised forensic image is not sufficient. But this argument overlooks the fact that where "the answer to an interrogatory may be determined by examining . . . electronically stored information," the responding party may answer by providing "a reasonable opportunity to examine" the relevant records. Fed. R. Civ. P. 33(d). *See, e.g., Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, No. CV-19-04684-PHX-JJT, 2020 WL 4530478, at *4 (D. Ariz. Aug. 6, 2020) (finding use of Rule 33(d) appropriate where the "burden of ascertaining the answer to [the interrogatory] will be substantially the same for either party."); *McKie v. Sears Prot. Co.*, No. CV 10-1531-PK, 2011 WL 1670910, at *1 (D. Or. May 3, 2011) ("where one of the parties must undertake the task of compiling the information and the records presented are not voluminous or indecipherable, the interrogating party should bear the responsibility of compiling the information.") (internal quotation omitted).

**Request Concerning Communications With Rivos Regarding Apple Documents (RFP 3):**
RFP 3 requests that Mr. Wen produce "[a]ll documents and communications with Rivos regarding Apple's confidential documents and information[.]" Apple served this request ***before*** identifying its "confidential documents and information." Mr. Wen thus objected to RFP 3 as, inter alia, premature, vague, and overbroad, but agreed to produce "Rivos' policies prohibiting the use of third party confidential information in connection with work at Rivos."

On September 14, 2022, ***four months after*** serving this discovery request and ***two months after*** being ordered by this Court to produce the forensic information underlying its claim that Defendants took Apple confidential information, Apple provided a list of file names comprising 1,071 pages that it contends reflects the "confidential information" allegedly taken from it. Now in possession of this information, and as Mr. Wen's counsel has repeatedly confirmed to Apple's counsel, Mr. Wen is able to search for this new information. Apple's motion is, at best, premature.

**Requests Concerning Communications About Rivos or With Anyone From Rivos (ROG 8; RFPs 4, 7):** Apple's requests for communications between Mr. Wen and Rivos are overbroad, requesting not just emails and texts relevant to Apple confidential or trade secret information (which Mr. Wen agreed to provide) and communications related to employee offboarding policies and procedures (which Mr. Wen likewise agreed to provide), but communications about ***any topic*** between Mr. Wen and ***anyone*** from Rivos. RFP 4 requests all documents and communications "regarding Rivos from the date of [Mr. Wen's] first

---

[1] Apple faults Mr. Wen for "shamelessly" stalling FTI's review. In fact, Mr. Wen's devices and accounts were sequestered and imaged immediately following Apple's filing of this lawsuit, and those images were provided to FTI once the parties reached agreement on search terms. In addition, Apple itself delayed for weeks in proposing relevant file types, making it impossible for FTI to begin its analysis even after Mr. Wen's devices were delivered. Apple's attempt to suggest it has been prejudiced by the timing of FTI's review is baseless.

Honorable Nathanael Cousins
November 15, 2022

communication with Rivos and through August 6, 2021," including communications about "potential or actual employment by Rivos." RFP 7 and ROG 8 similarly request all encrypted communications between Mr. Wen and "anyone at Rivos," without any limitation regarding the date or subject matter of the communications.

This represents a significant intrusion into Mr. Wen's personal communications, most of which are likely unrelated to this case.

During meet and confer discussions, counsel for Mr. Wen noted that communications regarding Apple confidential information, to the extent there are any, will be produced in response to Apple's other requests, including RFP 3, above, and asked Apple's counsel to explain the relevance of more general conversations regarding Rivos. In addition, Rivos has agreed to produce communications related to employee offboarding (including the departure procedures Apple argues Dr. Kumar "placed . . . squarely at issue" in his June 3, 2022 Declaration). Apparently recognizing the breadth of these requests, Apple agreed to exclude communications regarding public Apple documents from RFP 7, and to exclude communications that raised "legitimate privacy concerns" in response to RFPs 4 and 7. Apple, however, continued to insist on the production of ***all*** other communications between Mr. Wen and anyone at Rivos regarding ***anything related to Apple***, including Mr. Wen's recruitment from Apple and his decision to leave Apple and join Rivos. Apple's counsel insisted these communications were relevant to whether Rivos was "targeting" Apple employees. Of course, California law permits Rivos to "target" whomever it wants for employment, and Apple has not alleged that Rivos used any Apple confidential information in connection with its recruitment. Similarly, Apple has not asserted any claim against Mr. Wen for wrongfully soliciting Apple employees on behalf of Rivos. Nor has Apple asserted a purported solicitation claim against Rivos for its alleged recruitment of Apple employees.

Courts have denied broad requests for discovery in trade secrets cases to protect the privacy interests of an individual accused of trade secret misappropriation. *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078–79 (N.D. Cal. 2016) (denying request for discovery of former employee's emails on privacy grounds in a trade secret case). Additionally, as discussed in the concurrently filed opposition to Apple's motion to compel further discovery responses from Rivos, such overbroad requests are likely to quell employee mobility, amounting to an anticompetitive tactic by Apple to prevent its employees from exploring new employment opportunities, in clear violation of California public policy. *See* Cal. Bus. & Prof. Code § 16600; *see also Versa Prod., Inc. v. Stitch Indus., Inc.*, 2014 WL 12569458, at *7 (C.D. Cal. July 2, 2014) (finding public interest in "promoting employee mobility" and "in favor of open competition" outweighed interest in protecting trade secrets and enforcing contracts). In short, Apple's request for "all communications" between Mr. Wen and anyone from Rivos is overly broad, and would subject Mr. Wen to a significant burden in collecting and producing private communications without regard to whether they contain, or are even likely to contain, information about Apple's alleged trade secrets or other confidential information.

Apple's motion to compel further responses should be denied.

5

Honorable Nathanael Cousins
November 15, 2022

Respectfully submitted,

| | |
|---|---|
| MORRISON & FOERSTER | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| */s/ Bryan Wilson* | */s/ David Eiseman* |
| Bryan Wilson<br>*Attorneys for Plaintiff Apple Inc.* | David Eiseman<br>*Attorneys for Defendants Rivos Inc., et al.* |

## ATTESTATION OF CONCURRENCE

I, Bryan Wilson, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from David Eiseman.

Dated: November 15, 2022         */s/ Bryan Wilson*
                                    Bryan Wilson