1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   David Eiseman (Bar No. 114758)
2   davideiseman@quinnemanuel.com
   Victoria B. Parker (Bar No. 290862)
3   vickiparker@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
5  Facsimile:    (415) 875-6700

6  Attorneys for Defendants Rivos Inc., Wen Shih-
   Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
7  Ye, Laurent Pinot, Prabhu Rajamani, and Kai
   Wang

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12

13 | APPLE INC.,                          | Case No. 5:22-CV-2637-EJD

              Plaintiff,              | **DEFENDANTS WEN SHIH-CHIEH, JIM
14                                           HARDAGE, WEIDONG YE, LAURENT
         vs.                              PINOT, PRABHU RAJAMANI AND KAI
15                                           WANG'S REPLY IN SUPPORT OF
   RIVOS INC., WEN SHIH-CHIEH a/k/a       THEIR MOTION TO DISMISS THE
16 RICKY WEN; BHASI KAITHAMANA; JIM       AMENDED COMPLAINT**
   HARDAGE; WEIDONG YE; LAURENT
17 PINOT;  PRABHU RAJAMANI; and KAI       Date:       March 2, 2023
   WANG                                   Time:       9:00 a.m.
18                                        Courtroom: 4
              Defendants.              Judge:     The Hon. Edward J. Davila
19
                                          Trial Date:  None Set
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION...................................................................................................1

II.     APPLE HAS FAILED TO STATE A DTSA CLAIM AGAINST THE
        INDIVIDUAL DEFENDANTS...............................................................................1

        A.      Apple Has Failed to Identify Any Misappropriated Trade Secrets .........................1

        B.      Apple Has Failed to Plead Actual Misappropriation .................................2

        C.      Apple Has Failed to Plead Threatened Misappropriation .......................................4

        D.      Apple Has Failed to Plead Harm............................................................5

        E.      Apple Has Failed To Plead DTSA Claim Against Any Individual Defendant .........5

                1.      Apple Has Not Stated a DTSA Claim Against Mr. Hardage ......................5

                2.      Apple Has Not Stated a DTSA Claim Against Mr. Pinot ...........................6

                3.      Apple Has Not Stated a DTSA Claim Against Mr. Rajamani.....................7

                4.      Apple Has Not Stated a DTSA Claim Against Mr. Wen ...........................8

                5.      Apple Has Not Stated a Misappropriation Claim Against Mr. Ye...............9

III.    APPLE HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM
        AGAINST THE INDIVIDUAL DEFENDANTS ....................................................10

        A.      Apple Has Failed to Plead a Breach of the IPA....................................................10

        B.      Apple Has Failed to Plead Harm............................................................11

        C.      Apple's Breach of Contract Claims Against the Individual Defendants Fail .........11

                1.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Hardage.................................................................................11

                2.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Pinot .....................................................................................12

                3.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Rajamani.................................................................................12

                4.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Wang .....................................................................................13

                5.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Wen .......................................................................................14

                6.      Apple Has Failed to State a Breach of Contract Claim Against Mr.
                        Ye..........................................................................................14

1

IV.      CONCLUSION............................................................................................................15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page</u>**

3

**Cases**

4

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ...........................................................................11, 15

5

*Angel Oak Mortgage Solutions LLC v. Mastronardi*,
   593 F. Supp. 3d 1234 (N.D. Ga. 2022)........................................................... 5, 6, 7, 8

6

7

*Artec Grp., Inc. v. Klimov*,
   2016 WL 8223346 (N.D. Cal. Dec. 22, 2016) ...........................................................11, 12

8

*Autodesk, Inc. v. Zwcad Software Co.*,
   2015 WL 2265479 (N.D. Cal. May 13, 2015) .............................................................1, 2

9

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
   2021 WL 1186335 (N.D. Cal. Mar. 1, 2021)...............................................................3, 4

10

*Cisco Sys., Inc. v. Chung*,
   2020 WL 4504409 (N.D. Cal. Aug. 5, 2020).............................................................. 11

11

12

*CleanFish, LLC v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) .............................................................. 5

13

*Comet Technologies USA v. Beuerman*,
   2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ............................................................. 3

14

*Cooper Interconnect, Inc. v. Glenair, Inc.*,
   2015 WL 13722129 (C.D. Cal. Feb. 3, 2015) .............................................................. 5

15

*DTC Energy Grp., Inc. v. Hirschfeld*,
   2018 WL 1138295 (D. Colo. Mar. 2, 2018) ...............................................................5, 9

16

17

*Fitspot Ventures, LLC v. Bier*,
   2015 WL 5145513 (C.D. Cal. Sept. 1, 2015)................................................................ 4

18

*Gopher Media LLC v. Mod. Doc Media*,
   2023 WL 350531 (S.D. Cal. Jan. 20, 2023)................................................................. 9

19

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016)....................................................................... 3

20

*In re Accuray, Inc. Shareholder Deriv. Litig.*,
   757 F. Supp. 2d 919 (N.D. Cal. 2010)......................................................................1, 15

21

*Kimera Labs Inc. v. Jayashankar*,
   2022 WL 11965058 (S.D. Cal. Oct. 20, 2022)............................................................. 4

22

23

*Langan v. United Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014)......................................................................... 10

24

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012).....................................................................11, 12

25

*M.A. Mobile LTD. v. Indian Inst. Of Tech. Kharagpur*,
   2010 WL 3490209 (N.D. Cal. Sept. 3, 2010)............................................................... 2

