QUINN EMANUEL URQUHART & SULLIVAN, LLP
  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Defendants Rivos Inc., Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN and BHASI KAITHAMANA, <br><br> Defendants. | Case No. 5:22-CV-2637-EJD <br><br> **DEFENDANT RIVOS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:         March 2, 2023 <br> Time:        9:00 a.m. <br> Courtroom: 4 <br> Judge:       The Hon. Edward J. Davila <br><br> Trial Date:  None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION...........................................................................................................1

II. APPLE'S SAC FAILS TO PLEAD THAT RIVOS MISAPPROPRIATED APPLE'S TRADE SECRETS ........................................................................................1

    A. Apple's Allegations Either Are Not Allegations Against Rivos, or Do Not Constitute Trade Secret Misappropriation ............................................................2

    B. Taken Together, These Allegations Are Not Sufficient..........................................8

        1. Apple's Ratification Argument is Baseless ................................................8

        2. The Circumstantial Evidence Alleged is Insufficient ................................9

    C. Allegations Outside the SAC Should Not Be Considered....................................11

III. APPLE'S SAC FAILS TO ADEQUATELY IDENTIFY APPLE'S CLAIMED TRADE SECRETS .....................................................................................................11

IV. APPLE'S SAC FAILS TO ADEQUATELY ALLEGE HARM RESULTING FROM RIVOS' CONDUCT..........................................................................................13

V. APPLE'S SAC SHOULD BE DISMISSED WITH PREJUDICE....................................13

VI. CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Advanced Modular Sputtering, Inc. v. Superior Ct.*,
  132 Cal. App. 4th 826 (2005) ................................................................................................ 12

*Arthur J. Gallagher & Co. v. Tarantino*,
  498 F. Supp. 3d 1155 (N.D. Cal. 2020) .................................................................................. 10

*Autodesk, Inc. v. ZWCAD Software Co.*,
  No. 5:14-CV-01409-EJD, 2015 WL 2265479 (N.D. Cal. May 13, 2015) ............................ 9, 10

*Bitglass, Inc. v. Netskope, Inc.*,
  No. 20-CV-05216-RS, 2020 WL 11563099 (N.D. Cal. Dec. 21, 2020) .................................. 12

*Cisco Sys., Inc. v. Chung*,
  462 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................................... 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) .................................................................................. 11

*CleanFish, LLC v. Sims*,
  No. 19-CV-03663-HSG, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ................................ 12

*Cooper Interconnect, Inc. v. Glenair, Inc*,
  No. CV1408018RGKJCX, 2015 WL 13722129 (C.D. Cal. Feb. 3, 2015) ............................. 13

*Fitspot Ventures, LLC v. Bier*,
  2015 WL 5145513 (C.D. Cal. Sept. 1, 2015) ......................................................................... 13

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009) .................................................................................... 8

*In re Accuray, Inc. Shareholder Deriv. Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. 2010) .................................................................................... 11

*Loop AI Labs Inc. v. Gatti*,
  195 F. Supp. 3d 1107 (N.D. Cal. 2016) .................................................................................. 12

*Monzon v. Southern Wine & Spirits of California*,
  2011 WL 2884884 (N.D. Cal. July 19, 2011) ........................................................................ 11

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) .................................................................................. 7, 10

*Thompson v. Hous. Auth. of City of Los Angeles*,
   782 F.2d 829 (9th Cir. 1986) ................................................................................................ 13

*Thrasio LLC v. Boosted Commerce Inc.*,
   2022 WL 2284564 (C.D. Cal. Apr. 20, 2022) ....................................................................... 10

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
   617 F. Supp. 2d 938 (N.D. Cal. 2007) .................................................................................. 10

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443, 1463 (2002) ..................................................................................... 5

*Wisk Aero LLC v. Archer Aviation Inc.*,
   No. 3:21-CV-02450-WHO, 2021 WL 8820180 (N.D. Cal. Aug. 24, 2021) ..................... 7, 9, 10

**<u>Statutory Authorities</u>**

18 U.S.C. § 1839 ............................................................................................................................ 1

