1  BRYAN WILSON (CA SBN 138842)
   BWilson@mofo.com
2  KENNETH A. KUWAYTI (CA SBN 145384)
   KKuwayti@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone: 650.813.5600
5  Facsimile: 650.494.0792

6  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California 94105-2482
   Telephone: 415.268.7000
9  Facsimile: 202.887.0763

10 MARY PRENDERGAST (CA SBN 272737)
   MPrendergast@mofo.com
11 MORRISON & FOERSTER LLP
   2100 L Street, NW, Suite 900
12 Washington, District of Columbia 20037
   Telephone: 202.887.1500
13 Facsimile: 415.268.7522

14 Attorneys for Plaintiff
   APPLE INC.

15

16                 UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                      SAN JOSE DIVISION

19 APPLE INC., a California corporation,        Case No.    5:22-cv-02637-EJD

20                 Plaintiff,                   **APPLE INC.'S MOTION FOR
                                                SANCTIONS AGAINST
21        v.                                    DEFENDANTS RIVOS, INC., WEN
                                                SHIH-CHIEH, AND COUNSEL
22 RIVOS, INC., a Delaware corporation; WEN     FOR DEFENDANTS STEPHEN
   SHIH-CHIEH a/k/a RICKY WEN; JIM              SWEDLOW, DAVID EISEMAN
23 HARDAGE; WEIDONG YE; LAURENT                 AND QUINN EMANUEL**
   PINOT; PRABHU RAJAMANI; and KAI
24 WANG,                                        Date:  August 31, 2023
                                                Time:  9:00 a.m.
25                 Defendants.                  Courtroom:  4, 5th Floor
                                                Judge:  Hon. Edward Davila
26                                              Action Filed:  April 29, 2022

27

28                      **FILED UNDER SEAL**

APPLE INC'S MOTION FOR SANCTIONS
CASE NO. 5:22-cv-02637-EJD

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2023, at 9:00 a.m., or as soon as the matter may be heard by the Honorable Edward Davila in Courtroom 5, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Apple Inc. ("Apple") shall and hereby does move the Court for an order pursuant to Federal Rules of Civil Procedure 37(b) and 37(e); 28 U.S.C. § 1927; and the Court's inherent authority; imposing sanctions against Rivos, Inc. and Wen Shih-Chieh a/k/a Ricky Wen, and their counsel Stephen Swedlow, David Eiseman, and Quinn Emanuel, for their persistent discovery violations, spoliation, and failure to comply with the Court's Orders (Dkts. 55, 67).

This motion is based on this notice of motion and supporting memorandum of points and authorities; the Declaration of Bryan Wilson in Support of Apple's Motion for Sanctions and exhibits attached thereto; the Declaration of Daniel Roffman in Support of Apple's Motion for Sanctions; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

NOW, THEREFORE, Plaintiff Apple prays for the following relief:

    a.  A finding that Ricky Wen and Rivos spoliated evidence under Federal Rule of Civil Procedure 37(e);

    b.  An adverse inference instruction against Ricky Wen and Rivos that Mr. Wen intentionally deleted evidence and the jury should presume that deleted evidence would have been favorable to Apple (*see* Proposed Order submitted herewith);

    c.  Monetary sanctions associated with Ricky Wen's and Quinn Emanuel's failure to comply with the Court's orders (Dkts. 55 and 67) pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) and (C), including Apple's fees and costs in connection with filing this motion for sanctions;

    d.  Sanctions against Stephen Swedlow, David Eiseman, and Quinn Emanuel

1    under 28 U.S.C. § 1927 and the Court's inherent authority, including Apple's

2    attorneys' fees and costs incurred in connection with Apple's motion to compel

3    the deposition of Mr. Wen; and

4         e.   For any other and further relief as the court deems just and proper.

5

6    Dated:        April 1, 2023                    Respectfully submitted,

7                                                  MORRISON & FOERSTER LLP

8

9                                                  By: */s Mary Prendergast*
                                                       Mary Prendergast
10
                                                   Attorney for Plaintiff
11                                                 APPLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

RELIEF REQUESTED ................................................................................................. 1

    MEMORANDUM OF POINTS & AUTHORITIES .................................................. 1

  I.     INTRODUCTION ........................................................................................... 1

  II.    FACTUAL BACKGROUND ......................................................................... 2

        A.    Apple First Sought to Recover its Misappropriated Materials Without Further Court Intervention After Filing Its Complaint, But Was Forced to Move for a TRO and Expedited Discovery ...................... 2

        B.    One Month After the Lawsuit Was Filed, Ricky Wen Deleted Highly Relevant Apple Confidential Information and Immediately Informed Quinn ................................................................................... 3

        C.    Mr. Pinot Told Rivos Within Days of the Lawsuit's Filing That He Had Apple Confidential Information on the Laptop he used for Work at Rivos ................................................................................... 5

        D.    Mr. Wen, Rivos, and Quinn Emanuel Counsel Made Multiple False Statements in Opposing Apple's Motion for a TRO and Expedited Discovery ................................................................................... 6

        E.    Mr. Wen Stipulated and Was Ordered Not to Access Apple Information, Not to Delete it, and to Immediately Turn all Devices Over to FTI ................................................................................... 8

        F.    Rivos and its Counsel Continued to Make False Statements About Rivos' Preservation and Use of Apple Trade Secrets and Obstruct Discovery ................................................................................... 9

        G.    Apple Was Forced to Move to Compel to Get Any Discovery, and Defendants' Counsel Made More False Statements in Connection with that Motion ................................................................................... 10

        H.    In November 2022, Defendants Unilaterally "Remediated" Former Apple Employees' Devices by Deleting Apple Information and Returning Them ................................................................................... 11

        I.    Quinn, Wen, And Rivos Did Not Disclose Their Retention of Documents and Deletion of the Unix.tar File in the January 17, 2023 Supplemental Responses ................................................................ 12

        J.    Ricky Wen Refused to Appear for Deposition, Forcing Apple to Move ................................................................................... 12

        K.    Quinn and Defendants Continued to Misrepresent The Record At the Motion to Dismiss Hearing ................................................................ 13

        L.    Multiple Former Apple Employees Have Had Access to Devices with Apple Confidential Information Since the Beginning of this Lawsuit, with Rivos' and its Counsel's Full Knowledge ...................... 14

  III.   ARGUMENT ................................................................................... 15

A.    Ricky Wen and Rivos Should be Sanctioned for Spoliating Evidence Vital to Apple's Case ..................................................... 15

    1.    Ricky Wen and Rivos Spoliated Evidence Under FRCP 37(e) ............................................................................................ 16

        (a)    Mr. Wen and Rivos Knew They Had a Duty to Preserve this Evidence and Did Not Take Reasonable Steps to Preserve it ........................................ 16

        (b)    The Deleted Archive and its Metadata Cannot be Replaced through other discovery.................................... 17

    2.    Apple Is Entitled to an Adverse Inference Against Mr. Wen That He Was Accessing Apple Confidential Information for his Work at Rivos........................................................................... 17

        (a)    An Adverse Inference is Warranted Under Rule 37(e)(2) Because Mr. Wen Acted with the Requisite Intent ................................................................................ 17

        (b)    A Jury Instruction is Warranted Under Rule 37(e)(1) Because Apple has Been Prejudiced by the Loss of ESI ................................................................................... 19

    3.    The Adverse Inference Should be Imputed to Rivos ................... 19

B.    Ricky Wen and Quinn Emanuel Should be Sanctioned for Repeatedly Violating this Court's Orders ................................................. 20

C.    Stephen Swedlow and David Eiseman of Quinn Emanuel Should be Sanctioned under 28 U.S.C. 1927 and this Court's Inherent Authority ................................................................................................ 22

    1.    Stephen Swedlow, David Eiseman, and Quinn Repeatedly Lied to the Court About Rivos' and the Individual Defendants' Segregation and Preservation Efforts ...................... 23

    2.    Mr. Swedlow, Mr. Eiseman, and Quinn Emanuel Should be Sanctioned Under 28 USC 1927 and the Court's Inherent Authority ........................................................................................ 24

    3.    Apple is Entitled to Monetary Sanctions ..................................... 25

IV.    CONCLUSION ................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Blixseth v. Yellowstone Mtn. Club*,
5
    796 F.3d 1004 (9th Cir. 2015) .............................................................................................22

6

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................................................21, 22
7

*Colonies Partners, L.P. v. Cnty. of San Bernadino*,
8
    2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ..........................................16, 18, 19, 20

9

*De Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*,
10
    2013 WL 4511925 (N.D. Cal. 2013) .....................................................................21

