1   BRYAN WILSON (CA SBN 138842)
    BWilson@mofo.com
2   KENNETH A. KUWAYTI (CA SBN 145384)
    KKuwayti@mofo.com
3   MORRISON & FOERSTER LLP
    755 Page Mill Road
4   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
5   Facsimile:  650.494.0792

6   ARTURO J. GONZALEZ (CA SBN 121490)
    AGonzalez@mofo.com
7   MORRISON & FOERSTER LLP
    425 Market Street
8   San Francisco, California 94105-2482
    Telephone: 415.268.7000
9   Facsimile:  415.268.7522

10  MARY PRENDERGAST (CA SBN 272737)
    MPrendergast@mofo.com
11  MORRISON & FOERSTER LLP
    2100 L Street, NW, Suite 900
12  Washington, District of Columbia 20037
    Telephone: 202.887.1500
13  Facsimile:  202.887.0763

14  Attorneys for Plaintiff
    APPLE INC.

15

16              UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18                  SAN JOSE DIVISION

| 19 | APPLE INC., a California corporation, | Case No. 5:22-cv-2637-EJD |
|---|---|---|
| 20 | Plaintiffs, | DECLARATION OF DANIEL ROFFMAN |
| 21 | v. | **IN SUPPORT OF APPLE INC.'S** **MOTION FOR SANCTIONS** |
| 22 | RIVOS, INC., a Delaware corporation; WEN | |
| 23 | SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT | |
| 24 | PINOT; PRABHU RAJAMANI; and KAI WANG,, | |
| 25 | Defendants. | |
| 26 | | |

27

28

I, Daniel Roffman, declare as follows:

1.    I am a Vice President in the Forensic Services Practice at Charles River Associates, Inc. ("CRA"). I have over 20 years of digital forensics and information security consulting experience, helping clients protect their most valuable information, and investigating allegations of cyber incidents. My primary job duties involve leading digital forensic investigations and providing expert advice or testimony for clients.

2.    In my previous employments, I was a Senior Managing Director at FTI Consulting in their digital forensics practice for the last 15 years. I also previously worked in the High Technology Investigations Unit of the Criminal Division of the US Department of Justice. At the DOJ, I assisted in investigations and developed software that was used to track IP addresses and websites that the DOJ investigators analyzed. I have extensive testimony experience and have served as a court-appointed neutral expert in matters involving deletion, alteration, and recovery of emails. I am a recognized thought leader in the industry; a frequently requested speaker at conferences; an author of numerous articles and whitepapers on digital forensics, cybersecurity, and trade secret theft; and an innovator in developing unique technical solutions for our clients.

3.    I hold a bachelor's degree in Information Systems from the University of Maryland, as well as the EnCase Certified Examiner certification for complex computer investigations and analysis. I have been recognized seven times by Who's Who Legal, an organization that identifies the foremost legal practitioners and consulting experts based upon comprehensive, independent research.

I.    **BACKGROUND**

4.    CRA was retained by Morrison & Foerster LLP on behalf of their client, Apple Inc. ("Apple") in connection with an investigation into the departure of over 40 former Apple employees who have joined Rivos, Inc. ("Rivos"). I have led CRA's investigation since the inception of the matter. CRA is being compensated on an hourly basis at rates ranging between $446.25 and $705.50 an hour for our time and our compensation is not tied to the outcome of the investigation.

1    5.    I attended Ricky Wen's deposition over the internet by reviewing the RealTime

2    transcript as the deposition was occurring. I understand that Mr. Wen admitted to transferring a

3    unix.tar.gz file (hereafter, referred to as the "Wen Unix.Tar File") from his Apple computer to

4    several sources, including USB devices and cloud storage sites. I understand that Mr. Wen further

5    testified that he sent the Wen Unix.Tar File from Google Drive to his Rivos computer, and then

6    extracted the contents. Mr. Wen testified further that he deleted the folder where the Wen

7    Unix.Tar File resided after becoming aware of the lawsuit on this matter, then transferred another

8    copy of the Wen Unix.Tar File back to his Rivos computer from a USB drive.

9    6.    The Wen Unix.Tar File was a container file, like a zip file, that contained more

10   than a thousand files. I have reviewed many of these files, at least some of which are marked

11   Apple confidential and trade secret. Because Mr. Wen deleted the Wen Unix.Tar File, and the

12   folder it resided in, many of the metadata fields that would show information about Mr. Wen's

13   actions with regards to the Wen Unix.Tar File and the files within it that Mr. Wen admitted he

14   extracted to his Rivos computer have now been lost. Because he copied the Wen Unix.Tar File

15   back to his Rivos computer, if those new copies are produced, the metadata produced from Mr.

