| | |
|---|---|
| BRYAN WILSON (CA SBN 138842) <br> BWilson@mofo.com <br> KENNETH A. KUWAYTI (CA SBN 145384) <br> KKuwayti@mofo.com <br> MORRISON & FOERSTER LLP <br> 755 Page Mill Road <br> Palo Alto, California 94304-1018 <br> Telephone: 650.813.5600 <br> Facsimile: 650.494.0792 | DAVID EISEMAN (CA SBN114758) <br> davideiseman@quinnemanuel.com <br> VICTORIA B. PARKER (CA SBN 290862) <br> vickiparker@quinnemanuel.com <br> QUINN EMANUEL URQUHART & SULLIVAN, LLP <br> 50 California Street, 22nd Floor <br> San Francisco, California 94111-4788 <br> Telephone: (415) 875-6600 <br> Facsimile:  (415) 875-6700 |
| ARTURO J. GONZALEZ (CA SBN 121490) <br> AGonzalez@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: 415.268.7000 <br> Facsimile: 415.268.7522 | RYAN LANDES (Bar No. 252642) <br> ryanlandes@quinnemanuel.com <br> 865 S. Figueroa Street, 10th Floor <br> Los Angeles, CA 90017-2543 <br> Telephone: (213) 443-3000 <br> Facsimile:  (213) 443-3100 |
| MARY PRENDERGAST (CA SBN 272737) <br> MPrendergast@mofo.com <br> MORRISON & FOERSTER LLP <br> 2100 L Street, NW, Suite 900 <br> Washington, District of Columbia 20037 <br> Telephone: 202.887.1500 <br> Facsimile: 202.887.0763 | Attorneys for Defendants <br> RIVOS INC., WEN SHIH-CHIEH A/K/A RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI and KAI WANG |
| Attorneys for Plaintiff <br> APPLE INC. | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> RIVOS, INC., a Delaware corporation; WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG, <br><br> Defendants. | Case No.   5:22-cv-02637-EJD <br><br> **JOINT DISCOVERY REPORT** <br><br> Ctrm:    4 <br> Judge:   Hon. Edward J. Davila <br><br> Action Filed:  April 29, 2022 |

**Apple's Preliminary Statement**

Apple proposed a report in which each party would address the other's issues. Defendants objected and declined to identify any issues that they wanted to address in the joint report. Then, on April 13 (the day before this statement was due), Defendants sent two requests for meet and confers—one related to Apple's custodians and search terms and another related to document redactions. At 3:10 p.m. PT that day, Defendants sent an email saying "we'll assume we're at an impasse" if Apple did not immediately provide a time to meet and confer. Apple's team was not available then. Consistent with the Court's March 8, 2023, Order (Dkt. 155), Apple proposed a call time on April 18, agreed to respond promptly, and addressed the redactions issue by email. Apple does not believe that any issue raised by Defendants is ripe for the Court's consideration.

Apple is amenable to meeting and conferring on all issues herein prior to the hearing. In addition, Apple plans to meet and confer with Defendants on their unduly narrow list of ESI custodians and search terms, which they just provided yesterday. Apple proposes that the parties follow up with the Court if they cannot reach agreement on custodians and search terms.

**Apple Issue No. 1: List of Remediated Documents**

On March 13, 2023, following much correspondence and meeting and conferring, Defendants agreed they would "provide Apple with a list identifying documents that were remediated, the devices these documents were remediated from, and the dates of remediation." (W. Shepherd Mar. 13, 2023, email.) Apple pressed for a date by which Defendants would provide this information, but Defendants would not provide one. Finally, in the March 24, 2023, Joint Discovery Report, they represented they would "do so by April 7, 2023." (ECF 164 at 18.) Defendants still have not provided the list. They should be ordered to do so by April 18, 2023.

**Apple Issue No. 2: ESI Order – kMD Metadata Fields**

The parties are continuing to meet and confer on an ESI Order. There are two important disputes on which Apple requests the Court's guidance.

