1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     David Eiseman (Bar No. 114758)
2    davideiseman@quinnemanuel.com
     Victoria B. Parker (Bar No. 290862)
3    vickiparker@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
5  Facsimile:    (415) 875-6700

6    Ryan Landes (Bar No. 252642)
     ryanlandes@quinnemanuel.com
7  865 S Figueroa St.
   Los Angeles, CA 90017
8  Telephone:    (213) 443-3145
   Facsimile:    (213) 443-3100

9
   Attorneys for Defendants Rivos Inc., Wen Shih-
10 Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
   Ye, Laurent Pinot, Prabhu Rajamani and Kai
11 Wang

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                   SAN JOSE DIVISION

15

16 APPLE INC.,                          Case No. 5:22-CV-2637-EJD

17          Plaintiff,                  **OPPOSITION TO APPLE'S MOTION
                                        FOR SANCTIONS**
18      vs.
                                        Date:        August 30, 2023
19 RIVOS INC., WEN SHIH-CHIEH a/k/a     Time:        11:00 a.m.
   RICKY WEN, JIM HARDAGE, WEIDONG      Courtroom: 5
20 YE, LAURENT PINOT, PRABHU            Judge:       The Hon. Nathanael M. Cousins
   RAJAMANI, AND KAI WANG,
21                                      Trial Date:  None Set
          Defendants.
22                                      **REDACTED FOR PUBLIC FILING**

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

    A.      Mr. Wen Deleted, Then Immediately Replaced, The Unix.tar Folder ......................2

    B.      The Evidence Shows Mr. Wen Did Not Use Or Access The Files Apple Claims Are Confidential During His Work At Rivos ........................................6

    C.      Mr. Wen's And His Counsel's Statements Were True To The Best Of Their Knowledge When Made .......................................................................7

    D.      Mr. Wen And Counsel Complied With All Court Orders...........................................8

    E.      Mr. Wen Did Not Refuse To Appear For Deposition ................................................9

    F.      The Balance Of Apple's Background Section Is Irrelevant Mud-Slinging ..............9

III.    LEGAL STANDARD ..........................................................................................11

IV.     ARGUMENT ......................................................................................................11

    A.      Mr. Wen And Rivos Did Not Spoliate Evidence .....................................................11

        1.      A Mandatory Adverse Inference Is Entirely Unwarranted .........................11

        2.      A Permissive Inference Is Not Warranted...................................................14

        3.      Nothing Mr. Wen Did May Be Imputed To Rivos .....................................16

    B.      Neither Mr. Wen Nor Quinn Emanuel Violated Any Court Orders .......................19

    C.      All Of Mr. Wen's Attorneys' Statements Were True To The Best Of Their Knowledge At The Time They Made Them ..........................................21

V.      CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.*,
  2012 WL 2992627 (E.D. Mo. July 20, 2012) ................................................. 17, 18

*Best Label Co. v. Custom Label & Decal, LLC*,
  No. 19-CV-3051-SI (VKD), 2022 WL 1525301 (N.D. Cal. May 13, 2022) ....................... 15

*Blixseth v. Yellowstone Mountain Club, LLC*,
  796 F.3d 1004 (9th Cir. 2015) ....................................................... 24

*Bush v. Bowling*,
  2020 WL 5423986 (N.D. Okla. Sept. 10, 2020) ...................................... 17

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................. 25

*Colonies Partners*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020). ..................................... 17, 18

*Danielson v. Huether*,
  2021 WL 217706 (D.S.D. Jan. 21, 2021) ........................................... 17

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  No. 18-MD-02843-VC, 2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) .................... 24

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ..................................................... 25

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
  2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ...................................... 12, 17

*FiTeq Inc. v. Venture Corp.*,
  No. 13-CV-1946-BLF, 2016 WL 1701794 (N.D. Cal. Apr. 28, 2016) .................. 15

*Gemsa Enters., LLC v. Specialty Foods of Alabama, Inc.*,
  2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) ................................... 17, 18

*Kaass Law v. Wells Fargo Bank, N.A.*,
  799 F.3d 1290 (9th Cir. 2015) ..................................................... 24

*Laub v. Horbaczewski*,
  2020 WL 7978227 (C.D. Cal. Nov. 17, 2020) ...................................... 11

*Lozano v. Cabrera*,
  678 Fed. Appx. 511 (9th Cir. 2017) .............................................. 24

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................... 15

*Newberry v. Cnty. of San Bernardino*,
    750 F.App'x 534 (9th Cir. 2018).......................................................................... 15

*OmniGen Research v. Yongqiang Wang*
    321 F.R.D. 367 (D. Or. 2017) .............................................................................. 12

*Oracle USA, Inc. v. Rimini St., Inc.*,
    No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714 (D. Nev. Sept. 21,2020),
    *adopting R. & R.*, 2021 WL 1224904 (Mar. 31, 2021) .......................................... 16

*Primus Automotive Financial Services, Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) ............................................................................... 24

*RG Abrams Insurance v. Law Offices of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. Nov. 2, 2022) ........................................................... 14

*Skyline Advanced Technology Services v. Shafer*,
    2020 WL 13093877 (N.D. Cal. July 14, 2020),
    *report and recommendation adopted*,
    2020 WL 13093878 (N.D. Cal., July 30, 2020) .................................................. 12

*Spiers v. City & Cnty. of San Francisco*,
    No. 20-CV-01357-JSC, 2022 WL 612663 (N.D. Cal. Mar. 1, 2022) ............... 24-25

*WeRide Corp. v. Kun Huang*,
    2020 WL 1967209 (N.D. Cal. Apr 24, 2020) ................................................. 12, 13

*Wisk Aero LLC v. Archer Aviation Inc.*,
    2023 WL 2277112 (N.D. Cal. Feb. 28, 2023)..................................................... 15

*Yagman v. Republic Ins.*,
    987 F.2d 622 (9th Cir. 1993).............................................................................. 25

## Rules/Statutes

28 U.S.C. § 1927 ............................................................................................................ 24

Fed. R. Civ. P. 26(e).................................................................................................... 22

Fed. R. Civ. P. 37(b).................................................................................................... 14

Fed. R. Civ. P. 37(e).................................................................................... 11, 14, 15

Fed. R. Civ. P. 37(e)(2) .......................................................................................... 11, 13

Fed. R. Civ. P. 37(e)(2)(B) ......................................................................................... 14

1

Fed. R. Civ. P. 72(a) ................................................................................................................. 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  I.   **<u>INTRODUCTION</u>**

2      Apple's motion for sanctions is a litany of ad hominem attacks and hyperbole to distract

3  from the fact that Apple's claims for trade secret misappropriation and breach of contract lack

4  meaningful support.  Apple spends half its motion accusing Defendants and their counsel of lying

5  to the Court, and the other half selectively and misleadingly quoting from pleadings, transcripts,

6  precedents, and this Court's own orders.  But under all the dust Apple tries to kick up, there is simply

7  nothing noteworthy here, let alone sanctionable.  The evidence Apple claims Mr. Wen spoliated

8  consists of a folder he deleted ***and then promptly replaced***.  It would be hard to think of a set of

9  facts less consistent with an intent to deprive Apple of evidence.  And even if Apple were right that

10 associated metadata were permanently lost (which Apple has not met its burden of proving), there

11 are numerous other ways for Apple to get information on when (if at all) various files were most

12 recently accessed or used.  After turning Defendants upside down in discovery without finding any

13 meaningful evidence of misappropriation, Apple asks the Court to simply ***assume*** misappropriation.

14     Apple's accusations of lying are baseless: the statements Mr. Wen and his counsel made

15 were true to the best of their knowledge at the time they made them, and when further information

16 became available Defendants promptly notified Apple.  Far from the nefarious picture Apple seeks

17 to paint, that is precisely the good faith conduct of a party and of attorneys in a dynamic case with

18 extensive discovery.  Nor did Defendants or their counsel violate any court orders.  When Mr. Wen

19 identified additional devices that could potentially contain Apple confidential information, he

20 informed his counsel and his counsel informed Apple; the orders Apple accuses Defendants of

21 violating expressly envision this sort of later identification of responsive devices.

