| | |
|---|---|
| BRYAN WILSON (CA SBN 138842)<br>BWilson@mofo.com<br>KENNETH A. KUWAYTI (CA SBN 145384)<br>KKuwayti@mofo.com<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, California 94304-1018<br>Telephone: 650.813.5600<br>Facsimile: 650.494.0792 | DAVID EISEMAN (CA SBN114758)<br>davideiseman@quinnemanuel.com<br>VICTORIA B. PARKER (CA SBN 290862)<br>vickiparker@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California 94111-4788<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 |
| ARTURO J. GONZALEZ (CA SBN 121490)<br>AGonzalez@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: 415.268.7000<br>Facsimile: 415.268.7522 | RYAN LANDES (Bar No. 252642)<br>ryanlandes@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 |
| MARY PRENDERGAST (CA SBN 272737)<br>MPrendergast@mofo.com<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, District of Columbia 20037<br>Telephone: 202.887.1500<br>Facsimile: 202.887.0763 | Attorneys for Defendants<br>RIVOS INC., WEN SHIH-CHIEH A/K/A<br>RICKY WEN, JIM HARDAGE, WEIDONG<br>YE, LAURENT PINOT, PRABHU<br>RAJAMANI and KAI WANG |

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RIVOS, INC., a Delaware corporation; WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,<br><br>　　　　　　Defendants. | Case No. 5:22-cv-02637-EJD<br><br>**JOINT DISCOVERY REPORT**<br><br>Date:　August 9, 2023<br>Time:　11:00 am<br>Ctrm:　5<br>Judge:　Hon. Nathanael M. Cousins<br><br>Action Filed: April 29, 2022 |

**Apple's Preliminary Statement**

Since the last discovery conference, Apple has confirmed that at least 11 Rivos employees improperly retained Apple confidential information, and that may be just the tip of the iceberg. Apple is now investigating images for **27** more employees that Rivos provided in response to the Order requiring Defendants to "provide to FTI forensic images of devices and storage accounts that were used to store or transmit purported Apple confidential information." (Dkt. 174 at 2.)

The case of Ricky Wen is of particular relevance to this dispute. He admits to taking a folder containing hundreds of confidential documents from Apple—in a compressed file called "unix.tar"—and putting them on his Rivos laptop and Rivos work directory. While he claims he never used them at Rivos, he intentionally deleted them from his laptop just before it was imaged in this case, destroying any potentially incriminating metadata. He then replaced the deleted "unix.tar" with another file named "unix.tar" (which may or not may not contain the same documents) in an apparent effort to conceal his destruction of metadata.

Apple requests the Court's help with three issues. First, Apple seeks communications with and about Mr. Wen's unix.tar. Second, Apple seeks increased deposition limits given the large number of employees who retained or used Apple information. Third, Apple seeks documents sufficient to show the extent to which third parties are collaborating with Rivos in the development of its SoC (and thus now have access to Apple's trade secrets).

**Apple Issue #1 – Defendant Ricky Wen Communications**

In support of their Opposition to Apple's motion for sanctions, David Eiseman, Stephen Swedlow, and Ricky Wen submitted declarations that disclose the substance of then-privileged communications between Mr. Wen and his counsel. (Dkts. 219-1; 219-2; 219-3.) They relied on these communications to argue that their statements that Mr. Wen had preserved all documents and had not placed any documents on his Rivos laptop or the Rivos network were true to the best of their understanding when they made them. (Dkt. 219 at 21-24.) Apple pointed out that this waived privilege. Rivos disagreed, but on July 31, 2023, produced one email consisting of communications with Mr. Wen. After Apple expressed its skepticism that this was the only communication, Rivos produced an additional email on August 4, 2023. The emails show that

Mr. Wen placed documents related to Apple designs onto his Rivos laptop and the Rivos network and later deleted an AAPL folder from his laptop, and that Rivos counsel knew those facts.

