UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RIVOS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 5:22-cv-02637-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 100, 101 |

Plaintiff Apple Inc. ("Apple") brings this action against Defendant Rivos Inc. ("Rivos") and seven individual defendants ("Individual Defendants"), alleging two claims as follows: (1) breach of contract asserted only against the Individual Defendants; and (2) trade secrets misappropriation under the Defend Trade Secrets Act ("DTSA") against Rivos and six Individual Defendants (excluding Kai Wang). The Individual Defendants and Rivos have separately moved to dismiss. ECF Nos. 100 ("Employees MTD"); 101 ("Rivos MTD").

On March 2, 2023, the Court heard oral arguments on Defendants' motions. Based on the parties' submission and arguments presented at the hearing, the Court GRANTS IN PART and DENIES IN PART the motions to dismiss.

## I.　　BACKGROUND

### A.　　Relevant Technology

The technology at issue in this case is a chip design that integrates multiple processing components of a computer (*e.g.*, CPU, GPU, memory storage, etc.) onto a single chip, referred to as a system-on-a-chip ("SoC"). Second Am. Compl. ("SAC") ¶ 21, ECF No. 93. Because SoC designs can reduce a chip's area footprint and achieve tighter component integration than

traditional systems, they often result in faster, more efficient, and more powerful computing. *Id.*

SoCs are designed around a particular set of processor instructions, known as an instruction set architecture ("ISA"), that lays out an abstract model of the processing system. *Id.* ¶ 23. The most relevant type of ISA in this case is the reduced instruction set computer ("RISC") design, which features a relatively small set of simple processing instructions that may be processed more quickly compared to other more complex ISAs. *Id.* ¶ 24.

This action involves two types of RISC-based architectures: (1) the Advanced RISC Machine ("ARM") architecture developed and commercially licensed by Arm Ltd, and (2) the open-source and free-to-use RISC-V architecture developed by the University of California, Berkeley. *Id.* ¶¶ 26; *see also* Rivos MTD 2. Apple's SoC designs are based on the ARM architecture, whereas Rivos is alleged to be developing SoCs that use the RISC-V architecture. SAC ¶ 26. Because the ARM and RISC-V architectures have some common features and analogous functions, certain foundational designs for ARM-based SoCs may also be useful in developing RISC-V SoCs. *Id.* However, how those functions are defined in the instructions and how they are computed may differ between ARM and RISC-V. 3/2/23 Hr'g Tr. 154–19.

### B. Apple and Rivos

Plaintiff Apple Inc. is a technology company that designs, manufactures, and markets consumer electronics used for mobile communications and computing. SAC ¶ 20. Most relevant here, certain Apple chips are custom SoCs based on ARM architecture licensed from Arm Ltd. *Id.* ¶¶ 21, 25. These SoCs include Apple's A15 chip in recent iPhones and the M1 family of chips that power Apple's desktops, laptops, and certain iPads. *Id.* ¶ 28. Apple also develops and writes source code for custom software and operating systems that run on its SoCs. *Id.* Apple alleges that it has dedicated billions of dollars to SoC research, development, and manufacturing. *Id.* ¶ 27.

At the start of their employment, all Apple employees (including all Individual Defendants) signed an Intellectual Property Agreement ("IPA") in which they agreed not to take any document or material containing Apple's proprietary information with them when they leave Apple. *Id.* ¶ 31. Additionally, certain employees in Apple's Hardware Technologies ("HWT")

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
2

team who handle highly sensitive information were required to sign a "Checklist for HWT Departing Employees" or "Checklist for Departing Employees" when they leave. *Id.* ¶ 34. These checklists reminded the departing employees of their IPA obligations to not use or share Apple confidential information after they leave and required the departing employees to attest that they have returned or destroyed all Apple confidential information in their possession before leaving. *Id.* However, Apple does not contend that these checklists are binding contracts. Apple's Opp. Individual Defendants' Mot. Dismiss ("Employees Opp.") 13 n.4, ECF No. 140.

Defendant Rivos Inc. is a "stealth mode" startup that was founded in May 2021 to design and market SoCs. *Id.* ¶¶ 3, 40. Specifically, Rivos is focused on developing SoCs based on open-source RISC-V architecture, as opposed to other SoCs on the market that use proprietary system architectures like ARM. *Id.* ¶ 26; *see also* Rivos MTD 2. At oral arguments, Rivos also indicated that its SoC chips are intended for use in data centers and servers, as opposed to mobile consumer electronics. 3/2/23 Hr'g Tr. 8:25–9:1.

### C. Apple Employees Depart for Rivos

Since Rivos was founded in May 2021, nearly fifty former Apple employees have left Apple to join Rivos, including the Individual Defendants here. SAC ¶ 41. The SAC alleges that Rivos specifically targeted and solicited Apple engineers who were highly experienced in designing SoCs and had access to Apple's SoC trade secrets. *Id.* ¶ 42. Apple also alleges that several departing employees took proprietary and trade secret information with them, while representing to Apple in their exit interviews that they had not. *Id.* ¶ 43; *see infra* Section I.D.

