# EXHIBIT A

1   BRYAN WILSON (CA SBN 138842)
    BWilson@mofo.com
2   KENNETH A. KUWAYTI (CA SBN 145384)
    KKuwayti@mofo.com
3   MORRISON & FOERSTER LLP
    755 Page Mill Road
4   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
5   Facsimile: 650.494.0792

6   ARTURO J. GONZALEZ (CA SBN 121490)
    AGonzalez@mofo.com
7   MEREDITH L. ANGUEIRA (CA SBN 333222)
    MAngueira@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California 94105-2482
    Telephone: 415.268.7000
10  Facsimile: 202.887.0763

11  MARY PRENDERGAST (CA SBN 272737)
    MPrendergast@mofo.com
12  MORRISON & FOERSTER LLP
    2100 L Street, NW, Suite 900
13  Washington, District of Columbia 20037
    Telephone: 202.887.1500
14  Facsimile: 415.268.7522

15  Attorneys for Plaintiff
    APPLE INC.

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                         SAN JOSE DIVISION

20  APPLE INC., a California corporation,        Case No.    5:22-cv-02637-EJD

21                  Plaintiff,                   **APPLE INC.'S REPLY IN
                                                 SUPPORT OF ITS MOTION FOR
22          v.                                   SANCTIONS AGAINST
                                                 DEFENDANTS RIVOS, INC., WEN
23  RIVOS, INC., a Delaware corporation; WEN     SHIH-CHIEH, AND COUNSEL
    SHIH-CHIEH a/k/a RICKY WEN; JIM              FOR DEFENDANTS STEPHEN
24  HARDAGE; WEIDONG YE; LAURENT                 SWEDLOW, DAVID EISEMAN
    PINOT; PRABHU RAJAMANI; and KAI              AND QUINN EMANUEL**
25  WANG,
                                                 Date:  August 30, 2023
26                  Defendants.                  Time:  9:00 a.m.
                                                 Courtroom:  5, 4th Floor
27                                               Judge:  Hon. Nathanael M. Cousins
                                                 Action Filed:  April 29, 2022
28                        **FILED UNDER SEAL**

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION ...............................................................................................1

4    II.   ARGUMENT .....................................................................................................3

5         A.    Respondents Cannot Dispute the Key Facts Entitling Apple to Sanctions ...3

6                1.    Counsel and Rivos Knew Mr. Wen Deleted Documents in May
                        2022 .....................................................................................................3

7                2.    Counsel Does Not Address Laurent Pinot .........................................4

8                3.    Respondents Do Not Dispute That They Failed to Segregate
                        Devices Containing Apple Confidential Information ........................4

9                4.    Respondents Do Not Dispute That Their Unilateral "Remediation"
                        Destroyed Additional Evidence .........................................................5

10        B.    The Opposition Further Supports an Adverse Inference ...............................5

11               1.    Mr. Wen Knew the unix.tar Archive in the AAPL Folder Contained
                        Apple Information ..............................................................................5

12               2.    Mr. Wen Knew His Deletion Could Have a Forensic Impact ..........6

13               3.    Mr. Wen's Conduct and His Counsel's Failure to Disclose it
                        Establish an Intent to Deprive Apple of Evidence ...........................7

14               4.    Mr. Wen Affirmatively Destroyed ESI ..............................................9

15               5.    The Court Should Issue an Adverse Inference Instruction .............10

16               6.    The Adverse Inference Should Be Imputed to Rivos .....................12

17        C.    Mr. Wen and Counsel Should Be Sanctioned for Violating the Court's
                 Orders ..........................................................................................................13

18        D.    Sanctions Against Swedlow and Eiseman Are Warranted ........................14

19   III.   CONCLUSION ................................................................................................15

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bruner v. City of Phoenix*,
    2020 WL 554387 (D. Ariz. Feb. 4, 2020) ............................................................................. 13

*Colonies Partners, L.P. v. County of San Bernadino*,
    2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ..................................................................... 12

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
    2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) ....................................................... 10, 11, 12

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    2023 WL 1871107 (N.D. Cal. Feb. 9, 2023) ................................................................ 13, 15

*Fast v. GoDaddy.com LLC*,
    340 F.R.D. 326 (D. Ariz. 2022) ............................................................................... 7, 11

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
    2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) .......................................................................... 7

*Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*,
    2014 WL 595912 (N.D. Cal. Feb. 14, 2014) ................................................................... 7, 8

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) .................................................................................... 7

*MGA Ent., Inc. v. Clifford "T.I." Harris et al.*,
    2023 WL 2628225 (C.D. Cal. Jan. 5, 2023) ................................................................ 12, 13

*Navigation Holdings, LLC v. Molavi*,
    2020 WL 5074307 (N.D. Cal. Aug. 25, 2020) ..................................................................... 12

*OmniGen Research v. Yongqiang Wang*,
    321 F.R.D. 367 (D. Or. 2017) ................................................................................... 8, 9

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    2020 WL 9209714 (D. Nev. Sept. 21, 2020) ...................................................................... 10

*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ................................................................................. 8

*Skyline Advanced Technology Services v. Shafer*,
    2020 WL 13093877 (N.D. Cal. July 14, 2020) ................................................................. 8, 9

*WeRide Corp. v. Kun Huang*,
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ................................................................ 8, 10

