1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3     Before The Honorable Nathanael M. Cousins, Magistrate Judge

4

5     APPLE, INC.,                    )
                                      )
6              Plaintiff,             )
                                      )
7     vs.                             )  Case No. C 22-02637-PCP
                                      )
8     RIVOS, INC., et al.,            )
                                      )
9              Defendants.            )
      _____)

10

11                                   San Jose, California
                                     Wednesday, August 30, 2023
12

13     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 11:02 - 11:46 = 44 MINUTES
14

       APPEARANCES:
15

       For Plaintiff:
16
                                     Morrison & Foerster, LLP
17                                   755 Page Mill Road
                                     Palo Alto, California 94304
                             BY:     BRYAN WILSON, ESQ.
18
                                     Morrison & Foerster, LLP
19                                   2100 L Street, N.W.
                                     Washington, D.C. 20037
20                           BY:     MARY PRENDERGAST, ESQ.

21     For Defendants:
                                     Quinn Emanuel Urquhart
22                                    & Sullivan, LLP
                                     50 California Street
23                                   22nd Floor
                                     San Francisco, California
24                                    94111
                             BY:     DAVID EISEMAN, ESQ.
25                           BY:     VICKI PARKER, ESQ.

2

1  APPEARANCES:  (Cont'd.)

2  For Defendants:
                              Quinn Emanuel Urquhart
3                               & Sullivan, LLP
                              865 South Figueroa Street
4                             10th Floor
                              Los Angeles, California 90017
5                        BY:  RYAN LANDES, ESQ.

6                        BY:  STEPHEN SWEDLOW, ESQ.

7  Transcribed by:            Echo Reporting, Inc.
                              Contracted Court Reporter/
8                             Transcriber
                              echoreporting@yahoo.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1 <u>Wednesday, August 30, 2023</u>                    <u>11:02 a.m.</u>

2                         P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  Calling Civil 22-2637, Apple,

5 Incorporated versus Rivos, Incorporated, et al.

6      Counsel, please state your appearances for the record,

7 beginning with Plaintiff's counsel.

8          MS. PRENDERGAST (via Zoom):  Mary Prendergast from

9 Morrison and Foerster, on behalf of Apple.  And with me is

10 my colleague, Bryan Wilson, along with Diek van Nort from

11 Apple.

12         THE COURT:  Good morning to all three of you.  I

13 see you, and welcome.

14         ALL:  Thank you, your Honor.

15         MR. EISEMAN (via Zoom):  Good morning, your Honor.

16 David Eiseman, along with Ryan Landes and Vicki Parker from

17 Quinn Emanuel on behalf of the Defendants.

18      Mr. Landes is going to handle the argument today for

19 Defendants.

20         THE COURT:  Very good.  Thank you.  And question

21 to both sides.  Do you have everybody in the room that you

22 need to be in the room?  There's, of course, other attendees

23 observing the conference, but as far as those who are going

24 to be doing any argument, do you have everybody here who you

25 intend?

4

1          MS. PRENDERGAST:  We do, your Honor.

2          MR. EISEMAN:  And so do Defendants.

3          THE COURT:  Very good.  All right.  Well, then let

4   me do just a moment of procedural stage setting, and then

5   I'll turn it over -- yeah, go ahead, Mr. Eiseman.

6          MR. EISEMAN:  I'm sorry about that.  Is -- do we

7   know if Stephen Swedlow is on the line?

8          THE COURT:  He is.  Would you like him to be in

9   the room?

10          MR. EISEMAN:  It's totally up to him.  I just

11   wanted to make sure he was present.

12          THE COURT:  All right.  He is present as an

13   attendee, and I'll ask Judge Swedlow if he'll raise his

14   hand.  We'll bring him in if he wants to come in or he also

15   has the option if he wants to come in later if something is

16   a question for him.  It looks like he is raising his hand.

17   So, we'll just bring him in.

18          MR. EISEMAN:  Thank you, your Honor.

19          THE COURT:  And that was one of the procedural

20   things I was going to address.  I'll -- I'll wait for a

21   moment.

22      (Pause.)

23          THE COURT:  Judge Swedlow, we see your name, but

24   we don't see -- there.  Now we have video, and let's see if

25   our audio is working.

5

1        MR. SWEDLOW:  Can you guys hear me okay?

2        THE COURT:  Now we can hear you.  Can you hear us

3 okay?

4        MR. SWEDLOW:  Yes.  I just couldn't figure out why

5 I couldn't see myself.  But now I understand I wasn't a

6 panelist yet.  So --

7        THE COURT:  Very good.  That's why.

8        Mr. SWEDLOW:  Thank you.

9        THE COURT:  You're a panelist now.  And if there's

10 any occasion where you want to say something -- this is true

11 for you and everyone as you outnumber me -- please raise

12 your hand, and I'll get around to you in order.

13    All right.  So, this begins our hearing now on the

14 merits, and we're here on Docket 171, which is the motion

15 for sanctions filed by Apple, opposed by Rivos and the

16 individual Defendants.  This motion was referred to me by

17 Judge Davila at Docket 182, and the form of referral makes

18 it a report and recommendation from me, and the consequence

19 of that is that I will be making findings and a report to

20 the District Court Judge.  And, so, I'll be taking the

21 motion under submission.  I won't be ruling live at the end

22 of the hearing because of the need to make findings to

23 support any recommendation.  And any party can object to my

24 recommendation.  They must do so within 14 days of my making

25 the recommendation.

