| | |
|---|---|
| BRYAN WILSON (CA SBN 138842)<br>BWilson@mofo.com<br>KENNETH A. KUWAYTI (CA SBN 145384)<br>KKuwayti@mofo.com<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, California  94304-1018<br>Telephone:  650.813.5600<br>Facsimile:  650.494.0792<br><br>ARTURO J. GONZALEZ (CA SBN 121490)<br>AGonzalez@mofo.com<br>MEREDITH L. ANGUEIRA (CA SBN 333222)<br>MAngueira@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California  94105-2482<br>Telephone:  415.268.7000<br>Facsimile:  415.268.7522<br><br>MARY PRENDERGAST (CA SBN 272737)<br>MPrendergast@mofo.com<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, District of Columbia  20037<br>Telephone:  202.887.1500<br>Facsimile:  202.887.0763<br><br>Attorneys for Plaintiff<br>APPLE INC. | DAVID EISEMAN (CA SBN114758)<br>davideiseman@quinnemanuel.com<br>VICTORIA B. PARKER (CA SBN 290862)<br>vickiparker@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California  94111-4788<br>Telephone:  (415) 875-6600<br>Facsimile:  (415) 875-6700<br><br>RYAN LANDES (Bar No. 252642)<br>ryanlandes@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, California  90017-2543<br>Telephone:  (213) 443-3000<br>Facsimile:  (213) 443-3100<br><br>Attorneys for Defendants<br>RIVOS INC., WEN SHIH-CHIEH A/K/A<br>RICKY WEN, JIM HARDAGE, WEIDONG<br>YE, LAURENT PINOT, PRABHU<br>RAJAMANI, and KAI WANG |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RIVOS INC., a Delaware corporation; WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,<br><br>Defendants. | Case No. 5:22-cv-02637-PCP-NMS<br><br>**JOINT DISCOVERY REPORT**<br><br>Date:   September 13, 2023<br>Time:   11:00 am<br>Ctrm:   5<br>Judge:  Hon. Nathanael M. Cousins<br><br>Action Filed:  April 29, 2022 |

**Apple Issue #1 – Original Metadata for Device and Account Images:** On April 3, the Court ordered Defendants to "provide to FTI forensic images of devices and storage accounts that were used to store or transmit purported Apple confidential information." (ECF 174 at 1-2.) Apple requested these for important metadata, in particular "last accessed" dates. (ECF 164 at 10-11.) Unfortunately, the images Defendants provided contain metadata that was overwritten by their consultant, Setec. Rather than providing the dates on which Rivos employees accessed the files—a crucial issue in this case—the metadata shows the dates of Setec's processing.

Apple notified Defendants of this issue on August 24 and sent Defendants a list of the faulty images on September 4. While Defendants have acknowledged that the metadata was overwritten by Setec, they have not provided original metadata to replace the overwritten metadata or confirmed they still have that metadata. The Court should order Defendants to provide the original metadata, or notify Apple that they no longer have it, by September 22.

**Apple Issue #2 – (Knowledge of Misappropriation):** Rog 18 asks for "all instances in which You or a Former Apple Employee (excluding lawyers and Setec) retained access to Apple Confidential Information for longer than two weeks after You first became aware that You or said Employee had access to said Information, including a Description of Your reasons for permitting You or said Employee to retain access to said Information, an Identification (by Bates numbers) of said Information, and a Description of any actions You later took to restrict access to said Information and any related disciplinary actions (including the dates of said actions)." This is relevant to Rivos' liability for its employees' misappropriation. *See* 18 U.S.C. § 1839(5).

Rivos has only responded with boilerplate objections, two non-sequitur sentences, and a citation to its response to Rog 17, which does not provide the requested information. For example, Rivos' responses to Rogs 17 and 18 do not mention that Mr. Wen informed Rivos on June 2, 2022, that he had Apple data from Unix.tar in his Rivos work folder. (*See* ECF 234-3.) Because Rivos did not restrict his access to that folder until March 24, 2023, a response to Rog 18 must include a discussion about Unix.tar. The same is true for any other instances in which Rivos allowed its employees to retain Apple Confidential Information for longer than two weeks.

