QUINN EMANUEL URQUHART & SULLIVAN, LLP
  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
  Elle Xuemeng Wang (Bar No. 328839)
  ellewang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa St.
Los Angeles, CA 90017
Telephone:     (213) 443-3145
Facsimile:     (213) 443-3100

Attorneys for Defendants and Counterclaim
Plaintiffs Rivos Inc., Wen Shih-Chieh a/k/a Ricky
Wen, Jim Hardage, Weidong Ye, Laurent Pinot,
Prabhu Rajamani and Kai Wang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 5:22-CV-2637-PCP |
| Plaintiff, <br> vs. | **DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO APPLE'S THIRD AMENDED COMPLAINT** |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG, | |
| Defendants. | Courtroom: 8 <br> Judge: Hon. P. Casey Pitts |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG, | Date Action Filed: April 29, 2022 |
| Counterclaim Plaintiffs. <br> vs. | **Redacted for Public Filing** |
| APPLE INC., | |
| Counterclaim Defendant, | |

Defendants and Counterclaim Plaintiffs Rivos Inc. ("Rivos"), Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang (together, "Defendants"), by and through their undersigned counsel, hereby file their Answer and Affirmative Defenses to Plaintiff Apple Inc.'s ("Apple") Third Amended Complaint ("TAC").

Defendants demand a trial by jury on all issues so triable. Defendants deny any allegation in the TAC that is not specifically admitted. Defendants have reproduced the TAC's section headings for ease of reference; to the extent any headings or subheadings in the TAC make factual allegations that would require a response if stated in the main text, Defendants deny all such allegations.

Apple's lawsuit against Rivos and the former Apple employees Rivos hired is an improper and anticompetitive attempt to thwart employee mobility and stifle a startup engaged in the development of novel server technology. In choosing to file this lawsuit, Apple is flexing its power and relying on its unlimited resources as a company with a $2.7 Trillion market capitalization in an effort to restrict the freedom of its former employees to pursue the careers of their choice and stamp out any potential competition from a promising startup. Apple's complaint lays bare its true goal: It does not want its employees to leave the company and work for new employers doing similar work. Unfortunately for Apple, California law expressly protects employees' rights to do just that.

Apple has sought to punish Rivos and any Apple employees who may seek to work there since the moment Apple learned about the promising startup. Dan Murray, Apple's Vice President of Silicon Engineering, learned of Rivos in May 2021 after a conversation with one of Rivos' founders, Puneet Kumar. Apple knew that Rivos was being funded by two of the investors that had funded NUVIA, a start-up co-founded by a former Apple Platform Architecture engineer. Although Apple understood that Rivos would not compete with Apple for anything except hiring employees, Apple did not want to see a repeat of what happened with NUVIA—with numerous Apple employees leaving for more interesting and fulfilling opportunities with new employers. By June 2021, before a single Apple employee had left to join Rivos, Apple began holding regular meetings to strategize how to stop Rivos in its tracks, including by improperly obstructing employee mobility and threatening employees about what would happen to them if they dared to leave Apple.

1    Apple is well aware that its policy of encouraging Apple employees to store Apple work

2    materials in their personal iCloud accounts, to discuss work and exchange work files using their

3    personal iMessage accounts, to back up computers using Apple's Time Machine, and to intermingle

4    personal and work-related materials on Apple-issued laptops creates the risk—if not the

5    inevitability—that employees departing Apple will retain something related to Apple in some

6    location, especially given the manner in which these Apple-created and Apple-mandated services

7    automatically create "sync" copies in multiple locations without any user action.  Despite this, Apple

8    did little to ensure that employees did not have Apple materials on their devices or accounts when

9    they left Apple.  Instead, Apple rushed its employees out the door, often not even conducting an exit

10   interview or giving any meaningful instruction about how employees should remove material they

11   may not even know they had.  Whether this was due to Apple's lack of diligence, or part of an

12   intentional effort to set a trap so Apple would have a pretext to go after the departing employees and

13   Rivos, Apple did not take any reasonable care to protect the material it now complains about

14   Defendants possessing.

15   Apple knew and intended that a lawsuit against Rivos and its employees would harm Rivos,

16   regardless of whether Apple's claims had merit.  Indeed, as Apple anticipated, the cloud of litigation

17   created by Apple's overblown and ultimately meritless claims has harmed Rivos in numerous ways.

18   Additionally, Apple knew and intended that the threat of litigation would scare other Apple

19   employees, causing them to stay at Apple rather than exercise their lawful right to pursue other

20   employment opportunities.  Similarly, Apple knew and intended that the threat of litigation would

21   cause other startups to hesitate or refrain from hiring employees working for Apple, harming both

22   the startups and the employees.  Apple's lawsuit is anticompetitive at every level.

23   Defendants respond to each paragraph in the TAC as follows:

## INTRODUCTION

25   1.    Defendants deny the allegations in paragraph 1 of the TAC.

26   2.    Defendants admit that Apple designs SoCs and SoC components based on ARM

27   architecture and decades-old concepts available in published literature.  The basic concepts of SoC

28   and SoC design are taught in graduate level courses to engineering students across the country.

1  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of

2  the remaining allegations in paragraph 2 of the TAC, and therefore deny them.

3       3.     Defendants admit that Rivos has "no interest in relying on Apple information as

4  Rivos builds its business." Defendants further admit that, consistent with California law that

5  encourages the free movement of employees, Rivos has hired over 50 employees who, at some

6  point in their careers, have worked for Apple, but left because they were looking for new

7  opportunities. Defendants deny the remaining allegations in paragraph 3 of the TAC.

8       4.     Defendants admit that Apple has conflicting policies regarding the storage and

9  return of Apple information. Apple encourages its employees to intermingle personal and work

10  information in their personal iCloud accounts by offering employees free storage for work-related

11  documents. Apple also permits employees to intermingle personal and work information on their

12  Apple-issued devices by allowing the use of Apple-issued devices for personal purposes and for

13  storage of personal data, and by effectively requiring employees to use an iCloud account and

14  iMessage in the course of their work, even though Apple knows employees will use their personal

15  accounts for these purposes. For a time, Apple also encouraged employees to back up their Apple

16  devices on Time Machine. Apple's policy with respect to Apple-issued devices is for the

17  employee ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

18  ▆▆▆▆▆▆▆▆▆. Defendants deny the remaining allegations in paragraph 4 of the TAC.

19       5.     Defendants deny the allegations in paragraph 5 of the TAC.

