BRYAN WILSON (CA SBN 138842)
BWilson@mofo.com
KENNETH A. KUWAYTI (CA SBN 145384)
KKuwayti@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
BONNIE LAU CA SBN 246188)
BLau@mofo.com
MEREDITH L. ANGUEIRA (CA SBN 333222)
MAngueira@mofo.com
MARGARET WEBB (CA SBN 319269)
MWebb@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

MARY PRENDERGAST (CA SBN 272737)
MPrendergast@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, District of Columbia 20037
Telephone: 202.887.1500
Facsimile: 202.887.0763

Attorneys for Plaintiff
APPLE INC.

DAVID EISEMAN (CA SBN114758)
davideiseman@quinnemanuel.com
VICTORIA B. PARKER (CA SBN 290862)
vickiparker@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

RYAN LANDES (Bar No. 252642)
ryanlandes@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendants
RIVOS INC., WEN SHIH-CHIEH A/K/A RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI and KAI WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC.,

Plaintiff,

v.

RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,

Defendants.

Case No. 5:22-cv-02637-PCP-NMC

**JOINT DISCOVERY REPORT**

Courtroom: 8
Judge: Hon. P. Casey Pitts

Action Filed: April 29, 2022

**REDACTED PUBLIC VERSION**

RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,

      Counterclaim Plaintiffs,

 v.

APPLE INC., a California corporation,

      Counterclaim Defendant.

**Apple's Statement**

**Apple Issue #1 – Defendants' Document Subpoenas**

Apple moves to quash subpoenas to search the personal devices of five Apple employees.

**Defendants cannot justify searching any Apple employees' personal devices.** Defendants cannot explain why searching these Apple employees' personal devices is proportional to the needs of the case. The subpoena recipients are all ESI custodians. The parties spent months negotiating an ESI protocol (Dkt. 194), ESI custodians, and search terms. Apple searched agreed-upon terms and produced documents, including from work email, Slack, iMessages, and cloud storage locations. Despite this, Defendants request information from the personal devices of five ESI custodians who are each Apple senior directors or vice presidents.

Defendants fail to explain why searching these custodians' personal devices is relevant or necessary at this late stage of discovery. Defendants are fishing for communications reflecting Apple's supposed "true anti-competitive motives," but do not offer any basis for believing any such documents would be found on personal devices as opposed to work devices that have already been searched. Mr. Santhanam, the sole subpoena recipient who has been deposed, testified that he does not use any non-Apple-issued devices for work purposes. (S. Santhanam Dep. Tr. 204:4-6.) Moreover, the Individual Defendants' counterclaims are based on Apple's enforcement of its Intellectual Property Agreements (IPA), and the subpoenaed individuals' personal communications do not bear on Apple's corporate practices. Defendants have already conducted significant discovery and depositions regarding Apple's policies and conduct.

**Defendants' requests are overbroad and not proportional to the needs of the case.** Defendants ask for all documents and communications related to any Apple employees leaving for *any* start-up (RFP 2), or the retention, download, transfer, use, or storage of *any* Apple information by *any* former Apple employee (RFP 3). Compounded by vague and overbroad definitions, Defendants' requests are not tailored to this case, which focuses on the use of Apple IP at Rivos, not all start-ups or the downloading or storage of any Apple information by anyone.

**The subpoenas are untimely.** These Rule 45 subpoenas were served on October 5, less than 30 days before the October 25 fact discovery deadline, and should be quashed. *See Peyton v.*

*Burdick*, 2008 WL 880573, at *1 (E.D. Cal. Mar. 31, 2008) (quashing Rule 45 subpoena with a response deadline of less than 30 days because it "failed to comply with FRCP 34").

**Apple's earlier subpoenas don't justify Defendants' subpoenas.** Rivos argues that Apple's subpoenas for personal devices justify Rivos' requests. But Apple's forensic analysis showed that the subpoenaed Rivos employees likely retained or wiped trade secret information on the personal devices that Apple subpoenaed. At the time, Defendants' counsel refused to provide discovery related to these individuals, who were not ESI custodians. Defendants cannot show why the executives it subpoenas now would have relevant documents on their personal devices.

