1  BRYAN WILSON (CA SBN 138842)
   BWilson@mofo.com
2  KENNETH A. KUWAYTI (CA SBN 145384)
   KKuwayti@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Tel: 650.813.5600 | Fax: 650.494.0792
5
6  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
   BONNIE LAU (CA SBN 246188)
7  BLau@mofo.com
   MARGARET A. WEBB (CA SBN 319269)
8  MWebb@mofo.com
   MEREDITH L. ANGUEIRA (CA SBN 333222)
9  MAngueira@mofo.com
   MORRISON & FOERSTER LLP
10 425 Market Street,
   San Francisco, California 94105-2482
11 Tel: 415.268.7000 | Fax: 415.268.7522

12 Attorneys for Plaintiff and Counterclaim Defendant
   APPLE INC.

13

MARY PRENDERGAST (CA SBN 272737)
MPrendergast@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, District of Columbia 20037
Tel: 202.887.1500 | Fax: 202.887.0763

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RIVOS INC., a Delaware corporation; WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,<br><br>Defendants. | Case No. 5:22-cv-2637-PCP<br><br>**APPLE'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS**<br><br>Date: January 11, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. P. Casey Pitts<br>Trial Date: Not Set<br>Date Action Filed: April 29, 2022 |
| RIVOS INC., a Delaware corporation; WEN SHIH-CHIEH a/k/a RICKY WEN; JIM HARDAGE; WEIDONG YE; LAURENT PINOT; PRABHU RAJAMANI; and KAI WANG,<br><br>Counterclaim Plaintiffs, | |

v.

APPLE INC., a California corporation,

Counterclaim Defendant.

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on January 11, 2024 at 10:00 a.m., or as soon thereafter as

4
the matter may be heard, before the Honorable P. Casey Pitts, District Judge of the United States

5
District Court for the Northern District of California, San Jose Division, located at 280 South 1st

6
Street, San Jose, California, Plaintiff and Counterclaim Defendant Apple Inc. ("Apple") will, and

7
hereby does, move the Court for an order under Federal Rule of Civil Procedure 12 dismissing, in

8
whole or in part, the Amended Counterclaims by Defendants and Counterclaim Plaintiffs Rivos

9
Inc. ("Rivos"), Wen Shih-Chieh a/k/a Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot,

10
Prabhu Rajamani, and Kai Wang (the "Individual Defendants" and, collectively with Rivos,

11
"Defendants").

12

This motion is made and based upon this Notice of Motion, Motion to Dismiss

13
Counterclaims, Memorandum of Points and Authorities, the complete files and record in this

14
action, oral argument of counsel, and such other and further matters as the Court may consider.

15
Dated:  November 17, 2023                    MORRISON & FOERSTER LLP

16

17
By   */s/ Bonnie Lau*
Bonnie Lau

18
Attorney for Plaintiff and Counterclaim
Defendant APPLE INC.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  Background .................................................................................................................. 2

III.  Legal Standard ............................................................................................................ 4

IV.  Argument .................................................................................................................... 5

    A.  The Individual Defendants Fail to State a Claim for Declaratory Relief................. 5

        1.  The NDA Is Enforceable as a Matter of Law. ............................................ 5

        2.  The Individual Defendants Fail to Establish the Non-Solicit Violates California Law. ................................................................................ 9

        3.  There Is No Justiciable Controversy Regarding the Legality or Enforceability of the Non-Solicit. ............................................................. 11

    B.  Defendants Fail to State a Claim Under California's Unfair Competition Law.... 13

        1.  Defendants Fail to Plead Any Unlawful or Unfair Business Practices by Apple. .................................................................................... 13

        2.  Defendants' Request for Money Damages Fails as a Matter of Law. ....... 15

        3.  Defendants' Request for Injunctive Relief Fails as a Matter of Law......... 17

V.  Conclusion ................................................................................................................ 18

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Agency Solutions.com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011)..................................................... 7

4
*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,

5
  28 Cal. App. 5th 923 (Cal. Ct. App. 2018) .......................................... 9, 10

6
*Aramark Mgmt., LLC v. Borgquist*,
  2021 WL 3932258 (C.D. Cal. July 8, 2021) ............................................ 10

7
*Ashcroft v. Iqbal*,

8
  556 U.S. 662 (2009) ........................................................... 4, 6, 12, 13

9
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 4, 15

10
*Bill Johnson's Rests., Inc. v. N.L.R.B.*,

11
  461 U.S. 731 (1983) ...................................................................... 18

12
*Cal. ex rel. Lockyer v. U.S. Forest Serv.*,
  2006 WL 2038491 (N.D. Cal. July 20, 2006) .......................................... 17

13
*Carrillo v. Wells Fargo Bank, N.A.*,

14
  2023 WL 5423015 (C.D. Cal. May 18, 2023) ........................................... 16

15
*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (Cal. 1999) ..................................................... 14, 15, 16

16
*City of Lincoln v. Cnty. of Placer*,

17
  2023 WL 2776091 (E.D. Cal. Apr. 4, 2023) ............................................. 5

18
*Creative Mobile Techs., LLC v. Flywheel Software, Inc.*,
  2016 WL 7102721 (N.D. Cal. Dec. 6, 2016) ............................................ 14

19
*Eastman v. Quest Diagnostics Inc.*,

20
  108 F. Supp. 3d 827 (N.D. Cal. 2015) .................................................. 13

21
*Edge Sys. LLC v. Ageless Serums LLC*,
  2021 WL 3812875 (C.D. Cal. May 11, 2021) ............................................. 3

22
*Edwards v. Arthur Andersen LLP*,

23
  44 Cal. 4th 937 (Cal. 2008)............................................................. 9

24
*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) .................................................. 15

25
*Epic Games, Inc. v. Apple, Inc.*,

26
  67 F.4th 946 (9th Cir. 2023) ....................................................... 13, 14

27
*Fleming Sales Co., Inc. v. Bailey*,
  611 F. Supp. 507 (N.D. Ill. 1985) ...................................................... 7

28

*Gartner, Inc. v. Parikh*,
  2008 WL 11336333 (C.D. Cal. Oct. 10, 2008). ................................................................ 9

*Genasys Inc. v. Vector Acoustics, LLC*,
  2023 WL 4414222 (S.D. Cal. July 7, 2023) ..................................................................... 8

*Gizmo Beverages, Inc. v. Park*,
  2017 WL 6941362 (C.D. Cal. Sept. 18, 2017) ................................................................ 18

*Golden v. Cal. Emergency Physicians Med. Grp.*,
  896 F.3d 1018 (9th Cir. 2018) ........................................................................................ 7

*Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Action Immigr. Bonds & Ins. Servs., Inc.*,
  2014 WL 12600146 (C.D. Cal. Mar. 24, 2014) .............................................................. 16

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (Cal. Ct. App. 2008) .................................................................. 18

*Hamilton v. Juul Labs, Inc.*,
  2020 WL 5500377 (N.D. Cal. Sept. 11, 2020) .............................................................. 10

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................................ 16

*Koller v. Harris*,
  312 F. Supp. 3d 814 (N.D. Cal. 2018) .......................................................................... 17

*Kordich v. Salton, Inc.*,
  2005 WL 8173161 (S.D. Cal. July 5, 2005) ............................................................. 11, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (Cal. 2003) .................................................................................. 15, 16

*Lafferty v. Wells Fargo Bank*,
  213 Cal. App. 4th 545 (Cal. Ct. App. 2013) ................................................................ 18

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) .......................................................................................... 5

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ...................................................................................... 14

*Loral Corp. v. Moyes*,
  174 Cal. App. 3d 268 (Cal. Ct. App. 1985). .............................................................. 9, 10

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
  2009 WL 10670877 (C.D. Cal. Aug. 18, 2009) ............................................................ 16

*Ozeran v. Jacobs*,
  798 F. App'x 120 (9th Cir. 2020) .................................................................................. 15

*Reilly v. Apple Inc.*,
  2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) .......................................................... 14, 15

*Ret. Grp. v. Galante*,
   176 Cal. App. 4th 1226 (Cal. Ct. App. 2009) ............................................................... 7

*Robert Half Int'l, Inc. v. Ainsworth*,
   2015 WL 1197882 (S.D. Cal. Mar. 16, 2015) ............................................................. 13

*Sacco v. Mouseflow, Inc.*,
   2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ............................................................ 14

*Sanabria v. Small Bus. Lending, LLC*,
   2023 WL 4533914 (C.D. Cal. July 13, 2023) ............................................................. 16

*Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*,
   1999 WL 760527 (N.D. Cal. Sept. 21, 1999) ............................................................. 16

*Snapkeys, Ltd. v. Google LLC*,
   2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ............................................................. 14

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2021 WL 5785264 (C.D. Cal. Sept. 3, 2021) ......................................................... 5, 6, 8

*Synopsys, Inc. v. AtopTech, Inc.*,
   2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ............................................................. 15

*Twentieth Century Fox Film Corp. v. Netflix, Inc.*,
   2019 WL 8013589 (Cal. Super. Ct. Dec. 10, 2019) ................................................... 10

*United States v. Sequel Contractors, Inc.*,
   402 F. Supp. 2d 1142 (C.D. Cal. 2005) .................................................................... 16

*VibrantCare Rehab., Inc. v. Deol*,
   2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) .............................................................. 6

*W. Air Charter, Inc. v. Schembari*,
   2018 WL 10157139 (C.D. Cal. Nov. 21, 2018) .......................................................... 10

*Wagging Tails Prods., Inc. v. Coakley*,
   2023 WL 4316777 (C.D. Cal. Feb. 21, 2023) ........................................................... 6, 7

*Wood v. NewBridge Res. Grp., LLC*,
   2021 WL 4803494 (C.D. Cal. Mar. 11, 2021) ....................................................... 11, 13

**Statutes**

Cal. Bus. & Prof. Code § 16600 ................................................................................ passim

Cal. Bus. & Prof. Code § 17200 ................................................................................ passim

Cal. Bus. & Prof. Code § 17204 .................................................................................... 18

Cal. Lab. Code § 232.5 ................................................................................................ 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4

Fed. R. Civ. P. 7(a)(2) ................................................................................................................ 5

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Rather than answer for their rampant misappropriation of Apple's trade secrets, Defendants attempt to distract by lobbing meritless counterclaims at Apple.  Defendants' misappropriation has been open and widespread.  Employees who left Apple to join Rivos repeatedly discussed the details of highly sensitive systems-on-chip ("SoCs") projects they worked on at Apple and suggested Rivos design its chip the same way.  Indeed, each belated document production from Rivos reveals evidence of Rivos' employees referring to and relying upon Apple's trade secrets in their work at Rivos.  The Individual Defendants admittedly retained thousands of Apple trade secret and confidential documents, including specifications, test results, and product roadmaps that together give Rivos a full blueprint to create its own chip.  And now, technical evidence demonstrates that Rivos has in fact incorporated key trade-secret aspects of Apple's SoCs into its chip.  Against this backdrop, Defendants' counterclaims are a transparent and baseless attempt to shift the focus away from their own misconduct.

When confronted with Apple's Motion to Dismiss, Defendants filed Amended Counterclaims, but the amendments fail to cure the many deficiencies Apple already identified. Defendants' new allegations try to cast doubt on Apple's valid enforcement of its Intellectual Property Agreement ("IPA") by asserting that Apple's lawsuit was motivated by the loss of talented engineers to Rivos, not the theft of Apple's trade secrets.  In Defendants' counterfactual narrative, Apple purportedly concocted a "scheme" to use the IPA to somehow discourage its employees from leaving for Rivos.  But that theory is dead on arrival.  Not only is the IPA enforceable under California law, but Defendants' new allegations still also fail to plausibly allege that the IPA impacted the Individual Defendants or prevented any employees from moving to Rivos.  Indeed, Defendants still do not allege that Apple even enforced the IPA's employee non-solicitation provision ("Non-Solicit").  Nor do they identify one specific instance in which any Rivos employee refrained from soliciting a former colleague.  To the contrary, Defendants concede that more than 50 former Apple employees—including all the Individual Defendants— left Apple for Rivos specifically.  All of Defendants' claims, therefore, fail as a matter of law.

The Individual Defendants' first claim for declaratory relief should be dismissed for several reasons.  First, Defendants challenge the IPA's alleged prohibition against the retention and disclosure of Apple's confidential information ("NDA"), but the NDA is enforceable under California law because it is narrowly tailored to protect Apple's confidential, proprietary, and secret information.  Second, Defendants fail to meet their burden to show that the Non-Solicit is unenforceable under California law because that provision does not limit the Individual Defendants' ability to engage in their chosen profession—engineering.  Third, there is no justiciable controversy over the enforceability of the Non-Solicit because the Individual Defendants do not allege that the Non-Solicit impacted them in any way.

