QUINN EMANUEL URQUHART & SULLIVAN, LLP
  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
  Elle Xuemeng Wang (Bar No. 328839)
  ellewang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa St.
Los Angeles, CA 90017
Telephone:     (213) 443-3145
Facsimile:     (213) 443-3100

Attorneys for Defendants and
Counterclaim Plaintiffs Rivos Inc., Wen Shih-
Chieh a/k/a Ricky Wen, Jim Hardage, Weidong
Ye, Laurent Pinot, Prabhu Rajamani and Kai
Wang

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG,<br><br>                    Defendants. | Case No. 5:22-CV-2637-PCP<br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO AMEND CASE SCHEDULE AND COMPLAINT**<br><br>Courtroom: 8<br>Judge: Hon. P. Casey Pitts<br><br>Date Action Filed: April 29, 2022<br><br>**REDACTED FOR PUBLIC FILING** |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG,<br><br>                    Counterclaim Plaintiffs.<br><br>          vs.<br><br>APPLE INC.,<br><br>                    Counterclaim Defendant, | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................... 3

    A.      Apple Repeatedly Amends Its Complaint as It Casts About for Viable Claims ............................................................................................................. 3

    B.      Apple Employs a "Make It Up as We Go" Approach to Identifying Its Claimed Trade Secrets ............................................................................... 4

    C.      Apple's Newest Purported Trade Secrets Are Not Secret ........................... 6

    D.      Apple Has Known About the Proposed Defendants for Months ................ 8

        1.      Deepak Limaye ................................................................................. 8

        2.      Mahesh Reddy .................................................................................. 9

        3.      CC Lee ............................................................................................. 10

    E.      Apple Waited Until the Eleventh Hour to File Its Motion ........................ 10

III.    LEGAL STANDARD ........................................................................................... 11

IV.     ARGUMENT ........................................................................................................ 12

    A.      Apple Has Not Shown Good Cause to Add New Defendants and Allegations at This Late Date, as Rule 16 Requires ................................... 12

    B.      Apple Cannot Meet the Requirements of Rule 15 ..................................... 14

        1.      Apple's Proposed Addition of New Defendants Is Prejudicial .................... 14

        2.      Apple's Proposed Amendments Are Futile ................................. 16

        3.      Apple's Belated Request to Amend Its Complaint and Extend the Case Schedule Is Made in Bad Faith ............................................. 19

V.      CONCLUSION .................................................................................................... 21

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO AMEND COMPLAINT

# TABLE OF AUTHORITIES

**Page**

### Cases

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133  (N.D. Cal. 2019) ................................................................... 16

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
    465 F.3d 946 (9th Cir. 2006) ........................................................................... 12

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020) ........................................................................... 17

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. V. Iptronics Inc.*,
    2012 WL 3835107 (N.D. Cal. Sept. 4, 2012) ................................................ 14

*Best Label Co., LLC v. Custom Label & Decal, LLC*,
    No. 19-CV-03051-LHK, 2021 WL 5415260 (N.D. Cal. Nov. 19, 2021) ...........................12, 20

*Demoura v. Ford*,
    No. 1:09-CV-01344-LJO, 2012 WL 1898905 (E.D. Cal. May 23, 2012) .................. 13, 14, 15

*Edwards Lifesciences LLC v. Cook Inc.*,
    2008 WL 913328 (N.D. Cal. 2008) .................................................................. 20

*Experexchange, Inc. v. Doculex, Inc.*,
    No. C-08-03875 JCS, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ...............................11, 13

*Hayward Property, LLC v. Commonwealth Land Title Insurance Company*,
    2021 WL 4927012 (N.D. Cal. 2021) ............................................................. 11, 12, 14

*Jobscience, Inc. v. CVPartners, Inc.*,
    No. C 13–04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ...................................... 5

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ........................................................................... 12

*Lamont v. Conner*
    No. 5:18-CV-04327-EJD, 2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) .............................. 16

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999) ........................................................................... 15

*Nextdoor.Com, Inc. v. Abhyanker*,
    No. C-12-5667 EMC, 2013 WL 3802526 (N.D. Cal. July 19, 2013) ...................................... 17

*Regents of Univ. of California v. LTI Flexible Prod., Inc.*,
    No. 3:20-CV-08686-WHO, 2021 WL 4133869 (N.D. Cal. Sept. 10, 2021) ........................... 11

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
   151 F.3d 1132 (9th Cir. 1998) ..................................................................15

*Space Data Corp. v. X*,
   No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ...................................16

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ..................................................................14

*Tri Cnty. Telephone Assocoiation, Inc. v. Campbell*,
   2018 WL 10399165 (D.Wyo., 2018) ....................................................................5

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ....................................................................19

*Wilson v. Frito-Lay N. Am., Inc.*,
   2017 WL 3478776 (N.D. Cal. Aug. 14, 2017) ...............................................15

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ....................................................................11

## Statutes

California Business and Professions Code section 16600 ....................................19

## Rules/Other Authorities

Federal Rules of Civil Procedure Rule 15................................................1, 2, 12, 14, 16

Federal Rules of Civil Procedure Rule 16................................................1, 3, 11, 12, 13

## I.    __INTRODUCTION__

Apple's untimely attempt to reinvent its claims and drag in new parties ***after the close of fact discovery*** must be denied.

*First*, under Rule 16 of the Federal Rules of Civil Procedure, Apple cannot show good cause for the addition of three new defendants—Deepak Limaye, Mahesh Reddy, and Chih-Chieh ("CC") Lee (together, the "Proposed Defendants")—at this late date.  The Court-ordered deadline to add new parties has been in place since July 19, 2022, it expired more than a year ago, and Apple has indisputably had knowledge of these individuals since they resigned from Apple in 2021.  Indeed, Apple sent letters to each of them on April 29, ***2022***, threatening to sue them for trade secret misappropriation.  Yet Apple waited until more than a year later to take the depositions it claims provided "new information" underlying the proposed amendments.  Even then, Apple waited ***months more*** to belatedly move to add them as defendants.  Apple's strategic decision to delay discovery and then to further delay seeking to add them as defendants cannot constitute "good cause" to amend the case schedule under Rule 16.

