QUINN EMANUEL URQUHART & SULLIVAN, LLP
  David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
  Victoria B. Parker (Bar No. 290862)
  vickiparker@quinnemanuel.com
  Elle Xuemeng Wang (Bar No. 328839)
  ellewang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa St.
Los Angeles, CA 90017
Telephone:     (213) 443-3145
Facsimile:     (213) 443-3100

Attorneys for Defendants and Counterclaim
Plaintiffs Rivos Inc., Wen Shih-Chieh a/k/a
Ricky Wen, Jim Hardage, Weidong Ye, Laurent
Pinot, Prabhu Rajamani and Kai Wang

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 5:22-CV-2637-PCP |
| Plaintiff, | **OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' AMENDED COUNTERCLAIMS** |
| vs. | |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG, | |
| Defendants. | Courtroom: 8 |
| | Judge: Hon. P. Casey Pitts |
| RIVOS INC., WEN SHIH-CHIEH a/k/a RICKY WEN, JIM HARDAGE, WEIDONG YE, LAURENT PINOT, PRABHU RAJAMANI, AND KAI WANG, | Date Action Filed: April 29, 2022 |
| Counterclaim Plaintiffs, | |
| vs. | |
| APPLE INC., | |
| Counterclaim Defendant. | |

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

II. INTRODUCTION ....................................................................................................... 1

III. FACTUAL BACKGROUND ...................................................................................... 2

    A. Apple Forces Employees to Sign the Overbroad Apple IPA ...................... 2

    B. Frustrated with Employee Attrition, Apple Launches an Anticompetitive
       Campaign to Quell Employee Mobility ...................................................... 3

    C. Apple's Conduct Harms Counterclaim Plaintiffs and the Market ............... 5

IV. LEGAL STANDARD ................................................................................................. 5

V. ARGUMENT .............................................................................................................. 6

    A. Counterclaim Plaintiffs Plausibly Allege that the Apple IPA Is
       Unenforceable ............................................................................................. 6

          1. Apple's Interpretation and Application of the Apple IPA's
             Overbroad NDA Is Unlawful ........................................................ 6

          2. The Apple IPA's Non-Solicit Provision Violates California Law ................. 9

          3. Counterclaim Plaintiffs Have Standing to Challenge the Apple IPA ......... 11

    B. Counterclaim Plaintiffs Plausibly Allege Unfair Competition in Violation of
       Section 17200 ............................................................................................ 14

          1. The Counterclaims Allege Unlawful and Unfair Conduct by Apple .......... 14

          2. The Counterclaims Plausibly Allege Harm as a Result of Apple's
             Conduct ....................................................................................... 17

          3. An Injunction Against Apple's Unlawful and Unfair Conduct Is
             Appropriate .................................................................................. 19

    C. If the Court Grants Apple's Motion to Any Extent, It Should Grant Leave to
       Amend ........................................................................................................ 20

VI. CONCLUSION ......................................................................................................... 21

Case No. 5:22-CV-2637-PCP
OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## Cases

*Action Learning Sys., Inc. v. Crowe*,
  2014 WL 12564011 (C.D. Cal. Aug. 11, 2014) ...................................................7

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
  630 F. Supp. 2d 1084 (N.D. Cal. 2009) .......................................................... 14

*Aramark Mgmt., LLC v. Borgquist*,
  2021 WL 3932258 (C.D. Cal. July 8, 2021) .............................................10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................5

*Barker v. Insight Glob., LLC*,
  2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ......................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................5, 6, 8, 12, 19

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................................ 19

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
  461 U.S. 731 (1983) ......................................................................................... 20

*Brown v. TGS Mgmt. Co., LLC*,
  57 Cal. App. 5th 303 (2020) ..........................................................................6, 7

*Carrillo v. Wells Fargo Bank, N.A.*,
  2023 WL 5423015 (C.D. Cal. May 18, 2023) ................................................. 18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...............................................................................14, 15

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) ..................................................................................... 18

*Conversion Logic, Inc. v. Measured, Inc.*,
  2019 WL 6828283 (C.D. Cal. Dec. 13, 2019) ................................................. 10

*Couch v. Morgan Stanley & Co.*,
  2015 WL 4716297 (E.D. Cal. Aug. 7, 2015), *aff'd*, 656 F. App'x 841 (9th Cir.
  2016).............................................................................................................10, 11

-i-                                                          Case No. 5:22-CV-2637-PCP
OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

*Creative Mobile Techs., LLC v. Flywheel Software, Inc.*,
    2016 WL 7102721 (N.D. Cal. Dec. 6, 2016) ..................................................... 16

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) ............................................................................... 21

*Domtar AI Inc. v. J.D. Irving, Ltd.*,
    43 F. Supp. 3d 635 (E.D.N.C. 2014) .................................................................. 12

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 4th 564 (2009) ............................................................................... 7

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937, 189 P.3d 285 (2008) ...........................................................9, 17

*Ellsworth v. U.S. Bank, N.A.*,
    908 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................. 15

*Gartner, Inc. v. Parikh*,
    2008 WL 11336333 (C.D. Cal. Oct. 10, 2008) .................................................. 10

*Gizmo Beverages, Inc. v. Park*,
    2017 WL 6941362 (C.D. Cal. Sept. 18, 2017) ................................................... 19

*Gomez v. Nationstar Mortg. LLC*,
    2015 WL 966224 (E.D. Cal. Mar. 4, 2015) ....................................................... 14

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Action Immigr. Bonds & Ins.
    Servs., Inc.*,
    2014 WL 12600146 (C.D. Cal. Mar. 24, 2014) ................................................. 18

*GSI Tech., Inc. v. United Memories, Inc.*,
    2013 WL 12172990 (N.D. Cal. Aug. 21, 2013) ................................................. 17

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008).............................. 20

*Hamilton v. Juul Labs, Inc.*,
    2020 WL 5500377 (N.D. Cal. Sept. 11, 2020) .................................................. 11

*Healy v. Qognify, Inc.*,
    2020 WL 136589 (C.D. Cal. Jan. 10, 2020) ...................................................... 13

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) .............................................................. 17

*Imtiaz Khan v. K2 Pure Sols., LP*,
    2013 WL 4734006 (N.D. Cal. Sept. 3, 2013) .................................................... 13

*Kordich v. Salton, Inc.*,
    2005 WL 8173161 (S.D. Cal. July 5, 2005) ............................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................................. 18

*Lafferty v. Wells Fargo Bank*,
    213 Cal. App. 4th 545 (2013), *as modified on denial of reh'g* (Feb. 27, 2013) ....................... 20

*Lakeland Tours, LLC v. Bauman*,
    2014 WL 12570971 (S.D. Cal. Aug. 19, 2014) ............................................................. 16

*Latona v. Aetna U.S. Healthcare Inc.*,
    82 F. Supp. 2d 1089 (C.D. Cal. 1999) ......................................................................... 19

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .................................................................................... 16

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) .................................................................................... 21

*Luttrell v. Hart*,
    2020 WL 5642613 (N.D. Cal. Sept. 22, 2020) ............................................................... 6

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
    2009 WL 10670877 (C.D. Cal. Aug. 18, 2009) ............................................................. 18

*Minnesota Life Ins. Co. v. Link-Allen & Assocs., Inc.*,
    2021 WL 9860789 (N.D. Cal. Jan. 22, 2021) ............................................................... 10

