# EXHIBIT 1

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1                 UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                       SAN JOSE DIVISION
 4                          ---oOo---
 5
 6    APPLE INC.                         )
                                         )
 7              Plaintiff,               )
                                         )
 8    vs.                                ) No. 5:22-cv-02637-PCP
                                         )
 9    RIVOS INC.; WEN SHIH-CHIEH         )
      a/k/a RICKY WEN; JIM HARDAGE;      )
10    WEIDONG YE; LAURENT PINOT;         )
      PRABHU RAJAMANI; and KAI WANG,     )
11                                       )
                Defendant.                )
12    _____)
13
14           CONFIDENTIAL ATTORNEYS' EYES ONLY
15
16      30(b)(6) VIDEOTAPED DEPOSITION OF DANIEL MURRAY
17                 SAN FRANCISCO, CALIFORNIA
18                 FRIDAY, NOVEMBER 11, 2023
19
20
21    STENOGRAPHICALLY REPORTED BY:
22    ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
23    CSR LICENSE NO. 9830
24    JOB NO. 6287630
25
                                                        Page 1
```

| | | |
|---|---|---|
| 1 | Q   Okay. Other than it being in the | 11:16 |
| 2 | intellectual property agreement, are there other | 11:16 |
| 3 | communications or directives that you give to | 11:16 |
| 4 | employees -- and again, I can limit it to the SEG -- | 11:16 |
| 5 | telling them not to solicit employees after they leave | 11:16 |
| 6 | Apple? | 11:16 |
| 7 | A   So we do remind employees as -- you know, | 11:16 |
| 8 | employees who have -- who are leaving as part of the | 11:16 |
| 9 | exit process, we do remind them of the -- their | 11:16 |
| 10 | obligations under the IPA, which includes the -- the | 11:16 |
| 11 | non-solicit agreement. | 11:16 |
| 12 | Q   Okay. Do you provide any limitations or | 11:16 |
| 13 | guidance on that? | 11:17 |
| 14 | Or do you just say, "Remember, you're not | 11:17 |
| 15 | allowed to solicit employees after you leave"? | 11:17 |
| 16 | A   I believe the -- the IPA has a one-year term | 11:17 |
| 17 | for the -- the non-solicit. | 11:17 |
| 18 | Q   Okay. Any other limitations that you tell | 11:17 |
| 19 | them about? | 11:17 |
| 20 | A   Not that I'm aware of. | 11:17 |
| 21 | Q   Okay. Are there times when Apple increases | 11:17 |
| 22 | its efforts -- and again, I'll limit it to the SEG | 11:17 |
| 23 | group -- Apple increases its efforts to recruit | 11:17 |
| 24 | engineers from other companies? | 11:17 |
| 25 | A   So our -- our growth needs vary from year to | 11:17 |

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. LANDES: Okay. | 14:52 |
| 2 | Q  Do you think the focus with respect to the | 14:53 |
| 3 | checklist was in making sure that the employees | 14:53 |
| 4 | complied with it, or making sure Apple had a signed | 14:53 |
| 5 | copy of it? | 14:53 |
| 6 | A  I think we want -- | 14:53 |
| 7 | MR. GONZALEZ: Objection; vague. | 14:53 |
| 8 | THE WITNESS: I think we wanted employees to | 14:53 |
| 9 | comply with it. | 14:53 |
| 10 | MR. LANDES: Okay. | 14:53 |
| 11 | Q  Do you remember having discussions about the | 14:53 |
| 12 | importance of having employees comply with it? | 14:53 |
| 13 | A  I -- I -- I remember having discussions about | 14:53 |
| 14 | the importance of -- of going through the items on the | 14:53 |
| 15 | checklist. And we came up with the checklist as a -- | 14:53 |
| 16 | a way of documenting what we -- what we wanted | 14:53 |
| 17 | managers to do when an employee departed. | 14:53 |
| 18 | Q  Do you -- do you remember discussions | 14:53 |
| 19 | specifically about the importance of having the signed | 14:53 |
| 20 | document, distinct from the importance of having | 14:53 |
| 21 | employees comply with it or managers go through it? | 14:53 |
| 22 | A  I think there were some discussions about | 14:54 |
| 23 | getting the signatures, yes. | 14:54 |
| 24 | Q  Do you remember any written instructions | 14:54 |
| 25 | about the importance of making sure that employees | 14:54 |

Page 193

```
1     actually complied with it and went through it?  Any    14:54
2     written discussions?                                    14:54
3         A   Any written discussions?                        14:54
4             Not that I recall.                              14:54
5             MR. LANDES:  Okay.  Okay.                       14:55
6             Let's look at 27.                               14:55
7             (Document marked Exhibit 19                     14:55
8              for identification.)                           14:55
