1    BRYAN WILSON (CA SBN 138842)              MARY PRENDERGAST (CA SBN 272737)
     BWilson@mofo.com                          MPrendergast@mofo.com
2    KENNETH A. KUWAYTI (CA SBN 145384)        MORRISON & FOERSTER LLP
     KKuwayti@mofo.com                         2100 L Street, NW, Suite 900
3    MORRISON & FOERSTER LLP                   Washington, District of Columbia 20037
     755 Page Mill Road                        Tel: 202.887.1500 | Fax: 202.887.0763
4    Palo Alto, California 94304-1018
     Tel: 650.813.5600 | Fax: 650.494.0792
5
     ARTURO J. GONZALEZ (CA SBN 121490)
6    AGonzalez@mofo.com
     BONNIE LAU (CA SBN 246188)
7    BLau@mofo.com
     MARGARET A. WEBB (CA SBN 319269)
8    MWebb@mofo.com
     MEREDITH L. ANGUEIRA (CA SBN 333222)
9    MAngueira@mofo.com
     MORRISON & FOERSTER LLP
10   425 Market Street,
     San Francisco, California 94105-2482
11   Tel: 415.268.7000 | Fax: 415.268.7522

12   Attorneys for Plaintiff and Counterclaim Defendant
     APPLE INC.

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16   APPLE INC., a California corporation,

17                  Plaintiff,                  Case No. 5:22-cv-02637-PCP

18          v.                                  **APPLE'S REPLY IN SUPPORT OF
                                                MOTION TO DISMISS DEFENDANTS'
19   RIVOS INC., WEN SHIH-CHIEH a/k/a           AMENDED COUNTERCLAIMS**
     RICKY WEN; JIM HARDAGE; WEIDONG
     YE; LAURENT PINOT; PRABHU               Date: January 23, 2024
20   RAJAMANI; and KAI WANG,                 Time: 10:00 a.m.
21                  Defendants.              Courtroom: 8
                                             Judge: Hon. P. Casey Pitts
22   RIVOS INC., WEN SHIH-CHIEH a/k/a
     RICKY WEN; JIM HARDAGE; WEIDONG         Trial Date: Not Set
23   YE; LAURENT PINOT; PRABHU               Date Action Filed: April 29, 2022
     RAJAMANI; and KAI WANG,
24                                           **FILED UNDER SEAL**
                    Counterclaim Plaintiffs,
25
            v.
26
     APPLE INC., a California corporation,
27
                    Counterclaim Defendant.
28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

    A.    The Individual Defendants Fail to State a Claim for Declaratory Relief ................ 2

        1.    The NDA Is Enforceable as a Matter of Law. ............................................. 2

        2.    There Is No Justiciable Controversy Regarding the Legality or Enforceability of the Non-Solicit. ................................................................. 4

        3.    Even if Justiciable, The Individual Defendants Fail to Establish the Non-Solicit Violates California Law. ............................................................. 7

    B.    Defendants Fail to State a Claim Under California's Unfair Competition Law ............................................................................................................... 8

        1.    Defendants Fail to Plead Any Unlawful or Unfair Business Practices by Apple. ................................................................................... 8

        2.    Defendants' Request for Money Damages Fails as a Matter of Law. ......... 9

        3.    Defendants' Request for Injunctive Relief Fails as a Matter of Law ......... 10

    C.    The Court Should Strike or Disregard Defendants' Newly Added, Extraneous Opposition Materials. ......................................................................... 11

    D.    The Court Should Deny Defendants' Request for Leave to Amend Their Amended Counterclaims a Second Time. ............................................................... 12

III.  CONCLUSION ................................................................................................ 14

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Action Learning Sys., Inc. v. Crowe,*
   2014 WL 12564011 (C.D. Cal. Aug. 11, 2014) ............................................................... 4

4

5

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,*
   28 Cal. App. 5th 923 (Cal. Ct. App. 2018) .................................................................... 7

6

*Aramark Mgmt., LLC v. Borgquist,*
   2021 WL 3932258 (C.D. Cal. July 8, 2021) ................................................................... 7

7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................................... 3

8

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2009) ................................................................................................. 9, 12

10

*Bias v. Wells Fargo & Co.,*
   942 F. Supp. 2d 915 (N.D. Cal. 2013) .......................................................................... 10

11

12

*Brown v. TGS Mgmt. Co.,*
   57 Cal. App. 5th 303 (Cal. Ct. App. 2020) .................................................................... 3

13

*Carrillo v. Wells Fargo Bank, N.A.,*
   2023 WL 5423015 (C.D. Cal. May 18, 2023) ............................................................... 10

14

15

*Cervantes v. Countrywide Home Loans, Inc.,*
   656 F.3d 1034 (9th Cir. 2011) ................................................................................ 12, 14

16

*Chodos v. W. Publ'g Co.,*
   292 F.3d 992 (9th Cir. 2002) ........................................................................................ 14

17

18

*Clayworth v. Pfizer, Inc.,*
   49 Cal. 4th 758 (Cal. 2010) .......................................................................................... 10

19

*Domtar AI Inc. v. J.D. Irving, Ltd.,*
   43 F. Supp. 3d 635 (E.D.N.C. 2014) .............................................................................. 6

20

*Dowell v. Biosense Webster, Inc.,*
   179 Cal. App. 4th 564 (Cal. Ct. App. 2009) ................................................................... 4

21

22

*Ellsworth v. U.S. Bank, N.A.,*
   908 F. Supp. 2d 1063 (N.D. Cal. 2012) .......................................................................... 8