26

*Packaging Corp. of America, Inc. v. Croner*,
   419 F. Supp. 3d 1059 (N.D. Ill. 2020).....................................................................5, 7, 8

27

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ......................................................................1, 15

28

*Power Integrations, Inc. v. De Lara*
  2020 WL 1467406 (S.D. Cal. Mar. 26, 2020)..............................................................2, 4

*Prominence Advisors, Inc. v. Dalton*,
  2017 WL 6988661 (N.D. Ill. Dec. 18, 2017)..........................................................2, 4, 7

*Qpid.me, Inc. v. Schrom*,
  2013 WL 4833990 (S.D. Cal. Sept. 9, 2013)................................................................ 10

*Quintessential, LLC v. Quintessential Brands S.A.*,
  2022 WL 357502 (N.D. Cal. Feb. 7, 2022).................................................................8, 9

*Schneider v. California Dept. of Corrections*,
  151 F.3d 1194 (9th Cir. 1998)....................................................................................... 1

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  2011 WL 5244716 (N.D. Cal. Nov. 3, 2011)............................................................... 10

*Stemcell Techs. Canada Inc. v. StemeExpress, LLC*,
  2021 WL 5349106 (N.D. Cal. Nov. 17, 2021)........................................................13, 14

*WeRide Corp. v. Kun Huang*
  379 F. Supp. 3d 834, 844-46 (N.D. Cal. 2019).............................................................. 3

*Zurich Am. Life Ins. Co. v. Nagel*,
  538 F. Supp. 3d 396 (S.D.N.Y. 2021).........................................................................2, 6

*Zurich v. American Life Insurance Co.*,
  538 F. Supp. 3d 396 (S.D.N.Y. 2021)........................................................................... 6

**Statutory Authorities**

18 U.S.C. § 1836(b)(3)(A)(i)........................................................................................... 4

18 U.S.C. § 1839(6)(A)................................................................................................6, 8

## I.   <u>INTRODUCTION</u>

Apple's Second Amended Complaint ("SAC") fails to state a claim against the Individual Defendants. In its Opposition to the Individual Defendants' Motion to Dismiss (Dkt. 140; "Opp."), Apple relies extensively on allegations outside the SAC to bolster its inadequate pleading.[1]  In ruling on a motion to dismiss under Rule 12(b)(6), however, "the Court reviews the adequacy of Plaintiffs' claims asserted in the complaint, not the claims they assert in their brief."  *In re Accuray, Inc. Shareholder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010) (rejecting plaintiffs' "attempt to remedy their complaint by attaching declarations to their [motion to dismiss] opposition").  Even accepting Apple's allegations in its SAC as true, the most it has pled is that the Individual Defendants *properly* acquired information Apple considers confidential when working at Apple and *inadvertently* retained some of that information after leaving—but *not* that the Individual Defendants *ever* disclosed or used that information to benefit their new employer Rivos.  As a matter of law, those allegations do not state DTSA or breach of contract claims.  The Individual Defendants therefore respectfully request that the Court dismiss the claims against them with prejudice.

## II.   <u>APPLE HAS FAILED TO STATE A DTSA CLAIM AGAINST THE INDIVIDUAL DEFENDANTS</u>

### A.   Apple Has Failed to Identify Any Misappropriated Trade Secrets

Apple argues that since the parties have resolved their dispute over the sufficiency of Apple's trade secret disclosure, "[t]here should no longer be any issue over identification of trade secrets in the pleadings."  Opp. at 15.  This is incorrect, as the allegations in the SAC must be evaluated on their own merits—not on later developments in the litigation.  *See In re Accuray*, 757 F. Supp. 2d at 926.  Apple defends its sparse description of the trade secrets in the SAC by arguing that a plaintiff "need not spell out the details of the trade secret[.]"  Opp. at 16 *citing Autodesk, Inc. v. Zwcad Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015).  But in *Autodesk*, the plaintiff

---

[1]  For example, Apple attached a deposition transcript, (Dkt. 140-3), a transcript from a motion to compel hearing (Dkt. 140-2), and an affidavit describing recent discovery disputes (Dkt. 140-1, Wilson Decl.) to its Opposition, and discusses them at length. *See, e.g.*, Opp. at 5, 8-9, 12, 15-16, 23, 25.  None of these materials can be considered in ruling on the instant 12(b)(6) motion. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989–90 (S.D. Cal. 2012); *see also Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

described specific portions of source code in two releases of AutoCAD software that comprised its trade secrets, including the "portions of code that underlie the commands, interfaces and program files associated with" dozens of specific features that were used in a competitor's software program. *Autodesk, Inc.*, 2015 WL 2265479, at *5.  In contrast, here, Apple has only alleged generally that "confidential Apple source code" is at issue.  *See, e.g.*, SAC ¶¶ 7, 146, 149-50.  That is not enough.  Apple's reliance on *M.A. Mobile LTD. v. Indian Inst. Of Tech. Kharagpur*, 2010 WL 3490209 (N.D. Cal. Sept. 3, 2010) in defense of its trade secret description in the SAC is also misplaced.  In *M.A. Mobile*, the plaintiff produced source code containing the trade secret along with a working prototype.  *Id.* at *4.  Nothing alleged in the SAC rises to this level of detail.