## I. INTRODUCTION

Apple's Opposition to Rivos' Motion to Dismiss (Dkt. 139; "Opp.") only further confirms that this lawsuit is a thinly-veiled effort to stop a promising start-up from competing against Apple.[1] In pursuit of this goal, Apple has done all it can to create a specter of wrongdoing around Rivos. Apple sued seven individual defendants who left jobs at Apple to work for Rivos, added allegations related to the conduct of many others, and made sweeping statements about Rivos' efforts to "block" Apple's attempts to resolve these issues. But beneath these smokescreens of speculation and supposition, Apple's Second Amended Complaint ("SAC") remains plainly deficient.

Apple's allegations in the SAC do not add up to a plausible inference that Rivos misappropriated Apple's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"). Many of the alleged facts Apple points to do not suggest trade secret misappropriation at all, and are instead either innocent or at most violations of Apple policies. Where Apple makes allegations that relate to the DTSA, it does not make those allegations against Rivos, and does not allege any facts that tie Rivos to purported wrongdoing. Tellingly, Apple's Opposition reads like a discovery motion, filled with baseless allegations of discovery misconduct and unsupported assertions about what Apple believes further discovery would reveal. That rather gives the game away: Apple has filed a lawsuit and nearly a year later is still seeking to use discovery to find a basis for that lawsuit. Indeed, nowhere in the SAC does Apple allege that Rivos has wrongfully acquired, disclosed, or used any Apple trade secret. Apple also fails to plead ownership of a trade secret or that it has been harmed in any way. Apple's SAC therefore does not state a claim for relief under the DTSA, and, as Apple's third failed attempt, should be dismissed with prejudice as to Rivos.

## II. APPLE'S SAC FAILS TO PLEAD THAT RIVOS MISAPPROPRIATED APPLE'S TRADE SECRETS

Apple has failed to plead that Rivos wrongfully acquired, disclosed, or used Apple's trade secrets. 18 U.S.C. § 1839. Apple argues in its Opposition that a myriad of allegations, added together, create a viable claim against Rivos. Apple is wrong. First, the allegations Apple points to

---

[1] Apple alleges that Rivos and Apple compete in the SoC space. SAC ¶ 40. Currently, Rivos does not sell any products, and so they compete only in the market for talented engineers.

are completely divorced from any claim that **Rivos** misappropriated trade secrets. These allegations either are not trade secret misappropriation at all, or are not allegations against **Rivos**. Second, Apple's attempts to tie these allegations to Rivos fail. Apple's argument for ratification has no support in the case law, as an examination of the precedent Apple cites makes clear. Fighting back against a lawsuit does not constitute ratification of alleged misconduct by an employee. And Apple's arguments about the viability of "circumstantial evidence" are equally misguided. The cases where circumstantial evidence was found sufficient to state a DTSA claim had allegations far different from those here, including specific allegations related to the conduct of the employer (not just employees).

### A.   Apple's Allegations Either Are Not Allegations Against Rivos, or Do Not Constitute Trade Secret Misappropriation

Apple argues that "Rivos Fails to Address the Majority of the Facts" in the SAC. Opp. At 16-21. That is plainly not true. The factual allegations Apple points to were in fact addressed by Rivos. But more importantly, *those allegations do not state a claim against Rivos*. Apple listed nine allegations that purportedly "together create more than just a plausible inference that Rivos misappropriated Apple's trade secrets." Opp. at 16. As examined in detail below, however, many of these allegations are not allegations of trade secret misappropriation at all, and those that are do not relate to Rivos. Taken together, these allegations *cannot* support an inference that Rivos has engaged in any unlawful conduct.