11

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
    2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) .....................................................17
12

*Fink v. Gomez*,
13
    239 F.3d 989 (9th Cir. 2001) .........................................................................22, 23, 24

14

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
15
    2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) .......................................................18, 19

16

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017) ................................................................................................25
17

*Guifu Li v. A Perfect Day Franchise, Inc*,
18
    281 F.R.D. 373 (N.D. Cal. 2012) .......................................................................25

19

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
20
    2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) .......................................................24

21

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    2012 WL 5372477 (N.D. Cal. Oct. 30, 2012) ..................................................22, 24
22

*Knickerbocker v. Corinthian Colleges*,
23
    298 F.R.D. 670 (W.D. Wash. 2014) .......................................................................25

24

*Laub v. Horbaczewski*,
25
    2020 WL 7978227 (C.D. Cal. Nov. 17, 2020) .......................................................20

26

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ................................................................................18
27

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
28
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .......................................................19

*OmniGen Rsch. v. Yongqiang Wang*,
   321 F.R.D. 367 (D. Or. 2017) .................................................................................................18

*Porter v. City & Cty. of S.F.*,
   2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ...................................................................16, 17

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) .........................................................................22

*Skyline Adv. Tech. Servs. v. Shafer*,
   2020 WL 13093877 (N.D. Cal. July 14, 2020) ........................................................................18

*Spiers v. City & Cnty. of San Francisco*,
   2022 WL 612663 (N.D. Cal. Mar. 1, 2022) .............................................................................24

*Sweet People Apparel, Inc. v. Saza Jeans, Inc.*,
   2016 WL 6053958 (C.D. Cal. May 25, 2016) .........................................................................24

*Toppan Photomasks, Inc. v. Park*,
   2014 WL 2567914 (N.D. Cal. May 29, 2014) .........................................................................16

*WeRide Corp. v. Kun Huang*,
   2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .........................................................................18

**Statutes and Other Authorities**

28 U.S.C. § 1927 ............................................................................................................ *passim*

Fed. R. Civ. P. 37 .......................................................................................................... *passim*

## MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION

From the outset of this litigation, Defendants and their counsel have assured Apple and the Court that they were complying with their document preservation obligations, that all Apple confidential information had been segregated, and that there was "no risk" any Apple confidential information could be accessed or used.  Defendants and their counsel even went a step further, arguing to the Court that they should be given "an opportunity to exit this lawsuit quickly" because they were voluntarily cooperating with Apple and making "good faith efforts to apprise Apple of their own investigation."  None of these statements were true.

Defendant Ricky Wen admitted in his recent deposition that in May 2022—a month after this lawsuit was filed—he intentionally deleted an archive file from his Rivos laptop that contained hundreds of Apple documents.  These included highly confidential Apple code files, which Mr. Wen took with him when he left Apple.  In deleting the archive file, Mr. Wen destroyed the metadata that would have shown what use he made of these Apple files on his Rivos laptop during his first nine months at Rivos.  Mr. Wen testified he notified his counsel of the deletion the same day.  Yet just weeks later, counsel stood before the Court and stated repeatedly that Mr. Wen was complying with his document preservation obligations.

Defendants' counsel also represented to Apple and the Court in June of 2022 that no Apple documents had been placed on any Rivos devices or systems—a statement they clearly knew was false.  They also claimed that Mr. Wen's devices had been segregated and he no longer had access to them.  This was false as well.  In February of 2023, nearly eight months after the Court ordered Mr. Wen to immediately turn over any devices that may contain Apple information, Defendants' counsel revealed that Mr. Wen had failed to disclose and hand over *six* devices and accounts containing Apple confidential information.  Mr. Wen has had access to those devices, and the thousands of Apple documents they contain, since the outset of the litigation.  But that was still not everything.  Mr. Wen testified at his deposition on March 17, 2023 that he *continued* to have access to a copy of the archive file containing all of the confidential Apple code files *in his home directory on the Rivos network*.

These would be just the first of many misstatements counsel would make over the eleven months of this litigation.  But they were not just misrepresentations, they were a violation of Court orders. Wen was ordered to "immediately return" all Apple confidential documents and to turn over for imaging all "devices which have ever been used to store or transmit Apple confidential information" in court orders entered in June and July of 2022.  (Dkts. 55, 67.)  Mr. Wen and his counsel Quinn Emanuel ("Quinn") violated these orders repeatedly.

Defendants' lead counsel Stephen Swedlow, David Eiseman, and Quinn should also be sanctioned for their multiple false statements to the Court along with their vexatious and obstructionist behavior designed to prevent Apple from recovering its trade secrets.  Counsel made these statements in an effort to avoid discovery, to withhold depositions, and to try to dismiss this case with prejudice before all of the bad facts could be revealed.

In addition to all of the above, Defendants have now revealed that Quinn and Rivos have knowingly permitted no less than four of the six individual Defendants Quinn represents to continue to have access to devices and accounts containing confidential Apple information for the entire duration of the litigation.  And they have revealed that through a botched "remediation" process undertaken without authorization from Apple or the Court, it appears Quinn has unilaterally deleted or otherwise corrupted additional material evidence.

The Defendants and their counsel should be sanctioned for their spoliation, violation of court orders, and their numerous false statements to the Court.

## II.      FACTUAL BACKGROUND

### A.      Apple First Sought to Recover its Misappropriated Materials Without Further Court Intervention After Filing Its Complaint, But Was Forced to Move for a TRO and Expedited Discovery

On April 29, 2022, the day this lawsuit was filed, Apple sent letters to the Defendants and 35 other former Apple employees hired by Rivos, reminding them of their contractual obligations and seeking return of Apple's confidential information that the employees retained in violation of their agreements.  Apple sent a copy of each of the employee letters to Rivos, along with a letter to Rivos attaching the complaint and informing Rivos of its duty to preserve documents, including

"preservation of all metadata." (Dec. of Bryan Wilson Ex. 1 at 1.)[1] The letter also made clear Rivos should return documents through an agreed upon process, asking it to "agree to a mutually agreeable plan with Apple to return to Apple all proprietary and confidential information in a manner that will preserve the information and all metadata associated with it[.]" (*Id*. at 2.)

Stephen Swedlow of Quinn Emanuel, which represents both Rivos and Ricky Wen, wrote Apple on May 11, 2022 "We confirm that Rivos and Mr. Wen are complying with their document preservation obligations." (Ex. 2.) Apple spent the next several weeks attempting to recover its information from Quinn, who blocked Apple from communicating with any of the former employees, even with counsel present. But at the same time counsel refused to return the information Apple knew its former employees continued to possess. Instead, Quinn claimed it needed even more information, even though Apple had already provided specifics for each of the 42 employees in their letters and in the complaint.

On May 20, 2022, Apple filed a motion for a TRO and expedited discovery against Rivos and Ricky Wen (Dkt. 23), and submitted a detailed forensic declaration demonstrating that Mr. Wen and numerous other former Apple employees now working for Rivos had retained hundreds of Apple confidential documents after leaving Apple. (Dkt. 116 at 2; Dkt. 22-4 ¶¶ 14-24, 23-1.) The declaration also explained how many of the former employees connected devices in their last days at Apple, retained Apple information in their cloud accounts, or wiped their devices entirely so that Apple could not know what they might have taken. (*Id.*)

### B.   One Month After the Lawsuit Was Filed, Ricky Wen Deleted Highly Relevant Apple Confidential Information and Immediately Informed Quinn

Unbeknownst to Apple, right around the time Apple filed its TRO motion, Mr. Wen was deleting evidence from his Rivos-issued laptop. In his March 17, 2023 deposition, Mr. Wen admitted he transferred a zip file (called a ".tar" file in unix parlance) onto his Rivos work laptop shortly after starting work at Rivos. (Ex. 3 at 82:23-83:5.) The unix.tar archive contained over 1700 files, including multiple Apple confidential documents, such as highly sensitive Verilog code

---

[1] References to exhibits in this brief refer to exhibits to the Wilson declaration.

1   files that Mr. Wen acknowledged were confidential and that are marked "trade secret" and

2   "confidential." (*See, e.g., id.* at 119:6-16; Roffman Dec. ¶ 6.) These files contain highly

3   confidential information relating to the implementation of Apple's SoCs, the modeling of

4   hardware components, and the connections between them. (Dkt. 22-3 ¶ 12.) Verilog files are

5   "

6   ." (*See id.* ¶¶ 4, 6, 12, 22.) Most of the Verilog files Mr. Wen took are related to

7   power management, a key aspect of SoC design. As Mr. Wen admitted, power management—the

8   ability to deliver uniquely high performance with very low power consumption—is a key

9   distinguishing feature of Apple's SoC's. (*See id.* at 58:16-59:9; 257:5-14.)