16   Wen's Rivos computer will reflect the dates and times Mr. Wen interacted with the new copy of

17   the Wen Unix.Tar File, not the original copy of the Wen Unix.Tar File.

18   7.    I have reviewed Defendants' productions labeled VOL0001 to VOL0020 to

19   understand Defendants' actions with respect to Apple's confidential information. However,

20   because of Mr. Wen's actions in copying back a new copy of the Wen Unix.Tar File, I do not

21   have metadata for the original Wen Unix.Tar File that he brought from Apple to Rivos, or the

22   files Mr. Wen admitted that he extracted from the original copy of the Wen Unix.Tar File to his

23   Rivos computer that he used during the first nine months of his employment. Based on Mr. Wen's

24   testimony, I believe the metadata for these original files has been permanently lost.

25   8.    In addition, the metadata that still exists for other copies of the files that were not

26   deleted shows that Mr. Wen did not just passively transfer the Wen Unix Tar File to his devices.

27   Instead, as explained below, he placed the entire Wen Unix Tar File into folders labeled "AAPL"

28   and "Rivos_Work" and then extracted certain individual files from the Wen Unix Tar File into

1  each of those folders.  Among the individual files that he extracted in both the AAPL and

2  Rivos_Work folders were Apple Verilog files.  I explain my methodology for determining this

3  below.

4       9.     While Defendants have not produced the metadata for each of the duplicate files,

5  they have produced the file path where each duplicate was found. One of the analyses I performed

6  sought to find a complete list of produced files by separating the duplicate files that were

7  otherwise combined into one production field. Once separated, I was able to create a full list of

8  the files produced and I filtered this down to specific folders to better understand the custodian's

9  actions. From this, I learned that Mr. Wen maintained a copy of the Wen Unix.Tar File in three

10  folders on his Rivos computer – within an AAPL folder, within a Rivos_Work folder, and within

11  a folder path that appeared to back up the "Rivos_Work" folder to another location titled

12  "Existing Files." At his deposition, Mr. Wen admitted to using five configuration files and one

13  script to set up his Rivos Linux environment. However, the production metadata suggests broader

14  use than Mr. Wen conceded. My analysis of the production metadata found that the AAPL and

15  Rivos_Work folder contained extracted copies of some but not all of the files within the Wen

16  Unix.Tar File. Importantly, the files extracted in each folder go beyond the basic Linux

17  configuration files that Mr. Wen testified to using.  Among the individually extracted files on the

18  AAPL and Rivos_Work folders are Apple Verilog files that are marked "trade secret" and

19  "confidential."

20       10.     Further, I compared the files extracted from the Wen Unix.Tar File to the AAPL

21  and Rivos_Work folders.  While there was overlap, the list of files extracted to each were not

22  identical.  The files extracted to the Rivos_Work folder were also extracted to the AAPL folder,

23  but the AAPL folder contained additional files extracted from the Wen Unix.Tar File that were

24  not extracted to the Rivos_Work folder. Moreover, neither the AAPL or the Rivos_Work folders

25  appear to contain the full set of files in the Wen Unix.Tar File. The implication of this is that Mr.

26  Wen did not simply extract the entirety of the Wen Unix.Tar File and then copy the entire

27  directory (including the Wen Unix.Tar File) to a new directory named Rivos_Work. Mr. Wen was

28

1  asked in his deposition about the disparity between these folders and he could not explain why

2  there were differences.

3        11.     I have reviewed Defendants' Opposition To Apple's Motion For Leave To File

4  Sur-Reply and understand that, in commenting on nine files that Apple referenced, eight of which

5  that came from the Wen Unix.Tar File, Rivos took the position "that the same metadata produced

6  with these files shows that they were 'last accessed' *years before* Apple filed this lawsuit." This

7  statement cannot be true. First, as mentioned above, Mr. Wen testified that he deleted the entire

8  folder where the Wen Unix.Tar File existed after this action was filed and that he put the files

9  back by copying the Wen Unix.Tar File from a USB device later that evening. Thus, the metadata

10  produced for the eight files from the Wen Unix.Tar File does not reflect the original copies of the

11  files that Mr. Wen placed onto his Rivos computer, extracted, and used during his first nine

12  months at Rivos.