The first is kMD metadata fields. Discovery confirms that Defendants took thousands of Apple confidential documents when they left Apple. Defendants' counsel have confirmed that non-party subpoenaed employees also retained Apple confidential documents. Apple needs to

know when Rivos employees accessed those documents. Defendants' counsel refuse to provide the most important source of that information—kMD metadata fields for Defendants' Apple devices and accounts. (*See* ECF 171-1 ¶ 15 (forensic expert Dan Roffman on kMD fields).) These fields record, *inter alia*, when and how often files were opened. (*Id.*) As Mr. Roffman explains, the metadata Defendants have agreed to produce will not provide this information. (*Id.*) Defendants' counsel refuses to produce the kMD fields, claiming that it would take 20-40 hours for their vendor to write a script to produce them. Their decision to use a vendor unequipped to produce Apple metadata does not justify withholding it. Also, Apple offered that subpoenaed employees could send images to FTI in lieu of producing Apple metadata, but they declined.

Apple's ability to prove its case should not depend on the fact that Defendants use Apple devices instead of Windows devices. The ESI Order should require kMD metadata for Defendants' documents containing (or potentially containing) Apple confidential information.

**Apple Issue No. 3:  ESI Order – Inapplicability to FTI's Investigation**

On April 13, Defendants' counsel took the position that documents from images they were ordered to provide to FTI (*see* ECF 174 at 2) should be subject to the same ESI protocol as ordinary production documents. Defendants want FTI to withhold the critical kMD metadata fields discussed above. But Defendants' counsel already *agreed* that FTI would provide those metadata fields. (E. Wang Mar. 24, 2023, email ("Defendants are willing to provide to FTI images . . . so that Apple can instruct FTI to do the forensic analysis it believes is necessary to reconstruct the kMD metadata fields that Apple is requesting."); W. Shepherd Mar. 28, 2023, email ("we have agreed to provide images to FTI, so Apple can have FTI to reconstruct the kMD metadata fields.").) The Court should not allow Defendants to renege on that agreement.

Defendants' attempt to apply the ESI order to FTI does not make sense. FTI's purpose is to provide *forensic* investigations; it is not the parties' discovery vendor. (*See* ECF 67 & 91.)

Thus, the Court should order the parties to meet and confer on a *forensic* protocol to apply to documents produced by FTI. Apple is finalizing a draft that it will soon send to Defendants.

**Apple Issue No. 4: Rivos Documents that Refer to Apple SoCs**

Apple's RFP 51 to Rivos seeks "All Documents that refer to Apple's SoCs or components

of SoCs." Rivos refuses to produce any responsive documents unless Rivos deems them to contain Apple confidential information. That position is unjust because it allows Rivos—the party accused of misappropriation—to decide unilaterally whether information is Apple confidential. Apple wishes to assess for itself whether Rivos' documents about Apple's SoCs contain Apple confidential information rather than relying on Rivos' self-serving assessments.

Furthermore, responsive documents would be relevant even if they do not contain Apple confidential information. For example, Rivos contends that Apple trade secrets are irrelevant to Rivos because Rivos' SoCs have different architectures and applications from Apple's SoCs. Documents in which Rivos discusses Apple's SoCs would undermine that contention. As another example, documents concerning competition between Apple's and Rivos' SoCs or comparative performance analyses are relevant to damages. More generally, Apple is entitled to know: Why does Rivos have documents about Apple's SoCs when Rivos claims they don't matter to Rivos?

Rivos has articulated no burden argument here. Thus, the Court should order Rivos to produce all non-privileged documents responsive to Apple's RFP 51.

**Apple Issue No. 5:   Rivos' Funding and Investment Amounts**

Apple seeks discovery on the amount of funding and investment that Rivos has received. (*See* RFP 35 ("Documents sufficient to identify all of Rivos's shareholders, stockholders, advisors, and investors, past and present, and to show their relationship with and *degree of investment in Rivos*. (emphasis added)").) Rivos refuses to provide this discovery.