22     For these non-violations, Apple seeks extraordinary, draconian sanctions—a six-figure fee

23 and cost award (the vast majority of the fees and costs apparently having been spent on this needless

24 motion) and a mandatory adverse inference instruction directing the jury to find that Mr. Wen

25 accessed and used Apple confidential documents ***for his work at Rivos***.  That would effectively

26 establish multiple elements of Apple's claims, and reveals Apple's true intent in bringing this

27 motion: to establish its claims through adverse inference rather than through admissible evidence.

28     Defendants and their counsel respectfully ask that the Court deny Apple's motion.

II.      **BACKGROUND**

In a "Factual Background" section that spans 15 pages (fully three-fifths of its brief), Apple tells a story in which Ricky Wen deleted a Unix.tar folder containing numerous Apple confidential documents, intentionally destroying the metadata associated with those documents; promptly told his counsel both that the metadata were destroyed and that the files were now on a Rivos-reimbursed laptop; and Mr. Wen and his counsel then spent the better part of the next year serially lying to Apple and the Court about it.  Apple's story contains one tiny kernel of truth—Mr. Wen did in fact delete (but then immediately replace) a folder containing two Unix.tar files from his laptop—but is otherwise divorced from reality.  The true events are simple and innocuous.

A.      **Mr. Wen Deleted, Then Immediately Replaced, The Unix.tar Folder**

As Mr. Wen has moved from job to job, starting long before he worked at Apple, he has taken two .tar files he created with him.  Wen Decl. ¶ 6.  A .tar file, the Unix version of a .zip file, is basically a container for other files—the electronic version of a box that Mr. Wen takes from job to job containing material that helps him do his work.  *Id.*  A .tar file cannot itself be confidential information any more than a box could.  It just contains files, which may or may not be confidential.

The two .tar files Mr. Wen has taken from company to company are not specific to any of the companies he worked for.  Rather, they contain (1) Mr. Wen's Unix environment settings, (2) shell scripts he has written that contain examples of generic programming syntax and commands, and (3) files to test the functionality of the scripts.  *Id.* ¶ 7.  None of the scripts Mr. Wen has written contain any Apple confidential or trade secret information.  Nor do his Unix settings, which are used to configure his personal preferences on his Unix machine, such as background colors, prompts, and console behavior.  *Id.*  As he had consistently done when moving between his prior jobs, when Mr. Wen left Apple, he brought his two .tar files with him.  *Id.* ¶¶ 6-8.  Mr. Wen did not intend to take any Apple confidential information with him when he departed Apple, but unbeknownst to him, he had inadvertently archived certain "Verilog" code files into his .tar file.  *Id.* ¶¶ 9, 15.  Until his deposition in this case on March 17, 2023, Mr. Wen did not know that certain Verilog files were in his .tar files.  *Id.* ¶ 15.

1      Believing that the two .tar files only contained his Unix settings, scripts, and non-

2  confidential files he used to test the scripts, when Mr. Wen joined Rivos in July 2021, he stored his

3  two .tar files in a folder named "AAPL" on his new laptop. *Id.* ¶ 8.

4      Apple filed this lawsuit in April 2022.  In late May 2022, in a moment of frustration and

5  after having been advised of his document preservation obligations, Mr. Wen deleted the AAPL

6  folder containing the .tar files from his Rivos-reimbursed laptop.[1]  *Id.* ¶ 12; Ex. B[2] at 83:25-85:19.

7  At the time, he still had no idea that the Verilog files were in his .tar files.  Rather, he deleted the

8  folder because looking at it reminded him of Apple and of this lawsuit, and he was angry at himself

9  "because [he] ***unintentionally*** took more file[s] than [he] wanted."[3]  Ex. B at 84:18-20 (emphasis

10  added).  Almost immediately after deleting the files and emptying the Trash on his laptop, he

11  realized he had made a mistake (as noted, he had received a litigation hold) and he tried to restore

12  the files by transferring copies of the files from his thumb drive.  *Id.* at 83:25-84:10.  Thus, while it

13  is true Mr. Wen deleted the AAPL folder from his computer, he ***immediately took steps to restore***

14  ***the .tar files in it*** and ***no documents were lost*** in the process.  Apple acknowledges Mr. Wen restored

15  the documents (Mot. at 4), but spends the rest of its brief studiously ignoring this critical fact.  Mr.

16  Wen did not intend or know that, by deleting and then replacing the folder, any metadata would be

17  lost.  Wen Decl. ¶ 12.  Mr. Wen also testified unequivocally that he did ***not*** access or use any Apple

18  confidential documents contained in the .tar files while working at Rivos.  *Id.* ¶ 10, 15; Ex. B at

19  272:20-273:4, 275:8-14, 289:23-291:12.  In fact, Mr. Wen did not know that the .tar files contained

20

21

---

22  [1]  Even though Rivos reimbursed Mr. Wen for the cost of that laptop, Rivos has no control over the operation of it.  *Id.* ¶ 8.

23

24  [2]  Unless otherwise noted, all lettered exhibits refer to the exhibits to the accompanying Declaration of Victoria B. Parker in Opposition to Apple's Motion for Sanctions.

25  [3]  The court reporter at first incorrectly transcribed this sentence as "[b]ecause I ***intentionally*** took

26  more file[s] than I wanted," and Apple quotes this version in its brief.  Mot. at 4.  Mr. Wen has since submitted an errata correcting the transcript.  Ex. C (errata).  The deposition video—which

27  Defendants can provide if the Court requests—is clear that Mr. Wen said "unintentionally."  In any event this statement, when put into context, does not refer to Verilog files in the .tar files,

28  (which he still did not know existed) but rather generally refers to documents he unintentionally copied to his hard drive when departing from Apple.  Wen Decl. ¶ 12.

1  documents that are marked as "Apple Confidential" until Apple's counsel displayed them during

2  his deposition in March 2023.  Wen Decl. ¶ 15.

3        To support its argument that the .tar files contained highly confidential or even trade secret

4  information, Apple cites a declaration from its purported forensic expert, Daniel Roffman, who has

5  no relevant technical background or training related to System-on-a-Chip (SoC) technology and

6  who asserts without further explanation that "I have reviewed many of" the files that were archived

7  in the Unix.tar file, "at least some of which are marked Apple confidential and trade secret."  Mot.

8  at 4 (citing Dkt. 171-1 ¶ 6).  Mr. Roffman does not say how many such documents were so marked,

9  what information in those documents (if any) justified the marking, or even how many of the files

10  he reviewed.  It is worth noting that in an appendix to a prior declaration, Mr. Roffman cited several

11  documents as supposedly Apple confidential even though they are on their face entirely personal in

12  nature, including several of Mr. Wen's bank statements.  Dkt. 46-6 ¶ 9.

13        As a brief aside, and without rehashing the long-running debate over Apple's deficient

14  identification of its trade secrets: when Apple, its counsel, and its experts use (usually without

15  explanation or elaboration) terms like "Apple confidential documents" and "Apple trade secrets,"

16  the Court should bear in mind the virtually limitless breadth of those terms as Apple uses them.

17  Apple defines "Apple confidential information" to mean "any non-public Apple information."  Ex.

18  D.  That is broad enough to sweep in documents that could not possibly be relevant here—calendar

19  invites to lunch meetings, the lunch menu at Apple's cafeteria, incomplete screen-shots, and more.

20  As for "trade secrets": after agreeing (to resolve a discovery dispute) to provide a list of documents

21  that purportedly consist of its "trade secrets," Apple sent Defendants a list of 35,000 documents

22  spanning hundreds of thousands of pages and asserted without explanation that those documents

23  "reflect or evidence Apple's trade secrets."[4]  Ex. E.  Apple provided no information as to where in

24  that long list of documents its alleged trade secrets could be found.  The list appears to include

25  essentially every document Defendants produced that in any way relates to Apple, and many that

26

27  _____

   [4]  On the eve of filing this Opposition, Apple's counsel informed Defendants' counsel that it will
28  serve an updated spreadsheet, but Defendants' counsel has not been able to analyze it.