Rivos is withholding additional communications about these issues on privilege grounds, asserting the scope of the waiver is limited to only *the date* the communications described in the Swedlow and Eiseman declarations took place. This is far too narrow. The waiver extends to the subject matter of the communications as well. *See Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (holding a party cannot "reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation").

The Court should order Rivos and Mr. Wen to produce all communications—between Mr. Wen and his attorneys, among his attorneys, or between his attorneys and consultants— related to the following three subject matters disclosed in the declarations.[1] The first category is Mr. Wen's actions with respect to unix.tar and the contents of unix.tar. Mr. Eiseman and Mr. Swedlow disclosed that "[a]s [they] were preparing Rivos' and Mr. Wen's opposition to Apple's TRO motion, Mr. Wen informed Quinn Emanuel that he had deleted a folder from his Rivos-reimbursed laptop but then recovered the folder to that laptop." (Dkt. 219-1 ¶ 3; Dkt. 219-2 ¶ 3.) The recently produced emails from Mr. Wen to Rivos' counsel describe in detail his actions with respect to unix.tar to in-house and outside counsel. (*See* RIVOS_0418739 at -418740 ("Right after I deleted the tar file from my Rivos laptop, however, I was informed that my Rivos laptop will be imaged the next day. Since I knew it won't look good if there is any residue found in the disk image, I tried to recover it"); RIVOS_0418471 at -418472 ("Since I kept all my UNIX directories intact and don;t [sic] want to see the AAPL folder in my laptop everyday to hate myself more, I once deleted the folder but recovered it for the data forensic.").) A June 2022 email from Mr. Wen to counsel specifically discusses the contents of unix.tar. (*See* RIVOS_0418471 ("Some of the data files, however, are related to the designs, which I worked on

---

[1] Relevant RFPs include RFP 58 to Rivos (documents related to Rivos' investigation into files deleted by former Apple employees); RFP 2 to Rivos (communications "describing. . . transfer. . . of Apple confidential documents and information related to SoCs or SoC components that were retained, downloaded, or transferred by any former Apple employees"); RFP 38 to Rivos (data provided to Rivos by former Apple employees regarding Apple's claims in this litigation); RFP 3 to Wen (communications with Rivos regarding Apple confidential information); and RFP 26 to Rivos (communications "regarding this lawsuit or the allegations against Rivos in this lawsuit").

at Apple.").) Rivos cannot selectively produce documents and make assertions regarding its counsel's communications with Mr. Wen regarding Mr. Wen's actions with respect to unix.tar and its contents and then claim privilege over others.

The second category is instructions to Mr. Wen regarding document preservation. Mr. Wen disclosed that "Rivos instructed [him] and other Rivos employees to preserve and not delete documents that might be relevant to the case, including electronically stored information." (Dkt. 219-3 ¶ 11.) Defendants' counsel later confirmed, during a meet and confer, that Mr. Wen was referring to an instruction from Rivos' in-house counsel but refused to produce communications related to that instruction.

The third category is devices and accounts belonging to Mr. Wen "that could potentially contain Apple confidential information but that had not been previously disclosed to Apple." (Dkt. 219-1 ¶ 5.) Mr. Eiseman's declaration stated that Quinn Emanuel had no "reason to know these devices and accounts existed" until February 2023, when they prepared Mr. Wen for his deposition. (*Id.*) That assertion discloses that Mr. Wen had further communications with Quinn Emanuel about those devices and accounts at that time as well. Privilege over any other communications about those devices and accounts has now been waived.

**Apple Issue #2 / Rivos Issue #3 – Deposition Limits**

Apple seeks additional deposition time to account for the large number of Rivos employees who retained, accessed, or used Apple confidential information. Specifically, Apple requests 120 total 30(b)(1) deposition hours and 21 total 30(b)(6) deposition hours (which Rivos agrees upon). Both parties agree there should be no limit on the <u>number</u> of depositions. The only dispute is over the total amount of 30(b)(1) hours.[2]

The Court should grant Apple's proposal.[3] This is not a run-of-the-mill case for which the

---

[2] Apple proposed 100 total hours in the July 18, 2022, Joint Case Management Statement. (Dkt. 83 at 7.) Defendants proposed no change to the Federal Rules. (*Id.* at 8-9.) The Court's Case Management Order did not directly address the issue but stated: "the parties shall comply with the presumptive limits on discovery set forth in their statement." (Dkt. 87 at 1.)