Additionally, Rivos allegedly "advis[ed] the former Apple employees, while they were still employed by Apple, about departure procedures that they should follow when leaving Apple," including on topics such as transferring personal information and handling information synced to personal drives when they leave. SAC ¶ 123. The SAC also alleges that Rivos's CEO had "advised Apple employees, prior to their resignation from Apple, not to retain Apple confidential information when they depart Apple for Rivos." *Id.* ¶ 124.

Rivos has acknowledged that certain ex-Apple employees' folders were automatically

synced with Rivos-owned devices. *Id.* ¶ 124. Rivos's CEO has also confirmed that "Rivos has found at least some relevant information in their possession." *Id.* ¶ 131.

### D.   Individual Defendants[1]

Defendant Shih-Chieh ("Ricky") Wen was employed at Apple for 13 years as a "CPU design engineer," designing and developing architecture for Apple's ARM-based SoCs. SAC ¶ 57. His new position at Rivos is "Principal Member of Technical Staff" with a focus on "Hardware engineering." *Id.* ¶ 59. After he accepted Rivos's offer, Wen transferred 390 gigabytes of data from his Apple-issued work computer to a personal external hard drive, 200 gigabytes of which were personal photos and videos. *Id.* ¶ 61. Wen also transferred several gigabytes of data to his personal Google Drive, which included nearly 400 files associated with Apple's confidential code-named SoC development projects. *Id.* ¶ 65. Wen agreed to return any Apple confidential information and make available his devices for forensic inspection. *Id.* ¶ 68.

Defendant Jim Hardage was employed at Apple for nearly 9 years as a "CPU architect," developing architecture for processing cores in Apple's SoCs. *Id.* ¶ 69. Hardage is now a "CPU RTL Architect" at Rivos. *Id.* ¶ 71. In the days before he resigned, Hardage removed 37 gigabytes of data from his Apple-issued computer to external drives, including at least 9 directories with the names of confidential Apple SoC projects. *Id.* ¶ 74.

Defendant Weidong Ye was employed by Apple for approximately 5 years as a "Systems Power & Performance Engineer," working cross-functionally with SoC architects. *Id.* ¶ 77. Ye is now a "Member of Technical Staff" at Rivos, a position he started after this action was filed on April 29, 2022. *Id.* ¶ 79. Ye had saved multiple confidential Apple source code repositories onto his iCloud drive, which he is still able to access despite departing from Apple. *Id.* ¶ 86.

Defendant Laurent Pinot was employed by Apple for nearly 12 years as an "Application-Specific Integrated Circuit Design Engineering Manager 3," designing and developing proprietary physical structures for critical functions in Apple's ARM-based SoCs. *Id.* ¶ 87. Pinot is now

---

[1] Defendant Bhasi Kaithamana was voluntarily dismissed on January 12, 2023. ECF No. 137.

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
4

employed by Rivos for "Physical Design." *Id.* ¶ 89. Beginning in December 2020—before he was approached by Rivos—Pinot had set up weekly backups for the hard drive of his Apple-issued laptop onto a personal AirPort Time Capsule, which also ran during his last week at Apple in August 2021. *Id.* ¶ 95. These backups contain files pertaining to unreleased Apple SoC projects and confidential technical specifications for SoC physical designs. *Id.* ¶ 96. Rivos has affirmed that Pinot is still in possession of the backups. *Id.* ¶ 98.

Defendant Prabhu Rajamani was employed at Apple for nearly 9 years as a "Power Engineer 5," optimizing power handling for Apple's mobile SoCs. *Id.* ¶ 99. Rajamani is now a "Hardware Engineer" at Rivos with parallel tasks to those he performed at Apple. *Id.* ¶ 101. The SAC alleges that Rajamani "continued to download and transfer to external hard drives files on Apple's proprietary and trade secret SoC designs until his last day at Apple." *Id.* ¶ 105.

Defendant Kai Wang was employed by Apple for just over a year and worked on improving the performance of Apple's GPUs. *Id.* ¶ 108. Wang has acknowledged that Apple documents remained on his iCloud drive at the time of his termination. *Id.* ¶¶ 107, 112. Wang is now employed by Rivos and, despite initially cooperating with Apple, he has deferred communication to "Rivos's corporate lawyers" and has not responded since to Apple. *Id.* ¶ 113.

### E. Procedural History

Apple filed the original complaint on April 29, 2022. ECF No. 1. On May 20, 2022, after it had conducted a forensic investigation, Apple filed an *ex parte* motion for a temporary restraining order ("TRO") to enjoin Wen from accessing any Apple trade secret information he had retained and to return any such information to Apple, as well as a request for expedited discovery. ECF No. 23. The TRO petition included declarations from Daniel Murray, Apple's vice president leading its silicon chip development, and Daniel Roffman, the digital forensics consultant Apple engaged to investigate the departures of Apple employees to Rivos. ECF Nos. 22-3 ("Murray Decl."), 22-4 ("Roffman Decl."). On June 16, 2022, the parties agreed to a stipulation that resolved Apple's TRO motion without the Court's involvement. ECF No. 54.