# TABLE OF AUTHORITIES
**(Continued)**

**Other Authorities**                                                                                              **Page(s)**

Fed. R. Civ. P. 37, 2015 Adv. Comm. Note. ................................................................. 10

Fed. R. Civ. P. 37(e) ....................................................................................... 8, 9, 10, 12

**I.     INTRODUCTION**

Defendants Rivos, Inc.[1] and Ricky Wen ("Defendants") and counsel Stephen Swedlow and David Eiseman (collectively, "Respondents") concede that a month after Apple filed this lawsuit, defendant Ricky Wen deleted hundreds of Apple files in a folder named AAPL on his Rivos work laptop, and that he told his counsel immediately thereafter. This confirms that Mr. Swedlow *knew* Mr. Wen had destroyed evidence just days before he assured the Court that there was no "reason to believe evidence will be destroyed" because "Rivos and Mr. Wen are complying with their document preservation obligations." (Dkt. 40 at 22 n.6.)  Mr. Swedlow made these false statements in an effort to defeat Apple's motions for a TRO and expedited discovery.  And over the next 10 months, Defendants' counsel continued to state that their clients had fully complied with their preservation obligations and that Apple's trade secrets were not at risk, all while they tried to get this case dismissed before these facts could be uncovered.

Counsel's defense is that they "did not know, or have any reason to think, that the folder contained Apple confidential information."  (Dkt. 219-1 ¶ 3; Dkt. 219-2 ¶ 3.)  But email produced after the Opposition was filed show that on June 2, 2022 (14 days before the TRO hearing), Mr. Wen told his and Rivos' counsel that he had deleted Apple information.  Specifically, Mr. Wen told counsel he had a folder named AAPL on his Rivos laptop containing Apple information, and he "don;t [sic] want to see the AAPL folder in my laptop everyday to hate myself more, I once deleted the folder but recovered it for the data forensic.  It is a stupid thing to do but I want you to know this if there is any question coming up in the future."  (Ex. 32.)  Defendants filed their opposition to Apple's TRO motion the very next day, attaching a declaration Mr. Wen admits was false when he (through counsel) wrote and signed it.  (Dkt. 40; Dkt. 40-2.)  The June 2 email makes clear Defendants' counsel have made *further* false statements to the Court—this time under oath in their declarations submitted with the Opposition.

Mr. Wen's June 2 email also fatally undermines counsel's claim that they did not know

---

[1] The day this Reply was due to be filed, the Court granted Defendants' motion to dismiss with leave to amend as to Rivos. (Dkt. 229.)  Apple will shortly be filing an amended complaint featuring the ample evidence of misappropriation by the Individual Defendants and Rivos uncovered in the months since Apple's last complaint.

1   anything had been lost through the deletion.  Surely after receiving such an obviously

2   consequential email they must have investigated how Mr. Wen allegedly "recovered" the folder.

3   Yet the Opposition and supporting declarations do not acknowledge any such inquiry.  Counsel's

4   reliance on their claimed "understanding," if true, would demonstrate a total failure to investigate

5   spoliation and possession of Apple confidential information.

6       Counsel's declarations are conspicuous for other things they do not say.  They do not

7   dispute that Rivos allowed former Apple employees to continue to have access to devices full of

8   Apple confidential information for nearly a year after this lawsuit was filed.  They nonetheless

9   assured Apple and the Court that the devices had been segregated.  They do not dispute that their

10  unilateral remediation led to the loss of multiple images and key metadata that would have shown

11  what use was made of the Apple information on those devices.  Their declarations do not even

12  mention defendant Laurent Pinot, much less dispute that he informed them he had Apple

13  confidential information on his laptop just after this lawsuit was filed.  And Respondents do not

14  submit anything at all from Setec, Defendants' forensic vendor, who did all the collection,

15  imaging, and "remediation" in this matter, or make any effort to explain what Setec did.

16      Respondents argue Mr. Wen did not intend to deprive Apple of evidence.  But that

17  argument does not square with the timing: Mr. Wen deleted the files the day he was told his laptop

18  would be imaged the following day.  (Ex. 31.)  And according to an email dated February 2, 2023,

19  from Mr. Wen to his counsel, finally produced about two weeks ago, he only attempted to restore a

20  version of the deleted folder because he "knew it won't look good if there is any residue found in

21  the disk image[.]"  (*Id.*)  Finally, the Opposition asserts that "when further information became

22  available Defendants promptly notified Apple."  (Opp. at 1; *see* Ex. 20A at 12:25.)  But this is

23  false.  As just one example, long after they were aware of the facts, Defendants' counsel continued

24  to make false statements to delay discovery into Mr. Wen's deletion of evidence, while trying to

25  persuade the court to dismiss the case with prejudice before his deposition could take place.  These

26  deletions did not come to light until Apple asked Mr. Wen questions during his deposition on

27  March 17, 2023, after having to move to compel the deposition.  Even then, counsel only allowed

28  Mr. Wen to answer "yes" or "no" about whether he had told anyone—including counsel—what he

had done.  (Ex. 3 at 89:12-90:17.)  For their intentional spoliation, repeated failure to comply with

Court orders, and 10 months of false and misleading statements to Apple and the Court,

Respondents should be sanctioned.