6

1        There have been three developments since the motion was

2   filed that are procedurally significant.  Number one was

3   that the case was reassigned to Judge Pitts from Judge

4   Davila.  And, for your information, Judge Pitts is observing

5   the hearing but will not be presiding over this hearing.

6   So, the referring judge has changed, and your trial judge,

7   of course, now is Judge Pitts.  So, any objection to my

8   recommendation will go to Judge Pitts, not to Judge Davila.

9        Second, Judge Davila, before making the transfer,

10  granted in part a motion to dismiss the amended complaint

11  with leave to amend and the third development late last

12  night sometime after Alex Cobb completed his one hit

13  complete game was the filing of the third amended complaint

14  by Apple, and I take notice of the third amended complaint,

15  and I have reviewed it but not with so much detail that I am

16  greatly positioned to go into the details of what's in

17  there, but I do take notice of that new -- new filing in the

18  case.  And if the parties wish to address those procedural

19  updates, you may.  I don't think they change the arguments

20  that you'll make, but if you -- I acknowledge that those

21  issues were not argued in the briefs.  So, if you think that

22  there's something about those new developments that changes

23  the arguments, of course, I welcome your input on those

24  impacts.

25       A question which might have been raised by the transfer

7

1   to Judge Pitts was the impact on the referral of the motion
2   for sanctions, and it is my understanding looking at the
3   transfer order that it does not change the referral to me.
4   So, I'm still the discovery judge on the case, and I'm still
5   specifically referred the motion for sanctions.  So, that
6   has not changed.

7        But what has changed is who will be receiving the
8   recommendation.  It's no longer Judge Davila.

9        All right.  So, those are some of the procedural things
10  that have occurred.  This is a public hearing, and I granted
11  it by Zoom for the reason of Judge Swedlow and Brian
12  Wallenfelt from Rivos being out of town, and I found good
13  cause for them to connect by Zoom.  In an interest of equal
14  access to justice, I wanted to give all parties sort of the
15  same avenue of both arguing and listening to the hearing.  I
16  -- I find hybrid hearings to be challenging to provide equal
17  access to have some parties arguing in person and some
18  arguing remotely.  So, that's why we did it by Zoom.

19       Secondary benefit is that we are having a Spare the Air
20  Day here today, and Beyonce has a concert later.  So, the
21  price of transit and hotels is a bit inflationary locally.
22  So, that was an unintended benefit, but as it turns out,
23  there are some advantages of Zoom after all.

24       All right.  So, that's my procedural introduction.
25  Thank you for your patience.  I'll be quiet.  I've set time

8

1 limits of 15 minutes per side, which is aggressive, but

2 that's because of the -- two things, my familiarity with the

3 discovery in the case from prior hearings and, secondly, the

4 substantial materials presented in writing give me a

5 foundation already to make a report and recommendation.

6     All right.  So, Ms. Prendergast, going to you first, if

7 you're arguing for Apple, I'll be quiet.  You may proceed.

8 Would you like to reserve some time for rebuttal?

9        MS. PRENDERGAST:  I would, your Honor.  Five

10 minutes, please.

11        THE COURT:  Very good.  I'll reserve that for you,

12 and you may proceed.  go ahead.

13        MS. PRENDERGAST:  Thank you very much, your Honor.

14     I'm happy to answer any questions you might have, but,

15 otherwise, I just have a few things to cover.

16        THE COURT:  With that invitation, I'll just -- you

17 know, I'll give you a -- this is a soft ball, but there's a

18 number of different legal theories in Apple's motion for

19 different types of sanctions against different parties and

20 different remedies that's sought, and I've read all of

21 those.

22     Helpful to me in our limited time is to -- to focus me

23 on what you think is the best -- you know, your best theory

24 and your best evidence rather than telling me because you

25 don't have time to tell me about all of them, really focus

9

1  me on your -- your best evidence and arguments because that

2  will help me to understand it to your benefit.

3      All right.  Go ahead.

4          MS. PRENDERGAST:  Thank you, your Honor.  And,

5  with that in mind, I will focus I think primarily on the

6  spoliation here as well as the individual sanctions against

7  Quinn Emanuel and counsel.

8      Ricky Wen had a folder on his Rivos laptop called

9  Apple.  It had hundreds of Apple documents in it, and he

10 deleted it by dragging it to the trash and emptying the

11 trash.  We know that he told his counsel shortly thereafter.

12     But the next day, in opposition to Apple's TRO, they

13 filed an opposition and a declaration for Mr. Wen in which

14 he said he had no reason to believe that his Rivos laptop

15 had any Apple confidential information.  He and his counsel

16 told the Court that no TRO was necessary, no expedited

17 discovery was necessary because there was nothing there.

18     Apple wouldn't find out about the deletion for 10

19 months until it came out in Wen's deposition, which your

20 Honor will remember we had to move to compel.  If -- if

21 Apple had not asked the right questions in that deposition,

22 we may never have known.