Furthermore, Rivos' response should include its *reasons* for allowing employees to retain

access to Apple Confidential Information. Rivos has made a baseless privilege objection to providing this information. In a March 22, 2023, email, Rivos explained that "segregating one's personal devices and workspace makes it very difficult for the individuals involved to carry on their personal lives and perform their Rivos job responsibilities." That business decision is not privileged. Rivos should be ordered to provide a complete response to Rog 18 by September 22.

**Apple Issue #3 – (Damages-Related Documents):** Apple's RFPs 72, 73, and 77 seek three categories of documents—Rivos' anticipated revenues or profits from its SoCs, Rivos' value, and Rivos' actual or anticipated funding. The documents are particularly important to damages because Rivos has not yet sold any products. Apple has agreed to narrow these RFPs to any documents "referring to or discussing" the requested information. Nonetheless, Rivos is limiting its production to documents that Rivos deems "sufficient to show" the requested information.

Rivos' response is inappropriate because each responsive document is likely to provide unique, non-cumulative information. If Rivos has documents valuing Rivos at different amounts, all such documents are relevant to damages. Rivos' "sufficient to show" language could allow it to withhold valuations it finds unfavorable to its defense. This concern is not just hypothetical. A recent article states Rivos was valued at $520 million in 2021. Yet Rivos has not produced a single document on that valuation. Similarly, Apple wants all projections of Rivos' anticipated revenues or profits, not just those Rivos selects. Rivos has not articulated which documents are "sufficient to show" the requested information; nor has Rivos provided any explanation for why these RFPs, as narrowed by Apple, would be burdensome.

**Apple Issue #4 – Rivos Deposition Scheduling:** On August 18, Apple requested deposition dates for six Rivos employees and one Rivos investor. On August 30 and September 1, Apple requested deposition dates for six additional Rivos employees and one additional investor. Rivos still has not provided a single deposition date. More than two weeks after Apple's initial request for deposition dates, Rivos asked Apple how long Apple expects each deposition to take.

Apple needs these depositions scheduled without more delay. The Court should order Rivos to provide dates by September 15 to occur on or before October 6. Apple agrees to inform Rivos by September 12 of any depositions that it reasonably anticipates will take less than three hours.

**Apple Issue #5 – RFP 69 and Rog 21 (Third Parties Working with Rivos):** On August 9, the Court ordered Rivos to produce documents and information responsive to Apple's RFP 69 and Rog 21, which pertain to third parties working with Rivos. (ECF 227 at 1.) One month later, Rivos has not produced a single document responsive to RFP 69 and has not supplemented its response to Rog 21. On September 5, Rivos asserted it was still providing notice to third parties. The Court should order Rivos to comply with its August 9 Order by September 22.

**Rivos Issue #1 – List of Misappropriated Trade Secret Documents:** Rivos has never served a discovery request asking Apple to identify the portions of the misappropriated documents that are trade secret. Nor have the parties ever met and conferred on that issue. Apple first learned of this request when it received Rivos' portion of the letter brief at 9:00 *this morning*. Apple will move for leave of Court to submit the requests Rivos identifies and other relevant documents today.

Rivos also completely mischaracterizes the history in claiming it has been asking Apple to identify its trade secret documents for over a year. Apple's very first trade secret list included a list of file names of documents taken by Ricky Wen, incorporating by reference an appendix to the declaration of its forensic expert Dan Roffman. When other defendants were added, Apple expanded the list to include appendices it created of documents taken by each individual defendant and two other non-defendant employees. (See 9/14/22 Updated Trade Secret Disclosure.) Rivos accepted the sufficiency of Apple's trade secret list on December 1, asking Apple to *remove* the lists of documents. (*See* Dec. 1, 2022, Hearing Tr. at 7-9 (agreeing to limit Disclosure to document "categories" by removing reference to appendices of documents.))