20       6.     Defendants admit that Mr. Hardage worked on an industry standard component in

21  Apple's SoC design that he had previously designed and worked on at ARM. Defendants further

22  admit that, as a result of Apple's policy of encouraging employees to intermingle personal and

23  work materials, Mr. Hardage endeavored to remove his personal materials from his Apple-issued

24  laptop prior to departing from Apple. Defendants deny the remaining allegations in paragraph 6 of

25  the TAC.

26       7.     Defendants admit that Mr. Ye followed Apple's official policy of encouraging

27  employees to save Apple work materials to their personal iCloud drives. Prior to departing Apple,

28  Mr. Ye tried to move his Apple work materials out of his personal iCloud and into a work

1    location, but Apple's iCloud service failed to move certain source code repositories, so Mr. Ye

2    deleted them from his personal iCloud account.  Following his departure from Apple, however, the

3    deleted files suddenly reappeared in Mr. Ye's iCloud account due to automated iCloud

4    functioning.  Apple is in the best position to explain how and why its iCloud services made Apple

5    work materials that had been deleted from a personal iCloud account available to a former Apple

6    employee.  Defendants deny the remaining allegations in paragraph 7 of the TAC.

7        8.    Defendants admit that Mr. Pinot retained one document for the purpose of

8    reviewing its formatting, but not its content.  That a document is marked "Apple Proprietary &

9    Confidential" is irrelevant, as Apple includes that language as a template on *every* presentation,

10   and over uses that language to such extent that even a presentation on leg exercises contains the

11   designation.  Apple's over-designation makes it impossible to know what information is or is not

12   confidential.  Defendants further admit that Mr. Pinot made backups of his Apple-issued computer

13   with Apple's knowledge.  Defendants deny the remaining allegations in paragraph 8 of the TAC.

14       9.    Defendants admit that Mr. Rajamani disconnected his personal iCloud account

15   from his Apple-issued laptop before leaving Apple because Apple asked him to do so.  Defendants

16   deny the remaining allegations in paragraph 9 of the TAC.

17       10.   Defendants admit that, consistent with Apple's policies, Mr. Wang set up his

18   Apple-issued devices using his personal iCloud account.  Defendants further admit that, because

19   of Apple's syncing policies that were unknown and unexplained to Mr. Wang, certain files that

20   had been shared with Mr. Wang at Apple synced to his personal iCloud and other iCloud locations

21   without his knowledge.  Defendants deny the remaining allegations in paragraph 10 of the TAC.

22       11.   Defendants admit that they have offered to return or delete various files that Apple

23   contends contain Apple confidential and/or trade secret information, but have been prevented from

24   doing so by Apple's conflicting instructions and demands throughout this litigation.  Defendants

25   deny the remaining allegations in paragraph 11 of the TAC.

26       12.   Defendants admit that certain documents "prolifterat[ed]" through employees'

27   personal devices as a result of the operation of Apple's iCloud system, which Apple designed and

28   controls, but the operation of which is entirely opaque to end-users, including Apple's own

employees.  Apple created a system that copies data indiscriminately without user action, or even knowledge, every time a device is connected to the account.  Apple exacerbated the issue it created by encouraging its employees to use their personal iCloud accounts for work purposes, allowing Apple work-related materials to sync with any number of personal devices.  Apple then performs lackluster exit interviews, or none at all, upon an employee's departure from the company, virtually guaranteeing that Apple employees will unknowingly and unintentionally retain Apple work-related materials following the termination of their employment.  Defendants deny the remaining allegations in paragraph 12 of the TAC.

13.     Defendants admit that hundreds of Apple code names are publicly available, including on Wikipedia.  For example, it is publicly reported that "Jade" is the code name for the Apple M1, "Sicily" is the Apple A14 Bionic, "Cebu" is the Apple A13 Bionic, "Cayman" is the Apple A10 Fusion, "Crete" is the Apple A16 Bionic, and "Monsoon" "Vortex," "Mistral," "Tempest," "Zephyr," "Icestorm," "Blizzard," "Everest," "Firestorm," and "Sawtooth" refer to cores within the A series chips.  *See* "List of Apple codenames," available at https://en.wikipedia.org/wiki/List_of_Apple_codenames.  Defendants deny the remaining allegations in paragraph 13 of the TAC.

**<u>JURISDICTION, VENUE, AND PARTIES</u>**

14.     Defendants admit that this case invokes the Defend Trade Secrets Act, and that the Court has jurisdiction over meritorious trade secret claims generally.  Defendants deny, however, that the TAC sets forth a valid or meritorious claim for trade secret misappropriation.  Defendants assert that the remainder of paragraph 14 of the TAC recites a legal conclusion that requires no response.

15.     Defendants assert that paragraph 15 of the TAC recites a legal conclusion that requires no response.  To the extent it does not recite a legal conclusion, Defendants deny the allegations in paragraph 15 of the TAC.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 16 of the TAC, and therefore deny them.

17.     Defendants deny the allegations in paragraph 17 of the TAC.  Rivos' current address is 331 Fairchild Drive, Mountain View, CA 94043.

18.     Defendants admit the allegations in paragraph 18 of the TAC.

19.     Defendants deny that Jim Hardage is a "CPU RTL Architect" at Rivos.  Defendants otherwise admit the allegations in paragraph 19 of the TAC.

20.     Defendants admit the allegations in paragraph 20 of the TAC.

21.     Defendants admit the allegations in paragraph 21 of the TAC.

22.     Defendants admit the allegations in paragraph 22 of the TAC.

23.     Defendants admit the allegations in paragraph 23 of the TAC.

**BACKGROUND**

24.     Defendants admit that Apple sells consumer electronics, such as smartphones, personal computers, tablets, and watches.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 24 of the TAC, and therefore deny them.

25.     To the extent that the allegations in paragraph 25 of the TAC describe SoCs and SoC components as a general matter, Defendants admit that those features exist in chip design. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 25 of the TAC, and therefore deny them.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 26 of the TAC, and therefore deny them.

**A.      SoC Design**

27.     To the extent that the allegations in paragraph 27 of the TAC describe SoC design and Instruction Set Architectures (ISAs) as a general matter, Defendants admit that those features exist in chip design.  Defendants deny the allegations in paragraph 27 of the TAC to the extent they suggest the features are specific to Apple.

28.     Defendants admit that RISC is a popular, commonly used, architecture design. Defendants deny the allegations in paragraph 28 of the TAC to the extent they suggest the RISC architecture is specific to Apple.