**Apple Issue #2 – Deficiencies in Rivos' 30(b)(6) Designations and Testimony**

The Court should order Rivos to present witnesses knowledgeable on the following topics, all of which relate to statements by former Apple employees that they would model their work for Rivos on work they did at Apple:

**Apple's 30(b)(6) Topic #51.** This topic begins: **"**The development and design of any and all Rivos circuitry referenced in the following excerpt of RIVOS_0381343…" The topic quotes an internal Rivos chat in which Defendant Hardage stated that he would "really like to model" certain Rivos circuitry after Apple circuitry. The chat refers to circuitry for handling "flush and restart" in response to [redacted] The [redacted] in response to [redacted] [redacted] according to another Rivos employee. (Reddy Tr. at 131:10-18.)

Rivos' 30(b)(6) designee, Aditya Kesiraju, was unprepared to testify on it. When asked—"Did you have an understanding today that you were designated to testify on Rivos's circuitry that's responsible for handling flush and restart in response to interrupts?"—he replied: "No, I was not prepared to do that." (Kesiraju Tr. at 183:2-8.) He said that Mr. Hardage would know better. (*Id.* at 152:15-153:2; *see also id.* at 150:6-12.) He did not ask Mr. Hardage whether Mr. Hardage in fact modeled Rivos circuitry after Apple circuitry. (*Id.* at 166:14-18.)

**Apple's 30(b)(6) Topic #52.** The topic begins: **"**The development and design of any and all Rivos circuitry referenced in the following excerpt of RIVOS_0382087 . . . ." It then quotes an internal Rivos chat in which Defendant Hardage discussed an Apple project he worked on in connection with how to handle "branch history tables" ("BHTs") at Rivos. Rivos' designee,

Mr. Kesiraju, was unprepared to testify on this. When asked, "Did you ask Jim Hardage whether he used his work" on the Apple circuitry "in developing the circuitry that handles BHT," Mr. Kesiraju replied: "Once again, I did not talk to [Mr. Hardage] about his work on" that circuitry. (Kesiraju Tr. at 166:4-12.)

**Apple's 30(b)(6) Topic #44.** This topic states: "The development, design, and evolution of Rivos' SoCs and SoC components, including without limitation: [list of various components]." Rivos has not designated a witness on Rivos' SoC components for handling flush and restart after interrupts (discussed above for Topic #51) or Rivos' SoC components responsible for handling BHTs (discussed above for Topic #52). These Rivos components are relevant because Defendant Hardage expressly used Apple's circuitry as a reference in developing them.

**Apple's 30(b)(6) Topics #55 and 56.** These topics cover "Rivos' 'DV coding guidelines' as referred to by I-Shuan Tsung in her deposition on July 19, 2023" (Topic #56) and "Rivos' use of Verilog source code paths . . . including . . . how information or documents obtained or lessons learned from Apple were used" (Topic #55). Ms. Tsung had previously testified that she performed a code "cleanup" project at Apple and used "lessons" learned from that project in the development of Rivos' DV coding guidelines. (Tsung Tr. at 96:2-97:15 109:13-20; 111:2-13; 113:2-8.) Rivos' designee, Mr. Kesiraju, was unprepared to testify on these topics. He did not discuss with Ms. Tsung her deposition testimony, lessons from her Apple cleanup project, or her use of Apple information in developing the guidelines. (Kesiraju Tr. at 178:23-180:10.)

The Court should reject Rivos' argument that the foregoing topics were vague. They refer to specific portions of specific documents. Rivos had the opportunity to ask Mr. Hardage and Ms. Tsung exactly what they meant by their chats and testimony, but chose not to.

**<u>Defendants' Issue #1 – Apple's Highly Confidential LSU Specifications</u>**

The parties have not met and conferred on this issue. Instead, on Thursday, November 2, Rivos' counsel reviewed Apple's source code computer for the first time since October 3. Then, at 9:44 p.m. on Friday, November 3, hours after the final in-person meet and confer, Rivos informed Apple that it would raise complaints about Apple's production of specifications in this Report due on Monday, November 6 at noon.