Defendants' second claim under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") fails for several reasons as well.  First, Defendants do not plausibly allege any unlawful or unfair conduct sufficient to state a UCL claim against Apple.  Defendants' claim under the UCL's "unlawful" prong is derivative of its declaratory relief claim, and thus fails for the same reasons.  And Defendants still do not plausibly allege that Apple's conduct impacted competition, which dooms their claim under the UCL's "unfair" prong.  Second, Defendants' alleged monetary damages are non-restitutive, because Defendants do not seek the return of money that Apple gained from its alleged conduct, and are therefore unrecoverable under the UCL.  Third, Defendants' claim for injunctive relief prohibiting Apple from seeking to enforce the IPA against Rivos and its employees is not ripe because Defendants do not allege that Apple enforced the Non-Solicit or plausibly allege that Apple's enforcement of the NDA was improper.  Defendants also lack standing to seek an injunction on behalf of the public.

For all these reasons, Defendants' Amended Counterclaims should be dismissed with prejudice.

## II.     BACKGROUND

Rivos was founded in May 2021 by two former Apple employees and one former Intel employee to develop SoCs.  Dkt. 320 ("Countercl.") ¶¶ 19-20.  Since its inception, Rivos has hired over 50 former Apple employees—including the six Individual Defendants, all of whom worked on developing Apple's SoCs during their time at Apple.  *Id.* ¶¶ 9, 45.

The Individual Defendants signed the IPA when they started working at Apple. *Id.* ¶ 24. The IPA contains both the NDA and the Non-Solicit, among other provisions. *Id.* ¶¶ 25, 28, 34. The IPA is designed to "protect Apple's intellectual property rights and business and technical secrets and safeguard both [Apple's and its employees'] interests." *See* Declaration of Bonnie Lau ("Lau Decl."), Ex. A, at 1;[1] Dkt. 256, Exs. A-F.

On April 29, 2022, Apple filed a lawsuit against Rivos and certain former Apple employees to stop them from exploiting Apple's valuable trade secrets to compete with Apple unlawfully and unfairly. Dkt. 1. In addition to trade secret misappropriation, Apple accused the Individual Defendants of violating the IPA when they took thousands of Apple confidential documents with them when leaving Apple. Dkt. 1 ¶¶ 45, 57, 68. To date, Rivos has produced back to Apple thousands of Apple confidential documents, including highly sensitive SoC specifications, test results, RTL code, and product roadmaps, retained by the Individual Defendants. *See id.* ¶ 202; Dkt. 164 at 10, 15, 34.

Defendants challenged several rounds of pleadings, but ultimately, the Court denied Defendants' motion to dismiss the Second Amended Complaint in part, holding that Apple plausibly alleged claims for breach of contract and violation of the Defend Trade Secret Act against certain Defendants. Dkt. 229. On August 29, 2023, Apple filed its Third Amended Complaint ("Complaint") to include further evidence of trade secret misappropriation produced in discovery. Dkt. 256. On September 22, 2023, Defendants filed an Answer to the Complaint and the Counterclaims. Dkt. 276; Dkt. 277. On October 20, 2023, Apple filed a Motion to Dismiss Defendants' Counterclaims. Dkt. 296 ("Mot." or "Motion"). On November 3, 2023, the deadline to oppose Apple's Motion, Defendants filed the instant Amended Counterclaims. Dkt. 320.

The Amended Counterclaims allege that Apple tried to "thwart [Rivos'] growth and [] prevent any Apple employees from leaving to pursue promising opportunities at Rivos."

---

[1] Exhibit A is an example of the IPA signed by Defendant Weidong Ye. *See* Lau Decl., Ex. A. The Court may incorporate the IPA into the Amended Counterclaims because it "forms the basis of [Defendants'] counterclaims," and Defendants quote and "refer[] extensively to the [IPA] in [their] counterclaims." *See Edge Sys. LLC v. Ageless Serums LLC*, 2021 WL 3812875, at *2 n.3 (C.D. Cal. May 11, 2021).

Countercl. ¶ 6.  In furtherance of those alleged efforts, Defendants claim that Apple requires employees to sign the Non-Solicit, which purportedly "chill[s] employee mobility and competition."  *Id.* ¶¶ 10, 34.  Yet even in their Amended Counterclaims, Defendants still do not allege that Apple enforced the Non-Solicit against the Individual Defendants (or any other former Apple employees), nor that the Non-Solicit prevented the Individual Defendants from recruiting Apple employees.  In addition, the Amended Counterclaims allege that Apple requires employees to sign the NDA, which Defendants claim is overbroad and purportedly restricts employee mobility and stifles competition for talented employees.  *Id.* ¶¶ 24-25, 30, 36.  But Defendants also concede that Rivos hired more than 50 former Apple engineers, including all the Individual Defendants.  *Id.* ¶¶ 9, 21, 45.

In their First Cause of Action, the Individual Defendants[2] seek a declaratory judgment that the IPA violates California Business & Professions Code § 16600 because it allegedly "impeded their ability to practice in their chosen profession of engineering, as it has made transitioning jobs nearly impossible."  Countercl. ¶ 73.  Notably, however, the Amended Counterclaims do not allege that the IPA deterred the Individual Defendants from leaving Apple; to the contrary, it confirms that each of them successfully left Apple and went to Rivos.  *Id.* ¶¶ 9, 47.  In their Second Cause of Action, Defendants claim that Apple violates the UCL and engages in unfair competition "when it requires employees to enter into the Apple IPA in order to deter the recruitment and movement of its current and former employees."  *Id.* ¶ 82.  But again, Defendants acknowledge that more than 50 former Apple employees moved to Rivos.  *Id.* ¶ 9.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Defendants' Amended Counterclaims must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of a cause of action's elements, supported by mere

---

[2] In the Amended Counterclaims, Rivos no longer seeks a declaratory judgment.  Countercl. ¶ 76. As Apple explained in its original Motion to Dismiss, Rivos lacks standing to assert a claim for declaratory relief regarding the IPA because Rivos is not a party to that agreement.  Mot. at 9-10.

conclusory statements," "do not suffice." *Id.* at 663, 678.  The Court should also disregard "legal conclusions" or "bald allegations" that fail to meet the *Twombly* specificity and plausibility requirements.  *Id.* at 678, 681.

In ruling on Apple's motion, the Court may consider all pleadings, including Rivos' Answer.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (courts may generally consider only the pleadings in ruling on a 12(b)(6) motion); Fed. R. Civ. P. 7(a)(2) (defining "pleadings" to include "an answer to a complaint"); *City of Lincoln v. Cnty. of Placer*, 2023 WL 2776091, at *6 (E.D. Cal. Apr. 4, 2023) ("The 'pleadings' include the answer to a complaint[.]").