*Second*, both the named Defendants[1] and the Proposed Defendants will be severely prejudiced by Apple's untimely amendments, a critical factor under Rule 15 of the Federal Rules of Civil Procedure.  Apple may not need further discovery from the Proposed Defendants, because it already knew about them and has been engaged in scorched earth discovery for the last eighteen months while it looked for anything that might support a claim.  But Defendants, meanwhile, are entitled to seek the basis for Apple's evolving eleventh-hour claims.  The Proposed Defendants would also be severely prejudiced by being sued *after* the deadline for them to take discovery.  A continuation of the case schedule would only create more prejudice from Apple using these late changes as a basis to expand this litigation and the burden of discovery even further, exacerbating the harm inflicted upon Rivos and the Individual Defendants.  The Court should not reward Apple's dilatory actions with more undue delay that will cause extreme prejudice to Defendants.  They are entitled to a timely trial to resolve Apple's meritless claims against them.

---

[1]  "Defendants" refers to Rivos Inc., Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani and Kai Wang (all of whom except Rivos are the "Individual Defendants").

1    *Third*, Apple has failed to demonstrate that its proposed amendment to the Complaint can

2    survive a motion to dismiss, and it is therefore futile under Rule 15.  Apple's only justification for

3    adding the Proposed Defendants is a handful of cherry-picked, out-of-context deposition excerpts

4    that, when read in context, do not support Apple's proposed amendments.  Apple's latest theory of

5    trade secret misappropriation is still premised on inevitable disclosure, a theory that has been

6    roundly rejected in California.  Regardless, the purported "trade secrets" that Apple vaguely alleges

7    were misappropriated are not Apple's secrets at all; they are technology that Apple has publicly

8    disclosed in patents, obtained from third parties and implemented without alteration, or are based

9    on decades-old concepts well known within the industry, routinely published in academic papers,

10   and the subject of industry-wide public competitions.  These public disclosures foreclose trade secret

11   status as a matter of law.

12   *Finally*, Apple's proposed amendment is made in bad faith, another factor under Rule 15.

13   Apple's proposed amendment is an attempt to exert additional pressure on Rivos as part of Apple's

14   larger anticompetitive scheme; it has nothing to do with any genuine interest in protecting so-called

15   "trade secrets" that Apple regularly publishes in the public domain.  Apple stated at the very

16   beginning of its First Amended Complaint that it "does not take lightly naming individuals" as

17   defendants. Dkt. 79, ¶ 1.  It is telling that Apple no longer makes that representation.  Apple's

18   Motion shows instead it is perfectly willing to besmirch a never-ending parade of its former

19   employees in an attempt to draw out this litigation based on the flimsiest allegations to support its

20   facially implausible claims.  For Apple, this litigation is the ends unto itself; not the means to achieve

21   any legitimate goal.  With this request to start the case over with new parties and new claims after

22   the close of discovery, Apple hopes it can further delay resolution of this case, drown Rivos in

23   litigation expenses, and ultimately crush Rivos based on Apple's financial strength rather than the

24   strength of Apple's trade secret misappropriation claims.  For Apple, the significant harm that will

25   come to the Proposed Defendants' reputations and careers from being dragged in at the eleventh

26   hour is of no moment.

27   For all these reasons, Apple's motion to amend the case schedule and add three new

28   defendants following the close of fact discovery should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Apple Repeatedly Amends Its Complaint as It Casts About for Viable Claims

Apple initiated this lawsuit on April 29, 2022.  That same day, Apple sent threatening letters to over 40 former Apple employees who had joined Rivos, including the Proposed Defendants, purporting to "remind" them of their obligations to Apple in a thinly veiled threat of litigation.  Dkt. 256 (Apple's TAC), ¶ 161.  Apple's initial complaint named as defendants Rivos and two former Apple employees who had joined Rivos.  After they moved to dismiss Apple's complaint, on July 14, 2022, Apple filed a First Amended Complaint, adding five additional individual defendants to the case.  On July 19, 2022, the Court ordered a deadline of September 19, 2022 for joining any additional parties.  Dkt. 87.  Per that Order, the addition of any parties after that date must be in accordance with Rule 16 of the Federal Rules of Civil Procedure.  *Id.*

On August 30, 2022, Apple filed a Second Amended Complaint to correct a number of baseless allegations in Apple's First Amended Complaint that Defendants raised in a Rule 11 letter. Any reasonable investigation by Apple prior to filing would have undercut these outright false allegations, such as accusing Weidong Ye of retaining "backups" of Apple information after his departure despite the fact that he had returned those backups to his manager at Apple, or alleging that Kai Wang had worked at Apple for nearly seven years and was responsible for optimizing performance of Apple's SoCs, when in fact he had worked at Apple for less than two years and had never been on the SoC team.

Defendants moved to dismiss Apple's Second Amended Complaint, which the Court granted in part on August 11, 2023. Dkt. 229.  The Court dismissed Apple's only claim against Rivos (trade secret misappropriation), finding that Apple had not alleged any wrongdoing against Rivos specifically, and that "[t]o the extent Apple seeks to impute the Individual Defendants' alleged misappropriation to Rivos, it has not stated a cognizable basis for doing so."  Dkt. 229 at 14.  The Court further explained that "the ratifiable conduct alleged in the SAC or argued in Apple's opposition do not support a finding of improper acquisition, nor has Apple alleged Rivos's failure to investigate or respond to charges."  *Id.* at 15.  The Court also dismissed Apple's trade secret misappropriation claims against Mr. Pinot and Mr. Ye, finding that the "mere possession of

-3-

1   [Apple's] information is insufficient to allege that [they] disclosed or used the information without

2   consent." Dkt. 229 at 12.  The Court granted Apple leave to amend.  *Id.* at 20.

3       In response to the Court's order granting in part Defendants' motion to dismiss, on August

4   29, 2023 Apple filed a Third Amended Complaint ("TAC").  Dkt. 255.  This being Apple's *fourth*

5   attempt to state claims:  it had the benefit of eighteen months of boil-the-ocean discovery, in which

6   Apple scoured complete forensic images of the devices of nearly *every* former Apple employee now

7   working at Rivos, reviewed Rivos' most closely-held, sensitive technical documents, served

8   hundreds of written discovery requests and thirteen subpoenas, and took twelve depositions

9   (including of one of the Proposed Defendants).  Though it was already well past Apple's deadline

10  to do so, Apple did not seek to add additional defendants in its TAC.  Instead, Apple waited until

11  months later to seek to add these new parties and articulate entirely new bases for its claims—on

12  the eve of the close of written fact discovery.