*Murj, Inc. v. Rhythm Mgmt. Grp., Inc.*,
    2022 WL 3589574 (N.D. Cal. Aug. 22, 2022) ............................................................... 16

*O'Sullivan Films v. Neaves*,
    2017 WL 4798997 (W.D. Va. Oct. 24, 2017) ............................................................... 12

*Parsable, Inc. v. Landreth*,
    2022 WL 19692034 (N.D. Cal. Aug. 5, 2022) ................................................................. 9

*Progressive West Ins. Co. v. Superior Court*,
    135 Cal. App. 4th 263 (2005) ..................................................................................... 15

*Reilly v. Apple Inc.*,
    2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) ............................................................... 16

*Sanabria v. Small Bus. Lending, LLC*,
    2023 WL 4533914 (C.D. Cal. July 13, 2023) ............................................................... 18

*Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*,
    1999 WL 760527 (N.D. Cal. Sept. 21, 1999) ............................................................... 18

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

*Sequoia Benefits & Ins. Servs., LLC v. Sageview Advisory Grp., Inc.*,
  2021 WL 2115390 (N.D. Cal. May 25, 2021) ........................................................ 16

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009) ............................................................................... 6

*Slusher v. City of Napa*,
  2015 WL 8527411 (N.D. Cal. Dec. 11, 2015) ...................................................... 17

*Snapkeys, Ltd. v. Google LLC*,
  2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ...................................................... 16

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
  2021 WL 5785264 (C.D. Cal. Sept. 3, 2021) ......................................................... 8

*United States v. Sequel Contractors, Inc.*,
  402 F. Supp. 2d 1142 (C.D. Cal. 2005) ................................................................ 17

*VibrantCare Rehab., Inc. v. Deol*,
  2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) ........................................................ 8

*W. Air Charter, Inc. v. Schembari*,
  2018 WL 10157139 (C.D. Cal. Nov. 21, 2018) .................................................... 11

*Wagging Tails Prods., Inc. v. Coakley*,
  2023 WL 4316777 (C.D. Cal. Feb. 21, 2023) ........................................................ 7

*Warner Bros. Int'l Television Distribution v. Golden Channels & Co.*,
  2004 WL 7336862 (C.D. Cal. Jan. 9, 2004) ........................................................ 15

*Wellness Grp., LLC v. King Bio, Inc.*,
  2014 WL 1713767 (W.D.N.C. Apr. 30, 2014) ..................................................... 12

*WeRide Corp. v. Kun Huang*,
  379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part,* 2019 WL 5722620
  (N.D. Cal. Nov. 5, 2019) ....................................................................................... 10

*Wood v. NewBridge Res. Grp., LLC*,
  2021 WL 4803494 (C.D. Cal. Mar. 11, 2021,) .................................................... 13

**Statutes**

Bus. &: Prof. Code § 16600 ...................................................... 6, 7, 9, 11, 14, 17

Bus. &: Prof. Code § 16600.1 ................................................................................ 14

Bus. &: Prof. Code § 16600.5 ......................................................................... 11, 18

Bus. &: Prof. Code § 17200 ............................................... 10, 14, 15, 16, 17, 18, 20

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

Lab. Code § 2751................................................................................................16

Declaratory Judgment Act...................................................................................12

## **Other Authorities**

Fed. R. Civ. P. 12(b)(6).........................................................................................5

# I.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether Counterclaim Plaintiffs have plausibly alleged facts that, when accepted as true, are sufficient to state any claim for relief.

# II.   <u>INTRODUCTION</u>

Counterclaim Plaintiffs have plausibly alleged that Apple has engaged in anticompetitive conduct. As alleged in detail in the counterclaims, and as Apple employees have repeatedly confirmed during depositions, when Apple learned of Rivos, it was far more concerned with the loss of its engineering talent than it was with the alleged theft of its confidential information. Concerned that its employees would seek better employment opportunities outside Apple, Apple immediately hatched a plan aimed at thwarting the growth and success of Rivos and deterring employees from leaving Apple to join Rivos. That plan included an overbroad interpretation of Apple's so-called "Proprietary Information" under the Apple IPA, and an explicit threat to enforce a non-solicitation provision that is void under California law. Apple's use of the Apple IPA was not defensive, as Apple claims, but rather offensive, in furtherance of its anticompetitive goals.

Counterclaim Plaintiffs have plausibly alleged that the Apple IPA violates California law and public policy because it restricts employees' use, or even retention, of material that goes far beyond legitimate trade secrets and confidential information. Numerous courts have held such provisions unenforceable as a matter of law; at a minimum, there is a factual dispute that precludes resolving the matter on the pleadings. Counterclaim Plaintiffs have also adequately alleged that, in seeking to offensively enforce, or even threatening to enforce, the Apple IPA, Apple has engaged in unlawful and unfair anticompetitive conduct. The reality is that Apple has turned this dispute, and the culmination of its anticompetitive scheme, into a war of resources—spending Rivos into the ground through scorched-earth litigation simply because Rivos dared to try to compete for engineering talent. These litigation costs present an existential threat for Rivos, but they are a rounding error for a two-and-a-half trillion dollar company like Apple. Although Rivos and the Individual Defendants are the victims of this conduct in the first instance, California employees and employers suffer from Apple's anticompetitive efforts to thwart employee mobility. Apple's arguments to the contrary are quibbles on the merits, which are inappropriate for a motion to dismiss.

Apple's motion to dismiss should be denied. If, however, the Court is inclined to grant any portion of Apple's motion, Counterclaim Plaintiffs should be allowed leave to amend, to allege yet more facts they have learned in discovery since filing the operative counterclaims about how Apple threatened and retaliated against its employees with enforcement of illegal anti-mobility contractual provisions.

## III.  FACTUAL BACKGROUND

### A.  Apple Forces Employees to Sign the Overbroad Apple IPA

Apple requires each of its employees, including the Counterclaim Plaintiffs Ricky Wen, Jim Hardage, Weidong Ye, Laurent Pinot, Prabhu Rajamani, and Kai Wang, to sign an Intellectual Property Agreement (the "Apple IPA") as a condition of working at Apple. *See* CC ¶ 24. The Apple IPA contains a broad definition of "Proprietary Information" that includes any information "learned" within the scope of employment at Apple. CC ¶ 25. While purporting to encompass only information that is of a "confidential, proprietary, and secret nature," Apple interprets this provision in an overbroad and self-serving way. CC ¶ 30. For example, Apple has claimed that children's homework, exercise tips, open source code downloaded from the internet, and employees' personal tax filings fall within the definition of Apple's "Proprietary Information," simply because they were saved on an Apple-issued device, or because an employee first "learned" or came into possession of them while working at Apple. *Id.*

The Apple IPA also includes a post-employment non-solicitation provision that prohibits former Apple employees from "directly or indirectly" "solicit[ing], encourag[ing], recruit[ing], or tak[ing] any action intended to induce Apple employees or contractors to terminate their relationship with Apple" for one year following their departure from Apple. CC ¶ 34.[1] While such a provision is void under California law, Apple includes the provision, and explicitly threatens to enforce it,

---

[1]  After Counterclaim Plaintiffs filed their operative complaint, Apple's Rule 30(b)(6) witness testified that Apple instructs departing employees that in order to avoid a potential claim for breach of the non-solicit provision, they should simply not talk to any employees at Apple ***at all*** for a year after their departure. *See* Ex. 1 (Murray Tr.) at 214:11-15 ("Q: So the -- the general interpretation that you were working with among your team, at least, was for one year, it's safest just not to contact anybody? A: Yeah.")