9             MR. LANDES:  Exhibit 19?                        14:55
10            STENOGRAPHIC REPORTER:  Yes.                    14:55
11            MR. LANDES:  Thank you.                         14:55
12        Q   Exhibit 19 is an e-mail chain starting at       14:55
13    APL-RIVOS '6681.  June 8, 2021.                         14:55
14            Do you see that?                                14:55
15        A   Yep.                                            14:56
16        Q   So here, Tse-Yu Yeh e-mails you about           14:56
17    Aditya -- what's his last name?                         14:56
18        A   Kesiraju.                                       14:56
19        Q   Oh.                                             14:56
20        A   I'm not sure if that pronunciation is right     14:56
21    or not.                                                 14:56
22        Q   Talking about him leaving, as you would later   14:56
23    learn, for Rivos; right?                                14:56
24        A   Yeah.                                           14:56
25        Q   Okay.  And this is right around the time that   14:56
```

Page 194

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. LANDES:  Q.  Did employees ever ask you | 15:23 |
| 2 | for clarification? | 15:23 |
| 3 | A   No.  I mean, I -- I think, you know, in the | 15:23 |
| 4 | case where we would be trying to recruit an employee, | 15:23 |
| 5 | I mean, like we talked earlier, I -- you -- we -- we | 15:23 |
| 6 | were -- I and others were very clear that, Hey, if | 15:23 |
| 7 | you're under a non-solicit agreement, do not contact | 15:23 |
| 8 | people.  If people contact you, then, you know, we can | 15:23 |
| 9 | refer it to recruiting, and -- and we can continue the | 15:23 |
| 10 | discussion. | 15:23 |
| 11 | Q   Okay.  So the -- the general interpretation | 15:23 |
| 12 | that you were working with among your team, at least, | 15:23 |
| 13 | was for one year, it's safest just not to contact | 15:23 |
| 14 | anybody? | 15:23 |
| 15 | A   Yeah. | 15:23 |
| 16 | Q   Okay.  And then let's go up to the top e-mail | 15:24 |
| 17 | from Kayla to Sri, CC you.  And she also says | 15:24 |
| 18 | something related to attorneys, and then she says: | 15:24 |
| 19 | "In addition, the new documents they must | 15:24 |
| 20 | sign re leaving clean." | 15:24 |
| 21 | Do you see that? | 15:24 |
| 22 | A   Yeah. | 15:24 |
| 23 | Q   So I assume that refers to the hardware | 15:24 |
| 24 | checklist -- hardware team departing employee | 15:24 |
| 25 | checklist? | 15:24 |

Page 214

| | | |
|---|---|---|
| 1 | MR. LANDES:  Q.  Is that how you understood | 15:37 |
| 2 | it? | 15:37 |
| 3 | A    That would have been my interpretation. | 15:37 |
| 4 | Q    Okay.  Is there anything else that he would | 15:37 |
| 5 | be collecting to upload to necessary locations? | 15:37 |
| 6 | MR. GONZALEZ:  Objection; calls for | 15:37 |
| 7 | speculation. | 15:37 |
| 8 | THE WITNESS:  Not that I'm aware of. | 15:37 |
| 9 | MR. LANDES:  Okay. | 15:38 |
| 10 | Q    And then he goes on: | 15:38 |
| 11 | "Just wanted all of you to know as well that | 15:38 |
| 12 | there is increased sensitivity around ensuring these | 15:38 |
| 13 | documents are completed." | 15:38 |
| 14 | Do you see that? | 15:38 |
| 15 | A    Yes. | 15:38 |
| 16 | Q    Okay.  There's no mention here about ensuring | 15:38 |
| 17 | that the employees are actually doing what's on the | 15:38 |
| 18 | checklist; right? | 15:38 |
| 19 | A    No. | 15:38 |
| 20 | Q    Okay.  Was there any guidance provided about | 15:38 |
| 21 | how to ensure that the employees were actually doing | 15:38 |
| 22 | what's on the checklist? | 15:38 |
| 23 | A    Not that I recall. | 15:38 |
| 24 | Q    Was there any guidance given to managers | 15:38 |
| 25 | about what they should -- how they should handle the | 15:38 |

Page 222

| | | |
|---|---|---|
| 1 | non-solicit agreements? | 15:48 |
| 2 | A   I wouldn't know.  The IPAs that I've seen | 15:48 |
| 3 | have a non-solicit agreement. | 15:48 |
| 4 | Q   Okay.  And then the next sentence says: | 15:48 |
| 5 | "You agreed that for 12 months after you | 15:48 |
| 6 | leave Apple you would not use Apple confidential | 15:48 |
| 7 | information to directly or indirectly recruit or | 15:48 |
| 8 | solicit Apple co-workers." | 15:48 |
| 9 | Do you see that? | 15:48 |
| 10 | A   Yeah. | 15:48 |
| 11 | Q   Why is there that qualification about not | 15:48 |
| 12 | using Apple confidential information to directly or | 15:48 |
| 13 | indirectly recruit or solicit Apple co-workers? | 15:48 |
| 14 | MR. GONZALEZ:  No foundation. | 15:48 |
| 15 | THE WITNESS:  I didn't write this document, | 15:48 |