23

*Gonzalez & Gonzales Bonds and Ins. Agency, Inc. v. Action Immigr. Bonds & Ins. Servs., Inc.,*
   2014 WL 12600146 (C.D. Cal. Mar. 24, 2014) ............................................................ 10

24

25

*Hamilton v. Juul Labs, Inc.,*
   2020 WL 5500377 (N.D. Cal. Sept. 11, 2020) ............................................................... 7

26

*Harris v. Del Taco, Inc.,*
   2004 WL 3744291 (C.D. Cal. Sept. 13, 2004) .............................................................. 11

27

28

*Healy v. Qognify, Inc.*,
   2020 WL 136589 (C.D. Cal. Jan. 10, 2020) ................................................................. 6

*Imtiaz Khan v. K2 Pure Sols., LP*,
   2013 WL 4734006 (N.D. Cal. Sept. 3, 2013) ................................................................ 6

*In re Volkswagen*,
   328 F. Supp. 3d 963 (N.D. Cal. 2018) ........................................................................ 12

*Kordich v. Salton, Inc.*,
   2005 WL 8173161 (S.D. Cal. July 5, 2005) .................................................................. 5

*Latona v. Aetna U.S. Healthcare Inc.*,
   82 F. Supp. 2d 1089 (C.D. Cal. 1999) ........................................................................ 11

*Lesnik v. Eisenmann SE*,
   2018 WL 4700342 (N.D. Cal. Oct. 1, 2018)........................................................... 12, 14

*Loral Corp. v. Moyes*,
   174 Cal. App. 3d 268 (Cal. Ct. App. 1985) .................................................................. 7

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
   2009 WL 10670877 (C.D. Cal. Aug. 18, 2009)........................................................... 10

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1018 (C.D. Cal. 2012) ........................................................................ 6

*Murj, Inc. v. Rhythm Mgmt. Grp., Inc.*,
   2022 WL 3589574 (N.D. Cal. Aug. 22, 2022)............................................................... 9

*O'Sullivan Films v. Neaves*,
   2017 WL 4798997 (W.D. Va. Oct. 24, 2017)................................................................ 6

*Progressive W. Ins. Co. v. Yolo Cnty. Sup. Ct.*,
   135 Cal. App. 4th 263 (Cal. Ct. App. 2005) ................................................................ 8

*Reilly v. Apple Inc.*,
   2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) ............................................................... 9

*Sanabria v. Small Bus. Lending, LLC*,
   2023 WL 4533914 (C.D. Cal. July 13, 2023) .............................................................. 10

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998).................................................................................... 11

*Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*,
   1999 WL 760527 (N.D. Cal. Sept. 21, 1999) ............................................................. 10

*Slusher v. City of Napa*,
   2015 WL 8527411 (N.D. Cal. Dec. 11, 2015) .............................................................. 9

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2021 WL 5785264 (C.D. Cal. Sept. 3, 2021)................................................................. 2

*Twentieth Century Fox Film Corp. v. Netflix, Inc.,*
   2019 WL 8013589 (Cal. Super. Ct. Dec. 10, 2019) ...................................................... 7

*VibrantCare Rehab., Inc. v. Deol,*
   2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) ........................................................ 2

*W. Air Charter, Inc. v. Schembari,*
   2018 WL 10157139 (C.D. Cal. Nov. 21, 2018) ........................................................ 7

*Wagging Tails Prods., Inc. v. Coakley,*
   2023 WL 4316777 (C.D. Cal. Feb. 21, 2023) ........................................................ 3

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.,*
   2004 WL 7336862 (C.D. Cal. Jan. 9, 2004) ........................................................ 8

*Wellness Grp., LLC v. King Bio, In*c.,
   2014 WL 1713767 (W.D.N.C. Apr. 30, 2014) ........................................................ 6

*Wood v. NewBridge Res. Grp., LLC,*
   2021 WL 4803494 (C.D. Cal. Mar. 11, 2021) ........................................................ 5

**Statutes**

Cal. Bus. & Prof. Code § 16600 ........................................................ 4, 7, 8

1    ## I.       INTRODUCTION

2           Defendants seek to amend their counterclaims for a second time in their Opposition, but

3    their new arguments fail to cure their many pleading deficiencies.  In a thinly veiled attempt to

4    sidestep Apple's arguments highlighting the fatal flaws in the Amended Counterclaims—

5    including the dispositive allegation that more than 50 former Apple employees joined Rivos—

6    Defendants mischaracterize those arguments as "merits disputes."  But in the same breath,

7    Defendants themselves add countless new "facts" through their Opposition based on five new

8    exhibits.  Indeed, the fact that Defendants felt the need to supplement their Opposition with new

9    factual allegations at all reveals the inadequacy of the Amended Counterclaims.

10          Even if Defendants' improper attempt to supplement their pleadings were permissible,

11   nothing in the Opposition, including these new "facts," saves the Amended Counterclaims.  The

12   claim for declaratory relief fails because the Individual Defendants still have not established that

13   either the NDA or Non-Solicit is invalid.  In fact, they effectively concede that the NDA is

14   enforceable as written.  Therefore, instead, they challenge Apple's interpretation of the NDA, but

15   fail to cite any support for their contention that Apple's enforcement of a ***legal*** NDA is illegal.

16   The Individual Defendants also fail to show that the Non-Solicit is unenforceable or prevents

17   them from engaging in their chosen profession of engineering.  Nor is there is any justiciable

18   controversy regarding the enforceability of the Non-Solicit because the Individual Defendants do

19   not allege that Apple enforced it against them, nor point to a single specific instance in which any

20   Rivos employee refrained from soliciting a former Apple colleague.  Defendants' UCL claim

21   likewise cannot survive dismissal because Defendants do not allege any "unlawful" or "unfair"

22   conduct, and their claim for both monetary and injunctive relief fails as a matter of law.