### B.      Apple Has Failed to Plead Actual Misappropriation

In its SAC, Apple alleges that the Individual Defendants properly acquired trade secrets while working at Apple, and maintained possession of those trade secrets after starting work at Rivos.  *See* SAC ¶¶ 145-165.  At most, Apple's DTSA claim is premised on allegations that the Individual Defendants *retained* Apple files (*see* Opp. at 20-23)—not that they *disclosed* or *used* them.  Such allegations fail as a matter of law.  *See, e.g.*, *Power Integrations*, 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) (to state a DTSA claim, "a plaintiff must prove more than a defendant's mere possession of trade secrets"); *see also Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404–405 (S.D.N.Y. 2021) (dismissing a DTSA claim where the employee accused of misappropriation "was authorized to acquire this information as part of his job, so he did not acquire it by improper means."); *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017) (complaint did not state a claim for misappropriation against a former employee who had acquired trade secrets in the course of his work at the former employer and retained access to them after leaving).

In its Opposition, Apple asserts that courts in this District have found that the "type of conduct" alleged in the SAC constituted misappropriation.  Opp. at 23.  However, in each of these cases the departing employees *wrongfully* acquired trade secrets *and then took further steps* to either use the trade secrets or otherwise harm their former employer.  None of these cases support Apple's claim that retaining confidential files is *by itself* sufficient for liability under the DTSA.

In *Henry Schein, Inc. v. Cook*, a departing Henry Schein, Inc. ("HSI") employee downloaded customer and sales data, but also "attempted to divert" customers to her new employer, including by "visit[ing] the offices of certain HSI customers, delet[ing] the HSI product ordering icon from their computer systems and destroy[ing] HSI catalogues and business cards." 191 F. Supp. 3d 1072, 1075 (N.D. Cal. 2016). In contrast, here, no Individual Defendant has been accused of attempting to sabotage Apple's customers or otherwise prevent them from placing orders. In *Comet Technologies USA v. Beuerman*, the defendant downloaded "everything needed to produce one of Comet's newest and most valuable technologies," and was confronted about downloading those specific files during his exit interview. 2018 WL 1990226 at *3-4 (N.D. Cal. Mar. 15, 2018). During the exit interview, the employee denied having copies of the files, and also lied about the fact that he was leaving to work for a competitor. *Id.* at *4. Here the Individual Defendants have cooperated with the investigation into the alleged misappropriation. For example, both Mr. Wen and Mr. Pinot have surrendered the devices Apple identified as containing its files to a forensic examiner appointed by Apple. SAC ¶¶ 67, 98, 127.

Apple also cites *WeRide Corp. v. Kun Huang* as an example of where misappropriation was found for "this type of conduct." Opp. at 20. Not so. In *WeRide*, the plaintiff identified over 1,000 files that were downloaded and several hundred that were accessed **after** the departing employee started working for the defendant (the plaintiff's competitor). 379 F. Supp. 3d 834, 844-46 (N.D. Cal. 2019). Further evidence of misappropriation included the fact that the defendant placed a component "in the same location" as the plaintiff, indicating that the employee was using the claimed trade secrets at his new job. *Id.* at 850. Here, nothing in the SAC alleges that the Individual Defendants have accessed or used Apple trade secrets since leaving Apple.

Apple's reliance on *Carl Zeiss* is equally misplaced. In that case, the departing employee downloaded trade secrets and then "accessed numerous files" after starting at his new job. *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2021 WL 1186335, at *3 (N.D. Cal. Mar. 1, 2021). He also shared those files with others at his new employer, and used the files to develop and test a "crucial feature." *Id.* Here, in contrast, nothing in the SAC alleges that the Individual Defendants have used or shared Apple trade secrets with their Rivos colleagues. Contrary to Apple's assertions,

*Carl Zeiss* does not permit a claim for misappropriation to go forward merely by alleging that a departing employee is in possession of trade secrets.

### C.      Apple Has Failed to Plead Threatened Misappropriation

Apple attempts to address the deficiency in its DTSA claims by arguing that it can state a claim for misappropriation by alleging ***threatened*** misappropriation.  As a general matter, the DTSA does permit a court to enjoin "any actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A)(i).  But "a plaintiff must prove more than a defendant's mere possession of trade secrets" to state a DTSA claim.  *Power Integrations,* 2020 WL 1467406, at *19. Courts "cannot presume the transfer of trade secret information occurs simply because Defendants possess it[.]" *Kimera Labs Inc. v. Jayashankar*, 2022 WL 11965058, at *9 (S.D. Cal. Oct. 20, 2022).  Rather, the plaintiff "must satisfy its pleading burden by alleging *how* improper acquisition, disclosure, or use occurred or is threatened by *each* Defendant." *Id*.  The fact that a former employee is in possession of trade secrets, without more, does not state a claim for misappropriation.  *Prominence Advisors, Inc.*, 2017 WL 6988661, at *4.

Apple cites to *Fitspot Ventures, LLC v. Bier*, 2015 WL 5145513, at *1 (C.D. Cal. Sept. 1, 2015) to support its theory that it can bring a claim for ***threatened*** misappropriation against the Individual Defendants.  Opp. at 21.  In *Fitspot*, the departing employee not only downloaded trade secrets, but also "intentionally disabled communication" between two key systems so that the plaintiff was "completely cut off from the activities of its customers and therefore deprived of its ability to manage its business." 2015 WL 5145513, at *2.  In evaluating the element of "threatened use or disclosure," the court in *Fitspot* noted that the departing employee had already "chang[ed] the passwords to prevent Plaintiff access to source code and customer information[.]" *Id*. at *3. This, combined with the departing employee's retention of source code and customer lists, led the court to conclude that there was "actual or threatened misappropriation." *Id*.