**Allegation No. 1**: "The large number of employees who have taken and retained Apple confidential information after communicating with Rivos or accepting their offers with Rivos." Opp. at 16. This characterization of the allegations is misleading, as already addressed in more detail in Rivos' Motion to Dismiss (Dkt. 101; "Mot."). Mot. at 9-12; 13-15. It is simply not true that "a large number" of Rivos employees are alleged to "have taken" Apple confidential information after interacting with Rivos. Despite Apple's caterwauling about the alleged conduct of many other employees, Apple only alleges that *three* Rivos employees "have taken" Apple information after communicating with Rivos. One employee (Ricky Wen) allegedly downloaded data from his Apple laptop after accepting a job offer from Rivos, and Apple suspects confidential

information was swept up, but Apple also acknowledges that over half of the information Mr. Wen allegedly "took" was likely "personal in nature." SAC ¶ 61. Another employee (Jim Hardage) allegedly removed data from his Apple computer and copied some documents to USB flash drives around the time of his resignation from Apple. SAC ¶¶ 73-74. Finally, a third employee (Bhasi Kaithamana), who is no longer employed by Rivos[2] and has separately settled with Apple,[3] allegedly downloaded documents and saved them to a USB drive in the days leading up to his resignation from Apple. SAC ¶¶ 49-53. These are the only allegations in Apple's SAC accusing Rivos employees of taking affirmative actions "after communicating with Rivos or accepting their offers with Rivos." Apple attempts to conflate all of its other allegations—of failing to comply with Apple policies, using encrypted messaging, or inadvertently retaining files—with these, to create a cloud of suspicion around Rivos based on its communications with a "large number of employees." But the allegations of individuals taking files after speaking to Rivos are limited to three individuals. Apple's argument that this "is not a case involving just one or two employees who took documents" is true in only the narrowest sense. Opp. at 16. This is a case involving allegations that *three* employees (one of whom is no longer employed by Rivos) took documents after they were hired.

Apple's focus on conduct that purportedly occurred after "communicating with Rivos" is disingenuous. Apple's SAC acknowledges that Rivos instructed Apple employees "*not* to retain Apple confidential information" (SAC ¶ 124 (emphasis added)) and contains no other allegations even suggesting that Rivos encouraged any employees to bring Apple documents to Rivos. Nor is there any allegation that Apple documents retained were deliberately transferred to Rivos, or used by Rivos in any way.

Apple does not allege that any Rivos employees other than the three discussed above took affirmative actions to retain Apple documents after communicating with Rivos. Apple's allegations instead suggest, at most, inadvertent retention of documents "taken" long before each employee decided to leave Apple for Rivos. Two employees (Prabhu Rajamani and Kai Wang, who is not a

---

[2] Mr. Kaithamana is no longer employed by Rivos for reasons unrelated to this lawsuit and retained separate counsel.
[3] *See* Dkt 137.

DTSA individual defendant) allegedly had Apple files in their iCloud accounts after leaving Apple. SAC ¶¶ 103, 112. Apple's SAC *does not* allege that these files were placed there after communicating with Rivos or accepting a job offer. *See id.* One employee (Laurent Pinot) allegedly "allowed" previously enabled backups to a "Time Machine" to continue. SAC ¶ 95. But again, Apple does not allege that the backups were deliberately made after communicating with Rivos or accepting a job offer. Rather, Apple expressly acknowledges that the backups started in December 2020, months before Rivos came into existence. *See* SAC ¶ 95. One employee (Weidong Ye) allegedly saved Apple work to his personal iCloud at some point while employed at Apple. SAC ¶ 86. Apple does not allege that this occurred after speaking to Rivos. *See id.* Mr. Ye also allegedly downloaded Apple confidential files to his "Apple issued computer," but he returned that computer to Apple before leaving Apple. *See id.* Apple does not claim that the files Mr. Ye allegedly downloaded shortly before leaving are the ones now in his personal iCloud, nor that he took those files with him when he returned his Apple-issued computer, nor that such downloads to an Apple-issued computer are unusual for a person working at Apple. *See id.* None of these employees took any actions "after communicating with Rivos," nor does Apple allege that the employees' communications with Rivos led to the alleged "taking" of files. These allegations therefore have **nothing** to do with any conduct by **Rivos**. In sum, Apple's characterization that a "large number" of Rivos employees allegedly took documents "after communicating with Rivos or accepting their offers" vastly overstates the actual allegations in Apple's SAC.