10      Mr. Wen testified he transferred the unix.tar file from his Google Drive to at least three

11   different locations *at Rivos*. (Ex. 3 at 80:5-14; 80:22-81:4: 81:16-19.) Rivos only finally admitted

12   to these facts two days before, in a March 15, 2023 court-ordered supplemental interrogatory

13   responses: "Rivos understands that Ricky Wen transferred two .tar files from his personal Google

14   Drive to his                       email account, Rivos-issued work laptop (MacBook), and

15   individually-accessible home directory on Rivos NFS during his employment at Rivos." (Ex. 4 at

16   16.)

17      Mr. Wen also testified that in May 2022, about a month after this lawsuit was filed, he

18   *deleted* the unix.tar archive from his Rivos laptop, despite knowing he should not do so because of

19   the lawsuit. (Ex. 3 at 78:16-82:19; 87:6-10.) Mr. Wen placed the archive file in the Trash and

20   then emptied the Trash. (*Id.* at 84:6.) Mr. Wen testified that he deleted the files "Because I hated

21   myself." (*Id.* at 83:25-84:10.) He explained that he hated himself "[b]ecause I intentionally

22   copied more file [sic] than I wanted." (*Id.* at 84:18-20.) Mr. Wen testified that "After I deleted, I

23   hated myself even more," so he transferred a *new* copy of the unix.tar file from a thumb drive to

24   his Rivos laptop. (*Id.* at 83:25-84:10.) Mr. Wen's actions destroyed the metadata regarding his

25   access to the original unix.tar file on his Rivos laptop during his first nine months at Rivos. As

26   explained by forensic expert Dan Roffman, that metadata is now lost and cannot be recovered

27   through copies of the unix.tar file produced from other locations. (Roffman Dec. ¶¶ 6-7.)

28      Mr. Wen testified that he told counsel about these events almost immediately after they

1    occurred, in May 2022, yet they only came to light on March 17, 2023 after protracted discovery

2    including Apple moving to compel Mr. Wen's deposition.  (Ex. 3 at 89:12-90:14.)

3         The metadata for copies of the unix.tar file that do still exist show Mr. Wen did not merely

4    passively transfer it to his devices.  Rather he placed the unix.tar into folders called AAPL and

5    Rivos_Work, and then extracted individual files into each of those folders—including confidential

6    Apple Verilog files.  (Roffman Dec. ¶8

7         **C.    Mr. Pinot Told Rivos Within Days of the Lawsuit's Filing That He Had Apple**
         **Confidential Information on the Laptop he used for Work at Rivos**
8

9         Rivos and Quinn also knew shortly after the lawsuit was filed that at least Laurent Pinot

10   had accessed Apple confidential documents while working at Rivos.  In Mr. Pinot's deposition on

11   February 16, he testified that he *intentionally* kept documents he knew comprised Apple's

12   confidential information, including power grid specifications for several Apple SoCs and

13   proposals for future designs.  (Ex. 5 at 134:16-135:9.)  He also testified that he reviewed the

14   specification document—which he understood was Apple confidential and was plainly labeled as

15   such—while employed by Rivos and could not rule out that he may have done so repeatedly.  (*Id.*

16   at 147:7-20; 140:19-141:4.)  He admitted that he kept the document "

17                              ."  (*Id.* at 138:3-9.)[2]  And he admitted there were other Apple proprietary

18   documents he retained and reviewed while at Rivos, including confidential                          .

19   (*Id.* at 176:1-178:25.)  Mr. Pinot could not say how many Apple files he had reviewed and could

20   not even estimate whether it was less than          .  (*Id.* at 228:4-23.)

21        Mr. Pinot testified he told Rivos of these facts *within days of the lawsuit being filed*.  (*Id.* at

22   183:4-7, 9-10.)  This means that counsel for Mr. Pinot, Mr. Wen, and Rivos knew at least the

23   following by June 2022: (1) Mr. Wen had transferred an archive file containing Apple confidential

24   information onto his Rivos laptop on at least two occasions; (2) the original copy of the archive

25   file on the Rivos laptop had been deleted (and the metadata destroyed); (3) the new copy continued

26

27        [2] Mr. Pinot claimed he only intended to use the document for "formatting," but when
     pressed could not identify any unique formatting features of the document, only items like "table
28   of contents," "footnotes" and "page breaks."  (*See* Ex. 5 at 142:20-143:8; 145:12-147:1.)

to exist on at least the Rivos laptop; and (4) Mr. Pinot had accessed multiple Apple confidential

documents at Rivos.  As described below, over the next ten months Quinn concealed these facts

and made multiple false statements to Apple and the Court in an attempt to obstruct discovery and

persuade the Court to prematurely dismiss Apple's case.

> ### D.     Mr. Wen, Rivos, and Quinn Emanuel Counsel Made Multiple False Statements in Opposing Apple's Motion for a TRO and Expedited Discovery

Quinn and the Defendants did not just conceal these facts, they affirmatively

misrepresented them.  To overcome Apple's motion for a TRO and expedited discovery, Quinn

stated in their June 3, 2022 opposition that, "Rivos and Wen have already assured Apple that they

*are complying with their document preservation obligations*," and "[i]t is only when there is a

substantial, concrete reason to believe that evidence will be destroyed in spite of a litigation hold

that extraordinary relief is warranted."  (Dkt. 40 at 22 (emphasis added).)  Of course, that

destruction had already happened just weeks before.

Quinn also submitted a false declaration from Mr. Wen in which he claimed he had not

"accessed, used, transferred, or copied any Apple information from" his Google Drive account

since leaving Apple.  (Dkt. 40-2 at 2.)  But the truth was Mr. Wen had transferred the information

from his Google Drive to the Rivos laptop, to his home directory on Rivos' network, and to his

Rivos work email.  (Ex. 4 at 16.)  Mr. Wen now admits his declaration was false when he (through

his counsel) wrote it.  (Ex. 3. at 6-11, 13.)

Quinn also told the Court that "Apple's discovery motion is largely moot" because Rivos

would provide interrogatory responses regarding whether it had any Apple confidential documents

on its system and Mr. Wen would provide written responses regarding his retention or use of

Apple confidential information.  (Dkt. 40 at 22-23.)  But the Rivos interrogatory response served

by Quinn on June 15 simply lied about Mr. Wen's archive file.  It stated that after conducting an

investigation and interviewing the former Apple employees, "*Rivos has no knowledge of any*

*downloading, transfer or retention of any Apple confidential documents and conformation relating*

*to SoCs or SoC components on Rivos-issued devices or Rivos systems by any former Apple*

*employees*."  (Dkt. 117-2 at 5-6) (emphasis added).)  And Mr. Wen failed to mention anything at

1   all about the archive file in his June 15 responses, despite being served with three separate

2   interrogatories asking about his retention or transfer of Apple documents since leaving the

3   company.  (Ex. 6 at 5-8.)

4          In the same opposition brief, Quinn asserted multiple times that all of Mr. Wen's devices

5   had been imaged and that he no longer had access to Apple confidential documents.  (*See id.* at 4-

6   6.)  As Apple now knows, this was false as well.

7          Remarkably, in the same brief where it made these misrepresentations, Quinn was touting

8   its "good faith efforts to apprise Apple of their own investigation since the start of this litigation,"

9   stating that it hoped "the Court will provide it an opportunity to exit this lawsuit quickly based in

10  part on the cooperative voluntary investigation it is conducting now."  (Dkt. 40 at 1-2.)  In a

11  section entitled, "Defendants Will Voluntarily Provide Responsive Information in Good Faith"

12  Defendants argued their commitment to transparency rendered Apple's motion unnecessary:

13  "Defendants expect that their ongoing investigation and commitment to provide Apple with

14  prompt discovery responses will satisfy Apple's present demands and obviate the need for further

15  action by this Court on Apple's motion."  (*Id.* at 5-6.)  Again, Quinn stated that it was "hopeful

16  that the Court will consider Defendant's good faith efforts to resolve this matter."  (*Id*. at 6.)

17         At the June 16 hearing on Apple's motion, lead Quinn counsel Stephen Swedlow doubled

18  down on these false statements in arguing that no TRO or expedited discovery was necessary.