13        12.     Second, Defendants' Counsel cited 'last accessed' dates as a basis to determine

14  that the files in question were not accessed for years before Apple filed this lawsuit. However,

15  none of the eight documents that originated from the Wen Unix.Tar File that Apple cited had a

16  last accessed date produced by Rivos. Only the ninth file, RIVOS_0110459, which did not come

17  from the Wen Unix.Tar File, had a last accessed date metadata field that was produced.

18        13.     To support their position, Rivos provided two examples pertaining to the Wen

19  Unix.Tar File. "The Verilog file produced at RIVOS_0110163 was last accessed over a decade

20  ago, on October 23, 2012. The most recently-accessed file, RIVOS_0110728, was last accessed

21  on August 22, 2020, a year before Mr.Wen accepted a position at Rivos." The dates cited by

22  Rivos are last modification dates, not last accessed dates. This means that Mr. Wen hasn't

23  changed these files since Mr. Wen left Apple, but doesn't tell us whether Mr. Wen opened or

24  otherwise used these files. Given Mr. Wen's testimony that he deleted the folder containing the

25  original Wen Unix.Tar File and then put a new copy back, it is hardly surprising that the new

26  copies have not been modified since before Mr. Wen left Apple. Below is a chart of produced

27  metadata showing the last modification date and last accessed date metadata fields for each of the

28  eight files cited by Apple that originated from the Wen Unix.Tar File.

| Begin Bates | Date Last Modified | Date Last Accessed |
|---|---|---|
| RIVOS_0110163 | 10/23/12 | |
| RIVOS_0110184 | 1/22/15 | |
| RIVOS_0110185 | 1/22/15 | |
| RIVOS_0110194 | 1/30/15 | |
| RIVOS_0110465 | 5/12/20 | |
| RIVOS_0110728 | 8/22/20 | |
| RIVOS_0197012 | 6/2/16 | |
| RIVOS_0197018 | 8/11/16 | |

14.     Just as importantly, even if we had the "last accessed" date metadata field for every duplicate, Rivos Counsel misinterprets this 'last accessed' date field to equate to when a file was opened. The last accessed date on Apple systems is not always an indication that the user opened a file. Testing performed by colleagues at my direction has shown that depending on the file type and software being used, opening a file does not update the last accessed date for a file. In other words, even if the file was opened by the user, the last accessed date metadata field does not always reflect that.

15.     Apple operating systems do contain different metadata from Windows-based systems that reflect when a file was opened. This metadata has not been produced by Defendants, however. Specifically, the MacOS and iOS feature named "Spotlight" indexes the contents of the device and stores many metadata fields that are not part of the file system. The Spotlight metadata field named kMDItemLastUsedDate will record when the file was last opened by the user. In addition to that, another Spotlight Metadata field, kMDItemUsedDates, contains a list of dates that the specific file was opened by the user. Similarly, a metadata field named kMDItemUseCount may indicate the number of times a file was opened. The Spotlight metadata field kMDItemWhereFroms can contain information showing from where a file was downloaded. Finally, the Spotlight metadata field named kMDItemDateAdded (along with the "Date Added" metadata field in the file system) record the date and time a file was added to a particular folder, which is of particular importance because creation dates are preserved when copying files on an Apple operating system, unlike how they work on Windows-based systems. None of the above

1  mentioned fields were produced, which would paint a picture of where Mr. Wen downloaded the

2  Wen Unix.Tar File, when he downloaded it, and when he opened the files.  These are the fields

3  that one would need to look at to determine when the files were last opened, but none of them

4  have been produced by the Defendants.  These are also the metadata fields that would have been

5  deleted when Mr. Wen deleted the original Wen Unix.Tar File from his Rivos laptop.

6      16.    In Defendants' Opposition To Apple's Motion For Leave To File Sur-Reply, filed

7  on February 28, 2023, they stated that "All of the files identified in the Wilson Declaration (Dkt.

8  142-1) were stored on Ricky Wen's laptop, not Rivos' internal system." However, just over two

9  weeks later, they contradicted this statement in their March 15, 2023 Supplemental Response to

10  Interrogatory No. 2, where they stated, "Rivos understands that Ricky Wen transferred two .tar

11  files from his personal Google Drive to his shwen@rivosinc.com email account, Rivos-issued

12  work laptop (MacBook), and individually-accessible home directory on Rivos NFS[1] during his

13  employment at Rivos." Based on this interrogatory response and my review of the contents of the

14  Wen Unix.Tar File, I believe that Apple confidential data resides on Rivos' internal systems, such

15  as their NFS.