The amounts of funding and investment obtained by Rivos are essential to Apple's damages theories. *See* 18 U.S.C. § 1836(b)(3)(B) (remedies for trade secret misappropriation include unjust enrichment and a reasonable royalty). Rivos is a startup that has not yet (to Apple's knowledge) sold products. Thus, Apple intends to show that Rivos has been unjustly enriched by obtaining funding and investment due, at least in part, to its misappropriation of Apple trade secrets. What a prudent investor would have paid for trade secrets is a recognized basis for determining unjust enrichment. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 708 (6th Cir. 2015). *Actual* amounts paid by an *actual* investor are even more pertinent. *See Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2015 WL

574911, at *3 (W.D. Wash. Feb. 11, 2015) (allegation that defendant "has been unjustly enriched by allegedly obtaining funding with misappropriated trade secrets" stated recoverable damages).

In addition, Rivos' funding and investment amounts are relevant to an appropriate royalty. Apple anticipates that its damages expert will argue that this royalty is indicative of the value of Apple's trade secrets, which is a key input to a royalty. Courts have held that company valuations are relevant to the royalty for patent infringement. *See, e.g.*, *Symantec Corp. v. Zscaler, Inc.*, 2019 WL 2288278, at *1–2 (N.D. Cal. May 29, 2019) (granting motion to compel documents on valuation of patent defendant). This reasoning applies equally to trade secret infringement.

The requested information is not burdensome to produce as Apple is seeking only documents *sufficient to show* the amounts of any investment or funding in Rivos. And while Rivos undoubtedly will disagree with Apple's damages theories, that does not justify withholding discovery. Thus, the Court should order Rivos to produce documents responsive to RFP 35.

### Apple Issue No. 6: Rivos' Investors and Funders

Apple also seeks discovery on the identities of Rivos' investors and funders. (*See* RFP 35 ("Documents sufficient to identify all of Rivos's shareholders, stockholders, advisors, and investors, past and present . . . ."); RFP 55 ("Documents sufficient to identify any actual or potential investors or funders of Rivos.").) Rivos itself has recognized the relevance of its investors by serving RFPs 140-42, which seek communications related to two of its investors.

Identification of Rivos' investors and funders is relevant to determining who has had access to Apple's confidential information. This discovery is also relevant to appropriate remedies. For example, if Rivos' investors and funders are Apple's competitors, then Rivos' disclosure or use of Apple trade secrets would be more harmful and more likely to cause Apple irreparable injury, supporting injunctive relief. Furthermore, Apple would demand a higher royalty for Rivos' use of its trade secrets if Apple's competitors would have access to them.

In addition, Apple may wish to serve follow-up discovery on Rivos or its investors and funders regarding the extent to which Rivos has emphasized the importance of technology based on Apple's trade secrets or the value that they have placed on that technology. *See Eagle Harbor*, 2015 WL 574911, at *3 (summary judgment for trade secret defendant denied given evidence that

defendant "obtained money from [an investor] based on the alleged misappropriated material"). Such discovery would be particularly important here given that Rivos has not made any sales.

That information about third parties may be subject to a non-disclosure agreement does not bar discovery. *See Micron Tech., Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1687156, at *2 (N.D. Cal. May 26, 2022). Moreover, the time for third-party confidentiality objections has passed. Under the Stipulated Protective Order, a party subject to a request to produce third-party confidential information must "promptly" notify the third party. (ECF 113 at 17.) The third party must move for a protective order within 14 days. (*Id.*) Apple served RFP 35 on September 20, 2022, and RFP 55 on February 24, 2023. No third party has moved for a protective order.

Accordingly, the Court should overrule Rivos' confidentiality objections and order Rivos to produce non-privileged documents responsive to RFPs 35 and 55.

### Apple Issue No. 7: Rivos' Supplementation of RFPs and Rogs

On March 31, 2023, Rivos stated that it would supplement its responses to RFPs 27-30, 41, and 43 and Rogs 6, 11, 12, and 14. (*See* W. Shepherd Mar. 31, 2023, email.) Rivos has declined to provide a date by which it will do so. Federal Rule 26(e)(1)(A) requires "timely" supplementation. The Court should order Rivos to supplement these responses by April 21, 2023.