1   do not.  One, which due to Apple's failure to de-duplicate appears more than 30 times, is an .html

2   file listing only three common first names and nothing else.  Ex. F; Parker Decl. ¶ 7.  Another, which

3   also appears more than 30 times, is a photo of a rainbow gradient.  Ex. G; Parker Decl. ¶ 8.  A photo

4   of a parrot appears *at least 800 times*.  Ex. H; Parker Decl. ¶ 9.  Another is a file entitled

5   "████████" that appears to be associated with Apple's *publicly available* open source code

6   project SwiftNIO that is readily available on GitHub via a simple Google search.[5]  Ex. I; Parker

7   Decl. ¶ 10.  Confronted during a meet and confer with Apple's facially overbroad list, Apple's

8   counsel admitted that attorneys had not reviewed the list or the documents, but rather had outsourced

9   to vendors the task of identifying files to be included on Apple's trade secret list based only on file

10  and folder names.  Eiseman Decl. ¶ 7.  While some of the files Apple lists do appear to contain

11  Apple confidential information, given this history, the Court should not accept Apple's conclusory

12  and self-serving assertions that particular documents contain "Apple confidential information" or

13  "Apple trade secrets."  Apple has not earned the benefit of the doubt.

14        For their part, Mr. Wen's Quinn Emanuel attorneys understood only that Mr. Wen had

15  deleted .tar files that contained certain scripts Mr. Wen carried with him from job to job, but then

16  recovered the files.  Eiseman Decl. ¶ 3; Swedlow Decl. ¶ 3.  Prior to and during the June 2022

17  hearing, Mr. Wen's Quinn Emanuel attorneys did not know (i) that the files may have contained

18  information Apple considers to be confidential; (ii) when Mr. Wen had deleted and restored the

19  files; (iii) that he had copied the files from another location rather than undoing the deletion; or (iv)

20  that the files had ever been on a Rivos servers or any other Rivos-controlled location.  In fact, Quinn

21  Emanuel attorneys did not discover these facts until the period leading up to Mr. Wen's March 17,

22  2023 deposition.  *Id*.  Like Mr. Wen, his counsel did not believe metadata or other forensic data had

23  been permanently lost—and thus had no reason to investigate further—until early 2023.  Eiseman

24  Decl. ¶¶ 3, 6; Swedlow Decl. ¶ 3.  And again, *no* documents were lost.

25

26

27

---

28  [5]  The SwiftNIO open source project is available at https://github.com/apple/swift-nio.

**B.**     **The Evidence Shows Mr. Wen Did Not Use Or Access The Files Apple Claims Are Confidential During His Work At Rivos**

Apple asserts that Mr. Wen's deletion and immediate restoration of the .tar files permanently destroyed their metadata.  Mot. at 4.  This alleged loss of metadata forms virtually all of Apple's claim of prejudice, which is a necessary (but not sufficient) element for spoliation sanctions.  *See id.* at 19.  To support its assertion, Apple cites two paragraphs of Mr. Roffman's declaration.  *Id.* at 4 (citing Dkt. 171-1 ¶¶ 6-7).  In those two paragraphs, Mr. Roffman asserts (without analysis or support) that "many of the metadata fields" associated with the files archived in the Unix.tar file "have now been lost."  Dkt. 171-1 ¶ 6.  Mr. Roffman does not say how many fields, what they are, or why they are important.  In the next paragraph, Mr. Roffman backpedals even further from his already-vague statement, only able to say "I *believe* the metadata for these original files have been permanently lost."  *Id.* ¶ 7 (emphasis added).  Apple omits the "I believe" part from its brief, treating its expert's "belief" as proven fact and asking the Court to direct the jury to do the same.

And of course, Mr. Roffman's assertion that metadata were "lost" presumes those metadata existed in the first place.  But Apple offers no evidence that the metadata ever existed (through Mr. Roffman or otherwise), and there is good reason to think it did not.  The "Spotlight" kMD metadata Mr. Roffman refers to *do not* reliably populate when Verilog files are opened in either of the two specialized programs on Mr. Wen's computer (Vim and MacVim) that Mr. Wen used to open Verilog files on that computer.  Crain Decl. ¶¶ 25-33; Wen Decl. ¶ 15.  There is a SystemVerilog file on Mr. Wen's laptop (not an Apple file) that, despite being opened twice on his computer in September 2021, showed *no* kMDItemLastUsedDate and *no* kMDItemUsedDates.  Crain Decl. ¶ 25.  To confirm that opening and editing Verilog files does not necessarily populate the kMD metadata fields Mr. Roffman identified, Defendants' forensic expert Andrew Crain acquired a publicly available Verilog file and opened and edited it multiple times in both Vim and MacVim.  *Id.* ¶¶ 27-33.  The Spotlight kMDItemLastUsedDate and kMDItemUsedDates fields did not populate.  *Id.*  Thus, there is good reason to think the metadata Mr. Roffman believes were "lost" in fact never existed.

But even accepting Mr. Roffman's conclusory statements as true, he does not claim that **all** relevant metadata or other evidence were lost.  If Mr. Wen had used or accessed the allegedly Apple confidential documents in his .tar files, one would expect there to be evidence of that elsewhere on his computer even if certain metadata for those documents were lost.  For example, had Mr. Wen wanted to open the "Verilog" files Apple references (Mot. at 2-3), he would have used Vim or MacVim to do so.  Crain Decl. ¶ 18; Wen Decl. ¶ 15.  There is no indication on Mr. Wen's computer that he ever accessed the Verilog files that were in his .tar files through these programs during his time at Rivos.  Crain Decl. ¶¶ 19-23.  More generally, if Mr. Wen had sent these files to others, email records would exist.  If he had printed them, there would be evidence of that.  *See id.* ¶ 35.  If Mr. Wen had incorporated the files into Rivos' own technical work or copied them to other devices, that would likely be visible as well.  Apple has been given access to forensic images of **dozens** of Defendants' devices and accounts, subpoenaed documents and devices of other former Apple employees now at Rivos, and has conducted **massive** document discovery.  Defendants have produced 6,732,996 pages of documents, and there is **zero** evidence of anything supposedly "Apple confidential" from the .tar files ever being used in any fashion.  Thus, there is no forensic or other evidence that calls into question, much less contradicts, Mr. Wen's sworn statements that he did not access the files while at Rivos, and all available forensic evidence corroborates that testimony.  The adverse inference instruction Apple seeks here would contradict the evidence.

## C.   Mr. Wen's And His Counsel's Statements Were True To The Best Of Their Knowledge When Made

With a proper understanding of the actual events—Mr. Wen deleted, then the same day replaced, a folder containing two .tar files; none of the documents were lost; and neither Mr. Wen nor his counsel had any reason to believe metadata were permanently lost—the rest of Apple's tawdry tale collapses.  Apple accuses Mr. Wen and his counsel of making intentional and repeated false statements to Apple and to the Court, the bulk of which are statements to the effect that Defendants were complying with their document preservation obligations.  Mot. at 6-8, 9-12.  But as explained above, Mr. Wen's counsel knew only that he had deleted a folder and then immediately recovered it.  They did not know any metadata had been lost, and had no reason to think any

1   documents had been lost *because no documents were lost*.  Mr. Wen and his counsel did not have

2   reason at the time to think the folder that had been deleted and then replaced contained any files that

3   Apple would later contend are confidential.  And after learning the documents might have been on

4   Rivos servers, Rivos updated its interrogatory responses to reflect that fact.  Ex. J.

5               **D.      Mr. Wen And Counsel Complied With All Court Orders**

6               On June 21, 2022 (weeks after Mr. Wen deleted and replaced the .tar files), the Court entered

7   the parties' Stipulated Order Regarding Document Preservation and Inspection.  Dkt. 55.  Among

8   other things, that Order required Mr. Wen to "immediately return to Apple . . . any Apple

9   confidential information of which he is aware *or becomes aware* as being in his possession."  *Id.* at

10  1 (emphasis added).  Apple excludes the "or becomes aware" language from its brief, even though

11  this language expressly envisions the *future* discovery of additional devices, and thus guts Apple's

12  entire theory.  *See, e.g.*, Mot. at 2.  A week and a half later, on July 1, 2022, the Court entered the

13  parties' proposed Stipulation and Order Setting Forensic Inspection Protocol.  Dkt. 67.  Mr. Wen

14  agreed to "[p]romptly . . . arrange for FTI to be able to collect for forensic imaging and analysis the

15  devices listed below and any other devices which have ever been used to store or transmit Apple

16  confidential information[.]"  Dkt. 67 ¶ 2.  At the time—late June and early July 2022—Mr. Wen

17  was aware of only a few devices that might potentially contain Apple confidential information.  Wen

18  Decl. ¶ 13.  Those devices are listed in the July 2022 Order (Dkt. 67 ¶ 2), and were turned over to

19  FTI later in 2022.  A few months later, in February 2023 while preparing for his deposition, Mr.

20  Wen realized that there were six other devices and accounts that could potentially contain

21  confidential information.  *Id.* ¶ 14.  He promptly informed his counsel and his counsel notified Apple

22  and sequestered these devices and accounts.  Eiseman Decl. ¶ 5.  Mr. Wen and his counsel then

23  turned over the devices and accounts to FTI as contemplated by the July 2022 Order, with the last

24  devices going to FTI on March 10, 2023—about three weeks before Apple filed this motion.