[3] Federal Rule 30(a)(2) states that "the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)" for more than 10 depositions being taken. Federal Rule 30(d)(1) states that the "court must allow additional time consistent with Rule 26(b)(1) and (2)" for depositions exceeding one day, seven hours "if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."

1   Federal Rules' default deposition limits make sense.  Currently, Apple knows of 45 employees
2   who accessed Apple confidential information at Rivos and 11 employees that improperly retained
3   Apple confidential information after leaving Apple, and that is before accounting for the 27
4   additional employees whose images were provided by Defendants to FTI.  Apple certainly needs
5   to depose every employee who retained Apple confidential information, at the very least to ensure
6   they have not used it and are not currently using it at Rivos.  And Apple needs to depose
7   individuals on the financial and marketing side of Rivos to develop its damages case and other
8   individuals at the company relating to the development of Rivos products.

9   Apple should not be penalized because so many employees took its trade secrets and
10  accessed and used them at Rivos.  Moreover, nobody would benefit if Apple were forced to file
11  additional lawsuits against individuals who retained or accessed Apple confidential information to
12  ensure they are not using it at Rivos or otherwise disseminating it.

13  Accordingly, the Court should grant Apple's proposal and order up to 120 hours for
14  30(b)(1) depositions and 21 hours for 30(b)(6) depositions.

15  **Apple Issue #3 – Documents and Information Regarding Third Parties Working with Rivos**

16  Apple has served document requests and interrogatories seeking the identities and roles of
17  third parties participating in the design and development of Rivos' SoCs.  (*See, e.g.*, RFP 69; Rog
18  21.)  This information is relevant to identifying who has obtained access to Apple trade secrets at
19  Rivos and the extent to which Rivos has gained a head start by using Apple's trade secrets. In
20  addition, evidence that third parties supplied components of Rivos' SoC could help alleviate
21  Apple's concern that portions of the designs were developed using its trade secrets.

22  Yet Rivos refuses to provide the documents and information.  Rivos has not disputed the
23  relevance and instead cites third-party confidentiality concerns.  Rivos' counsel even improperly
24  instructed two witnesses not to answer questions about third-party developers on that ground.

25  But the Protective Order required Rivos to promptly notify the third parties of Apple's
26  requests, after which objecting third parties were required to seek protective orders within 14
27  days.  (Dkt. 113 at 17.)  As no third party has sought a protective order, Rivos' confidentiality
28  objections are baseless.  Thus, the Court should order Rivos to provide this discovery.

**Rivos Issue #1 – Apple's Identification of Documents Produced by
Rivos Employees that Reflect Apple Trade Secrets**

This issue is moot. At Defendants' insistence, Apple culled through their productions to prepare a list of approximately 20,000 misappropriated documents reflecting Apple trade secrets. Rivos recently informed Apple that there are errors in the list. These are innocent errors, which are inevitable given the vast number of documents that were misappropriated. For example, the picture of a parrot cited by Rivos relates to Apple's testing of its SoCs. And every erroneous entry was a document that Defendants' attorneys themselves either thought constituted Apple confidential information or decided to dump on Apple, making Apple's job more difficult.