On June 27, 2022, the Court referred the expedited discovery request to Judge Cousins,

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
5

1   which he granted and denied in part. ECF Nos. 60, 73. As a result, limited discovery has been

2   ongoing during the pendency of Defendants' dispositive motions.

3         On June 30, 2022, Rivos and Individual Defendants filed their initial motions to dismiss

4   Apple's original complaint. On July 14, 2022, Apple filed the First Amended Complaint, and the

5   Court terminated the Defendants' motions to dismiss shortly thereafter. ECF No. 79. On August

6   30, 2022, Apple filed the currently operative Second Amended Complaint, which incorporated the

7   Murray and Roffman declarations by reference. ECF No. 93.

8         On September 27, 2022, Rivos and Individual Defendants filed the instant motions to

9   dismiss the SAC. ECF Nos. 99, 100. The briefing was completed by February 17, 2023, though

10  Apple has requested leave to file a sur-reply based on new information arising out of ongoing

11  discovery. ECF Nos. 145–47.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief," and may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support such a theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.

1989). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–69 (9th Cir. 2001).

## III. DISCUSSION

Rivos and the Individual Defendants have each separately moved to dismiss the DTSA and contract claims asserted in the SAC. The Court will address each claim in turn, including the arguments asserted by the corresponding Defendants to dismiss the claim.

### A. DTSA Misappropriation Claim

Apple brings a trade secrets misappropriation claim under the Defend Trade Secrets Act against Rivos and all Individual Defendants except for Defendant Wang.[2] To state a claim under the DTSA, a plaintiff must allege that: (1) the plaintiff possessed a trade secret; (2) the defendant misappropriated the trade secret; and (3) the misappropriation caused or threatened damage to the plaintiff. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).

#### 1. Trade Secret Definition

Defendants argue that the SAC has failed to identify the trade secrets with particularity, because the SAC purportedly described the trade secrets as "generalized categories" and pages of file names. Rivos MTD 6–7. Defendants do not appear to dispute that Apple's alleged trade secret "derives independent economic value . . . from not being generally known" or that Apple took "reasonable measures to keep such information secret." 18 U.S.C. § 1839(3).

To properly plead a trade secret under the first element, plaintiffs need not "spell out the details of the trade secret," but they must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020).

---

[2] References to "Individual Defendants" in this Section III.A. will refer only to Defendants Wen, Rajamani, Hardage, Pinot, and Ye, and does not refer to Defendant Wang.

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
7

On this point, the SAC has alleged the following:

- Apple's trade secret information includes "SoC designs, component designs, customized ISA instructions, source code for products incorporating Apple's SoCs, and other Apple-developed know-how gained from years of developing advanced SoCs." SAC ¶ 29.

- The trade secret information "includes at least chip specifications and designs for Apple's SoCs for the A14, M1, and future (unreleased) SoCs," as well as chip specifications and designs for "related components (including CPU cores, GPU cores, and cache memories), chip development roadmaps, summaries of technical analyses of chip characteristics and parameters, status reports, and source code defining the operation of hardware devices incorporating Apple's SoCs." SAC ¶ 150.

- Apple has also incorporated by reference the sealed declaration of Daniel Murray (Vice President, Apple Silicon Engineer Group), which elaborates on what specifically about Apple's chip specifications were trade secrets and even provides specific examples using certain codenamed Apple SoC projects. Murray Decl. ¶¶ 3–6, 8–14, ECF No. 22.

The Court finds that the allegations listed above regarding Apple's SoC chip specifications have described the trade secret with "sufficient particularity." Apple has identified the SoC "chip specifications and designs" for specific Apple chips (SAC ¶ 150) and the "source code for designs implementing those specifications" (Murray Decl. ¶ 5) as trade secrets. This "design" and "software" language is strikingly similar to the trade secret description that the Ninth Circuit indicated would be "sufficiently particular" in *InteliClear v. ETC Global Holdings*. 978 F.3d 653, 658 (describing plaintiff's trade secrets as the "*unique design* and concepts and the *unique software*, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which its components interrelate and process data") (emphasis added). Moreover, the Roffman Declaration included an Appendix B, listing the SoC chip specifications that certain Individual Defendants had downloaded. Roffman Decl. ¶ 20. From that list, the Murray Declaration then identifies examples and elaborates upon certain SoC functions and features that are reflected within those chip specifications.[3]  Murray Decl. ¶¶ 8–14. The specificity reflected in the Murray

---

[3] To the extent that Defendants take issue with the fact that the Murray Declaration only analyzes selected examples of Appendix B's specification files as opposed to a file-by-file analyses of all files downloaded, "it is not fatal to [Apple's] claim that its hedging [] left open the possibility of expanding its identifications later." *InteliClear*, 978 F.3d at 659; *see also Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016) ("[I]t's not the volume, it's the particularity that matters.").