## II.      ARGUMENT

### A.      Respondents Cannot Dispute the Key Facts Entitling Apple to Sanctions

#### 1.      Counsel and Rivos Knew Mr. Wen Deleted Documents in May 2022

Mr. Swedlow and Mr. Eiseman concede they knew Mr. Wen had deleted two unix.tar

archives from his Rivos laptop by the end of May 2022.  They do not dispute that these archives

contained over 1700 files, including Verilog code files Mr. Wen acknowledged were confidential

and marked "trade secret" and "confidential." (*See, e.g.,* Ex. 3 at 119:6-16; Roffman Decl. ¶ 6.)

In an opposition to Apple's TRO motion signed by Mr. Swedlow the day after learning about the

deletion, they stated that "Rivos and Wen have already assured Apple that they *are complying with*

*their document preservation obligations.*" (Dkt. 40 at 22 n.6 (emphasis added).)  They argued that

"[i]t is only when there is a substantial, concrete reason to believe that evidence will be destroyed

in spite of a litigation hold that extraordinary relief is warranted." (*Id.*)  Just over a month later,

Mr. Swedlow represented to the Court that "Apple's insinuations that Rivos' conduct somehow

evidences 'forensic evidence is destroyed' are, simply, without basis." (Dkt. 83 at 6-7.)  When he

made these statements, Mr. Swedlow had just been told by Mr. Wen that such a basis existed—Mr.

Wen's deletion of hundreds of Apple files.[2]  Mr. Eiseman's declaration also confirms he knew of

the deletion before the June 3 opposition was filed.  (*See* Dkt. 219-1.)  Yet both continued to make

statements that Defendants were complying with their preservation obligations.  (*See* Br. at 10; Ex.

9 at 7-8; Ex. 11; Ex. 15 at 5-8; Ex. 16; Dkt. 116 at 4 n.1; Dkt. 149 at 3-4 n.3.)

Mr. Swedlow and Mr. Eiseman claim that when they made their statements—in June 2022

and for the next 10 months— they "did not know, or have any reason to think, that the folder

contained Apple confidential information." (Dkt. 219-1 ¶ 3; Dkt. 219-2 ¶ 3.)  But Mr. Wen had

just told them the folder contained Apple information he knew he should not have. (*See* Ex. 32.)

---

[2] Mr. Swedlow also had an affirmative obligation to correct his statement to Apple on May 11 that
"Rivos and Mr. Wen are complying with their document preservation obligations." (Ex. 2.)

Furthermore, Mr. Wen's laptop was imaged on June 1, and his counsel could easily have looked at the re-copied folder and seen that it contained highly sensitive Apple Verilog files and other files marked "Apple confidential."  Counsel also cite their "understanding" that no metadata had been lost on Mr. Wen's Rivos laptop, contending he "did not tell his counsel where he moved the Unix.tar files from and to—only that he had deleted and then recovered those files."  (Opp. at 22.)  But Mr. Wen's June 2 email told them exactly what he did: "I have downloaded the .tar files and un-tar'ed them ***into my Rivos laptop*** and the UNIX machine."  (Ex. 32 (emphasis added).)  This did not stop them from making repeated representations to the Court and in verified interrogatory responses, without equivocation, that they were complying with their preservation obligations and were not aware of any Apple confidential information on Rivos' system.  (Br. at 10; Ex. 9 at 7-8; Ex. 11; Ex. 15 at 5-8; Ex. 16; Dkt. 116 at 4 n.1; Dkt. 149 at 3-4 n.3.)

### 2.    Counsel Does Not Address Laurent Pinot

Messrs. Swedlow and Eiseman do not mention Defendant Laurent Pinot's testimony that they were aware of his intentional copying and retention of Apple confidential information on his Rivos laptop in June 2022, before representing that "Rivos has no knowledge of any downloading, transfer or retention of any Apple confidential documents and conformation relating to SoCs or SoC components on Rivos-issued devices or Rivos systems by any former Apple employees."  (Dkt. 117-2 at 5-6.)  Nor do they contest Mr. Pinot's statements that he accessed these Apple documents while at Rivos, within days of the lawsuit being filed.

### 3.    Respondents Do Not Dispute That They Failed to Segregate Devices Containing Apple Confidential Information

Counsel do not dispute that Rivos continued to allow four of the six individual defendants to have access to devices that contained Apple confidential information until at least March 25, 2023—and even later in the case of Mr. Rajamani—notwithstanding their earlier representations.  (*See* Opp. at 10; Exs. 13, 14, 25.)  Respondents blame Apple (Opp. at 10), but they could have cooperated with Apple from the start to reach a mutually agreeable protocol to return Apple information while preserving metadata.  And if they were not going to do that, they should have segregated the devices, as they repeatedly represented they had already done.  (Dkt. 58 at 5.)

Instead, they allowed continued access for nearly a year.  (Ex. 25.)

> **4.      Respondents Do Not Dispute That Their Unilateral "Remediation" Destroyed Additional Evidence**

Defendants and their counsel also do not dispute that they decided to delete unilaterally, in the name of "remediation," information in devices and accounts of former Apple employees that may have contained Apple confidential material.  They do not dispute that their search was unduly narrow, using search terms Apple explained were hopelessly incomplete—i.e., "Apple proprietary," "Apple confidential," "Apple trade secret," and "trade secret."  They also do not dispute that after applying Apple's broader search terms, they failed to perform a second remediation on affected devices.  Respondents also do not dispute that they failed to inform Apple they had deleted files as part of their remediation until February 24, 2023.  (Ex. 13.)