23     In the meantime, we had 10 months of counsel

24 representing affirmatively and repeatedly to Apple and the

25 Court that they were complying with their document

10

1 preservation obligations, that there was no reason to
2 believe anything had been deleted, and that no Apple
3 confidential information was on any Rivos devices.

4      Their justification for all of those statements which
5 we know from declarations they've submitted with their
6 opposition, is that they made all of the statements based on
7 their understanding that no documents or forensic data had
8 been lost, and they did not know or have any reason to think
9 that the deleted folder contained Apple confidential
10 information.

11      The June 2nd email from Ricky Wen, Exhibit 32 in -- in
12 this briefing, makes clear that that cannot be true.  And if
13 they do have those understandings, it's a result of a
14 complete failure to investigate that is itself sanctionable.

15      If we look at Exhibit 32 -- and cognizant of your
16 Honor's desire not to have more paper in this case, I'm not
17 going to be using slides, but I will quote from that --
18 Ricky Wen told his counsel, including in house counsel for
19 Rivos, that that folder, the Apple folder on his Rivos
20 computer, "had data files related to the designs which I
21 worked on at Apple."  He said that included analysis
22 reports, configuration files.  And those configuration files
23 related to the CPU in the iPhone from 2021.

24      He then said the Apple folder, which was on his Rivos
25 laptop, he:

1          -- "didn't want to see the Apple folder

2           in my laptop every day to hate myself

3           more.  I once deleted the folder but

4           recovered it for the data forensic.  It

5           is a stupid thing to do, but I want you

6           to know this if there is any question

7           coming up in the future."

8     This email was sent on June 2nd, and the very next day

9 counsel submitted their opposition and declaration from Mr.

10 Wen.  There is simply no way that any responsible lawyer,

11 after receiving that email, would represent to the Court

12 once, let alone multiple times, that all documents were

13 being preserved without investigating this fully.  From all

14 -- for all we know, they didn't go to him and say, What does

15 that mean?  What did you do to delete it?  How did you

16 recover it?  Because they have refused to produce any

17 communications on those topics as part of this briefing.

18          THE COURT:  If I could jump in there with a

19 follow-up question.  I understand part of the consequence of

20 this alleged action is 10 months of delay, delay in

21 discovering information, and you pointed to the Wen

22 deposition, for example, that you did later get information

23 that you have an argument that you were entitled to sooner,

24 and that may have impacted things.

25     But, beyond the 10 months of -- I'm kind of focusing on

12

1  the harm, the -- the prejudice, the consequence of this

2  action by Defendants and then counsel.  Other than a delay

3  in discovering information, what -- what more is there as

4  far as consequence that's been inflicted?

5         MS. PRENDERGAST:  Sure.  Well, first of all,

6  having to file this motion, having to file the motion to

7  compel.  The expense and the expert costs associated with

8  those are a consequence.  And I think we shouldn't discount

9  how much waiting 10 minutes -- or, I'm sorry, 10 months to

10  find out what use is being made of Apple's trade secrets and

11  whether trade secrets might have been deleted and our only

12  chance to show how and when they were accessed at Rivos.

13  Waiting 10 months to find that out is extremely prejudicial

14  to Apple.  And all that time, counsel is saying, We are

15  being transparent.  We're being forthcoming.  You don't need

16  to do expedited discovery.  We don't -- we don't need a TRO,

17  because anything that's coming up we're telling apple.

18      But that wasn't true.  It took 10 months of millions of

19  dollars of expense to -- to get any discovery out of Rivos.

20         THE COURT:  And would you not have done the -- all

21  that discovery if you'd gotten this information sooner or

22  tell me if that -- the delta between what you think you

23  would have gotten or should have gotten and what you

24  actually got.

25         MS. PRENDERGAST:  Sure.  Well, initially, when we

1 filed this complaint and sent a letter, we heard from Rivos

2 that they were going to cooperate.  They were going to turn

3 over all these materials.  We were going to find out exactly

4 what they had.  They were going to save all the devices,

5 preserve all the devices, but most of those devices were not

6 turned over until February or March.

7       So, it's not so much that we wouldn't have done the

8 discovery.  Obviously, we would have done what was needed to

9 figure out what use was made of these trade secrets.  The

10 problem was the delay.  And in the background of the delay

11 was Rivos and Wen's effort to get this case dismissed with

12 prejudice.  They delayed and delayed until that motion could

13 be heard, and they said to the judge at that motion hearing

14 in March of this year, By the way, if you grant leave to

15 amend, you should stay discovery.  They didn't want anything

16 else to come out.

17      So, yes, we would have done the discovery.  It would

18 not have been as costly.  It would not have been as time

19 consuming, and it would not have taken as long if Rivos and

20 Wen had done what they said they were going to do at the

21 outset.

22           THE COURT:  All right.  And what is the -- the

23 remedy that is appropriated for the -- the wrong that you

24 have charged?

25           MS. PRENDERGAST:  So, there are a few.  As you

14

1  noted, there are a few theories here.  For the spoliation,

2  we're seeking an adverse inference instruction.  Obviously,

3  we have a new trial judge here, and we are open to the

4  actual wording of that instruction being worked out at a

5  later date.  But we do think that under Rule 37(e)(2) there

6  was intentional destruction of evidence here.

7        Courts typically look at three factors for that,

8  timing, method of deletion, selective preservation.  All

9  three of those here weigh in favor of a finding of intent as

10 we pointed out in our briefing.