Rivos also mischaracterizes the list that is the subject of the Court's August 14 order. The stipulated order required Apple to produce a "list of the documents in Defendants' production that Apple contends *reflect or evidence* Apple's claimed trade secrets allegedly misappropriated by Defendants that were not previously identified in the September 14, 2022 Roffman Declaration." (Dkt. 237 (emphasis added).) Apple attorneys spent hundreds of hours creating this list. As the order reflects, the list identifies just those documents obtained in discovery *from Defendants* that Apple did not identify before, and is broader than just trade secrets. It includes Rivos documents, for example, to the extent they reflect Apple's trade secrets. The list originated from a dispute over

1 | RFP 25, which sought "[a]ll documents reflecting or evidencing Apple's trade secrets." (RFP 25.)

2 | Now Defendants have changed their mind and want Apple to produce a list by Bates number
3 | of each trade secret document that they misappropriated by September 15.  Defendants first made
4 | the demand for a list of documents *yesterday*, September 7.  When Defendants raised this issue
5 | during meet and confer two days earlier, they asked only that the parties work cooperatively to have
6 | Apple provide such a list.  Although it is not the subject of any discovery request, Apple has agreed
7 | to produce such a list by September 29.

8 | Notably, Defendants also did not previously ask Apple to update its Trade Secret Disclosure
9 | to provide the list it now demands.  Instead, the parties stipulated to an order to update the disclosure
10 | to identify "all of the trade secrets not contained in Apple documents." (*id.*)  Apple has done that.

11 | While Defendants now claim they need this new list for two upcoming depositions, they
12 | insisted on scheduling the depositions when they knew they did not have it.  Defendants have
13 | already rescheduled these depositions once.  Moreover, Defendants do not truly need the list to take
14 | these depositions.  They have had the Roffman appendices and an agreed upon list of categories for
15 | nearly a year and the amended "evidence or reflect" list in their possession since August 25.  The
16 | trade secret document list will be a subset of what they already have.

17 | **Rivos Issue #2 – Mr. Srouji's Apex Deposition is Inappropriate and Premature:** Johny Srouji
18 | is the senior vice president in charge of the Hardware Technology division ("HWT").  Defendants
19 | have not shown he has unique, firsthand knowledge relating to any claim or defense and have barely
20 | begun, much less exhausted, less intrusive discovery.  *See Mehmet v. PayPal, Inc.*, No. 5:08-cv-
21 | 1961, 2009 WL 921637, at *2 (N.D. Cal. 2009) ("Courts generally refuse to allow the immediate
22 | deposition of high-level executives, the so-called 'apex deponents,' *before* the depositions of
23 | lower-level employees with more intimate knowledge of the case") (emphasis in original).

24 | Mr. Srouji is an apex witness; he has the importance to Apple's business that the apex
25 | doctrine protects.  *See Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *1-2 (N.D. Cal. Aug. 23,
26 | 2013) (vice president who reports to CEO with responsibility for overall business an apex
27 | employee); *Groupion, LLC v. Groupon, Inc.*, No., 2012 WL 359699, at *3 (N.D. Cal. Feb. 2, 2012)
28 | (senior vice presidents apex executives).  As leader of HWT, he oversees thousands of employees

working on dozens of projects and reports to Apple's CEO.  Moreover, Mr. Srouji oversees dozens of executives and managers working on Apple's most sensitive and valuable hardware projects.

Mr. Srouji does not have unique, firsthand knowledge relevant to claims or defenses.  Far from showing firsthand involvement in SoC development, Apple witness Jim Vash testified that Mr. Srouji generally oversees HWT (Vash Dep. Tr. at 23:17-20) and that "there are many different levels of detail and decisions made on a day-to-day basis, so it's very distributed decision making." (Vash Dep. Tr. at 24:22-25:5.)  That is, people other than Mr. Srouji make project-level decisions.  Although Defendants claim Mr. Srouji's custodial documents show he has "discoverable personal knowledge," ***they refuse to identify these documents to Apple or the Court.***