29.     Defendants admit that Arm Ltd. develops leading RISC-based architectures for SoCs, which it licenses to its customers.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 29 of the TAC, and therefore deny them.

**B.     Apple's Innovative SoC Design**

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 30 of the TAC, and therefore deny them.

31.     Defendants admit that engineers improve their general skills through their prior work experiences.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 31 of the TAC, and therefore deny them.

32.     Defendants deny that the A15 SoC, which is now two years old, is "at the heart of Apple's latest iPhones."  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remining allegations in paragraph 32 of the TAC, and therefore deny them.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 33 of the TAC, and therefore deny them.

**C.     The Value of Apple's Trade Secret SoC Information to Competitors**

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 34 of the TAC, and therefore deny them.

35.     Defendants admit that Rivos was founded in May 2021.  Defendants deny the remaining allegations in paragraph 35 of the TAC.

36.     Defendants admit that Rivos is developing a server SoC using the RISC-V architecture.  Defendants further admit that Rivos currently does not have a product on the market. Defendants deny the remaining allegations in paragraph 36 of the TAC.

**D.     Apple Diligently Protects Its Trade Secret Chip Designs and Related Information**

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 37 of the TAC, and therefore deny them.

38.     To the extent Apple has provided excerpts from Apple's Intellectual Property Agreement (IPA), Defendants assert the document speaks for itself and a response is not required. To the extent paragraph 38 of the TAC recites a legal conclusion, it requires no response. Defendants deny the remaining allegations in paragraph 38 of the TAC.

39.     To the extent Apple has provided excerpts from Apple's IPA, Defendants assert the document speaks for itself and a response is not required.  To the extent paragraph 39 of the TAC recites a legal conclusion, it requires no response.  Defendants deny the remaining allegations in paragraph 39 of the TAC.

40.     Defendants admit the allegations in paragraph 40 of the TAC.

41.     To the extent Apple has quoted from a "Checklist for HWT Departing Employees," Defendants assert the document speaks for itself and a response is not required.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 41 of the TAC, and therefore deny them.

42.     To the extent Apple has quoted from a "Checklist for HWT Departing Employees," Defendants assert the document speaks for itself and a response is not required.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 42 of the TAC, and therefore deny them.

43.     Defendants admit each Individual Defendant executed a checklist, which Apple did not thoroughly explain to them or provide them with a reasonable time for compliance. Defendants deny that they were subject to fulsome interviews.  Defendants deny the remaining allegations in paragraph 43 of the TAC.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 44 of the TAC, and therefore deny them.

45.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 45 of the TAC, and therefore deny them.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 46 of the TAC, and therefore deny them.

**E.      Former Apple Engineers Leaving for Rivos Retained Apple Confidential and Proprietary Trade Secrets After Accepting Offers from Rivos**

47.      Defendants admit that, consistent with California law that encourages the free movement of employees, Rivos has hired over 50 employees who, at some point in their careers, have worked for Apple, but left because they were looking for new opportunities.  Defendants deny the remaining allegations in paragraph 47 of the TAC.

48.      Defendants deny the allegations in paragraph 48 of the TAC.

49.      Defendants admit that the former employees Apple has sued worked diligently and loyally for Apple for many years.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 49 of the TAC, and therefore deny them.

50.      Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 50 of the TAC, and therefore deny them.

51.      Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 51 of the TAC, and therefore deny them.

52.      Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 52 of the TAC, and therefore deny them.

53.      Defendants admit that Apple has dismissed a former Rivos employee from the case. To the extent that paragraph 53 refers to a stipulated order, Defendants assert the document speaks for itself and a response is not required.

54.      Defendants deny the allegations in paragraph 54 of the TAC.

55.      Defendants admit that—unbeknownst to the Individual Defendants—certain Apple documents continued to exist on certain Individual Defendants' devices following their employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the background without any action or knowledge of the user; (iii) Apple's directing individuals to remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect

its information or provide meaningful instruction (or any instruction) to individuals upon their departure from Apple.  Defendants deny the remaining allegations in paragraph 55 of the TAC.

**1.  Ricky Wen**

56.     Defendants admit that Mr. Wen worked diligently and loyally for Apple for over 13 years.  Defendants admit that Mr. wen worked as a CPU design engineer with responsibilities for developing the architecture of Apple's SoCs.  Defendants deny the remaining allegations in paragraph 56 of the TAC.

57.     To the extent Apple has quoted from Apple's IPA, Defendants assert the document speaks for itself and a response is not required.  Defendants deny the remaining allegations in paragraph 57 of the TAC.

58.     Defendants admit the allegations in paragraph 58 of the TAC.

59.     Defendants admit that Mr. Wen's Apple-issued computer contained his personal photos and movies that Mr. Wen attempted to remove from his Apple-issued computer and retain following his departure from Apple.  Defendants deny the remaining allegations in paragraph 59 of the TAC.

60.     Defendants admit that Mr. Wen tendered his resignation to Apple on or about August 3, 2021.  Defendants further admit that Mr. Wen conducted an exit interview and executed a Checklist for HWT Departing Employees on or about August 5, 2021.  Defendants deny the remaining allegations in paragraph 60 of the TAC.

61.     Defendants admit that, prior to departing Apple, Mr. Wen deleted his internet browsing history, iMessage, and iChat histories from his Apple-issued computer in order to remove his personal data from his Apple-issued laptop.  Defendants deny any suggestion that Apple's confidential or trade secret information was contained within Mr. Wen's personal internet browsing history, personal iMessages, and personal iChat histories.  Mr. Wen further admits that, consistent with instructions from Apple, he removed Apple work documents from his personal cloud storage, and removed his personal documents from his Apple-issued computer.  Defendants deny the remaining allegations in paragraph 61 of the TAC.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO
APPLE'S THIRD AMENDED COMPLAINT

62.     Defendants admit that Mr. Wen continued to work loyally and diligently for Apple between the time he provided notice of his resignation and his last day of work—as Apple requested—and his work required him to access confidential Apple information.  Defendants deny the remaining allegations in paragraph 62 of the TAC.

63.     Defendants deny the allegations in paragraph 63 of the TAC.

64.     Defendants deny the allegations in paragraph 64 of the TAC.

65.     Defendants admit that Mr. Wen's last day of employment at Apple was on or about August 6, 2021.  Defendants further admit that Mr. Wen took steps to segregate his Apple work materials from his personal materials by moving documents from personal folders on his iCloud Drive to a work folder, where Apple encouraged its employees to save Apple documents. Defendants deny the remaining allegations in paragraph 65 of the TAC.