Apple *has* produced the specifications that Rivos demands. On October 12, Apple produced to Rivos specifications for the load-store unit, or LSU, under the heightened protections of the source code addendum to the protective order. (APL-RIVOS-EC_00000678 (the LSU specification for the [REDACTED] p-core used in the [REDACTED] and [REDACTED] SoCs).) Rivos does not acknowledge this or explain why it is demanding that Apple produce them again.

Rivos fails to provide a factually accurate need for Apple to produce LSU specifications for all of its SoCs. Apple's LSU specifications [REDACTED] or other trade secrets at issue in this case. Instead, they direct the reader to [REDACTED] (which Apple has also produced to Rivos, *see, e.g.*, APL-RIVOS-EC_00000650, APL-RIVOS-EC_00000992, APL-RIVOS-EC_00001027).

Apple has already complied with the Court's August 14 order. Rivos cannot justify its untimely request for additional highly sensitive specifications that are irrelevant to this litigation. Its request should be denied.

**Defendants' Issue #2 – Dr. Al-Otoom's 30(b)(6) Testimony**

Unlike Mr. Kesiraju, Dr. Al-Otoom was fully prepared on Rivos' 30(b)(6) topics. While Mr. Kesiraju's testimony established that Mr. Hardage and Ms. Tsung knew important facts that Mr. Kesiraju did not know, Rivos can point to no such testimony from Dr. Al-Otoom.

Dr. Al-Otoom testified that his Ph.D. work focused on branch prediction and that he is Apple's most knowledgeable person about its branch predictors. (Al-Otoom Tr. at 16:5-17:9, 183:8-13.) He has worked at Apple since 2012 except for a one-year stint at Intel. (*Id.* at 30:1-3, 184:8-11.) He provided hours of testimony about Apple's branch predictors.

Throughout the deposition, Rivos' attorney asked Dr. Al-Otoom vague questions without providing documents for context. The one "example" Rivos provided of Dr. Al-Otoom's supposed unpreparedness—which should be treated as the *only* basis for Rivos's motion—falls squarely into this category. Had Dr. Al-Otoom been presented with the relevant specification and asked questions about features or details of the branch predictors in the [REDACTED] p-core, he would have been well-prepared to answer. But the deposing attorney instead asked vague questions that were too broad in scope for him to respond, such as: "[W]hat is the direct branch predictor circuit

and method in [REDACTED] p-Core?" (*Id.* at 164:21-23.) Dr. Al-Otoom responded to this question by requesting greater specificity, rather than disclaiming knowledge, and even invited questions about particular aspects of the branch predictor used in the [REDACTED] p-core: "Can you be more specific? . . . I mean, like what's the predictor algorithm? What is the configuration?" (*Id.* at 5:2-5.) But Defendants' counsel refused to clarify the question or provide more detail. Had they done so, Dr. Al-Otoom could have provided the information. Indeed, when asked about a slide deck titled [REDACTED] which described aspects of the branch predictor circuit and method for the [REDACTED] p-core (codenamed [REDACTED]), Dr. Al-Otoom testified competently and in detail. (*Id.* at 64:3-70:23.) Had Rivos asked the right questions and set the proper context, Dr. Al-Otoom would have provided the information it now demands. In fact, Apple offered to print specifications to assist Rivos at the deposition. Rivos declined this offer.

Rivos is also incorrect that Apple "*redefined* its 'circuit and method' trade secrets to include a reference to a particular specification" or that these trade secrets are "brand new." Before Dr. Al-Otoom's deposition, Apple explained to Rivos that its trade secret related to the circuit for [REDACTED] p-core was at the level disclosed in the specification. The Court then ordered Apple to formalize this "clarification . . . in writing," which is exactly what Apple did. (Dkt. 287 at 38:5-7.) Apple did not redefine its "circuit and method" trade secrets, and there is no reason that Dr. Al-Otoom must return to testify on "brand new" ones.