## IV.   ARGUMENT

### A.   The Individual Defendants Fail to State a Claim for Declaratory Relief.

The First Cause of Action fails because both the NDA and the Non-Solicit are enforceable under California law.  Further, the Individual Defendants do not allege that Apple enforced the Non-Solicit ***against them***, nor that it prevented them from moving to Rivos or recruiting other Apple employees.  Accordingly, there is no actual controversy regarding the Non-Solicit for this Court to consider.  Thus, the Individual Defendants' claim for declaratory relief should be dismissed.

#### 1.   The NDA Is Enforceable as a Matter of Law.

The Individual Defendants seek a declaratory judgment that the NDA is invalid under California Business and Professions Code Section 16600 ("Section 16600"), but Section 16600 "does not invalidate an agreement between an employer and employee that seeks to maintain the confidentiality of an employer's trade secret or otherwise proprietary information." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 5785264, at *18 (C.D. Cal. Sept. 3, 2021).  The NDA, which protects Apple's "confidential, proprietary, and secret" information (Lau Decl., Ex. A at 1), is narrowly tailored and thus exactly the type of confidentiality agreement that California law allows.  Countercl. ¶ 25.

The Individual Defendants assert that Apple's NDA is "overbroad" and "serves no legitimate purpose to Apple" (*id.* ¶ 30), but the language of the NDA confirms otherwise.  *Id.*

¶ 25.  The Individual Defendants concede that the IPA defines "Proprietary Information" as "any information of a confidential, proprietary, and secret nature." *Id.* (emphasis added); *see* Lau Decl., Ex. A at 1.  The NDA thus narrowly and properly circumscribes its scope to protect Apple's "trade secret or otherwise proprietary information." *SPS Techs.,* 2021 WL 5785264, at *18.  In *SPS Techs.*, the court deemed enforceable a similar non-disclosure agreement preventing an employee from disclosing any of its employer's "private or confidential matters." *Id.* at *16, 18.  And while Defendants emphasize that the NDA prohibits disclosure of Proprietary Information "regardless of whether the information is trade secret" (Countercl. ¶ 30), non-disclosure agreements that seek to protect non-trade secret confidential information are valid. *See SPS Techs.,* 2021 WL 5785264, at *17 (deeming valid a confidentiality agreement that protected "all inventions, discoveries, improvements, developments, designs, methods, systems, computer programs, trade secrets or any other intellectual property," or "other private or confidential matters"); *VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *6 (E.D. Cal. Apr. 26, 2021) (holding that a non-disclosure agreement that protected material that, if disclosed, "would damage the company" was valid and did not "suffer from 'overbreadth'").

Moreover, the Individual Defendants do not plausibly allege that the NDA prevented them (or any other former Apple employees) from "engaging in a lawful profession, trade, or business of any kind." *See id.* at *5 (quoting Cal. Bus. & Prof. Code § 16600).  They make the conclusory allegation that Apple's interpretation of the IPA "impeded their ability to practice in their chosen profession of engineering, as it has made transitioning jobs nearly impossible" (Countercl. ¶ 73), but that "formulaic recitation" of Section 16600 "will not do." *See Iqbal*, 556 U.S. at 678.  And while the Individual Defendants claim that they have been "harmed in the form of lost productivity" due to "distraction from fear of retaliation by Apple" (Countercl. ¶ 69), the Amended Counterclaims are devoid of any factual allegations supporting that supposition.  It is therefore "unlikely that the 'restraining effect' of the NDA"—if there were any here—"would be 'significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate [Section] 16600." *See Wagging Tails Prods., Inc. v. Coakley*,

2023 WL 4316777, at *8 (C.D. Cal. Feb. 21, 2023) (quoting *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018)).

The Individual Defendants' cited cases do not support their argument that the NDA violates Section 16600.  *See* Countercl. ¶¶ 27, 29.  Neither *Fleming* nor *Agency Solutions.com* involved Section 16600 claims.  *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507 (N.D. Ill. 1985); *Agency Solutions.com, LLC v. TriZetto Grp., Inc*., 819 F. Supp. 2d 1001 (E.D. Cal. 2011).  *Fleming* is an out-of-circuit, decades-old case addressing an employer's trade secret misappropriation claim under Indiana law, not the enforceability of a confidentiality agreement under California law.  611 F. Supp. at 510-11.  And in *Agency Solutions.com*, the court evaluated the plaintiff's probability of success on the merits of its trade secrets claim relating to a confidentiality provision in a strategic alliance agreement, not an employer non-disclosure agreement.  819 F. Supp. 2d at 1015.  *Retirement Group* does not help Defendants, either.  There, the trial court enjoined plaintiffs from using their former employer's confidential information, but plaintiffs did not challenge that aspect of the injunction on appeal.  *Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1232 (Cal. Ct. App. 2009).  Indeed, Defendants only cite *Retirement Group* and *Agency Solutions* to establish that an employee cannot be prohibited from using general skills and knowledge acquired in the course of employment (Countercl. ¶ 27), which is irrelevant here because the NDA only prohibits the use and disclosure of Apple's information of a "confidential, proprietary, and secret nature."  *Id.* ¶ 25.  Defendants also selectively and misleadingly quote *Retirement Group*, omitting the critical portion of the excerpted sentence: "While it has been legally recognized that a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer, ***the former employee may not use confidential information or trade secrets in doing so***."  *Ret. Grp.*, 176 Cal. App. 4th at 1237 (emphasis added).

Perhaps recognizing that the NDA as written does not violate Section 16600, the Individual Defendants also claim that Apple interprets the NDA in an "outrageously overbroad and self-serving way."  Countercl. ¶ 30.  But the Amended Counterclaims include no factual allegations supporting that claim.  The only non-conclusory support for this assertion is the fact

that Apple sued Defendants for misappropriating Apple's trade secrets.  Apple's lawsuit,
however, properly seeks to enforce the terms of the NDA to recover Apple's trade secret and
confidential information, not some amorphous "information that Apple in its sole discretion"
deems proprietary.  *See id.*  Indeed, Apple's Complaint repeatedly alleges—and discovery has
proven—that the Individual Defendants improperly retained SoC specifications, source code, and
other Apple proprietary material.  *See, e.g.*, Compl. ¶¶ 4-10, 69-70, 84, 109-12, 117, 129-31.
Defendants seek to avoid the legitimate allegations in Apple's Complaint by claiming that Apple
purportedly reviewed personal materials like children's homework in its forensic investigation
(Countercl. ¶¶ 30, 53), but Apple is not claiming that such information is protected by the NDA.