13      **B.    Apple Employs a "Make It Up as We Go" Approach to Identifying Its**

14      **Claimed Trade Secrets**

15      Apple began this case by alleging the misappropriation of documents.  For over a year, Apple

16  claimed as its "trade secrets" an indiscriminate list of tens of thousands of files that Apple had found

17  by monitoring its former employees' personal messages and online storage.  Apple's list was facially

18  unserious; it included things like a child's homework assignment, an audio clip of a child's dance

19  recital, personal bank statements, a life insurance policy, publicly available open source code

20  downloaded from Google, and countless similar items.  Apple claimed that Defendants retaining

21  these files after leaving Apple constituted trade secret misappropriation.  But Apple did not allege

22  any use or disclosure of any of this material by anyone after leaving Apple.  Despite the obvious

23  overbreadth of Apple's claims, Apple used the inadvertent retention of documents by the Individual

24  Defendants as a pretext to turn both the individuals' and Rivos' devices and systems upside down.

25  Apple demanded complete forensic images of the devices and accounts that ***all*** former Apple

26  employees used for work at Rivos.  Apple also demanded that the Individual Defendants surrender

27  their ***personal*** devices (including family members' devices and accounts in some instances), simply

28

because the devices had at some point synced to the Defendants' own iCloud accounts—a practice that Apple strongly encouraged, if not required, for its employees.

Apple also demanded that Rivos produce its most closely-held technical documents, which described in exacting detail how Rivos' technology worked—even if it had no relationship to any of the documents any of the Defendants retained.  Indeed, Rivos has produced its specifications for its SoC and CPU, all of its specifications for the underlying components and features of its CPU, over 1.2 million lines of RTL code reflecting the implementation of those specifications, and the performance models it has used to develop and test its technology.  Apple took full advantage of that discovery, spending months conducting side-by-side comparisons between Rivos' specifications and Apple's own designs—which Apple refused to produce in discovery until the Court ordered it to do so with just one month left in fact discovery (Apple still has not fully complied with the order).  Apple was looking for any overlap, regardless of how mundane, coincidental, or necessary in the design of any modern SoC.  Apple transparently hoped to do what courts unwaveringly describe as improper:  conduct an expansive fishing expedition and reverse engineer its trade secret claim to match what it found in discovery.  *See Jobscience, Inc. v. CVPartners, Inc.*, No. C 13–04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery."); *Tri Cnty. Telephone Assocoiation, Inc. v. Campbell*, 2018 WL 10399165, at *5 (D. Wyo. Apr. 17, 2018) (In a trade secret case, finding the "[p]laintiff should not have to conduct discovery to amend its Complaint because it should already have the factual basis to assert the claim and place Defendants on sufficient notice as to the specifics of the claim.").

With the benefit of this reverse engineering exercise, Apple engaged in a series of eleventh-hour reinventions of its claimed trade secrets.  Apple's latest trade secret disclosure—its ***seventh*** version—frames a theory of misappropriation that is completely divorced from the allegations in its complaint.  *See* Ex. 2 (Sixth Updated Trade Secret Disclosure).  Far from its initial theory of "stolen documents," Apple now appears to claim that new individuals remembered certain features of Apple's SoCs *in their heads*, and Rivos implemented similar features.  Never mind that these features are readily available in the public domain.

C.      **Apple's Newest Purported Trade Secrets Are Not Secret**

One problem with Apple's "make-it-up-as-we-go" approach to identifying its purported trade secrets is that the trade secrets it now claims are not secrets at all.  Rather, they are decades-old, widely-published technologies, industry knowledge, systems licensed from third parties, and among the most common features found in every modern CPU and SoC.  Apple nevertheless uses technical jargon to attempt to pass these features off as its claimed "trade secrets."  This has resulted in a variety of purported trade secrets being added to (and sometimes removed from) Apple's serial trade secret identifications as it grasps around for something that might stick.

As one example, Apple claimed in its Third Updated Trade Secret Disclosure served on September 1, 2023—more than a year after its initial Trade Secret Disclosure—the use of "███████ ████████████" as its trade secret.  Ex. 1 (Third Updated Trade Secret Disclosure) at 4.  But Apple's 30(b)(6) witness confirmed that ████████████████████████████ ████████████████████████████████.  Ex. 3 (Williamson Tr.) at 76:14-77:6.  Apple's 30(b)(6) witness on this topic further confirmed that other companies ████████████████████████.  *Id.* at 77:7-12.

Apple also claims as its trade secret the ████████ of an ████████████████ ████████████████████████, as well as a handful of other features of an ████████████.  Ex. 1 at 2.  The concept of the ████████████ itself is indisputably public, and has been more for more than a decade.  Ex. 4 (Ishii et al., 2011 publication).  That an ████████████████████████████ is also no secret.  *Id.* at 22 ("The pattern matching is robust to optimization techniques such as ***out-of-order*** execution . . . .") (emphasis added).  Tellingly, Apple does not even claim its ████████████████ as its trade secret.  *See* Ex. 2 (Sixth Updated Trade Secret Disclosure).  Nor could it, as ████████████████ has been public information since at least April 2022 and more details about its ████████████ continue to be analyzed and released on open-source platforms such as GitHub.  *See* Ex. 5 (*Bandwidth and Latency Investigation v.0.90*, GITHUB, https://github.com/name99-org/Aarch64-Explore/tree/main) at 224 ("Apple's primary prefetcher is an AMPM prefetcher.").  Moreover, while Apple did not invent ████████████████, Apple has proactively and extensively disclosed the

1  various features of ███████████ in a number of patents, thus affirmatively disclaiming their

2  "trade secret" status. *See, e.g.*, Ex. 6 (Meier Tr.) at 89:9-13; Ex. 7 (U.S. Patent No. 9,015,422)

3  (disclosing an "Access map-pattern match based prefetch unit" and thrice referencing out-of-order

4  designs); Ex. 8 (U.S. Patent No. 10,621,100) at Abstract (disclosing "an access map-pattern match

5  (AMPM)-based prefetch circuit for a multi-level cache system"); Ex. 9 (U.S. Patent No. 9,904,624)

6  at col. 7, lines 32-34 (disclosing a prefetch circuit with "an access map-pattern match (AMPM)

7  prefetcher with various enhancements"); Ex. 10 (U.S. Patent No. 10,331,567) at col. 6, lines 62-64

8  (disclosing an embodiment in which "the AMPM prefetcher maybe a primary prefetch circuit

9  supported by one or more secondary prefetch circuits"); Ex. 11 (U.S. Patent No. 10,402,334) at

10  Abstract (disclosing "an access map-pattern match (AMPM)-based prefetch circuit with features

11  designed to improve prefetching accuracy"). Nor is there any evidence that Rivos based its

12  prefetcher on Apple's design. Rather, Rivos implemented and improved upon the ready-to-use

13  ███████████ performance model that is available in a widely used, publicly available, *open*

14  *source* model, gem5.