knowing that it will deter employees from exercising their rights to pursue alternative employment with the people of their choosing. CC ¶ 35. And it works. Apple employees repeatedly confirmed that they believe Apple could enforce the non-solicitation provisions against its former employees, and former Apple employees avoided contacting or interviewing Apple colleagues for fear that Apple would sue them. CC ¶¶ 35, 55; Dkt. 22-4 at ¶ 30 (Apple's forensic analysis shows employees conducting web searches relating to "poaching"); Ex. 2 (Meek Tr.) at 48:6-10 ("Q: Have you ever felt a desire to solicit Apple employees to work at Rivos? A: We got sued by Apple around two months after I started working at Rivos. It seemed like a pretty terrible idea to try to recruit people."); Ex. 3 (Kumar Tr.) at 286:25-287:1 ("[W]e did not want us to be accused of solicitation."); *see also* Ex. 4 (Seddighnezhad Tr.) at 84:10-16 ("Q: Is it your understanding that Apple could enforce the non-solicit provision we were just discussing against an employee who breaches it? [Objection omitted] A: My understanding is, if that is an agreement, they can do -- they can enforce it."); Ex. 1 (Murray Tr.) at 89:9-11 ("[W]e do remind them of the – their obligations under the IPA, which includes the -- the non-solicit agreement.").

**B.    Frustrated with Employee Attrition, Apple Launches an Anticompetitive Campaign to Quell Employee Mobility**

Apple learned of Rivos, a start-up building SoCs, in May 2021, shortly after it was founded. CC ¶¶ 5-6, 19. Although Rivos does not compete with Apple for anything other than engineering talent, Apple immediately became concerned that its employees would leave when they realized there were better opportunities elsewhere. CC ¶ 5. So Apple set out to thwart Rivos and to deter its employees from going to Rivos. CC ¶ 6. Apple began holding regular meetings to strategize how to stop Rivos in its tracks, including by openly planning to sue people for violating the non-solicit provision, and by setting up a new program to require departing employees to reaffirm the illegal provisions in the Apple IPA. CC ¶ 41. When employees announced their departures to Rivos, Apple implemented the "Rivos exit protocol," pursuant to which Apple rushed employees out the door, without any meaningful exit interview. *Id.* Apple forced each employee to sign an "exit checklist," without ensuring that the employees had complied with the checklist, or even providing instructions for how to do so. CC ¶ 48; *see also* Ex. 1 (Murray Tr.) at 193:11-194:4; 235:15-24,

222:10-23. While Apple went to great lengths to ensure it had these signed pieces of paper to use in a lawsuit—including in one instance calling back a former employee six days *after* walking him out to obtain his signature on the "exit checklist"—it made no meaningful effort (and often no effort whatsoever) to actually try to ensure employees were not inadvertently retaining so-called "Proprietary Information." CC ¶¶ 48, 50. Apple did so knowing that those employees likely retained Apple information in their personal possession, as a result of the default features of the iCloud system that Apple encouraged and effectively required its employees to use, and which inevitably resulted in Apple work information being intermingled with personal information. CC ¶¶ 41, 48, 50. Apple then physically walked departing employees out the door, as if they were criminals, so as to set an example to anyone else who might consider leaving. CC ¶ 52.

As discovery in this case has made clear, Apple was far more concerned about its loss of engineering talent than it was its purportedly confidential information. CC ¶¶ 39, 42, 47. Indeed, Apple became concerned that it "was having to make choices about what we can actually do" as a result of the departures. CC ¶ 47. Thus, after taking little to no action to prevent employees from walking out the door with Apple information they did not even know they had, Apple immediately sent their devices to be scrubbed for any evidence of wrongdoing. CC ¶¶ 41, 53. Apple of course could have done this sweep *before* employees left, but it did so afterwards so it could spring them and their new employer, Rivos, with the "gotcha" of violating the Apple IPA. Apple reviewed both work-related and personal information for any evidence that it could use against its former employees. CC ¶¶ 53-54. Apple also began looking for evidence that anyone who had left for Rivos had violated Apple's non-solicitation provision. CC ¶ 55.

After putting Apple's plan to quash Rivos and quell employee mobility into action, an Apple executive expressed surprise that Rivos was still hiring employees, remarking, "I guess the money is still flowing." CC ¶ 61. Others told jokes and wrote limericks about how Apple's efforts would lead to Rivos' demise. *See, e.g.*, CC ¶ 44. Other Apple employees lamented (privately) that Apple's campaign was simply setting up innocent, honest people, and that the exit process was ineffective window dressing. *See* Ex. 5 (APL-RIVOS_00127987).

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

## C. Apple's Conduct Harms Counterclaim Plaintiffs and the Market

Apple's anticompetitive scheme has caused the Counterclaim Plaintiffs to limit what they do in their jobs to their detriment. For example, Rivos has implemented a policy that former Apple employees may not be involved in recruiting or interviewing current Apple employees for fear of violating their non-solicitation provisions, despite those provisions being void under California law. *See* CC ¶ 35. Apple's anticompetitive conduct has also caused injury to Rivos, the Individual Defendants, and the market for engineering talent more generally. *See* CC ¶¶ 58-59, 65-69. Employees who would have otherwise joined Rivos (or even considered joining Rivos) have chosen to stay at Apple in order to avoid the risk of being subject to Apple's anticompetitive tactics. *See* CC ¶ 32. Rivos has, therefore, lost engineering talent, and incurred increased recruiting costs, as a result of Apple's conduct. CC ¶ 66. Both Rivos and the Individual Defendants have suffered from lost productivity due to the inability to use general knowledge and experience as a result of Apple's overbroad interpretation of its "Proprietary Information" under the Apple IPA. CC ¶ 67. And the Individual Defendants have suffered irreparable harm to their reputations. CC ¶ 69.

More generally, Apple's conduct harms employee mobility, as Apple employees are deterred from leaving Apple to join promising startups for fear of retaliation by Apple through enforcement of the Apple IPA. CC ¶¶ 58-59, 84, 86. Apple's conduct also keeps salaries and other forms of compensation artificially low because, absent such anticompetitive conduct, Apple would have to increase its benefits in order to retain its employees. CC ¶ 60. Apple, however, benefits from its anticompetitive conduct, as it retains employees, thereby reducing recruiting and training costs and avoiding increased compensation and benefits that it would otherwise incur if its employees were free to pursue alternative employment. CC ¶ 86.

## IV. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should only be granted if the counterclaim complaint fails to plead any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, courts must accept as true all factual allegations contained in the counterclaim complaint, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555-56 (2007), and must construe them in a light most favorable to the nonmoving party. *Siracusano v. Matrixx Initiatives, Inc*., 585 F.3d 1167, 1179 (9th Cir. 2009). To survive a motion to dismiss, counterclaim plaintiffs need only allege enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the allegation. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Luttrell v. Hart*, 2020 WL 5642613, at *2 (N.D. Cal. Sept. 22, 2020).