| 16 | so I can't tell you why that qualification was added. | 15:48 |
| 17 | MR. LANDES:  Q.  Did you ever go through this | 15:48 |
| 18 | document with employees? | 15:48 |
| 19 | A   I believe I did once. | 15:48 |
| 20 | Q   Okay.  And in that one instance, did you ever | 15:49 |
| 21 | tell employees what that qual- -- that -- that | 15:49 |
| 22 | employee what that qualification meant? | 15:49 |
| 23 | A   No. | 15:49 |
| 24 | Q   Okay.  Did you understand that the policy was | 15:49 |
| 25 | to describe the non-solicit, generally, in the way | 15:49 |

```
1    that you described it to me maybe 15 or 20 minutes      15:49
2    ago, which was, best not to talk to anybody for a       15:49
3    year?                                                   15:49
4            MR. GONZALEZ:  Objection; vague.                15:49
5            THE WITNESS:  That --                           15:49
6            MR. GONZALEZ:  No foundation.                   15:49
7            THE WITNESS:  -- that was my interpretation.    15:49
8            MR. LANDES:  Okay.                              15:49
9        Q   And then going down a little farther, do you    15:49
10   see there's a spot there for:                           15:49
11           "Name of People Business Partner."              15:49
12       A   Yes.                                            15:49
13       Q   Okay.  What -- what was supposed to happen      15:49
14   there?                                                  15:49
15       A   The people business partner for the             15:49
16   employees -- the name of the people business partner    15:49
17   for this employee should have been written in there.    15:49
18       Q   I see.  Okay.                                   15:49
19           Do you know why it wasn't in this instance?     15:49
20       A   Couldn't tell you.                              15:49
21       Q   Okay.  Do you know if sometimes it just         15:49
22   wasn't -- you know, sometimes people wrote it in, and   15:49
23   sometimes people didn't?                                15:50
24       A   Clearly, in this case, it wasn't written in.    15:50
25   But I can't tell you if that was a general problem.     15:50
```

Page 232

| | | |
|---|---|---|
| 1 | Q   E-mail at the bottom is from Mr. Williamson | 15:53 |
| 2 | about the departure of Jim Hardage and Chris Thomas | 15:53 |
| 3 | for Rivos. | 15:53 |
| 4 | Do you see that? | 15:53 |
| 5 | A   Yep. | 15:53 |
| 6 | Q   Okay.  And Mr. Williamson said: | 15:53 |
| 7 | "I've discussed Chris with Dan" -- | 15:53 |
| 8 | That's you; right? | 15:53 |
| 9 | A   Uh-huh. | 15:53 |
| 10 | Q   -- "and we are ready to walk him out.  He has | 15:53 |
| 11 | signed the exit document.  We need to have Jim sign | 15:53 |
| 12 | the exit document as well." | 15:53 |
| 13 | Do you see that? | 15:53 |
| 14 | A   Yep. | 15:53 |
| 15 | Q   Okay.  In your discussion with | 15:53 |
| 16 | Mr. Williamson about Chris Thomas, did you discuss at | 15:53 |
| 17 | all the process that was involved in having him sign | 15:53 |
| 18 | the exit document? | 15:54 |
| 19 | A   Not that I recall. | 15:54 |
| 20 | Q   Okay.  And in Mr. Williamson's e-mail, he | 15:54 |
| 21 | doesn't mention actually ensuring that the exit | 15:54 |
| 22 | document is complied with, just that it's signed; | 15:54 |
| 23 | right? | 15:54 |
| 24 | A   Right. | 15:54 |
| 25 | Q   Okay.  And then on the top, Mr. Turnpaugh | 15:54 |

Page 235

```
 1                CERTIFICATE OF REPORTER
 2
 3           I, ANDREA M. IGNACIO, hereby certify that the
 4   witness in the foregoing deposition was by me remotely
 5   sworn to tell the truth, the whole truth, and nothing
 6   but the truth in the within-entitled cause;
 7           That said deposition was taken in shorthand
 8   by me, a disinterested person, at the time and place
 9   therein stated, and that the testimony of the said
10   witness was thereafter reduced to typewriting, by
11   computer, under my direction and supervision;
12           That before completion of the deposition,
13   review of the transcript [x] was [ ] was not
14   requested.  If requested, any changes made by the
15   deponent (and provided to the reporter) during the
16   period allowed are appended hereto.
17           I further certify that I am not of counsel or
18   attorney for either or any of the parties to the said
19   deposition, nor in any way interested in the event of
20   this cause, and that I am not related to any of the
21   parties thereto.
22   Dated: 11/13/2023
23
24   _____
25   ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830
```

Page 323