23          If the Court considers Defendants' new facts in determining whether to allow leave to

24   amend, the Court should also consider the testimony from Rivos' executives confirming that

25   (1) Rivos has not been harmed by Apple's IPA; (2) the NDA and Non-Solicit are industry

26   standard; and (3) Rivos requires its own employees to sign agreements with nearly identical

27   provisions.  Because amendment would therefore be futile, Defendants' Amended Counterclaims

28   should be dismissed with prejudice.

1    **II.    ARGUMENT**

2        **A.    The Individual Defendants Fail to State a Claim for Declaratory Relief.**

3        The Opposition does not address the fatal flaws in the Individual Defendants' claim for

4    declaratory relief.  First, the Individual Defendants implicitly acknowledge that the language of

5    Apple's NDA is enforceable and instead try to divert the Court's attention to Apple's alleged

6    interpretation of the NDA.  But they do not cite a single case supporting their contention that

7    Apple's enforcement of a ***valid*** NDA violates Section 16600.  Second, the Individual Defendants

8    fail to establish a justiciable controversy regarding the Non-Solicit because they neither allege

9    that Apple enforced it against ***them***, nor that any specific Rivos employee refrained from

10    soliciting a former Apple colleague.  Third, the Individual Defendants argue that the Non-Solicit

11    is unenforceable because California is supposedly moving toward a categorical prohibition of

12    non-solicitation agreements, but they fail to persuasively rebut the many recent cases Apple cited

13    to the contrary.  Accordingly, the First Cause of Action should be dismissed.

14                **1.    The NDA Is Enforceable as a Matter of Law.**

15        The Individual Defendants do not adequately allege that the NDA, either as written or

16    interpreted by Apple, precludes them from "work[ing] in their chosen field[]" of engineering.  *See*

17    *VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *6 (E.D. Cal. Apr. 26, 2021) (holding

18    non-disclosure agreement that protected material that could "damage the company" if disclosed

19    was valid and did not "suffer from 'overbreadth'" because it did not "seek to limit the future

20    employment of an employee").  That alone dooms their claim.

21        The Individual Defendants effectively concede that the language of Apple's NDA is

22    enforceable.[1]  They are therefore left to argue that Apple's "interpretation" of the NDA "makes it

23    _____

24    [1] The Opposition does not directly contend with Apple's cited cases establishing the validity of
     the NDA, but instead attempts to sidestep those cases, claiming they focused only on the plain
     language of the non-disclosure agreements at issue.  Dkt. 363, Opposition ("Opp.") at 8 (citing
25    *SPS Techs., LLC v. Briles Aerospace, Inc*., 2021 WL 5785264, at *18 (C.D. Cal. Sept. 3, 2021);
     *VibrantCare*, 2021 WL 1614692, at *6).  The Individual Defendants do not argue that the NDA's
26    plain language is distinguishable from the non-disclosure agreements deemed valid in *SPS*
     *Technologies* or *VibrantCare*.  And their attempt to rely on *Wagging Tails* fails because the non-
27    disclosure agreement there covered "information of any nature that Defendant receive[d] from
     any person regarding any topic," which, unlike Apple's narrow NDA, is indeed "vague and

28

1   a *de facto* non-compete clause." Opp. at 7.  But their only cited case does not support that

2   contention.  In *Brown v. TGS Mgmt. Co.*, the court held that a "strikingly broad" confidentiality

3   provision, which prohibited the disclosure or use of any information related to the "securities

4   industry at large," "plainly bar[red] [plaintiff] in perpetuity from doing any work in the securities

5   field" for the remainder of his life.  57 Cal. App. 5th 303, 316-17, 319 (Cal. Ct. App. 2020).  In

6   contrast, Apple's NDA is limited only to "information of a confidential, proprietary, and secret

7   nature" (Dkt. 320, Amended Counterclaims ("Countercl.") ¶ 25), and consequently does not

8   create a blanket prohibition on the disclosure or use of all information related to its business, the

9   engineering industry, or even the SoCs industry.  Unlike in *Brown*, the Individual Defendants

10  cannot establish that Apple's NDA is "strikingly broad" or otherwise prevented them from

11  working in their "chosen profession" of engineering.  *Brown*, 57 Cal. App. 5th at 316, 319.

12          Additionally, as explained in Apple's Motion to Dismiss, none of the Individual

13  Defendants' factual allegations supports their claim that Apple's ***interpretation*** of the NDA is

14  fatally overbroad.  *See* Dkt. 342 ("Motion" or "MTD") at 7-8.  But rather than respond to the

15  arguments in Apple's Motion, the Individual Defendants contend that the Motion improperly

16  raises "factual disputes."  Opp. at 8-9.  Not so.  Apple's argument that the exit checklist does not

17  expand the IPA is based entirely on the allegations in the Amended Counterclaims and the

18  language of the checklist, which is attached as Exhibit A to the Amended Counterclaims.

19  Countercl. ¶ 25 & Ex. A.[2]  And while Defendants speculate that "Apple evidently includes"

20  information like "children's homework" "within [the] definition" of "confidential" and

21  "proprietary" (*id.* ¶ 30), that "bald" and misleading allegation is not enough to plausibly allege

22  that Apple's interpretation of the NDA is overly broad.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681

23  (2009).  Indeed, that allegation is facially uncredible given the NDA's narrow definition of

24

25  overbroad." *Wagging Tails Prods., Inc. v. Coakley*, 2023 WL 4316777, at *10 (C.D. Cal. Feb.
    21, 2023).