Here, the SAC does not allege that any Individual Defendant has done anything beyond simply retaining Apple files inadvertently or as part of their employment at Apple.  There is no allegation of sabotage, changing passwords, copying, or any bad act beyond simply retaining files. As the Individual Defendants' motion explained, the inadvertent retention of a trade secret after

leaving a job, by itself, is insufficient to state a DTSA claim.  *See* Dkt. 100 ("Mot.") at 11; *see also Angel Oak Mortgage Solutions LLC v. Mastronardi*, 593 F. Supp. 3d 1234 (N.D. Ga. 2022); *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059 (N.D. Ill. 2020).

### D.   Apple Has Failed to Plead Harm

Apple has also failed to allege the requisite harm to support its DTSA claim.  Instead of articulating specific facts "to support an inference of harm," Apple falls back on its inevitable disclosure theory, which courts have roundly rejected.  *See Cooper Interconnect, Inc. v. Glenair, Inc.*, 2015 WL 13722129, at *4 (C.D. Cal. Feb. 3, 2015).  The facts alleged in the SAC demonstrate at most that the Individual Defendants inadvertently retained confidential files but have now cooperated to sequester and return those files to Apple.  SAC ¶¶ 67, 98, 127.  This does not support Apple's claim of harm.  *See DTC Energy Grp., Inc. v. Hirschfeld*, 2018 WL 1138295, at *7 (D. Colo. Mar. 2, 2018), *aff'd,* 912 F.3d 1263 (10th Cir. 2018) (finding no risk of harm where a departing employee downloaded information, but later surrendered the data to a forensic examiner).

### E.   Apple Has Failed To Plead DTSA Claim Against Any Individual Defendant

#### 1.   Apple Has Not Stated a DTSA Claim Against Mr. Hardage

Apple has failed to state a DTSA claim against Mr. Hardage because it has not identified a trade secret that Mr. Hardage misappropriated.  Apple alleges only that Mr. Hardage retained "nine directories named with specific confidential SoC project names" and a "Home" directory.  SAC ¶ 74.  Apple's forensic investigator, Daniel Roffman, asserted that "it is likely" that Mr. Hardage transferred a "folder containing Apple confidential files" from his Apple-issued computer to a USB drive, but stopped short of identifying the specific files or information at issue.  *See* Dkt. 22-4 ¶¶ 35-36.[2]  This bare description does not identify a protectable trade secret.  *See CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020).

Apple's DTSA claim against Mr. Hardage also fails because Apple has not alleged improper acquisition of any trade secret.  Apple's allegations against Mr. Hardage center on him accessing and copying Apple files in the course of his work. SAC ¶¶ 15, 69-76, 139, and 155. Simply put,

---

[2]  The Roffman Declaration is incorporated by reference into the SAC.  *See, e.g.*, SAC ¶¶ 140, 150.

Apple does not allege that Mr. Hardage improperly acquired trade secrets—only that he properly acquired the information while working at Apple, then retained some information after leaving the company. This is insufficient to support its claim. Mot. at 11; *see Zurich*, 538 F. Supp. at 404–405 (dismissing a DTSA claim where the employee "was authorized to acquire [ ] information as part of his job, so he did not acquire it by improper means."). Apple has not alleged that Mr. Hardage has either used or disclosed any Apple trade secret, and has similarly failed to allege any specific harm stemming from Mr. Hardage allegedly downloading (but not using or disclosing) Apple files. *See generally* SAC ¶¶ 69-76. As a result, its claim against Mr. Hardage amounts only to an allegation that he **retained** Apple files after leaving his job. This is not sufficient to state a claim under the DTSA. *See Angel Oak*, 593 F. Supp. 3d at 1245.

### 2. Apple Has Not Stated a DTSA Claim Against Mr. Pinot

Apple has failed to state a DTSA claim against Mr. Pinot because Apple has not alleged that he acquired any Apple trade secrets through improper means. The DTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secret, or espionage[.]" 18 U.S.C. § 1839(6)(A). Here, the SAC alleges only that Mr. Pinot "began weekly Time Machine backups [ ] in December 2020," which continued through August 2021 when he resigned from Apple. SAC ¶¶ 95, 97. These backups were made automatically and on an ongoing basis while Mr. Pinot was an Apple employee, beginning six months before he spoke with Rivos (and before Rivos was founded). SAC ¶¶ 90, 95.

Apple argues that Mr. Pinot's automated backups were misappropriation because "[h]e knew he was not authorized to take the information outside of Apple but did it anyway." Opp. at 23. This is not the standard the DTSA requires for misappropriation. For example, in *Zurich v. American Life Insurance Co. v. Nagel*, an employee e-mailed himself copies of documents to use while working at home during the pandemic. 538 F. Supp. 3d 396 (S.D.N.Y. 2021). He retained copies of these documents after leaving his job. *Id.* at 406. The court found that this did not qualify as "improper acquisition" of trade secrets under the DTSA, since merely keeping trade secrets, "without threatening to use or disclose them, does not give rise to a DTSA claim." *Id.* Courts have repeatedly found that an employee who acquires a trade secret in the course of their employment

does not commit "misappropriation" under the DTSA if they inadvertently retain the information after leaving their job.  *See, e.g.*, *Prominence Advisors, Inc.*, 2017 WL 6988661, at *4 (finding that the complaint did not state a claim for misappropriation since the defendant's acquisition of files in a cloud account and on an external hard drive were both made during his prior employment, in the course of carrying out his duties); *see also Angel Oak*, 593 F. Supp. 3d at 1245; *Packaging Corp.*, 419 F. Supp. 3d at 1066.  Apple has failed to plead that Mr. Pinot improperly acquired any trade secrets, and does not allege that he has either used or disclosed any trade secrets.