**Allegation No. 2**: "The volume of information taken." Opp. at 16. Apple alleges that Rivos employees "took" "thousands of confidential documents, comprising over a terabyte of information." *Id.* This too is misleading. As discussed above, Apple's allegations suggest that much of the information "taken" was inadvertently retained. But beyond that, Apple simply does not allege that it was taken **by Rivos**. And again, Apple does not allege that any of these Apple documents were wrongfully acquired, disclosed, or used **by Rivos**.

**Allegation No. 3**: "The nature of the information taken." Opp. at 16. Apple alleges that the information "taken" was "some of Apple's most sensitive and valuable information." But Apple does not allege that all of the information "taken" was taken deliberately, and even based on Apple's

allegations much of it appears to have been inadvertently retained. Because Apple's employees work on sensitive projects, it should not be a surprise that when they inadvertently retained information, that information is sensitive. However, ***none of this information was allegedly wrongfully acquired, disclosed, or used by Rivos***. In light of this, the nature of the information is irrelevant as to Rivos.

**Allegation No. 4**: "Rivos' targeting of nearly 50 employees to perform the same type of work they were performing at Apple." Opp. at 16. This allegation is entirely unremarkable. Apple hires talented engineers. Other companies—from Apple's fellow tech giants to new startups—naturally want to hire the same talented engineers, usually to work in broadly the same field in which they worked for Apple. There is nothing illegal about recruiting employees with relevant experience or about employees leaving their current employer for a current or potential competitor. Indeed, both competitors and the employees themselves have every right to do this. This allegation reveals the true source of Apple's ire: that Rivos had the audacity to compete against Apple in the hiring of engineering talent in the SoC space. The fact that Rivos, a new SoC startup, recruited experienced SoC engineers, which Apple happened to have in large supply, is not indicative of trade secret misappropriation or that Rivos violated any law. It is, however, indicative of the "open competition" that Apple admittedly "welcomes and values." SAC ¶ 8. Further, this allegation—that hiring employees with similar roles is trade secret misappropriation—smacks of the inevitable disclosure doctrine, a theory Apple has disavowed (*see* Opp. at 21-22), and which courts have soundly rejected. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1459, 1463 (2002) (noting that courts applying the inevitable disclosure doctrine consider "the degree of similarity between the employee's former and current positions," and explaining that "our rejection of the inevitable disclosure doctrine is complete").

**Allegation No. 5**: "Rivos' admission that it was advising Apple's former employees ***regarding*** the retention of confidential information during the time they were still at Apple." Opp. at 16 (emphasis added). Even setting aside that this alleged "admission" was made ***after*** Apple filed its original Complaint, the word "regarding" is doing a lot of work there: the actual statement "regarding the retention of confidential information" that Apple refers to is Rivos' CEO's advice to

former employees hired from Apple "***not*** to retain Apple confidential information when they depart Apple for Rivos." SAC ¶ 124 (emphasis added). There is nothing nefarious, as Apple made it out to be, about an instruction ***not*** to retain confidential information. Apple does not allege that Rivos gave any other instructions to the contrary, but it nonetheless paints this example of good corporate citizenship as Rivos "inject[ing]" itself into the employee departure process. Opp. at 16. The allegation that Rivos instructed employees ***not*** to take Apple confidential information in no way supports—in fact it refutes—a claim for trade secret misappropriation against Rivos.

**Allegation No. 6**: "The number of Apple employees who deleted information after accepting offers from Rivos." Opp. at 17. Deleting information is not a taking of Apple trade secrets—in fact, it is encouraged by the very "Checklist" that Apple required every departing employee to sign during their exit interview. Specifically, Apple's "Checklist for HWT Departing Employees" requires each departing employee to confirm that they "have return or ***destroyed*** all Apple confidential information prior to leaving Apple." Dkt. 24-3. And even if it were a violation of any Apple policy, Apple does not allege that ***Rivos*** engaged in this conduct, or instructed the employees it hired from Apple to do so.