19  Mr. Swedlow claimed "Rivos and Mr. Wen are complying with their document preservation

20  obligations" and "[e]very access to whatever Apple identified has been cut off.  For every

21  employee where Apple identified a drive, that's already been imaged.  We already did all of that to

22  preserve everything."  (Dkt. 68-1 at 37:13-39:7.)  Mr. Swedlow assured the Court, "as an officer of

23  the court with 27 years of experience[,]" that there was no risk to Apple's trade secrets.  Mr.

24  Swedlow argued Apple's motion should be denied because "there wasn't, from the first day we got

25  involved, any risk that Apple's crown jewels are in jeopardy."  (*Id*. at 43:4-46:8.)

26         Mr. Swedlow also assured Apple and the Court that while Mr. Wen may have been in

27  possession of Apple documents, Mr. Wen "did not access them or use them or copy them.  He

28  didn't do anything with those documents, and whatever evidence exists now, Apple is going to get

it, Apple's lawyers are going to get it." (*Id.* at 43:15-18.)  He stated: "Mr. Wen can't get into his iCloud because we cut off his access.  Then he can't look at his own stuff anymore in case there are any Apple trade secrets in there.  He can't use any of the drives that we are turning over to the neutral third party investigator. So there's no risk there."  (*Id.* at 38:20-39:3.)

Mr. Swedlow also said "most of those files that Apple has listed in its own trade secret identification are Mr. Wen's personal banking records." (*Id.* at 42:24-43:3.)  Discovery has proven this statement to be blatantly false as well.  In comparison to the seven banking documents Defendants trumpeted in their opposition (Dkt. 46-4 at 5), Apple's forensic expert submitted a list of hundreds of confidential Apple he believed Mr. Wen had downloaded that were contained in his downloads and desktop folders, which discovery confirms Mr. Wen did in fact take.  (*See* Dkt. 22-5; Dkt. 22-3 ¶¶ 8-14; Roffman Dec. ¶ 20.)  Mr. Swedlow had to have known this at the time he made his statement because Defendant's forensic expert, Mike Kunkel, submitted a declaration in support of the opposition stating he had searched Mr. Wen's hard drive and it "contains multiple files identified in Appendix B to Mr. Roffman's declaration." (Dkt. 46-6 at 7-8, 12.)

**E.      Mr. Wen Stipulated and Was Ordered Not to Access Apple Information, Not to Delete it, and to Immediately Turn all Devices Over to FTI**

On June 17, 2022, Mr. Wen entered into a stipulation to avoid having a TRO entered against him. (Dkt. 55.)  On June 21, 2022, the Court entered that stipulation, ordering Mr. Wen to "immediately return" any Apple confidential information in his possession. (*Id.* ¶ 1.)  A second order required Mr. Wen to "promptly" provide to third party neutral vendor FTI "the devices listed below and any other devices which have ever been used to store or transmit Apple confidential information," along with passwords to the devices and any of Mr. Wen's "cloud-storage service that he used to store Apple confidential information." (Dkt. 67 ¶¶ 2, 4.)  In spite of these orders, Mr. Wen, through his counsel, brazenly retained possession of this material.

Four months later on October 17, 2022, FTI notified the parties that "FTI has not received custodian Wen's data," "has not received credentials necessary for FTI to forensically collect the files in custodian Wen's personal iCloud Drive accounts and Google Drive accounts," nor has it "received authorization from custodian Wen to perform remote cloud collections of custodian's

data." (Ex. 7.)  When Apple questioned how this could be when Wen was supposed to provide the devices to FTI right away, Quinn dismissed this as "an oversight." (Ex. 7.)  Quinn emphasized, "*Mr. Wen has not had access to the drives and accounts since they were collected,* well before the protocol was finalized.  Thus, *the data remains preserved and unaltered*." (*Id.* (emphasis added).)  It would take over six months from the entry of the Court's order before Apple finally was able to begin reviewing any of Mr. Wen's data.  (Dkt. 140 at 5.)  And as discussed below, this did not even include *six devices and accounts* to which Mr. Wen continued to have access until February 2023—eight months after the orders—or the copy of the archive file that remained on Mr. Wen's directory on the Rivos Network through the end of March 2023.

### F.    Rivos and its Counsel Continued to Make False Statements About Rivos' Preservation and Use of Apple Trade Secrets and Obstruct Discovery

In the meantime, Quinn, Rivos, and Mr. Wen continued to make misrepresentations to Apple and the Court.  On June 24, in a submission arguing again that expedited discovery was unnecessary, Rivos said "Rivos has committed to look for, sequester, and not use any Apple confidential or trade secret information, and *all of Defendants' devices and systems (including all devices identified by Apple within Defendants' possession, custody, or control) have been preserved and thus are not at risk of destruction*." (Dkt. 58 at 5 (emphasis added).)

On July 7, Apple served its second set of discovery requests on Rivos, including Interrogatory 6, which asked whether any documents had ever resided on Rivos devices or the Rivos network, *and whether any had been deleted*. (*See* Ex. 8.)  Rivos served a verified response on August 8.  Despite knowing that Mr. Wen's unix.tar archive file had been present on his laptop and deleted from it, Rivos mentioned neither. (Ex. 9.)

On July 18, in the parties' joint case management statement, Quinn stated: "Rivos and Wen strongly dispute Apple's statement above that "all four [former Apple employees] have confirmed retention of Apple confidential information after departing Apple and during their employment at Rivos."  They also claimed

> Rivos has preserved images of all Rivos-issued devices issued to former Apple employees who have received letters from Apple. Rivos has also instructed all such employees to preserve any potential evidence on personal devices. Where Rivos employees

have asked Rivos to image their personal devices, Rivos has done so. … **Apple's insinuations that Rivos' conduct somehow evidences "forensic evidence is destroyed" are, simply, without basis.**

(Dkt. 83 at 5-6.)  Defendants made this statement despite knowing for over a month that Mr. Wen had deleted the unix.tar archive and its metadata.

On November 2, Apple deposed Rivos CEO Puneet Kumar regarding the declaration he submitted in support of Rivos' opposition to Apple's TRO motion describing Rivos' purported investigation.[3]  Mr. Kumar described four files on Rivos' internal file system that contain the terms "Apple" and "confidential," stating that these files "are being investigated."  (Ex. 10 at 137:8-138:16.)  Prior to this testimony, Rivos had failed to mention to Apple the existence of these files, and had instead consistently represented that no Apple confidential information had been located on Rivos systems (including Dkt. 83 at 4; Dkt. 68-1 at 26:9-27; 14:6-12; Ex. 9 at 7-8).

On November 8, counsel for Defendants wrote "[c]ontrary to Apple's suggestion in its letter, Rivos and the individual defendants *are complying with their preservation obligations* and prior commitment to investigate Apple's allegations, *and to sequester any Apple confidential information located during that investigation*."  (Ex. 11 (emphasis added).)

### G.    Apple Was Forced to Move to Compel to Get Any Discovery, and Defendants' Counsel Made More False Statements in Connection with that Motion

The Defendants refused to provide any discovery, forcing Apple to move to compel on November 15, 2022.  (Dkt. 115.)  In opposition, Quinn stated unequivocally that "Wen's devices and accounts were sequestered and imaged immediately following Apple's filing of this lawsuit."  (Dkt. 116 at 4 n.1.)  At the December 1 hearing, Quinn counsel David Eiseman finally agreed to provide full responses to Apple's interrogatories and complete document production by January 17.  (Dkt. 129 at 9:15- 10:21.)  As shown below, even then they would not come clean.

---

[3] Apple sought this deposition first in June 2022 and it was ordered by Judge Cousins on July 8. (Dkt. 73.)  Apple took the deposition, but because Mr. Kumar refused to answer most of the questions on the basis of privilege, Apple was forced to move again on September 23, 2022 and Judge Cousins ordered a second deposition on October 4.  (Dkt. 103.)

**H.    In November 2022, Defendants Unilaterally "Remediated" Former Apple Employees' Devices by Deleting Apple Information and Returning Them**

By November 2022, Rivos, Ricky Wen, and their counsel had stated at least nine times that they were complying with their preservation obligations, and that no confidential information had been found on Rivos systems.  In fact, Rivos did not actually attempt to segregate devices or Apple confidential information from most of the former Apple employees until November 2022. At that point, Quinn and its vendor Setec performed a unilateral "remediation" in which they deleted Apple confidential documents from the devices of some of the former Apple employees. (Ex. 12.)  Rivos did this without knowledge or authorization from Apple and without consulting with Apple or the Court on an acceptable remediation protocol.  Apple did not learn about the deletion until February 24, 2023 when Quinn finally admitted it in response to Apple's questions about remediation discussed in Quinn's January 17, 2023 letter.  (Ex. 13.)