16      17.    In addition. based upon Rivos' March 15, 2023 Supplemental Response to

17  Interrogatory No. 2 and Wen's testimony, that he emailed the Wen Unix.Tar File to his Rivos

18  email, I understand based on these statements that Rivos' email system contains a copy of Apple's

19  confidential files that were stored within the Wen Unix.Tar File. This is another location on

20  Rivos' internal systems where the Wen.Unix.Tar File was located. I understand that Rivos had

21  not produced the email containing the Wen Unix.Tar File prior to Mr. Wen's deposition. I further

22  understand that Apple's Counsel has asked Rivos' Counsel to produce the email containing the

23  Wen Unix.Tar File. I have reviewed correspondence between Elle Wang at Quinn Emanual and

24  Kenneth Kuwayti at Morrison & Foerster and understand that as of Monday, March 27, 2023 at

25  7:13 PM Pacific Time, Rivos' Counsel stated they were "still trying to locate the email referred to

26  by Mr. Wen, and we will produce it once we locate it."

27

28  [1] NFS stands for Network File System

18.     I have reviewed the January 17, 2023, Eiseman letter to Bryan Wilson, March 14, 2023, Eiseman letter to Mary Prendergast, and the March 15, 2023, Athena Dalton letter to Meredith [sic] Prendergast. I understand based on these letters that Rivos has deleted some Apple information from at least some portion of the devices used by the now former Apple employees. I understand that Rivos did not confer with Apple, its Counsel, or myself regarding which files to delete or how to perform the deletion. It is typical on matters involving the misappropriation of trade secrets to agree to a protocol for such a deletion to ensure that all parties are satisfied with the process being used. I understand that Rivos took a pre-remediation image of each computer prior to deleting any files. It is not clear whether this image is in addition to any other pre-remediation images that Rivos made earlier in this action. In the March 14, 2023, Eiseman letter to Mary Prendergast, Eiseman wrote:

> Please note that, due to a technical failure of one of its external hard drives, Setec has been unable to recover the pre-remediation image of Mr. Pinot's personal laptop taken in November 2022. This hard drive failure did not, however, result in any loss of documents or associated metadata, which were all uploaded and exported to Setec's main computers shortly after the device was imaged prior to remediation. Nor did the hard drive failure impact the post- remediation image of Mr. Pinot's personal laptop, which will be provided to FTI.

19.     Because Rivos has not produced the metadata discussed above, namely the kMDItemLastUsedDate, kMDItemUsedDates, kMDItemUseCount, kMDItemWhereFroms, kMDItemDateAdded, I believe based on Eiseman's statement above that this data has now been lost for the files that Rivos unilaterally chose to delete. Further the loss of this information was avoidable had Rivos followed best practices within the forensic industry, including making backup copies of forensic images to avoid a single point of failure. Had Rivos just segregated Pinot's personal computer and not unilaterally chosen to delete files, the above metadata would still be available, as would the forensic image that would likely contain other temporal logs, such as FS Events or Apple Unified Logs, which can show things like file copying, mass deletions, and

1   insertion of USB devices. It is likely that these temporal logs have now been lost as a result of the

2   loss of the pre-remediation image.

3         20.     In my May 20, 2022 declaration, I wrote that Mr. Wen copied his iMac's Desktop

4   and Downloads folders to an external hard drive. Specifically, in paragraphs 18 through 21 of my

5   declaration, I provided specific paths on those external hard drives that I believed contained

6   Apple's confidential files, namely the "iMac-2021\iCloud_Desktop" and "iMac-

7   2021\iMac_Downloads" folders. I have reviewed metadata of documents produced by FTI from

8   Mr. Wen's external hard drives. I observed more than 1,400 file paths that contain the phrases

9   "iMac-2021\iCloud_Desktop" and "iMac-2021\iMac_Downloads,"as referenced in my

10  declaration. Amongst these files, I observed more than a hundred Apple confidential file names.

11        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

12  March 31, 2023, at Baltimore, Maryland.

13

14                                                      Daniel Roffman

15

16

17

18

19

20

21

22

23

24

25

26

27

28