### Apple Issue No. 8: Rivos' Refusal to Search for Certain Apple Confidential Documents

Discovery from Defendants has uncovered that employees took Apple confidential documents beyond those listed in Dan Roffman's September 14, 2022, Declaration. Rivos refuses to search its own systems and devices for them. As a result, Apple documents may be currently accessible to Rivos employees on Rivos' systems, but Rivos will not perform a simple search to find out. Rivos has insisted on limiting its search to documents listed in Mr. Roffman's Declaration, but there is no basis for that. Apple confidential documents do not become less important simply because Mr. Roffman was unaware that Rivos employees had taken them.

These searches are not burdensome. Rivos simply needs to search its systems and devices for the documents' hash values, as it is already doing for documents listed in the Declaration.

Accordingly, the Court should order Rivos to search its systems and devices for Apple confidential documents not listed in Mr. Roffman's Declaration and produce those documents.

**DEFENDANTS' STATEMENT**

**Issue No. 1: Apple's Proposed Search Terms and Custodians Are Inadequate**[1]

Nearly a year into the case it brought, Apple has finally proposed custodians and search terms to apply in searching its files for relevant and responsive documents. But Apple's proposed custodians and search terms are inadequate. Apple's list of custodians is limited to 19 former Apple employees now working at Rivos (comprising the six Individual Defendants and the 13 other former employees Apple has subpoenaed) and three current Apple employees. As to the 19 former Apple employees now working at Rivos, Apple proposes the following search terms:

> Rivos, recruit*, Nuvia, solicit OR solicit* OR poach*, leav* w/5 Apple, (meet OR meet* OR discuss OR discuss* OR call) w/10 (opportunit* OR change OR position OR future), pasemi OR "pasemi.com", "PA Semi" OR "PA Semiconductor" OR "Palo Alto Semi" OR "Palo Alto Semiconductor," Hayter, belliappa OR belli OR kuttanna, (erase! or wipe! or delete) w/10 (drive* OR device* OR laptop OR macbook OR imac OR mac OR account OR history), (startup OR "start up" OR "start-up") w/10 Austin, Puneet w/10 Kumar, RISCV or "RISC-V" or (RISC* w/10 ARM)

*See* 4/10/23 M. Prendergast Email.[2] This list does not include search terms that would cover Apple's alleged trade secrets. Nor does it include any search terms relating to Apple's exit interview process or the means by which Apple informs departing employees of any continuing obligations Apple contends they have after they leave the company. Apple also purports to "reserve the right to propose modifications if the hit counts are too large for these terms" (*id.*)—an admission that Apple has not run even these narrow search terms on any of its documents.

Worse, Apple has **not even identified search terms** for the **three** Apple custodians it has identified: Donna Cerny, Daniel Murray, and Sri Santhanam. *Id.* These are the two witnesses Apple identified in its Rule 26 initial disclosures at the outset of the case (Ms. Cerny and Mr. Murray) and one other Apple employee (Mr. Santhanam) Apple recently identified in its supplemental Rule 26 initial disclosures. Apple has asserted that it "either has produced or will produce documents from" these three custodians, but has offered no proposed search terms for

---

[1] Defendants' counsel asked Apple's counsel twice for times to meet and confer on this issue on April 13, 2023—the day before this statement was due. Apple's counsel waited until late in the day to respond that Apple is not available to meet and confer until Tuesday, April 18—the day after the Court's discovery conference.