25  Eiseman Decl. ¶ 5.  Apple does not contend that any files or metadata from any of these devices or

26  accounts were lost or corrupted.

27

28

### E.      Mr. Wen Did Not Refuse To Appear For Deposition

Apple's overblown rhetoric aside (Mot. at 13), Mr. Wen did not refuse to appear for his deposition.  Rather, he took the position that his deposition should not take place until after his custodial documents were produced.  Dkt. 144 at 4-5.  Mr. Wen believed it made more sense to delay his deposition until then to avoid the need for successive depositions as more documents were produced.  *Id.*  While the Court ultimately ordered Mr. Wen to sit for deposition before production was complete, Mr. Wen's position was and is a defensible one and worlds away from a refusal to appear—and the Court rejected Apple's request for fees and costs in connection with its motion to compel Mr. Wen's deposition.  Ex. K at 21:18-22:5.   Apple did not object to, move for reconsideration of, or otherwise challenge that order.

### F.      The Balance Of Apple's Background Section Is Irrelevant Mud-Slinging

Apple devotes a good chunk of its "Factual Background" section to accusing Defendants and their counsel of various other categories of misconduct, which do not form the basis for any of the relief Apple seeks and indeed are not even mentioned in the "Argument" section of Apple's brief.  Defendants will briefly correct the record nonetheless.

*First*, Apple asserts that Defendant Laurent Pinot had not only "accessed Apple confidential documents while working at Rivos[,]" but also "*intentionally* kept documents he knew comprised Apple's confidential information" to use "as a reference to create a spec in the future."  Mot. at 5-6. As an initial matter, there was only *one* such document.  Ex. L at 102:3-8.  Further, as Apple acknowledges in a footnote, Mr. Pinot testified that he wanted that document to reference its *formatting*—"the formatting of the document in general, paragraphs, table of contents"—and not its substance.  *Id.* at 118:11-13; 136:24-137:4.  Apple has never contended that the document's formatting (much of it generated automatically by Microsoft Word) is Apple confidential.  Nor has Apple adduced evidence that Mr. Pinot used the substantive content of the document in any way.

*Second*, Apple faults Defendants for "remediating" documents from relevant devices.  Mot. at 11.  As an initial matter, Apple has repeatedly demanded that Defendants do exactly that.  *See* Dkt. 164 at 19-20 (collecting examples).  And as Apple accurately stated in a brief it filed in *Apple v. William*s, Case No. 19-CV-352866 (Santa Clara Cty. Sup. Ct.), another trade secret case in which

it sought spoliation sanctions following the defendant's remediation of certain documents, "the standard approach taken in litigation" to remediation is to "image[] the [device] immediately before deleting the files." Ex. A at 14. That is exactly what Defendants did here, yet exactly what Apple faults them for doing. In *Williams*, Apple faulted the defendant and his counsel for ***not*** doing that— for failing to, in Apple's words, follow that "normal and sensible procedure[.]" *Id.* Despite following the proper procedure in this case, after the remediation process, a hard drive belonging to Defendants' forensic consultant Setec failed and the November 2022 pre-remediation image of Mr. Pinot's laptop was lost. Defendants disclosed this fact to Apple promptly after learning about it. While unfortunate, this hard drive failure was harmless: there is no indication that any remediated documents were lost. The post-remediation image was unaffected. Dkt. 164 at 20. Defendants also provided a full listing of the documents remediated from Mr. Pinot's laptop with corresponding Bates numbers to Apple. Similarly, a November 2022 post-remediation image of Defendant Prabhu Rajamani's personal laptop became corrupted. Defendants again promptly notified Apple, took a replacement image, and provided images from Mr. Rajamani's laptop to FTI for analysis. *Id.* There was nothing nefarious about either technical problem—indeed, Apple does not tie its gripes about these blameless technical issues to any of the relief it seeks.

*Third*, Apple feigns shock that Rivos employees have purportedly been allowed to access Apple confidential information. Mot. at 14-15. Apple's complaint is based on Defendants' counsel informing Apple that one device belonging to each of four individual Defendants contained information Apple claims is confidential. Dkt. 171-27. Apple ignores Defendants' statement that all four individuals have not been accessing, and have been told not to access, any such information. *Id.* at 2. And the relevant devices have since been segregated from the individuals, images of those devices have been sent to FTI, and Apple has access to all associated metadata for these documents. Apple also ignores the reason those individuals' devices still contain the information Apple claims is confidential: because ***Apple*** did not consent to those devices being remediated despite Defendants' requests to do so, and Apple took months to propose a remediation process it would accept. *Id.* The Court should consider Apple's last two complaints in tandem: Apple faults Defendants for remediating devices, then faults Defendants for having unremediated devices because Apple will

1  not consent to remediating them.  These individuals need their devices for the same work and

2  personal reasons for which everyone needs their work and personal devices.  Despite the extreme

3  disruption to these individuals' (and their families') lives, all the devices containing purported Apple

4  confidential information were segregated on March 24, 2023, a week before Apple filed this motion,

5  and images have been sent to FTI for analysis—another critical fact that Apple neglects to mention.

6  **III.    LEGAL STANDARD**

7          Apple moves for sanctions against Ricky Wen, Rivos, Quinn Emanuel, David Eiseman, and

8  Judge Stephen Swedlow based on both Rule 37(e) and the Court's inherent authority to prevent

9  abuse of judicial process.  Rule 37(e) is the exclusive source of authority for sanctions for ESI

10  spoliation.  Rule 37(e)(2) limits the relief available in the event of a finding of spoliation, and some

11  of the relief Apple requests, including an instruction that Mr. Wen accessed Apple confidential

12  documents for his work at Rivos, is not available under Rule 37(e)(2).  An adverse inference

13  instruction, whether mandatory or permissive, is available "***only*** upon finding that the party acted

14  ***with the intent to deprive*** another party of the information's use in the litigation[.]"  Fed. R. Civ. P.

15  37(e)(2) (emphasis added).  Apple must prove by a preponderance of the evidence that spoliation

16  occurred.  *See, e.g.*, *Laub v. Horbaczewski*, 2020 WL 7978227, at *17 (C.D. Cal. Nov. 17, 2020).

17  Rule 37 sets out the requirements for a finding of spoliation and imposition of sanctions.  A court

18  only can impose sanctions under Rule 37(e) if the ESI in question is ***actually lost*** and ***irrecoverable***

19  ***through other means***, including from the party alleging spoliation.  Fed. R. Civ. P. 37(e).

20  Additionally, among other factors, the Court must find that the moving party suffered prejudice as

21  a predicate to a sanctions award.  *Id.*

22  **IV.    ARGUMENT**

23          **A.    Mr. Wen And Rivos Did Not Spoliate Evidence**

24                1.    A Mandatory Adverse Inference Is Entirely Unwarranted

25          Perhaps the single most important fact here is that, as Apple does not dispute, ***no documents***

26  ***were lost.***  Apple's argument for spoliation sanctions depends on Mr. Wen deleting .tar files that, as

27  Apple acknowledges, ***he then immediately put back onto his computer***.  Mot. at 4.  Apple baldly

28  asserts that a ***mandatory*** adverse inference instruction is warranted because "Mr. Wen acted with

1  the requisite intent."  *Id.* at 17-18.  But as Apple's cases acknowledge, the requisite intent is the

2  intent "to avoid [the party's] litigation obligations" or to "keep incriminating facts out of evidence."