Apple has agreed to provide an updated list by the end of August 2023 at the latest. Rivos does not need the list sooner. The Court should deny any further relief.[4]

**Rivos Issue #2 – Apple Technical Documents**

Apple has agreed to produce technical documents sufficient to show the trade secrets that Apple contends were misappropriated by Defendants located after a reasonable, good-faith search to the extent such documents were not already produced back to Apple by Defendants. Rivos' demand that Apple produce all documents (even chats among engineers) related to the *development* of its trade secrets is enormously burdensome and disproportional under Federal Rule 26(b)(1). This would encompass years of development documents by hundreds of engineers. Rivos' only explanation is that these documents might reveal that Apple obtained its trade secrets from public sources. This demand is just fishing and cannot possibly justify the overly broad request and the burden that it would place on Apple. *See Success Systems, Inc. v. CRS, Inc.*, 2023 WL 2403940, at *3 (D. Conn. Mar. 8, 2023) (denying motion to compel trade secret plaintiff's development documents).

Importantly, Rivos has not produced development documents, which are plainly relevant to Apple's allegation that Rivos developed its SoC using Apple trade secrets. In the event that the Court orders Apple to produce development documents, Rivos should do the same.

---

[4] On December 1, 2022, the parties agreed on the record that Apple had satisfied its obligation to sufficiently identify its trade secrets. (*See* Dkt. 129.) On August 4, 2023 (the Friday before this Report was filed), Defendants asked for the first time if Apple would amend that identification.

**DEFENDANTS' STATEMENT**

Apple filed this trade secret misappropriation case over fifteen months ago. Yet Defendants still do not know which trade secrets Apple contends have been misappropriated. Nor do Defendants have any discovery from Apple regarding the details of those claimed trade secrets. In contrast, Defendants have bent over backwards to provide Apple the increasingly burdensome and invasive discovery that Apple demands. The one-way flow of information in this case must stop. If Apple intends to continue to pursue this case, it must meaningfully participate in discovery.

**Apple Has Failed To Identify Documents Evidencing Its Claimed Trade Secrets.** In its December 7, 2022 Second Updated Trade Secret Disclosure, Apple claimed as its trade secrets the "confidential *documents* describing Apple's SoC designs and SoC component designs" for an enumerated list of 55 Apple projects. (Emphasis added.) Apple, however, did not identify the claimed trade secret documents themselves. After extensive meet and confer, Apple agreed on April 3, 2022 to (i) identify by Bates number documents that had been produced by Defendants that contained Apple's claimed trade secrets, and (ii) identify and produce any additional claimed trade secret documents not produced by Defendants. (4/3/2022 Tr. at 14:23-15:4.) Rather than carry out that commitment in good faith, on April 28, 2023, Apple provided a spreadsheet listing *over 35,000* documents spanning hundreds of thousands of pages and asserted, without further explanation, that *all* of those documents "reflect or evidence Apple's trade secrets." (4/28/2023 Stephens email.)

Apple conceded in meet and confer that, rather than have attorneys create or evaluate the list, it had vendors select documents based on their file name and folder path. This cutting-corners approach showed. Of the 35,000 documents, 14,333 were duplicates. And the list was full of documents Apple could not possibly claim in good faith were trade secrets. A thousand entries were copies of (i) a picture of a parrot, (ii) an image of a gradient, or (iii) a text file containing three generic first names. Countless other non-trade secret documents are on Apple's list.

After continuous requests that Apple actually fulfill its obligation, on July 21, 2023—nearly three months later—Apple finally provided an amended list. It is barely better, and still woefully insufficient: it identifies over 15,000 documents, and still includes hundreds of images of the same parrot, the same rainbow gradient, the same text files with three generic first names, copies of a

child's school homework assignment, empty document templates, open-source code that is easily found on Google, meeting invites with no content, and countless copies of blank pages.

Apple now acknowledges (as it must) that its list contains "errors," but has agreed only to amend its list (again) by "the end of the month" and only to identify documents reflecting its trade secrets *to the extent its trade secrets were contained in documents*.  This is insufficient.  Apple should have been able to provide this list *at the start of the case*, and in any event, it committed on the record *four months ago* to provide it.  Another month is too long.  More substantively, Apple now makes plain that it is not limiting its claimed trade secrets to material found in *documents*, which is directly contrary to its December 7, 2023 trade secret disclosure.  If Apple intends to expand the scope of this case beyond material in documents, it must amend its trade secret disclosure and identify its claimed non-documentary trade secrets.  In either case, the law is clear that Apple cannot "simply refer to a document[,]" let alone over 15,000 of them, "in its entirety as 'including' trade secrets, without specifying what the trade secret is."  *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021).