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
8

Declaration's sealed paragraphs is more descriptive than mere categories and provide sufficient "concrete identification" and examples for Defendants to ascertain the boundaries for Apple's trade secrets. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998).

Defendants also appears to separately argue that the SAC must allege that a trade secret is contained within the information that each Defendant allegedly misappropriated. *See generally* Employees MTD 9–20; Rivos MTD 8. This, however, is not a relevant consideration under the first prong for DTSA misappropriation—the case law only requires Apple to allege that "the *plaintiff* possessed a trade secret." *InteliClear*, 978 F.3d at 657. Based on this unequivocal and oft-repeated iteration of the DTSA standard, the inquiry is directed toward plaintiff's possession—and not defendant's subsequent possession or misappropriation—of a trade secret. The question as to which Defendants had retained which documents may be relevant to the DTSA's second element on misappropriation but, based on the allegations identified above, the first DTSA requirement to identify trade secrets with sufficient particularity has been satisfied.

Rivos also argue in its reply that "much of Apple's internal information on SoCs is undoubtedly known to all SoC experts and does not constitute protectable Apple trade secrets." Rivos Reply 12. Without any further support or elaboration, however, the open assertion that Apple's internal information is "undoubtedly known to all SoC experts" attempts to simply speculate away the secrecy of Apple's trade secrets. As discussed above, the SAC and the Murray Declaration have identified Apple's SoC chip specifications and the source code implementing those designs, as well as described the lengths to which Apple have gone to keep them secret.

In short, between the SAC's allegations and the Roffman and Murray Declarations, the Court is satisfied that Apple has described the subject matter of its trade secrets with sufficient particularity to separate it from matters of general knowledge and of persons skilled in the trade.

### 2. Misappropriation

To plead misappropriation, plaintiffs must establish one of two categories of conduct: (1) acquisition of the secret by improper means, or (2) disclosure or use of the trade secret without consent. 18 U.S.C. § 1839(5)(A)–(B); *Lamont v. Conner*, 2019 WL 1369928, at *8 (N.D. Cal.

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
9

Mar. 26, 2019). The DTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). Furthermore, the misappropriation may be either "actual or threatened." 18 U.S.C. § 1836(b)(3)(A)(i).

### a. Individual Defendants

With respect to the DTSA claim against the Individual Defendants, the SAC asserts both types of misappropriation. First, Apple alleges that the Individual Defendants acquired the trade secrets by improper means when they retained Apple's confidential information in contravention of the IPA. SAC ¶¶ 149, 153–157. Second, Apple also suggests that the Court may infer that the Individual Defendants were "likely to make use of [the trade secret] in the course of their employment at Rivos," based on a list of circumstantial facts. SAC ¶ 159. The SAC also incorporates by reference the Roffman Declaration, containing specific allegations and findings that at least four Individual Defendants (Wen, Pinot, Rajamani, and Hardage) retained or transferred confidential Apple information to personal devices before they left. Roffman Decl. ¶¶ 14–24, 27–28, 35. Because either "improper acquisition" or "use or disclosure" would suffice to establish misappropriation, the Court will first address Apple's "use or disclosure" theory before turning to the "improper acquisition" allegations.

With respect to trade secret misappropriation by disclosure or use, the Court finds that the SAC has alleged sufficient facts for it to reasonably infer that Apple's SoC trade secrets was at threat of disclosure or use by Defendants Wen, Rajamani, and Hardage. The SAC and Roffman Declaration alleges that these three defendants had downloaded and transferred several hundred gigabytes' worth of Apple confidential information to external or personal drives in the days leading up to their departures. SAC ¶¶ 61, 64–66 (alleging that Wen transferred over 400 gigabytes within a week of resigning from Apple), 73–74 (alleging that Hardage transferred 37 gigabytes, including nine directories with confidential Apple SoC project names), 103–105 (alleging that Rajamani transferred SoC designs until his last day); Roffman Decl. ¶¶ 20, 28, 35–36. Additionally, these Individual Defendants continued to work in roles that are analogous to

1  their prior roles at Apple for a start-up company also developing SoC technology, albeit using a
2  different type of ISA. SAC ¶¶ 59, 71, 101. The sheer quantity and content of data exfiltrated by
3  these defendants in the immediate days before their departure, in conjunction with the
4  substantially similar roles and technology they are working with at Rivos, readily lend themselves
5  to an inference that these defendants have used or are using Apple confidential information in their
6  new roles. *See, e.g.*, *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2021 WL 1186335, at *8
7  (N.D. Cal. Mar. 1, 2021) (noting that the "timing of [defendants'] actions 'strongly suggests they
8  intended to use the information in their employment with [new company]'") (collecting cases),
9  *vacated in part on other grounds*, 2022 WL 1530491 (Fed. Cir. May 16, 2022); *Power
10 Integrations, Inc. v. De Lara*, 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) (finding that
11 "suspicious circumstances surrounding Defendants' resignation from employment with Plaintiff []
12 could indicate threatened misappropriation through disclosure or use"). And as many courts in
13 this district have remarked in denying motions to dismiss, "it would be unreasonable to require a
14 plaintiff to demonstrate the precise ways in which Defendants may have used [plaintiff's] trade
15 secrets, given that Defendants are the only ones who possess such information" and "discovery
16 has not yet commenced." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 883 (N.D.
17 Cal. 2018) (internal brackets and quotation marks omitted) (quoting *Autodesk, Inc. v. ZWCAD
18 Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015)). The Court accordingly finds
19 that the SAC alleges sufficient facts to infer that Apple's trade secrets were at threat of disclosure
20 or use without consent by Defendants Wen, Rajamani, and Hardage.[4]