It is now clear that, despite Defendants' counsel's assurances that their process was perfectly safe, their unilateral action[3] has caused the permanent loss of forensic images, and that the number of images known to be lost has *multiplied* since Apple's opening brief.  Defendants' forensics expert, Setec, confirmed it lost and "has been unable to recover the pre-remediation image of Mr. Pinot's personal laptop taken in November 2022." (Ex. 14 at 4.)  Setec also admitted—and Apple learned for the first time in June 2023—that the same damaged hard drive also contained two other images of Defendants Laurent Pinot and Weidong Ye's Rivos MacBooks that were similarly lost.  (*See* Ex. 33 at 139:3-140:8; 172:8-13 & Ex. 34 (EVID0109, EVID0110).)

> **B.      The Opposition Further Supports an Adverse Inference**

Respondents contend that Mr. Wen did not act with intent to deprive Apple of evidence, but the facts show otherwise.

> **1.      Mr. Wen Knew the unix.tar Archive in the AAPL Folder Contained Apple Information**

Mr. Wen does not dispute that the unix.tar archive in the AAPL folder he deleted contained many more than the five config files he allegedly needed for his virtual machine.  Indeed, Mr. Wen

---

[3] Respondents point to the *Williams* case to justify their remediation.  Among other distinctions, in *Williams*, the judge made clear that deletion was not required at all, since "[t]he laptop should have been sequestered by his lawyers, and Williams could have purchased a new, clean laptop to use going forward."  (Opp. at 9-10 & Ex. A.)  The same reasoning applies here.

1    told his attorneys on June 2, 2022, that "files . . . related to the designs, which I worked on at

2    Apple," "analysis reports," and configuration files for the "CPU in the iPhone" were among the

3    different types of files that he placed into his unix.tar archive.  (Ex. 32.)  To access the config files

4    Mr. Wen admits he used for his work at Rivos, Mr. Wen would have had to un-tar (or "unzip") the

5    archive, showing him everything within it.  Even Mr. Wen does not say that he did not know

6    Apple confidential information was in the .tar file—he limits his disclaimer to Verilog files.  (Dkt.

7    219-3 ¶ 15.)  Nor could he, given the detailed description in his June 2 email of all the Apple

8    information in the AAPL folder.  Moreover, the AAPL and Rivos_Work folders contained other

9    Apple confidential files in different formats.  These included, for example,

10   ██████████████████.[4]  (*See* Dkt. 145-4 ¶ 10 (citing ████████████ and

11   ████████████).  This is not surprising because Mr. Wen admitted in his February 2, 2023 email

12   to counsel that when he created the unix.tar archives before leaving Apple, he included "all the

13   possible directories" in his Apple virtual machine.  (Ex. 31; *see also* Ex. 3A at 68:18-69:17

14   (testifying he copied more than the specific config files).)  He acknowledged that he deleted the

15   folder precisely because he knew it contained "more than five files that I needed" to configure his

16   virtual machine.  (Ex. 3 at 83:25-84:10; Ex. 3A at 101:18-102:6.)  Mr. Wen's admissions leave no

17   doubt that he deleted files he knew had Apple information and that he should not have retained.

18                    **2.    Mr. Wen Knew His Deletion Could Have a Forensic Impact**

19          It is even less credible that Mr. Wen was not aware his actions would destroy metadata.

20   Mr. Wen's nearly 30 years of experience as a CPU designer and power management engineer

21   showcase a familiarity with the Apple MacOS operating system that stands at odds with his claim.

22   (*See* Dkt. 219-3 ¶¶ 3-4, 7; Dkt. 219-4 ¶ 23 (describing Mr. Wen's use of a "command line tool"

23   within MacOS for text editing rather than the graphical user interface for the typical user).)[5]  But

24   his June 2, 2022 statement that "I once deleted the folder but recovered it for the data forensic,"

25   and his February 2, 2023 concern that it would not "look good if there is any residue found in the

26

---

27   [4] Respondents do not challenge Mr. Roffman's identification of the many Apple confidential files
     Mr. Wen extracted into the AAPL and Rivos Work folders.  (Roffman Decl. ¶ 8; Dkt. 219-3 ¶ 15.)
     [5] In another conspicuous omission, Mr. Crain did not speak with Mr. Wen, anyone at Rivos, or

28   anyone at Setec. Nor did he review any of Setec's work on the matter.

disk image" show his understanding.  (Exs. 31, 32.)  And three days after his deletion and attempted coverup, Mr. Wen submitted a declaration in opposition to Apple's TRO motion—that he now admits was false when he (through counsel) submitted it—in which he omits any mention of the AAPL folder on his Rivos laptop and Google drive, the email attaching the unix.tar archive, or his iMac from which he copied the file.  (Dkt. 40-2; Ex. 4 at 16; Ex. 3A at 229:2-6.)

### 3.   Mr. Wen's Conduct and His Counsel's Failure to Disclose it Establish an Intent to Deprive Apple of Evidence

Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve them, or otherwise seeks to "keep incriminating facts out of evidence."  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (sanctioning employer for employees' deletion of text messages).  "Relevant factors can include, *inter alia*, the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), [and] selective preservation."  *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 343 (D. Ariz. 2022) (quoting *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)).