11       And we do think ESI was lost.  We've been prejudiced by

12 the fact that we can't know what use was made of the folder

13 that was on Mr. Wen's Rivos work laptop for nine months.  We

14 can't know.  Our expert says metadata was lost, and

15 counsel's response is to say, Well, there might not have

16 been metadata for these six files, this one file type, if he

17 used these two programs.

18       They had an image of Ricky Wen's laptop, and they

19 didn't look at the hundreds of other files, the hundreds of

20 other Apple files in that folder.

21       So, we believe ESI is lost.  For the spoliation, we're

22 seeking an adverse inference instruction.

23       We've also moved for sanctions for violation of court

24 orders.  I think that's very clear from the briefing, your

25 Honor.  I won't spend a lot of time on that, but the simple

15

1   fact is they were ordered in June and July of 2022 to turn

2   over immediately and promptly all information, all -- all

3   devices that may have ever been used to store Apple

4   information.  It took until October for us to get the first

5   of those, and it wasn't until the following February that

6   they went back to Mr. Wen and found out he had six others.

7       Mr. Wen has testified that he did nothing, either

8   himself or through counsel, to make sure he was in

9   compliance with that order.  So, for the delay and the need

10  to file this motion, as well as the motion to compel Mr.

11  Wen, we're seeking our fees.

12      We are also seeking sanctions against Quinn Emanuel and

13  against Judge Swedlow and Mr. Eiseman for what we believe is

14  bad faith misconduct.  The record is very detailed on this,

15  as you've pointed out, your Honor.  And we're not going to

16  go back through all of the misstatements here.  But, taken

17  as a whole, we think this meets the high standard.

18      For 10 months, they made false and misleading

19  statements to the Court and to Apple, along with key

20  omissions in their interrogatory responses about what they

21  knew about what information of Apple's was being used at

22  Rivos.  They claimed the statements were based on their

23  understanding at the time, but, as we've seen, Mr. Wen came

24  to them on June 2nd and said, "This folder I deleted had

25  files related to the designs I worked on at Apple."  They

16

1 claim that for the following 10 months, they had no reason

2 to believe that folder had any Apple confidential

3 information or that he had any on his laptop, which he'd

4 just told them.

5          THE COURT:  May I ask --

6          MS. PRENDERGAST:  No responsible --

7          THE COURT:  Sorry to interrupt.  Could I ask a

8 timing question?

9          MS. PRENDERGAST:  Sure.

10         THE COURT:  As I observed, the third amended

11 complaint was just filed last night.  Discovery is not

12 completed.  Is the timing right for me to resolve this

13 motion in the sense I may hear from Rivos in a moment, Hey,

14 we're going to dismiss that third amended complaint.  It --

15 it is not factually supported and does not have a plausible

16 legal claim, and if there's no plausible trade secret legal

17 claim, this is a -- you know, much ado about nothing,

18 discovery violations and violations where there's no

19 underlying claim.

20     Just speak to that.  That -- you know, is it -- do I

21 need to wait for the third amended complaint to be resolved

22 before dealing with this or is the record complete now and I

23 don't have to wait for that?

24         MS. PRENDERGAST:  Your Honor, I think under Rule

25 37, we're required to bring this to your attention promptly.

17

1  We think the record on the actions taken to date -- to date

2  is complete.  You know, there are cases where even after

3  dismissal or settlement, sanctions motions are still

4  resolved.  So, I don't think the status of any motion to

5  dismiss should affect this.

6         With respect to Mr. Wen, we also have a breach of

7  contract claim.  I realize I haven't seen any potential

8  motion to dismiss, but I find it very likely that that case

9  would be dismissed or that claim.  So, I do think this

10  motion is right for decision, your Honor.

11              THE COURT:  All right.  Thank you.

12        Since you've saved some time, I'll defer to that

13  reserved time and go over to Mr. Lanes.  Thank you very

14  much.

15              MS. PRENDERGAST:  Thank you.

16              MR. LANDES (via Zoom):  Good morning, your Honor.

17              THE COURT:  Good morning.

18              MR. LANDES:  I'll start again by asking if you

19  have any questions.  But, otherwise, I'll -- I'll take the

20  question you asked Ms. Prendergast as a guide to focus on

21  the motion.

22              THE COURT:  Yeah.  You -- you have the advantage

23  of having heard her best shot as far as what they view as

24  the most important evidence and argument are, and you can

25  respond to that if you wish or -- or pick what you think are

1  the -- the most important things that will help me too, and

2  -- and, you know, in part two, same thing.  Timing, if you

3  think -- I can't go back in time, but if you think I need

4  further evidence or argument or the third amended complaint

5  needs to get resolved before I rule on this, I welcome your

6  input on those questions.

7          MR. LANDES:  We -- as you noted at the top of the

8  hearing, your Honor, the third amended complaint came in

9  very late last night.  Admittedly, we have not -- not had a

10  chance to -- to digest it or determine how we're going to

11  respond to it.  So, I don't want to suggest what might be

12  happening in two weeks.

13      I -- I do think where the case is with discovery

14  incomplete, no expert discovery having been made, we're far

15  off from trial.  I do think it's premature to issue any sort

16  of jury instruction right now or to require that any jury

17  instruction be issued.  But I -- I want to sort of come back

18  to the -- the fundamental issue, which is that we disagree

19  that sanctions are appropriate at all.