Defendants have not exhausted less intrusive means to get the information they seek.  Depositions have been scheduled for HWT employees in each of the next three levels in Mr. Srouji's reporting chain and include those with responsibilities in developing SoCs and related technologies.  For example, Sri Santhanam, who is vice president of Apple's Silicon Engineering Group ("SEG") and reports directly to Mr. Srouji, will testify about the issues for which Defendants claim Mr. Srouji has general personal knowledge: development of Apple's SoCs, Apple's efforts to enforce its IPAs against the individual defendants, Apple's efforts to protect its trade secrets, alleged competition between Apple and Rivos, and Apple's claimed damages due to Defendants' alleged wrongful conduct..  In addition, Daniel Murray, a vice president of Apple's SEG who reports to Mr. Santhanam, and David Williamson, senior director of Engineering (CPU) who reports to Mr. Murray, will testify on these same topics and are much closer to the relevant facts than Mr. Srouji.  To the extent Mr. Srouji has non-privileged knowledge of pertinent facts on these issues, it will be provided by these witnesses and other similarly situated lower-level managers and executives in HWT.  Defendants have yet to point to any *unique*, *firsthand* knowledge Mr. Srouji may have.  Thus, at the very least, the request for his deposition is premature.

Defendant' cases are easily distinguished.  There, lower-level witnesses testified they had no knowledge of key facts (*Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132) or the proposed deponents had substantial "personal involvement" (*In re Apple iPhone Antitrust Litig.*, 2021 WL 485709, at *5; *Illumina, Inc. v. BGI Genomics Co.*, 2021 U.S. Dist. LEXIS 53635, at *10-11).

**DEFENDANTS' STATEMENT**

**Apple Has Failed To Provide Discovery Regarding Its Alleged Trade Secrets.** Despite extensive meet and confer and multiple hearings, Apple still has not identified the documents it claims contain its alleged trade secrets, or any details about those purported trade secrets. While Apple has agreed in principle to do so, it has not committed to providing this information in advance of upcoming depositions, including 30(b)(6) depositions, for which this information is required.

Defendants have been seeking this basic information from Apple for over a year. At the outset of this case, Defendants served an interrogatory asking Apple to identify and describe with particularity any alleged trade secrets Apple claims that former Apple employees took, accessed, or obtained following their employment from Apple. ROG Nos. 1 and 2. At the same time, Defendants asked Apple to produce all documents reflecting or evidencing Apple's alleged trade secrets. RFP No. 25. During meet and confer efforts aimed at avoiding the need for this Court's intervention, Defendants explained that they need to know "whether Apple is claiming that Defendants are in possession of any Apple documents that *contain or constitute Apple's alleged trade secrets* other than the documents identified in the September 14, 2022 Roffman Declaration appendices." 4/2/2023 Shepherd Email. Apple agreed on the record *in April* that "[t]o the extent Apple is claiming files other than those cited by Mr. Roffman in his declaration *are trade secrets* and those documents have been produced by Defendants, Apple will agree to identify those documents by Bates number." 4/3/2023 Tr. at 14:23-15:1.

Recent discussions have made clear, however, that Apple put forward a list of trade secret documents that is untethered to Apple's alleged trade secrets. Indeed, even after numerous prior lists Apple provided containing tens of thousands of entries that Apple had no good faith basis to include, the August 25 list the Court ordered Apple to provide still contains over 16,000 documents, including calendar invites, routine emails, and even *Rivos'* technical specifications. When presented with one such routine email, Apple explained that the "system maintenance document" contained details regarding Apple's "IT infrastructure." 9/7/2023 Spoont Email. Apple made no effort to tie the document to its alleged trade secrets at issue in this matter, which all relate to SoCs and SoC components. Nor has Apple identified the Apple trade secrets it claims are within Rivos'

technical specifications. Instead, Apple explained that the list "reflects or evidences" its trade secrets in the broadest sense.

Regardless of what Apple believes the Court-ordered list should contain, it is clear that, six weeks away from the close of fact discovery, Defendants still do not know what trade secret documents Apple alleges are at issue in this case. This is information Apple should have provided at the ***start*** of discovery. *See Jobscience, Inc. v. CVPartners, Inc.*, No. C 13–04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.").