66.     To the extent that Apple quotes from or paraphrases the Opposition to Apple's Motion for TRO and the Declaration of Michael Kunkel, Defendants assert the documents speak for themselves and a response is not required.  Defendants further admit that Mr. Wen and Apple entered into a stipulated order dated June 17, 2022, which also speaks for itself.  Except as expressly admitted, Defendants deny the allegations in paragraph 66 of the TAC.

67.     Defendants admit that Apple and Mr. Wen entered into a stipulated order on June 30, 2022 pursuant to which he surrendered for inspection several devices and accounts.  To the extent that Apple quotes from or paraphrases the stipulated order, Defendants assert the document speaks for itself and a response is not required.

68.     Defendants admit that—unbeknownst to the Individual Defendants—certain Apple documents continued to exist on certain Individual Defendants' devices following their employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the background without any action or knowledge of the user; (iii) Apple's directing individuals to remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect its information or provide meaningful instruction (or any instruction) to individuals upon their

1   departure from Apple.  Mr. Wen did not use or disclose those documents.  Defendants deny the

2   remaining allegations in paragraph 68 of the TAC.

3          69.    Defendants admit that—unbeknownst to the Individual Defendants—certain Apple

4   documents continued to exist on certain Individual Defendants' devices following their

5   employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their

6   personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the

7   background without any action or knowledge of the user; (iii) Apple's directing individuals to

8   remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect

9   its information or provide meaningful instruction (or any instruction) to individuals upon their

10  departure from Apple.  Mr. Wen did not use or disclose those documents.  Defendants deny the

11  remaining allegations in paragraph 69 of the TAC.

12         70.    Defendants admit that—unbeknownst to the Individual Defendants—certain Apple

13  documents continued to exist on certain Individual Defendants' devices following their

14  employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their

15  personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the

16  background without any action or knowledge of the user; (iii) Apple's directing individuals to

17  remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect

18  its information or provide meaningful instruction (or any instruction) to individuals upon their

19  departure from Apple.  Mr. Wen did not use or disclose those documents.  Defendants deny the

20  remaining allegations in paragraph 70 of the TAC.

21         71.    Defendants admit that—unbeknownst to the Individual Defendants—certain Apple

22  documents continued to exist on certain Individual Defendants' devices following their

23  employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their

24  personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the

25  background without any action or knowledge of the user; (iii) Apple's directing individuals to

26  remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect

27  its information or provide meaningful instruction (or any instruction) to individuals upon their

28

1  departure from Apple.  Mr. Wen did not use or disclose those documents.  Defendants deny the

2  remaining allegations in paragraph 71 of the TAC.

3      72.     Defendants admit that, consistent with his obligations under the June 30, 2022

4  protocol, Mr. Wen notified Apple of additional devices and drives in February 2023 upon

5  realizing that they might be relevant, and made those devices and drives available for inspection.

6  Defendants deny the remaining allegations in paragraph 72 of the TAC.

7      73.     Defendants deny the allegations in paragraph 73 of the TAC.

8      74.     Defendants admit that Apple is seeking an adverse inference from the Court.

9  Defendants deny that an adverse inference is warranted.  Defendants deny the remaining

10  allegations in paragraph 74 of the TAC.

11              **2.     Jim Hardage**

12      75.     Defendants admit that Mr. Hardage worked loyally and diligently for Apple from

13  April 2013 to October 2021.  Defendants further admit that, during his tenure at Apple, Mr.

14  Hardage was a CPU architect.  Defendants deny the remaining allegations in paragraph 75 of the

15  TAC.

16      76.     To the extent Apple has quoted from Apple's IPA, Defendants assert the document

17  speaks for itself and a response is not required.  Defendants deny the remaining allegations in

18  paragraph 76 of the TAC.

19      77.     Defendants admit that Mr. Hardage is now employed by Rivos.  Defendants deny

20  the remaining allegations in paragraph 77 of the TAC.

21      78.     Defendants admit that Mr. Hardage resigned from Apple on October 18, 2021.

22  Defendants further admit that Mr. Hardage executed a Checklist for HWT Departing Employees

23  on October 18, 2021, and conducted a cursory so-called exit interview on October 21, 2021.

24  Defendants deny the remaining allegations in paragraph 78 of the TAC.

25      79.     Defendants admit that Mr. Hardage connected two flash drives to his Apple-issued

26  computer for the purpose of removing his personal documents.  Defendants further admit that Mr.

27  Hardage ran public internet searches in the days leading up to his departure from Apple to educate

28

himself as to how to remove his personal iMessages and personal chat history from his Apple-issued laptop.  Defendants deny the remaining allegations in paragraph 79 of the TAC.

80.     Defendants deny the allegations in paragraph 80 of the TAC.

81.     Defendants deny the allegations in paragraph 81 of the TAC.

82.     Defendants admit that, on April 29, 2022, the same day Apple filed a lawsuit suing Rivos and its employees, Apple sent Mr. Hardage and over forty other people, some of whom had only worked at Apple as interns during the summer before they joined Rivos and one of whom did not even work at Rivos, a threatening letter.  Defendants deny that the letter asked for the return of Apple information, rather it stated that Mr. Hardage "may have" documents or information relevant to the lawsuit, without identifying what those documents or information were.  Defendants deny the remaining allegations in paragraph 82 of the TAC.

83.     Defendants deny the allegations in paragraph 83 of the TAC.

84.     Defendants deny the allegations in paragraph 84 of the TAC.

85.     Defendants admit that Mr. Hardage understood, and abided by, his obligation not to use or disclose Apple information.  Defendants deny the remaining allegations in paragraph 85 of the TAC.

86.     Defendants deny the allegations in paragraph 86 of the TAC.

87.     Defendants admit that Mr. Hardage has used various publicly-available Apple code names when generally referencing public concepts or ideas.  Defendants deny that Mr. Hardage has substantively discussed Apple projects in connection with his work at Rivos.  Defendants deny the remaining allegations in paragraph 87 of the TAC.

88.     Defendants deny the allegations in paragraph 88 of the TAC.

### 3.     Weidong Ye

89.     Defendants admit that Mr. Ye began working at Apple in December 2017. Defendants further admit that Mr. Ye worked loyally and diligently as a Systems Power & Performance Engineer.  Defendants deny the remaining allegations in paragraph 89 of the TAC.

90.     To the extent Apple has quoted from Apple's IPA, Defendants assert the document speaks for itself and a response is not required.  Defendants deny the remaining allegations in paragraph 90 of the TAC.