Rivos falsely accuses Apple of engineering a "gotcha" guessing game. Apple has never obfuscated the fact that the [REDACTED] and [REDACTED] SoCs [REDACTED] [REDACTED]. The [REDACTED] specification, which describes the SoC's cores, clearly explains that the [REDACTED] is described in the same specification as the [REDACTED]. (APL-RIVOS-EC_00001080 at -1113.) Both specifications were available to Rivos as of August 30, well ahead of Dr. Al-Otoom's October 5 deposition. But Rivos waited until October 2, three days before the deposition, to inspect the specifications for the first time, and for only five hours. Rivos' shortcomings are not a basis for another deposition.

**DEFENDANTS' STATEMENT**

**Apple Failed to Comply with the Court's Order to Produce Technical Documents.** On August 14, 2023, the Court ordered Apple to produce technical documents responsive to Rivos' Request for Production Nos. 113, 114, 116 (as modified), 120, and 121. Dkt. 237. Apple only made documents available on a source code computer in Morrison & Foerster's office. On October 2, Defendants alerted Apple to missing documents, specifically, several specifications referenced in the ████ user specification, including the p-Core CPU LSU microarchitecture document. Defendants explained that the ████ user specification references ████████████ ████, including for the LSU, and Defendants further explained that they needed access to these documents to understand Apple's claimed trade secrets and their development. An Apple witness confirmed that the "method" and the "high level design" of the ████ "circuit" (Apple's claimed trade secrets) would be in the LSU specification, and that ████████████ ████████████. *See* Spadini Tr. at 36:8-18. Apple has not produced these documents, and has repeatedly ignored Defendants' follow-up. Moreover, Apple inaccurately represented to the Court that it had produced all specifications, and that those specifications "absolutely show the design and the implementation of Apple's SOC's and the development of the SOC's." Oct. 11 Tr. at 28:6-19. Apple should be ordered to comply with the August 14 Order and produce all relevant specifications, including the LSU microarchitecture specifications.

**Apple Failed to Adequately Prepare Its 30(b)(6) Witness**. Against the backdrop of Apple withholding the Court-ordered technical documents, Defendants have been forced to depose Apple's 30(b)(6) witnesses about Apple's nebulous and ever-shifting purported trade secrets. Defendants deposed Muawya Al-Otoom, who was designated on topics related to Apple's development of its claimed branch predictor-related trade secrets. Al-Otoom was unprepared to answer basic questions regarding those claimed trade secrets. For example, one of Apple's claimed trade secrets is the branch predictor "circuit and method" for Apple's ██ p-Core. When asked to describe that trade secret, Al-Otoom could not. Al-Otoom Tr. 164:21-165:16 ("Q. If I ask you to tell me what is the direct branch predictor circuit and method in ██ p-Core, what would your answer be? A. It will be – I mean, what is the method? … Q. [D]oes the term circuit mean anything

to you in terms of implementing branch predictor? The Witness: I don't know what that means actually."). Two weeks later, and following the October 11, 2023 hearing, Apple redefined its "circuit and method" trade secrets to include a reference to a particular specification. Defendants are entitled to question a corporate witness on Apple's brand new trade secrets, but Apple has refused to offer a witness. Apple claims Defendants should have known about the added specification prior to Al-Otoom's deposition, but Apple's deficient production made it impossible. The [REDACTED] specification that Apple points to was produced under the name of a ***different*** SoC codename, [REDACTED]. That information was never conveyed to Defendants. Apple should not be permitted to make the substance of its claims a "gotcha" guessing game. Defendants therefore respectfully request that the Court order Apple to produce an adequately-prepared corporate witness to testify regarding these alleged trade secrets.

**Defendants' Subpoenas Are Proper, Seek Relevant Information, And Should Be Enforced.** Defendants have asserted affirmative defenses of unclean hands, equitable estoppel, unfair competition, and bad faith. Defendants have also asserted a counterclaim for unfair competition in violation of California Business and Professions Code § 17200. The requested documents are highly relevant to those affirmative defenses and counterclaim.