Nor does Apple's exit checklist "expand" the NDA.  *Id.* ¶ 26, Ex. A.  Rather, the exit
checklist states, "Upon joining Apple, you signed an Intellectual Property Agreement (IPA) that
does not expire after you leave Apple.  The IPA includes a provision[] that says you will not use
or share Apple confidential information while you are an Apple employee and after you leave
Apple.  Everything you worked on at Apple stays here.  Do you understand this obligation?" *Id.*,
Ex. A.  In other words, the exit checklist merely "reinforces" the NDA, which is the actual source
of employees' confidentiality obligations.  *Id.* ¶ 26.  Thus, even if Apple's implementation of the
exit checklist was allegedly "rushed" and "cursory" (*id*. ¶ 48), Defendants do "not explain how a
provision requiring [Apple's] employees to surrender company materials at the termination of
their employment improperly squelches competition or halts employee mobility." *Genasys Inc. v.
Vector Acoustics, LLC*, 2023 WL 4414222, at *9 (S.D. Cal. July 7, 2023) ("[t]he Court is [] not
aware of any [] legal authority" finding a 'Surrender of Materials' provision void under Section
16600"); *see also SPS Techs.,* 2021 WL 5785264, at *16 (deeming valid an agreement that
required departing employees to "hand over all [materials] in [their] possession or control relating
to [intellectual property] or other private or confidential matters of the Company and its business,
and not retain any such document or writing").

Defendants thus fail to allege that the NDA violates Section 16600 and, accordingly,
cannot state a claim for declaratory relief based on that provision.

2. **The Individual Defendants Fail to Establish the Non-Solicit Violates California Law.**

The Individual Defendants have not met their burden to demonstrate that the Non-Solicit is invalid under California law.  In *Gartner, Inc. v. Parikh*, the court held that a non-solicitation provision was valid under Section 16600 because, like here, "Defendants [did] not argue and [did] not introduce[] any evidence to show that [the] nonsolicitation provision ha[d] an overall negative impact on trade or business."  2008 WL 11336333, at *9 (C.D. Cal. Oct. 10, 2008).  The court noted that "absent any evidence to the contrary, this Court presumes that [a] restriction was legitimately and properly sought by [the employer] in order to maintain a stable work force and enable [it] to remain in business."  *Id.*

Section 16600 invalidates contracts that restrain employees from "engaging in [their] lawful profession, trade, or business," subject to certain limited statutory exceptions not relevant here.  Cal. Bus. & Prof. Code § 16600.  In the seminal case *Loral Corp. v. Moyes*, the court held that a non-solicitation agreement that prevented the defendant, a former executive officer of the plaintiffs, from soliciting the defendant's former coworkers was not invalid under Section 16600.  174 Cal. App. 3d 268, 279 (Cal. Ct. App. 1985).  In pertinent part, the court explained that the "potential impact on trade must be considered before invalidating a [non-solicitation] agreement."  *Id.* at 270.  Because the agreement at issue did not significantly restrain the defendant from "engaging in his profession, trade or business," the court held that the agreement was enforceable.  *Id.* at 279.

Although courts are split in their treatment of *Loral*, it nonetheless remains good law.  In *Edwards v. Arthur Andersen LLP*, the California Supreme Court invalidated a non-competition agreement that "restrained [the plaintiff accountant's] ability to practice his profession," but did not address the agreement's provision governing non-solicitation of employees.  44 Cal. 4th 937, 946 n.4, 948 (Cal. 2008).  *Edwards* did not overrule *Loral* and, notably, cited *Loral* approvingly in a different portion of the opinion.  *Id.* at 954.  *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* did not overrule *Loral* either.  In *AMN*, the court invalidated a non-solicitation provision that precluded the defendant travel nurse recruiters from soliciting nurses that worked

1    for AMN, their former employer.  28 Cal. App. 5th 923, 939 (Cal. Ct. App. 2018).  While the

2    *AMN* court stated in *dicta* that it "doubt[ed] the continuing viability of [*Loral*] post-*Edwards*," the

3    court specifically held that its decision did "not rest on that analysis alone." *Id.* at 939.  Rather,

4    the *AMN* court distinguished *Loral* because, unlike the former executive officer in *Loral*, the

5    individual defendants in *AMN* were travel nurse recruiters who "were in the *business* of

6    recruiting" nurses, and the non-solicitation provision at issue "restrained [them] from engaging in

7    their chosen profession." *Id.* (emphasis in original).

8         Defendants have not cited any California state court decision holding that all employee

9    non-solicitation provisions are unenforceable as a matter of law under Section 16600.  *See, e.g.*,

10   *Twentieth Century Fox Film Corp. v. Netflix, Inc.*, 2019 WL 8013589, at *28 (Cal. Super. Ct.

11   Dec. 10, 2019) ("*AMN* is distinguishable because it involved a non-solicitation of employee

12   provision that restrained the individual defendants from practicing their chosen profession.").

13   And while federal courts in California have diverged in their interpretation of *AMN*, several have

14   concluded that *AMN* should be cabined to the specific facts at issue there.  *See, e.g.*, *Aramark*

15   *Mgmt., LLC v. Borgquist*, 2021 WL 3932258, at *9 (C.D. Cal. July 8, 2021) (holding that

16   employee non-solicitation provision that did not prevent former employee from engaging in his

17   chosen profession was enforceable); *Hamilton v. Juul Labs, Inc*., 2020 WL 5500377, at *7 (N.D.

18   Cal. Sept. 11, 2020) (holding that non-solicitation provision was valid under Section 16600

19   because plaintiff did not allege that "the NDA prevent[ed] her from engaging in her profession

20   like the plaintiffs in *AMN* who were recruiters—*i.e.*, their entire profession was completely based

21   on solicitation"); *W. Air Charter, Inc. v. Schembari*, 2018 WL 10157139, at *14 (C.D. Cal. Nov.

22   21, 2018) ("[C]ontractual provisions which restrain former employees from contacting a

23   company's current employees to induce them to leave that company are not prohibited by Section

24   16600 so long as they do not restrain those employees from leaving the company and seeking

25   employment with a third party.")

26        Here, the Non-Solicit is valid because, as in *Loral*, it does not limit the Individual

27   Defendants' ability to "engage in [their] profession, trade or business."  Cal. Bus. & Prof. Code

28   § 16600; *Loral*, 174 Cal. App. 3d at 279.  The Individual Defendants make the conclusory

allegation that the IPA has "impeded [their] ability to practice in their chosen profession of engineering, as it has made transitioning jobs nearly impossible." Countercl. ¶ 73. But, like the NDA, Defendants fail to set forth any *facts* that suggest the Non-Solicit prevented them from doing their jobs. *See* Section IV.A.2., *supra*. Unlike the non-compete agreement in *Edwards*, which prevented **accountants** from providing **accounting** services, or the non-solicitation agreement in *AMN*, which prevented **recruiters** from **recruiting**, here, the Non-Solicit does not prevent the Individual Defendant **engineers** from **engineering**. Therefore, the Individual Defendants cannot state a claim for declaratory relief on the basis of the Non-Solicit.