15      Likewise, ███████████ branch predictors have been public since at least 2006, are

16  routinely taught to engineering college students, and have repeatedly won a closely-watched, annual

17  industry competition designed to publicly crown the highest-performing branch predictors. *See* Ex.

18  12 (Seznec & Michaud 2006 publication). It is no surprise, let alone a secret, that ███████████

19  ███████ branch predictors perform well and are adapted widely in the semiconductor industry.

20  The specific configurations of the ███████████ branch predictors that Rivos uses—and that

21  Apple claimed as its own trade secrets only *after* seeing Rivos' detailed technical documents (Ex. 1

22  at 3)—are mundane parameters, guidance for which was provided in the 2006 ███████████

23  paper (Ex. 12). Regardless, as Apple's 30(b)(6) witness testified, Apple's specific configurations

24  ███████████. Ex. 13 (Al-Otoom Tr.) at 47:7-25; 53:1-

25  7; 113:17-114:5; 144:8-12. Rivos' megacell indisputably has different dimensions, and therefore

26  requires and uses *different* ███████████ configurations.

27      As another example, in Apple's Fifth Updated Trade Secret Disclosure (Ex. 14), served on

28  October 18, 2023, Apple identified for the first time the ███████████

-7-

1   ███████. But any high performing CPU, whether created by Apple or by anyone else, contains ████.

2   Indeed, Apple's 30(b)(6) witness on this purported trade secret confirmed that Apple ██████████

3   ██████████████████████████████████████████████████████. Ex.

4   15 (Allegrucci Tr.) at 31:22-32:5. Apple nonetheless persists in asserting this ███████████████

5   ███████ (for which Apple ███████████████████) as its own trade secret.

**D.   Apple Has Known About the Proposed Defendants for Months**

6

7        Against this backdrop, Apple now seeks to add three new individuals as defendants in this

8   action: Mahesh Reddy, CC Lee, and Deepak Limaye.

**1.   Deepak Limaye**

9

10       Mr. Limaye worked at Apple for nearly ten years. When he resigned from Apple, Apple

11  "███████████████████████," but Mr. Limaye wanted to pursue the opportunity at Rivos.

12  Ex. 16 (APL-RIVOS_00008905). Sri Santhanam reported to Johny Srouji, the head of Apple's

13  Hardware Technology division, that Mr. Limaye was a "██████████████" whose loss was

14  "███████" for Apple. Ex. 25 (APL-RIVOS_00508337) at -8338. Apple physically escorted Mr.

15  Limaye out of the building following a cursory "exit interview," and Mr. Limaye began working at

16  Rivos on June 29, 2021.

17       Almost a year later, on April 29, 2022, the same day that Apple initiated this lawsuit, Apple

18  sent Mr. Limaye a threatening letter announcing that Apple had sued his new employer and his new

19  coworkers. Ex. 26. Apple said it was "reminding" Mr. Limaye of his obligation to return any Apple

20  proprietary or trade secret information in his possession, and putting him on notice that he should

21  preserve evidence in connection with the lawsuit. Although Apple had his Apple-issued devices for

22  months, and had forensically inspected the devices of each employee departing Apple to join Rivos,

23  Apple did not accuse Mr. Limaye of any wrongdoing.

24       On July 12, 2023 (more than a month before filing its operative TAC), Apple deposed Mr.

25  Limaye. Apple used the deposition as an opportunity to pry into the roles of nearly every former

26  Apple employee at Rivos. During that deposition, Apple obtained a roster of Rivos' engineers and

27  descriptions of each of their responsibilities working on Rivos' SoCs, including that Mr. Reddy was

28  one of the primary engineers responsible for designing Rivos' branch predictor table configurations.

Ex. 17 (Limaye Tr.) at 65:2-7, 66:10-17.  Mr. Limaye made clear that no Apple confidential information was used for any purpose at Rivos.  *Id.* at 82:15-83:7 ("Q.  Do you know of any instance at Rivos when someone has used Apple confidential information for any purpose?  A.  No.  Q.  Do you know of any instance at Rivos where a former Apple employee has used information that they learned at Apple in making a design choice at Rivos?  A.  No.").  Apple waited until more than four months later, and just days before the close of fact discovery, to move to add Mr. Limaye as a defendant in this action.

            2.      Mahesh Reddy

    Mahesh Reddy worked at Apple for over ten years.  When he announced his intention to resign from Apple to join Rivos, Apple tried to convince him to stay.  Apple offered him a retention grant and warned him about "███" associated with joining a start-up.  Ex. 18 (APL-RIVOS_00009159).  Ultimately, however, Mr. Reddy decided that joining Rivos was the right thing for him to do at that point in his career.  Before his departure, Apple never took any meaningful effort to actually instruct him regarding the retention of the so-called "Apple information."  In fact, Mr. Reddy was not directed to sign an "exit checklist" until August 16, 2021, six days *after* Mr. Reddy was physically escorted off of Apple's premises.  Mr. Reddy joined Rivos shortly thereafter.

    On April 29, 2022, the same day that Apple initiated this lawsuit, Apple sent Mr. Reddy the same letter it had sent to Mr. Limaye (and dozens of other former Apple employees) threatening him with a lawsuit if he did not return any Apple proprietary or trade secret information in his possession.  Ex. 27.  Despite having the ability for months to examine Mr. Reddy's Apple-issued devices that he returned upon departure, Apple did not accuse Mr. Reddy of any misconduct.

    Apple waited nearly 18 months to take Mr. Reddy's deposition, and finally did so on September 27, 2023.  For hours, Apple exhaustively pored over the details of his work at both Apple and Rivos.  Apple repeatedly asked Mr. Reddy whether "any Apple information" was used in deciding on certain features in Rivos' technology.  Mr. Reddy repeatedly answered it was not.  Ex. 23 (Reddy Tr.) at 107:16-108:3.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO AMEND COMPLAINT

3.     <u>CC Lee</u>

Like Mr. Reddy, Mr. Lee worked for Apple for over ten years.  Mr. Lee resigned from Apple to join Rivos in early August 2021.  When Apple learned of his resignation, its reaction was, "███." Ex. 19 (APL-RIVOS_00009348) at 9349.   Apple then deployed its "████████████," conducting a cursory interview of Mr. Lee and quickly walking him out of the building.