## V.  ARGUMENT

### A.  Counterclaim Plaintiffs Plausibly Allege that the Apple IPA Is Unenforceable

#### 1.  Apple's Interpretation and Application of the Apple IPA's Overbroad NDA Is Unlawful

Apple argues that the "language of the NDA" does not violate California Business and Professions Code Section 16600. Mot. at 5. That is wrong even as a threshold matter. Courts have routinely found that overly broad confidentiality provisions, such as the one in the Apple IPA, are unlawful under Section 16600 because they "operate as a de facto noncompete provision." *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 319 (2020).

Moreover, Apple fails to grapple with, let alone refute, Counterclaim Plaintiffs' allegations that Apple's *interpretation and application* of the non-disclosure provision of the Apple IPA are overbroad and in violation of California law. *See* CC ¶¶ 30-31, 65, 73. It is easy to draft a contract that purports to protect "Proprietary Information," in an effort to use words that appear in caselaw. But looking deeper, Apple has made clear that its definition of "Proprietary Information" goes far beyond what any cases allow, and wades well into territory of what numerous courts have rejected. Outside the context of its revisionist-history motion to dismiss, Apple does not merely claim that the Apple IPA protects "trade secret" or truly confidential information. To the contrary, Apple has claimed that the Individual Defendants violated the Apple IPA through retention of documents such

as children's homework, tips for leg exercises, open source scripts downloaded from the internet, employees' personal tax filings that include information about their compensation from Apple, partial screenshots devoid of context or substantive meaning, and countless other absurd examples. CC ¶ 30. Apple summed it up best in its Rivos "exit checklist," where it told employees that the NDA in their Apple IPA meant that "[e]verything you worked on at Apple stays here." CC ¶ 26. This is impossibly broad, and shows that in order to scare employees and prevent them from working elsewhere, it tells them that the Apple IPA means they cannot retain *anything*, regardless of whether it is trade secret or confidential. This is exactly the sort of scheme that courts routinely reject. *See Action Learning Sys., Inc. v. Crowe*, 2014 WL 12564011, at *12 (C.D. Cal. Aug. 11, 2014) ("These provisions, read literally, would include nearly everything related to the educational field that Defendants saw, learned, observed, or had access to during their nearly 10-year employment with ALS. As Defendants point out, after leaving ALS, they would essentially need a lobotomy in order to continue working in the educational field without violating these restrictions."); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009) ("Given such an inclusive and broad list of confidential information, it seems nearly impossible that employees . . . would not have possession of such information.").

The Counterclaims plausibly allege that Apple has used this overbroad interpretation of the Apple IPA to thwart employee mobility, by punishing employees who have chosen to leave Apple, and deterring other employees from leaving, for fear of being subject to similar enforcement actions. CC ¶¶ 28, 30-32. Apple's interpretation of the Apple IPA, therefore, makes it a *de facto* non-compete clause that is void under California law. CC ¶ 23; *Brown,* 57 Cal. App. 5th at 319.

Apple relies on *Wagging Tails Prods., Inc. v. Coakley*, 2023 WL 4316777, at *8 (C.D. Cal. Feb. 21, 2023), for the proposition that any restraining effect of the NDA is not significant enough to implicate Section 16600. But *Wagging Tails* strongly supports Counterclaim Plaintiffs' position, not Apple's. There, in connection with a choice of law analysis, the court found that there was "not a sufficient showing as to the claimed confidentiality of the information" under the NDA in order to justify injunctive relief to prevent the disclosure of the alleged confidential information. *Id.* at *8, 10. The court held that the "NDA is vague and overbroad," and thus failed to "provide

Defendant notice of his nondisclosure obligations." *Id.* at *10. So too here. Not only is the Apple IPA inherently vague, but when Apple learned that employees were leaving for Rivos, it made sure to tell them that the Apple IPA was even broader (and vaguer) than it might seem on its face. The proof is in the pudding with the claims Apple has asserted, which sweep in all manner of material that cannot possibly be confidential to Apple.

The remaining cases on which Apple relies are inapposite. In *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 5785264 (C.D. Cal. Sept. 3, 2021), at summary judgment the court found the relevant agreement, *as written*, "sought only to protect Plaintiff's trade secrets and other confidential information." *Id.* at *18. The court in *SPS Techs.* did not address whether the interpretation or application of the NDA was overbroad and unenforceable, or whether it was used in such a way as to deliberately chill the movement of employees, as Counterclaim Plaintiffs allege here. In *VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *6 (E.D. Cal. Apr. 26, 2021), the court denied a motion to dismiss where the at-issue non-disclosure clause "by its own terms" did not suffer from overbreadth. The court did not foreclose the possibility that the enforcement of the agreement could be an improper non-compete. The court further noted that the non-disclosure provision "seeks to prevent employees from disclosing material that would damage the company." *Id.* By contrast, Apple has used the Apple IPA to sue and threaten to sue employees for *retaining* (not disclosing or using) materials that could not possibly harm Apple if they were disclosed, including, as discussed above, personal documents such as tax return information and children's homework.

Since Apple cannot point to any authority that would allow it to prevail as a matter of law, it resorts to raising a number of disputes on the merits, which of course are not properly resolved at this stage. The Court is required to accept as true the factual allegations of the Counterclaims, and to draw all reasonable inferences in Counterclaim Plaintiffs' favor. *Twombly*, 550 U.S. at 555-56. Regardless, Apple's misplaced factual disputes do not carry the day. For example, Apple claims that it is not claiming information such as "children's homework" is protected by the Apple IPA, Mot. at 8, but in discovery responses, motions, and sworn declarations, it included exactly this material—even after Counterclaim Plaintiffs pointed out the absurdity multiple times. Apple also

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' AMENDED COUNTERCLAIMS

argues that its exit checklist does not "expand" the Apple IPA. Mot. at 8. Apple cites no authority for this proposition. Even if the Court could accept Apple's factual position contrary to the allegations in the Counterclaims, it would not change the outcome. If the exit checklist does not "expand" the Apple IPA, then at a minimum it still is evidence of how limitlessly Apple interprets the vague and overbroad provisions in the Apple IPA.

Counterclaim Plaintiffs plausibly allege that Apple's interpretation of the non-disclosure provision of the Apple IPA is void under California law.

### 2. The Apple IPA's Non-Solicit Provision Violates California Law

The Apple IPA purports to require employees to agree that, for one year following the termination of employment, they will not "directly or indirectly, solicit, encourage, recruit, or take any action intended to induce Apple employees or contractors to terminate their relationship with Apple." CC ¶ 34. This prohibition is void under California law.

Recent decisions demonstrate that California is moving to a categorical prohibition on non-solicitation clauses following termination of employment. In *Edwards v. Arthur Andersen LLP*, the California Supreme Court ruled that customer non-solicitation clauses are invalid under Section 16600, regardless of whether they are deemed unreasonable or overbroad. 44 Cal. 4th at 949. While *Edwards* did not specifically address the enforceability of employee non-solicitation clauses, California's Fourth District Court of Appeal explained in *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* that the reasoning of *Edwards* should also be understood to prohibit *employee* non-solicitation clauses, in addition to customer non-solicitation clauses. 28 Cal. App. 5th 923, 938-39 (2018) (noting the court's "conclusion is further buttressed by the *Edwards* court's refusal to adopt the limited or 'narrow-restraint' exception to section 16600") (internal quotations omitted).