26

27  [2] The Individual Defendants' attempt to dodge the substance of Apple's argument by wrongly
    claiming that it is a factual dispute is telling—and ironic, given that they improperly introduced
    countless new facts in the Opposition.  *See* Section II.C., *infra*.

28

"Proprietary Information" to include only "confidential, proprietary, and secret information." Countercl. ¶ 25 & Ex. A.

Nor do the Individual Defendants cite any case law supporting their contention that Apple's interpretation of the NDA somehow renders it unenforceable. *Action Learning Sys., Inc. v. Crowe* involved a broad non-disclosure agreement that defined "Proprietary Information" to include "all information and any idea" pertaining to the business, and thus, "[r]ead literally," would preclude the former employees "from working in their chosen field." 2014 WL 12564011, at *12-13 (C.D. Cal. Aug. 11, 2014). In contrast, Apple's NDA is limited to "confidential, proprietary, and secret" information (Countercl. ¶ 30), and the Individual Defendants do not plausibly allege that the NDA precluded them from working in their chosen field—nor could they, since each Individual Defendant now works as an engineer at Rivos. Countercl. ¶ 47. Likewise, *Dowell v. Biosense Webster, Inc*. did not even involve a non-disclosure agreement, but rather "broadly worded" noncompete and non-solicitation provisions that defined "confidential information" to include any "information disclosed to or known by the employee," which effectively prohibited former employees from rendering services to any competitors, customers, or clients of their former employer. 179 Cal. App. 4th 564, 575, 578 (2009). Unlike *Dowell*, Apple's NDA does not prohibit the Individual Defendants from rendering services to any competitor, customer, or client of Apple, as evidenced by the fact that they work at Rivos.

The Individual Defendants thus fail to allege that the NDA violates Section 16600 and, accordingly, cannot state a claim for declaratory relief based on that provision.

### 2. There Is No Justiciable Controversy Regarding the Legality or Enforceability of the Non-Solicit.

The Opposition devotes several pages to arguing that the Individual Defendants have standing to pursue a claim for declaratory relief regarding the Non-Solicit (Opp. at 11-12), yet Apple does not argue that they lack standing. Rather, Apple argues that there is no justiciable controversy regarding the Non-Solicit because the Individual Defendants do not allege that Apple enforced that provision ***against them***. MTD at 11-13. Not only did the Individual Defendants largely ignore that distinction, but also, the only portions of the Amended Counterclaims they rely

on to support this claim do not establish justiciability.  Paragraphs 35 and 55 allege only generally that unnamed former Apple employees at Rivos steered clear of contacting their former colleagues for fear of violating the Non-Solicit.  Opp. at 13; Countercl. ¶¶ 35, 55.  Those allegations are woefully vague and conclusory, and in any event, fail to allege that the Non-Solicit impacted *the Individual Defendants*.  The Opposition also mischaracterizes those same paragraphs, claiming that they allege that "Apple executives have threatened to enforce the [Non-Solicit] against former Apple employees."  Opp. at 13.  But those paragraphs merely allege that an Apple executive suggested that, if the Non-Solicit was violated, it should be "escalated" (Countercl. ¶ 35), and that Apple looked for evidence that a Rivos employee violated the Non-Solicit (*id.* ¶ 55).  Neither allegation suggests that Apple threatened any former employees, much less the Individual Defendants specifically.

Acknowledging the inadequacy of these allegations, the Opposition attempts to add new (albeit mischaracterized) facts.  Opp. at 13.  The Court should not consider those novel facts, *see* Section II.C., *infra*, but even if it does, they still fail to show that Apple enforced the Non-Solicit against *anyone*.  *See* Opp. at 13, Ex. 1, Ex. 4.  Rather, the excerpted testimony merely establishes that Apple reminds departing employees about their obligations under the Apple IPA and that Rivos employees believed that Apple *could* enforce the Non-Solicit if it wanted to.  *Id.*  Thus, even the new evidence fails to establish a justiciable controversy as to the Non-Solicit.  *See Wood v. NewBridge Res. Grp., LLC*, 2021 WL 4803494, at *4 (C.D. Cal. Mar. 11, 2021) (dismissing plaintiff's "unripe" declaratory relief claim because plaintiff did not allege "any facts suggesting that Defendants [] attempted to enforce the provision," nor that he "refrained from any activities out of concern for violating his non-competition obligations"); *Kordich v. Salton, Inc*., 2005 WL 8173161, at *4 (S.D. Cal. July 5, 2005) (dismissing claim for declaratory judgment that non-compete agreement was unenforceable where "[n]o course of conduct [was] alleged that [would] result in 'imminent' and 'inevitable' litigation").

The Individual Defendants also claim without basis that Apple's defense of the validity of the Non-Solicit in its Motion "underscores" Apple's alleged refusal to disavow the Non-Solicit.  Opp. at 13.  But defending the legality of the Non-Solicit in response to the Amended

1  Counterclaims is not the same as affirmatively seeking to enforce it, and it certainly cannot create

2  a justiciable controversy. *See Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1018,

3  1028 (C.D. Cal. 2012) (holding there was no actual controversy regarding non-compete provision

4  where defendant refused to stipulate that it would not enforce the non-compete clause because

5  there was "no evidence that [d]efendants [had] attempted, in this or any other litigation, to enforce

6  [it]"). The Individual Defendants' cases are inapposite because each one involved either a lawsuit

7  based on a purported violation of a non-solicitation or non-compete agreement, or specific threats

8  of legal action. *See O'Sullivan Films v. Neaves*, 2017 WL 4798997, at *3-4 (W.D. Va. Oct. 24,

9  2017) (plaintiff sought to enforce agreement because it was "actively currently prosecuting this

10 case"); *Healy v. Qognify, Inc.*, 2020 WL 136589, at *3-4 (C.D. Cal. Jan. 10, 2020) (noting that

11 once the case was settled or dismissed, "no live controversy remained," but finding a live

12 controversy because the defendant was still actively seeking to enforce the non-compete

13 provision through litigation); *Imtiaz Khan v. K2 Pure Sols., LP*, 2013 WL 4734006, at *4 (N.D.