Apple has also failed to identify the specific trade secrets taken by Mr. Pinot, alleging only generally that he retained "highly confidential technical specifications and other details about Apple's SoC physical design."  SAC ¶ 96.  Apple has similarly failed to allege any harm or even threatened harm because Apple acknowledges that Mr. Pinot's Time Capsule is no longer in his possession and that an image has been produced to a neutral forensic examiner.  SAC ¶ 98.

### 3.     Apple Has Not Stated a DTSA Claim Against Mr. Rajamani

Apple has failed to state a DTSA claim against Mr. Rajamani because the SAC does not identify which trade secrets, if any, he retained; it does not allege improper acquisition, use or disclosure of any trade secret; and fails to identify harm.   Apple alleges that Mr. Rajamani downloaded and transferred unspecified "files on Apple's proprietary and trade secret designs" and "retained Apple confidential information on his personal iCloud Drive when it was disconnected from his Apple-issued laptop[.]" SAC ¶¶ 103, 105.  Apple had a forensic investigator review Mr. Rajamani's Apple-issued laptop, but the forensic investigator was only able to confirm that Mr. Rajamani "wirelessly transfer[red] four Python files to himself" before resigning.  Dkt. 22-4 ¶ 28.  The forensic examiner offered no opinions about whether the Python files contained Apple information or had filenames suggesting that they related to Apple projects. Dkt. 22-4 ¶ 28.  Apple's bare allegation that Mr. Rajamani transferred "files on Apple's proprietary and trade secret designs" is insufficient to satisfy the first element of a DTSA claim.

In addition to Apple's failure to identify any specific trade secrets, Apple has failed to allege that Mr. Rajamani improperly acquired, used, or disclosed any such trade secrets.  Nothing in the SAC suggests that Mr. Rajamani's actions rose to the level of "theft, bribery, misrepresentation,

breach or inducement of a breach of a duty to maintain secrecy, or espionage."  18 U.S.C. § 1839(6)(A).  Even when all inferences are drawn in Apple's favor, the SAC only describes Mr. Rajamani retaining four Python files and other unspecified files in an iCloud Drive after leaving Apple.  SAC ¶¶ 103, 105 and Dkt. 22-4 ¶ 28.  This is not sufficient to establish misappropriation. *See Quintessential, LLC v. Quintessential Brands S.A.*, 2022 WL 357502, at *1 (N.D. Cal. Feb. 7, 2022) (the inadvertent acquisition of trade secrets is not sufficient to state a DTSA claim).  For the same reason, Apple's perfunctory allegation that it has been harmed by Mr. Rajamani retaining— but not using or disclosing—unspecified Apple files fails to meet the required standard for pleading harm.

### 4.    Apple Has Not Stated a DTSA Claim Against Mr. Wen

Plaintiff's DTSA claim against Mr. Wen should be dismissed.  Apple has failed to allege that Mr. Wen improperly acquired any Apple trade secrets.  The DTSA prohibits the acquisition of a trade secret by "improper means," which is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage[.]"  18 U.S.C. § 1839(6)(A).  The SAC does not allege that Mr. Wen used such improper means to  acquire any Apple files.  *See Angel Oak*, 593 F. Supp. 3d at 1245; *Packaging Corp.*, 419 F. Supp. 3d at 1066 (dismissing DTSA claim for failure to allege misappropriation where "the complaint itself makes plain that rather than acquiring the alleged trade secrets by improper means, [defendant] acquired them through the normal course of his employment").  Nor does the SAC allege that Mr. Wen disclosed or used any Apple trade secrets.  Mot. at 10-12.  Rather, the SAC suggests that Mr. Wen inadvertently retained Apple work files while attempting to copy personal files off his Apple-issued laptop.

Apple has not stated a DTSA claim against Mr. Wen under a theory that there is a ***threat*** Mr. Wen will disclose or use Apple trade secrets.  The SAC acknowledges that Mr. Wen "has agreed to return any Apple confidential information in his possession, to make available for forensic inspection any devices that were used to store or transmit Apple information, and to refrain from making use of Apple confidential information."  SAC ¶ 68.  Mr. Wen has already surrendered his hard drive to the neutral forensics vendor that Apple appointed.  *Id.* ¶¶ 67, 127, 134.  In light of

1   these safeguards, there is no threat that Mr. Wen will disclose or use any Apple trade secrets.  For

2   the same reason, Apple has not alleged that it has suffered any specific harm given that Mr. Wen's

3   devices have already been sequestered.  *See DTC Energy Grp., Inc.*, 2018 WL 1138295, at *7.

4             5.        Apple Has Not Stated a Misappropriation Claim Against Mr. Ye

5             Apple's allegations against Mr. Ye span just a handful of paragraphs in the SAC (SAC ¶¶ 7,

6   16, 77-86).  The bulk of those allegations describe undisputedly lawful activity, including working

7   at Apple (SAC ¶¶ 77-78) and later interviewing for and accepting a job at Rivos (SAC ¶¶ 79-82).