**Allegation No. 7**: "Rivos' own efforts to conceal its communications with these former Apple employees." Opp. at 17. Apple does not explain how encrypted messaging constitutes trade secret misappropriation, and instead acts as if it is self-evident that this is evidence of wrongdoing. It is not. There are obvious innocent reasons why Rivos would not want Apple monitoring the communications between Rivos and Apple employees Rivos was considering hiring. This is not an allegation of trade secret misappropriation.

**Allegation No. 8**: "Rivos' refusal to cooperate with returning or segregating trade secret documents to Apple." Opp. at 17. Apple's allegation addresses ***Rivos' response to Apple's lawsuit*** and is completely normal in litigation. And the fact that Rivos "continued to hire away Apple engineers" (SAC ¶ 124) was protected by the law, and it did not become less so when Apple tried, but failed, to bully Rivos to stop such hiring. There was similarly nothing wrong with Rivos directing Apple to communicate with Rivos' counsel, instead of having direct contact with Rivos' employees, after Apple filed this lawsuit. SAC ¶ 5. Finally, Rivos' decision to conduct an internal

investigation, but then not provide Apple—the *opposing party in a lawsuit*—with unfettered access to the information Rivos learned, was also a normal function of the adversarial system. SAC ¶¶ 131, 158. None of this conduct is indicative of trade secret misappropriation or any other wrongdoing.

**Allegation No. 9**: "Rivos is aware that the former Apple employees' iCloud drives have synced with Rivos' work computers." Opp. at 17. First, iCloud is a system that Apple designed, and Apple encourages its employees to use their *personal* iCloud account for Apple work. To the extent former Apple employees inadvertently retained Apple files in iCloud and those files were later synced *automatically* when the former employees connected their new devices to their same *personal* iCloud accounts, that is the result of Apple's policies—and certainly not *Rivos'* fault. But beyond that, there is no allegation that Rivos has wrongfully acquired, disclosed, or used any Apple trade secrets as part of the automatic iCloud syncing process. Apple alleges that "some Apple files" are stored on Mr. Wen's Rivos-issued computer, but does not allege that these Apple files are confidential or trade secrets. SAC ¶ 133. Nor does Apple allege that Mr. Wen deliberately synced these files, that Mr. Wen was even aware that the sync occurred, or that Rivos in any way instructed, encouraged, or allowed the sync. Apple only alleges that Rivos became aware of the automatic sync of Mr. Wen's iCloud *after* Apple first filed this lawsuit. *See* SAC ¶ 124. This allegation, even taken as true, does not show Rivos wrongfully acquired, disclosed, or used any Apple trade secrets.

Crucially, Apple does not allege that Rivos was aware that former Apple employees' iCloud drives would sync with Rivos work computers prior to the alleged sync. Apple's allegation appears, at most, to be one of indirect misappropriation, which occurs where "a defendant obtains a trade secret 'from someone other than plaintiff.'" *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2021 WL 8820180, at *10 (N.D. Cal. Aug. 24, 2021) (*quoting Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020)). Indirect misappropriation requires that the defendant either "knew or had reason to know before the use or disclosure that the information was a trade secret" or "knew or had reason to know it was a trade secret and that the disclosure was a mistake." *Id.* Here, Apple's SAC alleges **no facts** to support either prong of the indirect

misappropriation test and, therefore, Apple has not stated a DTSA claim under an indirect misappropriation theory.

### B. Taken Together, These Allegations Are Not Sufficient

For the reasons set forth above, Apple's allegations in the SAC fail to state a DTSA claim against Rivos. Apple make two principal arguments in an attempt to save its claim: (1) that Rivos ratified its employees' alleged misconduct, and (2) that there is sufficient circumstantial evidence to conclude Rivos improperly acquired or used trade secrets. Both arguments fail.