Counsel insists that its process was perfectly safe, because Setec is taking "pre- and post-remediation images" of the devices.  (Ex. 14 at 4.)  But on March 14, Defendants disclosed that their forensics consultant "has been unable to recover the pre-remediation image of Mr. Pinot's personal laptop taken in November 2022."  (*Id.* at 3-4.)  Mr. Pinot admitted this device contained Apple confidential information, and that he informed Rivos of that fact after this lawsuit was filed. (*Supra* Sec. II(C).)  Defendants claim nothing has been lost because the documents and metadata from that drive were allegedly transferred to "Setec's main computer[]" before the failure, but they have refused to provide that data to FTI. (Dkt. 164 at 20-21.)  And because Defendants concede they failed to capture Mac-specific metadata fields, that critical metadata—which would have shown when a document was accessed and where it came from—has now likely been lost. (Roffman Dec. ¶¶15-16.)

Rivos also has disclosed "that the post-remediation image of Mr. Rajamani's personal laptop taken in November 2022 appeared to have been corrupted and could not be opened using forensic tools."  (*Id.*)  Although Rivos then took another image, that image cannot prove whether the Apple Confidential information on Mr. Rajamani's laptop was actually deleted; indeed he could have had access to it since November 2022, when it was apparently returned to him.

Defendants have thus now lost at least two of the remediation images they created.  Apple has requested chain of custody information for these devices, to try to understand what might have happened, but the defendants have refused to provide it. (Ex. 29.)

**I.      Quinn, Wen, And Rivos Did Not Disclose Their Retention of Documents and Deletion of the Unix.tar File in the January 17, 2023 Supplemental Responses**

The January 17, 2023 supplemental interrogatory responses that Wen and Rivos agreed to provide on December 1 in order to resolve Apple's motions to compel once again failed to disclose any of these issues.  Mr. Wen's response again failed to disclose that he had retained, transferred, or deleted the unix.tar archive file.  (Ex. 15 at 5-8.)  Instead, the only update was to repeatedly state, falsely, that "All potential Apple documents retained by Mr. Wen and identified by his counsel have been segregated [and] can no longer be accessed by Wen or any other Rivos employee.  (*See id.*)  Rivos supplemented its response to Interrogatory 6, which asked about files that had ever resided on a Rivos device or system and whether any files had been deleted.  But its response once again did not mention the unix.tar archive file or its deletion.  (Ex. 16.)

**J.      Ricky Wen Refused to Appear for Deposition, Forcing Apple to Move**

Apple initially tried to take Mr. Wen's deposition in connection with its motion for expedited discovery filed May 20, 2022.  (Dkt. 23-1 at 1.)  Based on the many representations made by Mr. Wen and Quinn regarding their preservation and segregation of his documents, and the Court order requiring him to "immediately return" Apple documents (Dkt. 55), Apple deferred the deposition.  But Apple did not even start to get Mr. Wen's documents until December.  On January 13, 2023, Apple noticed his deposition for February 7.  On February 3, almost eight months after the Court ordered Mr. Wen to turn over his devices and accounts, Quinn notified Apple they had located four *more* devices for Mr. Wen—"an iMac, Mac Mini, iPhone, and a thumb drive" (*see* Dkt. 144 at 3), which they had never collected.  On February 24, 2023, they disclosed two more Wen accounts.  (Ex. 17.)  Mr. Wen had access to the Apple confidential information on these devices and accounts for nine months since this suit was filed.

At Quinn's request, Apple agreed to delay Mr. Wen's deposition twice—requesting only that it be taken prior to the motion to dismiss hearing on March 2.  (Dkt. 144 at 4-5.)  Ultimately

Apple agreed to take the deposition on February 28—a date that Defendants' counsel had offered. (*Id.* at 4.)  But Defendants' counsel simply refused to produce Mr. Wen for his deposition, stating that they would "provide his availability once we have an understanding of when we will be able to complete his custodial document production" and that "Apple has no legitimate reason for insisting on deposing Mr. Wen prior to the hearing on Defendants' motions [to dismiss]."  (Ex. 18.)  But at the hearing on the motion to dismiss, Defendants refused to withdraw their request that the Court dismiss the entire case without leave to amend, and for the first time at the hearing, asked the Court to stay all further discovery if it granted leave to amend.  (Ex. 19 at 73:19-74:22.)

Apple had no choice but to move to compel Mr. Wen to appear for his properly noticed deposition. (Dkt. 144.)  In opposition, Quinn once again falsely stated that all of the Apple confidential information had been segregated from Mr. Wen, arguing there was no urgency because "Mr. Wen cannot misappropriate confidential information from devices or accounts to which he does not have access."  (Dkt. 144 at 5.)  At the hearing, before ordering the deposition to go forward, Judge Cousins said to Defendants' counsel: "I want to know why the deposition didn't occur on February 28th and why I shouldn't sanction your side."  (Ex. 20 at 14:14-16.)

It is now clear why Defendants and their counsel were so set on delaying this deposition— it revealed their spoliation and that their many assurances that all Apple confidential information had been segregated, and that nothing had been found on Rivos-issued devices, were false.

### K.  Quinn and Defendants Continued to Misrepresent The Record At the Motion to Dismiss Hearing

The misrepresentations continued in Defendants' motion to dismiss.  Apple submitted a sur-reply brief identifying eight of the confidential code files from the unix.tar file, stating that it "now appears" these files were found "in Mr. Wen's directories on *Rivos' systems and Rivos-issued devices.*"  (Dkt. 145-3 at 7.)  Quinn lashed out, accusing Apple's counsel of "running to the Court with [an] unfounded and incorrect assumption," claiming the files were "stored on Ricky Wen's laptop, not Rivos' internal system."  (Dkt. 149 at 3-4 n.3.)  Just over two weeks later, Mr. Wen and Rivos admitted the files were on *both* his Rivos laptop, his directory in the Rivos internal system, *and* that Mr. Wen emailed the files to his Rivos work email.  (Ex. 15; Ex. 3.)  Quinn also

falsely stated that "the same metadata produced with these files showed that there were 'last accessed' *years* before Apple filed this lawsuit." (Dkt. 149 at 4.) In fact, as Quinn knew, the metadata for the files Mr. Wen originally transferred to his Rivos laptop had been *lost* because Mr. Wen deleted it. (Roffman Dec. ¶¶ 5-7, 11.) And even for the new files, Defendants did not produce the correct metadata that is needed to determine when the files were last opened in any event. (*Id*. ¶¶ 11-12.) Defendants instead mistakenly cited a "last modified" date to the Court, which says nothing about when the file was opened. (*See id.* ¶ 13.)

### L.   Multiple Former Apple Employees Have Had Access to Devices with Apple Confidential Information Since the Beginning of this Lawsuit, with Rivos' and its Counsel's Full Knowledge

Apple has now learned that *four* of the six Individual Defendants represented by Quinn have had ongoing access to Apple confidential information since this lawsuit began. On March 21, almost a year into the case, Defendants' counsel disclosed that, notwithstanding all of its statements to Apple and the Court about segregation, Rivos has continued to allow Wen, Pinot, Ye, and Rajamani access to devices that contain Apple confidential information. (Ex. 25.)

Rivos and its counsel knowingly allowed this to occur. Apparently to avoid depriving Rivos employees of their devices, Defendants imaged them, searched them using narrow terms, which were crafted by Quinn alone (*i.e.*, "Apple proprietary," "Apple confidential," "Apple trade secret," and "trade secret") that did not come close to capturing all Apple confidential information, deleted the resulting documents, imaged them again, and then *returned* the devices to the employees. Then, when Defendants later found and produced hundreds of Apple confidential documents on the device images in response to Apple's broader search terms, including Verilog code files, Defendants *did not go back* and demand that the employees return the devices. Rivos thus has been aware for months that many of its employees *currently* have access to these files and did not segregate the devices or otherwise cut off their access. Even when Apple insisted that the devices immediately be segregated Rivos hesitated. (Ex. 30.) Incredibly, in the case of Mr. Wen, Rivos argued they could not cut off access to his Rivos directory containing Apple's confidential documents because "Wen also has Rivos documents related to his ongoing Rivos work" in that same directory. (Ex. 12.) This co-mingling is not a valid excuse to refrain from segregating

1   documents that Rivos told the Court it had segregated back in June of 2022.