[2] Although the Court ordered Apple to provide its custodian list and search terms on April 7 (Dkt. 174), Apple did not provide them until April 10.

them.  *Id.*  And the documents Apple has produced to date for Ms. Cerny and Mr. Murray further confirm the inadequacy of Apple's search.  As to Ms. Cerny, Apple asserts that "[t]he search term 'Rivos' was run across Ms. Cerny's email" and that it "has produced the documents underlying Ms. Cerny's declaration."  *Id.*  To the extent Apple contends that "Rivos" by itself is an adequate search term for one of Apple's identified custodians, it plainly is not.  And Ms. Cerny testified at her April 12, 2023 deposition that she performed the custodial document search ***herself***.  Cerny Rough Tr. 207:20-209:17 ("Q: Did you pull e-mails yourself? . . . . A: Yes, as part of the . . . discovery process, I guess, yes, I did.").  Apple produced custodial documents for Mr. Murray (who is set to be deposed on April 19) without even identifying the search terms it ran to find those documents.  When Defendants' counsel followed up to ask which search terms Apple ran for Mr. Murray, again "Rivos" was the only specific term Apple could identify.  4/13/2023 N. Ang email.  Thus, Apple's only two custodial productions appear to be based on improperly narrow (and undisclosed) search terms.[3]  And Apple has not offered ***any*** search terms for Mr. Santhanam.  Nor does Apple propose to search for responsive documents from ***nine other current Apple employees*** who Apple has identified in its supplemental Rule 26 initial disclosures or from other custodians with potentially relevant and responsive documents.

      Thus, Defendants request that the Court order Apple to search the following Apple employees' custodial documents: Daniel Murray, Donna Cerny, Johny Srouji, Sribalan Santhanam, Kayla Christie, Brent Chambers, Jim Vash, Jonathan Tyler, Sami Yehia, Mandeep Singh, Dhruv Singh, Dave Kreml, Theresa Garza, Jennifer Brown, Paul Turnpaugh, Doug Brooks, Dave Williamson, and Godfrey D'Souza.  Defendants also ask that the Court order Apple to search its financial document repositories.

      Defendants further request that the Court order Apple apply the following search terms: Wen, Wang, Pinot, Hardage, Kaithamana, Ye, Yang, Phansalkar, Yeh, Singh, Kapustka, Limaye, Krishna, Dasari, Kountanis, Tsung, Robinson, Chang, Wu, Gill, Amarjit, Lip-Bu, Tan, forensic,

---

[3]  Given Apple's decision to allow Ms. Cerny to search for relevant documents ***herself***, which only came to light during Ms. Cerny's deposition the day before this statement was filed, it is also unclear who purportedly searched for Mr. Murray's custodial documents and determined which documents to produce.

investigation, attrition, quit, resign!, depart! two weeks, wipe!, delete!, "last day", leav! Or left w/s Apple, clear, farewell, "exit interview", Rivos, startup, start up, start-up, time machine, backup, USB, thumb drive, external drive, external disk, iCloud and (retain! or security or confidential or access!), RISC, RISC-V, and develop or test or sell or ship w/15 (Alcatraz OR Aruba OR Avalanche OR Bali OR Bennu OR Blizzard OR Bora OR Brava OR Caicos OR Capri OR Cayman OR Cebu OR Chinook OR Coll OR Crete OR Cyclone OR Cyprus OR Donan OR Elba OR Ellis OR Everest OR Fiji OR Firestorm OR Hurricane OR Ibiza OR Icestorm OR Jade OR Kalamata OR Leda OR Lifuka OR Lightning OR Lobos OR Malta OR Marin OR Maui OR Mistral OR Monsoon OR Myst OR Palma OR Rhodes OR Sawtooth OR Sicily OR Skye OR Staten OR Swift OR Tempest OR Thunder OR Tonga OR Turks OR Twister OR Typhoon OR Vortex OR Zephyr OR H12! OR H13! OR H14! OR H15! OR H16!)