3  *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr 24, 2020) (citation omitted);

4  *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016).

5  *WeRide* is readily distinguishable: there, this Court found a "staggering" amount of spoliation,

6  including wholesale deletion of entire email accounts and wiping of laptops and source code

7  repositories over a period of months (much of which happened ***after*** a preliminary injunction

8  issued).  *Id.* at 7, 9.  Here, in stark contrast, Mr. Wen deleted one folder containing two .tar files and

9  ***then promptly replaced the .tar files***.

10  Apple's other cases fare no better.  In *Skyline Advanced Technology Services v. Shafer*, 2020

11  WL 13093877 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, 2020 WL 13093878

12  N.D. Cal., July 30, 2020), "Ms. Shafer deleted ***all*** the information on her company laptop before

13  returning it . . . deleted countless text messages and emails about the [events] that form the basis for

14  her lawsuit, and deleted ***all*** of her communications" with a relevant third party.  *Id.* at *2 (emphasis

15  added).  She also forwarded herself 75 relevant emails, printed the ones she found helpful, and then

16  deleted everything from her personal email account.  *Id.* at *4.  And in *OmniGen Research v.*

17  *Yongqiang Wang* 321 F.R.D. 367 (D. Or. 2017), defendants donated a computer to Goodwill to

18  make it unavailable to plaintiffs, intentionally deleted thousands of documents, intentionally deleted

19  and refused to produce relevant emails from multiple accounts, intentionally destroyed metadata,

20  and in one defendant's case fled to China with the very laptop the Court had ordered him to produce.

21  *Id.* at 372-73.

22  In other words, the cases Apple cites all involved willful, egregious, repeated destruction of

23  evidence.  In none of the cases Apple cites did the sanctioned party immediately take steps to restore

24  the evidence they deleted or otherwise destroyed.  And for good reason: such actions are on their

25  face inconsistent with an intent to deprive the opposing party of evidence.  Mr. Wen's unrebutted

26  testimony is that he deleted the .tar files not to avoid his litigation obligations but in frustration with

27  himself and the lawsuit.  Ex. B at 84:18-20; Ex. C; Wen Decl. ¶ 12.  And again, he ***promptly replaced***

28  ***the files***.  Ex. B at 83:25-84:10; Wen Decl. ¶ 12.  That course of action is entirely inconsistent with

someone seeking to destroy documents to prevent them from being used in court.  And it is ***worlds away*** from the "staggering" degree of intentional, bad-faith spoliation that led to this Court's decision in *WeRide* and the other decisions Apple cites.

Indeed, not a single document was lost in this process, as Apple concedes.  Apple instead contends only that ***some metadata*** were lost.  Mot. at 4, 17.  But Apple offers not a shred of evidence, and there is no reason to think, Mr. Wen ***intended*** to destroy ***metadata*** such that they could not be used at trial.  Indeed, Mr. Wen did not know (and had no way of knowing) at the time that any metadata would be lost.  Wen Decl. ¶ 12.  And as discussed *supra* at p. 5, even Apple's expert could only say he "believe[s]" metadata were permanently lost.  Dkt. 171-1 ¶ 7.  Thus, the evidence is entirely inconsistent with Apple's view that Mr. Wen intended to destroy evidence to prevent it from being used in this case.  An adverse inference instruction is available "***only*** upon finding that the party acted ***with the intent to deprive*** another party of the information's use in the litigation[.]"  Fed. R. Civ. P. 37(e)(2) (emphasis added).  That alone defeats Apple's request for such an instruction.

But Apple's request goes further.  Apple does not merely ask the Court to order the jury to infer that the (allegedly) lost metadata would have been favorable to Apple.  Rather, Apple asks the Court to enter "an adverse inference against Mr. Wen that he was accessing Apple confidential information ***for his work at Rivos***."  Mot. at 17 (emphasis added).  Such a sanction, in addition to being draconian and wholly unwarranted by Mr. Wen's non-culpable conduct and Apple's lack of prejudice, flatly contradicts the undisputed evidence that Mr. Wen did ***not*** access or use Apple confidential files for his work at Rivos.  *Supra* at pp. 6-7.  And if Mr. Wen had in fact accessed or used the files in a meaningful way, there would be forensic and other evidence of that elsewhere (whether in the form of other metadata or in the form of direct data such as emails or copies of files).  But there is none.  Apple effectively asks the Court to assume (contrary to record evidence) that Mr. Wen interacted with one or more files in such a limited way that it left no trace elsewhere, then deleted and immediately restored the files to eliminate the metadata that his limited interaction created.  From that fantastical assumption, Apple asks the Court to impose an evidentiary sanction establishing much broader misappropriation against not just Mr. Wen, but Rivos as a company. Apple has not established that Mr. Wen acted with the necessary intent to deprive that would warrant

1  an adverse inference, much less that Rivos did so.  Thus, an adverse inference sanction that would

2  effectively establish elements of Apple's misappropriation claims is not warranted.

3      But even if Apple's requested sanctions were warranted on the facts, they are not available

4  under Rule 37(e).  That Rule allows a court, upon a finding that a party acted with bad intent (a

5  finding that is not possible on these facts), to "instruct the jury that it may or must presume the

6  information was unfavorable to the party."  Fed. R. Civ. P. 37(e)(2)(B).  Rule 37(e) does **not** allow

7  a court to "find[] certain facts established" as a spoliation sanction, as Apple asks the Court to do in

8  requesting an adverse inference that Mr. Wen was accessing Apple confidential information as part

9  of his work for Rivos.[6]  *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 520

10  (C.D. Cal. Nov. 2, 2022).

11              2.      A Permissive Inference Is Not Warranted

12      Apple next argues that, even if Mr. Wen did not intend to deprive it of evidence (as

13  explained, he did not), Apple is entitled to a permissive inference because, in Apple's telling,

14  metadata related to the .tar files are unrecoverable and Apple's case is thus irreparably prejudiced.

15  Mot. at 19.  Again Apple's motion fails on both the law and the facts.

16      At the outset, Rule 37(e) is clear that "**only** upon a finding that the party acted with the intent

17  to deprive another party of the information's use in the litigation may" the court "instruct the jury

18  that it **may or** must presume the information was unfavorable to the party."  Fed. R. Civ. P.

19  37(e)(2)(B) (emphases added).  Thus, Rule 37(e) makes no distinction between mandatory and

20  permissive inferences—neither is permitted except on a finding that the party intended to deprive

21  the other party of the information.  And Rule 37(e) is the **exclusive** source of authority to sanction

22  parties for failure to preserve ESI.  The Advisory Committee's Note to the 2015 Amendment of

23  Rule 37(e) makes this clear, stating that with respect to failure to preserve ESI, Rule 37(e)

24  "forecloses reliance on inherent authority or state law to determine when certain measures should

25

---

26  [6]  Rule 37(b) does in principle allow for such a sanction, but Apple does not rely on Rule 37(b) in
    its request for evidentiary sanctions, and therefore has waived such an argument.  And while the

27  court in *Abrams* did ultimately award an adverse inference sanction (though not one that treated
    facts as established), it did so based on the undeniably intentional destruction of text messages.

28  Here, as discussed, Mr. Wen did not intend to destroy metadata (if metadata are in fact lost).

---

Case No. 5:22-CV-2637-EJD

be used."  Adv. Comm. Note.  Both the Ninth Circuit (albeit in an unpublished opinion) and numerous courts in this district have held that this means what it says.  *Newberry v. Cnty. of San Bernardino*, 750 F.App'x 534, 537 (9th Cir. 2018) (holding that "[t]he detailed language of Rule 37(e) therefore foreclosed reliance on inherent authority to determine whether terminating sanctions were appropriate" and noting that terminating sanctions are subject to the same intent requirement as an adverse inference) (internal quotations and brackets omitted); *Best Label Co. v. Custom Label & Decal, LLC*, No. 19-CV-3051-SI (VKD), 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022) ("The Court concludes that Rule 37(e), as amended in 2015, displaces the Court's inherent authority to award sanctions with respect to ESI."); *FiTeq Inc. v. Venture Corp.*, No. 13-CV-1946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) (agreeing that "[T]he Advisory Committee's Notes to Rule 37(e) explicitly foreclose" relying on inherent authority to impose spoliation sanctions).