Defendants respectfully ask that the Court direct Apple to produce a further amended (and attorney-reviewed) list containing only documents Apple in good faith believes reflect or evidence its alleged trade secrets **by August 16, 2023**.  And thereafter, Apple must answer Defendants' pending interrogatories directed to the alleged trade secrets on that list (which it has refused to do).

**Apple Refuses To Provide Discovery About Its Claimed Trade Secrets.**  Exacerbating its refusal to *identify* its claimed trade secrets, Apple has failed to produce *a single document* showing the technical details, development, use, or commercialization of its claimed trade secrets.

On April 4, Rivos served document requests seeking the specifications for Apple's SoCs and SoC components that incorporate or constitute any of Apple's claimed trade secrets, and documents sufficient to show the development of those claimed trade secrets.  Rivos' RFP Nos. 113, 114, 116, 120, 121.  (Apple has demanded, and Rivos has produced, analogous documents for Rivos' own proposed SoC and components.)  Initially, Apple took the position that Apple will "never" search for or produce its own technical documents.  *See* 5/17/2023 Spoont Email (Apple "will not produce development documents, as Apple's development of its SoCs is not relevant to

this case"). Apple took this position despite claiming that its alleged trade secrets (which all relate to SoCs) are "iterative" in nature, making not only current, but historical, designs relevant. After numerous meet and confers, Apple finally agreed to produce "some" documents, but only those that *Apple* intends to rely on at trial. Just days ago, Apple purported to expand its offer, but not in any meaningful way—now it says it will only produce "documents sufficient to show its trade secrets" (which is the same thing it agreed, but failed, to do back in April). Apple still refuses to produce *any* documents regarding development, implementation, or commercialization of its claimed trade secrets. Nor will Apple even negotiate search terms on this subject.

Apple also has resisted providing *information* about which specific portions of its SoCs contain the trade secrets it claims were misappropriated, and *information* about Apple's development, implementation, and commercialization of those allegedly trade secret elements. (7/21/2023 Responses.) Indeed, Apple's interrogatory responses do not even mention purported trade secrets. Instead, Apple focuses on the number of employees who left Apple for Rivos, suggesting that Apple is pursuing an "inevitable disclosure" theory, which is impermissible. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002) ("[T]he inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation . . . .").

Apple's refusal to provide any technical information regarding its claimed trade secrets is particularly egregious given that Apple has demanded, and Rivos has produced, reams of Rivos' most closely guarded technical documents (including specifications for Rivos' proposed SoC, components, and subcomponents). Apple has taken full advantage of this discovery imbalance. Over the past month, Apple spent hours deposing numerous Rivos employees on minute technical details of Rivos' specifications. Plainly, Apple has been comparing the technical documents produced by Rivos with its own technical documents and identified portions of those Rivos documents it thinks might be relevant. Meanwhile, Apple's refusal to produce any technical discovery (or even identify its claimed trade secrets) has severely prejudiced Defendants' ability to undertake any analysis of their own. For example, Defendants have been unable to build a defense that Apple's claimed trade secrets are publicly available, question Apple's witnesses on their development, or determine the extent of overlap, if any, between Apple's and Rivos' technology.

Defendants respectfully ask that the Court order Apple to produce documents responsive to the full scope of Rivos' RFP Nos. 113, 114, 116, 120, and 121 by **August 30, 2023**.