21 The same cannot be said, however, of Defendants Pinot and Ye. With respect to
22 Defendant Pinot, the SAC alleges that he had created unencrypted personal backups of his work
23 laptop's hard drive that he allegedly had access to even after his departure. SAC ¶ 95; Roffman
24 Decl. ¶ 27. However, unlike Defendants Wen, Rajamani, and Hardage, Pinot did not abruptly

---

[4] Because the Court finds that the SAC alleges plausible facts that Wen, Rajamani, and Hardage disclosed or used Apple's SoC trade secrets, it issues no opinion as to whether they had acquired those secrets by improper means.

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
11

1     create these backups once he was offered a job at Rivos; he had been creating regular weekly

2     backups several months before he was even contacted by Rivos. SAC ¶ 95 (alleging that Pinot

3     began backing up his hard drive in December 2020 and resigned from Apple in August 2021).

4     The fact that Pinot is in mere possession of his regular weekly backups does not support an

5     inference that he has disclosed or used the information from those backups in his current Physical

6     Design role at Rivos.[5] *See*, *e.g.*, *Power Integrations*, 2020 WL 1467406, at *19 ("Both state and

7     federal courts in California have held that a plaintiff must prove more than a defendant's mere

8     possession of trade secrets. . . . [T]he Court cannot presume the transfer of trade secret information

9     occurs simply because Defendants possess it"); *Norsat Int'l, Inc. v. B.I.P. Corp.*, 2014 WL

10    2453034, at *6 (S.D. Cal. May 30, 2014) ("'Mere possession of trade secrets by a departing

11    employee' is not sufficient to establish misappropriation or show injury.").

12            Similarly, the SAC fails to allege sufficient facts to support an inference that Defendant Ye

13    misappropriated Apple SoC trade secrets. The only allegations are that Ye "saved multiple

14    highly-confidential Apple source code repositories for unannounced, in development products in

15    his iCloud drive" and that he "continues to have access to these repositories."[6] SAC ¶ 86. As with

16    Pinot, Ye's mere possession of this information is insufficient to allege that he disclosed or used

17    the information without consent. *See Power Integrations*, 2020 WL 1467406, at *19; *Norsat*,

18    2014 WL 2453034, at *6. Nor is there any allegation as to *when* Ye allegedly saved Apple source

19    code to his iCloud drive, specifically whether he had done so before or after Rivos offered him a

20    position. Accordingly, because Apple has only alleged that Defendants Pinot and Ye are in mere

21    possession of confidential SoC information, the SAC fails to allege plausible facts that give rise to

---

[5] Apple has sought leave to file a sur-reply presenting new facts uncovered in discovery, specifically that Pinot had admitted in his deposition to intentionally keeping certain Apple documents for use as references in creating certain specifications in the future and had reviewed those documents at Rivos. Sur-Reply 6, ECF No. 147-2. Apple, however, has not established any basis on which the Court may consider such documents at this stage, *e.g.*, that the new information is incorporated by reference into the SAC or is judicially noticeable. Accordingly, Apple's motion (ECF No. 147) is DENIED. The Court does not consider the sur-reply's arguments or evidence in the present Order, nor does it opine upon the merits or relevance of those arguments.

[6] Notably, the Roffman Declaration contains no findings regarding Defendant Ye.

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
12

1  a reasonable inference that they disclosed or used trade secret information without consent.

2  For many of the same reasons, the SAC also fails to plausibly allege that Pinot and Ye acquired the trade secrets by improper means. Neither Pinot nor Ye are alleged to have downloaded or transferred Apple confidential information after they received job offers from Rivos. The most the SAC alleges is that Pinot and Ye continue to have access to confidential Apple information via regular weekly backups (in Pinot's case) or source code repositories saved into an iCloud drive (in Ye's case). SAC ¶¶ 86, 95. However, once again, allegations that former employees merely possessed or failed to return lawfully acquired information are insufficient by themselves to establish misappropriation or show injury under the DTSA. *See*, *e.g.*, *Power Integrations*, 2020 WL 1467406, at *19; *Norsat*, 2014 WL 2453034, at *6; *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020) ("[T]he failure to return lawfully acquired information does not constitute 'misappropriation' of that information under the DTSA."). Absent further allegations, the Court also finds that the SAC has failed to allege that Pinot and Ye had *acquired* trade secret information by improper means.