Mr. Wen clearly understood that the folder of information he took from Apple and named AAPL was relevant.  Yet he affirmatively deleted it and emptied the trash the day he was informed his laptop would be imaged the following day (Ex. 31; Dkt. 219-3 ¶ 12), only trying to replace it when it became clear his deletion would be noticed.  He selectively deleted the versions of the files with incriminating metadata while preserving other copies of the unix.tar archive.  This was no accident.  The fact that Mr. Wen transferred a new, different copy of the unix.tar archive to his Rivos laptop in an attempt to undo the deletion does not change his underlying intent.  (Ex. 3 at 83:25-84:10; Dkt. 219-3 ¶ 12; Ex. 31.)

Apart from the suspicious timing of Mr. Wen's spoliation, Mr. Wen and his attorneys' "failure to promptly reveal the destruction, as well as their apparent efforts to cover it up" is further proof of intent.  *See Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 595912, at *6 (N.D. Cal. Feb. 14, 2014) (granting adverse inference for eight-month delay between spoliation and revelation during deposition and finding "Defendants' conduct since they learned about the

destruction qualifies as circumstantial evidence of such bad faith"); *RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 342 F.R.D. 461, 509 (C.D. Cal. 2022) (imposing Rule 37(e)(2) sanctions because "the extraordinary measures . . . to deceive both Plaintiffs and the Court" about the spoliation "amounts to nothing short of bad faith.").  Mr. Wen and his counsel hid his spoliation for nine months until Mr. Wen's deposition.  During that time, they affirmatively deceived the Court and Apple as described above.  And Mr. Wen and his counsel even failed to produce Mr. Wen's iMac from which he copied the unix.tar archive for imaging until February 2023.  (Dkt. 144 at 3.)  Their cover-up supports their intent to deprive Apple of relevant evidence.  *See RG Abrams Ins.*, 342 F.R.D. at 509; *Jackson Fam. Wines, Inc.*, 2014 WL 595912, at *6.

Contrary to Respondents' argument, each of Apple's cited cases recognize that intentional destruction of evidence of the type that occurred here warrants an adverse inference.  Respondents point to the "staggering" amount of spoliation in *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020), but the court did not hold that "intent to deprive" depended on the volume of spoliation.  *Id.* at *12.  Rather, the volume influenced the severity of the sanction.  *Id.* at *11 (awarding terminating sanctions "because the spoliation occurred on such a massive scale").  Intent to deprive is shown, as here, "when the evidence shows or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations."  *Id.* at *12.  Like the defendants in *WeRide*, Mr. Wen "ha[d] some notice that the documents were potentially relevant to the litigation before they were destroyed."  *Id.* at *10 (quoting *Leon*, 464 F.3d at 959).  And Mr. Wen similarly "cover[ed] his tracks" by attempting to replace the unix.tar file the day before he knew his laptop would be imaged.  *Id.* at *15.

Respondents emphasize that the defendant in *Skyline Advanced Technology Services v. Shafer*, 2020 WL 13093877, at *2 (N.D. Cal. July 14, 2020) "deleted ***all*** the information on her company laptop" and "***all*** of her communications" with a relevant third party.  (Opp. at 12.)  But destruction of ***all*** relevant evidence is not a prerequisite for an adverse inference under Rule 37(e)(2).  Rather, the *Skyline* Court found that the amount of spoliation determined the sanction, imposing terminating sanctions against the defendant's affirmative claims.  *Skyline Adv.*, 2020 WL 13093877, at *12.  And Respondents obfuscate the holding in *OmniGen Research v. Yongqiang*

1   *Wang*, 321 F.R.D. 367, 372-73 (D. Or. 2017) by focusing on the multiple bad acts resulting in

2   terminating sanctions against the defendants.  Respondents ignore that the court independently

3   considered the defendant's "intentional deletion of . . . metadata" and replacement of a file with a

4   copy of disputed provenance and found that it was "intentional spoliation of electronic evidence

5   under FRCP Rule 37(e)."  *Id.* at 375.  Similarly, Mr. Wen's deletion of the "AAPL" folder

6   destroyed the metadata that his "replacement" unix.tar file cannot replicate.

### 4.      Mr. Wen Affirmatively Destroyed ESI

8          Regarding metadata, nowhere in Respondents' opposition do they say—nor can they say—

9   that no metadata has been lost.  Instead of a declaration from Setec regarding what was known and

10  when, Respondents submit a declaration from a new expert (Andrew Crain of BRG) brought in

11  months after the fact.  Mr. Crain addresses only certain issues and documents.  He does not even

12  opine with any certainty that Mr. Wen's deletion did *not* cause the loss of metadata.  (Dkt. 219-4.)

13  Instead, he attempts to show that no metadata may have existed in the first place by focusing

14  narrowly on 6 Verilog files[6] and contending that the "Spotlight" kMD metadata does not "reliably

15  populate" when Verilog files are opened.  But he analyzes only two specialized programs Mr. Wen

16  might have used to open the Verilog files.  There are other ways Mr. Wen might have accessed

17  them, including the basic command line, which could have left other traces that have now been

18  lost due to the deletion.  Mr. Wen might also have removed or added specific files, and the

19  metadata that would have shown such modifications is lost.