20      And I want to focus really on the standard for Rule

21  37(e) spoliation sanctions, because what we have from Apple

22  are exaggerations of various events, trying to piece

23  together various things to try to suggest that some of the

24  Rule 37(e) elements might be met.

25      But if you review the actual events that happened under

19

1  the applicable standard, Apple has not met its heavy burden

2  for the draconian sanction that it seeks, not against Mr.

3  Wen and certainly not against Rivos.  And the same is true

4  for sanctions under Rule 37(b) for disobeying the discovery

5  order, including the sanctions that Apple seeks against

6  counsel.

7       So, to start with Rule 37(e), for those sanctions to

8  even be on the table, Apple has the burden to show two

9  things, first, that the ESI that should -- ESI that should

10 have been preserved has been lost and, number two, which is

11 a point that Ms. Prendergast alighted over if she mentioned

12 it at all, is that the data cannot be restored or replaced

13 through additional discovery, and Apple has not shown either

14 of those two preliminary elements.

15      So, let me start when relevant ESI has been lost.  Now,

16 if you look at the case law cited in both parties' briefs

17 about spoliated ESI, the cases involve the clear and

18 unambiguous loss of relevant documents, usually reams of

19 documents, entire hard drives or laptops or email accounts.

20      And that is simply not what we have here.  Mr. Wen, in

21 a moment of frustration that he immediately regretted,

22 deleted this folder with TAR files from his Rivos reimbursed

23 laptop, and then, realizing that he shouldn't have done

24 that, he restored the file.  He replaced it on the laptop.

25      So, the -- contrary to Apple's argument or implication,

1   Mr. Wen did not intentionally destroy documents.  The

2   documents were not lost.  They're still there.  Apple knows

3   what these files are.  It knows what Mr. Wen retained.  Mr.

4   -- Ms. Prendergast described the content of these files in

5   her discussion, and Mr. Wen was deposed about them at

6   length.

7        And, so, what Apple's argument actually focuses on is

8   the potential loss of metadata, right, which is system

9   information about the documents as opposed to the documents

10  themselves.

11       Now, Mr. Crane, who's Defendants' expert, explains in

12  paragraph 25 to 33 of his declaration that when he was

13  testing the files that Apple highlighted, the Verilog files,

14  it shows that these are not reliably stored in the metadata

15  that Mr. Rothman highlighted in the first place.  So, we

16  don't even have evidence that  this was there in the first

17  place to be lost.

18       But I think what's more relevant here is the second

19  element of Rule 37(e) sanctions, which is whether the

20  discovery -- or whether the lost material can be restored or

21  replaced through additional discovery.

22       And this also relates to the third element under Rule

23  37(e), which is whether Apple is prejudiced by any loss of

24  ESI.  And Apple comes up short here too.  And, so, in

25  Apple's briefing, it takes a very very narrow focus of this

1  prong, and it says, Well, look, the -- the metadata for the

2  TAR file can't be restored, for the original TAR file.  We

3  can't get it back.

4      But what Apple ignores is the other prong, which is

5  whether it can be replaced -- replaced by other discovery.

6  And this is key because ultimately the relevant question

7  here in this case is whether Mr. Wen used files within the

8  TAR file at Rivos before he deleted and replaced the file.

9      And, so, even -- if there was evidence of usage, even

10  if the metadata that Apple says was lost, even if that

11  existed in the first place and was lost, it could be

12  replaced from other sources.

13      So, if you look at paragraphs 22 to 24 and 35 to 36 of

14  Mr. Crane's declaration, which was unrebutted by Apple in

15  its reply, you can see that there are other sources that

16  store metadata about whether files are opened or interacted

17  with that would still be available even if this one

18  particular field for the original file was lost.

19      And I think even more importantly, there would be

20  direct evidence too beyond any metadata, and I think the

21  best place to look at this is Apple's reply at page 11.  It

22  actually shows why this is the case, because in that section

23  of Apple's reply, it discusses what it perceives as evidence

24  of other employees' use of alleged trade secrets at Apple.

25      Now, Defendants disagree with Apple's characterization

1  of that evidence, and that's a dispute for another day.  But

2  what I think is critical here is that in that list of

3  evidence that Apple provides about evidence of alleged

4  misappropriation, none of that is metadata, let alone the

5  particular field of alleged metadata that was lost here.

6      So, out of the dozens of devices that Defendants have

7  turned over and Apple has forensically scoured, out of all

8  the depositions Apple has taken, millions of documents that

9  Defendants have produced, I think Apple's reply makes clear

10 that this case is not going to be tried based on a specific

11 field of metadata.

12     The evidence of usage, if it exists, if it ever

13 existed, is elsewhere.  So, let's -- let's take, for

14 example, the Verilog files, which -- which we focus on

15 because that was the primary focus of Apple's motion.

16     Apple has access to Rivos' chip specifications and to

17 Rivos' Verilog files.  It has had those for months.  Rivos

18 produced them in discovery, and Apple knows what Verilog

19 files Mr. Wen retained from Apple in the TAR file.  It has

20 those too.