This issue is all the more acute because Apple continues to claim as its trade secrets the "documents" describing five broad categories of "SoC designs and SoC component designs" for over 50 projects. 12/7/2022 Second Updated Trade Secret Disclosure. With the benefit of months of written and deposition discovery from Defendants—including discovery regarding Defendants' own SoC designs—Apple finally served a Court-ordered Third Updated Trade Secret Disclosure on September 1. Apple's latest disclosure (which continues to incorporate by reference its prior disclosure) is plainly the product of Apple comparing the technical documents Rivos produced in discovery months ago with Apple's own technical documents (which it only made available pursuant to Court order last week) to hunt for any overlap whatsoever, no matter how minor or how consistent with widespread SoC design practices. Yet even now, Apple has not committed to identifying the Apple "documents" that contain these "trade secrets" in advance of the upcoming depositions. Nor has Apple clarified what additional documents, beyond those it directly compared to Rivos' specifications, are at issue in the case. Apple takes this position despite serving a 30(b)(6) designation purporting to offer a witness "generally knowledgeable about ***Documents Identified*** in Apple's Third Amended Trade Secret Disclosure." 9/7/2023 Designation on Topics 4, 22, 24, and 45. The witness is being deposed on September 14, one day after this hearing, and before Apple will have identified any allegedly trade secret documents.

During meet and confers, Apple stated that it only intends to rely on a limited number of technical specifications in this case, but Apple's counsel also claimed that any list of its purported trade secrets would be long, numbering in the thousands of documents. In short, Apple has refused

to narrow its case in any way, while also failing to direct Defendants to its alleged trade secret documents or to the specific claimed trade secrets within those documents. *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021) (plaintiff cannot "simply refer to a document in its entirety as 'including' trade secrets, without specifying what the trade secret is."); *dsX6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012) ("Plaintiffs merely list hundreds of documents that allegedly 'reflect' their trade secrets but they do not provide any assistance on where in those documents the trade secrets can be found.").

Apple's continued failure to identify the trade secret documents at issue is highly prejudicial to Defendants. The fact discovery cut-off is October 25. The parties are scheduling depositions, and Dan Murray, who likely will be Apple's 30(b)(6) designee on many technical topics, has been offered for deposition on September 20. As it stands, however, Apple will not have identified its trade secret documents in advance of that deposition, making it impossible for Defendants to probe Apple's claims.

**Defendants therefore request that Apple be ordered to identify (i) the documents it claims contain or constitute its alleged trade secrets and (ii) the specific portion of each document that Apple asserts as a trade secret in this case by no later than <u>September 15</u>.** This information is responsive to at least Interrogatory Nos. 1, 2, 3, 21 and 23, and RFP No. 25. Alternatively, Defendants request that Apple be ordered to make its 30(b)(6) witnesses for Topics 3-20 and 40 in Defendants' April 17, 2023 deposition notice (topics all relating to Apple's alleged trade secrets) available on a date prior to the close of fact discovery, but at least two weeks following Apple's identification of the documents that contain or constitute its trade secrets and the specific portion of each document that Apple asserts as a trade secret.

<u>**Apple Refused to Make Johny Srouji Available for Deposition.**</u>  Mr. Srouji is Apple's Senior Vice President of Hardware Technologies. While Apple's production of his custodial documents has hardly begun, it is already clear that Mr. Srouji has discoverable personal knowledge regarding the development of Apple's SoCs, Apple's efforts to enforce its IPAs against the individual defendants, Apple's efforts to protect its trade secrets, alleged competition between Apple and Rivos, and Apple's claimed damages due to Defendants' alleged wrongful conduct.

Apple, however, refuses to make Mr. Srouji available for deposition, claiming he is an apex witness. But the Northern District has rejected Apple's attempt to invoke the apex doctrine to prevent depositions of its Senior Vice Presidents, finding they "are not a CEO or the head of an agency," and because of "their lesser degree of apex-ness, less is required to justify their depositions." *See In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *5 (N.D. Cal. Jan. 26, 2021) (ordering depositions and overruling Apple's apex objection: "There are no further exhaustion hoops that Plaintiffs need to jump through to take these depositions.").

Even if Mr. Srouji were an apex witness, which he is not, his deposition would still be appropriate given he has "firsthand knowledge of relevant facts." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015). For example, Apple witness Jim Vash testified that Mr. Srouji "oversees all the activities of hardware technologies at Apple," including "[t]he design of Apple system on chips." Vash Tr. 23:11-24:16. "[T]here is no substitute for deposing a decisionmaker." *Illumina, Inc., et al., v. BGI Genomics Co., et al.*, Dkt. 296 at 4 (N.D. Cal. March 22, 2021). Apple should be ordered to make Mr. Srouji available for deposition.