91.     Defendants admit that Mr. Ye now works for Rivos as a Member of Technical Staff.  Defendants deny the remaining allegations in paragraph 91 of the TAC.

92.      Defendants admit that, as was his right under California law, Mr. Ye visited an open house held by Rivos, searched for job opportunities at Rivos, and researched Rivos' leadership, including its CEO.  Defendants deny that these allegations suggest any wrongdoing by Mr. Ye.  In fact, Apple's inclusion of these allegations in its complaint demonstrates that Apple's motive in bringing this lawsuit is to illegally restrict its employees from leaving Apple, and to improperly sue potential or actual competitors who—as is their right—hire employees who used to work for Apple.

93.     Defendants admit that Mr. Ye researched various positions at Rivos.  Defendants deny the remaining allegations in paragraph 93 of the TAC.

94.     Defendants admit that, consistent with California law, Rivos invited Mr. Ye to interview for a position in April 2022.  Defendants further admit that Mr. Ye prepared for that interview using publicly available information on Google and LinkedIn.  Defendants deny that these allegations suggest any wrongdoing by Mr. Ye.  In fact, Apple's inclusion of these allegations in its complaint demonstrates that Apple's motive in bringing this lawsuit is to illegally restrict its employees from leaving Apple, and to improperly sue potential or actual competitors who—as is their right—hire employees who used to work for Apple.

95.     Defendants admit the allegations in paragraph 95 of the TAC.  Defendants deny that these allegations suggest any wrongdoing by Mr. Ye.  In fact, Apple's inclusion of these allegations in its complaint demonstrates that Apple's motive in bringing this lawsuit is to illegally restrict its employees from leaving Apple, and to improperly sue potential or actual competitors who—as is their right—hire employees who used to work for Apple.

96.     Defendants admit that Mr. Ye deleted his personal messages from his Apple-issued laptop prior to departing from Apple.  Defendants deny that these allegations suggest any

1    wrongdoing by Mr. Ye.  In fact, Apple's inclusion of these allegations in its complaint

2    demonstrates that Apple's motive in bringing this lawsuit is to illegally restrict its employees from

3    leaving Apple, and to improperly sue potential or actual competitors who—as is their right—hire

4    employees who used to work for Apple.

5          97.    Defendants admit that Mr. Ye executed the Checklist for Departing Employees on

6    or about June 3, 2022.  Defendants admit that Mr. Ye met with his manager to conduct a cursory

7    so-called exit interview.  Defendants further admit that Mr. Ye conducted internet searches related

8    to deleting personal documents from his Apple-issued laptop and disconnecting his personal

9    iCloud account from his Apple-issued laptop, because Apple had encouraged him to use his

10   personal iCloud account in connection with his work at Apple.  Defendants deny the remaining

11   allegations in paragraph 97 of the TAC.

12         98.    Mr. Ye admits that he saved Apple documents to his iCloud drive in the course of

13   his employment at Apple, as was encouraged by Apple policy.  Defendants deny the remaining

14   allegations in paragraph 98 of the TAC.

15         99.    Defendants admit the allegations in paragraph 99 of the TAC.

16         100.   Defendants admit that, due to Apple's policy of encouraging Apple employees to

17   save Apple work documents in their personal iCloud accounts, Mr. Ye saved Apple information in

18   his personal iCloud account.  Defendants admit that—unbeknownst to the Individual

19   Defendants—certain Apple documents continued to exist on certain Individual Defendants'

20   devices following their employment at Apple as a result of (i) Apple's policy of encouraging

21   Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated

22   operation of syncing files in the background without any action or knowledge of the user; (iii)

23   Apple's directing individuals to remove personal information from their Apple-issued devices; and

24   (iv) Apple's failure to protect its information or provide meaningful instruction (or any

25   instruction) to individuals upon their departure from Apple.  Defendants deny the remaining

26   allegations in paragraph 100 of the TAC.

27         101.   Defendants admit that, as is consistent with standard protocols when editing source

28   code, Mr. Ye's practice was to clone GitHub source repositories prior to editing them.  Defendants

admit that, due to Apple's policy of encouraging Apple employees to save Apple work documents in their personal iCloud accounts, Mr. Ye saved Apple information in his personal iCloud account. Defendants admit that—unbeknownst to the Individual Defendants—certain Apple documents continued to exist on certain Individual Defendants' devices following their employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the background without any action or knowledge of the user; (iii) Apple's directing individuals to remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect its information or provide meaningful instruction (or any instruction) to individuals upon their departure from Apple. Defendants deny the remaining allegations in paragraph 101 of the TAC.

102.    Defendants admit that, due to Apple's policy of encouraging Apple employees to sync their Apple-issued computers to their personal iCloud accounts, Mr. Ye's Apple-issued computer automatically saved Apple information in his personal iCloud account.  Defendants admit that—unbeknownst to the Individual Defendants—certain Apple documents continued to exist on certain Individual Defendants' devices following their employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the background without any action or knowledge of the user; (iii) Apple's directing individuals to remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect its information or provide meaningful instruction (or any instruction) to individuals upon their departure from Apple. Defendants deny the remaining allegations in paragraph 102 of the TAC.

### 4.    Laurent Pinot

103.    Defendants admit that Mr. Pinot worked for Apple from October 2009 until August 2021.  Defendants further admit that Mr. Pinot worked loyally and diligently as an Integrated Circuit (ASIC) Design Engineering Manager.  Defendants deny the remaining allegations in paragraph 103 of the TAC.

104.    To the extent Apple has quoted from Apple's IPA, Defendants assert the document speaks for itself and a response is not required.  Defendants deny the remaining allegations in paragraph 104 of the TAC.

105.    Defendants admit that Mr. Pinot is now employed by Rivos.  Defendants deny the remaining allegations in paragraph 105 of the TAC.

106.    Defendants admit that, consistent with California law, Rivos' co-founder approached Mr. Pinot about a potential career opportunity.  Defendants deny the remaining allegations in paragraph 106 of the TAC.

107.    Defendants admit the allegations in paragraph 107 of the TAC.  Defendants deny that these allegations suggest any wrongdoing by Mr. Pinot or Rivos.  In fact, Apple's inclusion of these allegations in its complaint demonstrates that Apple's motive in bringing this lawsuit is to illegally restrict its employees from leaving Apple, and to improperly sue potential or actual competitors who—as is their right—hire employees who used to work for Apple.