The subpoenas at issue are directed towards Apple employees Johny Srouji, Dan Murray, Sri Santhanam, Dave Williamson, and J-D Allegrucci. These individuals studiously orchestrated the Apple's retaliation effort against Rivos—tracked departures from Apple to Rivos, deciding that something must be done to "stem the tide" of Apple's losses to Rivos, and then undertaking a sweeping intimidation campaign against Apple employees considering employment at Rivos. APL-RIVOS_00219872 (Oct. 29, 2021 email from Santhanam to Srouji). These individuals also openly joked about their vendetta—not to prevent the misappropriation of any alleged trade secrets, but to unlawfully prevent employee mobility. On December 22, 2021, five months before this lawsuit was filed, Williamson wrote: "A start up called Rivos was founded / But their efforts to steal talent was bounded / Through strong leadership / And the great products we ship / ***This start up called Rivos was grounded.***" APL-RIVOS_00010044. Allegrucci similarly penned "Until came Rivos, / Bye bye adios" APL-RIVOS_00218900. Even months after the lawsuit was filed,

these individuals continued to discuss their anticompetitive goals, expressing "[s]urprise[] they [i.e. Rivos] aren't slowing down. I guess the money is still flowing." APL-RIVOS_00219313. Williamson even explicitly acknowledged that Apple "is suing them to try and shut it down" and that he "won't be sad to see Rivos go down." APL-RIVOS_00127965.

Apple argues it has already searched for custodial documents within ***Apple's*** possession, custody, or control, but that is not what these subpoenas seek. Rather, the subpoenas are directed to documents within the individuals' ***personal*** possession, custody, or control—the messages they sent each other on personal channels rather than company channels. Discovery has shown that Apple employees—including these subpoena recipients—regularly mix business and personal means of communication and document storage. *See e.g.* APL-RIVOS_00010462 (calendar invite for Apple business meeting sent to Santhanam's personal email address).

Apple's claim of burden is self-contradictory. If there are no responsive documents in these individuals' personal possession, Apple could say that, and there is no burden. Apple also argues the subpoenas are intended to harass the individuals. That is not true. Given the ire each individual has expressed toward Rivos, it is likely that communications exhibiting these individuals' true anticompetitive motives exist outside of Apple's official corporate communication channels. And Apple's claim that Srouji, in his role as an Apple Senior Vice President, is an "apex employee" has been expressly rejected by courts in this district. *See In re Apple Iphone Antitrust Litig.*, No. 11CV06714YGRTSH, 2021 WL 485709, at *5 (N.D. Cal. Jan. 26, 2021) (overruling Apple's apex objection over the deposition of Senior Vice President of Services, and Senior Vice President of software engineering).

The subpoenas are also proportional to the needs of the case. Indeed, Apple itself has served subpoenas on Rivos employees demanding that those employees scour and surrender countless personal devices, even when Apple has ***no*** basis to believe that they have anything relevant—except the bare fact that they used to work at Apple. Nor are the subpoenas an attempt to "circumvent" the ESI order. Rather, they are directed to documents and communications in these individuals' ***personal*** possession, custody, or control, and thus cannot be obtained through the ESI searches being applied to materials in ***Apple's*** possession, custody, or control. They are timely. Each was

served on October 5, 2023, 20 days before the close of document and written discovery. Apple's own subpoenas have demanded production of documents in far less time.

Defendants respectfully request that the Court deny Apple's motion to quash the subpoenas.

**Rivos' 30(b)(6) Witness Was Adequately Prepared.** Apple's topics sought testimony regarding ***Rivos'*** development of ***Rivos'*** circuitry and components. Rivos' designated corporate witness, Aditya Kesiraju, testified on those topics and was adequately prepared to do so. Unhappy with his testimony, Apple is now trying to reframe the topics.