### 3. There Is No Justiciable Controversy Regarding the Legality or Enforceability of the Non-Solicit.

The Individual Defendants seek declaratory relief only "with respect to Apple's enforcement of the Apple IPA *against them*," but do not actually allege that Apple enforced the Non-Solicit *against them*. Countercl. ¶ 72 (emphasis added). A dispute is ripe for declaratory adjudication only when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Kordich v. Salton*, *Inc*., 2005 WL 8173161, at *4 (S.D. Cal. July 5, 2005) (emphasis added). There is no actual controversy with respect to the Non-Solicit because the Individual Defendants do not allege that Apple enforced it against them, nor that it prevented them from moving to Rivos or from soliciting Apple employees.[3] *See Wood v. NewBridge Res. Grp., LLC*, 2021 WL 4803494, at *4 (C.D. Cal. Mar. 11, 2021) (dismissing plaintiff's "unripe" declaratory relief claim because plaintiff did not allege "any facts suggesting that Defendants [] attempted to enforce the provision," nor that he "refrained from any activities out of concern for violating his non-competition obligations"); *Kordich*, 2005 WL 8173161, at *4 (dismissing claim for declaratory judgment that non-compete agreement was unenforceable where "[n]o course of conduct [was] alleged that [would] result in 'imminent' and 'inevitable' litigation"). Instead, Defendants

---

[3] Defendants claim that "former Apple employees at Rivos have been very careful to steer clear of this provision," but do not allege a single specific instance in which *any* Rivos employee refrained from soliciting a former colleague at Apple. Countercl. ¶ 35. That omission is telling: if Defendants could have alleged it, they surely would have done so.

1    "essentially ask[] the Court to rule as a matter of public policy that the [Non-Solicit] is

2    unenforceable, with not a single fact alleged to suggest a concrete controversy has arisen." *Id.*

3          The Individual Defendants nevertheless state that "Apple's conduct creates a concrete and

4    justiciable controversy" (Countercl. at 15), but such "naked assertions devoid of further factual

5    enhancement" are not enough to state a claim.[4] *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

6    The ***only*** non-conclusory allegation related to ripeness is that Apple filed a trade secret lawsuit

7    against the Individual Defendants.  Countercl. ¶¶ 63-64.  But that argument is doomed because

8    Apple's Complaint does not seek to enforce the Non-Solicit.  Instead, the Complaint properly

9    seeks to protect Apple's intellectual property rights by alleging that Defendants improperly

10   retained and misappropriated Apple's trade secret information in violation of ***the NDA***.  *See*

11   Compl. ¶¶ 172-78, 180-203.  Defendants' argument that Apple's trade secret claim is predicated

12   on an inevitable disclosure theory is nonsense.  Countercl. ¶ 64.  Apple's claim is not based on

13   the argument that its former employees will inevitably disclose confidential information solely

14   because the positions they occupy at Rivos are similar to those they held at Apple.  If that were

15   true, Apple would have named far more than six Individual Defendants.  Instead, Apple

16   specifically alleges that these Individual Defendants took tens of thousands of confidential Apple

17   documents with them when they left, that they reviewed and used these documents while at

18   Rivos, and that Apple's technical trade secrets are currently being used in Rivos designs.  Compl.

19   ¶¶ 1, 3-13, 149-50, 153-58.  And in any event, Defendants do not allege that Apple brought the

20   lawsuit as pretext to discourage its employees from moving to Rivos, nor could they credibly do

21   so given the Court's order denying Defendants' motion to dismiss that claim.  Dkt. 229.  The

23   [4] All the other Counterclaim allegations are conclusory—and none relate to the Individual
24   Defendants—and thus they are irrelevant to the Individual Defendants' claim for declaratory
     relief.  Moreover, those allegations do not plausibly show that the Non-Solicit "imped[ed]
25   employee mobility."  Countercl. ¶ 36.  While Defendants allege that "one Apple employee" chose
     not to pursue a job offer from Rivos, they fail to identify the employee by name or provide any
26   other details sufficient for notice pleading.  *Id.* ¶ 32.  Nor do Defendants allege any facts
     suggesting that the employee was deterred from moving to Rivos ***because*** of the Non-Solicit (or
27   any provision of the IPA).  Finally, Defendants do not link their claim that "the number of Apple
     employees willing to work for Rivos dropped to nearly zero" to the Non-Solicit—and in any
28   event, that claim is belied by Defendants' admission that more than 50 former Apple employees
     have joined Rivos.  *Id.* ¶¶ 9, 44.

Individual Defendants thus fail to allege facts sufficient to establish a justiciable controversy regarding the enforceability of the Non-Solicit, requiring dismissal of their declaratory relief claim.  *See Wood*, 2021 WL 4803494, at \*4; *Kordich*, 2005 WL 8173161, at \*4.

>    **B.**    **Defendants Fail to State a Claim Under California's Unfair Competition Law.**

Defendants' claim under the UCL also fails as a matter of law.  First, Defendants do not plead any unlawful or unfair conduct by Apple.  Second, Defendants' alleged monetary damages are not restitution, and thus are not recoverable under the UCL.  Third, Defendants' claim for injunctive relief fails because they do not plausibly allege that Apple improperly enforced any aspect of the IPA against them.  Because Defendants do not state a claim for either monetary or injunctive relief under the UCL, their second cause of action should be dismissed with prejudice.

>    **1.**    **Defendants Fail to Plead Any Unlawful or Unfair Business Practices by Apple.**

Defendants do not state a claim under either the "unlawful" or "unfair" prongs of the UCL.  The UCL "prohibits any [1] unlawful, [2] unfair or [3] fraudulent business act or practice." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (citing Cal. Bus. & Prof. Code § 17200).  To state a claim under the UCL, Defendants must allege that Apple violated another law or engaged in an otherwise "unfair" business practice.  *Id.*

Defendants' sole allegation of "unlawful" conduct relies on Defendants' claim that the IPA is unenforceable under Section 16600.[5]  Countercl. ¶¶ 79, 82, 86.  Thus, Defendants' derivative claim regarding the legality of the IPA fails for the same reasons that doom the Individual Defendants' claim for declaratory judgment under Section 16600.  *See* Section IV.A., *supra*; *see also Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 838 (N.D. Cal. 2015) (plaintiffs' UCL claims under the "illegal" and "unfair" prongs "are derivative of plaintiffs' [antitrust] claims and fail for the same reasons as those claims"); *Robert Half Int'l, Inc. v. Ainsworth*, 2015 WL 1197882, at \*4 (S.D. Cal. Mar. 16, 2015) (dismissing UCL claim because counterclaim failed to allege facts entitling defendants to relief under Section 16600).