On April 29, 2022, Apple got substantially the same threatening letter as his coworkers at Rivos. Ex. 28. In that letter, Apple accused Mr. Lee of *deleting* certain data and his internet browser history from his Apple-issued laptop before returning the device to Apple. *But see* Ex. 20 (Murray Tr.) at 249:17-250:8 (Apple's 30(b)(6) witness testifying that there can be ████████████ ███████████████████████████████████████████████████████). As in its other letters, Apple threatened to sue Mr. Lee if he retained any purported "Apple information."  Apple did not take Mr. Lee's deposition until October 3, 2023. During that deposition, Mr. Lee confirmed that he did not discuss ████████████with anyone at Rivos. Ex. 21 (Lee Tr.) at 58:21-59:10.  He further confirmed that he ████████████ ██████████████████████████████████████. *Id.* at 59:24-60:4.

E.     <u>Apple Waited Until the Eleventh Hour to File Its Motion</u>

On September 26, 2023, Apple deposed Ryan Meek, a former Apple employee who joined Rivos in February 2022, and to whom Apple sent the same threatening letter in April 2022. Ex. 29. During that deposition, Mr. Meek provided extensive testimony and explained extensive documentation regarding Rivos' independent development of its data prefetcher.  Apple points to one tiny snippet of Mr. Meek's testimony as the basis for seeking to add the Proposed Defendants— though Apple still waited a month after that deposition to file its motion.

On October 13, 2023—more than one week after Mr. Lee's deposition, two weeks after Mr. Meek and Mr. Reddy's depositions, and three months after Mr. Limaye's deposition—the parties stipulated to a revised case schedule, setting the close of written fact discovery to October 25, 2023, the last day for depositions to December 1, 2023, and the deadline for opening expert reports to February 15, 2024. Dkt. 289. At no point during the parties' negotiation of this schedule did Apple

1   mention its intention to amend its complaint to add additional defendants.  The Court so-ordered the
2   parties' stipulated schedule on October 16, 2023.  Dkt. 290.

3        Then, on October 19, just days before the close of written fact discovery, in a blatant effort
4   to exert additional pressure on Rivos in the midst of other discovery disputes, Apple asked
5   Defendants to consent to Apple filing yet another amended complaint adding the Proposed
6   Defendants and a host of new allegations of misappropriation against Rivos.  Defendants declined
7   to consent, but the parties never met and conferred.

8        One business day later on October 24—the eve of the close of written discovery—Apple
9   filed a threadbare *administrative* motion under Local Rule 7-11, requesting leave to file a fourth
10  amended complaint and to negate the long-since-lapsed deadline to add parties.  As Defendants
11  pointed out—and Apple admitted—the form of Apple's motion was procedurally improper.  Dkts.
12  303, 308.  It also lacked any meaningful support or justification for the extreme relief it sought.
13  Apple is not permitted to use its Reply to backfill the numerous deficiencies in its Motion.  *Regents*
14  *of Univ. of California v. LTI Flexible Prod., Inc.*, No. 3:20-CV-08686-WHO, 2021 WL 4133869, at
15  *9 (N.D. Cal. Sept. 10, 2021) ("Entirely new arguments raised for the first time in reply are
16  improper.").

17  **III.   LEGAL STANDARD**

18       Where "a pretrial scheduling order has been entered that sets a deadline to amend the
19  pleadings and that deadline has passed, [ ] Rule 16(b) governs."  *Hayward Property, LLC v.*
20  *Commonwealth Land Title Insurance Company*, 2021 WL 4927012, at *2 (N.D. Cal. Sept. 28, 2021)
21  (internal citation omitted).  "[U]nder those circumstances, a party must meet the more stringent
22  requirement of Rule 16(b), which requires a showing of good cause."  *Experexchange, Inc. v.*
23  *Doculex, Inc.*, 2009 WL 3837275, at *28 (N.D. Cal. Nov. 16, 2009).

24       Good cause exists "where pretrial deadlines cannot reasonably be met despite the diligence
25  of the party seeking the extension."  *Hayward Prop.*, 2021 WL 4927012, at *3 (internal citation
26  omitted).  If the moving party has not been diligent, "the inquiry should end and the motion should
27  be denied."  *Id.*; *see also Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002).  Even
28  if the moving party meets its burden of demonstrating good cause, it still must then "demonstrate

that leave to amend is warranted under Rule 15(a)." *Id.*  Motions for leave to amend should not be granted if the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (affirming the district court's denial of plaintiff's motion for leave to amend).  The factor of prejudice carries the most weight in the Court's analysis. *Hayward Prop.,* 2021 WL 4927012 at *3.

## IV.   ARGUMENT

### A.   Apple Has Not Shown Good Cause to Add New Defendants and Allegations at This Late Date, as Rule 16 Requires

Apple has no good cause to join three new defendants and a host of new substantive allegations over a year after the joinder deadline passed, and ***after*** the close of fact discovery.  "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal citation omitted).

Apple has not demonstrated the required diligence for adding any of the three Proposed Defendants and thus cannot meet its burden of establishing good cause; thus "the inquiry should end and the motion should be denied." *Hayward Prop.*, 2021 WL 4927012 at *3.  Apple's claim that its Motion was prompted by "recently discovered" facts is, at best, pretextual.  Apple has known about the three Proposed Defendants since April 29, 2022 at the latest, when it filed this lawsuit and simultaneously sent each of them demand letters.  And Apple has had Rivos' technical specifications since May 2023.  These specifications detail the Rivos technology that underlie the new allegations Apple did not ask to add until the instant motion.  In August 2023, Apple filed a Third Amended Complaint (Dkt. 256) that added a raft of new allegations regarding alleged retention of Apple documents by the Individual Defendants.  But despite having received extensive discovery, including these (and other specifications), and using that discovery to add allegations regarding the named Defendants, Apple did not seek to add any new defendants to the case.

Apple's request to add new defendants at this late date is analogous to the request this District considered in *Best Label Co., LLC v. Custom Label & Decal, LLC*, 2021 WL 5415260 (N.D.