Courts in this district have consistently relied on *AMN* to hold that post-termination employee non-solicitation agreements are invalid under California law. *See, e.g.*, *Barker v. Insight Glob., LLC*, 2019 WL 176260, at *3 (N.D. Cal. Jan. 11, 2019) ("California law is properly interpreted post-*Edwards* to invalidate employee nonsolicitation provisions"); *Parsable, Inc. v. Landreth*, 2022 WL 19692034, at *4 (N.D. Cal. Aug. 5, 2022) ("A non-solicitation clause works a restraint on any former employee 'by restricting who may work alongside them.'") (internal citation

omitted); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019), *modified in part,* 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (finding employee non-solicitation provision, "as a restraint on employment, is invalid."); *Minnesota Life Ins. Co. v. Link-Allen & Assocs., Inc.*, 2021 WL 9860789, at *5 (N.D. Cal. Jan. 22, 2021) (finding post-termination non-solicitation provisions to be void); *Conversion Logic, Inc. v. Measured, Inc.*, 2019 WL 6828283, at *4 (C.D. Cal. Dec. 13, 2019) ("[G]iven the strong California public policy to permit lawful employment and enterprise of choice, the Court finds the [non-solicitation] provisions void."); *but see Aramark Mgmt., LLC v. Borgquist*, 2021 WL 3932258, at *9 (C.D. Cal. July 8, 2021) (upholding a non-solicitation provision only for *pre-termination* activities). Apple must know of this unbroken line of authority that is exactly on point, and yet Apple completely ignores all of it in its motion.

Instead, against this weight of recent on-point authority, Apple relies on a fifteen-year-old outlier, *Gartner, Inc. v. Parikh*, 2008 WL 11336333, at *9 (C.D. Cal. Oct. 10, 2008), to argue that its post-termination non-solicit agreement is enforceable under California law. Unlike in *Gartner*, however, the Individual Defendants have alleged that the presence of the non-solicitation provision has prevented them from contacting former colleagues at Apple, which has had an impact on Counterclaim Plaintiffs' ability to do business. CC ¶ 35. Regardless, *Gartner* was decided just two months after the California Supreme Court's decision in *Edwards*, and before *AMN*, so it is doubtful that *Gartner* remains an accurate statement of California law regarding non-solicits or other provisions that limit employee mobility. Indeed, the court in *Gartner* relied heavily on the fact that the non-solicitation provision "appears to impact Parikh's conduct in a very limited way." *Gartner*, 2008 WL 11336333, at *9. In recent post-*Edwards* and post-*AMN* decisions, however, courts have found that *any* restriction on an employee's ability to practice his or her given profession is invalid. *See e.g.*, *Couch v. Morgan Stanley & Co.*, 2015 WL 4716297, at *20-21 (E.D. Cal. Aug. 7, 2015), *aff'd,* 656 F. App'x 841 (9th Cir. 2016) ("the Ninth Circuit's 'narrow-restraint' exception is no longer applicable after *Edwards*"; and "simply placing the non-compete clauses in the subject contracts was unfair competition that violated section 17200"). Apple's claim that the Counterclaims do not allege that the non-solicitation provision impacts Counterclaim Plaintiffs'

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

ability to do their jobs is therefore both irrelevant and inaccurate. *See* CC ¶¶ 35, 36.[2]

Apple's reliance on *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 3932258, at *9 (C.D. Cal. July 8, 2021) only confirms the invalidity of Apple's non-solicitation provision. There, the court made clear that plaintiffs were not seeking to enforce the non-solicitation "with respect to any *post*-termination activities; their claims focus exclusively on [defendant's] pre-termination conduct." *Id*. The Apple IPA restricts *post*-termination activities, and Apple wielded that provision to threaten departing employees. For Apple to argue that the provision is impervious to challenge simply because Apple elected not to sue for its breach would grossly undermine California public policy.

Under the weight of recent authority, Apple's non-solicitation provision is void.

3.    Counterclaim Plaintiffs Have Standing to Challenge the Apple IPA

The Counterclaims allege that the presence of the non-solicitation provision in the Apple IPA has had an extreme chilling effect on the Individual Defendants' right to contact other Apple employees after leaving Apple. *See* CC ¶ 35. This alone is sufficient to establish standing. *See Couch*, 2015 WL 4716297, at *20 ("placing the Non-Solicit Clause in the Employment Agreement is unlawful in and of itself, regardless of whether MSSB attempted to enforce it.").

To the extent there is any ambiguity as to whether aggrieved employees have standing to challenge restrictive covenants, the California Legislature has shown that it intends for them to have that right. Signed into law on September 1, 2023, Senate Bill 699 adds Section 16600.5 to the Business & Professions Code. Section 16600.5 creates a private right of action for employees, former employees, and prospective employees to seek injunctive relief, actual damages, or both if an employer enters into a contract that is void under Section 16600 or 16600.5. This provision will take effect on January 1, 2024, before the Court hears Apple's motion.

Apple nonetheless argues that the Counterclaims "do not allege a single specific instance"

---

[2]    *W. Air Charter, Inc. v. Schembari*, 2018 WL 10157139, at *15 (C.D. Cal. Nov. 21, 2018) is unpersuasive for the same reasons: it was decided just 20 days after *AMN* and relies exclusively on authority that predates *AMN*. It therefore is not an accurate reflection of current California law. And the question in *Hamilton v. Juul Labs, Inc.*, 2020 WL 5500377, at *7 (N.D. Cal. Sept. 11, 2020) was whether Juul knew that a non-solicitation provision it entered was illegal at the time it required plaintiff to sign it.

in which a Rivos employee refrained from soliciting a former Apple colleague. Mot. at 11 n. 3. Not so. As the Counterclaims make clear, the Individual Defendants (and all other former Apple employees who have joined Rivos) have studiously avoided contacting *any* Apple employee. CC ¶ 35. There is no "specific instance" of avoidance, because their entire course of conduct was to avoid contacting any Apple employees for fear of violating the non-solicit provision. This is exactly the improper chilling effect that Apple intended. And regardless, the "detailed factual allegations" that Apple appears to demand are not required at the pleading stage. *Twombly*, 550 U.S. at 555. Similarly, Apple's contention that the non-solicit did not actually impede employee mobility (*see* Mot. at 12 n.4) is a dispute on the merits and irrelevant to a motion to dismiss. Discovery will continue to disprove Apple's naked assertion on this point, but at this stage the Court must operate "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*[3]

The Counterclaims also allege that Apple reinforced with departing employees that Apple intended to enforce the non-solicit provision in the exit checklist that each departing employee was required to sign. CC ¶ 49.[4] Such threats of enforcement are sufficient to establish standing for a declaratory judgment claim. *See O'Sullivan Films v. Neaves*, 2017 WL 4798997, at *3-4 (W.D. Va. Oct. 24, 2017) (threatening breach is sufficient under Declaratory Judgment Act); *Wellness Grp., LLC v. King Bio, Inc.*, 2014 WL 1713767, at *4 (W.D.N.C. Apr. 30, 2014) (intent to enforce agreement is "sufficient to give rise to an actual controversy for the purpose of a declaratory judgment claim"); *Domtar AI Inc. v. J.D. Irving, Ltd.*, 43 F. Supp. 3d 635, 639-40 (E.D.N.C. 2014) (finding non-solicitation clause unenforceable and void as a matter of law despite no allegations of breach).