14 Cal. Sept. 3, 2013) (no live controversy existed because defendant no longer sought to enforce

15 expired non-compete agreement); *Wellness Grp., LLC v. King Bio, In*c., 2014 WL 1713767, at *4

16 (W.D.N.C. Apr. 30, 2014) ("letter clearly indicated [] intent to enforce the Agreement").  In

17 contrast, Apple's lawsuit does not seek to enforce the Non-Solicit, but rather appropriately seeks

18 to protect its intellectual property rights.[3]  *See Mintz*, 906 F. Supp. 2d at 1028 (no actual

19 controversy regarding non-compete provision where Defendant did not seek to enforce it in the

20 litigation).  And the Amended Counterclaims do not allege that Apple threatened the Individual

21 Defendants with enforcement of the Non-Solicit; rather, they merely allege that Apple executives

22 expressed an intent to investigate potential violations of the Non-Solicit by ***unidentified*** Rivos

23 employees, not the Individual Defendants in particular.  Countercl. ¶¶ 35, 55.

24      The Individual Defendants thus fail to establish that there is a judicial controversy

25

26 ---

   [3] The Individual Defendants also cite *Domtar*, but that case supports Apple's claim:  the court
   there declined to determine whether a non-solicitation provision was enforceable because
27 plaintiffs did not allege that defendant breached that provision.  *Domtar AI Inc. v. J.D. Irving,
   Ltd.*, 43 F. Supp. 3d 635, 640 (E.D.N.C. 2014).
28

1    regarding the Non-Solicit, and their claim for declaratory relief as to that provision fails.

2    **3.      Even if Justiciable, The Individual Defendants Fail to Establish the Non-Solicit Violates California Law.**

3

4    The Individual Defendants do not rectify their failure to allege that the Non-Solicit limits

5    their "ability to 'engage in [their] lawful profession, trade or business.'"[4]  MTD at 19 (citing Cal.

6    Bus. & Prof. Code § 16600); *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 279 (Cal. Ct. App.

7    1985)).  Instead, they claim that "California is moving to a categorical prohibition on non-

8    solicitation clauses" after *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th

9    923 (Cal. Ct. App. See, s2018).  Opp. at 9.  They wrongly argue that courts in this district have

10   "consistently" held that post-termination employee non-solicitation agreements are invalid under

11   California law.  *Id.*  That argument ignores the post-*AMN* California federal court decisions

12   upholding post-termination non-solicitation provisions cited by Apple.  *See* MTD at 10 (citing

13   *Hamilton v. Juul Labs, Inc.*, 2020 WL 5500377, at *7 (N.D. Cal. Sept. 11, 2020); *W. Air Charter,*

14   *Inc. v. Schembari*, 2018 WL 10157139, at *14 (C.D. Cal. Nov. 21, 2018)); *Twentieth Century Fox*

15   *Film Corp. v. Netflix, Inc.*, 2019 WL 8013589, at *28 (Cal. Super. Ct. Dec. 10, 2019).)  And

16   while the Individual Defendants attempt to distinguish *Aramark* because it addressed only pre-

17   termination conduct, the court there emphasized that the pre-termination non-solicitation

18   provision at issue was valid because it did not inhibit the former employee's ability "to engage in

19   his chosen 'profession, trade, or business.'"  *Aramark Mgmt., LLC v. Borgquist*, 2021 WL

20   3932258, at *9 (C.D. Cal. July 8, 2021).  Accordingly, their accusation that Apple "ignores" the

21   purportedly "unbroken line of authority" in its Motion (Opp. at 10) is incorrect not only because

22   "federal courts in California have diverged in their interpretation of *AMN*" (MTD at 10), but also

23   because Apple candidly acknowledged that very split in authority (*id.*).

24

---

25   [4] The Individual Defendants argue that the Non-Solicit "prevented them from contacting former
     colleagues at Apple," which "has had an impact on [their] ability to do business."  Opp. at 10.
26   But they do not (and cannot) argue that the Non-Solicit impeded their ability to engage in their
     chosen profession of **engineering**.  And, tellingly, they conflate the impact that the Non-Solicit
27   had on ***them*** with the impact it had on ***Rivos*** (which lacks standing to seek any declaratory relief)
     in an effort to shoehorn their claim into the applicable legal standard.

28

**B.**      **Defendants Fail to State a Claim Under California's Unfair Competition Law.**

Defendants' claim under the UCL fails for several reasons.  First, Defendants concede that their derivative claim under the "unlawful" prong necessarily fails if their declaratory relief claim fails.  And Defendants do not state a claim under the "unfair" prong because they fail to plausibly articulate how Apple's actions harmed competition.  Second, Defendants do not argue that their alleged monetary losses are restitutive, and wrongly attempt to avoid dismissal by claiming this issue cannot be decided at the pleading stage.  Third, Defendants fail to allege standing to assert a claim for injunctive relief under the UCL on behalf of themselves or the public.

**1.**      **Defendants Fail to Plead Any Unlawful or Unfair Business Practices by Apple.**

Defendants acknowledge that their claim under the UCL's "unlawful" prong rises and falls with their claim for declaratory relief under Section 16600.  Opp. at 14.  Because Defendants fail to state a claim under Section 16600 (*see* Section II.A., *supra*; MTD at 5-13), their derivative UCL claim likewise fails.