8   The only substantive allegation against Mr. Ye is that he "saved multiple highly-confidential source

9   code repositories for unannounced, in development projects in his iCloud drive" which he allegedly

10  continues to have access to.  SAC ¶¶ 86 and 157.  Apple asserts in the SAC that "[t]he documents

11  that have been improperly retained are described in more detail in the declarations" filed in support

12  of Apple's TRO motion at Dkts. 22-3, 22-4, and 22-5.  SAC ¶ 140.  However, none of these

13  declarations mentions Mr. Ye.  For example, Dkt. 22-3, which supposedly "identif[ies] specific files

14  and folders that were taken" does not list a single file allegedly taken by Mr. Ye.

15            The DTSA claim against Mr. Ye is insufficient since it fails to identify any particular trade

16  secret that Mr. Ye allegedly misappropriated.  Simply alleging that Mr. Ye took "source code" is

17  not enough.  *See Gopher Media LLC v. Mod. Doc Media*, 2023 WL 350531, at *9 (S.D. Cal. Jan.

18  20, 2023) (general allegations "set out in broad, categorical terms" not sufficient to plead trade

19  secrets).  Apple also fails to allege that Mr. Ye improperly acquired the source code.  The SAC

20  acknowledges that Mr. Ye was authorized to access SoC source code during his employment at

21  Apple.  SAC ¶ 39.  The only plausible allegation of wrongdoing is that Mr. Ye "continues to have

22  access" to a folder containing Apple source code on his personal iCloud account that Apple

23  ***encouraged*** him to use in connection with his work at Apple.  SAC ¶ 86.  In short, Apple has not

24  established that Mr. Ye improperly acquired any of its trade secrets, and has similarly failed to allege

25  disclosure, use, or harm.  Apple's allegations that Mr. Ye retained access to an iCloud folder, without

26  more, are insufficient to state a DTSA claim against him.  *See Quintessential,* 2022 WL 357502, at

27  *1 (the inadvertent acquisition of trade secrets is not sufficient to state a DTSA claim).

28

### III.   APPLE HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

Apple has not pleaded facts sufficient to state a claim against the Individual Defendants for breach of their Apple Intellectual Property Agreements ("IPA").[3]  At minimum, the SAC lacks specific allegations of breach and harm attributable to each Individual Defendant.  For many of the Individual Defendants, Apple has not even identified which confidential files were allegedly taken beyond the barest description.  This is insufficient to support its claim for breach.

### A.   Apple Has Failed to Plead a Breach of the IPA

Apple has failed to plead facts establishing a breach of the IPA by the Individual Defendants. Apple's SAC alleges that files were retained by certain former employees, but fails to describe the files taken by most of the Individual Defendants with any specificity, and fails to plead facts demonstrating that the files contain proprietary or confidential information.  In a claim for breach of a confidentiality agreement, the plaintiff must plead facts regarding "what information was allegedly disclosed or how it was disclosed." *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011).

Apple asserts that courts do not impose "a strict requirement" to identify every item of confidential information taken to support a claim for breach of contract (Opp. at 12), relying on *Qpid.me, Inc. v. Schrom*, 2013 WL 4833990 (S.D. Cal. Sept. 9, 2013).  However, in *Qpid.me* the employee sued for breach was accused not just of taking confidential information, but also changing passwords that blocked company access to key systems and failing to perform months of work. 2013 WL 4833990, at *1-3 and 6-7. In light of the extensive breaches of the employment agreement, the court did not require the plaintiff to identify all of the confidential information taken.  Here, the *only* breach alleged is retaining confidential information—yet for most Individual Defendants, Apple has provided only the barest description of what information was retained. *See* Section III.C,

---

[3]  Apple continues to conflate the IPA with the Checklist, contending that the Checklist "reminded the Individual Defendants of their obligations under the IPA and ratified them." Opp. at 13 n.4. To the extent Apple alleges the Individual Defendants' conduct violated policies in a document other than the IPA (such as the Checklist), it must present the material terms of those contracts in a separate claim. *See Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014). Having failed to do so, any suggestion that an Individual Defendant "breached" the Checklist fails.

*infra.*  Apple's failure to identify the confidential information allegedly retained by the Individual Defendants dooms its claim for breach of the IPA.  *See Artec Grp., Inc. v. Klimov*, 2016 WL 8223346, at *4 (N.D. Cal. Dec. 22, 2016) (dismissing claim for breach of a non-disclosure agreement for failing to "identify with specificity what confidential information is at issue.").

### B.   Apple Has Failed to Plead Harm

Apple has also failed to plead the harm required to state a claim for breach of the IPA.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012).  Apple has not identified any harm beyond its conclusory allegation that "has suffered and continues to suffer monetary and non-monetary injury and harm" as a result of the Individual Defendants' breach.  SAC ¶ 143.  This is insufficient to sustain its claim for breach of the IPA.  *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").  Apple's SAC speculates about possible future harm, such as its belief that "[f]urther discovery will likely show that Apple's trade secret information has been improperly disclosed . . . and used[.]" SAC ¶ 159.  But pleading "speculative harm, or threat of future harm" is insufficient.  *Low*, 900 F. Supp. at 1028; *see also Lee v. Lee*, 2022 WL 18278433, at *11 (C.D. Cal. Dec. 1, 2022) (granting motion to dismiss contract claim where only allegation of damages was that the "disclosure of confidential information" caused damages in "an amount to be determined at trial").[4]

### C.   Apple's Breach of Contract Claims Against the Individual Defendants Fail

####    1.   Apple Has Failed to State a Breach of Contract Claim Against Mr. Hardage

Apple's assertions against Mr. Hardage for breach of the IPA (SAC ¶¶ 15, 69-76, 139 and 155) center on him allegedly "remov[ing] approximately 37 gigabytes of data containing Apple confidential files" in his last days working at Apple.  SAC ¶ 73.  However, the only confidential information that Apple alleges Mr. Hardage improperly retained was "nine directories named with specific confidential SoC project names" and a "Home" directory.  *Id.* ¶ 74.  Apple's forensic