#### 1. Apple's Ratification Argument is Baseless

Apple's ratification theory finds absolutely no support in the case law. Both cases Apple cites are inapposite. Apple points to *Cisco Sys., Inc. v. Chung*, which has facts that are far afield from those here. 462 F. Supp. 3d 1024, 1057 (N.D. Cal. 2020). In *Cisco*, the plaintiff alleged that there were multiple instances where an employee communicated trade secret information to executives at his new employer, and those executives not only "did not reprimand" him, they "requested additional related information." *Id*. The complaint included detail on what trade secret information was shared, and on what specific dates. *Id.* at 1057-58. Those allegations were sufficient to plead ratification. *Id.* at 1058. But here, Apple has alleged nothing of the sort. Apple alleges only that Rivos became aware of purported misappropriation on the day Apple filed this lawsuit. SAC ¶ 126; Opp. at 18-19. This is completely different from alleging that an employee told Rivos executives that he had taken Apple information, and Rivos responded by requesting more. Apple's SAC contains no such allegation, because there is absolutely no indication that this occurred. Indeed, Apple expressly acknowledges that Rivos instructed new employees "***not*** to retain Apple confidential information when they depart Apple for Rivos." SAC ¶ 124 (emphasis added). The other ratification case Apple references, *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, is even further off point. 627 F. Supp. 2d 1187, 1201 (E.D. Cal. 2009). In *Garcia*, a plaintiff sought to hold a school district liable for the conduct of a teacher via ratification. The court rejected this theory, explaining that ratification requires "a voluntary election to adopt another's conduct as one's own," and that failing to fire an employee does not necessarily constitute ratification. *Id.* at 1202-03. No precedent supports ratification here.

Apple argues that Rivos ratified its employees' misconduct after becoming aware of purported misappropriation because Rivos "insisted" that Apple communicate with Rivos' employees via counsel, and has resisted Apple's efforts to take discovery (which is factually untrue). Opp. at 19. In other words, Apple argues that Rivos' decision to defend itself and its employees against Apple's claims somehow constitutes ratification of alleged wrongdoing. This argument is unsupported by the ratification cases Apple cites or by common sense.

### 2. The Circumstantial Evidence Alleged is Insufficient

Apple points to precedent that a plaintiff may rely on circumstantial evidence to plead trade secret misappropriation. But this argument also falls short. The circumstantial evidence Apple points to here is, in totality, far less than in the cases Apple cites. All the cases Apple cites for this concept have a common fact pattern: in addition to alleging information was taken by an employee, the plaintiff made specific allegations strongly suggesting disclosure or use by the employer. Apple's SAC contains no such allegation.

Apple has not pointed to a single case upholding a DTSA claim against an employer that did not have specific allegations suggesting that the employer disclosed or used the claimed trade secrets. In *Wisk Aero*, the plaintiff did not just allege that the defendant employer's newly-hired employees took files when they left the plaintiff's employment; the plaintiff also alleged that the defendant employer created a presentation detailing a novel aircraft design in "a suspiciously short timeframe." *Wisk Aero*, 2021 WL 8820180, at *15. The "allegedly implausible development timeline concurrent with the influx of former [plaintiff] employees" led to a reasonable inference of trade secret misappropriation by the defendant employer. *Id.* The *Wisk Aero* court distinguished those facts from other cases where motions to dismiss were granted, on the grounds that in those cases "there was no allegation (as there is here [in *Wisk Aero*]) of implausibly fast development that supports misappropriation." *Id.* Nowhere in Apple's SAC is there any allegation about Rivos' product development, much less that its development has been assisted or accelerated by claimed trade secret misappropriation.

Other cases Apple relies on are similar. In *Autodesk, Inc. v. ZWCAD Software Co.*, the defendant employer allegedly created new software with "the same interfaces and commands" as

plaintiff's, and which shared identical unique errors. No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *1-*2 (N.D. Cal. May 13, 2015). In *Thrasio LLC v. Boosted Commerce Inc.*, the plaintiff alleged that the defendant employer "experienced swift growth" and marketed itself by boasting of a process that was allegedly "identical" to the plaintiff's process. 2022 WL 2284564, at *1 (C.D. Cal. Apr. 20, 2022). And in *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, the plaintiff alleged that the defendant had meetings on specific dates with a third party where trade secrets were disclosed, and these meetings resulted in a "process that mirrored" plaintiff's technology. 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007).