2         Defendants finally agreed to segregate all of the devices and accounts containing Apple

3   confidential documents on March 25.  But even that assertion proved incorrect as Quinn informed

4   Apple on March 27, 2023, the day before Mr. Rajamani's deposition, that he *still* had access to

5   Apple confidential information on his personal laptop.  (Ex. 21.)  That laptop has apparently now

6   been segregated, but counsel has conceded that Apple confidential files, and scripts that Mr.

7   Rajamani made using those files, remain on Rivos' systems and must be segregated. (*See* Ex. 22.)

8   ## III.    ARGUMENT

9         Defendants and their counsel should be sanctioned.  They willfully spoliated evidence,

10   made multiple misrepresentations to Apple and the Court, violated court orders, and have done

11   everything possible to delay and prevent Apple from recovering its trade secrets while trying to

12   prematurely obtain dismissal of this case.  Pursuant to Federal Rules of Civil Procedure 37(b) and

13   (e), 28 U.S.C. § 1927, and this Court's inherent power, Apple seeks sanctions against Defendants

14   Rivos and Ricky Wen, along with their counsel, Stephen Swedlow, David Eiseman, and Quinn

15   Emanuel, including (1) a finding that Mr. Wen and Rivos spoliated evidence, (2) an adverse

16   inference instruction against Mr. Wen and Rivos that Mr. Wen was accessing Apple confidential

17   documents in deleted archive file for his work at Rivos; (3) monetary sanctions against Ricky Wen

18   and Quinn Emanuel associated with their failure to comply with this Court's orders (Dkt. 55, 67);

19   and (4) sanctions against Stephen Swedlow, David Eiseman, and Quinn Emanuel in the form of

20   Apple's fees incurred due to counsel's vexatious and dishonest behavior.[4]

21   ### A.    Ricky Wen and Rivos Should be Sanctioned for Spoliating Evidence Vital to Apple's Case

22

23         After this lawsuit was filed and after both he and Rivos had received letters informing them

24   of his improper retention of Apple confidential information, Ricky Wen intentionally deleted from

25   ---

26   [4] Apple may be forced to move for additional sanctions in view of Defendants' unilateral deletion of documents, which it appears resulted in additional spoliation.  But Apple requires further discovery to determine what evidence has been lost.  Given Civil Local Rule 7-8's mandate that a party move for sanctions "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate," Apple is moving now with respect to the misconduct and spoliation Defendants and their counsel have committed to date.

27

28

his Rivos laptop a unix.tar file containing hundreds of Apple documents, including highly sensitive Verilog code files.  That deletion destroyed the metadata that would have shown what use Mr. Wen made of these files.  Because this information cannot be recovered and is not available through other discovery, Apple has been severely prejudiced in its ability to prove its case as to Mr. Wen's use of these files.  Apple is therefore entitled to an adverse inference that Mr. Wen accessed the Apple confidential information in the unix.tar file for his work at Rivos.  And because Rivos was aware of its and Mr. Wen's duty to preserve evidence, and failed to prevent Mr. Wen from spoliating, the adverse inference should be imputed to Rivos as well.

### 1.  Ricky Wen and Rivos Spoliated Evidence Under FRCP 37(e)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve [evidence,] . . . in pending or reasonably foreseeable litigation."  *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020).  Federal Rule of Civil Procedure 37(e) governs sanctions for a party's failure to preserve electronically stored information ("ESI").  Rule 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery."  *Porter v. City & Cty. of S.F.*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018).

#### (a)  Mr. Wen and Rivos Knew They Had a Duty to Preserve this Evidence and Did Not Take Reasonable Steps to Preserve it

There can be no question that Mr. Wen, Rivos, and Quinn were aware they had a duty to preserve the unix.tar file at the time Mr. Wen deleted it.  He did so a month after Apple filed suit, and after receiving a letter from Apple instructing him that he could not delete that information.  *See Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, at *5-6 (N.D. Cal. May 29, 2014) (spoliating party was aware of duty to preserve after receiving demand letter and after a TRO motion was filed against him).  Quinn, through Mr. Swedlow, confirmed Rivos' and Wen's understanding of their duties on May 11, 2022, claiming they were complying with their preservation obligations.  Mr. Wen testified he knew at the time that he deleted the files that he

1   was not supposed to, but he did it anyway.  (Ex. 3 at 87:6-10.)  Given that the deletion was

2   intentional, Mr. Wen clearly did not take reasonable steps to preserve this ESI.

3               **(b)     The Deleted Archive and its Metadata Cannot be Replaced
                         through other discovery**

4       The unix.tar archive with its associated metadata cannot be replaced through other

5   discovery.  (Roffman Dec. ¶¶ 6-7.)  Even were Rivos to produce other copies of the archive, they

6   would not provide the metadata to demonstrate when the original archive on Mr. Wen's Rivos

7   laptop was accessed, how often, and when it was added to a folder.  (*Id.* ¶ 7.)  The threshold

8   factors of Federal Rule 37(e) are met and destruction of ESI has occurred.

9       **2.     Apple Is Entitled to an Adverse Inference Against Mr. Wen That He
               Was Accessing Apple Confidential Information for his Work at Rivos**

10

11      Because Mr. Wen's and Rivos' spoliation has deprived Apple of key evidence needed to

12  establish Mr. Wen's use of Apple confidential information, an adverse inference is appropriate.

13      Spoliation of evidence raises a presumption that the destroyed ESI was both adverse to the

14  party that destroyed it and relevant to the merits of the case.  *Deerpoint Grp., Inc. v. Agrigenix,*

15  *LLC*, 2022 WL 16551632, at *13 (E.D. Cal. Oct. 31, 2022) (finding spoliation under Rule 37(e)

16  and ordering adverse inference instruction).  Under Federal Rule 37(e)(1), if ESI has been

17  destroyed and there is "prejudice to another party from loss of the information," the court may

18  order sanctions "to cure the prejudice."  If "the party acted with the intent to deprive another party

19  of the information's use in the litigation," the court may issue: (1) a presumption "that the lost

20  information was unfavorable to the party"; (2) a jury instruction "that it may or must presume the

21  information was unfavorable to the party"; or (3) a dismissal or default judgment."  Fed. R. Civ. P.

22  37(e)(2).  Prejudice is not required under Rule 37(e)(2), because a finding of intent "can support

23  not only an inference that the lost information was unfavorable to the party that intentionally

24  destroyed it, but also an inference that the opposing party was prejudiced by the loss of

25  information that would have favored its position."  *Porter*, 2018 WL 4215602, at *3.

26              **(a)     An Adverse Inference is Warranted Under Rule 37(e)(2)
                         Because Mr. Wen Acted with the Requisite Intent**

27

28      Ricky Wen intentionally spoliated the unix.tar file and associated metadata, causing severe

1    prejudice to Apple, and he deleted the file with the requisite intent to avoid his litigation

2    obligations.  "[C]ourts have found that a party's conduct satisfies Rule 37(e)(2)'s intent

3    requirement when the evidence shows or it is reasonable to infer, that a party purposefully

4    destroyed evidence to avoid its litigation obligations." *WeRide Corp. v. Kun Huang*, 2020 WL

5    1967209, at *12 (N.D. Cal. Apr. 24, 2020) (quoting *Porter*, 2018 4215602, at *3).  Intent may also

6    be inferred if a party is on notice that documents were potentially relevant and fails to take

7    measures to preserve them, or otherwise seeks to "keep incriminating facts out of evidence." *See*

8    *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *First Fin. Sec., Inc. v. Freedom Equity*

9    *Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding intentional deletion of text

10   messages by employees and issuing sanction of adverse inference against defendant employer).

11   Courts also consider the timing of the document loss when evaluating intent.  *Colonies Partner*,

12   2020 WL 1496444, at *11.

13        Mr. Wen's testimony demonstrates that he deleted the unix.tar archive intentionally and

14   with the understanding it was wrong.  He testified that he deleted the files "[b]ecause I hated

15   myself."  (Ex. 3 at 83:25-84:6.)  He explained that he hated himself "[b]ecause I intentionally

16   copied more file [sic] than I wanted."  (*Id*. 84:18-20.)  And he confirmed that when he deleted the

17   file, he understood he was not allowed to do that after the lawsuit was filed.  (*Id.* 87:6-10.)  This

18   was no mere negligence in letting data be automatically deleted – he affirmatively moved the file

19   to the trash and emptied it.  *See Skyline Adv. Tech. Servs. v. Shafer*, 2020 WL 13093877, at *12

20   (N.D. Cal. July 14, 2020) (granting mandatory presumption instruction where defendant purposely

21   deleted evidence and concealed the deletion); *See OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D.