**Issue No. 2: Apple's Request for Non-Standard "kMD" Metadata Is Unreasonable**

Apple's proposed ESI protocol includes non-standard "kMD" metadata that Defendants have explained several times is burdensome to collect because—in contrast to the standard types of metadata typically provided with documents produced in litigation—it is stored at the system level and not directly tied to specific files. Indeed, collecting this metadata would require Defendants' forensic vendor to write a custom script from scratch. Apple insists on this despite Defendants' offer to provide images to neutral forensic vendor FTI, which can provide the extra metadata Apple seeks. Apple has admitted as much. *See* Dkt. 164 at 11 ("As Apple has repeatedly reminded [Defendants], production of the images to FTI would obviate the need for" Defendants to provide kMD metadata).[4] The only documents Apple has identified for which it claims FTI cannot provide the requested metadata are documents produced by the 13 individual Rivos employees Apple has subpoenaed. But that is a red herring: any ESI protocol between the parties will not apply to the subpoenas Apple served on those 13 individuals, none of whom are parties to this lawsuit. In any event, the section of the draft ESI protocol that asks (but does not require) third parties to produce documents including the listed metadata, by its terms, applies

---

[4] In compliance with this Court's Order (Dkt. 174), Defendants have provided the requested forensic images to FTI.

only to subpoenas issued "[f]ollowing the execution of this ESI protocol." Thus, regardless of what the ESI protocol ends up saying about the non-standard "kMD" metadata Apple seeks to include, Apple will not be entitled to that metadata for the 13 individuals it subpoenaed. Apple has identified no other documents for which Defendants' proposed solution—Defendants provide images to FTI, which provides Apple with whatever non-standard metadata it wants—is unworkable.

Thus, Defendants request that the Court enter a version of the parties' draft ESI protocol that does not require production of the disputed "kMD" metadata fields.

### Issue No. 3: Improper Redactions[5]

On April 12 and 13, Apple produced custodial documents for Mr. Murray, whose deposition is set for April 19. But Apple unilaterally chose to redact Apple project code names and other information from his custodial documents. There is no conceivable basis for doing so, and Apple's improper redactions will prevent Defendants from deposing Mr. Murray on a full record. Apple has agreed, after Defendants sent multiple emails flagging the issue, only to "remove any redactions for project code names already disclosed in the Roffman declarations." *See* 4/13/2023 N. Ang email. But Apple provided no basis for maintaining redactions over other Apple-internal code names, or for any other redactions in Mr. Murray's documents other than some unidentified documents allegedly containing personally identifiable information.

Thus, Defendants request that the Court order Apple to re-produce Mr. Murray's custodial documents without redactions (except for personally identifiable information) by close of business on April 17, 2023.

---

[5] Apple has suggested in emails, and may argue to the Court, that Rivos has failed to meet and confer on this issue and that the parties are not at an impasse. Not so. Apple produced the documents at issue overnight, at around 10 pm PDT on Wednesday, April 12, and around 1 am PDT on Thursday, April 13. At 9:38 am PDT on Thursday, April 13, Defendants' counsel emailed Apple's counsel to identify the redaction issue and request times for a meet and confer. Apple's counsel, despite being active on other email chains between the parties throughout the day, ignored this email until Defendants' counsel followed up hours later and asked again for times to meet and confer. Apple's counsel finally responded at 5:04 pm PDT and stated that Apple could not meet and confer until Tuesday, April 18—the day after the Court's discovery conference and the day before Mr. Murray's deposition. Because that is obviously untenable, Defendants raise the issue now.

|    |    |    |
|----|----|----|
| 1  |    | Respectfully submitted, |
| 2  | Dated: April 14, 2023 | MORRISON & FOERSTER LLP |
| 4  |    | By: */s/ Kenneth A. Kuwayti*<br>    Kenneth A. Kuwayti |
| 5  |    | Attorney for Plaintiff<br>APPLE INC. |
| 7  | Dated: April 14, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 9  |    | By: */s/ David Eiseman*<br>    David Eiseman |
| 11 |    | Attorney for Defendants<br>RIVOS INC., WEN SHIH-CHIEH A/K/A RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI and KAI WANG |

**ATTESTATION OF CONCURRENCE**

I, Kenneth A. Kuwayti, am the ECF User whose ID and password are being used to file this Joint Discovery Report. In compliance with Local Rule 5-1(h)(3), I hereby attest that David Eiseman has concurred in this filing.

Dated: April 14, 2023                                          /s/ *Kenneth A. Kuwayti*
                                                                                Kenneth A. Kuwayti