Apple cites a lone case in which it contends a court gave a permissive adverse inference instruction for non-intentional spoliation: *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1239-40 (N.D. Cal. 2022) (cited at Mot. 19).  The court there properly noted that a lack of intent precludes an adverse inference under Rule 37(e), but allowed a permissive instruction that the jury "may consider whether one party intentionally concealed or destroyed evidence" and if so "may decide that the evidence would have been unfavorable to that party."  *Id.*  To the extent the court in that case granted an adverse inference instruction related to spoliation of ESI based on the court's inherent authority, it cannot be squared with Rule 37(e)'s plain language, the Advisory Committee Note, or the cases cited above holding that such instructions based on inherent authority are no longer permitted.  And indeed, earlier this year Judge Orrick acknowledged the holding in *Meta* but noted that "the vast majority of" judges in this District and "the Ninth Circuit's unpublished guidance on the matter" have rejected the *Meta* view and held "that FRCP 37(e) limits [a court's] discretion" to impose inherent-authority sanctions for spoliation of ESI.  *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2277112 at *3 (N.D. Cal. Feb. 28, 2023) (collecting cases).  In any event, this case is readily distinguishable from *Meta*, where the court's instruction allowed the jury to "consider whether one party ***intentionally*** concealed or destroyed evidence."  605 F. Supp. 3d at 1240 (emphasis added).  Here, as discussed above, (i) the only evidence that was even arguably

"destroyed" is metadata, and (ii) there is no evidence, and no reason to think, Mr. Wen **intended** to destroy metadata.  There is thus no basis for such an instruction on these facts, even if such an instruction were available under the law.

Apple's request for an adverse inference instruction also depends on its argument that Apple has been severely prejudiced by the alleged loss of metadata.  Mot. at 19.  But as noted, Apple's only support for this statement is its expert's "belief" that metadata were irretrievably lost.  Such a qualified statement from a party's retained expert cannot establish prejudice.  And as discussed above, it is entirely possible that the metadata Apple claims were "lost" in fact never existed—and Apple has offered no evidence that they ever did.  *Supra* at p. 6.  But even setting that aside, Apple vastly overstates the prejudice.  Courts in the Ninth Circuit have "declined to award sanctions for deleted ESI where other avenues of discovery could 'replace' it by revealing the same information that the deleted ESI would have provided."  *Oracle USA, Inc. v. Rimini St., Inc*., No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714, at *4 (D. Nev. Sept. 21,2020), *adopting R. & R.*, 2021 WL 1224904 (Mar. 31, 2021) (collecting cases).  Here, as discussed above, much of the information Apple seeks—whether and under what circumstances Mr. Wen accessed or used the allegedly Apple confidential information—is available from other sources on Mr. Wen's computer or elsewhere.  If Mr. Wen had meaningfully interacted with the files, there would be evidence of that in multiple sources, not just the isolated metadata fields Apple emphasizes.  *Supra* at p. 7; Crain Decl. ¶¶ 19-24, 35.  Apple, nevertheless, now asks the Court to impose an evidentiary sanction that flatly contradicts the undisputed evidence.  Thus, even setting aside the fatal legal flaw in Apple's argument and even assuming metadata were in fact permanently lost, no sanctions are warranted.  The reason there is no evidence of Mr. Wen using the files is because he never used them, not because limited metadata may have been unintentionally lost.

### 3.    Nothing Mr. Wen Did May Be Imputed To Rivos

Lastly, Apple asks the Court to impute Mr. Wen's alleged (but non-existent) spoliation to Rivos.  This argument fails comprehensively.  At the outset, Apple ignores basic principles of imputation.  "[S]poliation of evidence may be imputed to a [party] who did not participate in the spoliation only where the destroying party is the agent of that party," which in turn is true only

where the "employee [is] acting within the scope of his employment."  *Gemsa Enters., LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220 at \*9 (C.D. Cal. Feb. 10, 2015) (internal quotation marks omitted); *see also Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.*, 2012 WL 2992627, at \*6 (E.D. Mo. July 20, 2012) ("As to whether [an employer] is vicariously liable for [an employee's] acts, . . .  courts have applied general agency principals in determining whether spoliation by an employee could be imputed to the employer."); *Danielson v. Huether*, 2021 WL 217706, at \*6, n.7 (D.S.D. Jan. 21, 2021) ("Ordinary agency principles govern a party's responsibility for spoliation committed by its employees."); *Bush v. Bowling*, 2020 WL 5423986, at \*7 (N.D. Okla. Sept. 10, 2020) (same; recognizing the requirement that the principal must "exercise[] control and authority over its third-party agent who possess the spoliated evidence").

Apple's cited cases recognize these principles.  In *Colonies Partners*, the court cited—for the same proposition for which Apple relies on the case, that "an employee's misconduct with regard to spoliation can be imputed to an employer"—a case that imputed employees' conduct to a company by "evaluating the actions of employees not as individuals but as agents of the corporation." 2020 WL 1496444, at \*10 (C.D. Cal. Feb. 27, 2020).  And in *First Financial Security*, the court repeatedly described the conduct it imputed to the corporate defendant as that of its "agents."  2016 WL 5870218, at \*3, \*7.  But Apple's brief does not even give lip service to these governing principles of law, let alone try to explain how Mr. Wen could have been acting as Rivos' agent in deleting the folder containing two .tar files in a moment of frustration and after having received a litigation hold notice **from Rivos**.  This case is also facially distinguishable from Apple's cases.  Indeed, as Apple notes, the *Colonies Partners* court imputed the County employee's spoliation to the County in large part because "[t]he County was responsible for notifying its employees to preserve potentially relevant ESI, and counsel should have done the same for Ramos, because Ramos was named as a separate defendant."  Mot. at 20 (quoting *Colonies Partners*, 2020 WL 1496444, at \*8).  But here Rivos and its counsel did exactly what the *Colonies Partners* court faulted the County for failing to do: Rivos told Mr. Wen to take steps to preserve ESI and other potentially relevant data.  Wen Decl. ¶ 11.  The facts here are the opposite of the dispositive facts in

1  *Colonies Partners*.  And given that Rivos told employees not to delete potentially relevant ESI,

2  Apple's argument that Rivos "failed to prevent" the deletion falls flat.

3        By contrast, courts addressing facts similar to those here—the employer was not involved in

4  the deletion, had instructed its employees to preserve ESI, and the deletion was not in the course or

5  furtherance of the employer's business—routinely decline to impute employees' alleged spoliation

6  to their employers.  For example, in *American Builders & Contractors Supply Co. v. Roofers Mart,*

7  *Inc.*, 2012 WL 2992627 (E.D. Mo. Jul. 20, 2012), the court declined to impute an employee's

8  deletion of documents (done by reinstalling the operating system on his personal laptop, which

9  destroyed ***all evidence on the entire computer***) to his new employer because "there [was] no

10  evidence suggesting that [the new employer] knew of or had control over the laptop at the time of

11  the reinstallation."  *Id.* at *7.  Aside from the deletion in *American Builders* being far more expansive

12  and irreversible than that here (where, it bears repeating, ***no documents have been lost***), the facts as

13  they apply to the agency question align with those here—Rivos had no knowledge of the deletion at

14  the time and no control over the operation of the laptop from which the files were deleted.  And in

15  *Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220 (C.D. Cal. Feb.

16  10, 2015), the court did not impute an employee's deletion to his employer because that deletion

17  happened after the employer sent a litigation hold and, upon learning of the deletion, the employer

18  (like Rivos here) went to great lengths to "try to capture [the] contents of his computer."  *Id.* at *10.

19  In fact, here, all the documents in the .tar files ***were*** captured.  If anything, this case presents a

20  stronger case ***against*** imputation than *American Builders* or *Gemsa*.