**Defendants' Proposed Expansion of the Deposition Limits Is More than Reasonable.** Rejecting Apple's request for additional deposition time (Apple initially requested 100 hours, inclusive of 21 hours of 30(b)(6) testimony), Judge Davila ordered on July 19, 2022 that the "parties shall comply with the presumptive limits" with respect to discovery, *i.e.*, ten seven-hour depositions. Dkt. 87 at 1. After Apple approached Defendants about modifying the Court's order, and in a good faith effort to reach a compromise, Rivos agreed to forego a limit on the *number* of depositions and proposed an 85-hour limit, including up to 21 hours of 30(b)(6) deposition. Apple, however, countered by *increasing* its demand to 110 hours, plus 21 hours of 30(b)(6) testimony, nearly double the presumptive limit.

Apple is not entitled to depose every witness who *might* have relevant information. *See Toranto v. Jaffurs*, 2018 WL 9538184, at *2 (S.D. Cal. Sept. 27, 2018). Moreover, Apple's deposition conduct to date does not justify a radical departure from the Federal Rules. Apple has tried to justify the additional depositions by saying it needs to determine what happened to Apple documents, but then has deposed witnesses it *knows* did not retain Apple confidential information and instead questioned those witnesses about Rivos technology.

Defendants' proposal of 85 hours of deposition, including up to 21 hours of 30(b)(6) deposition, is sensible and serves as a reasonable compromise between Rule 30's presumptive limit and Apple's original proposal of 100 hours per side, which the Court rejected in its Case Management Order. Dkt. 87 at 1. Defendants' proposed hours cap should be adopted.

**Defendants Have Produced Quinn Emanuel's Communications With Ricky Wen; There Was No Broader Waiver Of Privilege Or Work Product.** In Apple's April 1, 2023 motion for sanctions, Apple accused Defendants' counsel at Quinn Emanuel ("QE") of lying to the Court. Those accusations are meritless, but in order to defend against them, QE needed to demonstrate that it accurately represented what it knew at the time about Defendant Ricky Wen's deletion of certain Apple documents. Accordingly, David Eiseman and Judge Stephen Swedlow submitted declarations describing their factual knowledge. Dkt. 219-1 & -2. In response to Apple's

request, QE then produced the written communications it had with Mr. Wen regarding the subject matter of the declarations. Now, Apple demands **all** privileged communications and **all** internal work product, including communications between QE attorneys, between QE and its retained forensic experts, and between QE and Rivos in-house counsel related in any way to Mr. Wen's conduct. Apple's demand goes far beyond the scope of any appropriate waiver and must be denied.

The scope of any waiver "is carefully tailored, considering fairness in light of the underlying purposes the respective doctrines protect." *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at *8 (N.D. Cal. July 26, 2012) (finding no subject matter waiver after disclosure of email prepared by counsel). Even if they did, there has been no broad waiver of privilege and absolutely no waiver of work product. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (finding that "there is an important distinction between the rules governing when each type of protection has been waived" and that "work-product protection is not as easily waived as the attorney-client privilege based on the distinct purposes of the two privileges"). The declarations were limited to what QE knew, and when, about Mr. Wen's Unix.tar file, and described only information learned during specific communications with Mr. Wen. Those communications have been produced. *See id.* at 1117 (finding privilege waived "only as to communications about the matter actually disclosed"). During the one meet and confer on this issue, Apple failed to articulate any need or justification for further disclosures. There is none. Apple's request for a broad waiver "is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

Apple's attempt to use its unfounded accusations against QE as a springboard to demand a broad waiver of all attorney-client communications and work product that relate in any way to Apple's sanctions motion should be denied.

Dated: August 7, 2023

Respectfully submitted,

| MORRISON & FOERSTER LLP | QUINN EMMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| */s/ Bryan Wilson* | */s/ David Eiseman* |
| Bryan Wilson | David Eiseman |
| *Attorneys for Plaintiff Apple Inc.* | *Attorneys for Defendants Rivos Inc., et al.* |

**ATTESTATION OF CONCURRENCE**

I, Bryan Wilson, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from David Eiseman.

Dated: August 7, 2023                                         */s/ Bryan Wilson*
                                                                               Bryan Wilson