In summary, the Court finds that the SAC has sufficiently alleged facts to support an inference of threatened misappropriation with respect to the Individual Defendants who had downloaded or transferred confidential information to personal repositories in the days shortly before they left Apple (Wen, Rajamani, and Hardage). However, for the Individual Defendants who retained access to Apple information on their synced drives (Pinot and Ye), the Court cannot reasonably infer that they had misappropriated Apple's trade secrets based on the SAC's current allegations, and the SAC's claims against them are subject to dismissal.

### b. Defendant Rivos

With respect to misappropriation by Rivos, Apple initially alleged both "improper acquisition" via the Individual Defendants who are now Rivos employees and "use and disclosure" based on nine circumstantial facts. SAC ¶¶ 149, 151–52, 158–59. In its opposition to Rivos's motion, however, Apple appears to have abandoned its "use and disclosure" theory, defending only the SAC's "improper acquisition" theory of misappropriation. Rivos Opp. 18–19,

1  ECF No. 139 ("Rivos argues the Complaint should be dismissed because Apple has not
2  affirmatively alleged Rivos has used or disclosed the trade secrets taken by Apple's former
3  employees. . . . *But Apple does not have to directly plead use or disclosure*. . . . Rivos thus also
4  *improperly acquired* Apple's confidential information through its employees.") (emphasis added).
5  In doing so, Apple also argues that Rivos ratified the Individual Defendants' improper acquisition
6  by interfering with Apple's attempts to get its documents back and insisting that Apple proceed
7  through Rivos's counsel.  Rivos Opp. 18–19.

8  To the extent Apple seeks to impute the Individual Defendants' alleged misappropriation
9  to Rivos, it has not stated a cognizable basis for doing so.  Apple alleges that Rivos "injected itself
10 into [the] process" by which the Individual Defendants' retained or transferred confidential
11 information in violation of their IPAs.  Rivos Opp. 18.  However, the only factual allegations
12 supporting this "injection" are that Rivos "advised the former Apple employees . . . about what to
13 say in conversations with their Apple managers" and "advised Apple employees, prior to their
14 resignation from Apple, *not* to retain Apple confidential information when they depart Apple for
15 Rivos."  SAC ¶¶ 123–24 (emphasis added).  The SAC notably stops short of alleging any conduct
16 by Rivos itself to induce the breach of Apple employees' confidentiality obligations or otherwise
17 acquire Apple confidential information through other improper means.  Indeed, as the SAC
18 alleges, Rivos's CEO had *discouraged* Apple employees from retaining Apple confidential
19 information.  *Id.*  Apple also contends that "Rivos knew or should have known its employees
20 improperly possessed Apple confidential information."  Rivos Opp. 18.  However, this is
21 unavailing for at least two reasons: (1) the Individual Defendants were not Rivos employees when
22 they allegedly "acquired" the information, improperly or otherwise; and (2) mere possession of
23 trade secrets does not amount to misappropriation.  *See, e.g.*, *supra* Section III.A.2.a.
24 Accordingly, Rivos's conduct in hiring and facilitating the departure of Apple employees to Rivos
25 does not amount to improper acquisition of Apple trade secrets.

26 Apple's ratification theory does not fare any better in establishing Rivos's
27 misappropriation.  First, ratification would not operate to impose liability on an employer for torts
28 Case No.:   5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
14

its employees committed before they became employees. *See* Rivos Opp. 18 ("The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an *employee* committed an intentional tort.") (emphasis added) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1057 (N.D. Cal. 2020)). Accordingly, Rivos would only be able to ratify alleged torts the Individual Defendants committed *while* they were employees at Rivos, not when they were still Apple employees. To that end, Apple has focused on Rivos's notice that "employees possessed Apple's confidential documents" and its subsequent resistance to Apple's discovery in this litigation. Rivos Opp. 18–19. Notably absent are any allegations that those former Apple (now Rivos) employees had improperly acquired Apple trade secrets while at Rivos or that those employees either used or disclosed Apple trade secrets. To the extent Apple relies on Rivos's discovery conduct as a basis for misappropriation, the Court cannot consider allegations beyond those contained in the SAC. Even if it could, "[t]he theory of ratification is generally applied where an employer *fails to investigate or respond to charges* that an employee committed an intentional tort," *Cisco*, 462 F. Supp. 3d at 1057 (emphasis added); here, the SAC alleges that Rivos *has* undertaken an investigation and *has* cooperated to some degree to return information to Apple. *See, e.g.*, SAC ¶¶ 56, 68, 131, 158. In short, while Rivos "may be liable for an employee's act where [Rivos] . . . subsequently ratified an originally unauthorized tort," *Cisco*, 462 F. Supp. 3d at 1057, the ratifiable conduct alleged in the SAC or argued in Apple's opposition do not support a finding of improper acquisition, nor has Apple alleged Rivos's failure to investigate or respond to charges.

In summary, the SAC has failed to allege facts that would state a claim of improper trade secret acquisition against Rivos, either through Rivos's conduct in facilitating the transition of Apple employees to Rivos or by Rivos's purported ratification of its employees' conduct. Accordingly, the DTSA claim against Rivos is subject to dismissal.