20         Respondents repeatedly argue that "no documents were lost" as a result of Mr. Wen's

21  deletion.  (Opp. at 1, 5, 7-8, 11, 12-13, 18, 21.)  But even Mr. Wen could not say if the files he re-

22  copied from his iMac were "a different copy or not" of the unix.tar archive.  (Ex. 3A at 229:2-6.)

23  The June 2 and February 2 emails demonstrate that it was, in fact, a different copy; Mr. Wen

24  placed the unix.tar archives on his laptop when he first joined Rivos, and then copied back a

25  *different* version from his personal iMac in May 2022.  Respondents cannot say that the archives

---

27  [6] Mr. Crain's analysis also ignores the numerous other files and different filetypes
    (including perl scripts and numerous folders pertaining to programming languages) in the unix.tar
28  archive.

1   contain identical sets of files.

2        Respondents further argue there has been no loss of documents or data because, "if Mr.

3   Wen had sent these files to others, email records would exist." (Opp. at 7.) But we now know that

4   Rivos did not image Mr. Wen's email account until January 2023. (Ex. 34.) And Rivos' claim

5   that "email records would exist" rings hollow because Rivos has been unable to locate the key

6   email Mr. Wen **admits** he sent to his Rivos email account transferring the unix.tar archive, raising

7   questions as to whether he might have deleted relevant emails in the many months before Rivos

8   imaged his account. (Ex. 4 at 16.) Even if some record of Mr. Wen's access to or use of these

9   files might exist elsewhere, there is no way to know whether it overlaps with the lost metadata. To

10   show this, Apple would need the metadata, and it is lost. Respondents may not use their spoliation

11   as a shield by arguing that only review of the spoliated evidence could prove its significance. *See*

12   *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at *9 (E.D. Cal. Oct. 31, 2022). FTI

13   confirmed it cannot recover even the list of deleted files from Mr. Wen's work laptop. (Ex. 35.)

14   This case thus is distinguishable from *Oracle USA, Inc. v. Rimini Street, Inc.*, 2020 WL 9209714,

15   at *4–5 (D. Nev. Sept. 21, 2020), as there are no third parties to subpoena for Mr. Wen's spoliated

16   metadata, and Apple has exhausted its ability to recover this information with the parties' neutral

17   forensic examiner. Apple need only show by a preponderance of the evidence that ESI was lost

18   (*Deerpoint Grp.*, 2022 WL 16551632, at *11), and that standard is met here.

19       **5.   The Court Should Issue an Adverse Inference Instruction.**

20        Mr. Wen's intentional spoliation supports "not only an inference that the lost information

21   was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing

22   party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ.

23   P. 37, 2015 Adv. Comm. Note. Here, the record demands an instruction to "the jury that it may or

24   must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(b).

25        Respondents argue that an adverse inference is not warranted because even if something

26   was lost, Apple *likely* was not prejudiced. Because of Mr. Wen's intentional deletion, Apple is not

27   required to show prejudice. *WeRide Corp.*, 2020 WL 1967209, at *9. In any event, the prejudice

28   is readily apparent here, and only an adverse inference instruction can cure it. Respondents allege

that "[a]fter turning Defendants upside down in discovery," Apple has not found "any meaningful evidence of misappropriation." (Opp. at 1.) This was not true when Apple filed its motion, and it is not true now. The only thing that has changed is the amount of evidence showing it is not true.[7] In addition to the ample evidence of retention and use of Apple confidential information Apple has detailed elsewhere (*see* Dkts. 145-3; 145-4), and Mr. Wen's access to the unix.tar archive at least until June 2022 (Exs. 31, 32), Respondents ignore recently revealed evidence of former Apple engineers openly discussing sensitive Apple technical information in connection with their work at Rivos. Internal Rivos chats withheld by Rivos until May 2023 reveal discussions among former Apple employees now employed by Rivos about Apple SoC projects on which they worked and how they relate to the technology they are currently developing at Rivos. As these chats show, it is "not a taboo" to discuss Apple's SoC projects in the course of Rivos work. (Ex. 36 at 120:18-121:7.) In one particularly brazen example, Defendant Jim Hardage discussed his work on Rivos SoC features with another Rivos employee and former Apple engineer, and expressed that he would "*really like to model it after*                 ," an Apple project he extensively contributed to during his tenure at Apple. (Ex. 37 (emphasis added).) Rivos employees also discussed:

- Apple's verification designs and CPU power management. (Ex. 38.)
- Branch prediction for Apple's            project versus Rivos' SoC. (Ex. 39.)
- Apple's efforts to reorganize and streamline code for its            and            SoC projects as compared to Rivos' own coding. (Ex. 40; Ex. 36 at 100:12-25.)
- Apple's development timelines when discussing Rivos' schedule. (Ex. 41.)
- "Pros" and "Cons" of Apple's trade secret chip design process workflows—         —a proprietary tool built for managing and coordinating chip design. (*See* Ex. 42; Ex. 43.)