21     And, so, Apple is perfectly able to look at Rivos'

22 specifications and Verilog files and compare them with what

23 Mr. Wen had and see if anything crossed over.  It can do

24 that.  It doesn't need to rely on one particular field of

25 metadata that might not have existed in the first place.

1    So, I think that goes to the preliminary elements of
2 Rule 37(e).  But, to get to intent, Ms. -- Ms. Prendergast
3 focused on Mr. Wen's act of dragging the folder to his
4 recycle bin, and -- and he did that.  You know, it wasn't a
5 cat walking across the keyboard.  I think everyone has
6 admitted that.

7    But what was left out is that you replace the file
8 immediately afterwards, right.  And, so, the question is was
9 there an intent for Mr. Wen to destroy and deprive Apple of
10 the evidence that Apple says was lost, the metadata.  And I
11 don't think that Apple has established that.

12    I -- I don't even think that there is a record that Mr.
13 Wen knew that that was happening.  So, if you look at this
14 February 23rd email -- and this is a line that Apple relies
15 on in its briefing -- Mr. Wen says he knew it won't look
16 good if there's any residue found in the disk image,
17 explaining why he recopied the file.

18    But that was Mr. Wen explaining why he replaced the
19 file, because he didn't want anyone to be deprived of
20 evidence, and it reinforces Mr. Wen's belief that there was
21 nothing lost once he had done that.

22    And, again, Mr. Wen's June 2nd email makes the same
23 point.  He wanted to make sure data was maintained, which is
24 why he restored the file.

25    As to Apple's argument that Mr. Wen is just a -- a

24

1 smart engineer who worked at Apple, so, should have known

2 how this worked, I think that's a non sequitur.  Nothing

3 about Mr. Wen's work as a power management engineer on low

4 level Apple hardware would suggest that he knows how a

5 forensic expert looks to retrieve metadata artifacts for use

6 in litigation, and there's no evidence from Apple or any

7 Apple employee that people in Mr. Wen's position have that

8 knowledge.

9      And I'll just note that if Mr. Wen was acting with an

10 intent to deprive Apple of evidence, he did it in a way that

11 is, frankly, completely nonsensical.  He didn't throw his

12 laptop to the bottom of a river.  He didn't format it.  He

13 didn't use evidence wiping software.  He deleted a file, and

14 he said, You know what?  I shouldn't have deleted that file.

15 I'm going to put it right back where it was.

16      That's what he did, and we can't find any analog to

17 that in any of the authority that Apple has cited.

18      So, unless your Honor has any questions, I'll move on

19 to another relevant issue, which is I think imputation to

20 Rivos.

21           THE COURT:  Yeah, no questions on these topics.

22 Go ahead.

23           MR. LANDES:  Okay.  So, I'll say as strained as

24 Apple's case is against Mr. Wen individually, it's even more

25 tenuous against Rivos.  Rivos did not delete anything.  It

1  did not fail to maintain ESI.  It issued and implemented a

2  litigation hold.  Lawyers from Quinn Emanuel spoke directly

3  to relevant employees and directly instructed them to

4  maintain relevant data.  That's at the Eiseman and Swedlow

5  declarations, paragraph two.  And then through Quinn

6  Emanuel, Rivos undertook an enormous effort to gather and

7  preserve evidence before the TRO hearing in the face of

8  extremely broad and extremely vague claims from Apple about

9  what was actually at issue.

10      There were dozens and dozens of employee and personal

11  Rivos reimbursed and personal devices and accounts that were

12  imaged.  And there is simply no evidence, no evidence that

13  Rivos acted with an intent to deprive Apple of this metadata

14  or of any evidence.  I think it's exactly the opposite.

15      And, so, what Apple argues is that Mr. Wen's conduct

16  should be imputed to Rivos.  You should just assume that

17  Rivos is, you know, guilty by association.  But in order to

18  do that, Mr. Wen needs to have been acting within the scope

19  of his employment.  And, given what we have here, which is a

20  situation where Mr. Rivos -- or, I'm sorry -- Mr. Wen

21  received the litigation hold, where Rivos took affirmative

22  steps to implement that hold, to specifically instruct Mr.

23  Wen about that hold, there -- there is no authority that we

24  have seen that that would place this within the scope of Mr.

25  Wen's employment.  I think it was expressly outside the

26

1  scope of his employment.

2      And, so, Apple has I think two responses here in its

3  reply that I want to respond to.  So, one is, Well, Rivos

4  and Apple -- I'm sorry -- Rivos and Mr. Wen are represented

5  by the same counsel.  And, so, you can impute on that basis,

6  and they cite the Colonies Partners case.  But in Colonies

7  Partners, there was an ongoing sequence of routine deletions

8  because there was never any litigation hold.  And, so,

9  that's where the imputation came in, and it's why the

10 conduct of the company was independently sanctionable.

11     And then in other parts of Apple's briefing, Apple

12 brings up again some of this evidence that we disagree with

13 about other Rivos employees purportedly doing some things

14 like discussing their work at Apple while they were at

15 Rivos.

16     But I think it's a -- a non sequitur to say that

17 because these other employees were discussing these things,

18 other employees who didn't spoliate anything, are not -- not

19 the basis for any sanction, that suggests that Mr. Wen

20 deleting and replacing this file was within the scope of his

21 employment.  We don't think there's any employment there.