**Rivos Is Providing Deposition Dates.** During the time period in which Rivos was not a party to this case because its motion to dismiss had been granted, Apple requested deposition dates for 7 additional fact witnesses, and thereafter requested 7 more, including three third-party witnesses. Quinn Emanuel has confirmed it may accept service for one of the third-party witnesses. Rivos is soliciting the availability of each witness, and anticipates providing those dates before the hearing. Apple indicated it may not need full days for each witness, but has not provided specifics. Rivos does not believe Court intervention is necessary, but to the extent the Court orders that Rivos provide these dates on Apple's arbitrary schedule, Defendants request the order be reciprocal— Apple has consistently taken *months* to provide deposition dates for its own witnesses.

**Apple RFP Nos. 72, 73, 77.** Rivos has produced documents sufficient to show its anticipated revenues or profits from Rivos SoCs in response to RFP No. 72. Apple demands all documents that refer or discuss anticipated revenues or profits, but has failed to articulate why Rivos' current production is insufficient. In response to RFP No. 73, Rivos agreed to produce (and has produced) documents sufficient to show the valuation of Rivos. Rivos agreed to produce yet

1  more documents this week.  Rather than wait for Rivos' production, however, Apple prematurely
2  raised this issue with the Court.  In response to RFP No. 77, seeking documents related to anticipated
3  competition between Rivos and other companies, Rivos agreed to produce (and has produced)
4  documents sufficient to show its anticipated competition.  Apple has failed to articulate anything
5  missing from this production.  Defendants respectfully request that the Court deny Apple's request.

6      **Apple ROG No. 18.**  Apple Interrogatory No. 18 seeks a description of any instance in
7  which Rivos or a former Apple employee retained access to claimed Apple confidential information
8  for more than two weeks, and the "reasons for permitting" that retained access.  Rivos only became
9  aware of the retention of alleged Apple's alleged confidential information as a result of its counsel's
10 investigation in response to Apple's claims in this case.  The "reasons" behind any decisions made
11 or actions taken in connection with counsel's investigation are both privileged and work product.
12 Rivos has provided non-privileged factual information—such as what was done and when—
13 regarding its first awareness that material may have been retained in response to Apple's request.
14 Apple is not entitled to discover counsel's thinking.

15     **Defendants Are Looking into Apple's Questions Regarding Metadata.**  Apple has raised
16 a question regarding irregularities in metadata produced in connection reports generated by FTI,
17 the parties' neutral forensic consultant.  Defendants are working with their consulting experts to
18 determine the cause of the irregularities and have committed to providing (and have provided)
19 updates to Apple as they learn more.  At this point, Defendants do not believe any metadata has
20 been altered or lost.  No action by the Court is necessary.

21     **Apple RFP 69 and ROG 21.**  The Court granted Apple's prior motion to compel
22 responses to Apple RFP 69 (seeking documents identifying third parties that have assisted with
23 the design or development of Rivos SoCs) and ROG 21 (seeking a description of Rivos' investors
24 and persons who have participated in the design and development of its SoCs).  Rivos is
25 contractually obligated to notify certain of the implicated third parties before it can provide this
26 information, and is in the process of doing so.  Rivos will provide responsive information as soon
27 as those requirements are cleared, and in all events prior to the September 29 substantial
28 completion deadline.  No further action by the Court is necessary.

Dated: September 8, 2023

Respectfully submitted,

| MORRISON & FOERSTER LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| */s/ Bryan Wilson* | */s/ David Eiseman* |
| Bryan Wilson | David Eiseman |
| *Attorneys for Plaintiff Apple Inc.* | *Attorneys for Defendants Rivos Inc., et al.* |

**ATTESTATION OF CONCURRENCE**

I, Bryan Wilson, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from David Eiseman.

Dated: September 8, 2023                    */s/ Bryan Wilson*
                                                                    Bryan Wilson