108.    Defendants admit that Mr. Pinot tendered his resignation to Apple on or about August 20, 2021, and that his last day of employment was August 24, 2021.  Defendants further admit that Mr. Pinot executed a Checklist for HWT Departing Employees and participated in a cursory so-called exit interview with Apple, but deny that Mr. Pinot was "walk[ed] through" anything.  Defendants deny the remaining allegations in paragraph 108 of the TAC.

109.    Defendants deny the allegations in paragraph 109 of the TAC.

110.    Defendants deny the allegations in paragraph 110 of the TAC.

111.    Defendants deny the allegations in paragraph 111 of the TAC.

112.    Defendants admit that, consistent with Apple's policy at the time of backing up computers to Apple's Time Machine, Mr. Pinot backed-up his Apple-issued laptop in an automated fashion using Apple's built-in settings.  Defendants deny the remaining allegations in paragraph 112 of the TAC.

113.    Defendants admit that, consistent with Apple's policy at the time of backing up computers to Apple's Time Machine, Mr. Pinot backed-up his Apple-issued laptop in an

1  automated fashion using Apple's built in settings.  Defendants deny the remaining allegations in

2  paragraph 113 of the TAC.

3       114.   Defendants admit that, consistent with Apple's policy at the time of backing up

4  computers to Apple's Time Machine, Mr. Pinot backed-up his Apple-issued laptop in an

5  automated fashion using Apple's built in settings.  Defendants deny the remaining allegations in

6  paragraph 114 of the TAC.

7       115.   Defendants deny the allegations in paragraph 115 of the TAC.

8       116.   Defendants admit that, on April 29, 2022, the same day Apple filed a lawsuit suing

9  Rivos and its employees, Apple sent Mr. Pinot and over forty other people, some of whom had

10  only worked at Apple as interns during the summer before they joined Rivos and one of whom did

11  not even work at Rivos, a threatening letter demanding the return of allegedly retained Apple

12  information, without identifying what those documents or information were.  Defendants deny the

13  remaining allegations in paragraph 116 of the TAC.

14       117.   Defendants deny the allegations in paragraph 117 of the TAC.

15       118.   Defendants deny the allegations in paragraph 118 of the TAC.

16       **5.**       **Prabhu Rajamani**

17       119.   Defendants admit that Mr. Rajamani worked loyally and diligently for Apple from

18  March 2013 to October 2021.  Defendants further admit that, during his tenure at Apple, Mr.

19  Rajamani was a Power Engineer 5, responsible for optimizing power handling for Apple's mobile

20  SoCs.  Defendants deny the remaining allegations in paragraph 119 of the TAC.

21       120.   To the extent Apple has quoted from Apple's IPA, Defendants assert the document

22  speaks for itself and a response is not required.  Defendants deny the remaining allegations in

23  paragraph 120 of the TAC.

24       121.   Defendants admit that Mr. Rajamani is employed by Rivos.  Defendants deny the

25  remaining allegations in paragraph 121 of the TAC.

26       122.   Defendants admit that, on or about October 19, 2021, Mr. Rajamani tendered his

27  resignation to Apple.  Defendants further admit that Mr. Rajamani executed a Checklist for HWT

28

1    Departing Employees, but deny that he was walked through the Checklist or took part in any exit

2    interview.  Defendants deny the remaining allegations in paragraph 122 of the TAC.

3         123.    Defendants deny the allegations in paragraph 123 of the TAC.

4         124.    Defendants admit that—unbeknownst to the Individual Defendants—certain Apple

5    documents continued to exist on certain Individual Defendants' devices following their

6    employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their

7    personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the

8    background without any action or knowledge of the user; (iii) Apple's directing individuals to

9    remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect

10   its information or provide meaningful instruction (or any instruction) to individuals upon their

11   departure from Apple.  Defendants deny the remaining allegations in paragraph 124 of the TAC.

12        125.    Defendants admit that, prior to departing Apple, Mr. Rajamani deleted his internet

13   browsing history, and tried to delete his iMessages from his Apple-issued computer in order to

14   remove his personal data from his Apple-issued laptop.  Defendants deny any suggestion that

15   Apple's confidential or trade secret information was contained within Mr. Rajamani's personal

16   internet browsing history and personal iMessages.  Mr. Rajamani further admits that, consistent

17   with instructions from Apple, he removed Apple work documents from his personal cloud storage,

18   and removed his personal documents from his Apple-issued computer.  Defendants deny the

19   remaining allegations in paragraph 125 of the TAC.

20        126.    Defendants deny the allegations in paragraph 126 of the TAC.

21        127.    Defendants admit that, on April 29, 2022, the same day Apple filed a lawsuit suing

22   Rivos and its employees, Apple sent Mr. Rajamani and over forty other people, some of whom

23   had only worked at Apple as interns during the summer before they joined Rivos and one of whom

24   did not even work at Rivos, a threatening letter.  Defendants deny that the letter asked for the

25   return of Apple information; rather it stated that Mr. Rajamani had deleted certain information

26   from his Apple-issued computer and retained certain files in his iCloud Drive, without identifying

27   what those files were.  Defendants deny the remaining allegations in paragraph 127 of the TAC.

28        128.    Defendants deny the allegations in paragraph 128 of the TAC.

Case No. 5:22-CV-2637-PCP

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO
APPLE'S THIRD AMENDED COMPLAINT

129.   Defendants deny the allegations in paragraph 129 of the TAC.

130.   Defendants deny the allegations in paragraph 130 of the TAC.

131.   Defendants admit that—unbeknownst to the Individual Defendants—certain Apple documents continued to exist on certain Individual Defendants' devices following their employment at Apple as a result of (i) Apple's policy of encouraging Apple employees to use their personal iCloud drives for work purposes; (ii) iCloud's automated operation of syncing files in the background without any action or knowledge of the user; (iii) Apple's directing individuals to remove personal information from their Apple-issued devices; and (iv) Apple's failure to protect its information or provide meaningful instruction (or any instruction) to individuals upon their departure from Apple.  Defendants deny the remaining allegations in paragraph 131 of the TAC.

132.   Defendants deny the allegations in paragraph 132 of the TAC.

133.   Defendants deny the allegations in paragraph 133 of the TAC.

134.   Defendants admit that, prior to the initiation of this lawsuit, Mr. Rajamani unintentionally corrupted a personal USB drive that had contained photos and videos from his wedding.  Mr. Rajamani instructed a third party company to attempt to recover the drive, and incurred significant personal expense in this effort.  The third party company was unable to recover Mr. Rajamani's wedding files on this personal USB drive or render the USB drive usable.  Mr. Rajamani subsequently instructed the third party company to destroy that unusable personal USB drive.  Defendants deny the remaining allegations in paragraph 134 of the TAC.