Topic 51 asks about how Rivos' CPU handles flush and restart in two scenarios: (1) when encountering a branch misprediction, and (2) when initiated by a unit called "[REDACTED]" Kesiraju testified on both issues. He explained at length how Rivos' CPU handles flush and restart in the event of a branch misprediction (Kesiraju Tr. 140:2-141:7). He also testified that Rivos' CPU does not have an [REDACTED] unit (*id.* at 141:9-11), and [REDACTED] means nothing to him in the context of Rivos. *Id.* Apple's issue involves a third scenario, which is how Rivos' CPU handles flush and restart [REDACTED]—but Topic 51 does not address this subject. Contrary to Apple's claim, Kesiraju spoke with Hardage during his preparation (*id.* at 145:19-146:8) and testified about what Hardage meant when making certain statements in the document cited in the topic. *Id.* at 150:6-12. Apple's real gripe seems to be that Kesiraju did not ask Hardage how ***Apple's*** circuitry works. *Id.* at 156:5-13 ("I asked [Hardage] why he referenced [REDACTED] and he told me it was to set context. I did not ask him about his work on [REDACTED]"). But what Apple does is ***not*** part of Rivos' circuitry (as the existing testimony confirms), and Apple should not be permitted to require Rivos employees to talk about Apple's circuitry when Apple claims that constitutes misappropriation.

Similarly for Topic 52, Kesiraju fully testified how Rivos' CPU handles branch history tables, which is what the topic seeks. *Id.* at 165:1-17. Apple mischaracterizes Kesiraju's testimony. Kesiraju did specifically ask Hardage about certain statements Hardage made in the document cited in the topic, and testified as much. *Id.* at 162:20-164:25. What Kesiraju did not ask Hardage was how ***Apple*** handles its branch history table, which, again, is not incorporated into Rivos' CPU, is not within Topic 52, and is not a subject Kesiraju can ask Hardage about given Apple's claims. *Id.* at 166:4-12.

Apple's Topic 44, as it relates to flush and restart and the branch history table, is fully duplicative of Topics 51 and 52, respectively. Kesiraju was adequately prepared on this topic too and provided complete testimony.

Apple also distorts its Topics 55 and 56 in seeking further testimony. Those topics read:

> **Topic 55**: Rivos' use of [REDACTED], including the decisions to implement [REDACTED], the level of granularity decided upon, when the decisions were made, who made the decisions, any documentation of the decisions, and how information or documents obtained or lessons learned from Apple were used in the decisions.
>
> **Topic 56**: Rivos' "DV coding guidelines" as referred to by I-Shuan Tsung in her deposition on July 19, 2023. (See July 19, 2013, Depo Transcript at 98:13-17).

Nowhere does Topic 55 reference I-Shuan Tsung or what purported "lessons" she learned from Apple. Topic 55 only asks about Rivos' use of [REDACTED], and Kesiraju fully answered every question on that topic. Topic 56 asks about Rivos' "DV coding guidelines" that Tsung referred to in her deposition. Those guidelines are wholly unrelated to any "lessons" Tsung may have learned at Apple, and Kesiraju fully testified about Rivos' DV coding guidelines. *Id.* at 176:8-10, 177:15-178:1; 178:16-22. Apple's complaint that Kesiraju did not discuss Tsung's deposition testimony with her makes no sense for two reasons: (1) neither Topic 55 nor Topic 56 calls for a discussion of any of Tsung's specific testimony; and (2) Apple designated Tsung's testimony as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, meaning Kesiraju could not discuss the testimony with Tsung without violating the protective order. Further, Apple had a full opportunity to question Tsung regarding the "lessons" she learned at Apple. *See* Tsung Tr. 96:2-98:1; 109:13-112:24. But she made clear that Rivos' coding guidelines and cleanup efforts were "based on Rivos design, based on what the physical design team proposed for Rivos CPU" (*id.* at 110:23-25).

Kesiraju responded fully to Apple's questions on the topics at issue. Apple's identified "deficiencies" are an after-the-fact creation to expand the scope of its 30(b)(6) notice and "redo" testimony that it does not like. Defendants respectfully request that the Court deny Apple's motion to compel further 30(b)(6) testimony.

Dated: November 6, 2023

Respectfully submitted,

MORRISON & FOERSTER LLP

*/s/ Bryan Wilson*
Bryan Wilson
*Attorneys for Plaintiff Apple Inc.*

QUINN EMMANUEL URQUHART & SULLIVAN, LLP

*/s/ David Eiseman*
David Eiseman
*Attorneys for Defendants Rivos Inc., et al.*

**ATTESTATION OF CONCURRENCE**

I, Bryan Wilson, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from David Eiseman.

Dated: November 6, 2023

*/s/ Bryan Wilson*
Bryan Wilson