---

[5] Defendants also claim that the NDA violates Labor Code section 232.5 (Countercl. ¶ 33), but allege no facts to support that "bare assertion[]."  *Iqbal*, 556 U.S. at 681.

To the extent Defendants assert a violation of the UCL's "unfair" prong, that claim is also deficient.  Under the applicable "tethering" test,[6] "the alleged unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Reilly*, 2022 WL 1215305, at *6 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (Cal. 1999)).

Defendants fail to state a claim under the tethering test because they do "not allege that Apple's actions harmed or impacted competition."  *Id.* at *8.  Rather, the Amended Counterclaims "focus[] on how Apple's actions harmed [Defendants'] personal business interests, not on how Apple's actions harm competition generally."  *See id.*  Defendants make the conclusory claim that the IPA "provisions stifle competition, entrepreneurship, innovation, job and wage growth, equality, and economic development" (Countercl. ¶ 10), but "never offer[] specific facts that support these allegations."  *See Snapkeys, Ltd. v. Google LLC*, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 30, 2020) (rejecting conclusory allegation that defendant's conduct "stifle[d] competition" and "harm[ed] competition from start-up companies"); *see also Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, 2016 WL 7102721, at *2 (N.D. Cal. Dec. 6, 2016) (dismissing UCL claim where there was "no detail to support [the] assertion" that practices had "an unfair anticompetitive effect on competition"); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1137 (9th Cir. 2014) ("general allegation" that defendant's conduct "harms competition" is not enough).  Further, Defendants' vague allegation that Apple's conduct harms competition for SoC engineers and limits employee mobility (Countercl. ¶¶ 10-12) is contradicted by its concession that more than 50 former Apple employees moved to Rivos (*id.* ¶ 9).  *See Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *2 (E.D. Cal. Sept. 30, 2022*)* ("[T]he Court need not

---

[6] The tethering test applies to alleged "unfairness to *competitors*," like Rivos, which allegedly competes with Apple in the alleged employment market at issue here.  *Epic Games,* 67 F.4th at 1000 (emphasis in original); Countercl. ¶¶ 5-6.   The tethering test also applies to the individual Defendants who, as employees of Rivos, likewise allegedly compete with Apple engineers, and are thus "closer to [] competitor[s] than [] consumer[s]."  *Reilly v. Apple Inc.*, 2022 WL 1215305, at *7 (N.D. Cal. Apr. 25, 2022) (noting that a "consumer" is an individual who "purchas[es] Apple products and services" and holding that the tethering test applies to individuals, even if they are not "direct competitors," where the "crux of the individuals' claim [is] that [the defendant's] conduct injured the individuals' businesses").

accept inconsistent allegations in a complaint as true.").  Finally, Defendants' claim that Apple's conduct keeps compensation "artificially low" is purely speculative and should be disregarded. Countercl. ¶ 60; *Twombly*, 550 U.S. at 555.  Defendants assert that Apple paid its engineers low salaries.  Countercl. ¶ 43.  But that allegation does not support the inference that, absent any unfair conduct purportedly stifling employee mobility, Apple would have raised salaries to prevent employees from moving to Rivos.  *Id.*  To the contrary, even after 50 former Apple employees moved to Rivos, Apple still allegedly decided not to increase salaries.  *Id.* ¶¶ 9, 43.

Nor do Defendants allege, as they must, that Apple's conduct "threaten[s] an incipient violation of an antitrust law."  *See Reilly*, 2022 WL 1215305, at *8 (quoting *Epic Games, Inc. v. Apple Inc*., 559 F. Supp. 3d 898, 1055 (N.D. Cal. 2021)).  Tellingly, Defendants do not even assert an antitrust claim.  And Defendants do not point to "any 'unusual' aspect of the alleged conduct that would make that conduct something that violates the 'policy and spirit' of the antitrust laws without violating the actual laws themselves."  *Synopsys, Inc. v. AtopTech, Inc*., 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015).

Accordingly, Defendants' claim under the "unlawful" or "unfair" prong of the UCL fails.

### 2.    Defendants' Request for Money Damages Fails as a Matter of Law.

Remedies under the UCL are "generally limited to injunctive relief and restitution."
*Cel-Tech Commc'ns*, 20 Cal. 4th at 179; *Ozeran v. Jacobs*, 798 F. App'x 120, 122 (9th Cir. 2020) (same).  "[A]n order for restitution [is] one compelling a UCL defendant to return ***money obtained through an unfair business practice*** to those persons . . . from whom the property was taken, that is, to persons who had an ownership interest in the property[.]"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45, 1152 (Cal. 2003) (emphasis added) (non-restitutionary disgorgement of profits "is not an available remedy in an individual action under the UCL").

All of Defendants' alleged monetary losses are non-restitutive and are, therefore, unrecoverable.  Defendants claim that the IPA has caused them "to lose money and property within the meaning of California's unfair competition law" in the form of litigation defense costs,

increased recruiting and development costs, and "lost productivity" due to Apple's IPA. Countercl. ¶¶ 65-69.  But none of those alleged monetary losses are "money ***obtained*** [by Apple] through an unfair business practice." *Korea Supply Co.*, 29 Cal. 4th at 1145 (emphasis added). Indeed, apart from the naked assertion that Apple's scheme enabled it to resist "increas[ing] the benefits it offers," Defendants do not allege that Apple financially benefitted from its purportedly unlawful or unfair conduct.[7]  Countercl. ¶ 60.  Moreover, it is well-settled that Rivos' attorneys' fees and other defense costs are not recoverable under the UCL.  *See Cel-Tech Commc'ns*, 20 Cal. 4th at 179; *Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Action Immigr. Bonds & Ins. Servs., Inc*., 2014 WL 12600146, at *8 (C.D. Cal. Mar. 24, 2014) (granting motion to strike prayer for attorneys' fees under UCL); *Carrillo v. Wells Fargo Bank, N.A.*, 2023 WL 5423015, at *5 (C.D. Cal. May 18, 2023) (dismissing claim for attorneys' fees under UCL); *Sanabria v. Small Bus. Lending, LLC*, 2023 WL 4533914, at *4 (C.D. Cal. July 13, 2023) (same).  Defendants' alleged recruiting and development costs and lost productivity are likewise non-restitutive because Defendants had no "ownership interest in [the] property" that Apple took and must return.  *Korea Supply Co.*, 29 Cal. 4th at 1144-45, 1551 ("Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims."); *see also United States v. Sequel Contractors, Inc*., 402 F. Supp. 2d 1142, 1156 (C.D. Cal. 2005) (holding that incurred payroll expenses and "a decline in the value of [a] business" were "damages, not restitution"); *In re High-Tech Emp. Antitrust Litig.,* 856 F. Supp. 2d 1103, 1124 (N.D. Cal. 2012) ("speculative higher compensation" that UCL plaintiffs "may have been able to negotiate" absent defendants' alleged conduct is an "attenuated expectancy" that "cannot serve as the basis for restitution"); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp*., 2009 WL 10670877, at *2 (C.D. Cal. Aug. 18, 2009) (defendant could not recover lost profits "akin to a lost business opportunity" under the UCL because defendant "never had any vested interest" in the anticipated revenues); *Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co*., 1999 WL 760527, at *7 (N.D. Cal. Sept. 21, 1999) (rejecting UCL claim for restitution where plaintiff claimed that it paid "out