Cal. Nov. 19, 2021).  There, the court denied a motion for leave to amend to add new defendants for failure to show good cause under Rule 16 because allowing amendment would result in "[r]ewarding Plaintiff's untimely actions [and] cause undue delay." *Id.* at *6.  Just as in *Best Label*, allowing amendment here would reward Apple's strategic discovery decision to delay depositions, and to sit on its supposedly (but not actually) "new" evidence for weeks if not months.  Allowing amendment would also cause undue delay in the case schedule, as "[b]oth the current and new defendants will need to conduct additional discovery [and] reformulate their case strategy" to account for Apple's latest reinvention of its claims.  *Id.*

Even if it were true that Apple only learned of certain aspects of the Proposed Defendants' roles more recently (and Apple has not established even that much), any delay was the result of Apple's own failure to articulate its claims and the meandering and overbroad discovery campaign it waged as a result.  Apple was indisputably aware of the Proposed Defendants in April 2022, when it initiated this case and sent letters threatening litigation against each of them.  Nevertheless, Apple waited until July 2023 to depose Mr. Limaye, until September 2023 to depose Mr. Reddy, and until October 2023 to depose Mr. Lee—and then weeks or even months after those depositions to seek leave to amend.  That was a strategic decision that Apple made, with full knowledge that the case schedule required any new defendants be added by September 19, 2022.  Its dilatory tactics should not be rewarded.  *See Demoura v. Ford*, No. 1:09-CV-01344-LJO, 2012 WL 1898905, at *8 (E.D. Cal. May 23, 2012) (denying motion to amend complaint to add new defendants were Plaintiff delayed in propounding discovery seeking the names of the proposed defendants, while knowing that a scheduling order was in place).  In light of Apple's delay in seeking discovery, "the Court cannot conclude that there is good cause to modify the scheduling order to allow Plaintiffs to join new parties." *Id.*

Even if Apple had been diligent in seeking discovery regarding the purported roles of the Proposed Defendants, Apple did not seek to amend the Rule 16 deadline when the parties stipulated to adjust the case schedule.  Instead, Apple waited weeks before springing the request to add new parties on Defendants.  Apple's lack of diligence is fatal to its request for leave.  *See Experexchange, Inc.*, 2009 WL 3837275, at *29 ("If that party was not diligent, the [Rule 16] inquiry should end.").

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO AMEND COMPLAINT

### B.      <u>Apple Cannot Meet the Requirements of Rule 15</u>

Even if Apple had demonstrated good cause, and it has not, Apple cannot carry its burden for amendment under Rule 15 of the Federal Rules of Civil Procedure.

#### 1.      <u>Apple's Proposed Addition of New Defendants Is Prejudicial</u>

The most important factor under Rule 15 is prejudice to the opposing party.  *See Hayward Prop.*, 2021 WL 4927012 at *3.  Here, Defendants and the three Proposed Defendants will face substantial prejudice if Apple is permitted to add new defendants at this late stage of the case. Messrs. Limaye, Reddy, and Lee will be added to a sprawling trade secret dispute *after fact discovery has closed*.  Apple asserts that the need to conduct new discovery does not constitute prejudice (*see* Br. At 5), but in both cases that Apple relies on for this argument, the amendments involved adding a new cause of action based on the same facts that were previously alleged—not adding new *defendants* or new factual allegations as Apple seeks to do here.  *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. Iptronics Inc.*, 2012 WL 3835107, at *1 (N.D. Cal. Sept. 4, 2012) (granting request to plead new tort claims against existing defendants); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1159 (N.D. Cal. 2010) (same).

Where plaintiffs seek to add *new defendants*, as Apple does here, courts recognize the obvious prejudice that arises from adding them late in discovery—let alone *after* fact discovery has closed, as Apple seeks to do here.  Apple may not want further discovery from the Proposed Defendants, as it has already subpoenaed and deposed them and had a full opportunity to examine their Rivos and *personal* devices, iCloud accounts, and email accounts.  But the new proposed defendants have not had that luxury.  Messrs. Limaye, Reddy, and Lee are entitled to discovery necessary to defend themselves against Apple's accusations (as one example, they have not had any access to the Apple devices they used while at Apple, and that Apple thoroughly examined before threatening to sue them in April 2022).  Nor have they had the opportunity to depose or seek documents about their work at or exits from Apple, including discovery from the specific people with whom they worked.  These individuals will indisputably be prejudiced if they are denied the right to pursue that discovery.  *See Demoura*, 2012 WL 1898905, at *9 (finding proposed defendants would "have essentially no time to conduct discovery, file any pretrial motions, or otherwise

adequately defend their case, as the deadlines for both non-expert and expert discovery are only weeks away."); *Wilson v. Frito-Lay N. Am., Inc.*, 2017 WL 3478776, at *4 (N.D. Cal. Aug. 14, 2017) (finding that allowing substitution of the named plaintiff after discovery and dispositive briefing would substantially prejudice the defendant). In fact, the case for denying amendment here is even stronger than it was in *Demoura*: the close of fact discovery is not weeks away (as it was in *Demoura*); it has already passed. The Proposed Defendants would therefore lack *any* opportunity to seek the discovery they need to defend themselves, unless they take on the added prejudice (for them and the other parties) of letting discovery drag on much longer.

Additionally, the current Defendants will be prejudiced by the addition of these proposed defendants and the new factual allegations attendant thereto. For example, Apple claims that the proposed defendants show that Rivos is "using" Apple purported trade secrets, a claim that expands the scope of this case and that Rivos is entitled to explore. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (affirming finding of prejudice where new cause of action would require party "to conduct discovery on each new registrant" after close of discovery).

Given the need to conduct additional discovery into Apple's claims involving these proposed defendants, the existing case schedule will necessarily be delayed. Tacking on several months for more discovery is not a cure for the prejudice from Apple's late additions; it is simply more prejudice in itself. *Demoura*, 2012 WL 1898905, at *9 (explaining that "amending all of these deadlines and delaying the trial prejudices the defendants currently named in the litigation"); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of motion to amend to add a new cause of action where Plaintiff "made the motion on the eve of the discovery deadline" and allowing the motion would have "required re-opening discovery, thus delaying the proceedings").

Indeed, the longer the cloud of litigation remains over Defendants, the more they are harmed. Defendants have been subject to, and have borne the costs of, Apple's no-stone-left-unturned discovery tactics for the past eighteen months. Defendants have expended significant attorneys' fees, as well thousands of hours of employee time, which has materially impacted Rivos' ability to conduct normal operations and has distracted from its core business. The cloud of litigation has also

1   cost Rivos investment opportunities and has had a chilling effect on potential customers and
2   potential employees.  Defendants are entitled to a timely trial to clear their name once and for all.[2]

                    2.      Apple's Proposed Amendments Are Futile

4          Apple's proposed amendments are also futile—another key factor under Rule 15 that Apple
5   brushes aside in one sentence.  Br. at 6.