---

[3] Apple also faults Counterclaim Plaintiffs for not identifying the name of the Apple employee who declined to pursue employment with Rivos due to the risk of Apple enforcing the overbroad Apple IPA against its former employees. Mot. at 12 n.4. Apple's apparent insistence that its employees be publicly named in a lawsuit only underscores the extent to which Apple seeks to deter employees from even considering pursuing alternative employment. Regardless, Counterclaim Plaintiffs have provided the identity of this employee in response to Apple's discovery requests. Apple's feint of ignorance should be disregarded.

[4] And discovery since the operative Counterclaims were filed has confirmed that Apple made a point to tell departing employees that Apple was especially serious about enforcing the non-solicit provision. *See* Ex. 1 (Murray Tr.) at 231:11-232:7.

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' AMENDED COUNTERCLAIMS

The case law on which Apple relies does not support Apple's argument that there is no justiciable controversy regarding the Apple IPA's non-solicitation provision. In *Wood v. NewBridge Res. Grp., LLC*, 2021 WL 4803494 (C.D. Cal. Mar. 11, 2021), the court found the declaratory relief claim to be unripe because plaintiff "has not alleged, *inter alia*, that he has refrained from any activities out of concern for violating his non-competition obligations." *Id.* at *4. Here, by contrast, the Individual Defendants have alleged that they (and all other former Apple employees at Rivos) have carefully avoided contacting current Apple employees for fear of violating Apple's non-solicitation provision. CC ¶ 35. Additionally, the Counterclaims allege that Apple employees understand the provision to be enforceable, and Apple executives have threatened to enforce the provision against former Apple employees. CC ¶¶ 35, 55; *see also* Ex. 4 (Seddighnezhad Tr.) at 84:10-16 (testifying his understanding was Apple could enforce the non-solicit provision); Ex. 1 (Murray Tr.) at 89:9-11 (testifying Apple reminds departing employees of their non-solicit obligations). Similarly, in *Kordich v. Salton, Inc.*, 2005 WL 8173161 (S.D. Cal. July 5, 2005), the court found no justiciable dispute where the plaintiff had not alleged that he "already breached the Agreement or will imminently do so." *Id.* at *4. Here, Counterclaim Plaintiffs allege that the non-solicitation provision, and Apple's threats to enforce it, have prevented or deterred them from taking actions they otherwise would have taken. CC ¶¶ 35, 55. In fact, Apple's staunch defense of the validity of its non-solicitation provision underscores that, unlike in the authority it cites, Apple has *not* represented that it will not enforce the restrictive covenant. Apple wants to have it both ways: threatening employees that the non-solicit is enforceable, while telling the Court that Apple has not enforced it to avoid a ruling it is invalid. Apple's unwillingness to disavow the non-solicit distinguishes this case from others in which courts have found a plaintiff lacked standing to obtain declaratory relief in connection with a non-solicitation provision. *See Healy v. Qognify, Inc.*, 2020 WL 136589, at *3 (C.D. Cal. Jan. 10, 2020) (plaintiff lacks standing where non-solicitation provision has expired *and* defendant has represented it will not enforce the covenant); *Imtiaz Khan v. K2 Pure Sols., LP*, 2013 WL 4734006, at *4 (N.D. Cal. Sept. 3, 2013) (no standing where defendants agree that the non-compete provision is void).

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

The Individual Defendants have standing to challenge the non-solicitation provision of the Apple IPA, which is void under California law.

**B.** **Counterclaim Plaintiffs Plausibly Allege Unfair Competition in Violation of Section 17200**

    1.   The Counterclaims Allege Unlawful and Unfair Conduct by Apple

As discussed above, Counterclaim Plaintiffs plausibly allege that the Apple IPA violates Section 16600. The Counterclaims thus adequately allege unlawful conduct under Business and Professions Code Section 17200. *See Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091-92 (N.D. Cal. 2009) (granting motion for summary judgment on section 17200 claim where a non-compete provision was unlawful under section 16600).[5]

Moreover, Counterclaim Plaintiffs have plausibly alleged that Apple has engaged in anticompetitive and unfair business practices aimed at quelling employee mobility, even beyond the violation of section 16600. Under the "tethering test," Counterclaim Plaintiffs must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition." *Gomez v. Nationstar Mortg.*, LLC, 2015 WL 966224, at *9 (E.D. Cal. Mar. 4, 2015) (internal citations omitted); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ("[T]he word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."). The broad scope of the UCL is purposeful. "[T]he Legislature intentionally made the UCL broad 'to enable judicial tribunals to deal with the innumerable, new schemes which the fertility of man's invention would contrive.'" *Gomez*, 2015 WL 966224 at *10 (quoting *Cel-Tech*, 20 Cal. 4th at 181). Accordingly, a finding of unfairness can be based on "some

---

[5]  To the extent there is any doubt that a violation of Section 16600 is a predicate for a finding of unfair competition under Section 17200, Assembly Bill 1076 adds Section 16600.1, which provides that any violation of Section 16600 "constitutes an act of unfair competition" within the meaning of California's Unfair Competition Law. Section 16600.1 will become effective on January 1, 2024.

actual or **threatened** impact on competition." *Cel-Tech*, 20 Cal. 4th at 186-87 (emphasis added).[6]

Applying this standard, Counterclaim Plaintiffs have plausibly alleged unfair conduct to sustain a claim of unfair competition under Section 17200. The Counterclaims allege that Apple began holding meetings to strategize how to thwart the growth of Rivos and obstruct employee mobility to deter employees from leaving Apple to join Rivos. CC ¶ 41. Apple then implemented the "Rivos exit protocol" pursuant to which it conducted cursory exit interviews, forced departing employees to execute an exit checklist without providing instructions as to how to comply with it, and physically walked the employees out the door. CC ¶¶ 48, 52. Apple also reminded employees of their purported non-solicit obligations. CC ¶ 49. Knowing that the departing employees likely unknowingly retained Apple information in their possession, Apple then scoured the devices the employees returned for any evidence of purported wrongdoing, reviewing personal messages and information in the process. CC ¶¶ 48, 50, 53-54. And Apple began presentations scaring other employees away from leaving Apple. CC ¶ 57. Ultimately, Apple enforced an overbroad interpretation of the Apple IPA to deter employees from leaving Apple. CC ¶ 30-31. This conduct is unfair and harms competition. For example, it allowed Apple to avoid paying its engineers higher salaries and other benefits to retain them. CC ¶¶ 43, 60. It has also increased costs and decreased productivity for Rivos and the Individual Defendants. CC ¶¶ 66-69. As the Counterclaims allege, Apple's anticompetitive conduct has limited employee mobility and harmed competition for engineering talent as a result. CC ¶ 58.

This is more than enough to sustain a claim for unfair competition under Section 17200. *See*

---

[6] While not argued by Apple, Counterclaim Plaintiffs also plausibly allege a violation of Section 17200 under the "balancing test," which applies in cases where the parties are not direct business competitors. *Warner Bros. Int'l Television Distribution v. Golden Channels & Co.*, 2004 WL 7336862, at *29 (C.D. Cal. Jan. 9, 2004) (applying balancing test in dispute between business partners; emphasizing that courts "have used various definitions of unfairness in consumer **and non-competitors actions**" in the wake of *Cel-Tech*") (emphasis added). "Under the balancing test, the court examines the [Complaint] to determine whether it sufficiently alleges that the harm of [Apple's] business practices outweigh their utility." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1090 (N.D. Cal. 2012). Here, Apple's "alleged generalized practice" of using restrictive covenants to impede employee mobility "fits the language often used in conjunction with unfair business practices as 'immoral, unethical, oppressive, unscrupulous or substantially injurious[.]'" *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 286 (2005).