The Opposition also fails to save Defendants' claim under the UCL's "unfair" prong.[5] Apart from Defendants' conclusory claim that "they, ***and competition more generally***, have been harmed by Apple's conduct" (Opp. at 16 (emphasis added)), Defendants still fail to adequately allege harm to competition ***broadly*** (as opposed to themselves).  MTD at 14 (emphasis added).  Indeed, Defendants do not even confront Apple's argument that its purported conduct has not limited employee mobility because, as Defendants concede, over 50 former Apple employees moved to Rivos.  MTD at 14-15.  Instead, Defendants mislabel that argument a "merits" dispute

---

[5] Defendants claim that they also plausibly allege a UCL violation under the "balancing test," "which applies in cases where the parties are not direct business competitors."  Opp. at 15 n.6.  But Defendants and Apple ***are*** direct competitors in the alleged employment market at issue in this case. Countercl. ¶¶ 5-6; *see also* MTD at 14 n.6.  And Defendants' cited cases do not support application of the balancing test here.  *See Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2004 WL 7336862, at *29 (C.D. Cal. Jan. 9, 2004) (dispute between business partners); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1089-90 (N.D. Cal. 2012) (consumer case); *Progressive W. Ins. Co. v. Yolo Cnty. Sup. Ct.*, 135 Cal. App. 4th 263, 286 (Cal. Ct. App. 2005) (same).  Moreover, even under the balancing test, Defendants' UCL claim fails because they do not allege that the harm they purportedly suffered (if any) outweighs the "utility" of Apple's enforcement of its valid, narrow IPA.  *See Ellsworth*, 908 F. Supp. 2d at 1090.

1   (Opp. at 16), even though the Amended Counterclaims allege that precise fact.[6]  Countercl. ¶ 9

2   ("[O]ver 50 former Apple employees chose to leave their positions at Apple…to pursue

3   promising new opportunities at Rivos.").  Likewise, Defendants' conjecture that Apple's conduct

4   keeps compensation artificially low is purely speculative and should be disregarded.  *Bell Atl.*

5   *Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  Equally speculative is Defendants' claim that

6   Apple's conduct caused other employees to turn down offers or refrain from applying to Rivos.

7   Even if true, that supposition focuses on the harm to ***Rivos'*** "personal business interests" resulting

8   from a limited talent pool, not any "harm [to] competition generally."  *Reilly v. Apple Inc.*, 2022

9   WL 1215305, at *8 (N.D. Cal. Apr. 25, 2022).  Defendants' argument that Apple's conduct made

10  it more difficult for ***Rivos employees*** to leave Apple or do their jobs at Rivos is likewise deficient

11  because it does not establish harm to anyone but Defendants themselves.  Opp. at 17.

12          Thus, Defendants' claim under the "unlawful" or "unfair" prongs of the UCL both fail.

13                  **2.      Defendants' Request for Money Damages Fails as a Matter of Law.**

14          Defendants' argument that their UCL claim should survive because they seek both

15  monetary and injunctive relief misses the point.  Opp. at 17-18.  Apple argues that Defendants'

16  ***monetary*** losses are non-restitutive, and thus not recoverable under the UCL.  MTD at 15-17.

17  That Defendants also seek injunctive relief does not remedy the defects in their alleged monetary

18  damages, which are not recoverable as a matter of law.  And, in any event, Defendants' claim for

19  injunctive relief fails as a matter of law for other reasons, warranting outright dismissal of

20  Defendants' UCL claim.  *See* Section II.B.3., *infra*.

21          Defendants also wrongly argue that whether the alleged harm is restitutive cannot be

22  decided at the pleading stage.  Opp. at 18.  Apple is not disputing "the precise measure of

23  damages" that Defendants can recover.  *Id.* at 18-19.  Rather, Apple argues that all of Defendants'

24

25  ---
[6] None of Defendants' cited cases suggest that Apple's argument, based entirely on the Amended
26  Counterclaims and attached materials, is not appropriate at the pleading stage.  Defendants cite
    *Murj, Inc. v. Rhythm Mgmt. Grp., Inc.*, 2022 WL 3589574, at *2 (N.D. Cal. Aug. 22, 2022) for
27  the general principle that a court must draw all inferences in favor of the non-moving party.  And
    *Slusher v. City of Napa,* 2015 WL 8527411, at *11 (N.D. Cal. Dec. 11, 2015) addressed the
28  causation requirement for a negligence claim, not harm to competition as to a UCL claim.

alleged monetary losses, assumed to be true, are non-restitutive and thus non-recoverable.  MTD at 15-17.  Apple cited numerous cases dismissing UCL claims on that very basis at the pleading stage, and Defendants' superficial distinctions of those cases do not save their claim.  *Id*.  For example, in *Gonzalez & Gonzales Bonds and Ins. Agency, Inc. v. Action Immigr. Bonds & Ins. Servs., Inc.*, the defendants moved to strike plaintiffs' prayer for attorneys' fees rather than move to dismiss the UCL claim, but in granting the motion, the court categorically held that damages and attorneys' fees are not recoverable under the UCL.  2014 WL 12600146, at *8 (C.D. Cal. Mar. 24, 2014).  And in *Carrillo v. Wells Fargo Bank, N.A*., the court dismissed a UCL claim outright because, like here, the alleged damages—attorneys' fees and fees and charges not adequately alleged to have "accrued ***as a result of*** [defendant's] unlawful conduct"—did not serve as a basis for UCL damages.  2023 WL 5423015, at *5 (C.D. Cal. May 18, 2023) (emphasis in original); *see also Sanabria v. Small Bus. Lending, LLC*, 2023 WL 4533914, at *3 (C.D. Cal. July 13, 2023) (dismissing claim for attorneys' fees under the UCL).  Nor do Defendants' cited cases suggest dismissal of their claim for monetary relief should be delayed.  *See Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co*., 1999 WL 760527, at *7 (N.D. Cal. Sept. 21, 1999) (dismissing claim for monetary damages at the pleading stage); *Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 789 (Cal. 2010) (addressing motion for summary judgment, not motion to dismiss); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp*., 2009 WL 10670877, at *2 (C.D. Cal. Aug. 18, 2009) (addressing motion *in limine*, not motion to dismiss); *Bias v. Wells Fargo & Co*., 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (addressing whether conduct was unfair, not whether monetary losses were restitutive).