---

[4]  Although Apple describes the level of detail necessary to allege harm as "not demanding," citing *Cisco Sys., Inc. v. Chung*, 2020 WL 4504409, at *10 (N.D. Cal. Aug. 5, 2020), the *Cisco* court was analyzing a trade secret misappropriation claim, not a breach of contract claim.

investigator stated that "it is likely" that Mr. Hardage transferred a "folder containing Apple confidential files" from his Apple-issued computer to a USB drive, but stopped short of identifying specific files or confidential information allegedly taken. *See* Dkt. 22-4 ¶¶ 35-36. Apple's claim for breach of the IPA against Mr. Hardage fails because it has not identified the confidential information retained with any specificity, and has failed to allege harm. *See Artec Grp.,* 2016 WL 8223346, at *4 and *Lee*, 2022 WL 18278433, at *11.

### 2. Apple Has Failed to State a Breach of Contract Claim Against Mr. Pinot

Apple's primary allegation against Mr. Pinot is that he began making weekly, automated backups of his Apple laptop in December 2020. SAC ¶¶ 95-97. By the time Mr. Pinot resigned from Apple in August 2021, 55 backups had been created. *Id.* Apple alleges that "over a terabyte" of information is stored in these backups (*Id.* ¶ 5), but otherwise provides little information about what confidential information Mr. Pinot allegedly retained in violation of the IPA. Apple alleges generally that Mr. Pinot took "files pertaining to unreleased Apple SoC projects" and "technical specifications . . . about Apple's SoC physical design." *Id.* ¶ 96. Apple's forensic investigator examined Mr. Pinot's Apple-issued laptop, but concluded only that Mr. Pinot retained unspecified Apple confidential files. Dkt. 22-4 ¶ 27. This is insufficient to support a claim for breach of a confidentiality agreement. *See Artec Grp.*, 2016 WL 8223346 at *4 (dismissing claim for breach of an NDA for failing to "identify with specificity what confidential information is at issue."). Apple has also failed to allege any harm stemming from Mr. Pinot's retention of Time Capsule backups after leaving Apple. The Time Capsule is no longer in Mr. Pinot's possession, and a forensic image has been produced to a neutral examiner for analysis. SAC ¶ 98. Without a colorable allegation of harm, Apple's claim for breach of the IPA against Mr. Pinot fails. *See Low*, 900 F. Supp. 2d at 1028.

### 3. Apple Has Failed to State a Breach of Contract Claim Against Mr. Rajamani

The SAC's allegations against Mr. Rajamani (SAC ¶¶ 18, 99-106, 139, 156) center on the accusation that he "retained Apple confidential information on his personal iCloud Drive when it was disconnected from his Apple-issued laptop" and transferred "files on Apple's proprietary and

trade secret designs[.]" SAC ¶¶ 103, 105.[5] Apple had a forensic investigator review Mr. Rajamani's laptop, but the forensic investigator was only able to confirm that Mr. Rajamani "wirelessly transfer[red] four Python files to himself" before resigning.   Dkt. 22-4 ¶ 28.   The forensic investigator admitted that he had "limited visibility into the potential data that was transferred" and offered no opinions about whether the Python files related to Apple projects. *Id.*

"To raise a right to relief above the speculative level" in a claim for breach of a confidentiality agreement, the plaintiff "must provide greater detail about the specific confidential information" that was allegedly misused. *Stemcell Techs. Canada Inc. v. StemeExpress, LLC,* 2021 WL 5349106, at *1 (N.D. Cal. Nov. 17, 2021) (granting motion to dismiss claim for breach of confidentiality agreement where the confidential information was described in an "over-inclusive list").   Simply alleging generally that Mr. Rajamani transferred four files written in Python language does not establish that Mr. Rajamani improperly retained Apple confidential information.   And Apple's general allegation that Mr. Rajamani retained "Apple confidential files in his iCloud Drive" does not establish either breach or harm.   Apple's claim for breach of the IPA against Mr. Rajamani must be dismissed.

### 4.   Apple Has Failed to State a Breach of Contract Claim Against Mr. Wang

Apple's only claim against Mr. Wang is for breach of the IPA, and its allegations cover just a few paragraphs.   SAC ¶¶ 5, 19, 107-113, 132, 139.   Apple alleges that "Mr. Wang's personal iCloud Drive still contained Apple files at the time of his termination," including "screenshots with excerpts of a GPU component microarchitecture specification[.]" SAC ¶ 112. Months later, Apple sent Mr. Wang a letter "asking for return of any Apple information in his possession and confirmation that he was no longer accessing or using the information." *Id.* ¶ 113.   Mr. Wang responded by explaining that his iCloud drive synced with folders on his Apple laptop, resulting in

---

[5]   Apple's remaining allegations are that Mr. Rajamani unsuccessfully attempted to sign out of accounts and delete iMessages before returning his Apple-issued laptop, and that he cleared his browser history.   SAC ¶¶ 103-04. As demonstrated in the Motion to Dismiss (Dkt. 100 at 22-23), the IPA does not prohibit employees from deleting browser history, messages, or login information on their Apple-issued laptops.   As a result, none of the allegations about Mr. Rajamani deleting, or attempting to delete, such information before returning his laptop are sufficient to plead a breach of the IPA.

some Apple files migrating to his personal laptop, and said he wanted to resolve the dispute "in a constructive manner." *Id.*   After retaining counsel, Mr. Wang requested that Apple direct communications to counsel. *Id.* Apple faults Mr. Wang for this normal request, and said that it "ha[d] no alternative but to name him as an Individual Defendant in this case." SAC ¶ 107.