Here, there are no similar allegations. Apple has not alleged any conduct by Rivos that would give rise to an inference that Rivos has disclosed or used Apple's trade secrets. There is no allegation of accelerated development, as there was in *Wisk Aero*. *See* 2021 WL 8820180, at *15. There is no allegation that Rivos' products function in ways suspiciously similar to Apple's, like in *Autodesk*. *See* 2015 WL 2265479, at **1-2. There is no allegation that Rivos has experienced swift growth, or that it markets itself as similar to Apple, like in *Thrasio*. *See* 2022 WL 2284564 at *1. Nor has Apple alleged that Rivos has created processes that mirror Apple's, like in *UniRAM*. 617 F. Supp. 2d at 944. Rather than supporting Apple's claim, a review of Apple's cited cases makes clear that there is no circumstantial evidence based on any conduct by Rivos supporting Apple's DTSA claim against Rivos.

The allegations here instead resemble cases where the plaintiffs' reliance on circumstantial evidence was found insufficient. In *Navigation Holdings, LLC v. Molavi*, the court dismissed a trade secret claim where the plaintiff's former employee allegedly took trade secrets, and the plaintiff "made a conclusory assertion" "devoid of factual substance" that the defendant employer had reason to know the plaintiff's former employee had done so. 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020). Similarly, in *Arthur J. Gallagher & Co. v. Tarantino*, the plaintiff alleged that former employees took trade secrets, and that the defendant employer must have given a directive to do so. 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020). But that allegation lacked factual support, so the claim against the employer was dismissed. *Id*. Here too, Apple has failed to plead any facts tying Rivos to allegations of misconduct by the former Apple employees now working at Rivos.

### C. Allegations Outside the SAC Should Not Be Considered

Apple's Opposition is littered with references to discovery issues and other events that have occurred since the filing of the SAC. All of those references should be entirely ignored.

In ruling on a 12(b)(6) motion, "the Court reviews the adequacy of Plaintiffs' claims asserted in the complaint, not the claims they assert in their brief." *In re Accuray, Inc. Shareholder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010); *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012); *Monzon v. Southern Wine & Spirits of California*, 2011 WL 2884884, at *4 (N.D. Cal. July 19, 2011) (refusing to consider new facts alleged in plaintiff's opposition to the motion to dismiss). There are limited exceptions, and none apply to discovery issues or purported new evidence that is not incorporated by reference. *Id.* Apple's Opposition makes frequent references to this sort of material. *See, e.g.*, Opp. at 1 (Rivos "blocked discovery at every turn"); Opp. at 2 (Apple "has uncovered additional evidence since filing the Complaint that strongly supports its misappropriation claim"); Opp. at 7 ("Apple was only able to start reviewing Wen's documents on December 20, 2022"). All of these allegations are completely irrelevant and cannot be considered on a motion to dismiss.

But even if this material were considered, it still would not state a claim against Rivos, for the reasons discussed above. Nothing in Apple's SAC or Opposition ties any purported conduct to *Rivos*.

### III. APPLE'S SAC FAILS TO ADEQUATELY IDENTIFY APPLE'S CLAIMED TRADE SECRETS

Rivos' agreement to withdraw its motion for a protective order in response to Apple's agreement to serve a narrowed trade secret disclosure (*see* Dkt. 125)—the only effect of which was to permit Apple to move forward with trade secret-related discovery—cannot be construed as an admission that Apple's SAC adequately identifies Apple's claimed trade secrets. The allegations in the SAC must be evaluated on their own merits, not on later developments in the litigation. *See In re Accuray, Inc. Shareholder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010). Apple's

identification of its claimed trade secrets in the SAC still fails for the reasons set forth in Rivos' Motion to Dismiss. *See* Mot. at 6-8.

"On a motion to dismiss, the burden is on the plaintiff to identify protectable trade secrets and '[show] that they exist.'" *CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (citation omitted). This identification must "permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* This is particularly true in technical fields with incremental advances; such trade secrets are difficult to separate from general knowledge in the field, and therefore require "a more exacting level of particularity" than easier-to-identify trade secrets like customer lists. *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 836 (2005).