22   367, 372-73 (D. Or. 2017) (finding intentional spoliation where former employee deleted relevant

23   documents after receiving demand letter regarding breach of contract and misappropriation).

24        Because Mr. Wen intended to deprive Apple of this evidence, an adverse inference is

25   warranted.  Apple therefore asks the Court to instruct the jury that (1) Mr. Wen had a duty to

26   preserve this data, (2) Mr. Wen intentionally deleted it, and (3) they should presume the lost

27   evidence would have been favorable to Apple.

28

1

**(b)      A Jury Instruction is Warranted Under Rule 37(e)(1) Because Apple has Been Prejudiced by the Loss of ESI**

An appropriate jury instruction may be warranted under Federal Rule 37(e)(1), even in the absence of intent, if necessary to cure the prejudice.  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1239–40 (N.D. Cal. 2022) (holding that a permissive instruction consistent with CACI 204 was an appropriate sanction under Rule 37(e)(1) for non-intentional spoliation).

Mr. Wen, Rivos, and Quinn knew they had an obligation to preserve relevant data, and Mr. Wen knew the Apple confidential files on his Rivos laptop were relevant. But he intentionally destroyed the unix.tar file, clearly disregarding his obligations to preserve it and the associated metadata. Mr. Wen's deletion of the unix.tar file, and his subsequent copying back of the file to his Rivos laptop, means that Apple does not have metadata for the original archive file that he brought from Apple to Rivos.  (Roffman Dec. ¶¶ 6-7.)  Nor does Apple have the metadata for the files Mr. Wen admitted he extracted from the original copy of the archive to his Rivos computer.  (*Id.*)  Mr. Wen apparently had access to this archive containing highly confidential Apple material for at least eight months prior to the deletion, and testified that he accessed the tar files at least "a few times" while working at Rivos.  (Ex. 3 at 90:15-17.)  But the metadata for these original files, which could have demonstrated when it was accessed and how often, where it was downloaded from, and when it was added to a folder, has been permanently lost.  (Roffman Dec. ¶¶ 6-7, 12.)

Thus, even were the Court to find that Mr. Wen did not intend to deprive Apple of evidence, Apple is entitled to a "permissive" inference jury instruction that informs the jury Mr. Wen had a duty to preserve evidence, and that the jury may consider whether Mr. Wen intentionally concealed or destroyed evidence, and if the jury concludes he did so, it may decide that the evidence would have been unfavorable to Apple.

**3.      The Adverse Inference Should be Imputed to Rivos**

"[A]n employee's misconduct with regard to spoliation can be imputed to an employer." *Colonies Partners*, 2020 WL 1496444, at *9–10.  An entity and employee defendants can both be under a duty to preserve, and therefore culpable for spoliation of ESI, even if one or the other is directly responsible for the destruction of evidence.  *See First Fin. Sec., Inc.,* 2016 WL 5870218,

at *3 (imposing adverse inference and monetary sanctions against defendant employer that failed to preserve employees' text messages); *Laub v. Horbaczewski,* 2020 WL 7978227, at *19 (C.D. Cal. Nov. 17, 2020) (imputing spoliation of third party "key player in the case" to Defendant).

This case is remarkably like *Colonies*. There, an individual defendant-employee (Ramos) of the County-defendant deleted an email account after the litigation was filed. The Court found spoliation, ordered an adverse inference instruction, and imputed that instruction to the County, in addition to Ramos. As the court explained, "[t]he County was responsible for notifying its employees to preserve potentially relevant ESI, and counsel should have done the same for Ramos, because Ramos was named as a separate defendant." *Colonies Partners*, 2020 WL 1496444, at *8. The court reached this conclusion because "Ramos was an employee of the County engaging in County business and business that implicated Plaintiffs on his devices and campaign email." *Id.* The court therefore concluded "a duty to preserve ESI can be imputed to the County," and because Ramos intended to deprive plaintiff of the deleted evidence, the court imputed that intent to the County, on the basis that the County "failed to prevent the destruction of the ESI." *Id.*, at *10. The court found notable that "both the County and Ramos are represented by the same counsel." *Id.*, at *1.

Here, Ricky Wen and Rivos are represented by the same counsel as were the individual and County-defendant in *Colonies*. *Id.* Both were undoubtedly on notice of litigation after the complaint was filed, and Rivos failed to prevent Mr. Wen from deleting the unix.tar file. Also relevant here, however, is that Rivos and Quinn were aware of Mr. Wen's deletion of documents from his Rivos laptop and not only concealed it for nearly a year, but repeatedly represented that all of the Wen and Rivos documents had been preserved when they knew this was false. The adverse inference should therefore apply to both Defendants.

## B.   Ricky Wen and Quinn Emanuel Should be Sanctioned for Repeatedly Violating this Court's Orders

Ricky Wen, through the direction and assistance of Quinn, has repeatedly violated this Court's orders requiring him to "immediately" hand over all devices containing Apple confidential information. A court may impose sanctions as part of its inherent power to manage its docket,

1    *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), and pursuant to Rule 37, against a party who

2    "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).

3           The Court's June 21 order required Mr. Wen to "immediately return" any Apple

4    confidential information in his possession.  (Dkt. 55 ¶ 1.)  A second order required Mr. Wen to

5    "promptly" provide to FTI "the devices listed below and any other devices which have ever been

6    used to store or transmit Apple confidential information," along with the passwords needed to

7    access them and any of Mr. Wen's "cloud-storage service that he used to store Apple confidential

8    information."  (Dkt. 67 ¶¶ 2, 4.)  Mr. Wen admitted that, despite receiving these court orders, he

9    did not do anything, alone or in conjunction with a vendor or counsel, to search to determine

10   whether he had any other confidential information belonging to Apple.  (Ex. 3 at 265:21-268:18.)

11          In addition, Wen and his counsel initially failed to provide even the devices and accounts

12   that had specifically been called out in the Court order to FTI for nearly four months.  Quinn

13   provided no explanation as to their "oversight."  (Ex. 7; *De Abadia-Peixoto v. U.S. Dep't of

14   Homeland Sec.*, 2013 WL 4511925, at *2 (N.D. Cal. 2013) ("In the era of e-discovery, attorneys

15   must take 'responsibility for ensuring that their clients conduct a comprehensive and appropriate

16   document search.'").  Then, eight months after the orders were entered, Mr. Wen and counsel

17   revealed in February 2023 that Mr. Wen had *six* additional devices and accounts that contain

18   Apple information, and which had not been preserved or segregated for the duration of the lawsuit.

19   Those devices have now been turned over to FTI, but counsel *still* has not finished producing

20   documents from the devices and has failed to provide the metadata necessary to understand what

21   use Mr. Wen and others at Rivos made of the information they contain.  (*See* Roffman Dec. ¶¶ 6-

22   12.)  And on March 17, 2023, Mr. Wen testified he still had access to the copy of the unix.tar file

23   that he placed on Rivos' network, and that he believed he had access to the email that he sent to

24   his Rivos work email attaching the archive file.  (Ex. 3 at 180:5-25.)  Mr. Wen and his counsel

25   therefore violated the Court's orders repeatedly.

26          Rule 37 mandates the imposition of monetary sanctions on a party that fails to obey a

27   discovery order, and "the court must order the disobedient party, the attorney advising that party,

28   or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of expenses unjust."
*Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 7398791, at *5–*6 (N.D. Cal. Dec. 17, 2020)
(finding attorney and client jointly and severally liable for fees award); Fed. R. Civ. P.
37(b)(2)(A), (C).  "Willfulness, fault[,] or bad faith is not required for the imposition of
monetary sanctions under Rule 37(b)(2)."  *In re NCAA Student-Athlete Name & Likeness
Licensing Litig.*, 2012 WL 5372477, at *6 (N.D. Cal. Oct. 30, 2012).

Apple seeks recovery of $148,214.38 in fees and $14,601.30 in costs incurred in
attempting to enforce Mr. Wen's compliance with the court's orders since their entry in June and
July 2022, including fees and costs for this motion.  (Wilson Dec. at ¶ 49 & Ex. 27(quantifying
fees and costs).)

### C.  Stephen Swedlow and David Eiseman of Quinn Emanuel Should be Sanctioned under 28 U.S.C. 1927 and this Court's Inherent Authority

From the moment they were hired, Quinn attorneys have been obstructing and delaying
discovery and making repeated false statements to the Court.  And as Apple has now confirmed,
they have allowed **four of the six** individual defendants continued access to Apple confidential
information while working at Rivos for nearly a year after this lawsuit was filed.  This revelation
comes after Mr. Swedlow and Mr. Eiseman repeatedly assured the court that no early discovery
was necessary, that Apple's concerns were overblown, and that the case should be dismissed, all
while they knew the opposite to be true.

Under 28 U.S.C. § 1927, courts may order an attorney "who so multiplies the proceedings
in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and
attorneys' fees reasonably incurred because of such conduct."  *Blixseth v. Yellowstone Mtn. Club*,
796 F.3d 1004, 1007 (9th Cir. 2015). Section 1927 applies broadly to unnecessary tactics once a
lawsuit has begun, including knowing and reckless misrepresentation of the facts.  *Id.* at 1007.
Courts can also impose monetary sanctions under their inherent powers "when a party has 'acted
in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46; *Fink
v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (sanctions appropriate if an attorney engages in
conduct "tantamount to bad faith.").  This encompasses a "broad range of willful improper

1  conduct," including making misrepresentations to the Court.  *See Fink* at 992, 994.

2          **1.    Stephen Swedlow, David Eiseman, and Quinn Repeatedly Lied to the**
          **Court About Rivos' and the Individual Defendants' Segregation and**
3          **Preservation Efforts**

4          As described above, Quinn counsel Stephen Swedlow and David Eiseman made multiple

5  statements to the Court that they knew at the time were false, including the following:

6          •    Making multiple false statements, in writing to Apple and the Court and at oral

7  argument that Rivos and Wen had fully complied with their preservation obligations, despite

8  knowing that Mr. Wen had intentionally deleted the unix.tar file from his Rivos laptop.  (*See* Dkt.

9  40 at 22 n.6; Dkt. 68-1 at 37:13-9, 39:4-7; Dkt. 58 at 5; Dkt. 83 at 5-6 ("Apple's insinuations that

10  Rivos' conduct somehow evidences 'forensic evidence is destroyed' are, simply, without basis").

11          •    Failing to disclose the deletion of the unix.tar file or its presence on a Rivos device and

12  the Rivos network in either Rivos's August 8, 2022 initial interrogatory response and January 17,

13  2023 supplemental response in response to an interrogatory that directly called for that

14  information.  (*See* Ex. 16.)

15          •    Falsely stating multiple times that there were no Apple confidential documents that had

16  ever been transferred to or found on Rivos' systems, including in a June 3 declaration from Mr.

17  Wen stating that he had not "accessed, used, transferred or copied any Apple information from"

18  his Google drive since leaving Apple (Dkt. 40-2 ¶ 8); in a June 15 sur-reply brief to the Court

19  (Dkt. 40-2 at 3) in a June 15 interrogatory response from Rivos (Ex. 24); and at the June 16

20  hearing (Dkt. 68-1 at 45-46:4).  Quinn also failed to disclose the transfer of the unix.tar file from

21  Mr. Wen to Rivos in Mr. Wen's interrogatory responses.  (*See* Ex. 16 at 5-8.)

22          •    Falsely stating at the June 16 hearing that "most of the files" Apple had identified that

23  Mr. Wen retained were his "personal banking records."  (Dkt. 68-1 at 42:24-43:3.)

24          •    Falsely stating on multiple occasions that all of Mr. Wen's devices and accounts had

25  been imaged and segregated, including in the June 3 opposition to Apple's TRO (Dkt. 40 at 1, 4-

26  7), the June 16 hearing (Dkt. 68-1 at 39:4-7); the June 24 submission (Dkt. 58 at 5); the July 18

27  statement (Dkt. 83); an October 21 email (Ex. 23); a November 8 letter (Ex. 11); a November 15

28  opposition (Dkt. 116 at 4); the January 17, 2023 interrogatory responses (Ex. 15); and the February

24 opposition to Apple's motion to compel Mr. Wen's deposition (Dkt. 144 at 5).

- Failing to comply with court orders requiring Mr. Wen to "immediately return to Apple" all Apple confidential information and to provide all "devices which have ever been used to store or transmit Apple confidential information" and credentials to FTI.  (Dkts. 55, 67.)

- Falsely stating on February 28, in attempting to obtain dismissal of Apple's claims *with prejudice*, that the unix.tar archive files were never on Mr. Wen's folder on the Rivos network and that the metadata showed they had last been accessed years before. (Dkt. 149 at 3-4.)

### 2. Mr. Swedlow, Mr. Eiseman, and Quinn Emanuel Should be Sanctioned Under 28 USC 1927 and the Court's Inherent Authority

Mr. Swedlow, Mr. Eiseman, and Quinn Emanuel have engaged in a pattern of obstruction and lies that more than demonstrates bad faith sufficient to warrant sanctions. The Court may find bad faith where "a party misrepresents the law or the facts to the court." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 1871107, at *20 (N.D. Cal. Feb. 9, 2023).  Sanctions may also be imposed for "delaying or disrupting the litigation or hampering enforcement of a court order." *Fink*, 239 F.3d at 994; *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 5372477, at *6 (sanctioning attorney for failure to respond to court orders and repeated misrepresentations to the court); *Spiers v. City & Cnty. of San Francisco*, 2022 WL 612663, at *2 (N.D. Cal. Mar. 1, 2022) (attorney sanctioned where party represented they did not have documents but later produced them); *In re Facebook*, 2023 WL 1871107, at *23 (sanctioning counsel that refused to produce key evidence, noting "[t]his conduct is symptomatic of their larger strategy: object first, investigate later (and only when forced)."); *Sweet People Apparel, Inc. v. Saza Jeans, Inc.*, 2016 WL 6053958, at *2 (C.D. Cal. May 25, 2016) (sanctioning law firm).

Here, counsel made repeated false statements to Apple and the Court.  They made these statements to convince the Court not to order a TRO or expedited discovery, to avoid responding to Apple's interrogatories and document requests, and to try to obtain an order dismissing the case with prejudice before the bad facts were revealed.  And they aided Mr. Wen in violating this Court's orders by not bothering to investigate whether their client still had access to Apple confidential information, while Mr. Eiseman claimed they were "ben[ding] over backwards" and

asked the Court to let Rivos out of the case due to their supposed "transparency." (Ex. 26 at 17:25-18:5; Dkt. 40 at 1-2, 5-6).  Quinn's bad faith is plain. *See Knickerbocker v. Corinthian Colleges,* 298 F.R.D. 670, 681 (W.D. Wash. 2014) (sanctioning counsel for bad faith due to their "lackluster search for documents," "deletion of evidence, refusal to cooperate with Plaintiffs in the discovery process… reliance on a recklessly false declaration, shifting litigation positions, and inaccurate representations to the court"); *Guifu Li v. A Perfect Day Franchise, Inc,* 281 F.R.D. 373, 396 (N.D. Cal. 2012) (sanctioning attorney for delay in production for over six months and "refusing to turn over discovery which was ordered by the Court.").

### 3.     Apple is Entitled to Monetary Sanctions

Apple is entitled to the attorneys' fees it was forced to incur as a result of Quinn's misconduct.  *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).  In particular, Apple seeks fees in connection with the motion to compel a deposition of Ricky Wen.  Apple first sought to depose Mr. Wen in May 2022, and after counsel made multiple false statements to the Court about preservation of evidence and Mr. Wen's supposed lack of access to Apple information, that deposition did not go forward.  Then, when Apple tried to depose Mr. Wen in February 2023 prior to the motion to dismiss hearing, Quinn repeatedly pushed back the deposition and finally refused to make Mr. Wen available, forcing Apple to move.  Once Mr. Wen was finally deposed, it became clear why Defendants delayed.  The measure of sanctions Apple seeks is conservative given that counsel's behavior has multiplied the proceedings in this case substantially and delayed any meaningfully discovery for many months, as Mr. Swedlow, Mr. Eiseman, and Quinn would only take action when ordered by the Court.  As discussed above in Section III(B), Apple is also entitled to is fees and costs for this motion. (Wilson Dec. ¶ 33-54.)

## IV.     CONCLUSION

Defendants Rivos, Wen, and their counsel Quinn, portrayed themselves to the Court as transparent, voluntarily sharing the results of their investigation, and fully cooperating with discovery.  But they were the polar opposite, not just concealing bad facts and the deletion of documents but making repeated affirmative misrepresentations to Apple and the Court.  They should be sanctioned for their knowing and deliberate misconduct.

1

Dated:     April 1, 2023               Respectfully submitted,

2

                                                 MORRISON & FOERSTER LLP

3

4

                                               By: *Mary Prendergast*
                                                     Mary Prendergast

5

                                               Attorney for Plaintiff

6

                                             APPLE INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28