21        It is important to note that, while Apple accuses Mr. Wen of breach of contract based on his

22  alleged retention of Apple confidential information in violation of his Intellectual Property

23  Agreement with Apple, Apple accuses Rivos ***only*** of trade secret misappropriation.  *See* Dkt. 93.

24  Thus, in order for the loss of the metadata for the .tar files (if indeed data were lost) to be relevant

25  or prejudicial as to Apple's claim ***against Rivos***, the files for which metadata were lost would have

26  to be Apple ***trade secrets***, and they would have to be ***misappropriated*** (i.e., wrongfully acquired,

27  disclosed, or used), not merely retained.  Apple has spent much of the case conflating mere allegedly

28  confidential information with alleged trade secrets (*see* Dkt. 100 at 9-10; Dkt. 101 at 6-9), and

Apple's case largely relies on obfuscating the critical difference between misappropriation and retention. This is surely why Apple is so keen on making the enormous leap to obtaining an adverse inference on *misappropriation* against a blameless party. The Court should reject Apple's gambit.

**B.      Neither Mr. Wen Nor Quinn Emanuel Violated Any Court Orders**

Apple accuses Mr. Wen and his counsel of violating the June 21, 2022 Stipulated Order Regarding Document Preservation and Inspection. Dkt. 55. Apple asserts that this Order "requir[ed] him to 'immediately' hand over all devices containing Apple confidential information." Mot. at 20. Notably, everything but "immediately" is outside the quotation marks, because Apple needs to rewrite the Order to support the relief it seeks. Here is what the Order actually said:

> Mr. Wen shall immediately return to Apple, through Apple's undersigned counsel, *any Apple confidential information* of which he is aware *or becomes aware* as being in his possession, including but not limited to Apple confidential information *stored on any devices*, drives, computers, tablets, phones, electronic media, emails and email accounts, and cloud storage.

Dkt. 55 ¶ 1 (emphases added). Thus, the Order on which Apple relies expressly contemplated that Mr. Wen might later become aware of more potential devices that could potentially contain Apple confidential information. That is precisely what happened: at the time the June 21 Order was entered, Mr. Wen was not aware that Apple confidential information could potentially be on the six devices and accounts of which Apple complains. Wen Decl. ¶ 14. During preparation for his deposition, he realized that such information could be on those devices. *Id.* He then disclosed that information to his counsel, who promptly informed Apple and arranged for the devices and accounts to be turned over to FTI. *Id.*; Eiseman Decl. ¶ 5. This is consistent with his obligations under the Court's Order. Apple omits to mention that following extensive forensic review of these devices, there is no evidence of anything except, at most, passive retention of files.

Apple similarly complains about an alleged violation of the July 1, 2022 Stipulation and Order Setting Forensic Inspection Protocol, under which Mr. Wen agreed to "[p]romptly . . . arrange for FTI to be able to collect for forensic imaging and analysis the devices listed below and any other devices which have ever been used to store or transmit Apple confidential information." Dkt. 67 ¶ 2. But again, Mr. Wen did that—when he realized that the six devices and accounts at issue could contain Apple confidential information, he promptly informed his attorneys, who promptly

1   informed Apple and arranged for the devices and accounts to be sent to FTI.  Wen Decl. ¶ 14.  All

2   were turned over by March 10, 2023 (before Apple filed this motion).  Eiseman Decl. ¶ 5.

3        Apple disputes none of this.  Most importantly, Apple does not dispute that all of the devices

4   and accounts were turned over, that FTI is in the process of imaging and analyzing them, and that

5   Apple's attorneys are receiving any responsive files (and their metadata) for review.  Apple does

6   not contend that a single document or piece of metadata from the six devices or accounts was lost

7   or corrupted.  In short, Apple does not contend that what it views as insufficiently "immediate" or

8   "prompt" production of the six devices and accounts has in any way prejudiced its ability to prove

9   its case.  The only harm Apple claims is the fees and costs it incurred in moving to compel Mr.

10  Wen's deposition and in bringing this sanctions motion.  Mot. at 21-22.

11       At the outset, of course, Apple's choice to pursue scorched-earth motion practice is not

12  prejudice.  And the Court already denied Apple's request for fees and costs in connection with its

13  motion to compel Mr. Wen's deposition.  Ex. K at 21:17-22:5.[7]  Apple's request for fees related to

14  that motion is effectively an untimely objection to that order, the deadline for which has long passed.

15  Fed. R. Civ. P 72(a).  And while Apple does not specify how much of the $148,215.38 in fees it

16  seeks was incurred in bringing its motion to compel and how much in bringing its motion for

17  sanctions, it is worth noting that Apple's portion of the former was about two pages and cited zero

18  cases while its sanctions motion is the full 25 pages allowed by the local rules.  Dkt. 144; Mot.  It

19  stands to reason that the vast majority of the fees Apple seeks to recover are fees from this motion.

20  And *all* of the costs (consisting of expert fees) Apple seeks to recover were in connection with this

21  motion.  Dkt. 171-29.  Apple's two-step—bring a motion for sanctions, the sanctions consisting

22  almost entirely of the fees and costs incurred preparing that motion—is shameless bad faith in an

23  effort to run up a much smaller opponent's costs, and to waste the Court's and the parties' time.  It

24  is all the more so because, by the time Apple brought its motion, all six devices and accounts at

25

26

---

27  [7]  The Court provided that the issue could be re-raised as part of a motion for sanctions only "if
    there is some problems with the Wen deposition or further obstruction and objection *and it does*
28  *not occur*[.]"  *Id.* (emphasis added).  That is not the case here.

1    issue had already been turned over to FTI.  Eiseman Decl. ¶ 5.  In other words, by the time Apple

2    incurred the fees that it claims as prejudice, any potential *actual* prejudice had been cured.

3        Neither Mr. Wen nor his counsel violated any court orders, and Apple's only argument

4    otherwise depends entirely on Apple's view that the devices and accounts Mr. Wen undisputedly

5    turned over to FTI were not turned over "immediately" or "promptly" enough for Apple's liking.

6    For that, Apple asks for over $160,000 in fees and costs, which it likely incurred almost entirely in

7    bringing this motion.  The Court should reject Apple's gamesmanship.

8        **C.**    **All Of Mr. Wen's Attorneys' Statements Were True To The Best Of Their**

9            **Knowledge At The Time They Made Them**

10        Lastly, Apple seeks monetary sanctions (again consisting almost entirely of the fees it

11   incurred seeking those sanctions) for alleged false statements by Quinn Emanuel attorneys.  But

12   each of those statements was true to the best of the speaker's knowledge, and as additional relevant

13   information came to light, counsel promptly informed Apple.  That is exactly what counsel should

14   do, and Apple's request for draconian sanctions for counsel acting in good faith and a spirit of

15   transparency is wholly unwarranted.  To address each of Apple's accusations in turn:

16        *First*, Apple accuses Judge Stephen Swedlow (who is now a sitting judge in Cook County,

17   Illinois) and David Eiseman of "[m]aking multiple false statements . . . that Rivos and Wen had

18   fully complied with their preservation obligations, despite knowing that Mr. Wen had intentionally

19   deleted the Unix.tar file from his Rivos laptop."  Mot. at 23.  But the critical fact here, which Apple

20   again simply ignores, is that Mr. Wen almost immediately replaced the .tar files and ***no documents***

21   ***were lost***.  *Supra* at pp. 2-4.  Even if some associated metadata were lost in that process, Apple

22   offers no evidence that Mr. Wen's attorneys knew—or had any way to know—that nuance when

23   they told Apple and the Court that Mr. Wen and Rivos had complied with their document

24   preservation obligations.  Eiseman Decl. ¶¶ 3-4; Swedlow Decl. ¶¶ 3-4.  Indeed, all Mr. Wen's

25   attorneys knew (or had any reason to know) was that Mr. Wen had deleted the Unix.tar files,

26   immediately recovered them, and that all information was therefore retained  *Id.*  That is entirely

27   consistent with what counsel told the Court.

28

*Second*, Apple accuses Judge Swedlow and Mr. Eiseman of "failing to disclose the deletion of the folder containing Unix.tar files or its presence on a Rivos device and the Rivos network in either Rivos' August 8, 2022 initial interrogatory response and January 17, 2023 supplemental response in response to an interrogatory that directly called for that information." Mot. at 23. But as explained above (*supra* at p. 5), Mr. Wen did not tell his counsel where he moved the Unix.tar files from and to—only that he had deleted and then recovered those files. And with forensic investigations underway across a large number of devices, Mr. Wen's counsel did not learn that alleged Apple confidential files might be on Rivos servers until preparing for his deposition in March 2023, months after serving the August and January interrogatory response, and Rivos promptly supplemented its response. Ex. J. In other words, this went exactly how discovery is supposed to go: parties and counsel provided information that was accurate to the best of their knowledge at the time, and supplemented as new information became available. *See* Fed. R. Civ. P. 26(e). Apple does not try to identify any prejudice that could have come from this good-faith supplementation based on new information.

*Third*, Apple faults Judge Swedlow and Mr. Eiseman for allegedly "[f]alsely stating multiple times that there were no Apple confidential documents that had ever been transferred to or found or Rivos' systems." Mot. at 23. But the statements Apple cites were on or before June 16, 2022—at the very outset of the litigation. *Id.* At that time, Defendants' counsel were not aware that Mr. Wen's Unix.tar file contained potential Apple confidential information. Eiseman Decl. ¶ 3; Swedlow Decl. ¶ 3.

*Fourth*, Apple asserts that Quinn Emanuel "[f]alsely stat[ed] at the June 16 hearing that 'most of the files' Apple had identified that Mr. Wen retained were his 'personal banking records.'" Mot. at 23. Apple is really reaching here. This was an extemporaneous oral statement at a hearing, and it is undisputedly true that several of the files Apple accused Mr. Wen of retaining were personal in nature, including personal banking records. Dkt. 46-6 ¶ 9. Imprecise fractions are not sanctionable, and Apple cites no authority to the contrary.

*Fifth*, Apple claims Quinn Emanuel "[f]alsely stat[ed] on multiple occasions that all of Mr. Wen's devices and accounts had been imaged and segregated." Mot. at 23-24. As discussed in

several places above, Quinn Emanuel only learned of the six new devices and accounts that could potentially contain Apple confidential information when preparing Mr. Wen for his deposition, *after* the statements Apple references.  Wen Decl. ¶ 14; Eiseman Decl. ¶ 5.  When Quinn Emanuel learned of those additional devices and accounts, it informed Apple and promptly segregated the devices and accounts.  *Id.*  And in any event, Defendants were never under any obligation to image and segregate "all of Mr. Wen's devices and accounts."

*Sixth*, Apple recycles its claim that Mr. Wen and his counsel "[f]ail[ed] to comply with court orders requiring Mr. Wen to 'immediately return to Apple' all Apple confidential information and to provide 'all devices which have ever been used to store or transmit Apple confidential information' and credentials to FTI."  Mot. at 24.  For the reasons discussed *supra* at p. 8, there was no violation of either order, and all such devices have now been provided to FTI.

*Seventh* and finally, Apple accuses Quinn Emanuel of "[f]alsely stating on February 28 … that the unix.tar archive files were never on Mr. Wen's folder on the Rivos network and that the metadata showed they had last been accessed years before."  Mot. at 24.  As discussed above, Quinn Emanuel did not know until shortly before Mr. Wen's deposition that the files had been on Rivos' servers.  The metadata Apple refers to did in fact show that the files had last been modified *years* before.  Apple's expert represents that Defendants' counsel conflated "last accessed" and "last modified" dates.  Dkt 171-1 ¶ 13.  This was at worst an innocent mistake, and in any event last modified dates are often more reliable and accurate than last accessed dates, which are extremely volatile and often updated by non-user activity such as search indexing or backups.

Thus, all of the allegedly false statements Apple attributes to Quinn Emanuel attorneys were made in good faith based on the best information available to those attorneys at the time and many of them were not "false" at all even under the most hyper-technical assessment Apple makes.  To the extent any statements contained inaccuracies, those inaccuracies were inadvertent, harmless, and corrected once more information became available.  Sanctions on these facts are uncalled for.

Even more outrageous than the *fact* that Apple seeks sanctions is the ***scope and amount*** of the sanctions it seeks against Quinn Emanuel or individual Quinn Emanuel attorneys.[8]  As an initial matter, "U.S.C. § 1927 does not permit the award of sanctions against a law firm." *Kaass Law v. Wells Fargo Bank, N.A.* 799 F.3d 1290, 1293 (9th Cir. 2015).  Further, sanctions against individual lawyers (let alone a sitting judge) are an extraordinary remedy limited to the most egregious circumstances.  "Because the district court's inherent powers are so potent, ***we require courts levying sanctions to assess an attorney's individual conduct and to make an explicit finding that he or she acted in bad faith.***"  *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997) (emphasis added).  Here there is no basis for such a finding.  As just discussed, every statement made by Quinn Emanuel attorneys was made in good faith based on the information available at the time.  And Apple provides the Court nothing that would allow it to assess any attorneys' ***individual*** conduct.  Rather, Apple mostly makes sweeping (and false) allegations against "Rivos and its counsel," "Quinn attorneys," "counsel," or "Quinn."  Mot. at 6-10, 13-14, 22-24.  With few exceptions, Apple does not try to "assess" any Quinn Emanuel attorney's "individual conduct" as required for sanctions.  *Primus*, 115 F.3d at 650.

Apple's own cases show that it could never make an adequate showing here anyway.  *See, e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1006 (9th Cir. 2015) (sanctioning a plaintiff and his attorney for "hurl[ing] nineteen [meritless] accusations of misconduct against a bankruptcy judge" and then pressing for appeal); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC, 2023 WL 1871107, at *1 (N.D. Cal. Feb. 9, 2023) (sanctioning party and law firm for repeatedly advancing frivolous legal arguments, misrepresenting statements made by opposing party and magistrate judge to support meritless withholding of discovery, and baselessly instructing witness not to answer 22 times during a deposition); *Spiers v. City & Cnty. of*

---

[8]  Apple seeks sanctions against Judge Swedlow, Mr. Eiseman and Quinn Emanuel under both 28 U.S.C. § 1927 and the Court's inherent authority, but throughout its motion conflates the two.  "Each of [the] sanctions alternatives has its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy." *Lozano v. Cabrera,* 678 Fed. Appx. 511, 513 (9th Cir. 2017) (citation omitted).

*San Francisco*, No. 20-CV-01357-JSC, 2022 WL 612663, at *2 (N.D. Cal. Mar. 1, 2022) (sanctioning defendant because of an admitted internal policy not to disclose evidence, while finding sanctions ***inappropriate against counsel*** because they "[were] not aware of the evidence until the December 14, 2021 deposition and thereafter worked quickly to produce the evidence"); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (remanding "sanctions issue" for further consideration where lawyers representing prison guards sued for civil rights violations intentionally misrepresented to the court that an additional disciplinary hearing was required as part of a pattern of "attempt[ing] repeatedly to mislead the court by making misrepresentations regarding the state of the record, the orders of the court, and the actions taken by respondent and the CDC ... in bad faith with a view to gaining an advantage in the *Ylst* case."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 37-40 (1991) (sanctioning counsel who set up a trust and a leaseback agreement specifically to keep a piece of property out of the district court's reach, violated a preliminary injunction and other court orders, filed meritless motions and pleadings, refused to prepare to close a sale the district court ordered, and filed a frivolous appeal).   This case, in which individual attorneys made statements that were true to the best of their knowledge at the time, then promptly supplemented when warranted, is nothing like the cases Apple cites.

In sum, courts may not sanction an individual attorney "without a 'specific finding of bad faith.'"  *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).  "There is no indication in the record" that any Quinn Emanuel attorney "acted in bad faith or intended to mislead the court." *Id.* There is thus no basis for sanctions against any individual attorney.

## V.     CONCLUSION

Defendants and their counsel respectfully ask that the Court deny Apple's motion.

1   DATED:  July 21, 2023              Respectfully submitted,

2                                      QUINN EMANUEL URQUHART & SULLIVAN,
                                       LLP
3

4

5                                      By      /s/ David Eiseman

6                                         DAVID EISEMAN
                                          RYAN LANDES
7                                         VICTORIA B. PARKER

8                                         Attorneys for Defendants Rivos Inc., Wen Shih-
9                                         Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
                                          Ye, Laurent Pinot, Prabhu Rajamani and Kai
10                                        Wang

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28