### 3. Harm

Finally, Defendants argue that Apple has failed to allege that it has been harmed by any alleged misappropriation. *See, e.g.*, Rivos MTD 13; Employees MTD 7–8.

Generally, harm is presumed when proprietary information is misappropriated. *See, e.g.*, *Cisco Sys., Inc. v. Chung*, 2020 WL 4505509, at *9 (N.D. Cal. Aug. 5, 2020); *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913–14 (3d Cir. 2021) ("By statutory definition, trade secret misappropriation *is* harm. . . . [C]ognizable harm is pled when a plaintiff adequately alleges the existence of a trade secret and its misappropriation.") (emphasis in original).

Neither Rivos nor the Individual Defendants have raised a basis to depart from the well-established presumption of harm once the first two DTSA prongs have been established. They primarily argue that Apple must allege some separate basis for harm other than the misappropriation itself. *See, e.g.*, Rivos MTD 13; Employees MTD 7–8. In support, they cite *Cooper Interconnect v. Glenair*, where the court found no harm because the complaint had *affirmatively* alleged that the defendants had fully complied with the plaintiff's demand and deleted all trade secrets in their possession and in backups. *Cooper Interconnect, Inc. v. Glenair, Inc*, 2015 WL 13722129, at *3–4 (C.D. Cal. Feb. 3, 2015) (concluding that plaintiff had "failed to allege that it believes Defendants still possess the alleged trade secrets or could use them in the future"). No such facts are present here. Unlike in *Cooper*, there are no affirmative allegations in the SAC that would preclude a finding of harm. In any event, Apple has extensively described the harm that would result if its trade secrets were to be disclosed. Murray Decl. ¶¶ 16–23 (describing how the secrets SoC designs could enable a competitor to catch up to Apple's advanced SoC market lead with a fraction of the research investment). Harm under the DTSA, therefore, has been adequately pled.

\* \* \*

In summary, the Court finds that the SAC has sufficiently identified a trade secret and alleged sufficient harm as to all Defendants. The SAC has also alleged sufficient facts to support reasonable inferences of misappropriation as to Individual Defendants Wen, Rajamani, and Hardage. The Court will therefore DENY the motion to dismiss the DTSA claim against Wen, Rajamani, and Hardage.

The Court, however, finds that the SAC has failed to plausibly allege misappropriation by

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
16

Defendant Rivos or Individual Defendants Pinot and Ye. Because Apple has indicated that it possesses additional facts it can allege (Rivos Opp. 24; Employees Opp. 25), the Court finds that amendment would not be futile and grants Apple leave to amend these claims. Accordingly, the Court GRANTS IN PART Defendants' motions to dismiss. The DTSA claim against Rivos, Pinot, and Ye is DISMISSED WITH LEAVE TO AMEND.

### B. Breach of Contract

In addition to the DTSA claim, Apple asserts a breach of contract claim against all Individual Defendants for violations of their IPAs. SAC ¶¶ 137–44.

To state a claim for breach of a written contract, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 476 (N.D. Cal. 2020). The relevant contract language in the IPA reads as follows:

> Upon termination of your employment with Apple, you will promptly deliver to Apple all documents and materials of any kind pertaining to your work at Apple, and you agree that you will not take with you any documents, materials, or copies thereof, whether on paper, magnetic or optical media, or any other medium, containing any Proprietary Information.

SAC ¶ 31.

The Individual Defendants contend that the SAC has not alleged a breach of the IPAs or any injury resulting from the breach. Employees MTD 20. They also assert that the SAC does not identify the confidential information at issue with specificity. *Id.* The Court will address the allegations against each Individual Defendant in turn.

#### 1. Wen, Pinot, Rajamani, Hardage

As an initial matter, Individual Defendants' contention that the SAC lacks specificity is soundly rebutted by the Roffman Declaration, which lays out in painstaking detail the files and information transferred, downloaded, and retained by Wen, Pinot, Rajamani, and Hardage just days before they departed Apple. The confidential information taken by Defendant Wen alone spans eleven paragraphs and contains forensic analyses of specific hard drives, disk logs, folder paths, and archives Wen had accessed. Roffman Decl. ¶¶ 16–24. The Roffman Declaration also

1  provides analysis of Defendant Pinot's Time Machine files in his Apple-issue MacBook Pro that
2  showed Pinot had made 55 weekly backups. *Id.* ¶ 27.  Defendant Rajamani was found to have
3  "wirelessly transfer[red] four Python files to himself, and left Apple confidential files in his
4  iCloud Drive when he turned in the MacBook." *Id.* ¶ 28.  And with respect to Defendant Hardage,
5  the Roffman Declaration provides the serial numbers for two USB flash drives Hardage had used
6  on his last day, as well as a list of folders and system files that were in his computer's unified logs.
7  *Id.* ¶¶ 35–36.  In conjunction with the Murray Declaration's spot analyses of these specific files'
8  contents (Murray Decl. ¶¶ 8–15), these references to specific files and information plainly satisfy
9  the specificity required of Apple on a Rule 12(b)(6) motion.

10  Furthermore, the aforementioned references in the Roffman and Murray Declarations also
11  plausibly allege a breach of the IPA by these four Individual Defendants.  The IPA obligated the
12  Individual Defendants to refrain from "tak[ing] with [them] any documents, materials, or copies
13  thereof . . . containing any Proprietary Information."  SAC ¶ 31.  As indicated above, the Roffman
14  Declaration alleges that Wen, Rajamani, and Hardage transferred specific files to themselves or
15  removable USB drives that are alleged to contain Apple's confidential information, which would
16  violate the IPA's obligation on its face.  Roffman Decl. ¶¶ 16–24, 28, 35–36; SAC ¶¶ 61, 74, 103–
17  04.  As for Defendant Pinot—although the Court found that there are insufficient allegations to
18  support a reasonable inference of misappropriation against him—the SAC and Roffman
19  Declaration allege sufficient facts to support Pinot's breach of his IPA.  The SAC alleges that
20  Pinot's weekly backups included "all of the files on Mr. Pinot's Apple-issued laptop's hard drive,"
21  which can reasonably be inferred to contain Apple confidential information.  SAC ¶ 95.  Breach,
22  therefore, has been sufficiently alleged as to Wen, Pinot, Rajamani, and Hardage.

23  Finally, the Court finds that injury from these four Defendants' breaches has also been
24  alleged.  The SAC alleges that the IPAs expressly acknowledged that a "breach of [the IPA] would
25  cause irreparable harm and significant injury to Apple" and that Apple is "threatened with losing
26  its competitive advantage, trade secrets, customers, and technology goodwill."  SAC ¶ 144.  The
27  Murray Declaration also provides extensive detailed allegations of the harm to Apple if its SoC

confidential information were to be disclosed. Murray Decl. ¶¶ 16–23. Accordingly, the Court finds that the SAC has alleged that Apple would be injured by breaches of the IPA's confidentiality provisions.

### 2. Wang

With respect to Individual Defendant Wang, the Roffman Declaration does not contain any discussion of Wang's alleged breach of his IPA obligations. However, the SAC specifically alleges that Wang "confirm[ed] that the desktop and documents folders in his iCloud Drive contain files from Apple because he synced those two folders on his Apple laptop." SAC ¶ 113. This admission both specifies the confidential information at issue (two folders on Wang's Apple laptop) and Wang's breach of the IPA (retention of Apple files on Wang's iCloud Drive). Accordingly, the SAC has also alleged sufficient facts to support Wang's breach of the IPA.

### 3. Ye

Individual Defendant Ye, however, is somewhat differently situated. The Roffman Declaration makes no reference to Ye or the information he had allegedly taken, and the SAC only alleges that Ye had saved and continues to have access to Apple source code repositories on his iCloud drive. SAC ¶ 86. While it is not impossible for this "continued access" allegation to constitute a breach of the IPA, this allegation as currently pled is too nebulous for the Court to reasonably infer that Ye took "documents, materials, or copies thereof, whether on paper, magnetic or optical media, or any other medium, containing any Proprietary Information." SAC ¶ 31. For instance, the SAC lacks any allegations regarding when Ye saved these repositories to his iCloud drive or how he is still able to access those repositories. And given the degree of detail accompanying the allegations of other Individual Defendants' breach, the allegations relating to Ye are especially wanting.

Accordingly, the Court finds that the SAC has failed to sufficiently allege that Defendant Ye has breached the IPA's obligations.

\* \* \*

The Court finds that the SAC has sufficiently stated a claim for breach of the IPA as to

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
19

Individual Defendants Wen, Pinot, Rajamani, Hardage, and Wang. Accordingly, the motion to dismiss the breach of contract claim is DENIED as to these five Defendants.

However, the SAC has failed to allege sufficient facts to support a breach of the IPA as to Defendant Ye and, therefore, the Court GRANTS the motion to dismiss as to Ye. The Court cannot determine that permitting Apple to amend the allegations against Ye would be futile, so it will GRANT Apple's request for LEAVE TO AMEND the complaint against Ye.

## IV.   CONCLUSION

Based on the foregoing, the motions to dismiss filed by Defendant Rivos and Individual Defendants Wen, Pinot, Rajamani, Hardage, Wang, and Ye are GRANTED IN PART and DENIED IN PART, as follows:

1. The DTSA claim asserted against Rivos, Pinot, and Ye is DISMISSED WITH LEAVE TO AMEND;
2. The breach of contract claim asserted against Ye is DISMISSED WITH LEAVE TO AMEND;
3. The motion to dismiss the DTSA claim asserted against Wen, Rajamani, and Hardage is DENIED; and
4. The motion to dismiss the breach of contract claim asserted against Wen, Pinot, Rajamani, Hardage, and Wang is DENIED.
5. Any amended complaint shall be filed no later than twenty-one (21) days after entry of this Order.

**IT IS SO ORDERED.**

Dated: August 11, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-02637-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
20