Mr. Wen's spoliation has eliminated Apple's ability to show whether Mr. Wen similarly accessed related files in the many months before he chose to delete his AAPL folder. An adverse inference is therefore warranted. *See Fast*, 340 F.R.D. at 354; *see also Deerpoint Grp., Inc.*, 2022

---

[7] Respondents acknowledge that they have produced over six million pages of documents, Opp. at 7, the overwhelming majority of which was either stolen from Apple or mentions the name of an Apple SoC project or component. (Ex. 17.) There can be no dispute that the Apple Verilog code files Mr. Wen retained are trade secret.

WL 16551632, at *24 (ordering mandatory adverse inference instruction where defendant allowed cloud storage contract to expire despite notice, failed to save cloud data, and allowed laptops with potential evidence to leave their custody).  Mr. Wen's intent to deprive Apple of the metadata justifies a mandatory instruction to the jury, or at the very least, an instruction that permits the jury to "presume the information was unfavorable to the party."  *See* Fed. R. Civ. P. 37(e)(2)(B).

### 6.      The Adverse Inference Should Be Imputed to Rivos.

The adverse inference should be applied against both Wen and Rivos.  *See Navigation Holdings, LLC v. Molavi*, 2020 WL 5074307, at *3 (N.D. Cal. Aug. 25, 2020) (stating employer's liability for an employee's acts "within the scope of employment . . . at least in part, to benefit the employer, though the employer may forbid it.").  When Mr. Wen copied the unix.tar archive to his laptop to use for his work at Rivos and later deleted it, he was acting within the scope of his employment.  There is no evidence that Rivos has ever imposed any consequences on Mr. Wen due to his actions, or that Rivos has distanced itself in any way from his actions.  Mr. Wen and Rivos also are represented by the same counsel, which strongly suggests Rivos believes that Mr. Wen's actions were in the course of his employment.

Moreover, both Mr. Wen and Rivos were accused of misappropriation.  Mr. Wen deleted a folder entitled "AAPL" from his Rivos work laptop.  (Ex. 31; Ex. 32.)  As in *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *8-10 (C.D. Cal. Feb. 27, 2020), they have the same counsel, and Rivos and counsel "failed to prevent the destruction of the ESI."  Rivos and Mr. Wen knew, once the lawsuit was filed and the letters sent, of Apple's allegations that Mr. Wen retained Apple information, yet Rivos and counsel waited over a month to image his work laptop. In the interim, Mr. Wen deleted the AAPL folder, and that folder and its metadata are lost.

Rivos seeks to avoid responsibility because it claims to have instructed Mr. Wen not to delete potential evidence.  (*See* Dkt. 219-3 ¶ 11.)  But Rivos and Mr. Wen have not provided even the basic information about this "instruction" typically provided in a privilege log, such as when it was given and by whom.  Even if Rivos did give a basic instruction, as one court observed, "a company cannot merely instruct its employees to not delete files and call it a day; it must take meaningful steps to ensure that its preservation and retention policies are carried out."  *MGA Ent.,*

1    *Inc. v. Clifford "T.I." Harris et al.*, 2023 WL 2628225, at *4 (C.D. Cal. Jan. 5, 2023).

2            Rivos argues it had no control over what Mr. Wen did with his laptop.  Rivos' own

3    documentation, however, provides that laptops used for Rivos work become "Rivos asset[s]."  (*See*

4    Ex. 44.)  And in his June 2, 2022 and February 2, 2023 emails to counsel, Mr. Wen states that the

5    unix.tar exists in two places on "Rivos' System," including "My Rivos's laptop," showing his

6    understanding that his laptop is part of Rivos' system.  (Exs. 31, 32; Ex. 6 at 8) (describing Mr.

7    Wen's "Rivos-issued laptop".)  Rivos thus cannot claim it had no control over this laptop.  Any

8    adverse inference instruction should reflect that equal fault lies with Rivos.

9            **C.      Mr. Wen and Counsel Should Be Sanctioned for Violating the Court's Orders.**

10           In the face of their obvious failure to comply with this Court's orders to immediately turn

11   over all devices potentially containing Apple confidential information (*see* Dkt. 55), Respondents

12   focus on Mr. Wen's *six additional* accounts allegedly not discovered until 10 months after the suit

13   was filed.  These six accounts do not even account for the complete collection of Mr. Wen's

14   devices, which Mr. Wen continued to reveal, including his Rivos NFS home directory that had not

15   been provided to FTI as late as March 2023.  Mr. Wen claims "it did not come to [his] mind" that

16   he had other devices potentially containing Apple information because he "had not used *some* of

17   these devices for years."  (Dkt. 219-3 ¶ 14 (emphasis added).)  But one of these "later-discovered"

18   devices was the same iMac ***from which he copied the old version of the unix.tar folder he***

19   ***attempted to restore,*** which he knew when he wrote the June 2, 2022 email.  (Ex. 32.)  Forensic

20   investigation has now shown the iMac contained numerous Apple confidential files.

21           Discovery of these devices—including the iMac mentioned in the June 2022 email—so

22   long after Mr. Wen was compelled to turn them over demonstrates that Rivos did not conduct an

23   adequate investigation.  *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL

24   1871107, at *23 (N.D. Cal. Feb. 9, 2023) (sanctioning law firm based on claim that it was "was

25   not 'aware'" of facts concerning the completeness of its document collection, finding the "conduct

26   [wa]s symptomatic of their larger strategy: object first, investigate later (and only when forced)";

27   *Bruner v. City of Phoenix*, 2020 WL 554387, at *8 (D. Ariz. Feb. 4, 2020) ("plac[ing] an

28   affirmative obligation on an attorney to ensure that their clients' search for responsive documents

and information is complete.").  Mr. Wen admitted that he did nothing after receiving the orders, alone or with counsel, to search to determine whether he had any other confidential information belonging to Apple.  (Ex. 3 at 265:21-268:18.)

Apart from these later-discovered devices and accounts, Mr. Wen and counsel refused for five months to turn over the images of Mr. Wen's devices and accounts that Defendants' original forensic expert, Setec, *had already completed by May 25, 2022*.  Meanwhile, Respondents emphasized their diligence to the Court, arguing there was no threat to Apple's trade secrets (while withholding potential evidence of that threat), insisting they had segregated all of Mr. Wen's devices potentially containing Apple information, and demanding that the case be dismissed with prejudice.  For example, the iMac—and the Apple confidential information it contained—was not delivered to FTI until February 23, 2023, meaning that Mr. Wen maintained his access to it for 10 months after this lawsuit was filed.  Even more troubling is that the very Rivos work laptop from which Mr. Wen deleted the unix.tar file, which counsel has now conceded it knew of and imaged as of June 2, 2022, was not turned over to FTI at least until ***March 2023***.  Counsel waited until after the spoliation was finally revealed at Mr. Wen's deposition to provide this image for forensic testing.  Meanwhile, Respondents sought dismissal with prejudice.

Respondents insist that FTI now has the devices, but they should have worked with Apple to return the stolen Apple information at the outset.  Instead, they forced Apple to spend millions to unearth what was retained, deleted, and accessed and used at Rivos.  Until the recent deposition of Setec, 15 months after Apple filed suit, Respondents had refused to reveal what, when, and how they imaged, preserved, segregated, or "remediated" the dozens of devices at issue in this litigation.  Apple seeks only those fees and costs directly resulting from this motion and the motion to compel Mr. Wen's deposition, both of which should not have been necessary.

### D.    Sanctions Against Swedlow and Eiseman Are Warranted

In defense of their many false statements to Apple and the Court, Messrs. Swedlow and Eiseman plead ignorance.  (Opp. at 13; Dkt. 219-1 ¶¶ 3, 6; Dkt. 219-2 ¶ 3.)  They also blame Mr. Wen, arguing he "did not tell his counsel where he moved the Unix.tar files from and to—only that he had deleted and then recovered those files."  (Opp. at 22.)  But that excuse does not hold

water.  Mr. Wen's June 2, 2022 and February 2, 2023 emails to counsel explaining the contents, location, and deletion of the unix.tar files put them on notice.  Even if the emails were somehow not explicit enough for counsel, the most basic of questioning would have revealed the truth of what was in the AAPL folder and whether any data could have been lost.  It simply was not true that "there wasn't, from the first day we got involved, any risk that Apple's crown jewels are in jeopardy." (Dkt. 68-1 at 38:20-25, 43:4-46:8.)  They similarly defend their repeated false statements that no Apple confidential documents had ever been transferred to or found on Rivos' systems, (*see* Dkt. 40-2 ¶ 8; 46-4 at 5; Ex. 24; Dkt. 68-1 at 45-46:4; Ex. 16 at 5-8), or that all of Mr. Wen's devices and accounts had been imaged and segregated, (Dkt. 40 at 1, 4-7; Dkt. 68-1 at 39:4-7; Dkt. 58 at 5; Dkt. 83; Ex. 23; Ex. 11; Dkt. 116 at 4; Ex. 15; Dkt. 144 at 5), by claiming they only later learned they were not true.  Counsel cannot avoid sanctions by claiming ignorance caused by their own willful failure to investigate.  *See In re Facebook,* 2023 WL 1871107, at *23.

Mr. Eiseman also insists that counsel's repeated delays of Mr. Wen's deposition were to allow completion of his document production (which was supposed to be completed weeks before).  (Opp. at 9.)  But Rivos announced to Apple that it was postponing the deposition the day after receiving Mr. Wen's February 2 email, in which he told counsel he had placed the unix.tar archive on Rivos systems, and told them—for the second time—that he may have destroyed evidence.  And in opposing Apple's motion to compel Mr. Wen's deposition on February 24, counsel scoffed at Apple's concern that "documents 'embodying Apple's SoC designs' were 'located on Rivos' systems and Rivos-issued devices" despite knowing that the unix.tar files resided on both Wen's Rivos laptop and Rivos' systems.  (Dkt. 144 at 5.)  Counsel made a similar statement in a subsequent brief filed February 28. (Dkt. 149 at 3-4 & n.3.)  The result was 10 months of discovery to uncover these improperly concealed facts.

## III.    CONCLUSION

Respondents' affirmative misstatements and concealment of spoliation were deliberate and knowing.  And the emails produced by Rivos in the weeks since Respondents' Opposition detailing Mr. Wen's explanation to counsel reveal that counsel continued to perpetuate these false statements in their Opposition.  Apple's Motion should be granted.

Dated: August 11, 2023

Respectfully submitted,

MORRISON & FOERSTER LLP


By: *Mary Prendergast*
        Mary Prendergast

Attorney for Plaintiff
APPLE INC.