22     So, then, let me bring it to what I think is the -- the

23 last issue because I'm -- I'm running short on time, which

24 is sanctions under Rule 37(b) for disobeying a court order.

25 And I think Apple is really stretching here to suggest that

27

1 there was any disobedience with a court order.  And, so,
2 I'll put it briefly.
3      No one disobeyed any discovery or -- and no one lied to
4 the Court, and I think what we're seeing here is hindsight
5 parsing.  So, what did we know at the -- the -- what did
6 Quinn Emanuel know at the TRO hearing.  There was some
7 degree, no question, of fog of war here, but we knew that
8 Mr. Wen had deleted this file and said that he restored it
9 because he wanted it to be preserved, and we knew that that
10 machine had been imaged and had been preserved.  Now, we
11 didn't -- we didn't know the timing of the deletion, that it
12 happened just before the imaging, but the machine had been
13 preserved, and our understanding was that nothing was lost
14 in the first place because Mr. Wen said he restored the
15 file.
16      So, in terms of when counsel learned of the actual
17 process of deletion where Mr. Wen did not do the deletion
18 and then undo it but, instead, copied the file again from
19 the source -- from a source machine, that we did not learn
20 until we -- digging deeper into this in the course of
21 preparation for his deposition.  And then Mr. Wen was
22 deposed, and this all came out, did not try to hide it
23 there.  And at that deposition, as I said, Apple had the
24 forensic image of Mr. Wen's devices.  It had the TAR files.
25 It had all of this information, and it asked him about all

28

1   of this, and it got all of this testimony.  So, there was

2   nothing lost there.

3       And I -- I just want to note finally on the issue of

4   37(b), one of the issues, as I'm wrapping up time, your

5   Honor asked I think a very important question which is,

6   well, what prejudice did Apple actually face from a delay or

7   from an inaccuracy in a statement or something like that.

8       All of this discovery would have had to have been done

9   anyway.  Apple hasn't pointed to any additional depositions

10  it had to take, anything like that, any additional discovery

11  it needed to serve.

12      What it points to primarily, the overwhelming majority

13  of what it seeks are the fees from filing this motion.  But

14  that is -- that is really really circular to say, Well, we

15  didn't have to impose any other costs.  There weren't any

16  deadlines that had to get extended.  We didn't lose out on

17  getting anything else, but we had to go to the length to

18  filing an enormous motion.  And, therefore, you should give

19  us the fees for filing that enormous motion.

20      I think all that would encourage, your Honor, is the

21  filing of -- of unnecessary motions, and I think it's a

22  penalty for penalty sake.

23      So, unless your Honor has any other questions, I'll

24  have just a couple of statements to wrap up.

25          THE COURT:  Why don't you wrap up.  I see Judge

1  Swedlow raised his hand, and I want to --

2          MR. LANDES:  I'll cede the floor to Mr. Swedlow.

3          THE COURT:  All right.  Very good.  Let's -- Mr.

4  Swedlow, if you want to go ahead.

5          MR. SWEDLOW:  Well, I'm admittedly most interested

6  in the sanctions motion against me personally.  So, I had --

7  I left the firm last year.  So, I can't speak to the

8  ultimate revelations from the preparation for the Wen

9  deposition or what these files actually are.  I remember

10  what I thought these files were, but because I -- I said

11  this in one paragraph in the declaration, I'll just say it

12  again here.

13      During the time we were preparing for the TRO hearing,

14  what we did was interview and communicate with 40 people

15  that Apple identified and clearly communicate to them that

16  they must comply with all of the relief that Apple was

17  seeking in the TRO and not accessing any information that

18  could be Apple information and not using any information

19  that could be Apple's information, and preserving all of the

20  information that could be relevant to the case.

21      And I'm saying it in the summary form, but we clearly

22  communicated.  I had no incentive to violate any court order

23  that was going to be entered or was then entered in the

24  future because we were -- we didn't have -- there's no

25  incentive for us, meaning me or Mr. Eiseman or any of the

1  team, to delete information.  But, looking again at this
2  email, which I think is the -- this June 2nd email was the
3  first and last thing mentioned by Apple's counsel -- this
4  was an email sent because we didn't understand what Mr. Wen
5  meant by a particular kind of file called a TAR file that he
6  said we shouldn't be concerned about.
7       So, he goes through a long explanation.  There are
8  three kinds of files and two kinds of files within that one
9  kind of file.  And then he says that he'd once deleted a
10 folder but recovered it for the data forensic.  And we
11 believed in good faith that he moved a file and moved it
12 back.  That's what we believe, and we believe that this
13 email was the last piece of information that he was giving
14 to us that he was complying with any of the requirements
15 that were necessary to comply with what Apple wanted in its
16 TRO so that we could go in and say we're preserving
17 everything and we're limiting everyone's access to
18 everything.
19      So, to say that it's very obvious, it still is not
20 obvious to me that this email means that someone's
21 intentionally deleting information and then not recovering
22 it, but what it says is that he once did it and now he's
23 recovered it for the forensics.
24      So, we believed in good faith that this was okay, this
25 one subset of one of the 40 people, one kind of file called

1 TAR file.  So, to say that the cumulative information leads
2 to individual and personal sanctions without identifying
3 anything beyond this email I think is -- I don't think Apple
4 meets its burden.

5          THE COURT:  Thank you very much.  I'll consider
6 what you've just said as part of the record.

7      All right.  Ms. Prendergast, back over to you for your
8 reply.  And you can reply to anything.  The two particular
9 things which you didn't have a chance to address in your
10 first stance were the element of 37(e), the assertion that
11 this information, if lost, was replaced and, secondly, the
12 assertion that, as to Rivos, you haven't produced evidence
13 that would cause Rivos to be responsible for what Wen did.

14          MS. PRENDERGAST:  Thank you, your Honor.  And I'd
15 just like to respond quickly to Mr. Swedlow before those --

16          THE COURT:  You -- you may.

17          MS. PRENDERGAST:  -- two issues.  A few things.
18 Mr. Swedlow said Mr. Wen was just one of 40 people.  They
19 were doing all of this discovery.  He was the subject of the
20 motion for TRO we had filed just days earlier.  He was not
21 just another one of the Apple employees.

22      He said, "We believed him when he said 'I recovered
23 this folder.'"  But he didn't go and ask what he did to
24 recover it.  He didn't say "Did you drag it to the trash and
25 delete it?"  They just assumed they knew what that meant.

1  This is maybe the most consequential email you can get from

2  a client, when he says, "I have Apple design files on my

3  Rivos laptop, and I have deleted them.  But don't worry.  I

4  recovered them."  For a lawyer to just take him at his word

5  and do nothing there, we think it's sanctionable.

6       I also want to point out that Mr. Swedlow and also Mr.

7  Landes are relying in their argument today on communications

8  that have not been produced because of their selective

9  waiver.  We have your ruling on that, your Honor.  I'm not

10 trying to revisit it.  But today, Mr. Landes said repeatedly

11 that there was a formal litigation hold issued and that

12 Rivos took affirmative steps to implement that old.  We have

13 no evidence of that because they've refused to produce it.

14 We don't even know what day it was issued, whether it was

15 before or after the deletion here.

16      So, they're trying to get out of this being imputed to

17 Rivos by saying, We did our duty here to take reasonable

18 steps to preserve evidence, without actually producing what

19 they claim is the basis for that.  So, that's my first point

20 on the imputation to Rivos.

21      The second on the agency principles, the argument Mr.

22 Landes makes is essentially that if Rivos didn't instruct

23 Mr. Wen to do this, it can't be imputed to him.  That's not

24 what the law says.  Even if he does something that is

25 against Rivos' interest, if it is in the scope of his

1  employment, it can still be imputed to them.

2      Here, he was deleting a folder on his Rivos issued --

3  his Rivos asset laptop, not his Rivos reimbursed laptop,

4  that he testified he was planning to use for work.  He

5  deleted that folder in the scope of his employment.

6      The other way we know, again, this same counsel.  You

7  know, that -- that was a key fact in calling these partners.

8  But also they've taken absolutely no action against Wen, no

9  discipline at all.  He's continuing in the same job.  And

10 because they have the same counsel, that strongly suggests

11 that they think whatever actions he has taken were within

12 the scope of his employment at Rivos.

13     Moving to this ESI could have been replaced through

14 other means.  I think that Mr. Landes is mostly focusing on

15 how Apple plans to try its case, which is really not

16 relevant here.  What the important evidence is is not

17 relevant.  What is important is did we lose a piece of

18 evidence that we otherwise could have had because of this

19 deletion.

20     I think Mr. Landes essentially concedes that something

21 could have been lost.  In fact, Mr. Crane, who had access to

22 this laptop image, did not go so far as to say nothing had

23 been lost.  He claims, Oh, there's other ways to know what

24 Mr. Wen looked at, but one of those ways he points to is Mr.

25 Wen's email.  They didn't image his email until January of

1  this year.  And when they did that, they were unable to find
2  an email that he testified he sent to himself with the
3  UNIX.TAR file attached.  So, the idea that there are all
4  these other sources where you could see what Mr. Wen is up
5  to just doesn't hold water.  This was the one folder
6  containing these documents that he had access to for nine
7  months.  We don't know if the files in that folder would
8  have been the same.  He might have added to it.  He could
9  have copied things and made, you know, different versions.
10 We don't know.  We can't possibly say what was lost.  And,
11 because of that, we've been prejudiced, and we think the
12 adverse inference should be against both Wen and Rivos given
13 that this was in the course of his -- his work at Rivos.
14 They knew from the moment we filed the complaint from the
15 TRO, from imaging some of his devices on the 25th and 26th
16 of May, but not this laptop, they knew this was a
17 possibility.  They did not take reasonable steps to prevent
18 the deletion.  So, we think the instruction should be
19 imputed to Rivos.
20         THE COURT:  Thank you very much to all counsel for
21 your well prepared presentations.  I will take the motion
22 under submission and have a written report and
23 recommendation to Judge Pitts.
24     Have a great day.  We are in recess.
25         MS. PRENDERGAST:  Thank you, your Honor.

35

1          (Proceedings adjourned at 11:46 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

<u>CERTIFICATE OF TRANSCRIBER</u>

1

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14



15

16            Echo Reporting, Inc., Transcriber

17              Saturday, September 2, 2023

18

19

20

21

22

23

24

25