### 6.   Kai Wang

135.   Defendants deny the allegations in paragraph 135 of the TAC.

136.   Defendants admit that Mr. Wang was employed by Apple from August 2020 until February 2022, and that he worked diligently and loyally for Apple during that period.  Defendants deny the remaining allegations in paragraph 136 of the TAC.

137.   To the extent Apple has quoted from Apple's IPA, Defendants assert the document speaks for itself and a response is not required.  Defendants deny the remaining allegations in paragraph 137 of the TAC.

138.   Defendants admit the allegations in paragraph 138 of the TAC.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO APPLE'S THIRD AMENDED COMPLAINT

139.   Defendants admit that Mr. Wang resigned from his position at Apple on or about February 9, 2022, and executed a Checklist for HWT Departing Employees on or about February 10, 2022.  Defendants deny that Apple conducted any exit interview for Mr. Wang, or walked him through the Checklist document.  Defendants deny the remaining allegations in paragraph 139 of the TAC.

140.   Defendants admit that Mr. Wang took steps to remove his personal data from his Apple-issued laptop in the days leading up to his departure from Apple.  Defendants deny the remaining allegations in paragraph 140 of the TAC.

141.   Defendants admit that, on April 29, 2022, the same day Apple filed a lawsuit suing Rivos and its employees,  Apple sent Mr. Wang and over forty other people, some of whom had only worked at Apple as interns during the summer before they joined Rivos and one of whom did not even work at Rivos, a threatening letter.  Defendants deny that the letter asked for the return of Apple information; rather it stated that Mr. Wang had deleted certain information from his Apple-issued computer and retained certain files in his iCloud Drive, without identifying what those files were.  Defendants deny the remaining allegations in paragraph 141 of the TAC.

142.   Defendants deny the allegations in paragraph 142 of the TAC.

**F.   Other Former Apple Employees Who Are Now at Rivos Took Apple Proprietary Information or Deleted Information from Their Apple Devices**

143.   Defendants deny the allegations in paragraph 143 of the TAC.

144.   Defendants deny the allegations in paragraph 144 of the TAC.

145.   Defendants admit that, in the days leading up to their departures from Apple, consistent with Apple policy, former Apple employees took steps to segregate their personal data from their Apple work data, including to remove their personal data from their Apple-issued laptops.  Defendants deny the remaining allegations in paragraph 145 of the TAC.

146.   Defendants admit that, consistent with Apple policy, in the days leading up to their departure from Apple, former Apple employees disconnected their personal iCloud accounts from their Apple-issued laptops. Defendants deny the remaining allegations in paragraph 146 of the TAC.

1    147.    Defendants deny the allegations in paragraph 147 of the TAC.

2    148.    Defendants deny the allegations in paragraph 148 of the TAC.

3    149.    Defendants deny the allegations in paragraph 149 of the TAC.

4    150.    Defendants deny the allegations in paragraph 150 of the TAC.

5    151.    Defendants deny the allegations in paragraph 151 of the TAC.

6    152.    Defendants deny the allegations in paragraph 152 of the TAC.

7    **G.    Rivos Is Using Apple Trade Secret Information in Its Chip Development**

8    153.    Defendants deny the allegations in paragraph 153 of the TAC.

9    154.    Defendants deny the allegations in paragraph 154 of the TAC.

10    155.    Defendants deny the allegations in paragraph 155 of the TAC.

11    156.    Defendants deny the allegations in paragraph 156 of the TAC.

12    157.    Defendants deny the allegations in paragraph 157 of the TAC.

13    158.    Defendants deny the allegations in paragraph 158 of the TAC.

14    159.    Defendants deny the allegations in paragraph 159 of the TAC.

15    **H.    Rivos Repeatedly Frustrated Apple's Efforts to Recover and Secure Apple's**

16   **Confidential Information and Failed to Adequately Investigate Its Employees'**

17   **Misappropriation**

18    160.    Defendants admit that Apple sent Rivos a letter dated July 9, 2021, which did not

19   require a response.  Defendants further admit that Rivos continued to hire engineers who had

20   previously worked at Apple, as is Rivos' right under California law.  Defendants deny the

21   remaining allegations in paragraph 160 of the TAC.

22    161.    Defendants admit that Apple filed this lawsuit against Rivos and certain of its

23   employees on April 29, 2022.  Defendants further admit that, the same day, Apple sent a

24   threatening letter to over forty people, some of whom had only worked at Apple as interns during

25   the summer before they joined Rivos and one of whom did not even work at Rivos.  Defendants

26   deny that Apple sought to resolve this dispute cooperatively.  Apple instead filed this lawsuit in

27   bad faith and for anticompetitive purposes in order to slow the growth of a promising start-up.

28   Defendants deny the remaining allegations in paragraph 161 of the TAC.

1    162.    Defendants deny the allegations in paragraph 162 of the TAC.

2    163.    Defendants deny the allegations in paragraph 163 of the TAC.

3    164.    Defendants deny the allegations in paragraph 164 of the TAC.

4    165.    Defendants deny the allegations in paragraph 165 of the TAC.

5    166.    Defendants admit that Mr. Wen deleted a .tar file and then immediately replaced it.

6    Defendants deny the remaining allegations in paragraph 166 of the TAC.

7    167.    Defendants deny the allegations in paragraph 167 of the TAC.

8    168.    Defendants deny the allegations in paragraph 168 of the TAC.

9    169.    Defendants deny the allegations in paragraph 169 of the TAC.

10   170.    Defendants deny the allegations in paragraph 170 of the TAC.

11                          **FIRST CLAIM FOR RELIEF**

12              **(Breach of Contract Against Individual Defendants)**

13   171.    Defendants restate and reallege their responses to the prior paragraphs as if fully

14   restated herein.

15   172.    Defendants deny the allegations in paragraph 172 of the TAC.

16   173.    Defendants deny the allegations in paragraph 173 of the TAC.

17   174.    Defendants deny the allegations in paragraph 174 of the TAC.

18   175.    Defendants deny the allegations in paragraph 175 of the TAC.

19   176.    Defendants deny the allegations in paragraph 176 of the TAC.

20   177.    Defendants deny the allegations in paragraph 177 of the TAC.

21   178.    Defendants deny the allegations in paragraph 178 of the TAC.

22                         **SECOND CLAIM FOR RELIEF**

23   **(Misappropriation of Trade Secrets, Defend Trade Secrets Act, 18 USC § 1832(a)(1)**

24   **Against Rivos, Ricky Wen, Jim Hardage, Laurent Pino, and Prabhu Rajamani)**

25   179.    Defendants restate and reallege their responses to the prior paragraphs as if fully

26   restated herein.

27   180.    Defendants deny the allegations in paragraph 180 of the TAC.

28   181.    Defendants deny the allegations in paragraph 181 of the TAC.

1       182.    Defendants deny the allegations in paragraph 182 of the TAC.

2       183.    Defendants deny the allegations in paragraph 183 of the TAC.

3       184.    Defendants deny the allegations in paragraph 184 of the TAC.

4       185.    Defendants deny the allegations in paragraph 185 of the TAC.

5       186.    Defendants deny the allegations in paragraph 186 of the TAC.

6       187.    Defendants admit that Apple sent a letter to Rivos on July 9, 2021.  Defendants

7 deny the remaining allegations in paragraph 187 of the TAC.

8       188.    Defendants deny the allegations in paragraph 188 of the TAC.

9       189.    Defendants deny the allegations in paragraph 189 of the TAC.

10       190.    Defendants deny the allegations in paragraph 190 of the TAC.

11       191.    Defendants deny the allegations in paragraph 191 of the TAC.

12       192.    Defendants deny the allegations in paragraph 192 of the TAC.

13       193.    Defendants deny the allegations in paragraph 193 of the TAC.

14       194.    Defendants admit that Rivos employs each of the Individual Defendants.

15 Defendants deny the remaining allegations in paragraph 194 of the TAC.

16       195.    Defendants deny the allegations in paragraph 195 of the TAC.

17       196.    Defendants deny the allegations in paragraph 196 of the TAC.

18       197.    Defendants deny the allegations in paragraph 197 of the TAC.

19       198.    Defendants deny the allegations in paragraph 198 of the TAC.

20       199.    Defendants assert that paragraph 199 of the TAC recites a legal conclusion that

21 requires no response.  To the extent it does not assert a legal conclusion, Defendants deny the

22 allegations in paragraph 199 of the TAC.

23       200.    Defendants deny the allegations in paragraph 200 of the TAC.

24       201.    Defendants deny the allegations in paragraph 201 of the TAC.

25       202.    Defendants deny the allegations in paragraph 202 of the TAC.

26       203.    Defendants deny the allegations in paragraph 203 of the TAC.

27

28

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO
APPLE'S THIRD AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

Defendants deny that Apple has any valid claim and deny that Apple is entitled to any of the relief requested in its Prayer for Relief.

## **AFFIRMATIVE DEFENSES**

Without conceding that they bear the burden of proof or persuasion as to any of the issues raised in these defenses (whether denominated as affirmative defenses or otherwise), as separate and distinct affirmative defenses to Apple's Complaint, Defendants allege as follows:

### **FIRST AFFIRMATIVE DEFENSE**

#### **(Failure to State a Claim)**

Apple's TAC, in whole or in part, fails to state a claim against Defendants upon which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

#### **(Equitable Defenses)**

Apple's TAC, in whole or in part, is barred by the doctrines of unclean hands, acquiescence, equitable estoppel, unfair competition, and/or other equitable remedies.

### **THIRD AFFIRMATIVE DEFENSE**

#### **(No Injunctive Relief)**

Apple's prayer for injunctive relief is improper as there is no likelihood of future injury to Apple and there exists an adequate remedy at law, if Apple is entitled to any remedy, to address the causes of action set forth in the TAC

### **FOURTH AFFIRMATIVE DEFENSE**

#### **(No Damages)**

Apple's TAC, in whole or in part, is barred because Apple has suffered no injury or damages.

**FIFTH AFFIRMATIVE DEFENSE**

**(Contractual Provision Is Unenforceable)**

Apple's TAC, in whole or in part, is barred because it seeks to enforce purported contract provisions that are against public policy and are therefore void and unenforceable, including under Cal. Bus. & Prof. Code § 16600 et seq. and § 17200 et seq.

**SIXTH AFFIRMATIVE DEFENSE**

**(Bad Faith)**

Apple's TAC, in whole or in part, is barred because it was brought and maintained in bad faith and for anticompetitive purposes.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Inevitable Disclosure)**

Apple's TAC, in whole or in part, is barred because it relies on a theory of inevitable disclosure of trade secrets, which has been soundly rejected by courts in California and is sanctionable. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002) (rejecting the inevitable disclosure theory as inconsistent with Business and Professions Code section 16600 and noting that "the inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets."); *see also Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999) ("California trade-secrets law does not recognize the theory of inevitable disclosure; indeed, such a rule would run counter to the strong public policy in California favoring employee mobility.").

**EIGHTH AFFIRMATIVE DEFENSE**

**(Assumption of the Risk)**

Apple's TAC, in whole or in part, is barred because Apple voluntarily and with knowledge assumed the risk of all damages of which Apple complains.

**NINTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

Apple failed to take reasonable efforts or make reasonable expenditures to mitigate and/or avoid the damages of which Apple complains.

**TENTH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

Defendants have not committed the wrongs alleged in the TAC.  Thus, Apple is barred from recovery, in whole or in part, to the extent that recovery by Apple would constitute unjust enrichment and a windfall to Apple.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(No Proximate Cause)**

Apple's TAC, in whole or in part, is barred because Defendants were not the cause in fact or proximate cause of any injury alleged by Apple.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Good Faith)**

Apple is barred from recovery, in whole or in part, because the actions taken by Defendants, if any, with respect to Apple were based on an honest, reasonable, and good faith belief in the facts as known and understood at the time.

**RESERVATION OF RIGHTS**

Defendants reserve the right to assert additional defenses, including based on additional information learned or obtained during discovery.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for relief as follows:

1.  That the TAC be dismissed with prejudice and that Apple take nothing thereby;

2.  That judgment be entered in favor of Defendants and against Apple;

3.  For an award of attorney's fees and costs, as allowed by law; and

4.  For such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Defendants hereby demand trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Respectfully submitted,

DATED:  September 22, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:     /s/ David Eiseman

DAVID EISEMAN
RYAN LANDES
VICTORIA B. PARKER

Attorneys for Defendants and Counterclaim Plaintiffs Rivos Inc., Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' ANSWER AND AFFIRMATIVE DEFENSES TO APPLE'S THIRD AMENDED COMPLAINT