---

[7] In any event, non-restitutionary disgorgement is likewise not recoverable under the UCL. *Korea Supply Co*., 29 Cal. 4th at 1152.

monies that defendant would have had to cover if not for its illegal practices" because the "remedy plaintiff [sought] was none other than an alternative measure of legal damages"). Indeed, Defendants effectively concede that their alleged monetary losses are non-restitutive by seeking "actual damages" in their prayer for relief.   *See* Countercl. at 20.

Defendants' claim for monetary relief under the UCL thus fails.

### 3.    Defendants' Request for Injunctive Relief Fails as a Matter of Law.

Defendants seek a negative injunction under the UCL compelling Apple to inform current and former employees that the IPA is void, prohibiting Apple from forcing employees to sign the IPA or seeking to enforce it against them, and prohibiting Apple from "engaging in actual anticompetitive litigation against Rivos and other California employers" arising from the Non-Solicit or NDA.  Countercl. at 20.  Defendants purport to seek this relief on behalf of both "Rivos and its employees, and [] the public," but neither claim is ripe for the Court's consideration.

An injunction as to Rivos or its employees regarding the Non-Solicit is improper because Defendants do not allege that Apple enforced the Non-Solicit against any Rivos employee (or any former Apple employee for that matter).  Defendants thus seek an injunction preventing Apple from doing something that it has never done, which would constitute an improper "advisory opinion."  *California ex rel. Lockyer v. U.S. Forest Serv.*, 2006 WL 2038491, at *1-2 (N.D. Cal. July 20, 2006) (declining to issue an injunction that would be "based entirely on a hypothetical set of facts" because it "would be untethered to an existing controversy or factual record"); *Koller v. Harris*, 312 F. Supp. 3d 814, 822 (N.D. Cal. 2018) (noting that a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," in which case "any opinion as to the legality of the challenged action would be advisory" (citations omitted)).  Injunctive relief, therefore, is not appropriate with respect to the Non-Solicit.

Similarly, the Court should not grant injunctive relief as to Rivos or its employees regarding the NDA because Apple's alleged enforcement of that provision was lawful. Defendants only allege that Apple enforced the NDA through its lawsuit against them (Countercl. ¶¶ 63-64), but Apple appropriately filed those claims to protect its intellectual property rights.

*See* Dkt. 229 (denying Defendants' motion to dismiss Apple's claims).  Courts may not issue an injunction preventing a party from bringing a legitimate and good faith cause of action.  *Gizmo Beverages, Inc. v. Park*, 2017 WL 6941362, at *4 (C.D. Cal. Sept. 18, 2017) (declining to enjoin lawsuit without a showing that it had "no reasonable basis in fact, or [was] based on an illegal objective," even assuming the lawsuit was filed with retaliatory intent); *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) ("[r]ecogniz[ing] that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances").  Thus, there is no basis for the Court to grant injunctive relief under the UCL as to Rivos or its employees.

Finally, Defendants lack standing to seek a "public injunction."  Countercl. at 20.  Defendants ask this Court to force Apple to "inform current and former employees that the Apple IPA is void" and to prohibit Apple from enforcing it.  *Id.*  But Defendants cannot assert a claim for injunctive relief regarding IPAs to which they are not a party.  *See Lafferty v. Wells Fargo Bank*, 213 Cal. App. 4th 545, 570 (Cal. Ct. App. 2013) ("Because the [] agreement was not made for the benefit of the [plaintiffs], they lack standing to seek declaratory and injunctive relief under that agreement.").  Indeed, in 2004, California voters amended the UCL to add a new standing requirement.  As amended by Proposition 64, a plaintiff may not seek relief under the UCL unless it has suffered "injury in fact and has lost money or property as a result of the [alleged] unfair competition."  Cal. Bus. & Prof. Code § 17204; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854 (Cal. Ct. App. 2008) (noting that "voters' intent in passing Proposition 64" was "unequivocally to narrow the category of persons who could sue businesses under the UCL" and, in part, to limit misuse of the UCL to "file lawsuits on behalf of the general public").  Thus, Defendants here may not seek injunctive relief under the UCL "on behalf of the general public."  *Hall*, 158 Cal. App. 4th at 854.  Accordingly, Defendants' claim for injunctive relief under the UCL fails.

## V.    CONCLUSION

At bottom, Defendants' claims are based entirely on the premise that Apple used the IPA as pretext to retaliate against former employees who joined Rivos.  But their claims ignore that Defendants improperly retained and used thousands of Apple confidential and trade secret

documents in violation of the IPA.  *See, e.g.*, Compl. ¶¶ 4-10, 69-70, 84, 109-12, 117, 129-31. Apple's lawsuit, far from a "scheme to quell employee mobility," was a necessary step to recover that information and address Rivos' ongoing misappropriation of Apple's trade secrets.

Regardless of Defendants' imagined "motives," the Amended Counterclaims fail as a matter of law, because the NDA and Non-Solicit are both valid and enforceable under California law.  Defendants also do not allege that Apple has enforced the Non-Solicit against the Individual Defendants, so there is no justiciable controversy with respect to that provision.  Defendants' claim under the UCL fails for the same reasons and because they allege no "unlawful" or "unfair" conduct by Apple.  Defendants also fail to state a claim for either monetary damages or injunctive relief under the UCL.

Because Defendants have already amended but failed to cure these defects, Apple respectfully requests that the Court dismiss Defendants' Amended Counterclaims with prejudice.

Dated:  November 17, 2023                      MORRISON & FOERSTER LLP

By   */s/ Bonnie Lau*
                                                          Bonnie Lau

Attorney for Plaintiff and Counterclaim
Defendant APPLE INC.