6          *First*, and as discussed above, Apple's purported trade secrets are not actually secrets at all,
7   and this forecloses Apple's new claims as a matter of law.  Instead, they are elements of technology
8   that Apple has publicly disclosed in patents, obtained from third parties (without exclusive licenses),
9   and implemented without alteration, or based on decades-old concepts that are well known within
10  the industry, routinely published in academic papers, and the subject of closely-followed public
11  industry competitions.  Apple's Motion and the accompanying proposed amended complaint are so
12  exceedingly vague that they fail to identify the purported trade secrets that Apple contends the
13  Proposed Defendants allegedly misappropriated.  *See, e.g.*, *Lamont v. Conner*, No. 5:18-CV-04327-
14  EJD, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where
15  "Plaintiff's description of his trade secrets as stated in the complaint are not plead with sufficient
16  particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144  (N.D. Cal. 2019)
17  (dismissing claim where plaintiff "fail[ed] to identify its allegedly misappropriated trade secrets
18  with sufficient particularity to state a claim under the DTSA"); *Space Data Corp. v. X*, 2017 WL
19  5013363, at *2 (N.D. Cal. Feb. 16, 2017) (a "plaintiff must describe the subject matter of the trade
20  secret with sufficient particularity to separate it from matters of general knowledge in the trade or
21  of special persons who are skilled in the trade") (internal quotation omitted).  While unclear from
22  the proposed amendment, the deposition testimony on which Apple relies in its Motion suggests
23  that the so-called "trade secret" that Apple alleges Messrs. Limaye and Lee "misappropriated" is
24  ██████████████████████████████████████████████.

---

[2] Unfortunately, the reputational harm to the Individual Defendants will likely persist even after a
positive trial result as their names will forever be associated with the allegation of trade secret
misappropriation, albeit meritless, raising questions from any potential employers if not altogether
barring them from consideration by any future employers.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO
AMEND COMPLAINT

As discussed above, not only is that fact ***not*** a claimed trade secret (Ex. 2), it is already widely in the public domain (Ex. 5), and Apple made it more obvious by disclosing a host of specific ███████████████████████████ in its many patent filings. Ex. 6 (Meier Tr.) at 87:23-25, 89:9-89:13, 122:13-123:20, 143:13-144:23, 154:6-16, 165:1-11, 165:21-169:7, 176:7-14, 188:14-189:4, 194:23-195:11; Exs. 7-11 (Apple's patent disclosures). Perhaps elucidating Apple's approach to identifying "trade secrets" in this case, Apple's 30(b)(6) witness testified that "███████ ███████████████" Ex. 22 (Santhanam Tr.) at 60:15-16. Of course this is not correct, and Apple's disclosure of these things in patents eliminates any ability to claim them as trade secrets as a matter of law. *See, e.g., Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (plaintiff lacked standing to assert a DTSA claim because Google's 2012 patent applications placed the information in the public domain and necessarily extinguished its trade secret status, as it is "well-settled that publication of information in a patent application eliminates any trade secrecy"); *Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013) (granting motion to dismiss where alleged trade secret counterclaim was based on information disclosed one time in a patent application).

As for Mr. Reddy, while neither the motion nor the proposed amended complaint state what he is accused of doing wrong that would justify adding him at this late stage, based on the cited testimony it appears that Apple alleges Mr. Reddy misappropriated certain table configurations of Apple's ██████████████ branch predictor. But as discussed above, Apple's table configurations are of no use to Rivos, and derive no value from being secret, ██████████████ ███████████████████████████████████████████, and are not alleged to have been misappropriated here. Ex. 13 (Al-Otoom Tr.) at 47:7-25; 113:17-114:5; 144:8-12. It is undisputed that Rivos purchases its megacell from a third-party vendor and has very limited input on the dimension of the megacell manufactured by a third party. Working backwards from the limited options imposed by the third party, Mr. Reddy derived the appropriate table configuration for Rivos' ██████████████ tables—a process that Mr. Reddy painstakingly explained in his deposition, including performing a calculation to show the math. Ex. 23 (Reddy Tr.) at 77:21-78:12, 80:18-81:8, 94:13-96:19. And as Mr. Reddy confirmed over and over again,

-17-

no part of this process or what Rivos does has anything to do with Apple's information.  *Id*. At 78:13-22 (testifying that he does not know ███████████████); 107:16-108:3 (confirming that no one considered their work at Apple or ████████████ in developing Rivos' own table configuration).  Indeed, this explains why the table configurations for Rivos' branch predictor are *different* from Apple's.  Apple's conclusory and non-substantive allegations are based on flawed assumptions and overreaching; they cannot survive a motion to dismiss and are therefore futile.

 Second, the handful of cherry-picked, out-of-context deposition excerpts that Apple relies on do not support its proposed amended allegations.  For example, Mr. Reddy confirmed not once, not twice, but *three times* that no one at Rivos considered any work that had been performed at Apple in developing Rivos' own CPU components.  Ex. 23 (Reddy Tr.) at 107:16-108:3 ("Q.  Is it your testimony that they – nobody considered their work at Apple or █████████████ ████████████████? A.  That is correct.  Q.  Is it your testimony that nobody considered their work at Apple or █████████████████? A.  That is correct.  Q.  Is it your testimony that nobody considered their work at Apple or ███████████ ██████████████? A.  That is correct.").  Apple simply ignores that testimony and alleges the opposite.

 Apple relies primarily on Mr. Meek's testimony to claim that Mr. Lee and Mr. Limaye told Mr. Meek that Apple uses ██████████.  Setting aside that Apple's latest trade secret identification (its *seventh*) does not even claim Apple's use of ███████████████ as a trade secret (Ex. 2 at 2), Apple omits that Mr. Meek testified that "I don't know specifically that Apple has an ████████," and that he only had "a strong *suspicion* that [Apple does]" because he was aware that Apple has a public patent claiming a form of ██████████.  Ex. 24 (Meek. Tr.) at 152:6-9; 152:22-153:9; *see also* Ex. 21 (Lee Tr.) at 57:23-58:11 ("Q.  Did you tell Ryan Meek that Apple used an ██████████? … A.  No.").  Even the narrow snippet of testimony from Mr. Meek that Apple relies on is qualified and uncertain, and Apple does not identify a single thing that Mr. Lee or Mr. Limaye supposedly told Mr. Meek that is not also available, essentially verbatim, in numerous public sources.  Ex. 5 at 224; Exs. 7-11 (Apple's patent disclosures).  As Mr. Limaye explained (and the documentary record confirms), Mr. Meek selected

-18-

1   an ████████████ after conducting a thorough "literature survey and look[ing] at what was state
2   of the art." Ex. 17 (Limaye Tr.) at 38:6-14.  Furthermore, Rivos "used an open-source simulator,
3   which already had an ████████████ built in, and used that to evaluation whether it would serve
4   [Rivos'] needs." *Id.*  This is typical work for an engineer, and Apple's omission of these facts, and
5   its attempt to state a claim based on "misappropriation" of demonstrably public information cannot
6   support a claim.

7         *Third*, Apple's proposed amendments are expressly premised on the theory that the Proposed
8   Defendants "gained knowledge" regarding Apple's CPU design while employed at Apple, they are
9   working in a similar field at Rivos, and therefore they must have used knowledge about Apple's
10  design when designing Rivos' CPU.  Ex. J. ¶¶ 223-25.  This is the epitome of "inevitable
11  disclosure," a ***sanctionable*** theory that has been soundly rejected under California law.  *See Whyte*
12  *v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002) (rejecting inevitable disclosure theory as
13  inconsistent with California Business and Professions Code section 16600 and noting that "the
14  inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened
15  misappropriation of trade secrets"); *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111,
16  1120 (N.D. Cal. 1999) ("California trade-secrets law does not recognize the theory of inevitable
17  disclosure; indeed, such a rule would run counter to the strong public policy in California favoring
18  employee mobility.").  Apple's barely-disguised inevitable disclosure theory is all the more apparent
19  given that its purported "trade secrets" are widely and specifically disclosed in the public domain,
20  or are not in use at Rivos at all.

21        Apple's flawed allegations cannot survive a motion to dismiss and are therefore futile.  For
22  this additional reason, Apple's Motion should be denied.

23              3.    Apple's Belated Request to Amend Its Complaint and Extend the Case
24                    Schedule Is Made in Bad Faith

25        Apple has had knowledge of the Proposed Defendants since they resigned from Apple over
26  two years ago.  Apple was closely focused on their departures and tried to dissuade them from
27  leaving.  And although it did not take any meaningful or serious effort to ensure they were not
28  retaining material from their time at Apple (even if inadvertently), it engaged in "security theater"

-19-

1   by escorting them out of the building on the spot as though they were criminals—their only "crime"

2   being that they dared to leave Apple to work for a startup.  Once they were gone, Apple scoured

3   their Apple-issued devices (including any personal information that was automatically synced to

4   those devices due to Apple's policy of having employees intermingle work and personal material)

5   looking for any evidence of "retained" material or other "wrongdoing."

6        Not only was Apple keenly aware of their departures, but Apple sent each of them a letter in

7   April 2022 threatening to sue them on the same day it filed its complaint against Rivos (their new

8   employer).  Apple then spent over eighteen months putting Rivos and the former Apple employees

9   that Rivos had hired—including the Proposed Defendants—inside out through extensive, invasive

10  discovery.  Throughout all of that time, Apple did not seek to add the Proposed Defendants to its

11  case, nor to take their depositions, nor to seek to amend the Court-ordered case deadlines that had

12  long been in place.  It was only on the eve of the close of fact discovery, when Apple was looking

13  for additional leverage with which to pressure Rivos, and when it was too late for the Proposed

14  Defendants to mount any defense without the severe prejudice of yet more extended litigation, that

15  Apple sprung the addition of the Proposed Defendants.

16       The continuance that would be necessitated by Apple's untimely amendments would

17  severely prejudice Defendants, including by increasing the costs of litigation.  Apple has spent the

18  last eighteen months employing a delay and exhaust strategy, trying to litigate Rivos out of resources

19  before Defendants get their day in Court.  The addition of new defendants and allegations after the

20  close of fact discovery would deprive both Defendants and the Proposed Defendants of their due

21  process rights under the current case schedule.  *See, e.g.*, *Best Label Company, LLC*, 2021 WL

22  5415260, at *6 ("Both the current and new defendants will need to conduct additional discovery,

23  reformulate their case strategy, and determine whether to engage separate representation.  The three

24  new defendants will also require additional time to respond to the operative complaint, and have

25  less than two months to file a motion for summary judgment, and less than four months to prepare

26  their defenses for the March 28, 2021 trial.  Requiring them to do so under the current case schedule

27  will cause extreme prejudice."); *Edwards Lifesciences LLC v. Cook Inc.*, 2008 WL 913328, at *3

28  (N.D. Cal. 2008) (denying leave to amend answer because the amendment "will cause Plaintiffs to

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO
AMEND COMPLAINT

1   incur additional legal costs that could have been prevented if the inequitable conduct claim was

2   asserted in 2006").  A continuance to allow additional discovery will only embolden Apple to double

3   down on its tactics and force Defendants to expend even more resources in a case where discovery

4   was supposed to have ended.  That is prejudicial.  Defendants are entitled to an end of discovery

5   and to their day in Court to clear their names.  Apple's request is made in bad faith, and should be

6   denied.

7   **V.**    **<u>CONCLUSION</u>**

8        For the foregoing reasons, Defendants respectfully request that the Court deny Apple's

9   motion to amend the case schedule to add Messrs. Limaye, Reddy, and Lee as defendants to this

10  action.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR LEAVE TO
AMEND COMPLAINT

1

2   DATED:  November 22, 2023                     Respectfully submitted,

3                                                 QUINN EMANUEL URQUHART & SULLIVAN,
                                                  LLP
4

5

6                                                 By _____/s/ David Eiseman_____

7                                                     DAVID EISEMAN
                                                     RYAN LANDES
8                                                     VICTORIA B. PARKER
                                                     ELLE X. WANG
9

10                                                   Attorneys for Defendants and Counterclaim
                                                     Plaintiffs Rivos Inc., Wen Shih-Chieh a/k/a Ricky
11                                                   Wen, Jim Hardage, Weidong Ye, Laurent Pinot,
                                                     Prabhu Rajamani and Kai Wang
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28