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

*Sequoia Benefits & Ins. Servs., LLC v. Sageview Advisory Grp., Inc.*, 2021 WL 2115390, at *7 (N.D. Cal. May 25, 2021) (denying motion to dismiss Section 17200 claim where counterclaim alleged "Sequoia is engaged in unfair competition by requiring employees to sign employment agreements with void non-solicitation provisions and by failing to provide a written commission plan as required by California Labor Code Section 2751"); *Lakeland Tours, LLC v. Bauman*, 2014 WL 12570971, at *4 (S.D. Cal. Aug. 19, 2014) ("Bauman adequately pleads a claim for violation of Section 17200 because he alleges that the contract at issue in both the complaint and counterclaim is void under California law and is therefore an unfair business practice. In addition, Bauman has adequately alleged an injury to himself because he alleges that Worldstrides' uncompetitive behavior (which presumably includes suing him to enforce an allegedly illegal contract) is causing Bauman ongoing harm in his ability to work in his profession.")

     *Reilly v. Apple Inc.*, 2022 WL 1215305 (N.D. Cal. Apr. 25, 2022), on which Apple relies, is readily distinguishable. There, the court dismissed an unfair competition claim because plaintiff failed to "allege *any* facts which suggests [Apple] harm[ed] competition." *Id.* at *7 (emphasis added). In so finding, the court noted that plaintiff even conceded "in his opposition that he has not alleged how Apple's actions harmed competition." *Id*. at *8. Here, by contrast, Counterclaim Plaintiffs have expansively alleged in detail that they, and competition more generally, have been harmed by Apple's conduct. *See, e.g.*, CC ¶¶ 58-60, 66-69, 75.[7]

     The remainder of Apple's arguments are red herrings. For instance, Apple argues that its conduct cannot limit employee mobility because over 50 former Apple employees chose to go to Rivos. Mot. at 14. That is an argument on the merits and inappropriate for a motion to dismiss. *Murj, Inc. v. Rhythm Mgmt. Grp., Inc.*, 2022 WL 3589574, at *3 (N.D. Cal. Aug. 22, 2022) ("[the]

---

[7] The remainder of the cases on which Apple relies are likewise distinguishable. *See Snapkeys, Ltd. v. Google LLC*, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 30, 2020) (finding "Snapkeys offers only conclusory allegations as to how Google's conduct significantly harms competition"); *Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, 2016 WL 7102721, at *2 (N.D. Cal. Dec. 6, 2016) ("Flywheel provides no detail to support [the] assertion" that plaintiff's "Restraining Agreements have had and continue to have an unfair anticompetitive effect on competition"); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (a "very general allegation" that Yelp favored certain business over others "does not satisfy *Cel-Tech's* requirement").

1  [C]ourt must draw all reasonable inferences in the light most favorable to [Counterclaim

2  Plaintiffs].”); *see also Slusher v. City of Napa,* 2015 WL 8527411, at *11 (N.D. Cal. Dec. 11, 2015)

3  (“[C]ausation is a question for the finder of fact that cannot be resolved at the pleading stage”).

4  Even if the Court were to consider Apple's argument, however, Apple ignores the Counterclaims'

5  allegations that Apple's anticompetitive conduct has made it more difficult for employees to

6  practice, and made it more difficult for these employees to leave Apple to come to Rivos.  CC ¶¶ 4,

7  7, 9, 23-32, 44, 66-69, 73, 85.  Nor does Apple's argument take into account the fact that employees

8  turned down offers at Rivos for fear of Apple's tactics (CC ¶ 32), and that others may not even have

9  applied, given the risk Apple's anticompetitive tactics posed.  *See* CC ¶¶ 35, 44, 85.  It is also

10 especially galling for Apple to argue that 50 Apple employees leaving to go to Rivos demonstrates

11 that the Apple IPA and Apple's anticompetitive conduct have imposed no restraints, when Apple

12 has sued or sought leave to sue ten of the departing employees for violating the void provisions in

13 the Apple IPA, and has threatened to sue almost all of the rest.

14    “California has a strong interest in promoting employee mobility and providing clear

15 guidelines to employees as to what they can and cannot bring to their future jobs.” *GSI Tech., Inc.*

16 *v. United Memories, Inc*., 2013 WL 12172990, at *12 (N.D. Cal. Aug. 21, 2013); *Edwards v. Arthur*

17 *Andersen LLP*, 44 Cal. 4th 937, 946, 189 P.3d 285, 291 (2008) (Section 16600 “evinces a settled

18 legislative policy in favor of open competition and employee mobility”).  Apple's threatened and

19 actual enforcement of the overbroad Apple IPA are a clear violation of the policy and spirit of

20 section 16600, and thus a valid predicate for Counterclaim Plaintiffs' claim for unlawful and unfair

21 conduct in violation of Section 17200.

22        2.    The Counterclaims Plausibly Allege Harm as a Result of Apple's Conduct

23    Apple's argument that Counterclaim Plaintiffs are limited to restitution and injunctive relief

24 under Section 17200 is irrelevant to its motion to dismiss.  Counterclaim Plaintiffs *do seek* an

25 injunction against Apple's unlawful and unfair conduct.  *See* Prayer for Relief at (e).  Apple's

26 reliance on cases in which no injunctive relief was sought is thus inapt.  *Cf. United States v. Sequel*

27 *Contractors, Inc.*, 402 F. Supp. 2d 1142, 1156-57 (C.D. Cal. 2005) (dismissing UCL claim where

28 plaintiff did not seek an injunction); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103,

1  1124 (N.D. Cal. 2012) (same).

2       Counterclaim Plaintiffs also assert that they have been harmed, and Apple has benefitted

3  from its unlawful and unfair conduct.  CC ¶¶ 65-69, 86-87.  That Apple may disagree about whether

4  the harm suffered is recoverable as a form of restitution is not an issue to be decided on a motion to

5  dismiss.  *See Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 789 (2010) (declining to turn the "facially

6  simple threshold condition" of alleging harm "into a requirement that plaintiffs prove compensable

7  loss at the outset"); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, 2009 WL 10670877, at *2

8  (C.D. Cal. Aug. 18, 2009) (excluding evidence of lost profits in a motion *in limine*).[8]

9       The cases on which Apple relies are not to the contrary.  In *Gonzales & Gonzales Bonds &*

10 *Ins. Agency, Inc. v. Action Immigr. Bonds & Ins. Servs., Inc.*, 2014 WL 12600146, at *8 (C.D. Cal.

11 Mar. 24, 2014), the court addressed a motion to strike the section of prayer for relief seeking

12 damages and attorneys' fees.  Here, Apple has not brought a motion to strike a measure of damages;

13 it seeks to dismiss an entire claim.  In *Carrillo v. Wells Fargo Bank, N.A.*, 2023 WL 5423015, at *5

14 (C.D. Cal. May 18, 2023), the court addressed fees that plaintiff had accrued, but not paid.  Here,

15 Counterclaim Plaintiffs have alleged they actually incurred the additional costs.  In *Sanabria v.*

16 *Small Bus. Lending, LLC*, 2023 WL 4533914, at *3 (C.D. Cal. July 13, 2023), the court dismissed

17 the request for attorneys' fees under the UCL.  Here, Counterclaim Plaintiffs seek recovery of more

18 than just attorneys' fees.  And Apple's request for dismissal ignores that Counterclaim Plaintiffs

19 bring a claim for declaratory relief in addition to the claim of unfair competition under the UCL.

20 *Cf. Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003) (addressing the

21 remedies that may be pursued by a plaintiff who alleged a lost business opportunity); *Seibels Bruce*

22 *Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 1999 WL 760527, at *7 (N.D. Cal. Sept. 21, 1999) (finding

23 unjust enrichment claim was an alternative measure of legal damages).

24      Counterclaim Plaintiffs have adequately alleged a Section 17200 claim.  The arguments in

25 Apple's motion about the merits of the claim, or about the precise measure of damages that

26

27 _____
[8]  Additionally, recovery of monetary damages is expressly allowed by Section 16600.5, which will
28 be in effect by the time the Court hears this motion, and well before this case goes to a jury.

Counterclaim Plaintiffs can recover, are misplaced at this stage. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (denying motion to dismiss where plaintiffs alleged sufficient facts under the  unfair prong of UCL).

3. <u>An Injunction Against Apple's Unlawful and Unfair Conduct Is Appropriate</u>

Apple argues that an injunction regarding the non-solicit provision is improper because Apple has not enforced it.  Mot. at 17.  But Counterclaim Plaintiffs do not seek an injunction prohibiting enforcement of the non-solicit in the Apple IPA only against them.  Rather, they seek an injunction requiring Apple to modify the Apple IPA so that it complies with California law and allows employees to freely provide services in California or to a California-based employer following their departure from Apple.  CC ¶ 77.  *See Latona v. Aetna U.S. Healthcare Inc*., 82 F. Supp. 2d 1089, 1098 (C.D. Cal. 1999) ("It is not asking too much for Aetna to refrain from requiring its employees to sign presumptively illegal provisions.").

Apple also argues that since its enforcement of the NDA in the Apple IPA was supposedly lawful, an injunction is not appropriate.  Mot. at 17.  The entire premise of that argument is incorrect, for the reasons described above. *See supra* at V.A.1.  Regardless, this is Apple's motion to dismiss, not Counterclaim Plaintiffs' motion for an injunction.  Counterclaim Plaintiffs need not *prove* that the Apple IPA, as interpreted and applied by Apple, is unenforceable; Counterclaim Plaintiffs need only *plausibly allege* that Apple's conduct violates California law.  *See Twombly*, 550 U.S. at 570. The Counterclaims certainly do so, and Apple's (still insufficient) arguments to the contrary are for another day.

Apple's reliance on *Gizmo Beverages, Inc. v. Park*, 2017 WL 6941362 (C.D. Cal. Sept. 18, 2017) is misplaced.  There, the court considered a ***motion to enjoin*** future litigation.  *Id.* at *3.  In dismissing the ***motion for an injunction***, the Court noted that "without showing" the relevant lawsuit was "based on an illegal objective," the underlying action could not be enjoined.  *Id.* at *4. This is not a motion for an injunction.  Counterclaim Plaintiffs do not have a burden of proof, and indeed do not need to "show" or prove anything at this stage.  Apple's arguments will be appropriate when the merits are actually before a factfinder—though even then *Gizmo Beverages* will not

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' AMENDED COUNTERCLAIMS

support Apple's argument because that case involved an injunction to enjoin *a lawsuit*, whereas this case involves a prayer for an injunction against imposing the unlawful Apple IPA on its employees. CC ¶¶ 82-84, 89.[9]

Finally, Counterclaim Plaintiffs have standing to seek an injunction against Apple imposing the Apple IPA on similarly situated employees. Apple relies on *Lafferty v. Wells Fargo Bank*, 213 Cal. App. 4th 545, 570 (2013), *as modified on denial of reh'g* (Feb. 27, 2013), to argue that Counterclaim Plaintiffs cannot assert a claim regarding Apple IPAs to which they are not a party. But the Counterclaim Plaintiffs *are* parties to the identical Apple IPA that Apple continues to use. The court in *Lafferty* considered an entirely different situation: it assessed whether a dealer agreement was made specifically to benefit a third party such that the third party could seek relief under the agreement. *Id.* Apple's reliance on *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854 (2008), *as modified* (Jan. 28, 2008) is likewise misplaced. There, the court explained that a plaintiff has suffered "an injury in fact for purposes of standing under the UCL when" the party has "expended money due to the defendant's acts of unfair competition[.]" *Id.* Here, each of the Counterclaim Plaintiffs has been injured by Apple's unfair and unlawful anticompetitive conduct, and the Counterclaims plausibly allege that Rivos has incurred costs it would not have incurred but for Apple's anticompetitive conduct. *See* CC ¶¶ 32, 35, 65-69, 84, 86-87. Thus each of the Counterclaim Plaintiffs have standing to seek injunctive relief under Section 17200.

Counterclaim Plaintiffs' prayer for an injunction is not a valid ground to dismiss their unfair competition claim.

### C. If the Court Grants Apple's Motion to Any Extent, It Should Grant Leave to Amend

Apple's motion is without basis and should be denied. If, however, the Court is inclined to

---

[9] Similarly, *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731 (1983) considered a request for an injunction, not a motion to dismiss. Here, the Counterclaims do not seek to enjoin Apple's lawsuit. Even if they did, however, the Counterclaims plausibly allege that Apple made baseless allegations against Counterclaim Plaintiffs in retaliation for them choosing to exercise their rights of employee mobility and to threaten any other Apple employee who may dare to do the same. *See* CC ¶¶ 30-31, 62-64.

grant Apple's motion in any way, Counterclaim Plaintiffs should be permitted to amend. Apple requests that the Court grant its motion to dismiss with prejudice simply because Counterclaim Plaintiffs have amended their Counterclaims once before. That is not the standard. As the Ninth Circuit has emphasized, the Court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).[10]

Based on discovery obtained from Apple since the filing of the Amended Counterclaims, Counterclaim Plaintiffs could amend their Counterclaims to add allegations, for example, that Apple was more concerned about employees signing the "exit checklist" than it was with their compliance with that checklist and that Apple was concerned by the loss of engineering talent to Rivos, not Rivos' alleged stealing of Apple's purported trade secrets. Additionally, Counterclaim Plaintiffs could add specific examples of how their conduct has changed or of how they have suffered damage as a result of the non-solicitation provision in Apple's IPA. They could also add allegations further detailing Apple's facially unserious claims regarding the alleged retention of Apple confidential information.

Moreover, this is the first time the Court has considered the sufficiency of the allegations in the Counterclaim Complaint. Counterclaim Plaintiffs should be afforded the opportunity to cure any deficiencies identified by the Court in considering the Amended Counterclaims. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

## VI.    CONCLUSION

For the foregoing reasons, Apple's motion should be denied.

---

[10]  In this case Apple has already amended its complaint three times, and its request to file a fourth amendment is pending.

OPPOSITION TO APPLE'S MOTION TO DISMISS DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
AMENDED COUNTERCLAIMS

DATED:  December 8, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN,
LLP


By _____/s/ David Eiseman_____

DAVID EISEMAN
RYAN LANDES
VICTORIA B. PARKER
ELLE X. WANG

Attorneys for Defendants and Counterclaim
Plaintiffs Rivos Inc., Wen Shih-Chieh a/k/a Ricky
Wen, Jim Hardage, Weidong Ye, Laurent Pinot,
Prabhu Rajamani and Kai Wang