Defendants' claim for monetary relief under the UCL thus fails.

### 3. Defendants' Request for Injunctive Relief Fails as a Matter of Law.

Defendants fail to allege that they have standing to seek an injunction on behalf of themselves or the public.  First, Defendants claim that they have standing to seek injunctive relief on behalf of themselves because, in their view, they plausibly allege that Apple's conduct violates California law.  Opp. at 19.  But Defendants ignore Apple's argument that injunctive relief regarding the Non-Solicit is improper because they do not allege that Apple enforced it against

any Rivos employees.  MTD at 17.  And Defendants effectively concede that injunctive relief regarding the NDA is not appropriate unless the Court finds that Defendants plausibly allege that the NDA is illegal (Opp. at 19)—which, as explained above, the Court should not.  *See* Section II.A.1., *supra.*

Second, Defendants argue that they have standing because they seek an injunction on behalf of "similarly situated employees."  Opp. at 19-20.  But their logic is entirely circular: Defendants claim that they have standing to assert a claim on behalf of ***others*** because they ***themselves*** have been injured by Apple's conduct.  *Id.* at 20; *see Harris v. Del Taco, Inc*., 2004 WL 3744291, at *4 (C.D. Cal. Sept. 13, 2004) (holding that plaintiff lacked standing to bring claim under UCL "to the extent that [he] [was] asserting claims on behalf of the public").  Defendants do not cite any cases supporting that nonsensical argument.  Defendants selectively quote *Latona v. Aetna U.S. Healthcare Inc.*, but that case did not address standing to seek an injunction.  82 F. Supp. 2d 1089 (C.D. Cal. 1999).  Rather, *Latona* involved a claim brought by an employee who was terminated after she refused to sign a non-compete and confidentiality agreement, not a claim she brought on behalf of the public.  *Id.* at 1091 n.1.

Accordingly, Defendants fail to allege standing to assert injunctive relief on behalf of themselves or the public, and their claim for injunctive relief thus fails.

**C.     The Court Should Strike or Disregard Defendants' Newly Added, Extraneous Opposition Materials.**

Defendants may not add new factual allegations to their Opposition to defeat Apple's Motion.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (in ruling on a motion to dismiss, a court may not consider additional facts asserted in an opposition brief).  Indeed, Judge Davila denied Apple leave to "file a sur-reply presenting new facts uncovered in discovery" in this very case because Apple did not "establish[] any basis on which the Court [could] consider such documents at [the pleading] stage, *e.g.,* that the new information [was] incorporated by reference into the SAC or [was] judicially noticeable."  Dkt. 229 at 12 n.5.  For the same reason, the Court should strike or disregard the extraneous materials referenced in the Opposition and attached as Exhibits 1-5 to the Opposition.

1

2

**D.    The Court Should Deny Defendants' Request for Leave to Amend Their Amended Counterclaims a Second Time.**

3    Defendants have already amended their Counterclaims once in response to Apple's first

4   Motion but failed to cure the many defects in their claims.  Any further amendment would be

5   futile.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)

6   ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would

7   fail to cure the pleading deficiencies and amendment would be futile."); *Lesnik v. Eisenmann SE*,

8   2018 WL 4700342, at *3 (N.D. Cal. Oct. 1, 2018) (leave to amend should be denied if futile).

9   Fact discovery in this matter closed on December 1, 2023, one week before Defendants filed their

10   Opposition.  Dkt. 290.  While Defendants are not permitted to add new facts in their Opposition,

11   *see* Section II.C., *supra*, Defendants did so anyway, thus revealing their (weak) hand.

12    Defendants undoubtedly selected (but exaggerated) the evidence that best supports their

13   Amended Counterclaims, yet even their new evidence fails to establish a claim for declaratory

14   relief or for violation of the UCL.  The new evidence purportedly shows that (1) Apple reminded

15   departing employees of their obligations under the IPA; (2) a Rivos employee understood that

16   Apple could enforce the Non-Solicit; (3) Rivos employees were afraid that Apple might accuse

17   them of violating the Non-Solicit; and (4) Rivos employees interpreted the Non-Solicit to

18   preclude them from soliciting former Apple colleagues for a year after their departure.  Opp. at 2

19   n.1, 3, 13, Exs. 1-5.[7]  But even these additions do not remedy the Amended Counterclaims'

20   inherent failures regarding the Non-Solicit: the Individual Defendants do not allege that Apple

21   enforced the Non-Solicit against them and, regardless, the Non-Solicit is valid under California

22   law.  *See* Sections II.B.2, II.B.3, *supra*.  Nor can the new Opposition arguments—or any

23   allegations supported in the record—be reconciled with Defendants' allegation (and fact) that

24   more than 50 former Apple employees moved to Rivos.  Countercl. ¶ 9; *see In re Volkswagen*,

25   328 F. Supp. 3d 963, 983 (N.D. Cal. 2018) ("A proposed amended complaint is futile if . . . there

26   is no reason to believe 'that the deficiencies can be cured with additional allegations that are

27

28

---

[7] Defendants' interpretation of Exhibit 5 is implausible and belied by the plain language of the document.  It should thus be disregarded.  Opp. at 4; *see Twombly*, 550 U.S. at 556.

consistent with the challenged pleading and that do not contradict the allegations in the original complaint.'").

Further, if the Court considers the new facts cited in the Opposition in deciding whether to grant leave to amend, the Court should also consider the much more compelling testimony from Rivos' co-founders and chief executives confirming that the Counterclaims are meritless and admitting that Rivos has not been harmed by Apple's IPA.

During his deposition, Rivos' co-founder Belli Kuttanna admitted:

> Q: Do you believe that Rivos has been harmed by the confidentiality provision in Apple's intellectual property agreement?
>
> A: No, I do not believe that Rivos has been harmed by those individual agreements.
>
> Q: Do you believe that Rivos is harmed by the fact that Apple has a nonsolicit provision for its employees?
>
> A: No, I do not believe Rivos has been harmed.

*See* Lau Supp. Decl., Ex. B, Belli Kuttanna Dep. Tr. at 231:18-232:8.

Discovery has also revealed that, despite Defendants' assertion that Apple's NDA and Non-Solicit are somehow invalid, Rivos requires its employees to sign a Proprietary Information and Inventions Agreement ("PIIA") with nearly identical non-disclosure and employee non-solicitation provisions. *See id.*, Ex. A, Rivos PIIA at ¶¶ 2, 6. Indeed, Rivos' co-founders admitted that non-solicitation provisions and non-disclosure agreements are industry standard. *See id.*, Ex. C, Puneet Kumar Dep. Tr. at 228:19-23 (Kumar admitted: "Q: In your experience working at various tech companies and knowing how the industry works, is that unusual for a company to have a non-solicitation provision in its agreements with its employees? A: No."); Ex. D, Mark Hayter Dep. Tr. at 61:4-24 (Rivos' co-founder Mark Hayter admitted that Apple's non-disclosure provision, including its definition of confidential information, is standard across the industry and the same as the provision in Rivos' PIIA).

Testimony from Rivos' co-founders also supports Apple's argument that Defendants cannot identify a ***single*** Apple employee whose mobility was restricted in any way because of Apple's IPA. *See id.*, Ex. D, Mark Hayter Dep. Tr. at 68:2-5, 69:6-9 ("Q: . . . [P]eople leave Apple all the time, don't they? A: Yes. . . . Q: And are people free to leave Apple if that happens,

1   any particular situation? A: Yes.").  And, tellingly, none of Rivos' deponents have testified that

2   Apple enforced the non-solicitation provision against them, nor that the Apple IPA hindered the

3   performance of their new job at Rivos.  *See, e.g.*, *id.*, Ex. E, Brian Campbell Dep. Tr. at 26:20-25

4   ("Q: [Before] you left Apple, did you ever hear from anybody that Apple was doing anything to

5   suggest to people that if they left and went to another company, they would be violating their

6   agreements with Apple? A: Not that I remember."); *id.*, Ex. C, Puneet Kumar Dep. Tr. at 285:8-

7   11 ("Q:  Did you ever, and you being Rivos, hear that an Apple employee could not talk to you

8   because of something in their IPA with Apple? A: Could not talk to us? No."); *id.*, Ex. F, Aditya

9   Kesiraju Dep. Tr. at 39:16-18 ("Q: . . . "And has [the Apple IPA] hindered your work at Rivos?

10  A: No, not at all."").  Accordingly, further amendment would be futile.  *See Cervantes*, 656 F.3d at

11  1041; *Lesnik*, 2018 WL 4700342, at *3.

12          Moreover, Defendants should not be granted leave to amend because much of the "new"

13  evidence cited in their Opposition was available to Defendants before they filed the Amended

14  Counterclaims on November 3, 2023.  *See* Countercl.; Opp. Ex. 2 (deposition dated September

15  26, 2023), Ex. 4 (deposition dated October 30, 2023), Ex. 5 (document produced September 13,

16  2023).  Defendants thus unduly delayed by failing to seek leave to amend sooner, or by omitting

17  this information from their Amended Counterclaims.  *See Chodos v. W. Publ'g Co.*, 292 F.3d

18  992, 1003 (9th Cir. 2002) (upholding denial of leave to amend complaint to add new facts that

19  plaintiff learned "shortly before the close of discovery" because "those 'new' facts had been

20  available to [plaintiff] even before the first amendment to his complaint").  The Court should thus

21  deny Defendants leave to amend.

22  **III.    CONCLUSION**

23          The Individual Defendants fail to state a claim for declaratory relief because both the

24  NDA and Non-Solicit are valid and enforceable.  Moreover, there is no justiciable controversy

25  regarding the legality of the Non-Solicit because Apple never allegedly enforced it against any

26  Individual Defendants.  Defendants also fail to state a claim under the UCL because they do not

27  allege that Apple engaged in any "unlawful" or "unfair" conduct, and their claims for monetary

28  damages and injunctive relief both fail as a matter of law.  Because Defendants have already

1    amended once, and further amendment would be futile, Apple respectfully requests that the Court

2    dismiss Defendants' Amended Counterclaims with prejudice.

3    Dated: December 22, 2023                          MORRISON & FOERSTER LLP

4                                                      By    */s/ Bonnie Lau*
                                                            Bonnie Lau
5
                                                      Attorney for Plaintiff and Counterclaim
6                                                     Defendant APPLE INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28