Apple's claim against Mr. Wang fails because it has not identified any specific Apple confidential information Mr. Wang wrongfully retained. Its conclusory allegation that Mr. Wang is in possession of "screenshots with excerpts of a GPU component" and other unspecified Apple files is insufficient to sustain its claim for breach of the IPA. *See Stemcell Techs. Canada Inc.*, 2021 WL 5349106, at *1 (N.D. Cal. Nov. 17, 2021) ("greater detail about the specific confidential information" needed to state a claim for breach of a confidentiality agreement).   Apple has also failed to plead facts showing that it suffered harm as a result of Mr. Wang allegedly retaining access to Apple files in his iCloud Drive.  Without specific allegations demonstrating breach or harm, Apple's claim for breach of the IPA against Mr. Wang fails.

### 5.   Apple Has Failed to State a Breach of Contract Claim Against Mr. Wen

Apple alleges that Mr. Wen breached the IPA by "failing to return Apple's property and confidential, proprietary, and trade secret information at the time of [his] departure from Apple." SAC ¶ 140.  In the SAC, however, Apple also acknowledges that Mr. Wen has turned over the Apple information in his possession (SAC ¶ 127), has agreed to a forensic examination of any devices that could contain Apple confidential information (SAC ¶ 5), and has agreed to refrain from using any Apple confidential information. (SAC ¶ 68).  With these safeguards in place, Apple has not pleaded facts plausibly demonstrating that it has suffered any harm as a result of Mr. Wen's alleged breach of the IPA and, therefore, its claim should be dismissed.

### 6.   Apple Has Failed to State a Breach of Contract Claim Against Mr. Ye

Apple's allegations against Mr. Ye describe undisputedly lawful activity, including browsing job postings online (SAC ¶¶ 80-81), interviewing for a job at Rivos (*id.* ¶¶ 82-83), and accepting a job at Rivos (*id.* ¶ 79).  In the days leading up to his departure from Apple, Mr. Ye researched how to disconnect his personal iCloud account from his work laptop (*id.* ¶ 85) and deleted personal messages from his work laptop. *Id.* ¶ 84.  None of these allegations support Apple's claim

1   for breach of the IPA.[6]

2      The only other allegation against Mr. Ye is that he "saved multiple highly-confidential

3   source code repositories for unannounced, in development projects in his iCloud drive" and that he

4   continues to have access to those repositories.  SAC ¶¶ 86 and 157.  Apple asserts in the SAC that

5   "[t]he documents that have been improperly retained are described in more detail in the

6   declarations" attached to the Complaint at Dkts. 22-3, 22-4, and 22-5. SAC ¶ 140.  However, none

7   of these declarations mentions Mr. Ye.   For example, Dkt. 22-3, which supposedly "identif[ies]

8   specific files and folders that were taken" lists *only* files and folders allegedly taken by Mr. Wen.[7]

9      Apple's allegation that Mr. Ye saved unspecified "source code repositories" for unnamed

10  "in development projects in his iCloud drive" before leaving Apple is insufficient to support a claim

11  for breach, as Apple has not identified the information at issue in any detail.  *See Pellerin v.*

12  *Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990–91 (S.D. Cal. 2012).  Apple's claim against Mr. Ye

13  also fails because Apple has not pleaded any facts demonstrating that it suffered any harm from Mr.

14  Ye allegedly retaining access to his iCloud drive folder.  *See Aguilera*, 223 F.3d at 1015.  Apple's

15  claim for breach of the IPA against Mr. Ye should be dismissed.

16  **IV.   <u>CONCLUSION</u>**

17     For these reasons, the Individual Defendants respectfully request that the Court dismiss with

18  prejudice all claims asserted against them in Apple's Second Amended Complaint.

19

20

21

22

23

24

---

[6]  Apple alleges that Mr. Ye and the other Individual Defendants "deleted, scrubbed, or otherwise
25  modified the contents of their [ ] devices prior to returning them . . . in violation of, at least, the
IPAs."  SAC ¶ 141.  However, those IPAs do not prohibit deleting personal messages, browsing
26  histories, or other information on a laptop before returning it to Apple to be re-issued to a future
employee. *See* Dkts. 93-3 (IPA for Mr. Ye); *see also* Dkts. 93-1—93-7 (IPAs for other Defendants).
27  [7]  Apple alleges that more detailed descriptions of files taken by individual employees was provided
on September 14.  Opp. at 9 n. 3 *discussing* Dkt. 140-1. Apple cannot bolster the SAC with new
28  allegations in its Opposition. *See In re Accuray*, 757 F. Supp. 2d at 926.

1   DATED:  February 17, 2023              Respectfully submitted,

2                                          QUINN EMANUEL URQUHART & SULLIVAN,
                                           LLP
3

4

5                                          By:   */s/ David Eiseman*
                                                _____
6                                              DAVID EISEMAN
                                               VICTORIA B. PARKER
7
                                               Attorneys for Defendants Rivos Inc., Wen Shih-
8                                              Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
                                               Ye, Laurent Pinot, Prabhu Rajamani, and Kai
9                                              Wang

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28