Apple's allegations in the SAC are far too general. Apple alleges that the trade secrets at issue "pertain to Apple's personal computer and mobile device SoCs, including SoC designs, component designs, customized ISA instructions, source code for Apple products based on its SoCs, and other Apple-developed know-how gained from years of developing advanced SoCs." SAC ¶ 146. But much of Apple's internal information on SoCs is undoubtably known to all SoC experts and does not constitute protectable Apple trade secrets. Apple's SAC contains no allegations describing what constitutes its trade secrets (as opposed to information that is generally known in the SoC field).

Nor does Apple's list of purportedly downloaded files, incorporated by reference in the SAC, cure this defect. Listing documents without identifying what within them is a trade secret is insufficient. *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112-14 (N.D. Cal. 2016). Although Apple cites case law that purportedly held that "cases based on the downloading of documents pass muster on a motion to dismiss," Apple's cited case involved downloads of customer lists and similar information. *See* Opp. at 10-11; *Bitglass, Inc. v. Netskope, Inc.*, No. 20-CV-05216-RS, 2020 WL 11563099 (N.D. Cal. Dec. 21, 2020). The requirement to identify trade secrets is far lower in such cases than it is in cases involving highly technical fields like the present case, and *Bitglass* is therefore inapposite. *See Advanced Modular*, 132 Cal. App. 4th at 836.

Because Apple's SAC fails to identify Apple's claimed trade secrets with the required specificity, Apple has not stated a DTSA claim against Rivos.

## IV.   APPLE'S SAC FAILS TO ADEQUATELY ALLEGE HARM RESULTING FROM RIVOS' CONDUCT

A DTSA plaintiff must plead facts that support "an inference of actual harm." *Cooper Interconnect, Inc. v. Glenair, Inc*, No. CV1408018RGKJCX, 2015 WL 13722129, at *4 (C.D. Cal. Feb. 3, 2015). Threatened harm may be sufficient, but only if the threat of harm is traceable to "Defendant's conduct." *Fitspot Ventures, LLC v. Bier*, 2015 WL 5145513, at *2–3 (C.D. Cal. Sept. 1, 2015). Here, Apple has failed to plead any specific facts suggesting actual or threatened harm resulting from any alleged ***Rivos*** conduct.

In opposing Rivos' arguments on this issue, Apple explained that its evidence purports to show that "***the Individual Defendants*** took thousands of [Apple's] most sensitive documents" and harm would result from disclosure of these documents. Opp. at 22 (emphasis added). Nowhere has Apple alleged that Rivos wrongfully acquired these documents, or that Rivos is likely to disclose or use them to harm Apple. To the extent Apple plausibly alleges that the Individual Defendants are threatening harm (it does not), this allegation does not permit an inference that ***Rivos*** is also threatening harm.

## V.   APPLE'S SAC SHOULD BE DISMISSED WITH PREJUDICE

Apple is seeking to use this lawsuit to kneecap a promising start-up at a crucial moment in its growth. Early in the case, Rivos' counsel repeatedly asked Apple to identify a basis for naming Rivos as a defendant, and Apple's answer was telling. According to Apple, the reason Rivos is properly named as a defendant is because "it is." Dkt. 27-11. No further facts were cited. *Id.* And to date, Apple still has not cited any.

Although there is generally a policy pointing towards leave to amend, "courts have inherent power to control their dockets" and this power includes the power to dismiss claims with prejudice. *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 832 (9th Cir. 1986). Apple has already amended its complaint twice, and still has failed to allege any facts that support a claim

against Rivos. Accordingly, the Court should exercise its power to dismiss with prejudice Apple's DTSA claim against Rivos.

## VI. CONCLUSION

For the foregoing reasons, Rivos respectfully requests that the Court dismiss with prejudice Apple's Second Amended Complaint as to Rivos.

DATED: February 17, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ David Eiseman*

DAVID EISEMAN
VICTORIA B. PARKER

Attorneys for Defendants Rivos Inc., Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang